Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
Stephany Martinez Tiffer (SBN 341254)
martineztiffer@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
ACLU FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

NATIONAL TPS ALLIANCE, MARIELA GONZÁLEZ, FREDDY JOSE ARAPE RIVAS, M.H., CECILIA DANIELA GONZÁLEZ HERRERA, ALBA CECILIA PURICA HERNÁNDEZ, E.R., and HENDRINA VIVAS CASTILLO,

Plaintiffs,

vs.

KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,

Defendants.

Case No. 25-cv-1766

**DECLARATION OF M.H. IN SUPPORT OF ADMINISTRATIVE MOTION TO PROCEED UNDER PSEUDONYM**

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*pro hac vice forthcoming*)
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitran (SBN 302081)
ebitran@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

**DECLARATION OF M.H.**

I, M.H., declare:

1. I have personal knowledge of the facts set forth in this declaration. If called upon to testify as a witness, I could do so and would testify to these facts.

2. I am a beneficiary of Temporary Protected Status (TPS). My current TPS status will expire on April 7, 2025 as a result of the termination of TPS for Venezuela. My seven year old daughter also has TPS, set to expire on the same date. My husband and our two-year-old son are U.S. citizens.

3. I am writing this declaration to explain the harm that my family and I will suffer if the extension of TPS for Venezuela is revoked.

**Background**

4. I am from Ojeda, a small city in Venezuela. Growing up, I lived with my parents and my brother and sister. My father is a trucker and my mother was a homemaker. I studied nursing and got my degree in 2016. I specialized in hemodialysis. In 2017, my daughter, I.U., was born.

5. From the time that I was in university, I was part of the student movent opposing the Maduro regime. I joined the Voluntad Popular, an opposition party. I participated in health clinics providing services to vulnerable communities and served as an election worker. I was harmed and threatened because of this, and around 2020 I learned that there was an arrest warrant against me. I decided that I had to leave.

6. In January 2021, I left Venezuela with my three-year-old daughter. My daughter and I were detained by immigration officials for two days in Texas soon after we arrived. After I was released, we went to live in Pennsylvania to live with D.B., who was my friend and later became my husband. Since that time, we have lived together and built a life together. D.B. and I got married in June 2021. He is a U.S. citizen. Together we welcomed our son, J.B., in April of 2022.

7. I am currently working as a full-time caregiver for my two children. In addition to caring for my own children, I sometimes care for my friends' children in my

home. I also volunteer at a local health clinic for Spanish-speakers. I am responsible for all of the childcare and household duties, which requires me to drive around our city every day. I have a driver's license, which I was able to get when I showed proof of my work authorization. My husband works full-time as an engineer for a government sub-contractor. He leaves the house around 7 am and gets home around 6 pm.

8. My daughter is now seven years old and she is in first grade. She is doing very well in school. I was amazed at how fast she learned English. Now, I have to correct her Spanish! My son, J.B., is almost three years old. He is a U.S. citizen. He is a happy child, but he has some health problems. He has severe asthma that requires constant monitoring and treatment. I give him a prescription inhaler every day. When he gets sick, I give him additional medications because colds can aggravate his asthma. Even with this routine care, every few months J.B. has a severe asthma attack. I have to watch him closely so I can catch the attacks as soon as they start. When that happens, we use a nebulizer to manage the asthma attack as best as we can. Sometimes it isn't enough and we have to rush him to the hospital. In the last year, we have had to take him to the hospital about three times because he still wasn't getting enough oxygen with the nebulizer. He attends regular check-ups with a pulmonologist about every three months. It is scary to see your child suffer, but I am grateful that we are able to provide J.B. with the care he needs.

9. Apart from my husband and children, I have several family members in the United States. My mother, brother, and nephews live in Florida. My mom has TPS and my brother and his children are seeking asylum.

10. My sister, her children, and my father still live in Venezuela. They tell me that there are shortages of basic necessities, sometimes even water is scarce. Every day there are power cuts. They depend on money from me and from my family here in the United States.

11. TPS is currently my only form of protection from deporation.

12. I have tried to file an asylum application affirmatively on two occasions, but both times my asylum application was rejected by USCIS. I have found it very hard to get

an asylum application on file despite my efforts.

13. First, I filed an asylum application with USCIS soon after I arrived in the United States. However, my application was rejected shortly after I filed it because I had already been placed in removal proceedings, though I didn't know that at the time.

14. My daughter and I applied for TPS after Venezuela was re-designated in 2023. My work permit is under the TPS category. At my last court hearing in October 2024, my case was terminated because I had obtained TPS status.

15. I tried to re-file my asylum application with USCIS after my court case was closed. But USCIS rejected my application again. This time, USCIS rejected the application saying that there was already an application pending. This was confusing to me as my previous application had been rejected, and I never filed an application for asylum in connection with my court proceedings. But I applied for an employment authorization document as an asylum applicant, given that USCIS had asserted that I had an application pending. However, USCIS denied my application for a work permit—this time because they said that I did *not* have an asylum application pending.

16. I am working with a lawyer to file an asylum application. But as it is not clear the status of any asylum application, and because I only have legal status and work authorization from TPS, I am all the more reliant on TPS. My work authorization and TPS are set to expire in April 2025, at which time I will be without any valid immigration status, work authorization, or protection from deportation.

17. As part of the obligations associated with my release from immigration custody and my removal proceedings, I am required to check in in-person with ICE every six months. I have gone to every check-in. Each time I go, I feel extremely nervous that they will decide to detain or deport me. My last check-in was in September 2024. My husband came with me that day. We hoped that they would agree to discontinue the check-ins because I have TPS. We brought all my paperwork and showed it to the officer, who said that it didn't matter if I had TPS. My husband asked why it was necessary for me to keep checking in, since I have TPS. The officer said gruffly, "because it's temporary." He

then scheduled my next check-in for May 2025, the month after my TPS is set to expire because of the recently-announced termination of TPS for Venezuela. Now, I am terrified that TPS will be terminated and that I will be detained that day or even deported. Although I am married to a U.S. citizen, I do not have a straightforward path to permanent residence. My immigration attorney told me that I would need a special waiver to qualify for a green card. We are currently preparing documents to file an I-130 petition, which is the first step to adjustment of status through marriage, but I understand that the process can take years to complete. Until that time, I am reliant solely on TPS for protection from deportation.

**Impact of the Decision to Terminate TPS**

18. If TPS is terminated, my family and I will suffer tremendous harm. One of the most immediate harms that will befall us if TPS is terminated is that I will no longer be able to drive legally in Tennessee. I had to show my work authorization in order to qualify for a license, and my driver's license expires the same day as my work permit, in April. I rely on my driver's license to safely drive my daughter to school and to bring my son to his many doctor's appointments. If TPS is terminated, I would have to choose between driving illegally without a license, or pulling my daughter out of school and disrupting my son's medical care. This feels like an impossible choice. I cannot stop my children's education and care, but I am terrified at the thought of driving without a license because local law enforcement would turn me over to ICE if they discovered that I did not have legal status.

19. If TPS is terminated, I do not know what we will do. My children rely on me, and could not be separated from me. I am their primary caregiver. My husband has to work to support our family, so he cannot care for our children full-time without me. The mere thought of being separated from my children fills me with fear and sadness. At the same time, I am terrified of living in the United States without lawful status.

20. I also fear I am likely to be arrested at my check-in in May if TPS is terminated. My arrest would be traumatic for my children, who are too young to understand my complicated immigration situation. The prospect of this is causing me a lot

of stress. I start to shake just thinking about it. I know that I have to go, but I am so afraid of what will happen to me and my family.

21. We cannot relocate our family to Venezuela. I cannot return to Venezuela with my children because of my past experiences. We would not be safe there. We would be forced to live in hiding, and would have nowhere to go. I also don't know how I could support myself and my children. My husband cannot abandon his job and move to Venezuela because we rely on his income for our survival. Most people in Venezuela live in poverty, and I am certain that we would face hunger, and a lack of housing, healthcare, and basic necessities.

22. I would also never be able to bring my son to Venezuela, because he would be deprived of the medical treatment he needs. I would be afraid for his life. The hospitals in Venezuela are almost non-operational. Private clinics are extremely expensive. The lack of electricity would put his life in danger if he had an asthma attack and there was no electricity to power the nebulizer.

23. It also would be impossible for me and my daughter to return to Venezuela and leave my son and husband in the United States. Our son requires constant care and medical attention. If my husband were left to care for our son alone, he would have to leave his job. However, his job provides our health insurance, which we rely upon to afford our son's care. It is truly an impossible situation for our family. I wonder whether my husband and son would have to rely on public assistance to survive. And if my husband were not working, he could not support me and my daughter in Venezuela, so our situation there would become even more desperate.

24. My Venezuelan passport is expired, and there is no way to renew it because of the lack of diplomatic relations, so even if I were to try to travel back to Venezuela (or anywhere else), I believe that I would be unable to do so.

**Need for Anonymity**

25. I am fearful that my participation in this lawsuit will put my family and me at risk of retaliation from the local or federal government. My family depends on my

husband's work as a government subcontractor, and I worry that, if our names are publicly associated with this lawsuit against the government, that he could face negative consequences at work, or even lose his job. We keep hearing news about the government trying to fire people to cut costs, so I am afraid that exposing my husband in any way could jeopardize his career and our family's livelihood.

26. I am also worried that participating in this lawsuit could bring us to the attention of local law enforcement, especially if TPS expires and I am left without status. The political climate in Tennessee is very anti-immigrant. Recently, the legislature passed a bill creating a new division in the Department of Safety specifically to increase cooperation between local law enforcement and immigration enforcement agencies. I am afraid that, if my name is public because I am part of this lawsuit, I will be targeted by local law enforcement and turned over to immigration officials.

27. Above all, I am worried about my safety and that of my children. Unfortunately, we live in an area with a lot of racism and extreme anti-immigrant sentiment. I do not tell anyone about my immigration status because I don't want to make anyone uncomfortable and because I don't know who I can trust. I feel nervous every time I leave the house. I feel scared and the uncertainty is weighing on me. I try not to speak Spanish in public because I am afraid that my children and I will be mistreated or reported to ICE.

28. The superintendant of my daughter's school district recently said that they would comply with any laws that are passed regarding immigration, such as the recent order allowing ICE to enter schools. The Governor of Tennessee just signed a law stating that no charter school funds can be used for undocumented students, and there is an effort to pass a law to ban undocumented children from public schools as well.

29. It is painful to raise my daughter and son in this environment. My daughter asks me if she is American. I have to explain to her that she is Venezuelan, but she doesn't remember Venenzuela at all because she was only three when we left. She doesn't understand that we do not have permanent status, and I am always afraid that she will face

bullying or discrimination in school if anyone finds out.

30. Despite all these risks, I have chosen to participate in this lawsuit because it is important to speak up for what is right, and I want to do my part to help myself, my daughter, and all the other good, hardworking people who rely on TPS. For all of these reasons, I wish to be allowed to proceed under a pseudonym.

31. I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed in Tennessee this __19th_ day of _February, 2025.

_/s/ M.H.
M.H.

## CIVIL LOCAL RULE 5.1 ATTESTATION

I hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/S/) within this e-filed document.

_/s/ *Emilou MacLean*
Emilou MacLean



City of New York, State of New York, County of New York

I, Jacqueline Yorke, hereby certify that the document "**DECLARATION OF M.H.**" is, to the best of my knowledge and belief, a true and accurate translation from English into Spanish (LA).

________________________
Jacqueline Yorke

Sworn to before me this
February 19, 2025

________________________
Signature, Notary Public

WENDY POON
Notary Public - State of New York
No. 01PO0000184
Qualified in Queens County
My Commission Expires February 02, 20 27

________________________
Stamp, Notary Public

**DECLARACIÓN DE M.H.**

Yo, M.H., declaro lo siguiente:

1. Tengo conocimiento personal de los hechos establecidos en esta declaración. Si se me solicita que declare como testigo, podría hacerlo y testificaría estos hechos.

2. Soy beneficiaria del Estatus de Protección Temporal (Temporary Protected Status, TPS). Mi actual estatus de TPS expirará el 7 de abril de 2025 como resultado de la terminación del TPS para Venezuela. Mi hija de siete años también tiene TPS, que expirará en la misma fecha. Mi esposo y nuestro hijo de dos años son ciudadanos estadounidenses.

3. Escribo esta declaración para explicar el daño que mi familia y yo sufriremos si se revoca la extensión del TPS para Venezuela.

**Antecedentes**

4. Soy de Ojeda, una pequeña ciudad de Venezuela. De pequeña, vivía con mis padres, mi hermano y mi hermana. Mi padre es camionero y mi madre ama de casa. Estudié enfermería y me gradué en 2016. Me especialicé en hemodiálisis. En 2017, nació mi hija, I.U.

5. Desde que estaba en la universidad, formé parte del movimiento estudiantil que se oponía al régimen de Maduro. Me uní a Voluntad Popular, un partido de la oposición. Participé en clínicas de salud que prestaban servicios a comunidades vulnerables y trabajé como funcionaria electoral. Por ello, fui agredida y amenazada, y alrededor de 2020 me enteré de que había una orden de arresto contra mí. Decidí que tenía que irme.

6. En enero de 2021, me fui de Venezuela con mi hija de tres años. Poco después de llegar, mi hija y yo fuimos detenidas por funcionarios de inmigración durante dos días en Texas. Después de que me liberaron, nos fuimos a vivir a Pensilvania con D.B., que era mi amigo y luego se convirtió en mi marido. Desde entonces, hemos vivido juntos y hemos construido una vida juntos. D.B. y yo nos casamos en junio de 2021. Él es ciudadano estadounidense. Juntos dimos la bienvenida a nuestro hijo, J.B., en abril de 2022.

7. Actualmente trabajo como cuidadora a tiempo completo de mis dos hijos. Además de cuidar de mis propios hijos, a veces cuido de los hijos de mis amigos en mi casa. También soy voluntaria en una clínica de salud local para hispanohablantes. Soy responsable de todas las tareas de cuidado de los niños y del hogar, lo que me obliga a conducir por nuestra ciudad todos los días. Tengo carnet de conducir, que pude obtener cuando presenté una prueba de mi autorización de trabajo. Mi marido trabaja a tiempo completo como ingeniero para un subcontratista del gobierno. Él se va de la casa alrededor de las 7 de la mañana y llega alrededor de las 6 de la tarde.

8. Mi hija tiene ahora siete años y está en primer grado. Le va muy bien en la escuela. Me sorprendió lo rápido que aprendió inglés. ¡Ahora tengo que corregir su español! Mi hijo, J.B., tiene casi tres años. Es ciudadano estadounidense. Es un niño feliz, pero tiene algunos problemas de salud. Tiene asma grave que requiere un monitoreo y tratamiento constantes. Le doy un inhalador recetado todos los días. Cuando se enferma, le doy medicamentos adicionales porque los resfriados pueden agravar su asma. Incluso con este cuidado de rutina, cada pocos meses J.B. tiene un ataque de asma grave. Tengo que vigilarlo de cerca para poder detectar los ataques en cuanto comienzan. Cuando eso sucede, utilizamos un nebulizador para controlar el ataque de asma lo mejor que podemos. A veces no es suficiente y tenemos que llevarlo rápidamente al hospital. En el último año, hemos tenido que llevarlo al hospital unas tres veces porque tampoco recibía suficiente oxígeno con el nebulizador. Asiste a revisiones periódicas con un neumólogo cada tres meses aproximadamente. Da miedo ver sufrir a tu hijo, pero estoy agradecida de que podamos proporcionarle a J.B. la atención que necesita.

9. Aparte de mi marido y mis hijos, tengo varios familiares en Estados Unidos. Mi madre, mi hermano y mis sobrinos viven en Florida. Mi madre tiene TPS y mi hermano y sus hijos están solicitando asilo.

10. Mi hermana, sus hijos y mi padre siguen viviendo en Venezuela. Me dicen que hay escasez de productos de primera necesidad, a veces incluso escasea el agua. Todos los días hay cortes de electricidad. Dependen del dinero que les envío yo y mi familia aquí

en Estados Unidos.

11. El TPS es actualmente mi única forma de protección contra la deportación.

12. He intentado presentar una solicitud de asilo afirmativamente en dos ocasiones, pero en ambas mi solicitud de asilo fue rechazada por el USCIS. Me ha resultado muy difícil presentar una solicitud de asilo a pesar de mis esfuerzos.

13. En primer lugar, presenté una solicitud de asilo ante el USCIS poco después de llegar a Estados Unidos. Sin embargo, mi solicitud fue rechazada poco después de presentarla porque ya se me había iniciado un proceso de expulsión, aunque yo no lo sabía en ese momento.

14. Mi hija y yo solicitamos el TPS después de que Venezuela fuera redesignada en 2023. Mi permiso de trabajo está en la categoría TPS. En mi última audiencia judicial en octubre de 2024, mi caso fue cerrado porque había obtenido el estatus TPS.

15. Intenté volver a presentar mi solicitud de asilo ante el USCIS después de que se cerrara mi caso judicial. Pero el USCIS volvió a rechazar mi solicitud. Esta vez, el USCIS rechazó la solicitud alegando que ya había una solicitud pendiente. Esto me confundió, ya que mi solicitud anterior había sido rechazada y nunca presenté una solicitud de asilo en relación con mis procedimientos judiciales. Pero solicité un documento de autorización de empleo como solicitante de asilo, dado que el USCIS había afirmado que tenía una solicitud pendiente. Sin embargo, el USCIS denegó mi solicitud de permiso de trabajo, esta vez porque dijeron que no tenía una solicitud de asilo pendiente.

16. Estoy trabajando con un abogado para presentar una solicitud de asilo. Pero como no está claro el estado de ninguna solicitud de asilo, y como solo tengo estatus legal y autorización de trabajo del TPS, dependo aún más del TPS. Mi autorización de trabajo y el TPS expirarán en abril de 2025, momento en el que me quedaré sin ningún estatus migratorio válido, autorización de trabajo o protección contra la deportación.

17. Como parte de las obligaciones asociadas con mi liberación de la custodia de inmigración y mis procedimientos de deportación, debo presentarme en persona ante el ICE cada seis meses. He ido a cada control. Cada vez que voy, me siento extremadamente

nerviosa de que decidan detenerme o deportarme. Mi último control fue en septiembre de 2024. Mi esposo vino conmigo ese día. Esperábamos que aceptaran suspender los controles porque tengo TPS. Llevamos todos mis papeles y se los mostramos al agente, que dijo que no importaba si tenía TPS. Mi marido preguntó por qué era necesario que siguiera presentándome, ya que tengo TPS. El agente dijo con brusquedad: "porque es temporal". Luego programó mi próximo control para mayo de 2025, el mes después de que mi TPS expirara debido a la reciente terminación del TPS para Venezuela. Ahora, estoy aterrorizada de que el TPS se termine y de que me detengan ese día o incluso me deporten. Aunque estoy casada con un ciudadano estadounidense, no tengo un camino directo hacia la residencia permanente. Mi abogado de inmigración me dijo que necesitaría una exención especial para poder optar a una tarjeta verde. Actualmente estamos preparando los documentos para presentar una petición I-130, que es el primer paso para el ajuste de estatus a través del matrimonio, pero entiendo que el proceso puede tardar años en completarse. Hasta entonces, dependo únicamente del TPS para protegerme de la deportación.

**Impacto de la decisión de terminar la TPS**

18. Si se pone fin al TPS, mi familia y yo sufriremos un daño tremendo. Uno de los daños más inmediatos que nos afectará si se pone fin al TPS es que ya no podré conducir legalmente en Tennessee. Tuve que mostrar mi autorización de trabajo para poder obtener una licencia, y mi licencia de conducir vence el mismo día que mi permiso de trabajo, en abril. Dependo de mi licencia de conducir para llevar a mi hija a la escuela de forma segura y para llevar a mi hijo a sus numerosas citas médicas. Si se pone fin al TPS, tendría que elegir entre conducir ilegalmente sin licencia o sacar a mi hija de la escuela y alterar la atención médica de mi hijo. Parece una elección imposible. No puedo interrumpir la educación y el cuidado de mis hijos, pero me aterra la idea de conducir sin licencia porque las fuerzas del orden locales me entregarían al ICE si descubrieran que no tengo estatus legal.

19. Si se pone fin al TPS, no sé qué haremos. Mis hijos dependen de mí y no

podrían separarse de mí. Soy su principal cuidadora. Mi esposo tiene que trabajar para mantener a nuestra familia, por lo que no puede cuidar de nuestros hijos a tiempo completo sin mí. La sola idea de separarme de mis hijos me llena de miedo y tristeza. Al mismo tiempo, me aterra vivir en Estados Unidos sin un estatus legal.

20. También temo que me arresten cuando me presenten en mayo si se pone fin al TPS. Mi arresto sería traumático para mis hijos, que son demasiado pequeños para entender mi complicada situación migratoria. La perspectiva de esto me está causando mucho estrés. Empiezo a temblar con solo pensarlo. Sé que tengo que irme, pero tengo mucho miedo de lo que nos pueda pasar a mí y a mi familia.

21. No podemos trasladar a nuestra familia a Venezuela. No puedo regresar a Venezuela con mis hijos debido a mis experiencias pasadas. Allí no estaríamos seguros. Nos veríamos obligados a vivir escondidos y no tendríamos adónde ir. Tampoco sé cómo podría mantenerme a mí y a mis hijos. Mi esposo no puede abandonar su trabajo y mudarse a Venezuela porque dependemos de sus ingresos para sobrevivir. La mayoría de la gente en Venezuela vive en la pobreza, y estoy segura de que pasaríamos hambre y nos faltaría vivienda, atención médica y necesidades básicas.

22. Tampoco podría llevar a mi hijo a Venezuela, porque se vería privado del tratamiento médico que necesita. Tendría miedo por su vida. Los hospitales en Venezuela están casi inoperativos. Las clínicas privadas son extremadamente caras. La falta de electricidad pondría su vida en peligro si tuviera un ataque de asma y no hubiera electricidad para alimentar el nebulizador.

23. También sería imposible para mí y mi hija regresar a Venezuela y dejar a mi hijo y a mi esposo en los Estados Unidos. Nuestro hijo requiere cuidados y atención médica constantes. Si mi esposo se quedara solo para cuidar de nuestro hijo, tendría que dejar su trabajo. Sin embargo, su trabajo proporciona nuestro seguro médico, del que dependemos para pagar el cuidado de nuestro hijo. Es realmente una situación imposible para nuestra familia. Me pregunto si mi marido y mi hijo tendrían que depender de la asistencia pública para sobrevivir. Y si mi marido no trabajara, no podría mantenernos a mí

y a mi hija en Venezuela, por lo que nuestra situación allí sería aún más desesperada.

24. Mi pasaporte venezolano está caducado y no hay forma de renovarlo debido a la falta de relaciones diplomáticas, así que incluso si intentara viajar de vuelta a Venezuela (o a cualquier otro lugar), creo que no podría hacerlo.

**Necesidad de anonimato**

25. Temo que mi participación en esta demanda nos ponga a mi familia y a mí en riesgo de represalias por parte del gobierno local o federal. Mi familia depende del trabajo de mi esposo como subcontratista del gobierno, y me preocupa que, si nuestros nombres se asocian públicamente con esta demanda contra el gobierno, él podría enfrentar consecuencias negativas en el trabajo, o incluso perder su empleo. Seguimos escuchando noticias sobre el gobierno tratando de despedir gente para reducir costos, así que me temo que exponer a mi esposo de alguna manera podría poner en peligro su carrera y el sustento de nuestra familia.

26. También me preocupa que participar en esta demanda pueda llamar la atención de las fuerzas del orden locales, especialmente si el TPS expira y me quedo sin estatus. El clima político en Tennessee es muy antiinmigrante. Recientemente, la legislatura aprobó un proyecto de ley que crea una nueva división en el Departamento de Seguridad específicamente para aumentar la cooperación entre las fuerzas del orden locales y las agencias de inmigración. Me temo que, si mi nombre se hace público por formar parte de esta demanda, seré blanco de las fuerzas del orden locales y entregada a los funcionarios de inmigración.

27. Sobre todo, me preocupa mi seguridad y la de mis hijos. Por desgracia, vivimos en una zona con mucho racismo y un sentimiento antiinmigrante extremo. No le cuento a nadie sobre mi estatus migratorio porque no quiero incomodar a nadie y porque no sé en quién puedo confiar. Me siento nerviosa cada vez que salgo de casa. Tengo miedo y la incertidumbre me pesa. Intento no hablar español en público porque tengo miedo de que nos maltraten a mis hijos y a mí o de que nos denuncien a ICE.

28. El superintendente del distrito escolar de mi hija dijo recientemente que

cumplirían con cualquier ley que se apruebe en materia de inmigración, como la reciente orden que permite a ICE entrar en las escuelas. El gobernador de Tennessee acaba de firmar una ley que establece que no se pueden utilizar fondos de las escuelas concertadas para estudiantes indocumentados, y también se está intentando aprobar una ley para prohibir la entrada de niños indocumentados en las escuelas públicas.

29. Es doloroso criar a mi hija y a mi hijo en este entorno. Mi hija me pregunta si es estadounidense. Tengo que explicarle que es venezolana, pero no recuerda Venezuela en absoluto porque solo tenía tres años cuando nos fuimos. No entiende que no tenemos un estatus permanente, y siempre tengo miedo de que sufra acoso o discriminación en la escuela si alguien se entera.

30. A pesar de todos estos riesgos, he decidido participar en esta demanda porque es importante defender lo que es correcto, y quiero poner de mi parte para ayudarme a mí misma, a mi hija y a todas las demás personas buenas y trabajadoras que dependen del TPS. Por todas estas razones, deseo que se me permita proceder bajo un seudónimo.

31. Declaro bajo pena de perjurio que lo anterior es verdadero y correcto, y que esta declaración se firmó en Tennessee hoy 19 día de febrero de 2025.



M.H.