1  Ahilan T. Arulanantham (SBN 237841)
   arulanantham@law.ucla.edu
2  Stephany Martinez Tiffer (SBN 341254)
   martineztiffer@law.ucla.edu
3  CENTER FOR IMMIGRATION LAW AND
   POLICY, UCLA SCHOOL OF LAW
4  385 Charles E. Young Dr. East
   Los Angeles, CA 90095
5  Telephone: (310) 825-1029

6  Emilou MacLean (SBN 319071)
   emaclean@aclunc.org
7  Michelle (Minju) Y. Cho (SBN 321939)
   mcho@aclunc.org
8  ACLU FOUNDATION
   OF NORTHERN CALIFORNIA
9  39 Drumm Street
   San Francisco, CA 94111-4805
10 Telephone: (415) 621-2493
   Facsimile: (415) 863-7832

11

12 Attorneys for Plaintiffs
   *[Additional Counsel Listed on Next Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, MARIELA GONZÁLEZ, FREDDY JOSE ARAPE RIVAS, M.H., CECILIA DANIELA GONZÁLEZ HERRERA, ALBA CECILIA PURICA HERNÁNDEZ, E.R., and HENDRINA VIVAS CASTILLO,<br><br>*Plaintiffs*,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,<br><br>*Defendants*. | Case No. 25-cv-1766<br><br>**EXPERT DECLARATION OF STACY TOLCHIN IN SUPPORT OF PLAINTIFFS' MOTION TO POSTPONE EFFECTIVE DATE OF AGENCY ACTION** |

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (pro hac vice pending*)
lwilfong@ndlon.org
NATIONAL DAY LABORER ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitran (SBN 302081)
ebitran@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

# EXPERT DECLARATION OF STACY TOLCHIN

1. I, Stacy Tolchin, am an attorney licensed to practice by the State of California. If called to testify, I could and would do so as follows:

2. I have been asked to provide an expert opinion to explain some of the law governing what protections TPS has afforded to the Venezuelan immigrant communities at issue in this case, and how those protections do and do not overlap with the rights Venezuelan TPS holders may have under other immigration laws. I make this declaration based on my personal and professional knowledge, my skill, experience, training, and education, and facts and data regularly relied upon in my field that are currently available to me. If additional information becomes available, or if I believe it would be appropriate to respond to any critique or contrary theories, I will advise Plaintiffs' counsel that I intend to do so and will seek their help in following the appropriate judicial procedures. The opinions in this declaration are my own.

**Qualifications**

3. I received my Juris Doctorate from the University of California at Los Angeles in 2001, and have been practicing law for over 23 years.

4. I am admitted to practice before the United States Supreme Court; the United States Court of Appeals for the Ninth, Tenth, Fifth, and Second Circuits; and the United States District Court for the Northern District of California, Eastern District of California, Central District of California, Southern District of California, Court of Federal Claims, and District of New Mexico.

5. My business address is Law Offices of Stacy Tolchin, 776 E. Green St. Suite 210, Pasadena, CA 91101.  I practice throughout the state of California.

6. I am a recipient of the American Immigration Lawyers' Association Southern California Chapter 2019 Annual Pro Bono Award, the University of California at Los Angeles Law School's 2018 Alumni Public Service Award, the National Lawyers Guild of Southern California 2017 annual award, the American Immigration Lawyers Association's 2009 Jack Wasserman Award for Excellence in Immigration Litigation, the 2009 American Civil Liberties Union of Southern California Equal Justice Advocacy Award, the 2008 National Immigration Law Center Annual Award, the 2007 "Unsung Hero" Award for the National Lawyers Guild of the Bay Area, and was recognized in 2003

by the Arab-American Anti-Discrimination Committee of San Francisco. I was also named to "Super Lawyers" from 2012-2024.

7. I am a former member of the Board of Directors of the National Immigration Project for the National Lawyers Guild, a member of the National Lawyers Guild, the Los Angeles County Bar Association immigration section, and the American Immigration Lawyers Association.

8. I specialize in immigration-related litigation before the federal courts. Cases I have litigated include: *Alvarado-Herrera v. Garland*, 993 F.3d 1187 (9th Cir. 2021) (establishing the legal standard for the "reasonable fear" screening test before an immigration judge); *Arce v. United States*, 899 F.3d. 796 (9th Cir. 2018) (establishing that the federal courts have authority to consider damages actions under the Federal Tort Claims Act in cases involving unlawful deportations); *Bonilla v. Lynch*, 840 F.3d 575 (9th Cir. 2016) (establishing federal court jurisdiction to review motions to sua sponte reopen based on changes in law); *Mendiola v. Holder*, 576 F. App'x 828 (10th Cir. 2014) (petition for review in Tenth Circuit challenging removal of a lawful permanent resident based on change in law); *Bains v. Holder*, 584 F. App'x 574 (9th Cir. 2014) (petition for review challenging removal order based on changed circumstances arising in India); *Duran Gonzales v. U.S. Dep't of Homeland Sec.*, 712 F.3d 1271 (9th Cir. 2013) (class action litigation involving applications for lawful permanent residency where the applicants had been previously deported); *Huerta v. Holder*, 484 F. App'x 172 (9th Cir. 2012) (petition for review based on ineffective assistance of counsel); *Padilla-Padilla v. Gonzales*, 463 F.3d 972 (9th Cir. 2006) (challenge to Board of Immigration Appeals' failure to follow its internal regulations); *Silaya v. Mukasey*, 524 F.3d 1066 (9th Cir. 2008) (finding that victim of gang-rape in the Philippines had suffered past persecution based on her father's political opinion); *Husyev v. Mukasey*, 528 F.3d 1172 (9th Cir. 2008) (finding that courts have jurisdiction to review agency's failure to follow asylum regulations); *Hassine v. Johnson*, 2014 WL 5035173 (E.D. Cal. 2014) (petition for de novo naturalization case and award of attorneys' fees); *Zavala v. Ridge*, 310 F. Supp. 2d 1071 (N.D. Cal. 2004) (Department of Homeland Security's "automatic stay" regulation that keeps non-citizens in custody while their immigration cases are pending, even after an immigration judge has ordered their release, is facially unconstitutional); *Singh v. Still*, 470 F. Supp. 2d 1064 (N.D. Cal. 2007) (successful petition for writ of mandamus challenging Department of Homeland Security's unreasonable delay in

the adjudication of applications for permanent residency); *Shahwan v. Chertoff*, C 05 4218 MMC (N.D. Cal. 2005) (granting petition for writ of habeas corpus where petitioner was not informed when he traveled on "advance parole" that he would be ineligible for a bond hearing before an immigration judge); and *Araujo v. INS*, 301 F. Supp. 2d 1095 (N.D. Cal. 2004) (Federal Tort Claims Act action finding that the United States government was liable for damages to a non-citizen for unlawful deportation).

9. I have deep expertise and extensive practice experience in immigration law, including in the law governing the Temporary Protected Status (TPS) statute, 8 U.S.C. 1254a, and its interaction with various other provisions of the immigration law, including the law governing asylum, detention, and other related areas of immigration law. I have represented many individuals who had (or had previously held) TPS in removal proceedings. I also successfully represented a class of TPS holders who challenged policies related to their eligibility to adjust status after having traveled on authorized TPS travel in *Gomez v. Jaddou*, Case 1:21-cv-09203-ALC (S.D.N.Y), which resulted in a change in USCIS policy that recognized TPS recipients who returned to the United States with authorized travel were "admitted."

**Overview**

10. Until the decisions challenged in this case, Temporary Protected Status was available, broadly speaking, to Venezuelan nationals who had resided here continuously since on or before July 31, 2023, unless they had a felony or two or more misdemeanor convictions. On January 17, 2025, DHS Secretary Mayorkas extended Venezuelan TPS until October 2, 2026. DHS Secretary Noem's order vacating that decision was issued February 3, 2025. I understand that that vacatur order and the termination decision that followed it are the subject of this lawsuit.

11. As I explain herein, although many Venezuelan TPS holders may also be eligible for protection from removal and work authorization through other avenues, only a small minority will actually receive relief, and it is very likely that many Venezuelan TPS holders would *not* be protected to the same degree by any other statute. In fact, many of them would not be protected at all from loss of employment and removal were they to lose TPS.

**Protections Under the TPS Statute**

12. The TPS statute provides a very clear form of immigration status, and robust protection to live and work in the United States, to people who hold TPS. Congress has explicitly forbidden the removal of anyone who has TPS. Subsection (a)(1)(A) of the statute provides that the federal immigration enforcement authorities "shall not remove the alien from the United States during the period in which such status is in effect."

13. Congress has also mandated that TPS holders receive employment authorization. Subsection (a)(1)(B) of the statute provides that federal immigration authorities "shall authorize the alien to engage in employment in the United States and provide the alien with . . . [a] work permit."

14. Furthermore, although in general the federal government has broad powers to detain (that is, to jail) non-citizens charged with being deportable under the immigration laws, Congress has expressly forbidden the detention of people who have TPS. Subsection (d)(4) of the TPS statute provides "An alien provided temporary protected status under this section shall not be detained by the Attorney General on the basis of the alien's immigration status in the United States."

15. The TPS statute makes these protections broadly available to people who meet the primary eligibility criteria—which are that one has to be a Venezuelan national who has continuously resided in the United States since on or before July 31, 2023. For someone who meets those criteria, the statute provides the robust protection from detention and deportation and access to work authorization described above, so long as the individual does not have a felony or two (or more) misdemeanor convictions, and has not engaged in certain other highly unusual conduct (concerning the persecution of others and other rare circumstances).

**Asylum and Parole, and Other Forms of Protection**

16. Many Venezuelans who currently have TPS could be eligible for asylum and related protections under 8 U.S.C. 1158, but that is not true for all of them, and the asylum statute's protections are weaker than those under TPS for several reasons. Further, only a minority of Venezuelan asylum applications are approved. Applicants whose asylum applications are not approved are automatically placed in removal proceedings.

17. To establish eligibility for asylum, an applicant must show a "well-founded fear" of "persecution" "on account of" one of five distinct grounds: "race, religion, nationality, membership in a particular social group, or political opinion." Each of these is a term of art with technical legal meaning that restricts the availability of asylum in different ways. For example, a Venezuelan who leaves because their children have become malnourished as the grocery stores in their area no longer sell basic goods (or because they cannot afford to buy them) likely cannot establish persecution on account of a protected ground. Even those who flee extortion and violence by organized criminal entities typically cannot establish eligibility for asylum because they cannot show that the harm is on account of a protected ground and for other reasons.

18. In addition, because asylum is so legally complex, many applicants hesitate to apply without legal assistance, but of course legal representation is expensive, and if they fail to apply within one year of their arrival, or generally six months after falling out of any non-immigrant status, they are presumptively ineligible for asylum. 8 U.S.C. 1158(a)(2)(B).

19. Even if someone has affirmatively applied for asylum, that alone does not guarantee protection from removal or even work authorization. The government takes the position that it can detain and begin removal proceedings against someone with a pending application, so long as the application has not been granted (and they have no other valid legal status). Work permits are available no earlier than six months after someone files for asylum, and the agency is not legally required to provide them. 8 U.S.C. 1158(d)(2).

20. Some Venezuelan TPS holders also may have received a form of status through parole under 8 U.S.C. 1182(d)(5)(A)—either through a program that allowed them to fly directly to the United States provided that they had a sponsor and completed a vetting process, or through a program that allowed them to present themselves at a port of entry on the southern border. Those programs typically provided a right to reside in the U.S. for one or two years and work authorization during that period. However, those parole grants were not extended under the prior administration, and the programs authorizing them have been frozen by the new administration (since January 20, 2025), and may well be rescinded. As a result, the numbers of people protected by them will likely shrink in the

5

EXPERT DECLARATION OF STACY TOLCHIN - CASE NO. 25-CV-1766

near future (even if the government does not retroactively strip beneficiaries of their rights under them).

21. It is of course possible that any given Venezuelan TPS holder may have some other pathway to lawful status, such as through marriage, sponsorship by their employer, or other methods. For example, Venezuelan TPS holders are eligible to change status to other non-immigrant statuses, such as H-1B, a non-immigrant status for foreign professionals, provided they meet the eligibility requirements for the other non-immigrant statuses. But these pathways to lawful status are rare for individuals who arrived in the last several years. Further, if a TPS holder's TPS ends and they fall out of lawful status, then they will not be eligible to change status to a different non-immigrant status.

22. Moreover, under a recent change enacted by the Trump Administration, the government takes the view that virtually anyone found anywhere in the United States who fails to show an immigration officer that they have been present for two years or more can be summarily deported, without even being brought before an Immigration Judge, unless they affirmatively assert their right to seek asylum. That such an individual may be married to a U.S. citizen, have an employer willing to sponsor them, or have some other defense to removal would be legally irrelevant in such situations.

23. To summarize, notwithstanding the availability of asylum, parole, and other forms of relief under the immigration laws, many thousands of Venezuelan TPS holders—likely the vast majority—will lose their lawful immigration status and work authorization if the TPS vacatur and termination at issue in this case go into effect. That legal change will immediately render them potentially subject to arrest and detention under the immigration laws. Those who cannot prove two years or more of presence could face immediate deportation, while others could remain jailed until presented to an Immigration Judge, before whom they would have to attempt to establish eligibility for asylum under the narrow criteria described above.

1   I declare under penalty of perjury under the laws of the United States of America that the
2 foregoing is true and correct to the best of my knowledge.

4 Executed this 20th day of February, 2025, in Pasadena, California.

                              Stacy Tolchin