YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division
DREW ENSIGN
Deputy Assistant Attorney General
EREZ REUVENI
Acting Deputy Director
SARAH L. VUONG (CA Bar 258528)
Assistant Director
WILLIAM H. WEILAND (Mass. Bar 661433)
Senior Litigation Counsel
LAUREN BRYANT (NY Bar 5321880)
ANNA DICHTER (NJ Bar 304442019)
JEFFREY HARTMAN (WA Bar 49810)
LUZ MARIA RESTREPO (NY Bar 4907077)
CATHERINE ROSS (DC Bar 9007404)
AMANDA SAYLOR (FL Bar 1031480)
ERIC SNYDERMAN (VA Bar 99563)
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, *et al.*,<br><br>    Plaintiff,<br>    v.<br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,<br><br>    Defendants. | Case No. 3:25-cv-1766-EMC<br><br>**DEFENDANTS' EMERGENCY MOTION TO STAY THE ORDER OF POSTPONEMENT PENDING APPEAL** |

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 62, Defendants move the Court to stay its order granting Plaintiffs' Motion to Postpone Secretary Noem's Vacatur of the 2025 Temporary Protected Status (TPS) Extension for Venezuela[1] and Termination of the 2023 TPS designation for Venezuela[2] pending a decision from the Ninth Circuit on Defendants' forthcoming appeal. Court Order, ECF 93; PI Mot., ECF 16. Defendants respectfully ask that the Court rule on the motion no later than 3:00pm PDT on April 4, 2025; after that time, Defendants intend to seek emergency relief from the Ninth Circuit. Fed. R. App. P. 8(a)(2); Fed. R. Civ. P. 62(g)(1). Defendants have notified Plaintiffs, who oppose the relief requested in this motion.

## LEGAL STANDARD

To evaluate whether to issue a stay pending appeal, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). The first two factors "are the most critical[,]" and the final factors merge where, as here, the government is a party. *Id*. at 434-35.

## ARGUMENT

This Court should enter a stay because Defendants are likely to prevail on the merits of their appeal. The TPS statute *requires* the Secretary to terminate a TPS designation that no longer satisfies statutory requirements, including where TPS "is contrary to the national interest of the United States." 8 U.S.C. § 1254a(b)(3)(B). That determination cannot be reviewed or enjoined by this Court for two independently dispositive reasons. First, 8 U.S.C. § 1254a(b)(5)(A) precludes review of the Secretary's determinations, foreclosing any challenge to both the 2025 Vacatur and the 2025 Termination. Second, 8 U.S.C. § 1252(f)(1) provides that no court (other than the Supreme Court) may "enjoin or restrain" the operation

---

[1] *Vacatur of 2025 TPS Decision for Venez.*, 90 Fed. Reg. 8,805 (Feb. 3, 2025) ("2025 Vacatur").

[2] *Termination of the October 3, 2023 Designation of Venez. for TPS*, 90 Fed. Reg. 9,040 (Feb. 5, 2025) ("2025 Termination").

DEFENDANTS' EMERGENCY MOT. TO STAY
No. 3:25-cv-1766-EMC

of the TPS statute "other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." In conjunction, those jurisdictional bars preclude this Court from postponing the effective date of the 2025 Vacatur or Termination under 5 U.S.C. § 705 and provide ample reason to conclude that Defendants are likely to succeed on the merits of their claims. Even if Plaintiffs could clear these hurdles, their APA claims lack merit: the Secretary has inherent authority to reconsider and vacate a TPS designation and this Court cannot stay the effective date of the Secretary's 2025 Vacatur because it was "effective immediately." 2025 Vacatur, 90 Fed. Reg. at 8,806. Further, Plaintiffs' equal protection challenge is unavailing under either the deferential analysis applied in *Trump v. Hawaii*, 585 U.S. 667 (2018), or the balancing standard set forth in *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977), because the Secretary's Vacatur and Termination determinations are immigration policies rationally related to legitimate governmental interests and were not motivated by racially discriminatory intent. The balance of harms also favors Defendants. Accordingly, this Court should grant Defendants' motion for a stay pending appeal.

**I.     The Court Lacks Jurisdiction to Grant Plaintiffs the Relief they Seek.**

**A.     The TPS Statute Bars Plaintiffs' Claims**

The Court erred in concluding that § 1254a(b)(5) does not independently preclude Plaintiffs' APA challenge. The TPS statute unambiguously provides that "[t]here is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS. 8 U.S.C. § 1254a(b)(5)(A). That bar on judicial review prohibits Plaintiffs' challenges to the Secretary's 2025 Termination. 5 U.S.C. § 701(a)(1); *see Amgen, Inc. v. Smith*, 357 F.3d 103, 113 (D.C. Cir. 2004) ("If a no-review provision shields particular types of administrative action, a court may not inquire whether a challenged agency decision is arbitrary, capricious, or procedurally defective.").

Section 1254a(b)(5)(A) also precludes review of the 2025 Vacatur. In reaching the conclusion that the Court retained jurisdiction to review, the Court misinterpreted the breadth of *McNary v. Haitian Refugee Center, Inc.* The statute under review in *McNary* referred to "a determination respecting *an application*" in former 8 U.S.C. § 1160(e) and "describ[ed] a single act rather than a group of decisions

DEFENDANTS' EMERGENCY MOT. TO STAY
No. 3:25-cv-1766-EMC

or a practice or procedure employed in making decisions." 498 U.S. 479, 492 (1991) (emphasis added); ECF 93 at 24-25. In contrast, § 1254a(b)(5)(A) precludes review of "any determination" "with respect to" certain TPS actions, including an "extension." The 2025 Vacatur unambiguously qualifies as a determination "with respect to" an extension under the statute, and therefore "[t]here is no judicial review" of that determination.[3] Indeed, the Supreme Court recently concluded that materially similar jurisdiction stripping language in the Immigration and Nationality Act precluded whole categories of judicial review. *Patel v. Garland*, 596 U.S. 328, 347 (2022). And although the terms "any" and "determination" generally have a broadening effect, this Court relegated them to a footnote, ECF 93 at 24 n.8, and failed to give them their ordinary expansive meaning. *See Patel*, 596 U.S. at 338. By failing to do so, the Court failed to place the jurisdictional bar in context.

Finally, the Court's reliance on the presumption of judicial review of agency action is flawed because the Supreme Court recently reiterated that the "presumption may be overcome by specific language or evidence drawn from the statutory scheme as a whole." *Patel*, 596 U.S. at 347. Congress's intent in § 1254a(b)(5)(A) is crystal clear and is thus sufficient to overcome the *presumption* of judicial review. *See* ECF 93 at 24. Because § 1254a(b)(5)(A) contains broad and explicit jurisdiction-stripping language covering the Secretary's 2025 Vacatur and Termination determinations, Defendants are likely to prevail on appeal and this Court should stay its order.

**B.   Section 1252(f)(1) Precludes Relief Under 5 U.S.C. § 705**

Respectfully, the Court's analysis of § 1252(f)(1)'s jurisdictional bar is flawed. *See Biden v. Texas*, 597 U.S. 785, 788 (2022) (explaining that a district court injunction requiring the government to take

---

[3] Insofar as the Court believed that the government conceded reviewability of the 2025 Vacatur, that is incorrect. Defendants' brief expressly argued that "Secretary Noem's [2025 Vacatur] falls well within the statute's 'any determination' language" and "§ 1254a(b)(5)(A) eliminates this Court's jurisdiction to review any APA claim regarding the 2025 Vacatur." ECF 60, at 13. At the oral hearing, the government again reiterated that the Secretary's "decision to vacate" is "swept up under 1254a(b)(5)(A)." Hr'g Tr. 50. Subsequent exchanges about whether the Court could nonetheless review certain legal questions came in the context of counsel's acknowledgment that "the Ninth Circuit in *Ramos* and [this Court] indicated you could look at legal questions surrounding the interpretation of the statute." *Id.* at 50. Counsel correctly explained why Plaintiffs' claims failed even under that approach. But the government did not and does not concede that any review of the 2025 Vacatur is permissible; to the contrary, the statute expressly provides that there is "no judicial review" of determinations like this one.

action "violated" § 1252(f)). The Supreme Court unequivocally held that § 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022); *cf. California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982) (concluding that the Tax Injunction Act, 28 U.S.C. § 1341, which barred actions that "suspend or restrain" tax collection, removed jurisdiction to enter injunctions or declaratory relief). The Court's order violates § 1252(f)(1)'s prohibition by preventing the Secretary from exercising her authority under the TPS statute, compelling the Secretary to expend limited resources implementing a TPS designation that is contrary to the national interest, and precluding federal officials from enforcing immigration law how they deem appropriate. *See Biden*, 597 U.S. at 797; *Aleman Gonzalez*, 596 U.S. at 549 (explaining that "restrain" means to "check, hold back, or prevent (a person or thing) from some course of action," to "inhibit particular actions," or to "stop (or perhaps compel)" action) (cleaned up); 8 U.S.C. § 1254a(a)(1)(A), (d)(4); *2025 Termination*, 90 Fed. Reg. at 9,042-43. Indeed, the crux of Plaintiffs claim (and the Court's harm analysis, ECF 93 at 31-37) is that postponement under § 705 is necessary to forestall their possible removal, confirming that postponement impermissibly "enjoin[s] or restrain[s]" the Secretary's authority to carry out the TPS and removal statutes. 8 U.S.C. § 1252(f); *see* ECF 16 at 20-21.

The Court's conclusion that § 1252(f)(1)'s jurisdictional bar does not apply to postponement under 5 U.S.C. § 705 overlooks that § 1252(f)(1)'s prohibition applies "[r]egardless of the nature of the action or claim[.]" *Cf. Abbot v. Perez*, 585 U.S. 579, 595 (2018) ("[W]e have not allowed district courts to shield their orders from appellate review by avoiding the label injunction") (cleaned up). Further, the Court's exposition on the technical differences between injunctions and § 705 relief, ECF 93 at 19-22, elides the only details that matter—the standards applicable to preliminary injunctions and relief under 5 U.S.C. § 705 are the same, as is their practical effect. *See Sampson v. Murray*, 415 U.S. 61, 80 (1974); *State v. EPA*, 989 F.3d 874, 879, 883 (10th Cir. 2021); ECF 93 at 31. Applying the preliminary injunction standard to issue relief under § 705, which has the practical equivalent of an injunction, plainly runs afoul of § 1252(f)(1). *See Biden*, 597 U.S. at 797 ("Section 1252(f)(1) deprives courts of the power to issue a specific category of remedies: those that 'enjoin or restrain the operation of' the . . . statute.").

DEFENDANTS' EMERGENCY MOT. TO STAY
No. 3:25-cv-1766-EMC

4

The Court's reliance on *Texas v. U.S.*, 40 F.4th 205, 219 (5th Cir. 2022), is misplaced because the Supreme Court reversed that decision on expedited review and Justice Gorsuch criticized the district court's evasion of § 1252(f)(1) by purporting to vacate the Secretary's action under the APA. *United States v. Texas*, 599 U.S. 670, 690-91 (2023) (Gorsuch, J., concurring). Likewise, the Court's reliance on *Nken*'s analysis is erroneous because that case simply held that § 1252(f)(2)—which is not implicated here—did not bar a stay of removal for individual litigants during the pendency of a petition for review. *Nken*, 556 U.S. at 433-36. Thus, Defendants are likely to succeed on their claim that 8 U.S.C. § 1252(f)(1) deprives this Court of jurisdiction to postpone the effective date of the Secretary's determinations under 5 U.S.C. § 705. *See Biden*, 597 U.S. at 797; *Aleman Gonzalez*, 596 U.S. at 549.

### C. Defendants are Likely to Prevail on the Merits of Plaintiffs' APA Challenge

Even assuming Plaintiffs' APA claims were subject to review, Defendants are also likely to prevail on the merits of those claims. The Secretary has inherent authority to reconsider a TPS designation and properly exercised that authority here because Secretary Mayorkas's TPS extension does not become effective until "April 3, 2025[.]" *Extension of the 2023 Designation of Venez. for TPS*, 90 Fed. Reg. 5961, 5966 (Jan. 17, 2025); *see Ivy Sports Medicine, LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014) (collecting cases and explaining that "administrative agencies are assumed to possess at least some inherent authority to revisit their prior decisions, at least if done in a timely fashion."); *cf. SKF USA Inc. v. U.S.*, 254 F.3d 1022, 1028 (Fed. Cir. 2001) (an agency may remand an agency decision "because it believes its original decision was incorrect on the merits and it wishes to change the result."). Indeed, the Court both asserts that the Secretary *could* "deconsolidate" Secretary Mayorkas's TPS designations for Venezuela and that the TPS statute forbids reconsideration—even though those assertions are irreconcilable. ECF 93 at 58-59. Moreover, *China Unicom (Ams.) Ops. Ltd. v. FCC*, 124 F.4th 1128, 1143 (9th Cir. 2024), supports Defendants' argument that statutory authorization to issue a benefit "must be understood as carrying with it an implied incidental authority" to revoke it, especially because the TPS statute gives the Secretary discretion over both the length of a TPS designation and the timing of any periodic review. 8 U.S.C. § 1254a(b)(3)(A)-(C).

Furthermore, contrary to the Court's order, ECF 93 at 28, the Secretary's 2025 Vacatur determination cannot be postponed under 5 U.S.C. § 705 because it was "effective immediately." 2025 Vacatur, 90 Fed. Reg. at 8,806; see Graddick v. Newman, 453 U.S. 928, 936 (1981) (Powell, J., opinion regarding a stay denial) ("I believe that Graddick's request for a 'stay' is now moot. Ordinary linguistic usage suggests that an order, once executed, cannot be 'stayed.'"); Ctr. for Biological Diversity v. Regan, 597 F. Supp. 3d 173, 204 (D.D.C. 2022). In practice, the Court's order operates by postponing the effective date of the Secretary's 2025 *Termination*—something that § 1254a(b)(5)(A) unequivocally forbids. *See* ECF 93 at 28 (acknowledging that what Plaintiffs "are ultimately seeking to stay is postponement of . . . the actual termination of the 2023 TPS Designation"). Thus, § 705 provides no basis to disturb the Secretary's TPS determinations and Defendants are likely to prevail on appeal.

### D.   Plaintiffs Equal Protection Claims Are Also Unavailing

Although Defendants have already established the requisite likelihood of success on the merits to warrant a stay pending appeal, Defendants are also likely to prevail on the merits of Plaintiffs' equal protection claim, even assuming the Court could exercise review over that claim. The Secretary's 2025 Vacatur and Termination are rational immigration determinations related to the Government's interests in border, national security, and foreign policy that are "largely immune from judicial control." *Fiallo v. Bell*, 430 U.S. 787, 792 (1972). The Secretary's determinations—reached after consultation with other governmental agencies—that permitting Venezuelan nationals to remain in the United States under the 2023 Designation was contrary to the national interest is "plausibly related" to the Government's national-security interests and the TPS program's objectives. *Hawaii*, 585 U.S. at 704-05; *see* 8 U.S.C. § 1254a(b)(1)(C); *Poursina v. USCIS*, 936 F.3d 868, 871 (9th Cir. 2019) ("the invocation of the 'national interest' is a core example of a consideration that lacks a judicially manageable standard or review"). There is no basis to look behind it. *Id*. (emphasizing that "the 'national interest' standard invokes broader economic and national security considerations, and such determinations are firmly committed to the discretion of the Executive Branch—not to federal courts").

Plaintiffs' equal protection claim is likely to fail even under the more searching standard in *Vill. of Arlington Heights*, 429 U.S. at 265-66, because Plaintiffs must prove a racially "discriminatory purpose

DEFENDANTS' EMERGENCY MOT. TO STAY
No. 3:25-cv-1766-EMC

[was] a motivating factor in the [government's] decision," something that they cannot do through statements taken out of context or without any direct link to the Secretary's determinations. *See DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 34-35 (2020) (explaining that disparate impact, unusual recission history, and pre- and post-election statements failed "to raise a plausible inference that the recission was motivated by animus."). The paucity of Plaintiffs' evidence of an invidious discriminatory purpose is underscored by their reliance on a "cat's paw" theory of liability, which the Ninth Circuit previously (and persuasively) rejected. *Ramos v. Wolf*, 975 F.3d 872, 889 (9th Cir. 2020) (emphasizing Plaintiffs' failure to "provide any case where such a theory of liability has been extended to governmental decisions in the foreign policy and national security realm"), *vacated by Ramos v. Wolf*, 59 F.4th 1010, 1011 (9th Cir. 2023).[4] Thus, Defendants are also likely to prevail on the merits of Plaintiffs' equal protection claim.

## II.     The Balance of Harm Strongly Favors a Stay

### A.  The Court's Injunction Irreparably Harms the Government and the Public

The Court's order enjoining the 2025 Vacatur and Termination necessarily imposes irreparable harm on the government and the public. The government "suffers a form of irreparable injury" "[a]ny time [it] is enjoined by a court from effectuating statutes enacted by representatives of its people." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted). That is particularly true here because rules governing immigration "implement[] an inherent executive power." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950) ("it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien"). The Executive's assessment of the national interest warrants the utmost deference here because the Secretary made an informed assessment of "the safety, security, and financial and economic well-being of Americans." *Protecting the American People Against Invasion*, Exec. Order No. 14159, § 1, 90 Fed. Reg. at 8,443.

The Court's postponement imposes irreparable injury on the Executive Branch and the public by supplanting the Secretary's discretion-laden judgment about whether extending the 2023 TPS Designation

---

[4] Although not precedential, the vacated *Ramos* decision "still carries informational and perhaps even persuasive precedential value." *DHX Inc. v. Allianz AGF MAT, Ltd.*, 425 F.3d 1169, 1176 (9th Cir. 2005).

DEFENDANTS' EMERGENCY MOT. TO STAY
No. 3:25-cv-1766-EMC

for 348,202 Venezuelans was in the national interest. *2025 Termination*, 90 Fed. Reg. at 9,041. The Secretary determined that Tren de Aragua gang members were covered by the 2023 designation and posed a public safety threat. *See id*. at 9040, 9042-43. Further, as the Secretary explained, TPS allowed "a significant population of inadmissible and illegal aliens without a path to lawful immigration status" to remain in the United States and strain "local resources[.]" *Id*. at 9042. Consequently, after appraising the "national interest" and giving "strong consideration to the serious national security, border enforcement, public safety, immigration policy, and economic and public welfare concerns" implicated by TPS, Secretary Noem properly terminated the 2023 Designation because it was contrary to the national interest. *Id*. at 9043; *see* 8 U.S.C. § 1254a(b)(1)(C), (b)(3)(B). Given those irreparable harms and the fact that an injunction here "is not merely an erroneous adjudication of a lawsuit between private litigants, but an improper intrusion by a federal court into the workings of a coordinate branch of the Government[,]" this Court should stay its order pending appeal. *INS v. Legalization Assist. Project*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers) (granting a stay).

### B.   A Stay Pending Expedited Appeal Will Not Substantially Harm Plaintiffs

As Defendants have argued, any harm from the 2025 Vacatur and Termination is not irreparable because it flows directly from the "temporary" nature of the status Congress provided. 8 U.S.C. § 1254a(b)(1)(B)(i), (b)(1)(B)(ii), (b)(1)(C), (g). Critically, the 2025 Termination provided the requisite 60-day notice that the 2023 Designation would terminate, showing that Plaintiffs' alleged economic harms—such as the loss of employment authorization or the ability to renew drivers' licenses—are inherent in the scheme *Congress* designed. *Id.* § 1254a(b)(3)(B); *see Sampson*, 415 U.S. at 90 ("Mere injuries, however, substantial, in terms of money, time and energy necessarily expended . . . are not enough."); *2025 Termination*, 90 Fed. Reg. at 9041-43; ECF 16 at 22. Plaintiffs' broader concern about their future immigration status, ECF 16 at 20-21, fails to establish irreparable harm for the straightforward reason that neither the 2025 Vacatur nor 2025 Termination is equivalent to a final order of removal requiring Plaintiffs to depart the United States. 8 U.S.C. §§ 1101(a)(47), 1229a(a)(3); *City & Cnty of S.F.*, 944 F.3d at 806 ("this analysis focuses on irreparability, irrespective of the magnitude of the injury" (cleaned up)). TPS recipients may also have other immigrant or nonimmigrant status. *Id.* § 1254a(a)(5).

And in any event, "the burden of removal alone cannot constitute the requisite irreparable injury." *Nken*, 556 U.S. at 435; *see Leiva-Perez v. Holder*, 640 F.3d 962, 969 (9th Cir. 2011) ("[A] noncitizen must show there is a reason specific to his or her case, as opposed to a reason that would apply equally well to all aliens and all cases, that removal would inflict irreparable harm . . . ."). Thus, although Plaintiffs could potentially be separated from their families in the future, ECF 16 at 31, that is the unfortunate possible consequence of *any* removal proceeding, as Plaintiffs' members have no constitutional right to live with their family in the United States, *Dep't of State v. Munoz*, 602 U.S. 899, 915-16 (2024) ("While families of putative immigrants certainly have an interest in their admission, it is a fallacy to leap from that premise to the conclusion that United States citizens have a fundamental right that can limit how Congress exercises the Nation's sovereign power to admit or exclude foreigners." (cleaned up)); *Nken*, 556 U.S. at 435. Finally, to the extent that Plaintiffs assert that they may take other preemptive actions based on the possibility of future removal, without waiting for this litigation to conclude, any ensuing harm is self-inflicted and does not constitute irreparable injury. *See Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020); ECF 1 at 38-39. At bottom, Plaintiffs' attempt to recast their lack of immigration status as irreparable injury fails because it conflicts with Congress and the Executive's sovereign prerogative over immigration—a continuing violation of immigration law harms the public, not those, however sympathetic, without any claim to lawful status in the United States. *See Munoz*, 602 U.S. at 915-16; *Nken*, 556 U.S. at 435; *Shaughnessy*, 345 U.S. at 212, 222-23. Accordingly, the balance of harms tips decisively in Defendants' favor, and this Court should stay its injunction pending appeal. *See Nken*, 556 U.S. at 434; *City & Cty. of S.F.*, 944 F.3d at 789.

**III.    The Court Should Narrow the Nationwide Scope of its § 705 Stay**

If the Court declines to stay its order pending appeal, it should at least narrow its scope because "[a]n injunction must be 'narrowly tailored to remedy the specific harm shown.'" *East Bay Sanct. Cov. v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019) (staying a nationwide injunction) (quoting *City & Cnty. of S.F. v. Trump*, 897 F.3d 1225, 1245 (9th Cir. 2018)). A nationwide injunction "is especially problematic here given [§ 1252(f)'s] unambiguous foreclosure of any injunctive relief outside a proceeding against an individual alien." *Make the Road N.Y. v. Wolf*, 962 F.3d 612, 647 n.16 (D.C. Cir. 2020) (Rao, J.,

DEFENDANTS' EMERGENCY MOT. TO STAY
No. 3:25-cv-1766-EMC

dissenting). Indeed, Plaintiffs' evidence is limited to the effect of the 2025 Termination on their members and "the record is insufficiently developed as to . . . the national scope of the injunction[.]" *Trump*, 897 F.3d at 1245 (vacating a nationwide injunction and remanding "to the district court for a more searching inquiry into whether [the] case justifies the breadth of the injunction imposed"); ECF 16 at 30-33 (acknowledging that not all TPS holders have suffered particularized harm and speculating about possible future harm). That is doubly true because TPS recipients can receive other immigration status—illustrating that a nationwide injunction almost certainly affords relief to TPS recipients who do not need it. 8 U.S.C. § 1254a(a)(5); *see East Bay Sanct. Cov.*, 934 F.3d at 1029 ("all injunctions—even ones involving national policies—must be narrowly tailored to remedy the specific harm shown" (cleaned up)); *cf*. ECF 18 (Plaintiff E.R. applied for an H1B visa and asylum).

Moreover, a nationwide injunction "without an articulated connection to a plaintiff's particular harm, [will] unnecessarily stymie novel legal challenges and robust debate arising in different judicial districts" and encourages forum shopping. *East Bay Sant. Cov.*, 934 F.3d at 102930 (cleaned up); *see Labrador v. Poe*, 144 S. Ct. 921, 927 (2024) (Gorsuch, J., concurring) ("the . . . universal injunction effectively transformed a limited dispute between a small number of parties focused on one feature of a law into a far more consequential referendum on the law's every provision as applied to anyone."). Those concerns are highly salient here because the district courts in Maryland and Massachusetts have denied similar motions to postpone as moot in light of this Court's order. *Haitian Americans United Inc. et al v. Trump et al.*, No. 1:25-cv-10498-RGS (D. Mass.); ECF No. 39; *Casa, Inc. et al.*, v. *Noem et al*, No. GLR-25-0525 (D. Md.), ECF No. 49. A "lack of percolation has serious consequences for judicial decisionmaking." *Ramos*, 975 F.3d. at 903-04 (Nelson, J., concurring). Because injunctions must "be narrowly tailored to remedy the specific harm shown," this Court should revise its order to encompass only the Plaintiffs (and their associated members) on the date their complaint was filed.

## CONCLUSION

For these reasons, this Court should grant a stay pending appeal. If the Court declines to do so, it should narrow the scope of its order and administratively stay discovery and all other deadlines, so that Defendants may pursue a stay pending appeal before the Ninth Circuit.

DEFENDANTS' EMERGENCY MOT. TO STAY
No. 3:25-cv-1766-EMC

10

Dated: April 1, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

DREW ENSIGN
Deputy Assistant Attorney General

EREZ REUVENI
Acting Deputy Director

SARAH L. VUONG (CA Bar 258528)
Assistant Director

WILLIAM H. WEILAND (Mass. Bar 661433)
Senior Litigation Counsel

ERIC SNYDERMAN (VA Bar 99563)
ANNA DICHTER (NJ Bar 304442019)
LAUREN BRYANT (NY Bar 5321880)
AMANDA SAYLOR (FL Bar 1031480)
CATHERINE ROSS (DC Bar 9007404)
LUZ MARIA RESTREPO (NY Bar 4907077)
Trial Attorneys

/s/ *Jeffrey Hartman*
JEFFREY HARTMAN
Trial Attorney (WSBA 49810)
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 532-4404
Jeffrey.M.Hartman@usdoj.gov

*Attorneys for the Defendants*

DEFENDANTS' EMERGENCY MOT. TO STAY
No. 3:25-cv-1766-EMC

11

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division
SARAH L. VUONG (CA Bar 258528)
Assistant Director
WILLIAM H. WEILAND (Mass. Bar 661433)
Senior Litigation Counsel
LAUREN BRYANT (NY Bar 5321880)
ANNA DICHTER (NJ Bar 304442019)
JEFFREY HARTMAN (WA Bar 49810)
LUZ MARIA RESTREPO (NY Bar 4907077)
CATHERINE ROSS (DC Bar 9007404)
AMANDA SAYLOR (FL Bar 1031480)
ERIC SNYDERMAN (VA Bar 99563)
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, *et. al.*, <br><br> Plaintiff, <br> v. <br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et. al.*, <br><br> Defendants. | Case No. 3:25-cv-1766 <br><br> [PROPOSED] ORDER GRANTING MOTION FOR STAY PENDING APPEAL |

1  Before the Court is Defendants' motion for a stay pending appeal of the Court's order
2  postponing the Secretary's 2025 Vacatur and Termination decisions (ECF 93). Having reviewed the
3  motion, IT IS HEREBY ORDERED that the motion for a stay pending appeal is GRANTED.

Issued this ___ day of April, 2025.

                                            Edward M. Chen
                                            United States District Judge