• Are a national of Liberia (or an alien having no nationality who last habitually resided in Liberia);

• Received an EAD under the last designation of TPS for Liberia; and

• Have an EAD with a marked expiration date of November 21, 2016, bearing the notation "A–12" or "C–19" on the face of the card under "Category."

*When hired, what documentation may I show to my employer as proof of employment authorization and identity when completing Employment Eligibility Verification (Form I–9)?*

You can find a list of acceptable document choices on the "Lists of Acceptable Documents" for Form I–9. You can find additional detailed information on the USCIS I–9 Central Web page at *http://www.uscis.gov/I-9Central.* Employers are required to verify the identity and employment authorization of all new employees by using *Employment Eligibility Verification* (Form I–9). Within 3 days of being hired, you must present proof of identity and employment authorization to your employer.

You may present any document from List A (reflecting both your identity and employment authorization) or one document from List B (reflecting identity) together with one document from List C (reflecting employment authorization). An EAD is an acceptable document under "List A." Or you may present an acceptable receipt for a List A, List B, or List C document as described in the Form I–9 Instructions. An acceptable receipt includes a document that shows an employee has applied to replace a required document that was lost, stolen, or damaged. If you present an acceptable receipt for the application of a replacement document, you must present your employer with the actual document within 90 days. Employers may not reject a document based on a future expiration date.

If your EAD has an expiration date of November 21, 2016, and states "A–12" or "C–19" under "Category," it has been extended automatically for 6 months by virtue of this **Federal Register** Notice and you may choose to present your EAD to your employer as proof of identity and employment authorization for Form I–9 through May 20, 2017 (see the subsection titled "*How do my employer and I complete the Employment Eligibility Verification (Form I–9) using an automatically extended EAD for a new job?*" for further information). To minimize confusion over this extension at the time of hire, you should explain to your employer that USCIS has automatically extended your EAD through May 20, 2017. You may also show your employer a copy of this **Federal Register** Notice confirming the automatic extension of employment authorization through May 20, 2017. As an alternative to presenting your automatically extended EAD, you may choose to present any other acceptable document from List A, a combination of one selection from List B and one selection from List C, or a valid receipt.

*What documentation may I show my employer if I am already employed but my current TPS-related EAD is set to expire?*

Even though EADs with an expiration date of November 21, 2016, that state "A–12" or "C–19" under "Category" have been automatically extended for 6 months by this **Federal Register** Notice, your employer will need to ask you about your continued employment authorization once November 21, 2016, is reached to meet its responsibilities for *Employment Eligibility Verification* (Form I–9). Your employer may need to re-inspect your automatically extended EAD to check the expiration date and code to record the updated expiration date on your *Employment Eligibility Verification* (Form I–9) if he or she did not keep a copy of this EAD at the time you initially presented it. You and your employer must make corrections to the employment authorization dates in Section 1 and Section 2 of *Employment Eligibility Verification* (Form I–9) (see the subsection titled "*What corrections should my current employer and I make to Employment Eligibility Verification (Form I–9) if my EAD has been automatically extended?*" for further information). You are also strongly encouraged, although not required, to show this **Federal Register** Notice to your employer to explain what to do for *Employment Eligibility Verification* (Form I–9).

By May 20, 2017, the expiration date of the automatic extension, your employer must reverify your employment authorization. If you are employment authorized beyond the expiration date of the automatic extension, you must present any unexpired document from List A or any unexpired document from List C on *Employment Eligibility Verification* (Form I–9) to reverify employment authorization, or an acceptable List A or List C receipt described in the *Employment Eligibility Verification* (Form I–9) instructions. Your employer is required to reverify on *Employment Eligibility Verification* (Form I–9) the employment authorization of current employees no later than the automatically extended expiration date of a TPS-related EAD, which is May 20, 2017, in this case. Your employer should use either Section 3 of the *Employment Eligibility Verification* (Form I–9) originally completed for you or, if this section has already been completed or if the version of *Employment Eligibility Verification* (Form I–9) is no longer valid (check the date in the upper right-hand corner of the form), complete Section 3 of a new *Employment Eligibility Verification* (Form I–9) using the most current version. Note that your employer may not specify which List A or List C document employees must present, and cannot reject an acceptable receipt. An acceptable receipt is described in the *Employment Eligibility Verification* (Form I–9) Instructions and includes one that shows an employee has applied to replace a required document that was lost, stolen or damaged.

*Can my employer require that I produce any other documentation to prove my current TPS status, such as proof of my Liberian citizenship?*

No. When completing *Employment Eligibility Verification* (Form I–9), including reverifying employment authorization, employers must accept any documentation that appears on the "Lists of Acceptable Documents" for *Employment Eligibility Verification* (Form I–9) that reasonably appears to be genuine and that relates to you or an acceptable List A, List B, or List C receipt. Employers may not request documentation that does not appear on the "Lists of Acceptable Documents." Therefore, employers may not request proof of Liberian citizenship or proof of re-registration for TPS when completing *Employment Eligibility Verification* (Form I–9) for new hires or reverifying the employment authorization of current employees. Refer to the *Note to Employees* section of this Notice for important information about your rights if your employer rejects lawful documentation, requires additional documentation, or otherwise discriminates against you based on your citizenship or immigration status, or your national origin.

*What happens after May 20, 2017, for purposes of employment authorization?*

After May 20, 2017, employers may no longer accept the EADs that this **Federal Register** Notice automatically extended.

*How do my employer and I complete Employment Eligibility Verification (Form I–9) using an automatically extended EAD for a new job?*

When using an automatically extended EAD to complete Employment Eligibility Verification (Form I–9) for a new job before May 20, 2017, you and your employer should do the following:

1. For Section 1, you should:
   a. Check ''An alien authorized to work;''
   b. Write the automatically extended EAD expiration date (May 20, 2017) in the first space; and
   c. Write your alien number (USCIS number or A-number) in the second space (your EAD or other document from DHS will have your USCIS number or A-number printed on it; the USCIS number is the same as your A-number without the A prefix).
2. For Section 2, employers should record the:
   a. Document title;
   b. Issuing authority;
   c. Document number; and
   d. Automatically extended EAD expiration date (May 20, 2017).

No later than May 20, 2017, employers must reverify your employment authorization in Section 3 of Form I–9.

*What corrections should my current employer and I make to Employment Eligibility Verification (Form I–9) if my EAD has been automatically extended?*

If you are an existing employee who presented a TPS-related EAD that was valid when you first started your job, but that EAD has now been automatically extended, your employer may need to reinspect your automatically extended EAD if your employer does not have a photocopy of the EAD on file, and you and your employer should correct your previously completed Form I–9 as follows:

1. For Section 1, you should:
   a. Draw a line through the expiration date in the first space;
   b. Write ''May 20, 2017,'' above the previous date;
   c. Write ''TPS Ext.'' in the margin of Section 1; and
   d. Initial and date the correction in the margin of Section 1.
2. For Section 2, employers should:
   a. Draw a line through the expiration date written in Section 2;
   b. Write ''May 20, 2017'' above the previous date;
   c. Write ''EAD Ext.'' in the margin of Section 2; and
   d. Initial and date the correction in the margin of Section 2.

No later than May 20, 2017, when the automatic extension of EADs expires, employers must reverify your employment authorization in Section 3.

*As an employer, what are my Employment Eligibility Verification (Form I–9) obligations after May 20, 2017?*

Employers are required to reverify an employee's employment authorization in Section 3 of Employment Eligibility Verification (Form I–9) by the expiration date of an automatically extended EAD. Your employee must present unexpired documentation from either List A or List C (or an acceptable Form I–9 receipt) showing he or she is still authorized to work. Employers may not ask for specific documents; employees choose which List A or List C documents to present from the Lists of Acceptable Documents.

*If I am an employer enrolled in E-Verify, what do I do when I receive a ''Work Authorization Documents Expiration'' alert for an automatically extended EAD?*

If you have an employee who is a TPS beneficiary who provided a TPS-related EAD when he or she first started working for you, you will receive a ''Work Authorization Documents Expiring'' case alert when the auto-extension period for this EAD is about to expire. E-Verify will not send an alert for the original November 21, 2016 expiration date. By May 20, 2017, employment authorization must be reverified in Section 3. Employers should not use E-Verify for reverification.

**Note to All Employers**

Employers are reminded that the laws requiring proper employment eligibility verification and prohibiting unfair immigration-related employment practices remain in full force. This **Federal Register** Notice does not supersede or in any way limit applicable employment verification rules and policy guidance, including those rules setting forth reverification requirements. For general questions about the employment eligibility verification process, employers may call USCIS at 888–464–4218 (TTY 877–875–6028) or email *I-9Central@dhs.gov*. Calls and emails are accepted in English and many other languages. For questions about avoiding discrimination during the employment eligibility verification process, employers may also call the U.S. Department of Justice, Office of Special Counsel for Immigration-Related Unfair Employment Practices (OSC) Employer Hotline, at 800–255–8155

(TTY 800–237–2515), which offers language interpretation in numerous languages, or email OSC at *osccrt@usdoj.gov*.

**Note to Employees**

For general questions about the employment eligibility verification process, you may call USCIS at 888–897–7781 (TTY 877–875–6028) or email *I-9Central@dhs.gov*. Calls are accepted in English and many other languages. You may also call the OSC Worker Information Hotline at 800–255–7688 (TTY 800–237–2515) for information regarding employment discrimination based upon citizenship status, immigration status, or national origin, including discrimination related to *Employment Eligibility Verification* (Form I–9) and E-Verify. The OSC Worker Information Hotline provides language interpretation in numerous languages.

To comply with the law, employers must accept any document or combination of documents from the Lists of Acceptable Documents if the documentation reasonably appears to be genuine and to relate to the employee, or an acceptable receipt described in the *Employment Eligibility Verification* (Form I–9) Instructions. Employers may not require extra or additional documentation beyond what is required for *Employment Eligibility Verification* (Form I–9) completion. Further, employers participating in E-Verify who receive an E-Verify case result of ''Tentative Nonconfirmation'' (TNC) must promptly inform employees of the TNC and give such employees an opportunity to contest the TNC. A TNC case result means that the information entered into E-Verify from *Employment Eligibility Verification* (Form I–9) differs from Federal or State government records.

Employers may not terminate, suspend, delay training, withhold pay, lower pay, or take any adverse action against you based on your decision to contest a TNC or because the case is still pending with E-Verify. A Final Nonconfirmation (FNC) case result is received when E-Verify cannot verify your employment eligibility. An employer may terminate employment based on a case result of FNC. Work-authorized employees who receive an FNC may call USCIS for assistance at 888–897–7781 (TTY 877–875–6028). If you believe you were discriminated against by an employer in the E-Verify process based on citizenship, immigration status, or national origin, you may contact OSC's Worker Information Hotline at 800–255–7688 (TTY 800–237–2515). Additional

information about proper nondiscriminatory *Employment Eligibility Verification* (Form I–9) and E-Verify procedures is available on the OSC Web site at *http://www.justice.gov/crt/about/osc/* and the USCIS Web site at *http://www.dhs.gov/E-verify.*

**Note Regarding Federal, State, and Local Government Agencies (Such as Departments of Motor Vehicles)**

While Federal Government agencies must follow the guidelines laid out by the Federal Government, State and local government agencies establish their own rules and guidelines when granting certain benefits. Each State may have different laws, requirements, and determinations about what documents you need to provide to prove eligibility for certain benefits. Whether you are applying for a Federal, State, or local government benefit, you may need to provide the government agency with documents that show you are a TPS beneficiary and/or show you are authorized to work based on TPS. Examples are:

(1) Your unexpired EAD;

(2) A copy of this **Federal Register** Notice if your EAD is automatically extended under this Notice;

(3) A copy of your Application for Temporary Protected Status Notice of Action (Form I–797);

(4) A copy of your past or current Application for Temporary Protected Status Approval Notice (Form I–797), if you received one from USCIS; and/or

(5) If there is an automatic extension of work authorization, a copy of the fact sheet from the USCIS TPS Web site that provides information on the automatic extension.

Check with the government agency regarding which document(s) the agency will accept. You may also provide the agency with a copy of this **Federal Register** Notice.

Some benefit-granting agencies use the USCIS Systematic Alien Verification for Entitlements Program (SAVE) to confirm the current immigration status of applicants for public benefits. In most cases, SAVE provides an automated electronic response to benefit granting agencies within seconds but occasionally verification can be delayed. You can check the status of your SAVE verification by using CaseCheck at the following link: *https://save.uscis.gov/casecheck/,* then by clicking the "Check Your Case" button. CaseCheck is a free service that lets you follow the progress of your SAVE verification using your date of birth and one immigration identifier number. If such an agency has denied your application based solely or in part on a SAVE response, the agency

must offer you the opportunity to appeal the decision in accordance with the agency's procedures. If the agency has received and acted upon or will act upon a SAVE verification and you do not believe the response is correct, you may make an InfoPass appointment for an in-person interview at a local USCIS office. Detailed information on how to make corrections, make an appointment, or submit a written request to correct records under the Freedom of Information Act can be found at the SAVE Web site at *http://www.uscis.gov/save,* then by choosing "For Benefit Applicants" from the menu on the left and selecting "Questions about your Records?".

[FR Doc. 2016–23250 Filed 9–22–16; 4:15 pm]

**BILLING CODE 9111–97–P**

---

**DEPARTMENT OF HOMELAND SECURITY**

**U.S. Citizenship and Immigration Services**

**[CIS No. 2587–16; DHS Docket No. USCIS–2014–0010]**

**RIN 1615–ZB55**

**Six-Month Extension of Temporary Protected Status Benefits for Orderly Transition Before Termination of Guinea's Designation for Temporary Protected Status**

**AGENCY:** U.S. Citizenship and Immigration Services, Department of Homeland Security.

**ACTION:** Notice.

**SUMMARY:** The designation of Guinea for Temporary Protected Status (TPS) is set to expire on November 21, 2016. After reviewing country conditions and consulting with the appropriate U.S. Government (Government) agencies, the Secretary of the Department of Homeland Security (Secretary) has determined that conditions in Guinea no longer support its designation for TPS and is therefore extending TPS benefits for 6 months for the purpose of orderly transition before the TPS designation of Guinea terminates. This termination will be effective May 21, 2017, 6 months following the end of the current designation.

To provide for an orderly transition, nationals of Guinea (and aliens having no nationality who last habitually resided in Guinea) who have been granted TPS under the Guinea designation will automatically retain their TPS and have their current tps-based Employment Authorization Documents (EAD) extended through

May 20, 2017. However, an individual's TPS may still be withdrawn because of ineligibility for TPS. On May 21, 2017, nationals of Guinea (and aliens having no nationality who last habitually resided in Guinea) who have been granted TPS under the Guinea designation will no longer have TPS.

**DATES:** The designation of Guinea for TPS is terminated effective at 12:01 a.m., local time, on May 21, 2017.

**FOR FURTHER INFORMATION CONTACT:**

• For further information on TPS, please visit the U.S. Citizenship and Immigration Services (USCIS) TPS Web page at *http://www.uscis.gov/tps.* You can find specific information about the termination of Guinea's TPS designation by selecting "Guinea" from the menu on the left side of the TPS Web page.

• You can also contact Jerry Rigdon, Chief of the Waivers and Temporary Services Branch, Service Center Operations Directorate, U.S. Citizenship and Immigration Services, Department of Homeland Security, 20 Massachusetts Avenue NW., Washington, DC 20529–2060; or by phone at 202–272–1533 (this is not a toll-free number). Note: The phone number provided here is solely for questions regarding this TPS Notice. It is not for individual case status inquires.

• Applicants seeking information about the status of their individual cases can check Case Status Online, available at the USCIS Web site at *http://www.uscis.gov,* or call the USCIS National Customer Service Center at 800–375–5283 (TTY 800–767–1833).

• Further information will also be available at local USCIS offices upon publication of this Notice.

**SUPPLEMENTARY INFORMATION:**

**Table of Abbreviations**

DHS—Department of Homeland Security
DOS—Department of State
EAD—Employment Authorization Document
EVD—Ebola Virus Disease
FNC—Final Nonconfirmation
Government—U.S. Government
INA—Immigration and Nationality Act
OSC—Department of Justice, Office of Special Counsel for Immigration-Related Unfair Employment Practices
SAVE—USCIS Systematic Alien Verification for Entitlements Program
Secretary—Secretary of Homeland Security
TNC—Tentative Nonconfirmation
TPS—Temporary Protected Status
TTY—Text Telephone
USCIS—U.S. Citizenship and Immigration Services
WHO—World Health Organization

**What is Temporary Protected Status (TPS)?**

• TPS is a temporary immigration status granted to eligible nationals of a

**Federal Register** / Vol. 68, No. 170 / Wednesday, September 3, 2003 / Notices **52407**

(4) Be both admissible as an immigrant, except as provided under section 244(c)(2)(A) of the Act, and not ineligible under section 244(c)(2)(B) of the Act.

Additionally, the applicant must be able to demonstrate that during the registration period for the initial designation (from November 4, 1997 to November 3, 1998), or during the registration period for the redesignation (from November 9, 1999 to November 2, 2000), he or she:

(1) Was a nonimmigrant or had been granted voluntary departure status or any relief from removal;

(2) Had an application for change of status, adjustment of status, asylum, voluntary departure, or any relief from removal or change of status pending or subject to further review or appeal;

(3) Was a parolee or had a pending request for reparole; or

(4) Was the spouse or child of an alien currently eligible to be a TPS registrant.

An applicant for late initial registration must file an application for late registration no later than 60 days after the expiration or termination of the conditions described above. 8 CFR 244.2(g).

### What Happens When This Extension of TPS Expires on November 2, 2004?

At least 60 days before this extension of TPS expires on November 2, 2004, the Secretary of DHS will review conditions in Burundi and determine whether the conditions for designation under the TPS program continue to be met at that time, or whether the TPS designation should be terminated. Notice of that determination, including the basis for the determination, will be published in the **Federal Register**.

If the TPS designation is extended at that time, an alien who has received TPS benefits must re-register under the extension in order to maintain TPS benefits. If, however, the Secretary of DHS terminates the TPS designation, TPS beneficiaries will maintain the immigration status they had before TPS (unless that status had since expired or been terminated) or any other status they may have acquired while registered for TPS. Accordingly, if an alien had no lawful immigration status prior to receiving TPS and did not obtain any status during the TPS period, he or she will revert to that unlawful status upon termination of the TPS designation.

### Notice of Extension of Designation of Burundi Under the TPS Program

By the authority vested in me as Secretary of DHS under sections 244(b)(1)(A), (b)(3)(A), and (b)(3)(C) of the Act, I have consulted with the appropriate government agencies and determine that the conditions that prompted designation of Burundi for TPS continue to be met. 8 U.S.C. 1254a(b)(3)(A). Accordingly, I order as follows:

(1) The designation of Burundi under section 244(b)(1)(A) of the Act is extended for an additional 12-month period from November 2, 2003, to November 2, 2004. 8 U.S.C. 1254a(b)(3)(C).

(2) There are approximately 30 nationals of Burundi (or aliens having no nationality who last habitually resided in Burundi) who have been granted TPS and who are eligible for re-registration.

(3) To maintain TPS, a national of Burundi (or an alien having no nationality who last habitually resided in Burundi) who was granted TPS during the initial designation period or redesignation period must re-register for TPS during the 60-day re-registration period from September 3, 2003 until November 3, 2003.

(4) To re-register, the applicant must file the following: (1) Form I–821, Application for Temporary Protected Status; (2) Form I–765, Application for Employment Authorization; and (3) two identification photographs (1½ inches by 1½ inches). Applications submitted without the required fee and/or photos will be returned to the applicant. There is no fee for filing a Form I–821 for re-registration application. If the applicant requests employment authorization, he or she must submit one hundred and twenty dollars ($120) or a properly documented fee waiver request, pursuant to 8 CFR 244.20, with the Form I–765. An applicant who does not request employment authorization must nonetheless file Form I–765 along with Form I–821, but is not required to submit the fee. The fifty-dollar ($50) fingerprint fee is required only for children beneficiaries of TPS who have reached the age of 14 but were not previously fingerprinted. Failure to re-register without good cause will result in the withdrawal of TPS. 8 CFR 244.17(c). Some persons who had not previously applied for TPS may be eligible for late initial registration under 8 CFR 244.2.

(5) At least 60 days before this extension terminates on November 2, 2004, the Secretary will review the designation of Burundi under the TPS program and determine whether the conditions for designation continue to be met. 8 U.S.C. 1254a(b)(3)(A). Notice of that determination, including the basis for the determination, will be published in the **Federal Register**. 8 U.S.C. 1254a(b)(3)(A).

(6) Information concerning the extension of designation of Burundi under the TPS program will be available at local BCIS offices upon publication of this notice and on the BCIS Web site at *http://www.bcis.gov*.

Dated: August 28, 2003.

**Tom Ridge,**

*Secretary of Homeland Security.*

[FR Doc. 03–22508 Filed 8–29–03; 12:00 pm]

**BILLING CODE 4410–10–P**

---

## DEPARTMENT OF HOMELAND SECURITY

### Bureau of Citizenship and Immigration Services

[CIS No. 2294–03]

RIN 1650–AB06

### Termination of the Designation of Sierra Leone Under the Temporary Protected Status Program; Extension of Employment Authorization Documentation

**AGENCY:** Bureau of Citizenship and Immigration Services, Homeland Security.

**ACTION:** Notice.

**SUMMARY:** The designation of Sierra Leone under the Temporary Protected Status (TPS) Program will expire on November 2, 2003. After reviewing country conditions and consulting with the appropriate Government agencies, the Secretary of Homeland Security has determined that conditions in Sierra Leone no longer support TPS designation and is therefore terminating the TPS designation of Sierra Leone. This termination is effective May 3, 2004, six months from the end of the current extension. To provide for an orderly transition, nationals of Sierra Leone (and aliens having no nationality who last habitually resided in Sierra Leone) who have been granted TPS under the Sierra Leone designation or redesignation will automatically retain their temporary protected status and have their current Employment Authorization Documents (EADs) extended until the termination date. However, an individual's TPS may still be withdrawn because of ineligibility for TPS, prior failure to timely re-register if there was not good cause for such failure, or failure to maintain continuous physical presence in the United States. On May 3, 2004, nationals of Sierra Leone (and aliens having no nationality who last habitually resided in Sierra Leone) who have been granted TPS under the Sierra

Leone designation or redesignation will no longer have TPS status.

**EFFECTIVE DATE:** The TPS designation of Sierra Leone is terminated effective May 3, 2004.

**FOR FURTHER INFORMATION CONTACT:** Jonathan Mills, Residence and Status Services, Office of Programs and Regulations, Bureau of Citizenship and Immigration Services, Department of Homeland Security, 425 "I" Street, NW., Room 3040, Washington, DC 20536, telephone (202) 514–4754.

**SUPPLEMENTARY INFORMATION:**

**What Authority Does the Secretary of the Department of Homeland Security Have To Terminate the Designation of Sierra Leone Under the TPS Program?**

On March 1, 2003, the functions of the Immigration and Naturalization Service (Service) transferred from the Department of Justice to the Department of Homeland Security (DHS) pursuant to the Homeland Security Act of 2002, Public Law 107–296. The responsibilities for administering the TPS program held by the Service were transferred to the Bureau of Citizenship and Immigration Services (BCIS).

Under section 244 of the Immigration and Nationality Act (Act), 8 U.S.C. 1254a, the Secretary of DHS, after consultation with appropriate agencies of the Government, is authorized to designate a foreign state or (part thereof) for TPS. The Secretary of DHS may then grant TPS to eligible nationals of that foreign state (or aliens having no nationality who last habitually resided in that state).

Section 244(b)(3)(A) of the Act requires the Secretary of DHS to review, at least 60 days before the end of the TPS designation or any extension thereof, the conditions in a foreign state designated under the TPS program to determine whether the conditions for a TPS designation continue to be met and, if so, the length of an extension of TPS. 8 U.S.C. 1254a(b)(3)(A). If the Secretary of DHS determines that the foreign state no longer meets the conditions for TPS designation, he shall terminate the designation, but such termination may not take effect earlier than 60 days after the date the **Federal Register** notice of termination is published. 8 U.S.C. 1254a(b)(3)(B). The Secretary of DHS may determine the appropriate effective date of the termination in order to provide an orderly transition. 8 U.S.C. 1254a(d)(3).

**Why Did the Secretary of DHS Decide To Terminate the TPS Designation for Sierra Leone as of May 3, 2004?**

On November 4, 1997, the Attorney General published a notice in the **Federal Register** designating Sierra Leone under the TPS program based upon ongoing armed conflict occurring within the country. 62 FR 59736. The Attorney General extended this TPS designation annually and re-designated Sierra Leone by publishing a notice on November 9, 1999, determining in each instance that the conditions warranting such designation continued to be met. 64 FR 61125.

Since the date of the last extension, the Departments of Homeland Security and State have continued to review conditions in Sierra Leone. It is determined that termination of the TPS designation of Sierra Leone is warranted because there is no longer an ongoing armed conflict within Sierra Leone that would pose a serious threat to the personal safety of returning nationals of Sierra Leone (or aliens having no nationality who last habitually resided in Sierra Leone). 8 U.S.C. 1254a(b)(1)(A) and (B).

The Department of State (DOS) notes that the armed conflict that provided the basis for the Sierra Leone TPS designation is over. DOS Recommendation (June 19, 2003). Most of Sierra Leone has been at peace for nearly three years. *Id.* More than 66,000 ex-combatants have entered into a program of disarmament, demobilization, and reintegration into society. *Id.* Disarmament was largely complete by January 2002, and there has been no fighting since that time. *Id.* Peaceful multiparty presidential and parliamentary elections took place in May 2002. *Id.*

A year ago, the overall political situation was fragile. *Id.* Since then, however, human rights abuses have decreased dramatically nationwide. *Id.* The United Nations High Commissioner for Refugees (UNHCR) considers no area of the country unsafe to return. *Id.* More than 400,000 refugees have returned home to participate in the reconstruction of their country. *Id.* Of the approximately 45,000 refugees remaining in neighboring countries, two-thirds are expected to return home by December 2003. *Id.* In addition, reintegration of the 300,000 internally displaced persons (IDPs) is nearly complete. *Id.*

While there are approximately 60,000 Liberian refugees in Sierra Leone, they are concentrated along the eastern border with Liberia and have not caused any instability in Sierra Leone. *Id.*

Furthermore, there have been no recent cross-border attacks from Liberia into Sierra Leone. *Id.*

The BCIS Resource Information Center (RIC) notes additional indications of stability. RIC Report (July 10, 2003). A special court has been created to bring to justice those most responsible for war crimes and other major human rights violations. *Id.* A Truth and Reconciliation Commission has been established to establish a record of the conflict and promote reconciliation. *Id.* Humanitarian and economic conditions have improved markedly. *Id.*

The newly elected government enjoys significant international support and has extended police control across the country. DOS Recommendation. A British-trained police force is in place. RIC Report. The British government continues to assist and train Sierra Leone's 10,000-member armed forces and has committed to providing significant support for at least six years. DOS Recommendation. The United Nations (U.N.) Security Council has determined that security conditions have improved so much that the international U.N. peacekeeping force, which once numbered 17,500 troops, can be phased out. *Id.* The peacekeeping force currently numbers 14,000, and will further decrease to about 9,000 by year's end. *Id.*

Based upon this review, the Secretary of DHS, after consultation with appropriate government agencies, finds that the conditions that prompted designation of Sierra Leone under the TPS program no longer exist. 8 U.S.C. 1254a(b)(3). There is not an ongoing armed conflict within Sierra Leone that would pose a serious threat to the personal safety of returning aliens who are nationals of Sierra Leone (or aliens having no nationality who last habitually resided in Sierra Leone). 8 U.S.C. 1254a(b)(1)(A). Based upon these findings, the Secretary of DHS is terminating the TPS designation for Sierra Leone as of May 3, 2004. 8 U.S.C. 1254a(b)(3)(B).

To provide for an orderly transition, nationals of Sierra Leone (and aliens having no nationality who last habitually resided in Sierra Leone) who have been granted TPS under the Sierra Leone designation or redesignation will automatically retain TPS status and have their current employment authorization documents (EADs) extended until the termination date. 8 U.S.C. 1254a(a)(2) and (d)(3). These persons are urged to use the time before termination of their TPS to apply for any other immigration benefits they are eligible for or, in the alternative, prepare

for and arrange their return to Sierra Leone.

**If I Currently Have TPS Through the Sierra Leone TPS Program, Do I Need to Re-Register To Keep My TPS Until May 3, 2004, the Termination Date?**

No. If you already have been granted TPS benefits through the Sierra Leone TPS program, you do not have to re-register to keep your TPS benefits. You will automatically retain TPS until the termination date. However, your TPS status may still be withdrawn pursuant to section 244(c)(3) of the Act because of ineligibility for TPS, prior failure to timely re-register if there was not good cause for such failure, or failure to maintain continuous physical presence in the United States. 8 U.S.C. 1254a(c)(3), 8 CFR 244.14. When termination occurs on May 3, 2004, you will no longer have TPS.

**Why Is the Secretary of DHS Automatically Extending the Validity of EADs From November 2, 2003, to May 3, 2004?**

The Secretary of DHS has decided to extend automatically the validity of EADs to provide for an orderly transition leading up to the effective date for the termination of the Sierra Leone TPS designation. Therefore, the validity of the applicable EADs is extended for a period of 6 months, to May 3, 2004. 8 U.S.C. 1254a(a)(2) and (d)(3).

**Who Is eligible To Receive an Automatic Extension of His or Her EAD?**

To receive an automatic extension of his or her EAD, an individual must be a national of Sierra Leone (or an alien having no nationality who last habitually resided in Sierra Leone) who has applied for and received an EAD under the TPS designation or redesignation of Sierra Leone. This automatic extension is limited to EADs issued on either Form I–766, Employment Authorization Document, or Form I–688B, Employment Authorization Card, bearing an expiration date of November 2, 2003. The EAD must also be either (1) a Form I–766 bearing the notation "A–12" or "C–19" on the face of the card under "Category"; or (2) a Form I–688B bearing the notation "274A.12(A)(12)" or "274A.12(C)(19)" on the face of the card under "Provision of Law".

**Must Qualified Individuals Apply for the Automatic Extension of Their TPS–Related EADs Until May 3, 2004?**

No. Qualified individuals do not have to apply for this extension of their TPS-related EADs to May 3, 2004.

**What Documents May a Qualified Individual Show to His or Her Employer as Proof of Employment Authorization and Identity When Completing the Employment Eligibility Verification Form (Form I–9)?**

For completion of the Form I–9 at the time of hire or re-verification, qualified individuals who have received an extension of their EADs by virtue of this **Federal Register** notice may present to their employer a TPS-related EAD as proof of identity and employment authorization until May 3, 2004. To minimize confusion over this extension at the time of hire or re-verification, qualified individuals may also present to their employer a copy of this **Federal Register** notice regarding the automatic extension of employment authorization documentation to May 3, 2004. In the alternative, any legally acceptable document or combination of documents listed in List A, List B, or List C of the Form I–9 may be presented as proof of identity and employment eligibility; it is the choice of the employee.

**How May Employers Determine Whether an EAD Has Been Automatically Extended Through May 3, 2004 and Is Therefore Acceptable for Completion of the Form I–9?**

For purposes of verifying identity and employment eligibility or re-verifying employment eligibility on the Form I–9 until May 3, 2004, employers of Sierra Leone TPS class members whose EADs have been automatically extended by this notice must accept such EAD if presented. An EAD that has been automatically extended by this notice will contain an expiration date of November 2, 2003, and must be either (1) a Form I–766 bearing the notation "A–12" or "C–19" on the face of the card under "Category", or (2) a Form I–688B bearing the notation "274A.12(A)(12)" or "274A.12(C)(19)" on the face of the card under "Provision of Law". New EADs or extension stickers showing the May 3, 2004 expiration date will not be issued.

Employers should not request proof of Sierra Leone citizenship. Employers presented with an EAD that this **Federal Register** notice has extended automatically, that appears to be genuine and appears to relate to the employee should accept the document as a valid "List A" document and should not ask for additional Form I–9 documentation. This action by the Secretary of the DHS through this **Federal Register** notice does not affect the right of an employee to present any legally acceptable document as proof of identity and eligibility for employment.

Employers are reminded that the laws prohibiting unfair immigration-related employment practices remain in full force. For questions, employers may call the BCIS Office of Business Liaison Employer Hotline at 1–800–357–2099 to speak to a BCIS representative. Also, employers may call the U.S. Department of Justice Office of Special Counsel for Immigration Related Unfair Employment Practices (OSC) Employer Hotline at 1–800–255–8155 or 1–800–362–2735 (TDD). Employees or applicants may call the OSC Employee Hotline at 1–800–255–7688 or 1–800–237–2515 (TDD) for information regarding the automatic extension. Additional information is available on the OSC Web site at *http://www.usdoj.gov/crt/osc/index.html.*

**What May I Do if I Believe That Returning to Sierra Leone Would Be Unsafe?**

This notice terminates the designation of Sierra Leone for TPS. For nationals of Sierra Leone (and aliens having no nationality who last habitually resided in Sierra Leone) in the United States who believe that their particular circumstances make return to Sierra Leone unsafe, there may be avenues of immigration relief and protection available. Such avenues may include, but are not limited to, asylum, withholding of removal, or protection under Article 3 of the Torture Convention.

Eligibility for these and other immigration benefits is determined individually on a case-by-case basis. For information on eligibility and how to apply, visit the BCIS web site at *http://www.bcis.gov* or call the BCIS National Customer Service Center at 1–800–375–5283.

**How Does the Termination of TPS Affect Former TPS Beneficiaries?**

After the designation of Sierra Leone for TPS is terminated on May 3, 2004, former TPS beneficiaries will maintain the same immigration status they held prior to TPS (unless that status has since expired or been terminated) or any other status they may have acquired while registered for TPS. Accordingly, if an alien held no lawful immigration status prior to receiving TPS benefits and did not obtain any other status during the TPS period, he or she will maintain that

unlawful status upon the termination of the TPS designation.

Former TPS beneficiaries will no longer be eligible for a stay of removal or an EAD pursuant to the TPS program. TPS-related EADs will expire on May 3, 2004, and will not be renewed.

Termination of the TPS designation for Sierra Leone does not necessarily affect pending applications for other forms of immigration relief or protection, though former TPS beneficiaries will begin to accrue unlawful presence as of May 3, 2004, if they have not been granted any other immigration status or protection or if they have no pending application for certain benefits.

### Notice of Termination of Designation of Sierra Leone Under the TPS Program

By the authority vested in me as Secretary of the Department of Homeland Security under section 244(b)(3) of the Act, I have consulted with the appropriate agencies of government concerning conditions in Sierra Leone. 8 U.S.C. 1254a(b)(3). Based on these consultations, I have determined that Sierra Leone no longer meets the conditions for designation of TPS under section 244(b)(1) of the Act. 8 U.S.C. 1254a(b)(1).

Accordingly, I order as follows:

(1) Pursuant to sections 244(b) of the Act, the TPS designation of Sierra Leone for TPS terminated effective May 3, 2004, six months from the end of the current extension.

(2) I estimate that there are approximately 2,700 nationals of Sierra Leone (and aliens having no nationality who last habitually resided in Sierra Leone) who currently receive TPS benefits.

(3) To provide for an orderly transition, nationals of Sierra Leone (and aliens having no nationality who last habitually resided in Sierra Leone) who have been granted TPS under the Sierra Leone designation or redesignation will automatically retain temporary protected status until the termination date. However, an individual's TPS may still be withdrawn pursuant to section 244(c)(3) of the Immigration and Nationality Act and 8 CFR 244.14 because of ineligibility for TPS, prior failure to timely re-register if there was not good cause for such failure, or failure to maintain continuous physical presence in the United States.

(4) TPS-related Employment Authorization Documents that expire on November 2, 2003, are extended automatically until May 3, 2004, for qualified nationals of Sierra Leone (and

aliens having no nationality who last habitually resided in Sierra Leone).

(5) Information concerning the termination of the TPS program for nationals of Sierra Leone (and aliens having no nationality who last habitually resided in Sierra Leone) will be available at local BCIS offices upon publication of this notice and through the BCIS National Customer Service Center at 1–800–375–5283. This information will also be published on the BCIS Web site at *http://www.bcis.gov.*

Dated: August 28, 2003.

**Tom Ridge,**
*Secretary of Homeland Security.*
[FR Doc. 03–22488 Filed 8–29–03; 11:16 am]
**BILLING CODE 4410–10–P**

---

### DEPARTMENT OF HOMELAND SECURITY

### Bureau of Citizenship and Immigration Services

**[CIS No. 2293–03]**

**RIN 1650–AB06**

### Extension of the Designation of Sudan Under Temporary Protected Status Program

**AGENCY:** Bureau of Citizenship and Immigration Services, Homeland Security.

**ACTION:** Notice.

**SUMMARY:** The designation of Sudan under the Temporary Protected Status (TPS) Program will expire on November 2, 2003. This notice extends the Secretary of Homeland Security's designation of Sudan for 12 months until November 2, 2004, and sets forth procedures necessary for nationals of Sudan (or aliens having no nationality who last habitually resided in Sudan) with TPS to re-register and to apply for an extension of their employment authorization documentation for the additional 12-month period. Re-registration is limited to persons who registered no later than November 3, 1998, under the initial designation and also timely re-registered under each subsequent extension of the designation, or who registered under the re-designation no later than November 2, 2000, and also timely re-registered under the extension of the re-designation. Certain nationals of Sudan (or aliens having no nationality who last habitually resided in Sudan) who previously have not applied for TPS may be eligible to apply under the late initial registration provisions.

**EFFECTIVE DATES:** The extension of Sudan's TPS designation is effective November 2, 2003, and will remain in effect until November 2, 2004. The 60-day re-registration period begins September 3, 2003, and will remain in effect until November 3, 2003.

**FOR FURTHER INFORMATION CONTACT:** Jonathan Mills, Residence and Status Services, Office of Programs and Regulations, Bureau of Citizenship and Immigration Services, Department of Homeland Security, 425 "I" Street, NW., Room 3040, Washington, DC 20536, telephone (202) 514–4754.

**SUPPLEMENTARY INFORMATION:**

### What Authority Does the Secretary of the Department of Homeland Security Have To Extend The Designation of Sudan Under the TPS Program?

On March 1, 2003, the functions of the Immigration and Naturalization Service (Service) transferred from the Department of Justice to the Department of Homeland Security (DHS) pursuant to the Homeland Security Act of 2002, Pub. L. 107–296. The responsibilities for administering the TPS program held by the Service were transferred to the Bureau of Citizenship and Immigration Services (BCIS).

Under section 244 of the Immigration and Nationality Act (Act), 8 U.S.C. 1254a, the Secretary of DHS, after consultation with appropriate agencies of the Government, is authorized to designate a foreign state or (part thereof) for TPS. The Secretary of DHS may then grant TPS to eligible nationals of that foreign state (or aliens having no nationality who last habitually resided in that state).

Section 244(b)(3)(A) of the Act requires the Secretary of DHS to review, at least 60 days before the end of the TPS designation or any extension thereof, the conditions in a foreign state designated under the TPS program to determine whether the conditions for a TPS designation continue to be met and, if so, the length of an extension of TPS. 8 U.S.C. 1254a(b)(3)(A). If the Secretary of DHS determines that the foreign state no longer meets the conditions for TPS designation, he shall terminate the designation, as provided in section 244(b)(3)(B) of the Act. 8 U.S.C. 1254a(b)(3)(B). Finally, if the Secretary of DHS does not determine that a foreign state (or part thereof) no longer meets the conditions for designation at least 60 days before the designation or extension is due to expire, section 244(b)(3)(C) of the Act provides for an automatic extension of TPS for an additional period of 6 months (or, in the discretion of the Secretary of DHS, a

## V. Procedures Available for Modification of the Proposed Judgment

The proposed judgment is subject to a stipulation between the government and the defendant which provides that the government may withdraw its consent to the proposed judgment any time before the Court has found that entry of the judgment is in the public interest. By it's terms, the proposed judgment provides for the Court's retention of jurisdiction of this action in order to permit any of the parties to apply to the Court for such orders as may be necessary or appropriate for the modification of the judgment, including the demonstration of retail market conditions outlined in Section VI of the decree.

As provided by the APPA (15 U.S.C. 16), any person wishing to comment upon the proposed judgment may, for a sixty-day (60) period subsequent to the publishing of this document in the Federal Register, submit written comments to the United States Department of Justice, Antitrust Division, Attention: Roger W. Fones, 325 Seventh Street, N.W., Washington, D.C. 20530. Such comments and the government's response to them will be filed with the Court and published in the Federal Register. The government will evaluate all such comments to determine whether there is any reason for withdrawal of its content to the proposed judgment.

## VI. Alternative to the Proposed Judgment

The alternative to the proposed judgment considered by the Antitrust Division was a full trial of the issues on the merits and on relief. The Division considered the substantive language of the proposed judgment to be of sufficient scope and effectiveness to make litigation on the issues unnecessary, as the judgment provides all of the relief sought against the violations alleged in the compliant.

## VII. Determinative Materials and Documents

No materials or documents were considered determination by the United States in formulating the proposed judgment. Therefore, none are being filed pursuant to the APPA, 15 U.S.C. 16(b).

Department of Justice Antitrust Division

By:

Jade Alice Eaton,

*Transportation, Energy, and Agriculture Section, 325 Seventh Street, N.W., Suite 500, Washington, D.C. 20530, (202) 307–6316.*
[FR Doc. 98–8398 Filed 3–30–98; 8:45 am]
**BILLING CODE 4410–11–M**

## DEPARTMENT OF JUSTICE

### Antitrust Division

### Notice Pursuant to the National Cooperative Research and Production Act of 1993—Network Management Forum

Notice is hereby given that, on November 19, 1997, pursuant to Section 6(a) of the National Cooperative Research and Production Act of 1993, 15 U.S.C. 4301 *et seq.* ("the Act"), the Network Management Forum ("the Forum") has filed written notifications simultaneously with the Attorney General and the Federal Trade Commission disclosing additions to its membership. The notifications were filed for the purpose of extending the Act's provisions limiting the recovery of antitrust plaintiffs to actual damages under specified circumstances. Specifically, the identities of the new members to the venture are as follows: DMR TRECOM, Milford, CT; and Technology & Process Consulting, Inc., Birmingham, AL are Corporate Members. Bouygues Telecom, Velizy, Cedex, France; Call Technologies, Inc., Reston, VA; CELOGIC, Trappes Cedex, France; Clear Communications Corporation, Lincolnshire, IL; CommTech Corporation, Westerville, OH; ILOG, Inc., Mountain View, CA; Infinet Software, Inc., Boulder, CO; ITTI, Ltd., Poznan, Poland; Minacom International, Inc., Montreal, Quebec, Canada; NCR Corporation, Iselin, NJ; O.TEL.O Communications, Koln, Germany; Positron Fiber Systems, Montreal, Quebec, Canada; RTS Limited, Hemel Hempstead, Hertfordshire, England; Scopus Technology, Inc., Emeryville, CA: Spazio ZeroUno S.p.A., Vimodrone, Italy; Sprint PCS, Lenexa, KS; S.W.I.F.T., La Hulpe, Belgium; Sybase, Inc., Dallas, TX; Tellium, Inc., Edison, NJ; Unique Data Ltd. (UDI), Rishon, Letzion; Israel; Vision In Business, London, England; and Worldbridge Broadband Services, Inc., Nashville, TN are Associate Members. Cohen Communications Group, New York, NY; CRIEPI, Tokyo, Japan; DNA Enterprise, Inc., Richardson, TX; GRC International, Inc., Vienna, VA; and National Communications System, Arlington, VA are Affiliate Members.

No other changes have been made since the last notification filed with the Department in either the membership or planned activity of the group research project. Membership in this group research project remains open, and the Forum intends to file additional written notifications disclosing all changes in membership.

On October 21, 1988, the Forum filed its original notification pursuant to Section 6(a) of the Act. The Department of Justice published a notice in the **Federal Register** pursuant to Section 6(b) of the Act on December 8, 1988 (53 FR 49615).

The last notification was filed with the Department on August 8, 1997. A notice was published in the **Federal Register** pursuant to Section 6(b) of the Act on November 10, 1997 (62 FR 60531).

**Constance K. Robinson,**

*Director of Operations, Antitrust Division.*
[FR Doc. 98–8337 Filed 3–30–98; 8:45 am]
**BILLING CODE 4410–11–M**

## DEPARTMENT OF JUSTICE

### Immigration and Naturalization Service

[INS No. 1910–98; AG Order No. 2146–98]

RIN 1115–AE26

### Termination of Designation of Liberia Under Temporary Protected Status Program After Final 6-Month Extension

**AGENCY:** Immigration and Naturalization Service, Justice.
**ACTION:** Notice.

**SUMMARY:** This notice terminates the Attorney General's designation of Liberia under the Temporary Protected Status (TPS) program provided for in section 244 of the Immigration and Nationality Act, as amended (Act). Eligible aliens who are national of Liberia (and eligible aliens who have no nationality and last habitually resided in Liberia) may re-register for TPS and extension of employment authorization for a final 6-month period.

**EFFECTIVE DATES:** Termination of the Temporary Protected Status designation for Liberia is effective September 28, 1998, and the TPS designation for Liberia is extended for a final 6-month period, from March 29, 1998, to September 28, 1998. The main re-registration procedures become effective on March 31, 1998, and will remain in effect until April 29, 1998.

**FOR FURTHER INFORMATION CONTACT:** Ronald Chirlin, Adjudications Officer, Immigration and Naturalization Service, Room 3214, 425 I Street, NW., Washington, DC 20536, telephone (202) 514–5014.

**SUPPLEMENTARY INFORMATION:** Under section 244 of the Act, 8 U.S.C. 1254, the Attorney General is authorized to grant TPS to eligible aliens who are nationals of a foreign state designated by

the Attorney General (or who have no nationality and last habitually resided in that state). The Attorney General may designate a state upon finding that the state is experiencing ongoing armed conflict, environmental disaster, or other extraordinary and temporary conditions that prevent nationals or residents of the country from returning to it in safety.

On March 27, 1991, the Attorney General designated Liberia for Temporary Protected Status for a period of 12 months, 56 FR 12746. the Attorney General subsequently extended the designation of Liberia under the TPS program of six additional 12-month periods, with the last extension valid until March 28, 1998, 62 FR 16608. While extending the designation of Liberia under the TPS program, the Attorney General also concurrently redesignated Liberia under the TPS program. This concurrent extension and redesignation, which was published on April 7, 1997, made TPS available to eligible Liberian TPS applicants who have "continuously resided in the United States" since June 1, 1996, and who had been "continuously present in the United states" since April 7, 1997.

Section 244(b)(3)(A) of the Act requires the Attorney General to review, at least 60 days before the end of the initial period of designation or any extended period of designation, the conditions in a foreign state designated under section 244(b)(1) of the Act. The section also requires the Attorney General to determine whether the conditions for such a designation continue to be met, and to terminate the state's designation when the Attorney General determines that the foreign state no longer continues to meet those conditions.

This notice terminates the designation of Liberia under the TPS program. There may be other avenues of immigration relief, such as asylum, withholding of removal, and cancellation of removal, available to Liberians in the United States who believe that their particular circumstances make return to Liberia unsafe. Those Liberians who have not applied for asylum, withholding of removal, or cancellation of removal, or who are not eligible to apply for permanent residence under any of the established employment or family-based categories, must depart the United States to avoid accruing any periods of unlawful presence that would later subject them to the 3- or 10-year bars to admission under section 212(a)(9)(B)(i) of the Act.

In accordance with section 244(B)(3)(B) and (C) of the Act, this termination will be effective on September 28, 1998, following the final 6-month extension granted by this notice. This notice also describes the procedures with which eligible aliens who are nationals of Liberia (or who have no nationality and who last habitually resided in Liberia) must comply in order to re-register for TPS during this final 6-month period.

In addition to timely re-registrations and late re-registrations authorized by this notice's extension of Liberia's TPS designation, late initial registrations are possible for some Liberians under 8 CFR 244.2(f)(2), formerly 8 CFR 240.2(f)(2). Such late initial registrants must have been "continuously physically present" in the United States since June 1, 1996, must have had a valid immigrant or non-immigrant status during the original registration period, and must register no later than 30 days from the expiration of such status.

The Immigration and Naturalization Service requires all TPS registrants to submit Form I–765, Application for Employment Authorization, for data-gathering purposes. Therefore, a Form I–765 must always be submitted with the Application for Temporary Protected Status, Form I–821, as part of either a re-registration or late initial registration, even if employment authorization is not requested. The appropriate filing fee must accompany Form I–765 unless a properly documented fee waiver request, pursuant to 8 CFR 244.20, is submitted to the Immigration and Naturalization Service or unless the applicant does not request employment authorization.

## Notice of Termination of Designation of Liberia Under the TPS Program

By the authority vested in me as Attorney General under section 244 of the Act, as amended (8 U.S.C. 1254), and pursuant to section 244(b)(3) of the Act, I have had consultations with the appropriate agencies of the U.S. Government concerning (a) the conditions in Liberia; and (b) whether permitting nationals of Liberia (and aliens having no nationality who last habitually resided in Liberia) to remain temporarily in the United States is contrary to the national interest of the United States.

As a result of these consultations, I have determined that Liberia no longer continues to meet the conditions for designation of TPS under section 244(b)(1) of the Act. This determination has been based on the understanding that the Department of State will review security conditions in Liberia prior to the September 28, 1998, expiration date of the TPS designation for Liberia. The Department of State could, therefore, provide additional information regarding the possible redesignation for Liberia.

According to information supplied to me by the Department of State, I understand that overall security conditions in Liberia have improved during the past year. Elections were held and the new Liberian Government's policy is to welcome back Liberian refugees. Improved stability and security throughout most of Liberia has led the U.S. Government to support the repatriation of Liberian refugees in neighboring countries.

In view of the Department of State's recommendation for termination, I have determined that TPS is no longer appropriate for Liberia in general. Accordingly, it is ordered as follows:

(1) The TPS designation of Liberia under section 244(b)(3) of the Act is extended for a final 6-month period starting March 29, 1998, and terminating September 28, 1998.

(2) I estimate that there are approximately 8,000 nationals of Liberia (and aliens having no nationality who last habitually resided in Liberia) who have been granted Temporary Protected Status and are eligible for the final 6-month period of re-registration.

(3) In order to maintain current registration for TPS, a national of Liberia (or an alien having no nationality who last habitually resided in Liberia) who received a grant of TPS based upon the initial March 27, 1991, designation, or based upon the April 7, 1997, redesignation, must comply with the re-registration requirements contained in 8 CFR 244.17, formerly 8 CFR 240.17, which are described in pertinent part in paragraphs (4) and (5) of this notice.

(4) A national of Liberia (or an alien having no nationality who last habitually resided in Liberia) who has been granted TPS and wishes to maintain that status must re-register by filing a new Form I–821, Application For Temporary Protected Status, together with a Form I–865, Application for Employment Authorization, within the 30-day period beginning on March 31, 1998, and ending April 30, 1998, in order to be eligible for TPS during the period from March 29, 1998 to September 28, 1998. Late re-registration applications will be allowed pursuant to 8 CFR 244.17(c), formerly 8 CFR 240.17(c).

(5) There is no fee for Form I–821 filed as part of the re-registration application. A Form I–765 must be filed at the same time. If the alien requests employment authorization for the 6-month extension period, the fee prescribed in 8 CFR 103.7(b)(1),

currently seventy dollars ($70), must accompany the Form I–765. An alien who does not request employment authorization must nonetheless file Form I–765, together with Form I–821, but in such cases no fee will be charged.

(6) Information concerning the TPS program for nationals of Liberia (and aliens having no nationality who last habitually resided in Liberia) will be available at local Immigration and Naturalization Service offices upon publication of this notice.

Dated: March 25, 1998.

**Janet Reno,**

*Attorney General.*

[FR Doc. 98–8336 Filed 3–30–98; 8:45 am]

**BILLING CODE 4410–10–M**

## DEPARTMENT OF LABOR

### Office of the Secretary

### Submission for OMB Review; Comment Request

March 26, 1998.

The Department of Labor (DOL) has submitted the following public

information collection requests (ICRs) to the Office of Management and Budget (OMB) for review and approval in accordance with the Paperwork Reduction Act of 1995 (Pub. L. 104–13, 44 U.S.C. Chapter 35). A copy of each individual ICR, with applicable supporting documentation, may be obtained by calling the Department of Labor, Departmental Clearance Officer, Todd R. Owen ((202) 219–5096 ext. 143) or by E-Mail to Owen-Todd@dol.gov. Individuals who use a telecommunications device for the deaf (TTY/TDD) may call (202) 219–4720 between 1 p.m. and 4 p.m. Eastern time, Monday–Friday.

Comments should be sent to Office of Information and Regulatory Affairs, Attn: OMB Desk Officer for BLS, DM, ESA, ETA, MSHA, OSHA, PWBA, or VETS, Office of Management and Budget, Room 10235, Washington, DC 20503 ((202) 395–7316), on or before April 30, 1998.

The OMB is particularly interested in comments which:

• Evaluate whether the proposed collection of information is necessary for the proper performance of the

functions of the agency, including whether the information will have practical utility;

• Evaluate the accuracy of the agency's estimate of the burden of the proposed collection of information, including the validity of the methodology and assumptions used;

• Enhance the quality, utility, and clarity of the information to be collected; and

• Minimize the burden of the collection of information on those who are to respond, including through the use of appropriate automated, electronic, mechanical, or other technological collection techniques or other forms of information technology, e.g., permitting electronic submission of responses.

*Agency:* Bureau of Labor Statistics.

*Title:* International Price Program— U.S. Export Price Indexes.

*OMB Number:* 1220–0025 (Revision).

*Affected Public:* Business or other for-profit.

| Form No. | Frequency | Number of respondents | Average time per respondent (hours) |
|---|---|---|---|
| 2894B ............................................................ | Annually ............................................................ | 1,613 | .75 |
| 3008 ............................................................... | Annually ............................................................ | 1,613 | .25 |
| 3007D ............................................................ | Monthly/Quarterly ............................................ | 3,235 | .53 |

*Total Burden Hours:* 22,039.

*Total annualized capital/startup costs:* 0.

*Total annual costs (operating/maintaining systems or purchasing services):* 0.

*Description:* The International Price Program Indexes, a primary economic indicator, are used as measures of movement in international prices, indicators of inflationary trends in the economy, and sources of information used to determine U.S. monetary, fiscal, trade, and commercial policies. They are also used to deflate the Gross Domestic Product.

*Agency:* Bureau of Labor Statistics.

*Title:* International Price Program—U.S. Import Price Indexes.

*OMB Number:* 1220–0026 (Revision).

*Affected Public:* Businesses and other for-profit.

| Form No. | Frequency | Number of respondents | Average time per respondent (hours) |
|---|---|---|---|
| 3007B ............................................................ | Annually ............................................................ | 1,725 | 1 |
| 3008 ............................................................... | Annually ............................................................ | 1,725 | .334 |
| 3007D ............................................................ | Monthly/Quarterly ............................................ | 3,235 | .56 |

*Total Burden Hours:* 23,884.

*Total annualized capital/startup costs:* 0.

*Total annual costs (operating/maintaining systems or purchasing services):* 0.

*Description:* The International Price Program Indexes, a primary economic indicator, are used as measures of movement in international prices, indicators of inflationary trends in the

economy, and sources of information used to determine U.S. monetary, fiscal, trade, and commercial policies. They are also used to deflate the Gross Domestic Product.

*Agency:* Employment and Training Administration.

*Title:* NAFTA Customer Survey Data Request.

*OMB Number:* 1205–0337 (extension).

*Freqncy:* Three survey submitted.

*Affected Public:* Businesses and other for-profit.

*Total Respondents:* 350.

*Estimated Time Per Respondent:* 2 hours.

*Total Burden Hours:* 2,100.

*Total annualized capital/startup costs:* 0.

*Total annual costs (operating/maintaining systems or purchasing services):* 0.

information may be exempt from contesting record procedures as described in the section entitled "Systems Exempted from Certain Provisions of the Act." An individual who is the subject of a record in this system may amend those records that are not exempt. A determination whether a record may be amended will be made at the time a request is received.

**RECORD SOURCE CATEGORIES:**

(1) DEA intelligence and investigative records; (2) reports, investigative and intelligence reports from other participating and associated federal and state member agencies; and (3) records and reports of foreign law enforcement and regulatory agencies.

**SYSTEM EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT:**

The Attorney General has exempted this system from subsections (c)(3) and (4); (d)(1), (2), (3) and (4); (e)(1), (2) and (3), (e)(5) and (e)(8); and (g), of the Privacy Act pursuant to 5 U.S.C. 552a (j) and (k). The exemptions will be applied only to the extent that information in a record is subject to exemption pursuant to 5 U.S.C. 552a(j) and (k). A determination as to exemption shall be made at the time a request for access or amendment is received. Rules have been promulgated in accordance with the requirements of 5 U.S.C. 553(b), (c) and (e) and have been published in the **Federal Register**.

[FR Doc. 03–1671 Filed 1–24–03; 8:45 am]
**BILLING CODE 4410–09–P**

---

## DEPARTMENT OF JUSTICE

**Immigration and Naturalization Service**

**[INS No. 2229–02; AG Order No. 2651–2003]**

**RIN 1115—AE26**

**Termination of Designation of Angola Under the Temporary Protected Status Program**

**AGENCY:** Immigration and Naturalization Service, Justice.
**ACTION:** Notice.

**SUMMARY:** The Attorney General's most recent designation of Angola under the Temporary Protected Status program (TPS) expires on March 29, 2003. After reviewing country conditions and consulting with the appropriate Government agencies, the Attorney General has determined that conditions in Angola no longer support a TPS designation. Accordingly, the designation of Angola for TPS is terminated effective March 29, 2003.

After that date, aliens who are nationals of Angola (and aliens having no nationality who last habitually resided in Angola) who have had TPS under the Angola program will no longer have such status. This notice contains information regarding the termination of the TPS designation for Angola.

**DATES:** The termination of the TPS designation for Angola is effective March 29, 2003.

**FOR FURTHER INFORMATION CONTACT:**
Naheed A. Qureshi, Office of Adjudications, Residence and Status Branch, Immigration and Naturalization Service, Room 3040, 425 I Street, NW., Washington, DC 20536, telephone (202) 514–4754.

**SUPPLEMENTARY INFORMATION:**

### What Is the Statutory Authority for the Designation and Termination of TPS?

Under section 244 of the Immigration and Nationality Act (INA or "the Act"), 8 U.S.C. 1254a, the Attorney General is authorized to designate a foreign state (or part of a state) for TPS. The Attorney General may then grant TPS to eligible nationals of that foreign state (or aliens having no nationality who last habitually resided in that state). Section 244(b)(3)(A) of the Act requires the Attorney General to review, at least 60 days before the end of the TPS designation, the conditions in a foreign state designated under section 244(b)(1) of the Act. 8 U.S.C. 1254a(b)(3)(A).

Section 244(b)(3) of the Act further requires the Attorney General to determine whether the conditions for such a designation continue to be met, and to terminate the state's designation when the Attorney General determines conditions are no longer met. 8 U.S.C. 1254a(b)(3)(B). The Attorney General must then publish a notice of termination in the **Federal Register**.

### Why Did the Attorney General Decide To Terminate TPS for Angola?

On March 29, 2000, the Attorney General published a notice in the **Federal Register** at 65 FR 16634 designating Angola for TPS for a period of one year, based upon conditions in Angola at that time. That TPS designation was extended twice and is scheduled to expire on March 29, 2003. *See* 66 FR 18111 (April 5, 2001 (extension and redesignation); 67 FR 4997 (Feb. 1, 2002) (extension). Based upon a recent review of conditions within Angola by the Departments of Justice and State, the Attorney General finds that conditions in Angola no longer support a TPS designation.

A recent Department of State report indicates that the National Union for the Total Independence of Angola (UNITA) and the Government of Angola were able to recommit to the Lusaka Peace Process following the February 2002 death of rebel leader Jonas Savimbi. Department of State Report (Nov. 13, 2002). The Resource Information Center (RIC) of the Immigration and Naturalization Service (INS/Service) observed that "[t]he peace accords ended the 27-year battle between the UNITA forces and the Angolan ruling party." RIC Report (Nov. 29, 2002). The peace agreement committed the parties to continued discussions regarding future elections and a power sharing approach to governance. Since the peace accord was signed, fighting has ceased and 84,000 UNITA combatants have been disarmed and decommissioned, effectively dismantling UNITA's military capability. Department of State Report. The United Nations estimates that approximately 5,000 of the demobilized soldiers have joined the Angolan government forces, while approximately 80,000 have reunited with their families in reception centers. RIC Report.

A separate insurgency led by the separatist guerrilla forces of the Front for the Liberation of the Enclave of Cabinda/Armed Forces of Cabinda (FLEC/FAC) continues in the northern province of Cabinda, and the Angolan Armed Forces has increased its military campaign against rebels in this area. Given the geographic isolation of Cabinda from the rest of Angola, however, the Department of State concludes that conditions in that province do not impact Angolans elsewhere. Department of State Report.

The Department of State report notes that in addition to the humanitarian needs of 380,000 UNITA members and their families, the Government of Angola faces the challenge of assisting an estimated 4 million displaced Angolan nationals. The RIC Report expresses concern that Angola lacks housing, medical services, water systems, and other basic services destroyed by a 27-year-long war.

There are as many as 8 million landmines planted in Angolan soil. Department of State Report. At least 10 provinces, accounting for 40 percent of Angola's countryside, are heavily mined, rendering large areas of arable land and pasture unfit for use. RIC Report. Nevertheless, the Department of State concludes that the risks associated with existing landmines are not sufficient to potential returnees to warrant an extension of TPS.

Despite these challenging circumstances, the United Nations High Commissioner for Refugees (UNHCR)

estimates that 70,000 refugees and 860,000 internally displaced persons have spontaneously returned to their home areas since February 2002. Department of State Report. In the spring of 2003, UNHCR intends to begin the organized repatriation of 470,000 refugees from Zambia, the Democratic Republic of Congo and Namibia. *Id*. The Government of Angola continues to work with the international community to return 4 million internally displaced persons to their homes in Angola.

Based on these findings, the Attorney General has determined that conditions warranting TPS designation no longer exist, and that the TPS designation for Angola must be terminated. Section 244(b)(3)(B) of the Act provides that the Attorney General "shall" terminate a designation if he determines that Angola "no longer continues to meet the conditions for designation * * *" A statutory condition common to designations under paragraphs (A) and (C) of section 244(b)(1) of the Act is a threat to the personal safety of potential returnees. Whether the precipitating condition is an "ongoing armed conflict," INA § 244(b)(1)(A), or other "extraordinary and temporary conditions," INA § 244(b)(1)(C), this shared condition—threat to returnees' safety—must "continue to be met" or the Attorney General "shall" terminate the designation. INA §§ 244(b)(3)(A), (B). The disarmament, demobilization, and ongoing reintegration of ex-combatants, the formal end to war, and the discussions regarding planned elections are all positive developments and an indication that internal armed conflict no longer threatens returning Angolans. Furthermore, efforts by the United Nations and non-governmental organizations to resettle Angolan citizens signify the improvement of humanitarian and socioeconomic conditions in Angola. For the foregoing reasons, the Attorney General determines that Angolan TPS beneficiaries may return safely to Angola at this time and, therefore, terminates the TPS designation for Angola.

**What May I Do if I Believe That My Return to Angola Is Unsafe?**

This notice terminates the designation of Angola for TPS. There may be avenues of immigration relief and protection available to aliens who are nationals of Angola (and aliens having no nationality who last habitually resided in Angola) in the United States who believe that their particular circumstances make return to Angola unsafe. Such avenues may include, but are not limited to, asylum, withholding

of removal, or protection under Article 3 of the Torture Convention.

**How Does the Termination of TPS Affect Former TPS Beneficiaries?**

After the designation of Angola for TPS is terminated on March 29, 2003, former TPS beneficiaries will maintain the same immigration status they held prior to TPS (unless that status has since expired or been terminated) or any other status they may have acquired while registered for TPS. Accordingly, if an alien held no lawful immigration status prior to receiving TPS benefits and did not obtain any other status during the TPS period, he or she will maintain that unlawful status upon the termination of the TPS designation.

Former TPS beneficiaries will no longer be eligible for a stay of removal or a work authorization document pursuant to the TPS program. TPS-related work authorization documents expire on March 29, 2003, and will not be renewed.

Termination of the TPS designation for Angola does not necessarily affect pending applications for other forms of immigration relief or protection, though former TPS beneficiaries will begin to accrue unlawful presence as of March 29, 2003, if they have not been granted any other immigration status or protection or if they have no pending application for certain benefits.

**Notice of Termination of Designation of Angola Under the TPS Program**

By the authority vested in me as Attorney General under section 244(b)(3) of the Act, I have consulted with the appropriate agencies of government concerning conditions in Angola. 8 U.S.C. 1254a(b)(3). Based on these consultations, I have determined that Angola no longer meets the conditions for designation of TPS under section 244(b)(1) of the Act. *See* 8 U.S.C. 1254a(b)(1).

Accordingly, I order as follows:

(1) The designation of Angola for TPS under section 244(b) of the Act is terminated effective March 29, 2003.

(2) I estimate that there are approximately 316 nationals of Angola (and aliens having no nationality who last habitually resided in Angola) who currently receive TPS benefits.

(3) Information concerning the termination of the TPS program for nationals of Angola (and aliens having no nationality who last habitually resided in Angola) will be available at local Service offices upon publication of this notice and through the INS National Customer Service Center at 1–800–375–5283. This information will also be

published on the INS web site at *http://www.ins.usdoj.gov*.

Dated: January 23, 2003.

**John Ashcroft,**
*Attorney General.*
[FR Doc. 03–1994 Filed 1–24–03; 8:45 am]
**BILLING CODE 4410–10–P**

## DEPARTMENT OF LABOR

**Mine Safety and Health Administration**

**Petitions for Modification**

The following parties have filed petitions to modify the application of existing safety standards under section 101(c) of the Federal Mine Safety and Health Act of 1977.

**1. Double M Mining, Inc.**

[Docket No. M–2002–123–C]

Double M Mining, Inc., P.O. Box 14, Rt. 624, Amonate, Virginia 24610 has filed a petition to modify the application of 30 CFR 77.214(a) (Refuse piles; general) at its Auger #2 Mine (MSHA I.D. No. 46–08915) located in McDowell County, West Virginia. This standard requires refuse piles constructed on or after July 1, 1971, to be located in areas that are a safe distance from all underground mine airshafts, preparation plants, tipples or other surface installations and such piles shall not be located over abandoned openings or streamlines. The petitioner proposes to cover the coal seam with inert material, backfill and eliminate the highwall with refuse on a 2 to 1 slope and cover with soil in order to reclaim the site. The petitioner states that: (i) The face up and the adjacent areas of the mine have been augered and the areas now needs to be reclaimed; (ii) that there will be no mine drainage from the mine openings in the area because the original mine entries were developed down dip and seals have been built that isolate the active mining from the area to be reclaimed from the active mining of the Vica Coal Company who is mining from a different set of portals. The petitioner further states that the Auger #2 Mine was faced up in the area of an old refuse pile by removing the refuse and then taking a small cut to create the highwall. The petitioner asserts that the proposed alternative method would provide at least the same measure of protection as the existing standard.

**2. Freeman United Coal Company**

[Docket No. M–2002–124–C]

Freeman United Coal Company, P.O. Box 4630, Springfield, Illinois 62708

DC; Eastman Kodak Company, Rochester, NY; Electronic Data Systems, Warren, MI; Emerson Electric, St. Louis, MO; Ernst & Young, Cleveland, OH; General Dynamics-Ft. Worth Div., Ft. Worth, TX; General Electric, Schenectady, NY; Goldstar, Changwon City, KOREA; Grumman Aerospace, Bethpage, NY; Harris Corporation, Melbourne, FL; Honeywell, Inc., Minneapolis, MN; Hughes Aircraft Co., El Segundo, CA; IBM Corporation, Boca Raton, FL; KPMG Peat Marwick, Palo Alto, CA; LTV Aerospace & Defense Co., Dallas, TX; Martin Marietta Energy Sys., Oak Ridge, TN; McDonnell Douglas Corp., St. Louis, MO; National SemiConductor, Santa Clara, CA; NIES, Canberra City, AUSTRALIA; Northrop Corp., Hawthorne, CA; Price Waterhouse, Cleveland, OH; Procter & Gamble Co., Cincinnati, OH; Texas Instruments, Plano, TX; U.S. Air Force, Dayton, OH; U.S. Navy, Alexandria, VA; and Westinghouse Electric Corporation, Columbia, MD. The current industrial member companies in Europe are: Aerospatiale, Paris, FRANCE; Groupe Bull, Paris, FRANCE; CTE/ITM, Genoa, ITALY; Coopers & Lybrand, Deloitte, London, ENGLAND; Eurosept, Boulogne, FRANCE; Finmeccanica, Rome, ITALY; IBM Eurocoordination, Parris, FRANCE; IPL–TNO, Apeldoorn, THE NETHERLANDS; IVF Swedish Institute, Goteborg, SWEDEN; Lucas Engineering, Solihull, West Midlands, ENGLAND; Messerschmitt-Bolkow-Blohm, Munich, GERMANY; Nuove Pignone, Florence, ITALY; Phillips International, Eindhoven, THE NETHERLANDS; Telos Management, Milan, ITALY; and Valmet Corporation, Helsinki, FINLAND. Current industrial member companies in the Pacific region are: Fuji Electric, Tokyo, JAPAN; Fujitsu, Ltd., Kawasaki, JAPAN; Hitachi, Ltd., Yokohama, JAPAN; and Honda Engineering, Sayama City, JAPAN. Current educational members in the United States are: Arizona State Univ., Tempe, AZ; Brigham Young Univ., Provo, UT; California Polytechnic, San Luis Obispo, CA; Carnegie Mellon Univ., Pittsburgh, PA; Illinois Institute of Technology, Chicago, IL; Massachusetts Inst. of Tech., Cambridge, MA; Merrick School of Business, Baltimore, MD; North Carolina State, Raleigh, NC; North Texas State, Denton, TX; Oklahoma State Univ., Stillwater, OK; Portland State Univ., Portland, OR; Purdue Univ., Ft. Wayne, IN; Rensselaer Polytechnic, Troy, NY; Stanford Univ., Stanford, CA; Univ. California (UCLA), Los Angeles, CA; Univ. of Maryland, Baltimore, MD; Univ. of Massachusetts, Amherst, MA; Univ. of Minnesota,

Minneapolis, MN; Univ. of Missouri-Rolla, Rolla, MO; Univ. of New Hampshire, Durham, NH; Univ. of San Francisco, San Francisco, CA; Univ. of Southern California, Los Angeles, CA; Univ. of Texas, Arlington, Arlington, TX; Univ. of Texas, Austin, Austin, TX; Univ. of Texas, El Paso, El Paso, TX; and Univ. of Waterloo, Waterloo, CANADA. Current educational members in Europe are: Cranfield Institute of Tech., Poole, ENGLAND; Groupe H.E.C., Jouy-en-Josas, FRANCE; Helsinki Univ. of Technology, Espoo, FINLAND; Katholieke Universiteit Leuven, Heverlee, BELGIUM; Loughborough Univ. of Tech., Leicestershire, ENGLAND; Politechnico di Milano, Milan, ITALY; Royal Institute of Stockholm, Stockholm, SWEDEN; Tech. Institute of Aachen, Aachen, GERMANY; Univ. Frederciana Karlsruhe, Karlsruhe, GERMANY; Univ. of Trondheim, Norway, Trondheim, NORWAY; and Univ. of Twente, Twente, THE NETHERLANDS. The current educational members in the Pacific region are Kyoto Univ., Kyoto, JAPAN; and Kobe Univ., Kobe, JAPAN.

The Intelligent Manufacturing Management Program has been discontinued, and the Quality Customer/Quality Supplier Program (QCQS) has been added.

No other changes have been made in either the membership or planned activity of the group research project. Membership in this group research project remains open and the Consortium for Advanced Manufacturing-International, Inc. intends to file additional written notification disclosing all changes in membership.

On December 28, 1984, Computer Aided Manufacturing-International, Inc. (CAM–I), now known as Consortium for Advanced Manufacturing-International, Inc., filed its original notification pursuant to section 6(a) of the Act. The Department of Justice published a notice in the Federal Register pursuant to section 6(b) of the Act on January 24, 1985 (50 FR 3425–3426).

The last notification was filed with the Department on January 2, 1992. A notice was published in the **Federal Register** pursuant to section 6(b) of the Act on April 2, 1992 (57 FR 11337).

**Joseph H. Widmar,**

*Director of Operations, Antitrust Division.*
[FR Doc. 93–2856 Filed 2–5–93; 8:45 am]
**BILLING CODE 4410-01-M**

## Notice Pursuant to the National Cooperative Research Act of 1984—Smart House Project

Notice is hereby given that, on January 5, 1993, pursuant to section 6(a) of the National Cooperative Research Act of 1984, 15 U.S.C. 4301 et seq. ("the Act"), Smart House, L.P., has filed written notifications simultaneously with the Attorney General and the Federal Trade Commission disclosing changes in membership of the Smart House Project ("the Project"). The notifications were filed for the purpose of extending the Act's provisions limiting the recovery of antitrust plaintiffs to actual damages under specified circumstances.

The following party is now participating in the Project: Xantech Corporation, Sylmar, CA. The following parties are no longer involved in the Project: Arkla, Inc.; BellSouth Services; Columbia Gas Distribution Companies; Consolidated Natural Gas Company; Consumers Power Company; Delmarva Power & Light Company; Florida Power & Light Company; Halstead Industries; Houston Lighting & Power Company; National Rural Electric Cooperative Association; Northern Illinois Gas Company; Oglethorpe Power Corporation; Oklahoma Natural Gas Company; Pacific Gas & Electric Company; Pittway Corporation; Portland General Electric Company; Public Service Company of Colorado; Sears, Roebuck & Co.; Southern California Edison Company; Universal Electronics Inc.; Virginia Power Company; WaterFurnace International Inc.; Wisconsin Electric Power Company. No other changes have been made in either the membership or planned activity of the Project.

Participants of the Project are developing a coordinated home control and energy distribution system containing integral telecommunications and advanced safety features.

On June 14, 1985, the predecessor in interest to Smart House, L.P., filed its original notification pursuant to section 6(a) of the Act. The Department of Justice published a notice in the **Federal Register** pursuant to section 6(b) of the Act on October 10, 1985 (50 FR 41428).

The last notification was filed with the Department on October 5, 1992. A notice was published in the **Federal Register** pursuant to section 6(b) of the Act on December 17, 1992 (57 FR 60005).

**Joseph H. Widmar,**

*Director of Operations, Antitrust Division.*
[FR Doc. 93–2857 Filed 2–5–93; 8:45 am]
**BILLING CODE 4410-01-M**

VZ Vacatur_0295

## Notice Pursuant to the National Cooperative Research Act of 1984—Spray Drift Task Force

Notice is hereby given that, on January 13, 1993, pursuant to section 6(a) of the National Cooperative Research Act of 1984, 15 U.S.C. 4301 et seq. ("the Act"), the Spray Drift Task Force has filed written notifications simultaneously with the Attorney General and the Federal Trade Commission disclosing a change in the membership of the Spray Drift Task Force Joint Data Development Agreement. The notice was filed for the purpose of invoking the Act's provisions limiting the recovery of antitrust plaintiffs to actual damages under specified circumstances. Specifically, the change consists of the addition of Agro-Gor Corporation, a division of Agrico Chemical Company, New Orleans, LA.

No other changes have been made in either the membership, corporate name or planned activities of the venture.

On May 15, 1990, the Spray Drift Task Force filed its original notification pursuant to section 6(a) of the Act. The Department of Justice published a notice in the **Federal Register** pursuant to section 6(b) of the Act of July 5, 1990 (55 FR 27701). The last notification was filed with the Department on April 27, 1992. A notice was published in the **Federal Register** on May 22, 1992 (57 FR 21824).

**Joseph H. Widmar,**

*Director of Operations, Antitrust Division.*

[FR Doc. 93–2858 Filed 2–5–93; 8:45 am]

**BILLING CODE 4410–01–M**

## Immigration And Naturalization Service

[AG Order No. 1680–93]

## Termination of Designation of Lebanon Under Temporary Protected Status Program

**AGENCY:** Immigration and Naturalization Service, Justice.

**ACTION:** Notice.

**SUMMARY:** This notice terminates the Attorney General's designation of Lebanon under the Temporary Protected Status program provided for in section 244A of the Immigration and Nationality Act (Act). Accordingly, eligible aliens who are nationals of Lebanon, or who have no nationality and who last habitually resided in Lebanon, will lose their eligibility for Temporary Protected Status.

**EFFECTIVE DATE:** The termination of the Temporary Protected Status designation for Lebanon is effective April 9, 1993.

**FOR FURTHER INFORMATION CONTACT:** Kathryn A. Kazalonis, Senior Immigration Examiner, Immigration and Naturalization Service, room 7223, 425 I Street, NW, Washington, DC 20536, telephone (202) 514–5014.

**SUPPLEMENTARY INFORMATION:** Under section 244A of the Act, as amended by section 302(a) of Public Law 101–649 and section 304(b) of Public Law 102–232, (8 U.S.C. 1254a), the Attorney General is authorized to grant Temporary Protected Status in the United States to eligible aliens who are nationals of a foreign state designated by the Attorney General, or who have no nationality and last habitually resided in that state. The Attorney General so designates a state, or a part thereof, upon finding that the state is experiencing ongoing armed civil strife, environmental disaster, or certain other extraordinary and temporary conditions.

On March 21, 1991, the Attorney General designated Lebanon for Temporary Protected Status for a period of 12 months. 56 FR 12746. On January 20, 1992, the Attorney General extended the designation of Lebanon under the Temporary Protected Status program for an additional 12 months until March 28, 1993. 57 FR 2931.

Section 244A(b)(3) of the Act requires the Attorney General to review, at least 60 days before the end of the initial period of designation or any extended period of designation, the conditions in a state designated under section 244A(b)(3). The section also requires the Attorney General to determine whether the requirements for such designation continue to be met, and to terminate a state's designation when the Attorney General determines that those requirements are not met. In this notice, the Attorney General terminates the designation of Lebanon, pursuant to section 244A(b)(3) of the Act.

### Notice of Termination of Designation of Lebanon Under Temporary Protected Status Program

By the authority vested in me as Attorney General under section 244A of the Immigration and Nationality Act, and pursuant to sections 244A(b)(3) (A) and (C) of the Act, I find, after consultation with the appropriate agencies of the United States Government, that the extraordinary and temporary conditions found to exist in Lebanon on March 21, 1991, and on January 20, 1992, are not presently in existence. The United States embassy in Beirut reports that the security situation

for Lebanese citizens is steadily improving. The Lebanese government's amnesty law specifically protects Lebanese citizens from prosecution for virtually all actions taken during the war years, and the majority of Lebanese go about their daily activity without hindrance. While the few persons who might still encounter difficulties in Lebanon due to their affiliations could apply for asylum, we believe that Temporary Protected Status is no longer appropriate for Lebanese citizens in general.

Accordingly, it is ordered that the designation of Lebanon for Temporary Protected Status is terminated effective 60 days after publication of this notice in the **Federal Register**.

Dated: January 27, 1993.

**Stuart M. Gerson,**

*Acting Attorney General.*

[FR Doc. 93–2861 Filed 2–5–93; 8:45 am]

**BILLING CODE 4410–01–M**

## Office of Justice Programs

## Office for Victims of Crime

## Discretionary Grant Program and Application Information for Fiscal Year 1993; Correction

**AGENCY:** Office for Victims of Crime, Office of Justice Programs, Justice.

**ACTION:** Correction.

**SUMMARY:** In the public announcement of availability of the funds and application information under the Discretionary Grant Program beginning on page 5416 in the issue of Thursday, January 21, 1993, make the following correction:

On page 5417 in the third column in the first paragraph, the fourth sentence should read: "At least 70 percent of the grant funds is to be allotted for the purchase of workshop presentations from the list; or in special cases, other workshop presentations may be purchased with OVC approval."

Dated: January 29, 1993.

**Carolyn Hightower,**

*Acting Director, Office for Victims of Crime.*

[FR Doc. 93–2906 Filed 2–5–93; 8:45 am]

**BILLING CODE 4410–18–P**

## Office for Victims of Crime

## FY 1993 Assistance to Victims of Federal Crime in Indian Country Discretionary Grant Program Application Kit; Correction

**AGENCY:** Office for Victims of Crime Office of Justice Programs, Justice.

**ACTION:** Correction.

**SUMMARY:** In the public announcement of the availability of FY 1993 Assistance to Victims of Federal Crime in Indian Country Discretionary Grant Program Application Kit beginning on page 584 in the issue of Wednesday, January 6, 1993, make the following correction:

On page 584, in the second column, the Summary paragraph should include Florida and Oklahoma. The Summary paragraph should read, "The Office for Victims of Crime (OVC) is publishing this Notice of availability of the FY 1993 Discretionary Grant Application Kit for the State agencies appointed by the Governors in Alabama, Colorado, Florida, Iowa, Louisiana, Mississippi, Nebraska, North Carolina, Oklahoma, and Texas."

Dated: January 29, 1993.

**Carolyn A. Hightower,**

*Acting Director, Office for Victims of Crime.*

[FR Doc. 93–2907 Filed 2–5–93; 8:45 am]

**BILLING CODE 4410–18–P**

## NATIONAL FOUNDATION ON THE ARTS AND THE HUMANITIES

### Arts in Education Advisory Panel: Notice of Renewal

In accordance with the provisions of the Federal Advisory Committee Act (Pub. L. 92–463) and General Services Administration regulations issued pursuant thereto (41 CFR part 101–6), and under the authority of section 10(a)(4) of the National Foundation on the Arts and the Humanities Act of 1965, as amended (20 U.S.C. 959 (a)(4)), notice is hereby given that renewal of the Arts in Education Advisory Panel has been approved by the Chairman of the National Endowment for the Arts for a period of 2 years until February 2, 1995. The Committee's objectives and scope of activities include the formulation of expert advice and recommendations to the Chairman, National Endowment for the Arts and the National Council on the Arts with respect to: (a) Applications submitted to the National Endowment for the Arts for Federal grant assistance under the National Foundation on the Arts and the Humanities Act of 1965, as amended, and (b) policies and programs of the National Endowment for the Arts. This Committee shall report to the National Endowment for the Arts, National Foundation on the Arts and the Humanities.

This charter will be filed with the standing Committees of the Senate and the House of Representatives having legislative jurisdiction over the

Endowment and with the Library of Congress.

Dated: February 2, 1993.

**Yvonne M. Sabine,**

*Director, Office of Panel Operations, National Endowment for the Arts.*

[FR Doc. 93–2897 Filed 2–5–93; 8:45 am]

**BILLING CODE 7537–01–M**

### Challenge/Advancement Advisory Panel: Notice of Renewal

In accordance with the provisions of the Federal Advisory Committee Act (Pub. L. 92–463) and General Services Administration regulations issued pursuant thereto (41 CFR part 101–6), and under the authority of section 10(a)(4) of the National Foundation on the Arts and the Humanities Act of 1965, as amended (20 U.S.C. 959(a)(4)), notice is hereby given that renewal of the Challenge/Advancement Advisory Panel has been approved by the Chairman of the National Endowment for the Arts for a period of 2 years until February 2, 1995. The Committee's objectives and scope of activities include the formulation of expert advice and recommendations to the Chairman, National Endowment for the Arts and the National Council on the Arts with respect to: (a) Applications submitted to the National Endowment for the Arts for Federal grant assistance with the National Foundation on the Arts and the Humanities Act of 1965, as amended, and (b) policies and programs of the National Endowment for the Arts. This Committee shall report to the National Endowment for the Arts, National Foundation on the Arts and the Humanities.

This charter will be filed with the standing Committees of the Senate and the House of Representatives having legislative jurisdiction over the Endowment and with the Library of Congress.

Dated: February 2, 1993.

**Yvonne M. Sabine,**

*Director, Office of Panel Operations, National Endowment for the Arts.*

[FR Doc. 93–2898 Filed 2–5–93; 8:45 am]

**BILLING CODE 7537–01–M**

### Dance Advisory Panel; Notice of Renewal

In accordance with the provisions of the Federal Advisory Committee Act (Pub. L. 92–463) and General Services Administration regulations issued pursuant thereto (41 CFR Part 101–6), and under the authority of section 10(a)(4) of the National Foundation on the Arts and the Humanities Act of

1965, as amended (20 U.S.C. 959 (a)(4)), notice is hereby given that renewal of the Dance Advisory Panel has been approved by the Chairman of the National Endowment for the Arts for a period of 2 years until February 2, 1995. The Committee's objectives and scope of activities include the formulation of expert advice and recommendations to the Chairman, National Endowment for the Arts and the National Council on the Arts with respect to: (a) Applications submitted to the National Endowment for the Arts for Federal grant assistance under the National Foundation on the Arts and the Humanities Act of 1965, as amended, and (b) policies and programs of the National Endowment for the Arts. This Committee shall report to the National Endowment for the Arts, National Foundation on the Arts and the Humanities.

This charter will be filed with the standing Committees of the Senate and the House of Representatives having legislative jurisdiction over the Endowment and with the Library of Congress.

Dated: February 2, 1993.

**Yvonne M. Sabine,**

*Director, Office of Panel Operations, National Endowment for the Arts.*

[FR Doc. 93–2899 Filed 2–5–93; 8:45 am]

**BILLING CODE 7537–01–M**

### Design Arts Advisory Panel; Notice of Renewal

In accordance with the provisions of the Federal Advisory Committee Act (Pub. L. 92–463) and General Services Administration regulations issued pursuant thereto (41 CFR paragraph 101–6), and under the authority of section 10(a)(4) of the National Foundation on the Arts and the Humanities Act of 1965, as amended [20 U.S.C. 959(a)(4)], notice is hereby given that renewal of the Design Arts Advisory Panel has been approved by the Chairman of the National Endowment for the Arts for a period of 2 years until February 2, 1995. The Committee's objectives and scope of activities include the formulation of expert advice and recommendations to the Chairman, National Endowment for the Arts and the National Council on the Arts with respect to: (a) Applications submitted to the National Endowment for the Arts for Federal grant assistance under the National Foundation on the Arts and the Humanities Act of 1965, as amended, and (b) policies and programs of the National Endowment for the Arts. This Committee shall report to the National Endowment for the Arts,

not require extra or additional documentation beyond what is required for Form I–9 completion. Further, employers participating in E-Verify who receive an E-Verify case result of "Tentative Nonconfirmation" (TNC) must promptly inform employees of the TNC and give such employees an opportunity to contest the TNC. A TNC case result means that the information entered into E-Verify from an employee's Form I–9 differs from Federal or state government records.

Employers may not terminate, suspend, delay training, withhold pay, lower pay, or take any adverse action against an employee based on the employee's decision to contest a TNC or because the case is still pending with E-Verify. A Final Nonconfirmation (FNC) case result is received when E-Verify cannot verify an employee's employment eligibility. An employer may terminate employment based on a case result of FNC. Work-authorized employees who receive an FNC may call USCIS for assistance at 888–897–7781 (TTY 877–875–6028). For more information about E-Verify-related discrimination or to report an employer for discrimination in the E-Verify process based on citizenship, immigration status, or national origin, contact IER's Worker Hotline at 800–255–7688 (TTY 800–237–2515). Additional information about proper nondiscriminatory Form I–9 and E-Verify procedures is available on the IER website at *https://www.justice.gov/ier* and the USCIS website at *http://www.dhs.gov/E-verify.*

### Note Regarding Federal, State, and Local Government Agencies (Such as Departments of Motor Vehicles)

While Federal Government agencies must follow the guidelines laid out by the Federal Government, state and local government agencies establish their own rules and guidelines when granting certain benefits. Each state may have different laws, requirements, and determinations about what documents you need to provide to prove eligibility for certain benefits. Whether you are applying for a Federal, state, or local government benefit, you may need to provide the government agency with documents that show you are a TPS beneficiary and/or show you are authorized to work based on TPS. Examples of such documents are:

(1) Your current EAD;

(2) A copy of your Notice of Action (Form I–797C) for your application to renew your current EAD providing an automatic extension of your currently expired or expiring EAD;

(3) A copy of your Application for Temporary Protected Status Notice of Action (Form I–797) for this re-registration; and

(4) A copy of your past or current Application for Temporary Protected Status Notice of Action (Form I–797), if you received one from USCIS.

Check with the government agency regarding which document(s) the agency will accept. Some benefit-granting agencies use the USCIS Systematic Alien Verification for Entitlements (SAVE) program to confirm the current immigration status of applicants for public benefits. In most cases, SAVE provides an automated electronic response to benefit-granting agencies within seconds, but, occasionally, verification can be delayed. You can check the status of your SAVE verification by using CaseCheck at the following link: *https://save.uscis.gov/casecheck/,* then by clicking the "Check Your Case" button. CaseCheck is a free service that lets you follow the progress of your SAVE verification using your date of birth and one immigration identifier number. If an agency has denied your application based solely or in part on a SAVE response, the agency must offer you the opportunity to appeal the decision in accordance with the agency's procedures. If the agency has received and acted upon or will act upon a SAVE verification and you do not believe the response is correct, you may make an InfoPass appointment for an in-person interview at a local USCIS office. Detailed information on how to make corrections, make an appointment, or submit a written request to correct records under the Freedom of Information Act can be found on the SAVE website at *http://www.uscis.gov/save.*

[FR Doc. 2018–00886 Filed 1–17–18; 8:45 am]

**BILLING CODE 9111–97–P**

---

## DEPARTMENT OF HOMELAND SECURITY

### U.S. Citizenship and Immigration Services

**[CIS No. 2616–18; DHS Docket No. USCIS–2008–0034]**

**RIN 1615–ZB71**

### Termination of the Designation of El Salvador for Temporary Protected Status

**AGENCY:** U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security.

**ACTION:** Notice.

**SUMMARY:** The designation of El Salvador for Temporary Protected Status (TPS) is set to expire on March 9, 2018. After reviewing country conditions and consulting with appropriate U.S. Government agencies, the Secretary of Homeland Security has determined that conditions in El Salvador no longer support its designation for TPS and that termination of the TPS designation of El Salvador is required pursuant to statute. To provide time for an orderly transition, the Secretary is terminating the designation effective on September 9, 2019, which is 18 months following the end of the current designation.

Nationals of El Salvador (and aliens having no nationality who last habitually resided in El Salvador) who have been granted TPS and wish to maintain their TPS and receive TPS-based Employment Authorization Documents (EAD) valid through September 9, 2019, must re-register for TPS in accordance with the procedures set forth in this Notice. After September 9, 2019, nationals of El Salvador (and aliens having no nationality who last habitually resided in El Salvador) who have been granted TPS under the El Salvador designation will no longer have TPS.

**DATES:** The designation of El Salvador for TPS is terminated effective at 11:59 p.m., local time, on September 9, 2019.

The 60-day re-registration period runs from January 18, 2018 through March 19, 2018. (**Note:** It is important for re-registrants to timely re-register during this 60-day period.)

**FOR FURTHER INFORMATION CONTACT:**

• You may contact Alex King, Branch Chief, Waivers and Temporary Services Branch, Service Center Operations Directorate, U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security, 20 Massachusetts Avenue NW, Washington, DC 20529–2060; or by phone at (202) 272–8377 (this is not a toll-free number). **Note:** The phone number provided here is solely for questions regarding this TPS Notice. It is not for individual case status inquiries.

• For further information on TPS, including guidance on the re-registration process and additional information on eligibility, please visit the USCIS TPS web page at *http://www.uscis.gov/tps.* You can find specific information about this termination of El Salvador's TPS by selecting "El Salvador" from the menu on the left side of the TPS web page.

• Applicants seeking information about the status of their individual cases may check Case Status Online, available on the USCIS website at *http://*

www.uscis.gov, or call the USCIS National Customer Service Center at 800–375–5283 (TTY 800–767–1833). Service is available in English and Spanish.

• Further information will also be available at local USCIS offices upon publication of this Notice.

**SUPPLEMENTARY INFORMATION:**

## Table of Abbreviations

BIA—Board of Immigration Appeals
CFR—Code of Federal Regulations
DHS—U.S. Department of Homeland Security
DOS—Department of State
EAD—Employment Authorization Document
FNC—Final Nonconfirmation
FR—Federal Register
Government—U.S. Government
IJ—Immigration Judge
INA—Immigration and Nationality Act
IER—U.S. Department of Justice Civil Rights Division, Immigrant and Employee Rights Section
SAVE—USCIS Systematic Alien Verification for Entitlements Program
Secretary—Secretary of Homeland Security
TNC—Tentative Nonconfirmation
TPS—Temporary Protected Status
TTY—Text Telephone
USCIS—U.S. Citizenship and Immigration Services
U.S.C.—United States Code

Through this Notice, DHS sets forth procedures necessary for eligible nationals of El Salvador (or aliens having no nationality who last habitually resided in El Salvador) to re-register for TPS and to apply for renewal of their EADs with USCIS. Re-registration is limited to persons who have previously registered for TPS under the designation of El Salvador and whose applications have been granted.

For individuals who have already been granted TPS under El Salvador's designation, the 60-day re-registration period runs from January 19, 2018 through March 19, 2018. USCIS will issue new EADs with a September 9, 2019 expiration date to eligible Salvadoran TPS beneficiaries who timely re-register and apply for EADs. Given the timeframes involved with processing TPS re-registration applications, DHS recognizes that not all re-registrants will receive new EADs before their current EADs expire on March 9, 2018. Accordingly, through this **Federal Register** notice, DHS automatically extends the validity of EADs issued under the TPS designation of El Salvador for 180 days, through September 5, 2018. This Notice explains how TPS beneficiaries and their employers may determine which EADs are automatically extended and how this affects the Form I–9, Employment

Eligibility Verification, and E-Verify processes.

## What is Temporary Protected Status (TPS)?

• TPS is a temporary immigration status granted to eligible nationals of a country designated for TPS under the INA, or to eligible persons without nationality who last habitually resided in the designated country.

• During the TPS designation period, TPS beneficiaries are eligible to remain in the United States, may not be removed, and are authorized to obtain EADs so long as they continue to meet the requirements of TPS.

• TPS beneficiaries may also apply for and be granted travel authorization as a matter of discretion.

• The granting of TPS does not result in or lead to lawful permanent resident status.

• To qualify for TPS, beneficiaries must meet the eligibility standards at INA section 244(c)(1)–(2), 8 U.S.C. 1254a(c)(1)–(2).

• When the Secretary terminates a country's TPS designation, beneficiaries return to one of the following:

○ The same immigration status or category that they maintained before TPS, if any (unless that status or category has since expired or been terminated); or

○ Any other lawfully obtained immigration status or category they received while registered for TPS, as long as it is still valid on the date TPS terminates.

## When was El Salvador designated for TPS?

On March 9, 2001, the Attorney General designated El Salvador for TPS based on an environmental disaster within that country, specifically the devastation resulting from a series of earthquakes that occurred in 2001. *See* Designation of El Salvador Under Temporary Protected Status, 66 FR 14214 (Mar. 9, 2001). The designation has been continuously extended since its initial designation. The Secretary of Homeland Security last announced an extension of TPS for El Salvador on July 8, 2016, based on the Secretary's determination that the conditions warranting the designation continued to be met. *See* Extension of the Designation of El Salvador for Temporary Protected Status, 81 FR 44645 (July 8, 2016).

## What authority does the Secretary have to terminate the designation of El Salvador for TPS?

Section 244(b)(1) of the INA, 8 U.S.C. 1254a(b)(1), authorizes the Secretary, after consultation with appropriate U.S.

Government agencies, to designate a foreign state (or part thereof) for TPS if the Secretary determines that certain country conditions exist.[1] The Secretary may then grant TPS to eligible nationals of that foreign state (or eligible aliens having no nationality who last habitually resided in the designated country). *See* INA section 244(a)(1)(A), 8 U.S.C. 1254a(a)(1)(A).

At least 60 days before the expiration of a country's TPS designation or extension, the Secretary, after consultation with appropriate Government agencies, must review the conditions in the foreign state designated for TPS to determine whether the conditions for the TPS designation continue to be met. *See* INA section 244(b)(3)(A), 8 U.S.C. 1254a(b)(3)(A). If the Secretary determines that the foreign state continues to meet the conditions for TPS designation, the designation must be extended for an additional period of 6 months and, in the Secretary's discretion, may be extended for 12 or 18 months. *See* INA section 244(b)(3)(C), 8 U.S.C. 1254a(b)(3)(C). If the Secretary determines that the foreign state no longer continues to meet the conditions for TPS designation, the Secretary must terminate the designation, but such termination may not take effect earlier than 60 days after the date the **Federal Register** notice of termination is published, or if later, the expiration of the most recent previous extension of the country designation. *See* INA section 244(b)(3)(B), 8 U.S.C. 1254a(b)(3)(B). The Secretary may determine the appropriate effective date of the termination and the expiration of any TPS-related documentation, such as EADs, for the purpose of providing for an orderly transition. *See id.;* INA section 244(d)(3), 8 U.S.C. 1254a(d)(3).

## Why is the Secretary terminating the TPS designation for El Salvador as of September 9, 2019?

DHS has reviewed conditions in El Salvador. Based on the review, including input received from other appropriate U.S. Government agencies, including the Department of State, the Secretary of Homeland Security has determined that the conditions supporting El Salvador's 2001 designation for TPS on the basis of

---

[1] As of March 1, 2003, in accordance with section 1517 of title XV of the Homeland Security Act of 2002, Public Law 107–296, 116 Stat. 2135, any reference to the Attorney General in a provision of the INA describing functions transferred from the Department of Justice to the U.S. Department of Homeland Security (DHS) "shall be deemed to refer to the Secretary" of Homeland Security. *See* 6 U.S.C. 557 (codifying the Homeland Security Act of 2002, tit. XV, section 1517).

environmental disaster due to the damage caused by the 2001 earthquakes are no longer met. Recovery efforts relating to the 2001 earthquakes have largely been completed. The social and economic conditions affected by the earthquakes have stabilized, and people are able to conduct their daily activities without impediments directly related to damage from the earthquakes. Additionally, El Salvador has been regularly accepting the return of its nationals with final removal orders In fiscal year 2016, DHS removed 20,538 Salvadoran nationals, and in fiscal year 2017, DHS removed 18,838 Salvadoran nationals.

Following the 2001 earthquake, El Salvador received a significant amount of international aid to assist in its recovery efforts, including millions of dollars dedicated to emergency and long-term assistance. Accordingly, many reconstruction projects have now been completed. Damaged schools and hospitals have been reconstructed and repaired, homes have been rebuilt, and money has been provided for water and sanitation and to repair damaged roads and other infrastructure. Additionally, El Salvador's economy is steadily improving. The Salvadoran Government has estimated that the country's unemployment rate was 7 percent in 2014, 2015, and 2016. The Gross Domestic Product (GDP) in El Salvador reached an all-time high of $26.80 billion (USD) in 2016 and is expected to reach $27.3 billion (USD) by the end of 2017. El Salvador's GDP is projected to increase to about $28.6 billion in 2020.

Government assistance and resources for returnees are reportedly limited, but the Salvadoran Government, U.S. Government, and international organizations are working cooperatively to improve security and economic opportunities in El Salvador to lay the groundwork for an eventual return of many Salvadorans from the United States. DHS estimates that there are approximately 262,500 nationals of El Salvador (and aliens having no nationality who last habitually resided in El Salvador) who hold TPS under El Salvador's designation.

**Notice of Termination of the TPS Designation of El Salvador**

By the authority vested in the Secretary of Homeland Security under INA section 244(b)(3), 8 U.S.C. 1254a(b)(3), I have determined, after consultation with appropriate U.S. Government agencies, that the conditions for the designation of El Salvador for TPS under 244(b)(1)(B) of the INA, 8 U.S.C. 1254a(b)(1)(B), are no

longer met. Accordingly, I order as follows:

(1) Pursuant to INA section 244(b)(3)(B) and in accordance with INA section 244(d)(3), in order to provide for an orderly transition, the designation of El Salvador for TPS is terminated effective at 11:59 p.m., local time, on September 9, 2019, which is 18 months following the end of the current designation.

(2) Information concerning the termination of TPS for nationals of El Salvador (and aliens having no nationality who last habitually resided in El Salvador) will be available at local USCIS offices upon publication of this Notice and through the USCIS National Customer Service Center at 1–800–375–5283. This information will be published on the USCIS website at *www.uscis.gov.*

**Kirstjen M. Nielsen,**
*Secretary.*

**Required Application Forms and Application Fees To Re-Register for TPS**

To re-register for TPS based on the designation of El Salvador, you *must* submit an Application for Temporary Protected Status (Form I–821). You do not need to pay the filing fee for Form I–821. *See* 8 CFR 244.17. You may be required to pay the biometric services fee. Please see additional information under the ''Biometric Services Fee'' section of this Notice.

Through operation of this **Federal Register** notice, your existing EAD issued under the TPS designation of El Salvador with the expiration date of March 9, 2018, is automatically extended for 180 days, through September 5, 2018. You do not need to apply for a new EAD in order to benefit from this 180-day automatic extension. However, if you want to obtain a new EAD valid through September 9, 2019, you must file an Application for Employment Authorization (Form I–765) and pay the Form I–765 fee (or request a fee waiver). Note, if you do not want a new EAD, you do not have to file Form I–765 or pay the Form I–765 fee. If you do not want to request a new EAD now, you may also file Form I–765 at a later date and pay the fee (or request a fee waiver), provided that you still have TPS or a pending TPS application. But unless you timely re-register and properly file an EAD application in accordance with this Notice, the validity of your current EAD will end on September 5, 2018. You may file the application for a new EAD either prior to or after your current EAD has expired. However, you are strongly

encouraged to file your application for a new EAD as early as possible to avoid gaps in the validity of your employment authorization documentation and to ensure that you receive your new EAD by September 5, 2018.

If you are seeking an EAD with your re-registration for TPS, please submit both the Form I–821 and Form I–765 together. If you are unable to pay the application fee and/or biometric services fee, you may complete a Request for Fee Waiver (Form I–912) or submit a personal letter requesting a fee waiver with satisfactory supporting documentation. For more information on the application forms and fees for TPS, please visit the USCIS TPS web page at *http://www.uscis.gov/tps.* Fees for the Form I–821, the Form I–765, and biometric services are also described in 8 CFR 103.7(b)(1)(i).

**Note:** If you have a Form I–821 and/or Form I–765 that was still pending as of January 18, 2018, then you do *not* need to file either application again. If your pending TPS application is approved, you will be granted TPS through September 9, 2019. Similarly, if you have a pending TPS-related application for an EAD that is approved, it will be valid through the same date.

**Biometric Services Fee**

Biometrics (such as fingerprints) are required for all applicants 14 years and older. Those applicants must submit a biometric services fee. As previously stated, if you are unable to pay for the biometric services fee, you may complete a Form I–912 or submit a personal letter requesting a fee waiver with satisfactory supporting documentation. For more information on the biometric services fee, please visit the USCIS website at *http://www.uscis.gov.* If necessary, you may be required to visit an Application Support Center to have your biometrics captured. For additional information on the USCIS biometrics screening process please see the USCIS Customer Profile Management Service Privacy Impact Assessment, available at *www.dhs.gov/privacy.*

**Refiling a Re-Registration TPS Application After Receiving a Denial of a Fee Waiver Request**

You should file as soon as possible within the 60-day re-registration period so USCIS can process your application and issue any EAD promptly. Properly filing early will also allow you to have time to refile your application before the deadline, should USCIS deny your fee waiver request. If, however, you receive a denial of your fee waiver request and are unable to refile by the re-registration deadline, you may still refile your Form

I–821 with the biometrics fee. This situation will be reviewed to determine whether you established good cause for late TPS re-registration. However, you are urged to refile within 45 days of the date on any USCIS fee waiver denial notice, if possible. *See* INA section 244(c)(3)(C); 8 U.S.C. 1254a(c)(3)(C); 8 CFR 244.17(b). For more information on good cause for late re-registration, visit the USCIS TPS web page at *http://*

*www.uscis.gov/tps.* Following denial of your fee waiver request, you may also refile your Form I–765 with fee either with your Form I–821 or at a later time, if you choose.

**Note:** Although a re-registering TPS beneficiary age 14 and older must pay the biometric services fee (but not the Form I–821 fee) when filing a TPS re-registration application, you may decide to wait to request an EAD. Therefore, you do not have to file the Form I–765 or pay the associated

Form I–765 fee (or request a fee waiver) at the time of re-registration, and could wait to seek an EAD until after USCIS has approved your TPS re-registration application. If you choose to do this, to re-register for TPS you would only need to file the Form I–821 with the biometrics services fee, if applicable, (or request a fee waiver).

**Mailing Information**

Mail your application for TPS to the proper address in Table 1.

TABLE 1—MAILING ADDRESSES

| If you . . . | Mail to . . . |
|---|---|
| Are applying for re-registration and you live in the following states/territories: Alabama, Alaska, American Samoa, Arkansas, Colorado, Guam, Hawaii, Idaho, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, New Mexico, New York, North Dakota, Northern Mariana Islands, Oklahoma, Puerto Rico, South Dakota, Tennessee, Texas, Utah, Virgin Islands, Wisconsin, Wyoming. | *U.S. Postal Service:* U.S. Citizenship and Immigration Services, Attn: TPS El Salvador, P.O. Box 660864, Dallas, TX 75266.<br>*Non-U.S. Postal Delivery Service:* U.S. Citizenship and Immigration Services, Attn: TPS El Salvador, 2501 S. State Highway, 121 Business Suite 400, Lewisville, TX 75067. |
| Are applying for re-registration and you live in the following states/territories: Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, Washington, DC, West Virginia. | *U.S. Postal Service:* U.S. Citizenship and Immigration Services, Attn: TPS El Salvador, P.O. Box 8635, Chicago, IL 60680–8635.<br>*Non-U.S. Postal Delivery Service:* U.S. Citizenship and Immigration Services, Attn: TPS El Salvador, 131 S. Dearborn—3rd Floor, Chicago, IL 60603–5517. |
| Are applying for re-registration and you live in the following states: Arizona, California, Nevada, Oregon, Washington. | *U.S. Postal Service:* U.S. Citizenship and Immigration Services, Attn: TPS El Salvador, P.O. Box 21800, Phoenix, AZ 85036.<br>*Non-U.S. Postal Delivery Service:* U.S. Citizenship and Immigration Services, Attn: TPS El Salvador, 1820 E. Skyharbor Circle S, Suite 100, Phoenix, AZ 85034. |
| Are applying for the first time as a late initial registration (this is for all states/territories). | *U.S. Postal Service:* U.S. Citizenship and Immigration Services, Attn: TPS El Salvador, P.O. Box 8635, Chicago, IL 60680–8635.<br>*Non-U.S. Postal Delivery Service:* U.S. Citizenship and Immigration Services, Attn: TPS El Salvador, 131 S. Dearborn—3rd Floor, Chicago, IL 60603–5517. |

If you were granted TPS by an Immigration Judge (IJ) or the Board of Immigration Appeals (BIA) and you wish to request an EAD or are re-registering for the first time following a grant of TPS by an IJ or the BIA, please mail your application to the appropriate mailing address in Table 1. When re-registering and requesting an EAD based on an IJ/BIA grant of TPS, please include a copy of the IJ or BIA order granting you TPS with your application. This will help us to verify your grant of TPS and process your application.

**Supporting Documents**

The filing instructions on the Form I–821 list all the documents needed to establish eligibility for TPS. You may also find information on the acceptable documentation and other requirements for applying or registering for TPS on the USCIS website at *www.uscis.gov/tps* under "El Salvador."

**Employment Authorization Document (EAD)**

*How can I obtain information on the status of my EAD request?*

To get case status information about your TPS application, including the status of an EAD request, you can check Case Status Online at *http://www.uscis.gov*, or call the USCIS National Customer Service Center at 800–375–5283 (TTY 800–767–1833). If your Form I–765 has been pending for more than 90 days, and you still need assistance, you may request an EAD inquiry appointment with USCIS by using the InfoPass system at *https://infopass.uscis.gov*. However, we strongly encourage you first to check Case Status Online or call the USCIS National Customer Service Center for assistance before making an InfoPass appointment.

*Am I eligible to receive an automatic 180-day extension of my current EAD through September 5, 2018, using this Federal Register notice?*

Yes. Provided that you currently have an El Salvador TPS-based EAD, this

**Federal Register** notice automatically extends your EAD by 180 days (through September 5, 2018) if you:

• Are a national of El Salvador (or an alien having no nationality who last habitually resided in El Salvador);

• Have an EAD with a marked expiration date of March 9, 2018, bearing the notation A–12 or C–19 on the face of the card under Category.

Although this **Federal Register** notice automatically extends your EAD through September 5, 2018, you must re-register timely for TPS in accordance with the procedures described in this **Federal Register** notice if you would like to maintain your TPS.

*When hired, what documentation may I show to my employer as evidence of employment authorization and identity when completing Employment Eligibility Verification (Form I–9)?*

You can find a list of acceptable document choices on the "Lists of Acceptable Documents" for Form I–9. Employers must complete Form I–9 to verify the identity and employment authorization of all new employees. Within three days of hire, employees

must present acceptable documents to their employers as evidence of identity and employment authorization to satisfy Form I–9 requirements.

You may present any document from List A (which provides evidence of both identity and employment authorization), or one document from List B (which provides evidence of your identity) together with one document from List C (which is evidence of employment authorization), or you may present an acceptable receipt for List A, List B, or List C documents as described in the Form I–9 Instructions. Employers may not reject a document based on a future expiration date. You can find additional detailed information about Form I–9 on USCIS' I–9 Central web page at *http://www.uscis.gov/I-9Central.*

An EAD is an acceptable document under List A. If your EAD has an expiration date of March 9, 2018, and states A–12 or C–19 under Category, it has been extended automatically for 180 days by virtue of this **Federal Register** notice and you may choose to present this Notice along with your EAD to your employer as proof of identity and employment eligibility for Form I–9 through September 5, 2018, unless your TPS has been withdrawn or your request for TPS has been denied. If you properly filed for a new EAD in accordance with this Notice, you will also receive Form I–797C, Notice of Action that will state your current A–12 or C–19 coded EAD is automatically extended for 180 days. You may choose to present your EAD to your employer together with this Form I–797C as a List A document that provides evidence of your identity and employment authorization for Form I–9 through September 5, 2018, unless your TPS has been withdrawn or your request for TPS has been denied. See the subsection titled, ''How do my employer and I complete the Employment Eligibility Verification (Form I–9) using an automatically extended EAD for a new job?'' for further information.

To reduce confusion over this extension at the time of hire, you should explain to your employer that your EAD has been automatically extended through September 5, 2018. You may also provide your employer with a copy of this **Federal Register** notice, which explains that your EAD has been automatically extended. As an alternative to presenting evidence of your automatically extended EAD, you may choose to present any other acceptable document from List A, a combination of one selection from List B and one selection from List C, or a valid receipt.

*What documentation may I present to my employer for Employment Eligibility Verification (Form I–9) if I am already employed but my current TPS-related EAD is set to expire?*

Even though your EAD has been automatically extended, your employer will need to ask you about your continued employment authorization no later than before you start work on March 10, 2018. You will need to present your employer with evidence that you are still authorized to work. Once presented, you may correct your employment authorization expiration date in Section 1 and your employer should correct the EAD expiration date in Section 2 of Form I–9. See the subsection titled, ''What corrections should my current employer and I make to Employment Eligibility Verification (Form I–9) if my employment authorization has been automatically extended?'' for further information. You may show this **Federal Register** notice to your employer to explain what to do for Form I–9 and to show that your EAD has been automatically extended through September 5, 2018. Your employer may need to reinspect your automatically extended EAD to check the expiration date and Category code to record the updated expiration date on your Form I–9 if your employer did not keep a copy of this EAD when you initially presented it. In addition, if you properly filed your Form I–765 to obtain a new EAD, you will receive a Form I–797C, Notice of Action. Form I–797C will state that your current A–12 or C–19 coded EAD is automatically extended for 180 days. You may present Form I–797C to your employer along with your EAD to confirm that the validity of your EAD has been automatically extended through September 5, 2018, unless your TPS has been withdrawn or your request for TPS has been denied. To reduce the possibility of gaps in your employment authorization documentation, you should file your Form I–765 to request a new EAD as early as possible during the re-registration period.

The last day of the automatic EAD extension is September 5, 2018. Before you start work on September 6, 2018, your employer must reverify your employment authorization. At that time, you must present any document from List A or any document from List C on Form I–9 Lists of Acceptable Documents, or an acceptable List A or List C receipt described in the Form I–9 Instructions to reverify employment authorization.

By September 6, 2018, your employer must complete Section 3 of the current version of the form, Form I–9 07/17/17 N, and attach it to the previously completed Form I–9, if your original Form I–9 was a previous version. Your employer can check the USCIS' I–9 Central web page at *http://www.uscis.gov/I-9Central* for the most current version of Form I–9.

Note that your employer may not specify which List A or List C document you must present and cannot reject an acceptable receipt.

*Can my employer require that I provide any other documentation to prove my status, such as proof of my Salvadoran citizenship?*

No. When completing Form I–9, including reverifying employment authorization, employers must accept any documentation that appears on the Form I–9 ''Lists of Acceptable Documents'' that reasonably appears to be genuine and that relates to you, or an acceptable List A, List B, or List C receipt. Employers need not reverify List B identity documents. Employers may not request documentation that does not appear on the ''Lists of Acceptable Documents.'' Therefore, employers may not request proof of Salvadoran citizenship or proof of re-registration for TPS when completing Form I–9 for new hires or reverifying the employment authorization of current employees. If presented with EADs that have been automatically extended, employers should accept such documents as a valid List A document so long as the EAD reasonably appears to be genuine and relates to the employee. Refer to the Note to Employees section of this **Federal Register** notice for important information about your rights if your employer rejects lawful documentation, requires additional documentation, or otherwise discriminates against you based on your citizenship or immigration status, or your national origin.

*How do my employer and I complete Employment Eligibility Verification (Form I–9) using my automatically extended employment authorization for a new job?*

When using an automatically extended EAD to complete Form I–9 for a new job before September 6, 2018, you and your employer should do the following:

1. For Section 1, you should:

a. Check ''An alien authorized to work until'' and enter September 5, 2018, the automatically extended EAD expiration date as the ''expiration date, if applicable, mm/dd/yyyy''; and

b. Enter your Alien Number/USCIS number or A-Number where indicated (your EAD or other document from DHS will have your USCIS number or A-Number printed on it; the USCIS number is the same as your A-Number without the A prefix).

2. For Section 2, employers should:

a. Determine if the EAD is auto-extended for 180 days by ensuring it is in category A–12 or C–19 and has a March 9, 2018 expiration date;

b. Write in the document title;

c. Enter the issuing authority;

d. Provide the document number; and

e. Insert September 5, 2018, the date that is 180 days from the date the current EAD expires.

If you also filed for a new EAD, as proof of the automatic extension of your employment authorization, you may present your expired or expiring EAD with category A–12 or C–19 in combination with the Form I–797C Notice of Action showing that the EAD renewal application was filed and that the qualifying eligibility category is either A–12 or C–19. Unless your TPS has been withdrawn or your request for TPS has been denied, this document combination is considered an unexpired EAD under List A. In these situations, to complete Section 2, employers should:

a. Determine if the EAD is auto-extended for 180 days by ensuring:

• It is in category A–12 or C–19; and

• The category code on the EAD is the same category code on Form I–797C, noting that employers should consider category codes A–12 and C–19 to be the same category code.

b. Write in the document title;

c. Enter the issuing authority;

d. Provide the document number; and

e. Insert September 5, 2018, the date that is 180 days from the date the current EAD expires. Before the start of work on September 6, 2018, employers must reverify the employee's employment authorization in Section 3 of Form I–9.

*What corrections should my current employer and I make to Employment Eligibility Verification (Form I–9) if my employment authorization has been automatically extended?*

If you presented a TPS-related EAD that was valid when you first started your job and your EAD has now been automatically extended, your employer may need to re-inspect your current EAD if they do not have a copy of the EAD on file. You may, and your employer should, correct your previously completed Form I–9 as follows:

1. For Section 1, you may:

a. Draw a line through the expiration date in Section 1;

b. Write September 5, 2018, the date that is 180 days from the date your current EAD expires above the previous date (March 9, 2018); and

c. Initial and date the correction in the margin of Section 1.

2. For Section 2, employers should:

a. Determine if the EAD is auto-extended for 180 days by ensuring:

• It is in category A–12 or C–19; and

• Has an expiration date of March 9, 2018.

b. Draw a line through the expiration date written in Section 2;

c. Write September 5, 2018, the date that is 180 days from the date the employee's current EAD expires above the previous date (March 9, 2018); and

d. Initial and date the correction in the Additional Information field in Section 2.

In the alternative, if you properly applied for a new EAD, you may present your expired EAD with category A–12 or C–19 in combination with the Form I–797C Notice of Action. The Form I–797C should show that the EAD renewal application was filed and that the qualifying eligibility category is either A–12 or C–19. To avoid confusion, you may also provide your employer a copy of this Notice. Your employer should correct your previously completed Form I–9 as follows:

For Section 2, employers should:

a. Determine if the EAD is auto-extended for 180 days by ensuring:

• It is in category A–12 or C–19; and

• The category code on the EAD is the same category code on Form I–797C, noting that employers should consider category codes A–12 and C–19 to be the same category code.

b. Draw a line through the expiration date written in Section 2;

c. Write September 5, 2018, the date that is 180 days from the date the employee's current EAD expires above the previous date (March 9, 2018); and

d. Initial and date the correction in the Additional Information field in Section 2.

**Note:** This is not considered a reverification. Employers do not need to complete Section 3 until either the 180-day extension has ended or the employee presents a new document to show continued employment authorization, whichever is sooner. By September 6, 2018, when the employee's automatically extended EAD has expired, employers must reverify the employee's employment authorization in Section 3.

*If I am an employer enrolled in E-Verify, how do I verify a new employee whose EAD has been automatically extended?*

Employers may create a case in E-Verify for a new employee using the EAD bearing the expiration date March 9, 2018, or the Form I–797C receipt information provided on Form I–9. In either case, the receipt number entered as the document number on Form I–9 should be entered into the document number field in E-Verify.

*If I am an employer enrolled in E-Verify, what do I do when I receive a ''Work Authorization Documents Expiration'' alert for an automatically extended EAD?*

E-Verify automated the verification process for employees whose TPS-related EAD was automatically extended. If you have employees who are TPS beneficiaries who provided a TPS-related EAD when they first started working for you, you will receive a ''Work Authorization Documents Expiring'' case alert when the auto-extension period for this EAD is about to expire. This indicates that you should update Form I–9 in accordance with the instructions above. Before such an employee starts to work on September 6, 2018, employment authorization must be reverified in Section 3. Employers should not use E-Verify for reverification.

**Note to All Employers**

Employers are reminded that the laws requiring proper employment eligibility verification and prohibiting unfair immigration-related employment practices remain in full force. This **Federal Register** notice does not supersede or in any way limit applicable employment verification rules and policy guidance, including those rules setting forth reverification requirements. For general questions about the employment eligibility verification process, employers may call USCIS at 888–464–4218 (TTY 877–875–6028) or email USCIS at *I-9Central@ dhs.gov.* Calls and emails are accepted in English and many other languages. For questions about avoiding discrimination during the employment eligibility verification process (Form I–9 and E-Verify), employers may call the U.S. Department of Justice's Civil Rights Division, Immigrant and Employee Rights Section (IER) (formerly the Office of Special Counsel for Immigration-Related Unfair Employment Practices) Employer Hotline at 800–255–8155 (TTY 800–237–2515). The IER offers language interpretation in numerous

languages. Employers may also email IER at *IER@usdoj.gov.*

**Note to Employees**

For general questions about the employment eligibility verification process, employees may call USCIS at 888–897–7781 (TTY 877–875–6028) or email USCIS at *I–9Central@dhs.gov.* Calls are accepted in English, Spanish, and many other languages. Employees or applicants may also call the IER Worker Hotline at 800–255–7688 (TTY 800–237–2515) for information regarding employment discrimination based upon citizenship, immigration status, or national origin, including discrimination related to Employment Eligibility Verification (Form I–9) and E-Verify. The IER Worker Hotline provides language interpretation in numerous languages.

To comply with the law, employers must accept any document or combination of documents from the Lists of Acceptable Documents if the documentation reasonably appears to be genuine and to relate to the employee, or an acceptable List A, List B, or List C receipt as described in the Employment Eligibility Verification (Form I–9) Instructions. Employers may not require extra or additional documentation beyond what is required for Form I–9 completion. Further, employers participating in E-Verify who receive an E-Verify case result of "Tentative Nonconfirmation" (TNC) must promptly inform employees of the TNC and give such employees an opportunity to contest the TNC. A TNC case result means that the information entered into E-Verify from an employee's Form I–9 differs from Federal or state government records.

Employers may not terminate, suspend, delay training, withhold pay, lower pay, or take any adverse action against an employee because of the TNC while the case is still pending with E-Verify. A Final Nonconfirmation (FNC) case result is received when E-Verify cannot verify an employee's employment eligibility. An employer may terminate employment based on a case result of FNC. Work-authorized employees who receive an FNC may call USCIS for assistance at 888–897–7781 (TTY 877–875–6028). For more information about E-Verify-related discrimination or to report an employer for discrimination in the E-Verify process based on citizenship, immigration status, or national origin, contact IER's Worker Hotline at 800–255–7688 (TTY 800–237–2515). Additional information about proper nondiscriminatory Form I–9 and E-Verify procedures is available on the

IER website at *https://www.justice.gov/ier* and the USCIS website at *http://www.dhs.gov/E-verify.*

**Note Regarding Federal, State, and Local Government Agencies (Such as Departments of Motor Vehicles)**

While Federal Government agencies must follow the guidelines laid out by the Federal Government, state and local government agencies establish their own rules and guidelines when granting certain benefits. Each state may have different laws, requirements, and determinations about what documents you need to provide to prove eligibility for certain benefits. Whether you are applying for a Federal, state, or local government benefit, you may need to provide the government agency with documents that show you are a TPS beneficiary and/or show you are authorized to work based on TPS. Examples of such documents are:

(1) Your current EAD;

(2) A copy of your Notice of Action (Form I–797C), the notice of receipt, for your application to renew your current EAD providing an automatic extension of your currently expired or expiring EAD;

(3) A copy of your Notice of Action (Form I–797C), the notice of receipt, for your Application for Temporary Protected Status for this re-registration; and

(4) A copy of your Notice of Action (Form I–797), the notice of approval, for a past or current Application for Temporary Protected Status, if you received one from USCIS. Check with the government agency regarding which document(s) the agency will accept. Some benefit-granting agencies use the USCIS Systematic Alien Verification for Entitlements (SAVE) program to confirm the current immigration status of applicants for public benefits. In most cases, SAVE provides an automated electronic response to benefit-granting agencies within seconds, but, occasionally, verification can be delayed. You can check the status of your SAVE verification by using CaseCheck at the following site: *https://save.uscis.gov/casecheck/,* then by clicking the "Check Your Case" button. CaseCheck is a free service that lets you follow the progress of your SAVE verification using your date of birth and one immigration identifier number. If an agency has denied your application based solely or in part on a SAVE response, the agency must offer you the opportunity to appeal the decision in accordance with the agency's procedures. If the agency has received and acted upon or will act upon a SAVE verification and you do not believe the

response is correct, you may make an InfoPass appointment for an in-person interview at a local USCIS office. Detailed information on how to make corrections, make an appointment, or submit a written request to correct records under the Freedom of Information Act can be found on the SAVE website at *http://www.uscis.gov/save.*

[FR Doc. 2018–00885 Filed 1–17–18; 8:45 am]

**BILLING CODE 9111–97–P**

---

**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**

**[Docket No. FR–6047–D–01]**

**Consolidated Delegation of Authority for the Government National Mortgage Association (Ginnie Mae)**

**AGENCY:** Office of the Secretary, HUD.

**ACTION:** Notice of delegation of authority.

**SUMMARY:** This notice is issued to consolidate the authorities delegated from the Secretary to the President and Executive Vice President—Chief Operations Officer of the Government National Mortgage Association (Ginnie Mae).

**DATES:** *Applicability date:* December 19, 2017.

**FOR FURTHER INFORMATION CONTACT:** Senior Vice President and Chief Risk Officer, Office of Enterprise Risk, Government National Mortgage Association, Department of Housing and Urban Development, Capital View, 425 3rd Street SW, 4th Floor, Washington, DC 20024; telephone number 202–475–4918 (this is not a toll-free number). Persons with hearing- or speech-impairments may access this number through TTY by calling the Federal Relay Service at 1–800–877–8339 (this is a toll-free number).

**SUPPLEMENTARY INFORMATION:** Ginnie Mae is a wholly owned U.S. Government corporation within the Department of Housing and Urban Development. Ginnie Mae's organic statute vests all the powers and duties of Ginnie Mae in the Secretary of HUD (12 U.S.C. 1723).

In Ginnie Mae's bylaws, the Secretary has delegated all the powers and duties of Ginnie Mae that were vested in the Secretary to Ginnie Mae. In previous **Federal Register** notices, the Secretary has delegated authority over Ginnie Mae to the Ginnie Mae President. Specifically, the Secretary has delegated: (1) All the Secretary's authority with respect to managing

VZ Vacatur_0304

**47228** **Federal Register** / Vol. 82, No. 195 / Wednesday, October 11, 2017 / Notices

## DEPARTMENT OF HOMELAND SECURITY

### U.S. Citizenship and Immigration Services

**[OMB Control Number 1615–0038]**

### Agency Information Collection Activities; Extension, Without Change, of a Currently Approved Collection: Petition To Remove Conditions on Residence

**AGENCY:** U.S. Citizenship and Immigration Services, Department of Homeland Security.

**ACTION:** 30-Day notice.

**SUMMARY:** The Department of Homeland Security (DHS), U.S. Citizenship and Immigration Services (USCIS) will be submitting the following information collection request to the Office of Management and Budget (OMB) for review and clearance in accordance with the Paperwork Reduction Act of 1995. The purpose of this notice is to allow an additional 30 days for public comments.

**DATES:** The purpose of this notice is to allow an additional 30 days for public comments. Comments are encouraged and will be accepted until November 13, 2017. This process is conducted in accordance with 5 CFR 1320.10.

**ADDRESSES:** Written comments and/or suggestions regarding the item(s) contained in this notice, especially regarding the estimated public burden and associated response time, must be directed to the OMB USCIS Desk Officer via email at *dhsdeskofficer@omb.eop.gov*. All submissions received must include the agency name and the OMB Control Number [1615–0038] in the subject line.

You may wish to consider limiting the amount of personal information that you provide in any voluntary submission you make. For additional information please read the Privacy Act notice that is available via the link in the footer of *http://www.regulations.gov*.

**FOR FURTHER INFORMATION CONTACT:** USCIS, Office of Policy and Strategy, Regulatory Coordination Division, Samantha Deshommes, Chief, 20 Massachusetts Avenue NW., Washington, DC 20529–2140, Telephone number (202) 272–8377 (This is not a toll-free number; comments are not accepted via telephone message). Please note contact information provided here is solely for questions regarding this notice. It is not for individual case status inquiries. Applicants seeking information about the status of their individual cases can check Case Status Online, available at the USCIS Web site at *http://www.uscis.gov*, or call the USCIS National Customer Service Center at (800) 375–5283; TTY (800) 767–1833.

**SUPPLEMENTARY INFORMATION:**

### Comments

The information collection notice was previously published in the **Federal Register** on June 30, 2017, at 82 FR 29912, allowing for a 60-day public comment period. USCIS did receive two comments in connection with the 60-day notice.

You may access the information collection instrument with instructions, or additional information by visiting the Federal eRulemaking Portal site at: *http://www.regulations.gov* and enter USCIS–2009–0008 in the search box. Written comments and suggestions from the public and affected agencies should address one or more of the following four points:

(1) Evaluate whether the proposed collection of information is necessary for the proper performance of the functions of the agency, including whether the information will have practical utility;

(2) Evaluate the accuracy of the agency's estimate of the burden of the proposed collection of information, including the validity of the methodology and assumptions used;

(3) Enhance the quality, utility, and clarity of the information to be collected; and

(4) Minimize the burden of the collection of information on those who are to respond, including through the use of appropriate automated, electronic, mechanical, or other technological collection techniques or other forms of information technology, *e.g.*, permitting electronic submission of responses.

### Overview of This Information Collection

(1) *Type of Information Collection Request:* Extension, Without Change, of a Currently Approved Collection.

(2) *Title of the Form/Collection:* Petition to Remove the Conditions on Residence.

(3) *Agency form number, if any, and the applicable component of the DHS sponsoring the collection:* Form I–751; USCIS.

(4) *Affected public who will be asked or required to respond, as well as a brief abstract: Primary: Individuals or households.* This form is used by USCIS to verify the petitioner's status and determine whether they are eligible to have the conditions on their permanent resident status removed.

(5) *An estimate of the total number of respondents and the amount of time estimated for an average respondent to respond:* The estimated total number of respondents for the information collection I–751 is 159,119 and the estimated hour burden per response is 3.75 hours. The estimated total number of respondents for biometric processing is 318,238 and the estimated hour burden per response is 1.17 hours.

(6) *An estimate of the total public burden (in hours) associated with the collection:* The total estimated annual hour burden associated with this collection is 969,035 hours.

(7) *An estimate of the total public burden (in cost) associated with the collection:* The estimated total annual cost burden associated with this collection of information is $19,492,200.

Dated: October 5, 2017.

**Samantha Deshommes,**
*Chief, Regulatory Coordination Division, Office of Policy and Strategy, U.S. Citizenship and Immigration Services, Department of Homeland Security.*

[FR Doc. 2017–21884 Filed 10–10–17; 8:45 am]

**BILLING CODE 9111–97–P**

## DEPARTMENT OF HOMELAND SECURITY

### U.S. Citizenship and Immigration Services

**[CIS No. 2610–17; DHS Docket No. USCIS–2014–0003]**

**RIN 1615–ZB66**

### Termination of the Designation of Sudan for Temporary Protected Status

**AGENCY:** U.S. Citizenship and Immigration Services, Department of Homeland Security.

**ACTION:** Notice.

**SUMMARY:** The designation of Sudan for Temporary Protected Status (TPS) is set to expire on November 2, 2017. After reviewing country conditions and consulting with the appropriate U.S. Government agencies, the Secretary of Homeland Security (Secretary) has determined that conditions in Sudan have sufficiently improved for TPS purposes and no longer support a designation for TPS. Therefore, the Secretary is terminating the TPS designation of Sudan. To provide for an orderly transition, this termination is effective November 2, 2018, twelve months following the end of the current designation.

Nationals of Sudan (and aliens having no nationality who last habitually resided in Sudan) who have been

VZ Vacatur_0305

granted TPS and wish to maintain their TPS and have their current TPS-based Employment Authorization Documents (EAD) extended through November 2, 2018, should re-register for TPS in accordance with the procedures set forth in this Notice. On November 3, 2018, nationals of Sudan (and aliens having no nationality who last habitually resided in Sudan) who have been granted TPS under the Sudan designation will no longer have TPS.

**DATES:** The designation of Sudan for TPS is terminated, effective at 11:59 p.m., local time, on November 2, 2018. The 60-day re-registration period runs from October 11, 2017 through December 11, 2017. (**Note:** It is important for re-registrants to timely re-register during this 60-day period and not to wait until their EADs expire.)

**FOR FURTHER INFORMATION CONTACT:**

• You can contact Alexander King, Branch Chief, Waivers and Temporary Services Branch, Service Center Operations Directorate, U.S. Citizenship and Immigration Services, Department of Homeland Security, 20 Massachusetts Avenue NW., Washington DC 20529–2060; or by phone at (202) 272–8377 (this is not a toll-free number). Note: The phone number provided here is solely for questions regarding this TPS Notice. It is not for individual case status inquiries.

• For further information on TPS, including guidance on the application process and additional information on eligibility, please visit the USCIS TPS Web page at *http://www.uscis.gov/tps.* You can find specific information about this termination of Sudan for TPS by selecting ''Sudan'' from the menu on the left side of the TPS Web page.

• Applicants seeking information about the status of their individual cases can check Case Status Online, available at the USCIS Web site at *http://www.uscis.gov,* or call the USCIS National Customer Service Center at 800–375–5283 (TTY 800–767–1833). Service is available in English and Spanish.

• Further information will also be available at local USCIS offices upon publication of this Notice.

**SUPPLEMENTARY INFORMATION:**

**Table of Abbreviations**

BIA—Board of Immigration Appeals
DHS—Department of Homeland Security
DOS—Department of State
EAD—Employment Authorization Document
FNC—Final Nonconfirmation
Government—U.S. Government
IJ—Immigration Judge
INA—Immigration and Nationality Act

IER—U.S. Department of Justice Civil Rights Division, Immigrant and Employee Rights Section (IER)
SAVE—USCIS Systematic Alien Verification for Entitlements Program
Secretary—Secretary of Homeland Security
TNC—Tentative Nonconfirmation
TPS—Temporary Protected Status
TTY—Text Telephone
USCIS—U.S. Citizenship and Immigration Services

Through this Notice, DHS sets forth procedures necessary for eligible nationals of Sudan (or aliens having no nationality who last habitually resided in Sudan) to re-register for TPS and to apply for renewal of their EADs with USCIS. Re-registration is limited to persons who have previously registered for TPS under the designation of Sudan and whose applications have been granted.

• For individuals who have already been granted TPS under Sudan's designation, the 60-day re-registration period runs from October 11, 2017 through December 11, 2017. USCIS will issue new EADs with a November 2, 2018 expiration date to eligible Sudan TPS beneficiaries who timely re-register and apply for EADs. Given the timeframes involved with processing TPS re-registration applications, DHS recognizes that not all re-registrants will receive new EADs before their current EADs expire on November 2, 2017. However, provided a Sudan TPS beneficiary timely re-registers and properly files an application for an EAD during the 60-day re-registration period, his or her EAD will be automatically extended for an additional period not to exceed 180 days from the date the current EAD expires, *i.e.,* through May 1, 2018. This notice explains how TPS beneficiaries and their employers may determine which EADs are automatically extended and their impact on Employment Eligibility Verification (Form I–9) and the E-Verify processes.

**What is Temporary Protected Status (TPS)?**

• TPS is a temporary immigration status granted to eligible nationals of a country designated for TPS under the Immigration and Nationality Act (INA), or to eligible persons without nationality who last habitually resided in the designated country.

• During the TPS designation period and so long as a TPS beneficiary continues to meet the requirements of TPS, he or she is eligible to remain in the United States, may not be removed, and is authorized to work and obtain an EAD.

• TPS beneficiaries may also apply for and be granted travel authorization as a matter of discretion.

• The granting of TPS does not result in or lead to lawful permanent resident status.

• To qualify for TPS, beneficiaries must meet the eligibility standards at INA section 244(c)(2), 8 U.S.C. 1254a(c)(2).

• When the Secretary terminates a country's TPS designation, beneficiaries return to the same immigration status they maintained before TPS, if any (unless that status has since expired or been terminated), or to any other lawfully obtained immigration status they received while registered for TPS that is still valid on the date TPS terminates.

**When was Sudan designated for TPS?**

On November 4, 1997, the Attorney General designated Sudan for TPS due to: (1) An ongoing armed conflict, and that because of such conflict, requiring the return of nationals to Sudan would pose a serious threat to their personal safety; and, (2) extraordinary and temporary conditions within Sudan that prevented nationals from returning to Sudan in safety. *See Designation of Sudan Under Temporary Protected Status,* 62 FR 59737 (Nov. 4, 1997). Since the initial designation, the Attorney General and, later, the Secretary, have extended TPS and/or redesignated Sudan for TPS. Sudan's most recent redesignation for TPS was in 2013, when the Secretary both extended Sudan's designation and redesignated Sudan for TPS for 18 months. *See Extension and Redesignation of Sudan for Temporary Protected Status,* 78 FR 1872 (Jan. 9, 2013). Sudan's TPS designation was most recently extended in 2016, when the Secretary extended Sudan's designation for TPS for 18 months through November 2, 2017. *See Extension and Redesignation of Sudan for Temporary Protected Status,* 81 FR 4045 (Jan. 25, 2016).

**What authority does the Secretary have to terminate the designation of Sudan for TPS?**

Section 244(b)(1) of the INA, 8 U.S.C. 1254a(b)(1), authorizes the Secretary, after consultation with appropriate U.S. Government agencies, to designate a foreign state (or part thereof) for TPS if the Secretary determines that certain country conditions exist.[1] The Secretary

---

[1] As of March 1, 2003, in accordance with section 1517 of title XV of the Homeland Security Act of 2002, Public Law 107–296, 116 Stat. 2135, any reference to the Attorney General in a provision of the INA describing functions transferred from the Department of Justice to the Department of Homeland Security (DHS) ''shall be deemed to refer

Continued

may then grant TPS to eligible nationals of that foreign state (or eligible aliens having no nationality who last habitually resided in the designated country). *See* INA section 244(a)(1)(A), 8 U.S.C. 1254a(a)(1)(A).

At least 60 days before the expiration of a country's TPS designation or extension, the Secretary, after consultation with appropriate Government agencies, must review the conditions in a foreign state designated for TPS to determine whether the conditions for the TPS designation continue to be met. *See* INA section 244(b)(3)(A), 8 U.S.C. 1254a(b)(3)(A). If the Secretary does not determine that a foreign state no longer meets the conditions for TPS designation, the designation will be extended for an additional period of 6 months, or in the Secretary's discretion, 12, or 18 months. *See* INA section 244(b)(3)(C), 8 U.S.C. 1254a(b)(3)(C). If the Secretary determines that the foreign state no longer meets the conditions for TPS designation, the Secretary must terminate the designation, but such termination may not take effect earlier than 60 days after the date the **Federal Register** notice of termination is published, or if later, the expiration of the most recent previous extension of the country designation. *See* INA section 244(b)(3)(B), 8 U.S.C. 1254a(b)(3)(B). The Secretary may determine the appropriate effective date of the termination and the expiration of any TPS-related documentation, such as EADs, for the purpose of providing an orderly transition. *See* id.; INA section 244(d)(3), 8 U.S.C. 1254a(d)(3).

**Why is the Secretary terminating the TPS designation for Sudan as of November 2, 2018?**

DHS and the Department of State (DOS) have reviewed the conditions in Sudan. Based on this review and consultation, the Secretary has determined that conditions in Sudan have sufficiently improved for TPS purposes. Termination of the TPS designation of Sudan is required because it no longer meets the statutory conditions for designation. The ongoing armed conflict no longer prevents the return of nationals of Sudan to all regions of Sudan without posing a serious threat to their personal safety. Further, extraordinary and temporary conditions within Sudan no longer prevent nationals from returning in safety to all regions of Sudan. To provide for an orderly transition, this

to the Secretary'' of Homeland Security. *See* 6 U.S.C. 557 (codifying the Homeland Security Act of 2002, tit. XV, section 1517).

termination is effective November 2, 2018, twelve months following the end of the current designation.

Conflict in Sudan is limited to Darfur and the Two Areas (South Kordofan and Blue Nile states). As a result of the continuing armed conflict in these regions, hundreds of thousands of Sudanese have fled to neighboring countries. However, in Darfur, toward the end of 2016 and through the first half of 2017, parties to the conflict renewed a series of time-limited unilateral cessation of hostilities declarations, resulting in a reduction in violence and violent rhetoric from the parties to the conflict. The remaining conflict is limited and does not prevent the return of nationals of Sudan to all regions of Sudan without posing a serious threat to their personal safety.

Above-average harvests have moderately improved food security across much of Sudan. While populations in conflict-affected areas continue to experience acute levels of food insecurity, there has also been some improvement in access for humanitarian actors to provide much-needed humanitarian aid.

Although Sudan's human rights record remains extremely poor in general, conditions on the ground no longer prevent all Sudanese nationals from returning in safety.

Taking into account the geographically limited scope of the conflict, the renewed series of unilateral cessation of hostilities declarations and concomitant reduction in violence and violent rhetoric from the parties to the conflict, and improvements in access for humanitarian actors to provide aid, the Secretary has determined that the ongoing armed conflict and extraordinary and temporary conditions that served as the basis for Sudan's most recent designation have sufficiently improved such that they no longer prevent nationals of Sudan from returning in safety to all regions of Sudan. Based on this determination, the Secretary has concluded that termination of the TPS designation of Sudan is required because Sudan no longer meets the statutory conditions for designation. To provide for an orderly transition, this termination is effective November 2, 2018, twelve months following the end of the current designation. DHS estimates that there are approximately 1,040 nationals of Sudan (and aliens having no nationality who last habitually resided in Sudan) who currently receive TPS benefits.

**Notice of Termination of the TPS Designation of Sudan**

By the authority vested in me as Secretary under INA section 244, 8 U.S.C. 1254a, I have determined, after consultation with the appropriate U.S. Government agencies, that Sudan no longer meets the conditions for designation of TPS under 244(b)(1) of the Act. 8 U.S.C. 1254a(b)(1). Accordingly, I order as follows:

(1) Pursuant to INA section 244(b)(3)(B), to provide for an orderly transition, the designation of Sudan for TPS is terminated effective at 11:59 p.m., local time, on November 2, 2018, 12 months following the end of the current designation.

(2) Information concerning the termination of TPS for nationals of Sudan (and aliens having no nationality who last habitually resided in Sudan) will be available at local USCIS offices upon publication of this Notice and through the USCIS National Customer Service Center at 1–800–375–5283. This information will be published on the USCIS Web site at *www.USCIS.gov.*

**Elaine C. Duke,**
*Acting Secretary.*

**Required Application Forms and Application Fees To Re-Register for TPS**

To re-register for TPS based on the designation of Sudan, you must submit each of the following applications:

1. Application for Temporary Protected Status (Form I–821):
• You do not need to pay the fee for the Form I–821. *See* 8 CFR 244.17.

2. Application for Employment Authorization (Form I–765):
• If you want an EAD, you must pay the fee (or request a fee waiver) for the Application for Employment Authorization (Form I–765), regardless of your age.
• If you do not want an EAD, you do not have to pay the Form I–765 fee.

If you do not want to request an EAD now, you may also file Form I–765 later to request an EAD and pay the fee (or request a fee waiver), provided that you still have TPS or a pending TPS application. Your EAD application will be considered timely filed even if the date on your current TPS-related EAD has expired. However, if you do not timely re-register and properly file an EAD application, the validity of your current EAD will end on November 2, 2017. Accordingly, you must also properly file your EAD application during the 60-day re-registration period for your current EAD to be automatically extended for 180 days (*i.e.,* through May 1, 2018). You are

strongly encouraged to properly file your EAD application as early as possible during the 60-day re-registration period to avoid lapses in your employment authorization and to ensure that you receive your Form I–797C, Notice of Action, prior to November 2, 2017.

You must submit both completed forms together. If you are unable to pay the application form fee for the I–765 and/or biometrics fee, you may complete a Request for Fee Waiver (Form I–912) or submit a personal letter requesting a fee waiver with satisfactory supporting documentation. For more information on the application forms and fees for TPS, please visit the USCIS TPS Web page at *http://www.uscis.gov/ tps.* Fees for the Form I–765, and biometric services are also described in 8 CFR 103.7(b)(1)(i).

**Biometric Services Fee**

Biometrics (such as fingerprints) are required for all applicants 14 years and older. Those applicants must submit a biometric services fee. As previously stated, if you are unable to pay for the biometric services fee, you may complete a Form I–912 or submit a personal letter requesting a fee waiver with satisfactory supporting documentation. For more information on the biometric services fee, please visit the USCIS Web site at *http:// www.uscis.gov.* If necessary, you may be required to visit an Application Support Center to have your biometrics captured.

**Re-Filing a Re-Registration TPS Application After Receiving a Denial of a Fee Waiver Request**

You should file as soon as possible within the 60-day re-registration period so USCIS can process your application and issue any EAD promptly. Properly filing early will also allow you to have time to re-file your application before the deadline and receive a Form I–797C demonstrating your EAD's automatic extension, should USCIS deny your fee waiver request. If, however, you receive a denial of your fee waiver request and are unable to re-file by the re-registration deadline, you may still re-file your I–765 application. This situation will be reviewed to determine whether you established good cause for late re-registration. However, you are urged to re-file within 45 days of the date on any USCIS fee waiver denial notice, if possible. *See* INA section 244(c)(3)(C); 8 U.S.C. 1254a(c)(3)(C); 8 CFR 244.17(b). For more information on good cause for late re-registration, visit the USCIS TPS Web page at *http:// www.uscis.gov/tps.*

**Note:** Although a re-registering TPS beneficiary age 14 and older must pay the biometric services fee (but not the initial Form I–821 fee) when filing a TPS re-registration application, you may decide to wait to request an EAD, and therefore not pay the Form I–765 fee (or request a fee waiver) until after USCIS has approved your TPS re-registration, if you are eligible. If you choose to do this, you would file the Form I–821 with the biometrics services fee, if applicable, (or request a fee waiver) and the Form I–765 without the fee and without requesting an EAD.

**Mailing Information**

Mail your application for TPS to the proper address in Table 1.

TABLE 1—MAILING ADDRESSES

| If . . . | Mail to . . . |
|---|---|
| You are applying through the U.S. Postal Service. | USCIS, Attn: TPS Sudan, P.O. Box 6943, Chicago, IL 60680–6943. |
| For FedEx, UPS, and DHL deliveries: | USCIS, Attn: TPS Sudan, 131 S. Dearborn Street, 3rd Floor, Chicago, IL 60603–5517. |

If you were granted TPS by an Immigration Judge (IJ) or the Board of Immigration Appeals (BIA) and you wish to request an EAD or are re-registering for the first time following a grant of TPS by an IJ or the BIA, please mail your application to the appropriate mailing address in Table 1. When re-registering and/or requesting an EAD based on an IJ/BIA grant of TPS, please include a copy of the IJ or BIA order granting you TPS with your application. This will aid in the verification of your grant of TPS and processing of your application, as USCIS may not have received records of your grant of TPS by either the IJ or the BIA.

**Supporting Documents**

The filing instructions on the Application for Temporary Protected Status (Form I–821) list all the documents needed to establish eligibility for TPS. You may also find information on the acceptable documentation and other requirements for applying or registering for TPS on the USCIS Web site at *www.uscis.gov/ tps* under "Sudan."

*Do I need to submit additional supporting documentation?*

If one or more of the questions listed in Part 4, Question 2 of the Form I–821 applies to you, then you must submit an explanation on a separate sheet(s) of paper and/or additional documentation.

**Employment Authorization Document (EAD)**

*How can I obtain information on the status of my EAD request?*

To get case status information about your TPS application, including the status of a request for an EAD, you can check Case Status Online at *http:// www.uscis.gov,* or call the USCIS National Service Center at 800–375–5283 (TTY 800–767–1833). If your Form I–765 has been pending for more than 90 days, and you still need assistance, you may request an EAD inquiry appointment with USCIS by using the InfoPass system at *https:// infopass.uscis.gov.* However, we strongly encourage you first to check Case Status Online or call the USCIS National Customer Service Center for assistance before making an InfoPass appointment.

*Am I eligible to receive an extension of my current EAD while I wait for my new one to arrive?*

Provided that you currently have a Sudan TPS-based EAD, you may be eligible to have the validity of your current EAD extended for 180 days (through May 1, 2018) if you:
• Are a national of Sudan (or an alien having no nationality who last habitually resided in Sudan);
• Received an EAD under the designation of Sudan for TPS;
• Have an EAD with a marked expiration date of November 2, 2017, bearing the notation "A–12" or "C–19" on the face of the card under "Category;"
• Timely re-registered for TPS during the 60-day re-registration period; and
• Properly filed an application for an EAD during the 60-day re-registration period.

You must timely re-register for TPS in accordance with the procedures described in this Notice if you would like to maintain your TPS and in order to have the validity of your current EAD extended by 180 days. You are strongly encouraged to file your EAD renewal application as early as possible during the 60-day re-registration period to avoid lapses in your employment authorization.

*When hired, what documentation may I show to my employer as evidence of employment authorization and identity when completing Employment Eligibility Verification (Form I–9)?*

You can find a list of acceptable document choices on the "Lists of Acceptable Documents" for Form I–9. You can find additional detailed information about Form I–9 on the

USCIS I–9 Central Web page at *http://www.uscis.gov/I-9Central.* Employers are required to verify the identity and employment authorization of all new employees by using Form I–9. Within three days of hire, an employee must present evidence of identity and employment authorization to his or her employer by presenting documentation sufficient to satisfy Form I–9 requirements.

You may present any document from List A (which provides evidence of both identity and employment authorization), or one document from List B (which provides evidence of your identity) together with one document from List C (which is evidence of employment authorization), or you may present an acceptable receipt for List A, List B, or List C documents as described in the Form I–9 Instructions. An EAD is an acceptable document under List A. Employers may not reject a document based on a future expiration date.

If your EAD has an expiration date of November 2, 2017, and states "A–12" or "C–19" under "Category," and you timely and properly filed an EAD renewal application during the 60-day re-registration period, you may choose to present your EAD to your employer together with the Form I–797C Notice of Action (showing the qualifying eligibility category of either A–12 or C–19) as a List A document that provides evidence of your identity and employment authorization for Form I–9 through May 1, 2018, unless your TPS has been finally withdrawn or your request for TPS has been finally denied. See the subsection titled, "*How do my employer and I complete the Employment Eligibility Verification (Form I–9) using an automatically extended EAD for a new job?*" for further information.

To minimize confusion over this extension at the time of hire, you should explain to your employer that your EAD has been automatically extended through May 1, 2018. You may also provide your employer with a copy of this **Federal Register** Notice which explains how your EAD could be automatically extended; however, this **Federal Register** Notice is not acceptable evidence that your EAD has been automatically extended. As an alternative to presenting evidence of your automatically extended EAD, you may choose to present any other acceptable document from List A, a combination of one selection from List B and one selection from List C, or a valid receipt.

*What documentation may I show my employer for my Employment Eligibility Verification (Form I–9) if I am already employed but my current TPS-related EAD is set to expire?*

Even though you may be eligible to have your EAD automatically extended, your employer will need to ask you about your continued employment authorization no later than before you start work on November 3, 2017. You will need to present your employer with evidence that you are still authorized to work. Once presented, you may correct your employment authorization expiration date in Section 1 and your employer should correct the employment authorization document expiration date in Section 2 of Form I–9. See the subsection titled, "*What corrections should my current employer and I make to Employment Eligibility Verification (Form I–9) if my employment authorization has been automatically extended?*" for further information. In addition, you may also show this Notice to your employer to explain what to do for Form I–9.

When you properly file your Form I–765 to renew your current EAD, you will receive a USCIS receipt notice (Form I–797C). The receipt notice will state that your current "A–12" or "C–19" coded EAD is automatically extended for 180 days. You may show this receipt notice to your employer along with your EAD to confirm your EAD has been automatically extended through May 1, 2018, unless your TPS has been finally withdrawn or your request for TPS has been finally denied. You may also show this **Federal Register** Notice to your employer to minimize confusion; however, this **Federal Register** Notice is not acceptable evidence that your EAD has been automatically extended. To avoid delays in receiving the Form I–797C and a lapse in your employment authorization, you should file your EAD renewal application as early as possible during the re-registration period.

The last day of the automatic EAD extension is May 1, 2018. Before you start work on May 2, 2018, your employer must reverify your employment authorization. At that time, you must present any document from List A or any document from List C on Form I–9's Lists of Acceptable Documents, or an acceptable List A or List C receipt described in the Form I–9 Instructions to reverify employment authorization. Your employer should either complete Section 3 of the Form I–9 originally completed for you; or if this section has already been completed or if the version of Form I–9 has expired

(check the date in the bottom left-hand corner of the form), complete Section 3 of a new Form I–9 ensuring it is the most current version. Note that your employer may not specify which List A or List C document you must present and cannot reject an acceptable receipt.

*Can my employer require that I provide any other documentation to prove my status, such as proof of my Sudanese citizenship?*

No. When completing Form I–9, including reverifying employment authorization, employers must accept any documentation that appears on the appropriate "Lists of Acceptable Documents" for Form I–9 that reasonably appears to be genuine and that relates to you, or an acceptable List A, List B (for new hires only), or List C receipt. Employers may not request documentation that does not appear on the "Lists of Acceptable Documents." Therefore, employers may not request proof of Sudanese citizenship or proof of re-registration for TPS when completing Form I–9 for new hires or reverifying the employment authorization of current employees. If the expired EAD with category A–12 or C–19 is presented with the Form I–797C Notice of Action as described herein, an employer should accept this document combination as a valid List A document so long as the EAD reasonably appears to be genuine and to relate to the employee. Refer to the Note to Employees section of this Notice for important information about your rights if your employer rejects lawful documentation, requires additional documentation, or otherwise discriminates against you based on your citizenship or immigration status, or your national origin.

*How do my employer and I complete Employment Eligibility Verification (Form I–9) on the basis of automatically extended employment authorization for a new job?*

As proof of the automatic extension of your employment authorization, you may present your expired EAD with category A–12 or C–19 in combination with the Form I–797C Notice of Action showing that the EAD renewal application was timely filed and that the qualifying eligibility category is either A–12 or C–19. Unless your TPS has been finally withdrawn or your request for TPS has been finally denied, this document combination is considered an unexpired Employment Authorization Document (Form I–766) under List A. When completing Form I–9 for a new job you are starting before May 2, 2018,

you and your employer should do the following:

1. For Section 1, you should:

a. Check "An alien authorized to work until" and enter the date that is 180 days from the date your current EAD expires (May 1, 2018) as the "expiration date, if applicable, mm/dd/yyyy"; and

b. Enter your Alien Number/USCIS number or A-Number where indicated (your EAD or other document from DHS will have your USCIS Number or A-Number printed on it; the USCIS number is the same as your A-Number without the A prefix).

2. When completing Section 2, employers should:

a. Determine if the EAD is auto-extended for 180 days by ensuring:

• It is in category A–12 or C–19;

• The "received date" on Form I–797 is on or before the end of the 60-day re-registration period stated in this Notice; and

• The category code on the EAD is the same category code on Form I–797C, noting that employers should consider category codes A–12 and C–19 to be the same category code.

b. Write in the document title;

c. Enter the issuing authority;

d. Provide the document number; and

e. Insert May 1, 2018, the date that is 180 days from the date the current EAD expires. By the start of work on May 2, 2018, employers must reverify the employee's employment authorization in Section 3 of the Form I–9.

*What corrections should my current employer and I make to Employment Eligibility Verification (Form I–9) if my employment authorization has been automatically extended?*

If you are an existing employee who presented a TPS-related EAD that was valid when you first started your job and your employment authorization has now been automatically extended because you timely and properly filed a new application for employment authorization during the 60-day re-registration period, you may present your expired EAD with category A–12 or C–19 in combination with the Form I–797C Notice of Action. The Form I–797C should show that the EAD renewal application was timely filed and that the qualifying eligibility category is either A–12 or C–19. To avoid confusion, you may also provide your employer a copy of this **Federal Register** Notice; however, this **Federal Register** Notice is not acceptable evidence that your EAD has been automatically extended. Your employer may need to re-inspect your current EAD if your employer does not have a copy of the EAD on file. You and your employer should correct your

previously completed Form I–9 as follows:

1. For Section 1, you may:

a. Draw a line through the expiration date in Section 1;

b. Write the date that is 180 days from the date your current EAD expires (May 1, 2018) above the previous date (November 2, 2017); and

c. Initial and date the correction in the margin of Section 1.

2. For Section 2, employers should:

a. Determine if the EAD is auto-extended for 180 days by ensuring:

• It is in category A–12 or C–19;

• The "received date" on Form I–797 is on or before the end of the 60-day re-registration period stated in this Notice; and

• The category code on the EAD is the same category code on Form I–797C, noting that employers should consider category codes A–12 and C–19 to be the same category code;

b. Draw a line through the expiration date written in Section 2;

c. Write the date that is 180 days from the date the employee's current EAD expires (May 1, 2018) above the previous date (November 2, 2017); and

d. Initial and date the correction in the margin of Section 2.

**Note:** This is not considered a reverification. Employers do not need to complete Section 3 until either the 180-day extension has ended or the employee presents a new document to show continued employment authorization, whichever is sooner. By May 2, 2018, when the employee's automatically extended employment authorization has ended, employers must reverify the employee's employment authorization in Section 3.

*If I am an employer enrolled in E-Verify, how do I verify a new employee whose EAD has been automatically extended?*

Employers may create a case in E-Verify for a new employee using the Form I–797C receipt information provided on Form I–9. The receipt number entered as the document number on Form I–9 should be entered into the document number field in E-Verify.

*If I am an employer enrolled in E-Verify, what do I do when I receive a "Work Authorization Documents Expiration" alert for an automatically extended EAD?*

E-Verify automated the verification process for employees whose TPS-related EAD was automatically extended. If you have an employee who is a TPS beneficiary who provided a TPS-related EAD when he or she first started working for you, you will receive a "Work Authorization Documents

Expiring" case alert when the auto-extension period for this EAD is about to expire. This indicates that you should update Form I–9 in accordance with the instructions above. By the employee's start of work on May 2, 2018, employment authorization must be reverified in Section 3. Employers should not use E-Verify for reverification.

**Note to All Employers**

Employers are reminded that the laws requiring proper employment eligibility verification and prohibiting unfair immigration-related employment practices remain in full force. This Notice does not supersede or in any way limit applicable employment verification rules and policy guidance, including those rules setting forth reverification requirements. For general questions about the employment eligibility verification process, employers may call USCIS at 888–464–4218 (TTY 877–875–6028) or email USCIS at *I9Central@dhs.gov.* Calls and emails are accepted in English and many other languages. For questions about avoiding discrimination during the employment eligibility verification process (Form I–9 and E-Verify), employers may call the U.S. Department of Justice's Civil Rights Division, Immigrant and Employee Rights Section (IER) (formerly the Office of Special Counsel for Immigration-Related Unfair Employment Practices) Employer Hotline at 800–255–8155 (TTY 800–237–2515). IER offers language interpretation in numerous languages. Employers may also email IER at *IER@ usdoj.gov.*

**Note to Employees**

For general questions about the employment eligibility verification process, employees may call USCIS at 888–897–7781 (TTY 877–875–6028) or email USCIS at *I-9Central@dhs.gov.* Calls are accepted in English, Spanish, and many other languages. Employees or applicants may also call the IER Worker Hotline at 800–255–7688 (TTY 800–237–2515) for information regarding employment discrimination based upon citizenship, immigration status, or national origin, including discrimination related to Employment Eligibility Verification (Form I–9) and E-Verify. The IER Worker Hotline provides language interpretation in numerous languages.

To comply with the law, employers must accept any document or combination of documents from the Lists of Acceptable Documents if the documentation reasonably appears to be genuine and to relate to the employee,