| | |
|---|---|
| Ahilan T. Arulanantham (SBN 237841)<br>arulanantham@law.ucla.edu<br>Stephany Martinez Tiffer (SBN 341254)<br>martineztiffer@law.ucla.edu<br>CENTER FOR IMMIGRATION LAW AND<br>POLICY, UCLA SCHOOL OF LAW<br>385 Charles E. Young Dr. East<br>Los Angeles, CA 90095<br>Telephone: (310) 825-1029<br><br>Emilou MacLean (SBN 319071)<br>emaclean@aclunc.org<br>Michelle (Minju) Y. Cho (SBN 321939)<br>mcho@aclunc.org<br>Amanda Young (SBN 359753)<br>ayoung@aclunc.org<br>ACLU FOUNDATION<br>OF NORTHERN CALIFORNIA<br>39 Drumm Street<br>San Francisco, CA 94111-4805<br>Telephone: (415) 621-2493<br>Facsimile: (415) 863-7832<br><br>Attorneys for Plaintiffs<br>*[Additional Counsel Listed on Next Page]* | Yaakov M. Roth<br>Acting Assistant Attorney General<br>Civil Division<br>Drew Ensign<br>Deputy Assistant Attorney General<br>Sarah L. Vuong (CA Bar 258528)<br>Assistant Director<br>William H. Weiland (MA Bar 661433)<br>Senior Litigation Counsel<br>Lauren Bryant (NY Bar 5321880)<br>Anna Dichter (NJ Bar 304442019)<br>Jeffrey Hartman (WA Bar 49810)<br>Luz Maria Restrepo (NY Bar 4907077)<br>Catherine Ross (DC Bar 9007404)<br>Amanda Saylor (FL Bar 1031480)<br>Eric Snyderman (VA Bar 99563)<br>Trial Attorneys<br>U.S. Department of Justice, Civil Division<br>Office of Immigration Litigation<br>General Litigation and Appeals Section<br>P.O. Box 868, Ben Franklin Station<br>Washington, DC 20044<br><br>Attorneys for Defendants |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, MARIELA GONZÁLEZ, FREDDY JOSE ARAPE RIVAS, M.H., CECILIA DANIELA GONZÁLEZ HERRERA, ALBA CECILIA PURICA HERNÁNDEZ, E.R., HENDRINA VIVAS CASTILLO, A.C.A., SHERIKA BLANC, VILES DORSAINVIL, and G.S.,<br><br>    Plaintiffs,<br><br>vs.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,<br><br>    Defendants. | Case No. 3:25-cv-01766-EMC<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:   April 21, 2025<br>Time:   1:30 PM<br>Judge: Hon. Edward M. Chen<br>Dept.:  Courtroom 5, 17th Floor |

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitran (SBN 302081)
ebitran@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

Pursuant to Civil Local Rule 16-9, the Standing order for All Judges of the Northern District of California, and this Court's April 8, 2025 Order (Dkt. 107), the parties submit this Joint Case Management Statement.

## I.     JURISDICTION AND SERVICE

<u>Plaintiffs' Position</u>: This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States. Venue is proper in the Northern District of California under 28 U.S.C. § 1391(e)(1) because at least one Plaintiff resides in this judicial district and each Defendant is an agency of the United States or an officer of the United States sued in his or her official capacity. Defendants were served with process on February 28, 2025.

<u>Defendants' Position</u>: Plaintiffs perfected service on Defendants on February 28, 2025. This Court does not have jurisdiction over any of Plaintiffs' claims, whether arising under the Administrative Procedure Act or the Constitution. Congress has expressly provided that "[t]here is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS relief. 8 U.S.C. § 1254a(b)(5)(A); see also 5 U.S.C. § 701(a)(1) (precluding review under the APA "to the extent" that other "statutes preclude judicial review").

## II.     FACTS

<u>Plaintiffs' Position</u>:

This case involves DHS Secretary Noem's decisions to vacate the previous administration's extension of Temporary Protected Status (TPS) for 600,000 Venezuelans and terminate the designation for 350,000 of these individuals; as well as her decision to partially vacate the previous administration's TPS extension for 500,000 Haitians.

Venezuela was first designated for TPS on March 9, 2021, due to "extraordinary and temporary" country conditions. The 2021 designation was extended on September 8, 2022. On October 3, 2023, Secretary Mayorkas again extended the 2021 designation and also newly designated Venezuela for TPS. On January 17, 2025, Secretary Mayorkas extended the 2023 designation for 18 months, through October 2, 2026, and consolidated registration under both the 2021 and 2023 designations, allowing all eligible Venezuelan TPS holders to re-register and obtain TPS through

October 2, 2026. However, on January 28, 2025, just three days after being sworn in, Secretary Noem vacated this January 17, 2025 extension. Subsequently, on January 30, 2025, she terminated TPS for Venezuelans who initially registered in 2023. As a result, approximately 350,000 Venezuelan TPS holders were set to lose their work authorization on April 2, 2025, and their legal status on April 7, 2025.

Haiti was first designated for TPS on January 21, 2010, due to "extraordinary and temporary conditions" in the country. This designation was extended five times and then terminated on January 18, 2018. The termination never entered in effect due to legal challenges, including in *Ramos v. Nielsen*, 336 F. Supp. 3d 1075 (N.D. Cal. 2018). On August 3, 2021, DHS newly designated Haiti for TPS. DHS subsequently extended and redesignated Haiti for TPS on January 26, 2023 and July 1, 2024. The July 1, 2024 extension and redesignation granted TPS for Haitians through February 3, 2026. On February 20, 2025, Secretary Noem announced a "partial vacatur" of the July 1, 2024 extension and redesignation of Haiti for TPS. She reduced Haiti's designation period from eighteen months to twelve months, advancing the expiration of TPS for eligible Haitian nationals to August 3, 2025.

Plaintiffs in this case are the National TPS Alliance (NTPSA), a member-led organization representing TPS holders across the country, and individual TPS holders from Venezuela and Haiti. Plaintiffs contend that Secretary Noem's actions are illegal for multiple reasons. First, Plaintiffs NTPSA and the individual plaintiffs with TPS for Venezuela contend that Defendants' vacatur of the January 17, 2025 TPS extension decision for Venezuela violated the Administrative Procedure Act (APA) because it exceeded Defendants' statutory authority and was arbitrary and capricious, contrary to law, pretextual, and deviated from past practice. Second, Plaintiffs NTPSA and the individual plaintiffs with TPS for Venezuela contend that Defendants' termination of the 2023 TPS designation for Venezuela violated the APA, because Defendants exceeded their statutory authority and the termination was arbitrary and capricious, contrary to law, pretextual, and deviated from past practice. Third, Plaintiffs NTPSA and the individual Haitian Plaintiffs contend that the Defendants' partial vacatur of the July 1, 2024 extension for Haiti violated the APA, because it exceeded Defendants' statutory authority and was arbitrary and capricious, contrary to law, pretextual, and deviated from

past practice. Fourth and finally, all Plaintiffs contend that the Secretary's decisions were motivated at least in part by racial animus, violating the equal protection guarantee of the Due Process Clause of the Fifth Amendment.

*Defendants' Position:* The Secretary, "after consultation with appropriate agencies[,]" may designate a country for TPS if, among other bases, there are "extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety, unless the [Secretary] finds that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States." 8 U.S.C. § 1254a(b)(C). Aliens covered by TPS are eligible for work authorization and may not be removed. *Id.* § 1254a(a). Initial TPS designations are discretionary, and the Secretary must conduct periodic reviews to determine whether the conditions underlying a TPS designation continue to be met. *Id*. § 1254a(b)(2), (b)(3)(A). If the Secretary "does not determine" that the foreign state "no longer meets the conditions for designation," then "the period of designation of the foreign state is extended for an additional period of 6 months (or, in the discretion of the [Secretary], a period of 12 or 18 months)." *Id*. § 1254a(b)(3)(C). But if the foreign state "no longer continues to meet the conditions for designation," the Secretary "shall terminate the designation." *Id*. § 1254a(b) (3) (B). The TPS statute leaves the sensitive judgment calls about the government's national interest in the Secretary's hands. It bars judicial review of her TPS determinations, in plain terms: "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." *Id*. § 1254a(b) (5) (A).

**Venezuela**

Venezuela was initially designated for TPS in 2021 based on extraordinary and temporary conditions that prevented Venezuelans from safely returning.[1] On October 3, 2023, Secretary Mayorkas extended the 2021 Designation through September 10, 2025, and at the same time redesignated Venezuela for TPS until April 2, 2025.[2] On January 17, 2025—the last Friday of the

---

[1] *Designation of Venez. for [TPS] and Implementation of Emp. Authorization for Venezuelans Covered by Deferred Enforced Departure*, 86 Fed. Reg. 13,574 (Mar. 9, 2021) (citing 8 U.S.C. § 1254a(b)(1)(C) ("2021 Venez. Designation").
[2] *Extension and Redesignation of Venez. for [TPS]*, 88 Fed. Reg. 68,130 (Oct. 3, 2023 ("2023 Venez. Designation").

Biden Administration—Secretary Mayorkas published notification that he extended the 2023 Designation for 18 months, effective on April 3, 2025, and established a consolidated filing process that allowed all Venezuelan TPS beneficiaries to obtain TPS through the expiration of that extension (*i.e.*, until October 2, 2026). [3]

On January 28, 2025, Secretary Noem vacated the 2025 Extension, because both the consolidation of the two tracks and the premature extension failed to "acknowledge the novelty of its approach" or "explain how it is consistent with the TPS statute."[4] The 2025 Vacatur took effect immediately.

On February 5, 2025, after consulting with relevant agencies, Secretary Noem reviewed and terminated Venezuela's 2023 Designation because she determined it was "contrary to the national interest to permit the covered Venezuelan nationals to remain temporarily in the United States."[5] Consistent with the statutory timelines, the 2025 Termination was scheduled to become effective on April 7, 2025. *Id*.

**Haiti**

Haiti was initially designated for TPS in 2010 due to the "conditions in Haiti following the [7.0 magnitude] earthquake" that struck Haiti in January 2010.[6] Various Secretaries extended and redesignated TPS for Haiti through 2018.[7] On January 18, 2018, then-Acting Secretary Elaine Duke found that "the conditions for Haiti's designation for TPS—on the basis of 'extraordinary and temporary conditions' relating to the 2010 earthquake that prevented Haitian nationals from returning in safety—are no longer met" and terminated the TPS designation of Haiti.[8] On August 3, 2021, former Secretary Alejandro Mayorkas newly designated Haiti on the basis of extraordinary and temporary

---

[3] *See Extension of the 2023 Designation of Venez. for [TPS]*, 90 Fed. Reg. 5,961 (Jan. 17, 2025) ("2025 Venez. Extension").
[4] *Vacatur of 2025 [TPS] Decision for Venez.*, 90 Fed. Reg. 8,805 (Feb. 3, 2025) ("2025 Venez. Vacatur").
[5] *Termination of the October 3, 2023 Designation of Venez. for [TPS]*, 90 Fed. Reg. 9040, 9041 (Feb. 5, 2025) ("2025 Venez. Termination"); 8 U.S.C. § 1254a(b)(1)(C).
[6] *Designation of Haiti for [TPS]*, 75 Fed. Reg. 3476, 3477 (Jan. 21, 2010).
[7] *Extension and Redesignation of Haiti for [TPS]*, 76 Fed. Reg. 29,000 (May 19, 2011); *Extension of the Designation of Haiti for [TPS]*, 77 Fed. Reg. 59,943 (Oct. 1, 2012); *Extension of the Designation of Haiti for [TPS]*, 79 Fed. Reg. 11,808 (Mar. 3, 2014); *Extension of the Designation of Haiti for [TPS]*, 80 Fed. Reg. 51,582 (Aug. 25, 2015); *Extension of the Designation of Haiti for [TPS]*, 82 Fed. Reg. 23,830 (May 24, 2017).
[8] *Termination of the Designation of Haiti for [TPS]*, 83 Fed. Reg. 2,648 (Jan. 18, 2018).

1  conditions effective through February 4, 2023.[9] Thereafter, he extended and redesignated TPS for
2  Haiti for a period of 18 months, ending on August 3, 2024.[10] On July 1, 2024, former Secretary
3  Mayorkas again extended and redesignated TPS for Haiti for 18 months, ending on February 3, 2026.[11]

4  On February 24, 2025, Secretary Noem partially vacated the 2024 Haiti Extension,[12] reducing
5  the existing designation period from 18 months to 12 months. In rolling back former Secretary
6  Mayorkas's 18-month extension, Secretary Noem explained that the 2024 Haiti Extension "failed to
7  evaluate" whether permitting Haitian nationals to remain temporarily is not "contrary to the national
8  interest of the United States."[13] Secretary Noem also noted that "there is no discussion in the [2024
9  Haiti Extension] of why the 18-month period was selected in lieu of a [six] or [twelve] month period."
10 Id. at 10,513. She further relied on indications from the Department of State and DHS of "significant
11 developments" that "might result in improvement in conditions," including the "deployment of the
12 United Nations Multinational Security Support (MSS) mission" to "support the Haitian National
13 Police in capacity building, combatting gang violence and provid[ing] security for critical
14 infrastructure." Id. The Secretary considered the putative reliance interests of those impacted by the
15 2025 Haiti Partial Vacatur but found that they were outweighed by the overriding interests and
16 concerns articulated in the notice. Id.

**III.   LEGAL ISSUES**

Plaintiffs' Position: The legal and equitable issues for determination include:

A.   Whether Defendants' decision to vacate the extension of Venezuela's TPS designation was arbitrary, capricious, pretextual, not in accordance with law, in excess of statutory authority, deviated from past practice, and fails to meet minimum standards of rational explanation and judgment in violation of the APA. *See* 5 U.S.C. § 706(2)(A); *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009).

B.   Whether Defendants' decision to terminate Venezuela's TPS designation was

---

[9] *Designation of Haiti for [TPS]*, 86 Fed. Reg. 41,863 (Aug. 3, 2021).
[10] *Extension and Redesignation of Haiti for [TPS]*, 88 Fed. Reg. 5,022 (Jan. 26, 2023).
[11] *See Extension and Redesignation of Haiti for [TPS]*, 89 Fed. Reg. 54,484 (Jul. 1, 2024) ("2024 Haiti Extension").
[12] *See Partial Vacatur of 2024 [TPS] Decision for Haiti*, 90 Fed. Reg. 10,511 (Feb. 24, 2025) (hereinafter "2025 Haiti Partial Vacatur").
[13] *See 2025 Haiti Partial Vacatur*, 90 Fed. Reg. at 10,512; *see also* 8 U.S.C. § 1254a(b)(1)(C).

1  arbitrary, capricious, pretextual, not in accordance with law, in excess of statutory authority,

2  deviated from past practice, and fails to meet minimum standards of rational explanation and

3  judgment in violation of the APA. *See* 5 U.S.C. § 706(2)(A); *FCC v. Fox Television Stations, Inc.*,

4  556 U.S. 502, 513 (2009).

5        C.      Whether Defendants' decision to partially vacate the extension of Haiti's TPS

6  designation was arbitrary, capricious, pretextual, not in accordance with law, in excess of statutory

7  authority, deviated from past practice, and fails to meet minimum standards of rational explanation

8  and judgment in violation of the APA. *See* 5 U.S.C. § 706(2)(A); *FCC v. Fox Television Stations,*

9  *Inc.*, 556 U.S. 502, 513 (2009).

10        D.      Whether Defendants' actions with respect to the aforementioned vacaturs and

11  termination violate the implicit anti-discrimination guarantee of the Due Process Clause because

12  they were motivated by intentional discrimination based on race, ethnicity, or national origin. *See*

13  U.S. Const. amend. V; *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265–66

14  (1977); *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).

15        Defendants' Position:

16        A.      Whether Plaintiffs have standing and their claims regarding the Secretary's Haiti TPS

17  determination are ripe for review. Plaintiffs' claims depend on contingencies and speculation. They

18  allege an immediate and imminent injury but the Secretary's partial vacatur merely moved up the end

19  date of Haiti's latest extension and redesignation for TPS by six months. Indeed, Plaintiffs' claims

20  rests entirely on the assumption that Haiti's TPS designation *might* be terminated in the future. They

21  have failed to establish that such a determination is "actual or imminent," rather than conjectural or

22  that Plaintiffs have suffered any irreparable injury sufficient to establish standing. *See Trump v. New*

23  *York*, 592 U.S. 125, 131 (2020) ("Any prediction how the Executive Branch might eventually

24  implement this general statement of policy is no more than conjecture at this time." (quotation

25  omitted)).

26        B.      Whether this Court has jurisdiction to hear Plaintiffs' claims. Congress has explicitly

27  barred the Secretary's TPS determinations from judicial review. *See* 8 U.S.C. § 1254a(b)(5)(A); H.R.

28  Rep. No. 101-245, at 14 ("Moreover, none of the [Secretary's] decisions with regard to granting,

extending, or terminating TPS will be subject to judicial review." (emphasis added)); 5 U.S.C. § 701(a)(1), (a)(2).

C. Whether the Secretary has inherent authority to reconsider past actions. Congress granted the Secretary "undoubtedly broad" authority to "make TPS determinations" and ensure the continued designation of a country complies with the law. *Ramos v. Wolf*, 975 F.3d at 890 (finding statutory constraints "on the Secretary's discretion, [are] in favor of limiting unwarranted designations or extensions…") (cleaned up). The Secretary exercised her inherent authority under 8 U.S.C. § 1254a to partially vacate, vacate, and terminate the former Secretary's decisions.

D. Whether the Secretary's TPS determinations violated equal protection principles. Plaintiffs cannot meet the deferential standard established by the Supreme Court in *Trump v. Hawaii*, 585 U.S. 667 (2018) for their Equal Protection claim. *Hawaii's* deferential rational-basis standard governs these immigration policy decisions and the Secretary's decisions easily pass muster under it. Even under the standard set forth in *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252 (1977), Plaintiffs' Equal Protection claim is still baseless.

E. Whether this Court can grant Plaintiffs the relief they seek. 8 U.S.C. § 1252(f)(1) "prohibits lower courts from entering injunctions that order federal officials to take or refrain from taking actions to enforce, implement, or otherwise carry out the specified provisions." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). The TPS statute is a covered provision and the statutory prohibition applies "[r]egardless of the nature of the action or claim" and to any order that "restrain[s]" the Secretary.

F. Whether the relief Plaintiffs seek, a nationwide order, is overly broad. Any relief should be tailored to the named-Plaintiffs in this case.

**IV.   MOTIONS**

Plaintiffs' Position: Plaintiffs filed a Motion to Proceed Under Pseudonym for individual plaintiffs M.H. and E.R. concurrently with the Complaint on February 19, 2025 (Dkt. 13), which the Court granted on March 12, 2025 (Dkt. 70). Plaintiffs also filed an Unopposed Motion to Proceed Under Pseudonym for individual plaintiffs A.C.A. and G.S. concurrently with the Amended Complaint on March 20, 2025 (Dkt. 75), which the Court granted on March 24, 2025 (Dkt. 84).

1        Plaintiffs filed a Motion to Postpone Effective Agency Action under 5 U.S.C. § 705 of the APA on February 20, 2025 to delay implementation or enforcement of the vacatur and termination of Venezuela's TPS extension until the resolution of these proceedings on the merits. Dkt. 16. Plaintiffs also filed a Motion to Shorten Time on February 24, 2025, to conduct the postponement hearing (originally scheduled for March 27, 2025) at an earlier date. Dkt. 45. The Plaintiffs' Motion to Shorten Time was granted (Dkt. 51) and the postponement hearing was scheduled for and took place on March 24, 2025.

       On March 31, 2025, the District Court granted Plaintiffs' Motion to Postpone Effective Agency Action. Dkt. 93. On April 1, 2025, Defendants filed a Notice of Appeal to the Ninth Circuit challenging the District Court's postponement order. Dkt. 94. Defendants also filed a Motion for Emergency Stay of the Postponement Order Pending Appeal (Dkt. 95) and a Motion to Shorten Time for Plaintiffs to Respond to Defendants' Motion for Emergency Stay (Dkt. 96). On April 2, 2025, Plaintiffs filed a Motion for Extension of Time to File Response to the Defendants' Motion for Emergency Stay. Dkt. 98. The District Court granted Defendants' Motion to Shorten Time (Dkt. 102) and denied Plaintiffs' Motion for Extension of Time (Dkt. 99). Accordingly, Plaintiffs filed their opposition to Defendants' Motion for Emergency Stay on April 3, 2025. Dkt. 101. The following day, on April 4, 2025, the District Court denied Defendants' Motion for Emergency Stay of the Postponement Order. Dkt. 102.

       Thereafter, Defendants filed an Emergency Motion Pursuant to Circuit Rule 27-3 for a Stay Pending Appeal in the Ninth Circuit. Plaintiffs filed a response to the Ninth Circuit on April 11, 2025. Defendants filed a reply on April 14, 2025.

       In addition, Plaintiffs filed a Motion to Shorten Time to Confer on March 20, 2025, seeking an order requiring the parties to conduct a Rule 26(f) conference so that discovery may open. Dkt. 79. At the postponement hearing on March 24, 2025, the Court briefly addressed this Motion and advised the parties to meet and confer as soon as possible regarding the contents of the administrative record to facilitate its production seven days after a decision regarding Plaintiffs' postponement motion. The Court's order on March 31, 2025 further instructed the parties in this regard and ordered the Defendants to produce the administrative record for Venezuela by April 7, 2025. Dkt. 93 at 77. As set forth in Section VIII below, Plaintiffs anticipate a possible need for motion practice related to the

1   administrative record and extra-record discovery.

2       Plaintiffs requested that Defendants stipulate to a postponement of agency action with regard to Haiti, but Defendants refused to so stipulate. *See* Dkt. 105 (Joint Status Report at Section II). Plaintiffs anticipate filing their motion to postpone effective agency action under 5 U.S.C. § 705 with respect to Haiti on or about April 29, 2025 (subject to unanticipated developments). Alternatively, depending on the status of Defendants' production of the administrative record, Plaintiffs may instead file a motion for summary judgment and for vacatur of agency action under 5 U.S.C. § 706 with respect to Haiti on or about May 15, 2025. Plaintiffs also anticipate filing a motion for summary judgment and for vacatur of agency action under 5 U.S.C. § 706 with respect to Venezuela as soon as practicable given pending stay litigation.

    <u>Defendants' Position</u>: Defendants agree with Plaintiffs' characterization of the motions that have been filed thus far in this case. Unless the parties come to some prior agreement, Defendants anticipate filing a motion to stay further proceedings. Defendants also intend to file a motion to dismiss under Rules 12(b)(1) and 12(b)(6) no later than April 29, 2025.

### V. AMENDMENT OF PLEADINGS

    <u>Plaintiffs' Position</u>: Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), Plaintiffs filed their First Amended Complaint on March 20, 2025 to include additional named plaintiffs who have been harmed by the recent partial vacatur of TPS for Haiti (on February 20, 2025) and additional claims for relief based on that partial vacatur. Dkt. 74.

    <u>Defendants' Position</u>: Defendants maintain that any further amendment of the pleadings would be futile because all challenges to TPS determinations are barred.

### VI. EVIDENCE PRESERVATION

    The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information, and are meeting and conferring regarding protocols for preserving evidence. Plaintiffs provided Defendants with a proposed stipulated order governing the discovery of ESI on April 10, 2025, and Defendants responded on April 16, 2025. The parties continue to meet and confer but anticipate that they may need to present alternative ESI protocols to the Court for review.

## VII. DISCLOSURES

The parties have not yet exchanged initial disclosures. The parties will meet and confer regarding initial disclosures and propose a reasonable timeline for exchange.

<u>Defendants' Position</u>: Defendants assert that, as an action for review on the administrative record, this case is exempt from initial disclosures. Fed. R. Civ. P. 26(a)(1).

## VIII. DISCOVERY

<u>Plaintiffs' Position</u>: Pursuant to the Court's oral order during the March 24, 2025 hearing on Plaintiffs' Motion to Postpone, Plaintiffs initiated a meet and confer on the scope of the administrative record on March 26, 2025. Plaintiffs provided detailed instructions regarding what documents should be included in the administrative record based on past experience and this Court's rulings in the *Ramos* case. The parties thereafter met and conferred. On March 31, 2025, the Court ordered Defendants to produce the administrative record concerning Secretary Noem's decisions to vacate the extension of TPS for Venezuela and to terminate TPS for Venezuela within seven days of the order. Dkt. 93.

On April 7, 2025, Defendants produced certified administrative records (CARs) for the Venezuela vacatur-of-extension decision (Dkt. 103) and the termination decision (Dkt. 104). Plaintiffs are evaluating the CARs but note, as an initial matter, that the CAR for the vacatur-of-extension decision lacks any assessment of purported confusion related to the January 17, 2025 extension that was vacated despite this being the stated justification for the vacatur; and the CAR for the termination decision likewise lacks support for the stated justifications for the termination. The CAR for the vacatur-of-extension decision also lacks any State Department communications or recommendations; the CAR for the termination only includes a two-page letter from the Secretary of State related to the termination. Both CARs lack records which are typically part of TPS periodic review processes, and neither CAR includes any evaluation of country conditions by the agency which post-dates the January 17, 2025 extension. Plaintiffs have sought a representation from Defendants that the record provided at Dkts. 103 and 104 are the complete administrative records despite the limitations Plaintiffs have identified.

On April 8, 2025, the Court directed Defendants to produce the administrative record related

to the partial vacatur of TPS extension for Haiti by April 15, 2025 (Dkt. 106), and Defendants produced a CAR for the Haiti decision on April 15, 2025 (Dkt. 110). Plaintiffs are evaluating the CAR.

Plaintiffs anticipate seeking additional discovery outside of the administrative record as permitted by law. The parties will continue to meet and confer regarding extra-record discovery after the initial Case Management Conference on April 21, 2025.

Defendants' Position: Defendants assert that this case is to be decided on the administrative record and that extra-record discovery is not appropriate. *Blue Mts. Biodiversity Project v. Jeffries*, 99 F.4th 438, 444-45 (9th Cir. 2024).

## IX.   CLASS ACTIONS

This is not a class action.

## X.   RELATED CASES

On February 19, 2025, Plaintiffs filed a motion to relate this case to *Ramos, et al. v. Nielsen et al.* (Case No. 18-cv-1554) ("*Ramos*") and *Bhattarai, et al. v. Nielsen, et al.* (Case No. 19-cv-00731) ("*Bhattarai*"). Defendants filed an opposition on February 25, 2025. On February 26, 2025, the Court found that Plaintiffs' motion was moot given that the case had been randomly assigned to this Court.

The parties are aware of three other pending cases challenging the vacatur and termination of TPS for Venezuela and/or the partial vacatur of TPS for Haiti: *Casa v. Noem*, Case No. 8:25-cv-00525 (S.D. Md. filed Feb. 20, 2025) (Venezuela only); *Haitian-Americans United, Inc. v. Trump*, Case No. 1:25-cv-10498 (D. Mass. filed Mar. 3, 2025) (Haiti and Venezuela); *Haitian Evangelical Clergy Association v. Trump*, Case No. 1:25-cv-01464 (E.D.N.Y. filed March 14, 2025) (Haiti only).

## XI.   RELIEF

Plaintiffs' Position: Plaintiffs request declaratory relief, and that the Court set aside the agency's unlawful vacatur and termination orders under the Administrative Procedure Act and the Equal Protection Clause of the Fifth Amendment. Plaintiffs further seek an award of attorneys' fees and costs, as well as any other additional relief that the Court may deem proper.

Defendants' Position: Defendants seek dismissal of this action.

## XII.   SETTLEMENT AND ADR

The parties have not yet engaged in any settlement discussions and believe it is premature to

specify an ADR plan for this litigation given the early stage of the proceedings and the parties' meet and confer efforts.

### XIII. OTHER REFERENCES

At this time, the parties do not believe this case is suitable for reference to binding arbitration or a special master. Nor is this case suitable for the Judicial Panel on Multidistrict Litigation.

### XIV. NARROWING OF ISSUES

The parties will continue to discuss the possibility of narrowing the issues beyond the motions described above.

### XV. SCHEDULING

Plaintiffs' Position: Plaintiffs anticipate filing their motion to postpone effective agency action under 5 U.S.C. § 705 with respect to Haiti on or about April 29, 2025 (subject to unanticipated developments). Alternatively, depending on the status of Defendants' production of the administrative record, Plaintiffs may instead file a motion for summary judgment and for vacatur of agency action under 5 U.S.C. § 706 with respect to Haiti on or about May 15, 2025. Plaintiffs also anticipate filing a motion for summary judgment and for vacatur of agency action under 5 U.S.C. § 706 with respect to Venezuela as soon as practicable given pending stay litigation. Plaintiffs also anticipate seeking additional discovery outside of the administrative record as permitted by law after the initial Case Management Conference on April 21, 2025.

The parties are also exploring a potential stay pending resolution of Defendants' appeal of this Court's March 31, 2025 order. Such stipulations, if the parties agree, will substantially simplify the issues and schedule for proceedings before this Court.

Defendants' Position: Defendants assert that further proceedings in this matter should be stayed until the appeal of this Court's March 31, 2025 order is finally resolved. ECF No. 93. Defendants propose that the parties submit a Joint Status Report with a proposed schedule within seven days of the mandate issuing to this Court.

### XVI. TRIAL

Plaintiffs' Position: Plaintiffs have not requested a jury trial. Plaintiffs currently anticipate litigating the merits of their claims on summary judgment. Alternatively, the parties will meet and

confer regarding the expected length of trial as the case progresses.

<u>Defendants' Position</u>: Defendants assert that this case is to be decided on the administrative record and thus should be decided via summary judgment. Fed. R. Civ. P. 56.

### XVII. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Plaintiffs filed Certifications of Interested Entities or Persons, as required by Civil Local Rule 3-15, on February 19, 2025 and March 24, 2025.

The parties are unaware of any persons, firms, partnerships, corporations, or other entities that have either (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

### XVIII. PROFESSIONAL CONDUCT

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

### XIX. OTHER MATTERS

<u>Plaintiffs' Position</u>: On April 4, 2025, Plaintiffs identified for Defendants that Plaintiffs are aware of Venezuelan and Haitian TPS holders and prima facie eligible TPS applicants (including NTPSA members) who are being detained despite the TPS statute clearly forbidding the detention of individuals in such postures, and the Court's postponement order (Dkt. 93) requiring that Venezuelan TPS remains valid. Plaintiffs proposed a mechanism to streamline communication related to agency review of such individuals. Defendants have not responded to this proposal.

Date: April 16, 2025

Respectfully submitted,

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

 /s/ *Emilou Maclean*
Emilou Maclean
*Attorneys for Plaintiffs*

Date: April 16, 2025

U.S. DEPARTMENT OF JUSTICE

 /s/ *William H. Weiland*
William H. Weiland
*Attorneys for Defendants*

**SIGNATURE ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the other Signatory has concurred in the filing of this document.

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

/s/ *Emilou MacLean*
Emilou MacLean
