1  YAAKOV M. ROTH
   Acting Assistant Attorney General
2  Civil Division
   SARAH L. VUONG
3  Assistant Director
   WILLIAM H. WEILAND
4  Senior Litigation Counsel
   ERIC SNYDERMAN
5  ANNA DICHTER
   LAUREN BRYANT
6  CATHERINE ROSS
   LUZ MARIA RESTREPO
7  JEFFREY HARTMAN
   Trial Attorneys
8  U.S. Department of Justice, Civil Division
   Office of Immigration Litigation
9  General Litigation and Appeals Section
   P.O. Box 868, Ben Franklin Station
10 Washington, DC 20044
   Attorneys for Defendants
11

12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15                       SAN FRANCISCO DIVISION

16

17 NATIONAL TPS ALLIANCE, *et. al*.,                Case No. 3:25-cv-1766

18              Plaintiff,
          v.
19 KRISTI NOEM, in her official capacity as         **DEFENDANTS' MOTION TO DISMISS**
   Secretary of Homeland Security, *et. al*.,
20                                                   Judge: Hon. Edward M. Chen
              Defendants.                            Date:  June 12, 2025
21                                                   Time:  1:30 p.m.
                                                     Place: Courtroom 5, 17th Floor,
22                                                          San Francisco U.S. Courthouse

23

24

25

26

27

28

1   Dated: April 29, 2025                    Respectfully submitted,

2

3                                            YAAKOV M. ROTH
                                             Acting Assistant Attorney General
4                                            Civil Division

5                                            SARAH L. VUONG
                                             Assistant Director
6

7                                            WILLIAM H. WEILAND
                                             Senior Litigation Counsel
8
                                             ERIC SNYDERMAN
9                                            ANNA DICHTER
                                             CATHERINE ROSS
10                                           LUZ MARIA RESTREPO
                                             JEFFREY HARTMAN
11                                           Trial Attorneys

12                                           /s/ *Lauren E. Bryant*
                                             LAUREN E. BRYANT
13                                           (Bar. No. 5321880)
                                             Trial Attorney
14                                           U.S. Department of Justice, Civil Division
                                             Office of Immigration Litigation
15                                           General Litigation and Appeals Section
                                             P.O. Box 868, Ben Franklin Station
16                                           Washington, DC 20044
                                             Tel: (202) 305-0134
17                                           Lauren.E.Bryant@usdoj.gov

18

19                                           *Attorneys for the Defendants*

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT…..............................................................................................1

BACKGROUND..................................................................................................................3

I.     STATUTORY BACKGROUND..................................................................3

II.    FACTUAL BACKGROUND.........................................................................4

       A.  Venezuela ......................................................................................4

       B.  Haiti...............................................................................................6

STANDARD OF REVIEW.................................................................................7

ARGUMENT ......................................................................................................8

I.     THIS COURT LACKS JURISDICTION OVER PLAINTIFFS' ENTIRE
       ACTION………...........................................................................................8

       A. Plaintiffs Lack Standing to Challenge a Possible Future Termination of Haiti's TPS
          Designation, and Their Haiti Claims Are Not Yet Ripe for Review...............................8

       B.   The TPS Statute Bars Plaintiffs' Claims................................................9

       C.   The APA Precludes Review of the Venezuela Determinations.......................11

       D.   Section 1252(f)(1) Precludes Plaintiffs' Requested Relief................................12

II.    THE SECRETARY'S DETERMINATIONS DID NOT VIOLATE THE
       APA………...................................................................................................14

       A.   The Secretary's 2025 Venezuela Vacatur was Not Arbitrary and Capricious or Contrary
            to Law ............................................................................................14

       B.   The Secretary's 2025 Venezuela Termination was not Arbitrary and Capricious or
            Contrary to Law ...............................................................................18

       C.   The Secretary's Haiti Partial Vacatur was not Arbitrary and Capricious or Contrary to
            Law ................................................................................................20

III.   PLAINTIFFS' CONSTITUIONAL CLAIMS FAIL AS A MATTER OF
       LAW................................................................................................22

CONCLUSION.................................................................................................25

1

## TABLE OF AUTHORITIES

2

**CASES**

3

*Aberdeen & Rockfish R.R. v. Students Challenging Regulatory Agency Procedures (SCRAP)*,
    422 U.S. 289 (1975)……………………………………………………………………13

4

5

*Albertson v. FCC*,
    182 F.2d 397 (D.C. Cir. 1950)……………………………………………………………15

6

7

*Ali v. Fed. Bureau of Prisons*,
    552 U.S. 214 (2008)………………………………………………………………………...9

8

9

*Arizona v. United States*,
    567 U.S. 387 (2012)………………………………………………………………………22

10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)………………………………………………………………………...8

11

12

*Biden v. Texas*,
    597 U.S. 785 (2022)………………………………………………………………………13

13

*California Trout v. Schaefer*,
    58 F.3d 469 (9th Cir. 1995)………………………………………………………………17

14

15

*California v. Grace Brethren Church*,
    457 U.S. 393 (1982)………………………………………………………………………14

16

17

*Chandler v. State Farm Mut. Auto. Ins.*,
    598 F.3d 1115 (9th Cir. 2010)…………………………………………………………... 8

18

*Chao v. Russell P. Le Frois Builder, Inc.*,
    291 F.3d 219 (2d Cir. 2002)……………………………………………………………15

19

20

*China Unicom (Ams.) Ops. Ltd .v. FCC*,
    124 F.4th 1128 (9th Cir. 2024)…………………………………………………………... 11, 14

21

*Dan's City Used Cars, Inc. v. Pelkey*,
    569 U.S. 251 (2013)………………………………………………………………………...9

22

23

*Direct Mktg. Ass'n v. Borhl*,
    575 U.S. 1 (2015)………………………………………………………………………13

24

25

*Dep't of Commerce v. New York*,
    588 U.S. 752 (2019)………………………………………………………………………18

26

27

*FDA v. Wages and White Lion Invs.*,
    145 S. Ct. 898, 917 (2025)………………………………………………………………...22

28

DEFS.' MOTION TO DISMISS
No. 3:25-cv-1766

ii

*Fiallo v. Bell*,
    430 U.S.787 (1977)……………………………………………………………..23

*Galvez v. Jaddou*,
    52 F.4th 821 (9th Cir. 2022)……………………………………………………… 12

*Garland v. Aleman Gonzalez*,
    596 U.S. 543 (2022)……………………………………………………………13

*Gun South, Inc. v. Brady*,
    877 F.2d 858 (11th Cir. 1989)…………………………………………………… 15

*Harisiades v. Shaughnessy*,
    342 U.S. 580 (1952)………………………………………………………...16, 23

*Herguan Univ. v. Immig. And Cust. Enf't*,
    258 F. Supp. 3d 1050 (N.D. Cal. 2017)……………………………………………… 8

Ivy Sports Medicine, LLC v. Burwell,
    767 F.3d 81 (D.C. Cir. 2014)…………………………………………………... 15

*Kleindienst v. Mandel*,
    408 U.S. 753 (1972)……………………………………………………………23

*Lackey v. Stinnie*,
    145 S. Ct. 659 (2025)………………………………………………………………1

*Lamar, Archer & Cofrin, LLP v. Appling*,
    584 U.S. 709 (2018)……………………………………………………………...9

*Last Best Beef, LLC v. Dudas*,
    506 F.3d 333 (4th Cir. 2007)…………………………………………………... 15

*Lincoln v. Vigil*,
    508 U.S. 182 (1993)……………………………………………………………12

*Macktal v. Chao*,
    286 F.3d 822 (5th Cir. 2002)…………………………………………………… 11, 15

*Marsh v. Oregon Natural Res. Council*,
    490 U.S. 360 (1989)……………………………………………………………17

*Mathews v. Diaz*,
    426 U.S. 67 (1976)……………………………………………………………...23

*Matter of Ferrante*,
    No. 23-55005, 2023 WL 8449198 (9th Cir. Dec. 6, 2023)……………………………………4

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011)………………………………………………….. 8

*Newdow v. Roberts*,
  603 F.3d 1002 (D.C. Cir. 2010)…………………………………………………... 14

*Patel v. Garland*,
  596 U.S. 328 (2022)………………………………………………………………… 10

*Poursina v. USCIS*,
  936 F.3d 868 (9th Cir. 2019)……………………………………………… 16, 20

*Ramos v. Nielsen*,
  975 F.3d 872 (9th Cir. 2020)………………………………….. 10, 15, 25

*Ramos v. Wolf*,
  59 F.4th 1010 (9th Cir. 2023)……………………………………………  10

*Regents of Univ. of Cal.*,
  591 U.S. 1 (2020)………………………………………………………………24

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010)…………………………………………… 14

*Sanchez v. Mayorkas*,
  593 U.S. 409 (2021)……………………………………………………… 3

*Texas v. United States*,
  523 U.S. 296 (1998)………………………………………………………… 8

*Thomas v. Anchorage Equal Rights Comm'n*,
  220 F.3d 1134 (9th Cir. 2000)…………………………………….. 8

*Trump v. Hawaii*,
  585 U.S. 667 (2018)……………………………………………… *passim*

*Trump v. New York*,
  592 U.S. 125 (2020)………………………………………………… 9

*U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*,
  508 U.S. 439 (1993)…………………………………………………12

*United States v. Carroll*,
  105 F.3d 740 (1st Cir. 1997)…………………………………………12

*United States v. Texas*,
  599 U.S. 670 (2023)……………………………………………………13

DEFS.' MOTION TO DISMISS
No. 3:25-cv-1766

iv

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977)………………………………………………………….. 3, 24, 25

*Webster v. Doe*,
    486 U.S. 592 (1988)…………………………………………………………12

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000)…………………………………………….. 8

*Youngstown Sheet and Tube Co. v. Sawyer*,
    343 U.S. 579 (1952)…………………………………………………………16

*Zhu v. Gonzales*,
    411 F.3d 292 (D.C. Cir. 2005)……………………………………………12

**STATUTES**

**Immigration and Nationality Act of 1952**:

1 U.S.C. § 204(a)………………………………………………………………... 12

5 U.S.C. 553……………………………………………………………………... 22

5 U.S.C. § 701(a)(1)……………………………………………………………….2

5 U.S.C. § 701(a)(2)…………………………………………………………...2, 11

6 U.S.C. § 202(1)-(5)………………………………………………………….. 17

8 U.S.C. § 1103(a)(1)…………………………………………………………..14

8 U.S.C. § 1252(f)(1) …………………………………………….. 2, 12, 13, 14

8 U.S.C. § 1254a………………………………………………………… *passim*

8 U.S.C. § 1254a(a)……………………………………………………………….3

8 U.S.C. § 1254a(b)…………………………………………………….. *passim*

8 U.S.C. § 1254a(b)(1)(C)…………………………………………………..*passim*

8 U.S.C. § 1254a(b)(3)…………………………………………………… *passim*

8 U.S.C. § 1254a(b)(5)(A)………………………………………………..*passim*

8 U.S.C. § 1254a(c)(2)(A)…………………………………………………. 18

**The Immigration Act of 1990:**

Pub. L. No. 101-649, 104 Stat. 4978…………………………………………………………….. 3

**Illegal Immigration Reform and Immigrant Responsibility Act of 1996:**

Pub. L. No. 104-208, 110 Stat. 3009-546…………………………………………………..12

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. of Civ. P. 12(b)(1)…………………………………………………………… 1, 2, 7, 25

Fed. R. Civ. P. 12(b)(6)……………………………………………………………………7

Fed. R. of Evid. 201(b)…………………………………………………………………... 4

**FEDERAL REGISTER**

76 Fed. Reg. 3,476 (Jan. 21, 2010)…………………………………………………….. 6

76 Fed. Reg. 29,000 (May 19, 2011) …………………………………………………...5

77 Fed. Reg. 59,943 (Oct. 1, 2012)…………………………………………………....6

79 Fed. Reg. 11,808 (Mar. 3, 2014)…………………………………………………....6

80 Fed. Reg. 51,582 (Aug. 25, 2015)………………………………………………....6

82 Fed. Reg. 23,830 (May 24, 2017) ………………………………………………....6

83 Fed. Reg. 2,648 (Jan. 18, 2018) …………………………………………………....6

86 Fed. Reg. 13,574 (Mar. 9, 2021)…………………………………………………....4

86 Fed. Reg. 41,863 (Aug. 3, 2021)…………………………………………………....7

87 Fed. Reg. 55,024 (Sept. 8, 2022) …………………………………………………....4

90 Fed. Reg. 9,040 (Feb. 5, 2025)………………………………………………….*passim*

90 Fed. Reg. 10,511 (Feb. 24, 2025)…………………………………………………...7

**MISCELLANEOUS**

H.R. Rep. No. 101-245 (1989)………………………………………………………….9

Exec. Order No. 14159 …………………………………………………………………22

**NOTICE OF MOTION**

PLEASE TAKE NOTICE THAT at 1:30 p.m. PDT on June 12, 2025, or as soon thereafter as this matter may be heard, before the Honorable Edward M. Chen of the United States District Court for the Northern District of California, Defendants move to dismiss the First Amended Complaint (FAC) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Defendants seek an order dismissing the FAC because: (1) the Court lacks jurisdiction over Plaintiffs' claims; (2) the Secretary's TPS determinations did not violate the Administrative Procedure Act; and (3) Plaintiffs have not alleged a plausible Equal Protection claim as a matter of law. Accordingly, dismissal is warranted pursuant to Federal Rules 12(b)(1) and 12(b)(6). [1]

**PRELIMINARY STATEMENT**

Secretary of Homeland Security Kristi Noem vacated her predecessor's extension of Venezuela's Temporary Protected Status (TPS) 2023 designation and, thereafter, terminated the designation. She later partially vacated Haiti's TPS designation, shortening the existing designation period from 18 months to 12 months. TPS is a humanitarian program that affords temporary relief from removal to certain aliens who are in the United States when their country of nationality experiences armed conflict, a natural disaster, or other extraordinary and temporary conditions and who are thus temporarily unable to return home safely. The TPS statute vests the Secretary with broad discretion over TPS designations. In Secretary Noem's assessment, her predecessor failed, among other things, to evaluate the key statutory question: whether permitting Venezuelan and Haitian nationals to remain temporarily in the United States is

---

[1] Defendants acknowledge that the Court granted a postponement of the 2025 Venezuela Vacatur and Termination, concluding that plaintiffs would likely succeed on the merits. Defendants respectfully maintain that that decision was in error, and their interlocutory appeal of that decision is pending. *See National TPS Alliance et al. v. Noem et al.*, Case No. 25-2120 (9th Cir.) (Dkt No. 3.1 at 16-17). Regardless, the Court's ruling on interim relief does not control at this stage, and the Court can and should consider defendants' arguments anew. *See, e.g.*, *Lackey v. Stinnie*, 145 S. Ct. 659, 667 (2025) (preliminary relief based on likely success "do[es] not conclusively resolve" a case and is not "tantamount to [a] decision[] on the underlying merits"). And that ruling did not address the claims regarding Haiti, in any event.

DEFS.' MOTION TO DISMISS
No. 3:25-cv-1766

1  "contrary to the national interest." 8 U.S.C. § 1254a(b)(1)(C).

2          Plaintiffs are ten individual TPS beneficiaries, as well as one organization, National TPS Alliance

3  (NTPSA). Plaintiffs bring claims under the Administrative Procedure Act (APA), alleging that Secretary

4  Noem's TPS determinations for Venezuela and Haiti were arbitrary and capricious under 8 U.S.C.

5  § 1254a(b)(3)(A)-(B). Plaintiffs also claim that the determinations were motivated by discriminatory

6  animus toward Venezuelans and Haitians in violation of the Equal Protection component of the Fifth

7  Amendment Due Process Clause. Secretary Noem, the Department of Homeland Security (DHS), and the

8  United States of America respectfully move to dismiss Plaintiffs' First Amended Complaint in its entirety.

9  *See* ECF No. 74 ("FAC").

10         As a threshold matter, this Court lacks jurisdiction over all of Plaintiffs' claims for four

11  independent reasons. *First*, this Court should find that Plaintiffs claims regarding Haiti are not ripe and

12  Plaintiffs lack standing to bring them. *Second*, Congress has explicitly barred judicial review of TPS

13  determinations. *See* 8 U.S.C. § 1254a(b)(5)(A) ("There is no judicial review of any determination of the

14  [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state"

15  for TPS relief); 5 U.S.C. § 701(a)(1) (precluding review under the APA "to the extent" that other "statutes

16  preclude judicial review."). The Secretary's vacatur and termination determinations—like the previous

17  Secretary's extension of the TPS designation for Venezuela—are not subject to judicial review. *Third*, the

18  APA precludes judicial review where agency action is "committed to agency discretion by law." 5 U.S.C.

19  § 701(a)(2). *Fourth*, another provision of the Immigration and Nationality Act (INA) bars any court other

20  than the Supreme Court from granting Plaintiffs the relief they seek—a sweeping order that "restrain[s]"

21  the Secretary from exercising her authority under the TPS statute and enforcing immigration law how she

22  deems appropriate. 8 U.S.C. § 1252(f)(1). Thus, the Court should dismiss Plaintiffs' FAC for lack of

23  subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

24         Even if the Court had jurisdiction, Plaintiffs fail to state a claim on the merits. Secretary Noem's

25  determinations were not arbitrary and capricious. They were based on the determination that her

26  predecessor's extension contained flaws warranting reconsideration. Plaintiffs' equal protection and due

27

28  DEFS.' MOTION TO DISMISS
    No. 3:25-cv-1766

process claims are equally unavailing because they fail to plausibly allege that the Secretary was motivated by discriminatory animus. Secretary Noem's determinations are facially legitimate and not motivated by racially discriminatory intent. That is true under the correct standard—the deferential review applicable to such claims in the immigration context, *see Trump v. Hawaii*, 585 U.S. 667 (2018)—and, in the alternative, under the standard sometimes applied in other contexts, *See Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977).

## BACKGROUND

### I. STATUTORY BACKGROUND

The Immigration Act of 1990 established a program for providing temporary shelter in the United States on a discretionary basis for aliens from designated countries experiencing ongoing armed conflict, environmental disaster, or "extraordinary and temporary conditions" that temporarily prevent the aliens' safe return or, in the case of environmental disasters, temporarily render the country unable to handle adequately the return of its nationals. Pub. L. No. 101-649, 104 Stat. 4978. The statute authorizes the Secretary of Homeland Security,[2] "after consultation with appropriate agencies of the Government," to designate countries for "Temporary [P]rotected [S]tatus," if she finds:

****

(C) … there exist extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety, unless the [Secretary] finds that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States.

8 U.S.C. § 1254a(b)(1)(C).

When the Secretary designates a country for TPS, eligible aliens who are granted TPS may not be removed from the United States and are authorized to work for the duration of the country's TPS designation, so long as they remain in valid temporary protected status. 8 U.S.C. § 1254a(a), (c); *see Sanchez v. Mayorkas*, 593 U.S. 409, 412 (2021). Initial designations and any extensions thereof may not

---

[2] Although the statute continues to refer to the Attorney General, the TPS authority now lies with the Secretary of Homeland Security by operation of the Homeland Security Act of 2002. See 6 U.S.C. §§ 552(d), 557 (providing that statutory references to the Attorney General in the INA generally are deemed to refer to DHS).

exceed eighteen months. *Id*. § 1254a(b)(2), (3)(C). The Secretary must consult with appropriate agencies and review each designation before it ends to determine whether the conditions for the country's designation continue to be met. *Id*. § 1254a(b)(3)(A). If the Secretary finds that the foreign state "no longer continues to meet the conditions for designation," she "shall terminate the designation" by publishing notice in the Federal Register of the determination and the basis for the termination. *Id*. § 1254a(b)(3)(B). If the Secretary "does not determine" that the foreign state "no longer meets the conditions for designation," then "the period of designation of the foreign state is extended for an additional period of 6 months (or, in the discretion of the [Secretary], a period of 12 or 18 months)." *Id*. § 1254a(b)(3)(C).

Finally, the statute makes the Secretary's TPS determinations unreviewable. "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." *Id*. § 1254a(b)(5)(A).

## II.     FACTUAL BACKGROUND

### A.  Venezuela

On March 9, 2021, former Secretary of Homeland Security Alejandro Mayorkas designated Venezuela for TPS based on extraordinary and temporary conditions that prevented nationals of Venezuela from safely returning (the 2021 Venezuela Designation).[3],[4] The former Secretary extended Venezuela's TPS designation twice.[5] On October 3, 2023, in addition to extending the 2021 Venezuela TPS status through September 2025, the former Secretary redesignated Venezuela for TPS, effective from October 3, 2023, through April 2, 2025 (the 2023 Venezuela Designation).[6] This notice provided

---

[3] Pursuant to Fed. R. of Evid. 201(b), Defendants ask the Court to take judicial notice of the Federal Register Notices cited throughout the brief. *See Matter of Ferrante*, No. 23-55005, 2023 WL 8449198, at *1 (9th Cir. Dec. 6, 2023) (holding that "a court may take judicial notice of matters of public record").

[4] *See Designation of Venezuela for [TPS] and Implementation of Employment Authorization for Venezuelans Covered by Deferred Enforced Departure*, 86 Fed. Reg. 13,574 (Mar. 9, 2021).

[5] *See Extension of the Designation of Venezuela for [TPS]*, 87 Fed. Reg. 55,024 (Sep. 8, 2022); *see also Extension and Redesignation of Venezuela for [TPS]*, 88 Fed. Reg. 68,130 (Oct. 3, 2023).

[6] *See 2023 Venezuela Designation*, 88 Fed. Reg. 68,130.

DEFS.' MOTION TO DISMISS
No. 3:25-cv-1766

4

1  procedures for initial applicants registering for TPS under the 2023 Venezuela Designation, and it also
2  allowed Venezuelan nationals who had previously registered for TPS under the 2021 Designation to re-
3  register for TPS and apply to renew their employment authorization document with U.S. Citizenship and
4  Immigration Services (USCIS). *Id*. On January 10, 2025, former Secretary Mayorkas issued a notice
5  extending the 2023 Venezuela Designation for 18 months, allowing a consolidation of filing processes
6  such that all eligible Venezuela TPS beneficiaries (whether under the 2021 or 2023 designations) could
7  obtain TPS through October 2, 2026 (the 2025 Venezuela Extension).[7]

8      On January 28, 2025, Secretary Noem vacated the 2025 Venezuela Extension, thereby restoring
9  the status quo that preceded that decision (the 2025 Venezuela Vacatur).[8] She explained that the 2025
10  Venezuela Extension "did not acknowledge the novelty of its approach" or "explain how it is consistent
11  with the TPS statute." *Id*. at 8,807; *see* 8 U.S.C. § 1254a(b)(3). The Secretary determined that the "lack of
12  clarity" warranted a vacatur to "untangle the confusion and provide an opportunity for informed
13  determinations regarding the TPS designations and clear guidance." *Id*.

14      After reviewing the Venezuelan country conditions and consulting with the appropriate U.S.
15  Government agencies, on February 1, 2025, Secretary Noem determined that Venezuela no longer
16  continued to meet the conditions for the 2023 Venezuela Designation and that it was "contrary to the
17  national interest to permit the covered Venezuelan nationals to remain temporarily in the United States."[9]
18  Accordingly, Secretary Noem terminated the 2023 Designation of Venezuela, effective April 7, 2025 (the
19  2025 Venezuela Termination). *Id*. at 9,040-9,041. In making this determination, the Secretary highlighted
20  the "notable improvements in several areas, such as the economy, public health, and crime," that allow
21  for Venezuelan nationals to be "safely returned to their home country." *Id*. at 9,042. The Secretary
22  determined, however, that even assuming extraordinary and temporary conditions remained, the Secretary

[7] *See Extension of the 2023 Designation of Venezuela for [TPS]*, 90 Fed. Reg. 5,961 (Jan. 17, 2025).
[8] *See Vacatur of 2025 [TPS] Decision for Venezuela*, 90 Fed. Reg. 8,805 (Feb. 3, 2025).
[9] *See Termination of the October 3, 2023 Designation of Venezuela for [TPS]*, 90 Fed. Reg. 9,040 (Feb. 5, 2025).

explained that terminating the 2023 Venezuela TPS Designation is necessary because it is contrary to the national interest to permit the covered Venezuelan nationals to remain temporarily in the United States. *Id.* The national interest is "an expansive standard that may encompass an array of broad considerations" which "calls upon the Secretary's expertise and discretionary judgment." *Id.* Secretary Noem explained that the significant population of TPS holders has resulted in "associated difficulties in local communities where local resources have been inadequate to meet the demands cause by increased numbers," and further underscored that, across the United States, "city shelters, police stations and aid services are at maximum capacity." *Id.* In considering the national interest, she found that this population includes members of Tren de Aragua, a transnational criminal organization recently determined to "pos[e] threats to the United States." *Id.* at 9,042-43. Secretary Noem also observed that "U.S. foreign policy interests, particularly in the Western Hemisphere, are best served and protected by curtailing policies that facilitate or encourage illegal and destabilizing migration." *Id.*

### B.  Haiti

On January 21, 2010, former Secretary Janet Napolitano designated Haiti for TPS for a period of 18 months due to the "conditions in Haiti following the [7.0 magnitude] earthquake" that struck Haiti in January 2010.[10] Various Secretaries extended and redesignated TPS for Haiti through 2018.[11] On January 18, 2018, then-Acting Secretary Elaine Duke terminated the designation, finding that "the conditions for Haiti's designation for TPS—on the basis of 'extraordinary and temporary conditions' relating to the 2010 earthquake that prevented Haitian nationals from returning in safety—are no longer met."[12] On August 3, 2021, former Secretary Alejandro Mayorkas newly designated Haiti on the basis of extraordinary and

---

[10] *Designation of Haiti for [TPS]*, 75 Fed. Reg. 3,476, 3,477 (Jan. 21, 2010).

[11] *Extension and Redesignation of Haiti for [TPS]*,76 Fed. Reg. 29,000 (May 19, 2011); *Extension of the Designation of Haiti for [TPS]*, 77 Fed. Reg. 59,943 (Oct. 1, 2012); *Extension of the Designation of Haiti for [TPS]*, 79 Fed. Reg.11,808 (Mar. 3, 2014); *Extension of the Designation of Haiti for [TPS]*, 80 Fed. Reg. 51,582 (Aug. 25, 2015); *Extension of the Designation of Haiti for [TPS]*, 82 Fed. Reg. 23,830 (May 24, 2017).

[12] *Termination of Designation of Haiti for [TPS]*, 83 Fed. Reg. 2,648 (Jan. 18, 2018).

DEFS.' MOTION TO DISMISS
No. 3:25-cv-1766

temporary conditions.[13] Thereafter, he extended and redesignated TPS for Haiti for 18 months, ending on August 3, 2024.[14] On July 1, 2024, former Secretary Mayorkas again extended and redesignated TPS for Haiti for 18 months, ending on February 3, 2026 (the 2024 Haiti Extension).[15]

On February 24, 2025, Secretary Noem partially vacated the 2024 Haiti Extension (the 2025 Haiti Partial Vacatur).[16] In so doing, the Secretary shortened the existing designation period from 18 months to 12 months. In rolling back the 18-month extension, Secretary Noem explained that the extension "failed to evaluate" whether permitting Haitian nationals to remain temporarily is "contrary to the national interest of the United States." *See id*. at 10,511-12; 8 U.S.C. § 1254a(b)(1)(C). Secretary Noem also noted that "there is no discussion in the [2024 Haiti Extension] of why the 18-month period was selected in lieu of a 6 or 12 month period." *Id.* at 10,513. She further relied on indications from the Department of State and DHS of "significant developments" that "might result in improvement in conditions," including United Nations Involvement to "support the Haitian National Police in capacity building, combatting gang violence and provid[ing] security for critical infrastructure." *Id.* at 10,513-14. The Secretary considered the putative reliance interests of those impacted by the 2025 Haiti Partial Vacatur but found that they were outweighed by the overriding interests and concerns articulated in the notice. *Id*.

## STANDARD OF REVIEW

Dismissal is appropriate under Rule 12(b)(1) when the court lacks subject matter jurisdiction over the claim. *See Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375, 377 (1994); Fed. R. Civ. P. 12(b)(1). "Subject matter jurisdiction is a threshold issue which goes to the power of the court to hear the case." *Id* A motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint on its face fails to allege facts sufficient to establish subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

---

[13] *Designation of Haiti for [TPS]*, 86 Fed. Reg. 41,863 (Aug. 3, 2021).

[14] *Extension & Redesignation of Haiti for [TPS]*, 88 Fed. Reg. 5,022 (Jan. 26, 2023).

[15] *See Extension & Redesignation of Haiti for [TPS]*, 89 Fed. Reg. 54,484 (Jul. 1, 2024).

[16] *See Partial Vacatur of 2024 [TPS] Decision for Haiti*, 90 Fed. Reg. 10,511 (Feb. 24, 2025).

DEFS.' MOTION TO DISMISS
No. 3:25-cv-1766

1    A court should dismiss for failure to state a claim under Rule 12(b)(6) when a complaint fails to

2    plead enough facts to state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S.

3    544, 570 (2007); Fed. R. Civ. P. 12(b)(6). When considering a motion made pursuant to Rule 12(b)(6), "a

4    court may look beyond the complaint to matters of public record without having to convert the motion to

5    one for summary judgment." *White v. Lee*¸ 227 F.3d 1214, 1242 (9th Cir. 2000). When a district court

6    reviews agency action under the APA, "the district judge sits as an appellate tribunal." *Herguan Univ. v.*

7    *Immig. And Cust. Enf't*, 258 F. Supp. 3d 1050, 1063 (N.D. Cal. 2017) (internal quotations omitted).

8    Accordingly, the case on review is a question of law and the Court's review is limited as to whether the

9    agency acted in an arbitrary and capricious manner. *Id.*

10    **ARGUMENT**

11    **I.    THIS COURT LACKS JURISDICTION OVER PLAINTIFFS' ENTIRE ACTION**

12    **A.    Plaintiffs Lack Standing to Challenge a Possible Future Termination of Haiti's TPS**
      **Designation, and Their Haiti Claims Are Not Yet Ripe for Review**

13

14     Federal courts can adjudicate only live "cases or controversies." *Thomas v. Anchorage Equal*

15    *Rights Comm'n,* 220 F.3d 1134, 1138 (9th Cir. 2000). To enter a federal court, a plaintiff must establish

16    standing, including an injury that is "concrete, particularized and imminent, rather than conjectural or

17    hypothetical." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). The plaintiff's case must also

18    be "ripe"—not dependent on "contingent future events that may not occur as anticipated, or indeed may

19    not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted). If

20    plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim. *Chandler*

21    *v. State Farm Mut. Auto. Ins.*, 598 F.3d 1115, 1121 (9th Cir. 2010). Here, the plaintiffs pressing Haiti-

22    related claims are NTPSA (alleging associational standing on behalf of its Haitian members) and four

23    individual Haitian plaintiffs. Neither NTPSA nor the individual Haitian plaintiffs has a ripe claim, or

24    standing, with respect to Haiti's TPS designation.

25    The plaintiffs pressing claims regarding Haiti's TPS designation do not presently have a ripe claim

26    stemming from Secretary Noem's partial vacatur. The only effect of that decision was to advance the time

27

28    DEFS.' MOTION TO DISMISS
      No. 3:25-cv-1766

at which Secretary Noem would reevaluate Haiti's TPS designation. The Haiti plaintiffs merely speculate that the Secretary "will likely terminate their status without regard to the country conditions, contrary to statute," in the future. FAC ¶ 169. *See Texas v. United States*, 523 U.S. at 300; *Trump v. New York*, 592 U.S. 125, 131 (2020) ("Any prediction how the Executive Branch might eventually implement this general statement of policy is no more than conjecture at this time") (quotations omitted). But any challenge to a future termination of Haiti's TPS designation must challenge that termination—which has yet to occur.

For similar reasons, the Haiti plaintiffs likewise have not suffered a cognizable injury from Secretary Noem's decision to move up the end date of Haiti's latest TPS extension by six months. Again, that decision did not itself deprive them of anything; it simply moved up the deadline for reconsideration of Haiti's TPS status. The Secretary was required to reconsider Haiti's TPS designation regardless. That reconsideration has not yet occurred, and plaintiffs do not suffer an injury based on the date on which the reconsideration occurs.

### B.    The TPS Statute Bars Plaintiffs' Claims

The TPS statute provides that "[t]here is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS. 8 U.S.C. § 1254a(b)(5)(A). This provision bars all of Plaintiffs' claims in this Court, whether statutory or constitutional, each of which challenges Secretary Noem's vacatur and termination. *Id.*; *see also* H.R. Rep. No. 101-245, at 14 (1989) ("Moreover, none of the [Secretary's] decisions with regard to granting, extending, or terminating TPS will be subject to judicial review."). The statute's broad terms confirm its broad sweep. The word 'any' carries an expansive meaning. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) ("of whatever kind"). And the phrase "with respect to" similarly "has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717 (2018); *see also Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (the similar phrase "related to" means "having a connection with or reference to . . . whether directly or indirectly"); *Cal. Tow Truck Ass'n v. City & County of San Francisco*, 807 F.3d 1008, 1021 (9th Cir. 2015) ("with respect to" "is generally understood to be synonymous with

DEFS.' MOTION TO DISMISS
No. 3:25-cv-1766

9

the phrase 'relating to'" or "'related to'"); Webster's New Collegiate Dictionary 1004 (9th ed. 1990) (defining "respect" as "a relation to or concern with something usually specified"). Indeed, the Supreme Court held that materially similar jurisdiction stripping language in the INA precludes a whole category of judicial review. *Patel v. Garland*, 596 U.S. 328, 337-40 (2022) (statute barring review of "any judgment regarding the granting of relief" covers "any authoritative decision" on the matter).

Section 1254a plainly precludes judicial review of the Secretary's 2025 Venezuela Termination because it is a "determination with respect to the termination" of the 2023 TPS Designations for Venezuela. *See 2025 Venezuela Termination*, 90 Fed. Reg. 9,040. A decision to terminate a TPS designation is at the core of the jurisdictional statute's broad sweep. Because the Secretary's determination to terminate the 2023 Venezuela Designation was clearly a determination "with respect to" the TPS extension or termination, this Court lacks jurisdiction to review it. *See Ramos*, 975 F.3d 872, 889 (9th Cir. 2020) (this bar "preclude[s] direct review of the Secretary's country-specific TPS determinations"), *vacated*, 59 F.4th 1010, 1011 (9th Cir. 2023).

The Secretary's 2025 Venezuela Vacatur and 2025 Haiti Partial Vacatur likewise fall within § 1254a(b)(5)(A)'s bar. A determination to fully or partially vacate an extension of a designation is undoubtedly a determination "with respect to" the "extension of a designation." 8 U.S.C. § 1254a(b)(5)(A); *see Merriam-Webster's Dictionary* (2025), Determination ("the act of deciding definitely and firmly"); *The American Heritage Dictionary* (2022), Determination ("The act of making or arriving at a decision[;] The decision reached[;] The settling of a question by an authoritative decision or pronouncement"); Black's Law Dictionary 450 (defining determination as "[t]o settle or decide by choice of alternatives or possibilities."); Webster's New Collegiate Dictionary 346 ("the act of deciding definitively and firmly"); Webster's Encyclopedic Unabridged Dictionary 393 ("the act of coming to a decision or of fixing or settling a purpose"). Those determinations are therefore not subject to any judicial review—full stop. *See Patel*, 596 U.S. at 338 (acknowledging importance of broadening terms "any" and "regarding" in similar jurisdiction-stripping provision).

The application of § 1254a(b)(5)(A)'s bar on judicial review is not complicated. Plaintiffs

challenge the Secretary's 2025 Venezuela Termination and Vacatur and 2025 Haiti Partial Vacatur determinations. But each was a determination with respect to "termination or extension of a [TPS] designation." 8 U.S.C. § 1254a(b)(5)(A). This Court thus lacks jurisdiction to review them, and this case should end now.

Plaintiffs try to overcome this jurisdictional bar by challenging the factors and criteria that Secretary Noem used in making the determinations. FAC ¶¶ 202(h), 206(f), 210(k), Prayer for Relief ¶ 2. Specifically, they allege that Defendants had "no authority to vacate a TPS extension," *Id.* Prayer for Relief ¶ 2. But the TPS statute encompasses those decisions by barring review of "any determination" "with respect to" the "termination or extension of a designation" of Venezuela or Haiti for TPS. 8 U.S.C. §1254a(b)(5)(A); *see Patel*, 596 U.S. at 338-39 (similar jurisdictional bar did not "restrict itself to certain kinds of decisions," but instead covered both subsidiary determinations and the ultimate, "last-in-time judgment" on the matter). Plaintiffs also endeavor to circumvent the jurisdictional bar by claiming that, "[t]o the extent Defendants engaged in any process, it was so deficient as to amount to no process at all, defeating the purpose of the TPS statute and deviating from past practice and rules…" FAC. ¶¶ 202(h), 206(f), 210(k). However, the Court has instructed that the statutory authorization to make a decision "must be understood as carrying with it an implied incidental authority" to revoke that decision, *China Unicom (Ams.) Ops. Ltd .v. FCC*, 124 F.4th 1128, 1143 (9th Cir. 2024), especially because the TPS statute gives the Secretary discretion over both the length of a TPS designation and the timing of periodic review. 8 U.S.C. § 1254a(b)(3)(A)-(C); *see Macktal v. Chao*, 286 F.3d 822, 825-26 (5th Cir. 2002) (holding agency acted lawfully by exercising inherent authority to reconsider decisions) (collecting cases).

Accordingly, judicial review is foreclosed by § 1254a(b)(5)(A) and this Court should dismiss this case for lack of jurisdiction.

## C.    The APA Precludes Review of the Venezuela Determinations

The APA also precludes review where the agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). While "rare," this section of the APA is used "where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of

DEFS.' MOTION TO DISMISS
No. 3:25-cv-1766

discretion." *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993). A determination as to what constitutes the national interest is one of these rare circumstances. *See Hawaii*, 585 U.S. at 684-86 (explaining that where the President has statutory discretion to determine if an alien's entry "would be detrimental to the interests of the United States," federal courts should not inquire "into the persuasiveness of the President's justifications"). The determination of "national interest" is one that calls upon the Secretary's "expertise and judgment" and is not a manageable legal standard. *See Zhu v. Gonzales*, 411 F.3d 292, 295 (D.C. Cir. 2005); *see also Webster v. Doe*, 486 U.S. 592, 600 (1988). Because there is no manageable standard by which this Court can judge the Secretary's finding that permitting TPS holders from Venezuela is contrary to the national interest, this Court also lacks jurisdiction to review any determination based upon that finding. *See* 2025 Venezuela Vacatur; 2025 Venezuela Termination.

### D.    Section 1252(f)(1) Precludes Plaintiffs' Requested Relief

By seeking to "[e]njoin all Defendants … from enforcing the vacatur order of February 3, 2025, termination order of February 5, 2025, and partial vacatur order of February 24, 2025," FAC ¶ 6, Plaintiffs also seek the type of coercive order prohibited by 8 U.S.C. § 1252(f)(1). Section 1252(f)(1) bars district courts and courts of appeals from entering an order that "enjoin[s] or restrain[s]" the operation of the statutory provisions § 1252(f)(1) covers. Section 1254a is one of those covered provisions. Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), div. C, Pub. L. No. 104-208, §§ 306, 308, 110 Stat. 3009-546. Although Section 1254a appears in Part V of the U.S. Code, the U.S. Code is inconsistent with the INA, wherein the TPS provisions in Section 244 appear in Chapter 4. *Id.* When there is a conflict, the INA prevails. *See Galvez v. Jaddou*, 52 F.4th 821, 830-31 (9th Cir. 2022); *see also U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 448 (1993) ("Though the United States Code is 'prima facie' evidence that a provision has the force of law, 1 U.S.C. § 204(a), it is the Statutes at Large that provides the 'legal evidence of laws,' [1 U.S.C.] § 112...."); *United States v. Carroll*, 105 F.3d 740, 744 (1st Cir. 1997). INA § 244 lies within chapter 4 of title II of the INA, as amended.

Regardless of how Plaintiffs frame the relief sought, an order that would have the effect of enjoining or restraining DHS's implementation of the TPS provisions in § 1254a, is jurisdictionally barred under § 1252(f)(1). *See Biden v. Texas*, 597 U.S. 785, 797 (2022) (§ 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or *to refrain from taking* actions to enforce, implement, or otherwise carry out the specified statutory provisions.") (quoting *Garland v. Aleman Gonzalez*, 596 U.S. 543, 544 (2022)) (emphasis added); *see* Black's Law Dictionary (12th ed. 2024) (An injunction is "[a] court order commanding or preventing an action"). To "restrain" means to "check, hold back, or prevent (a person or thing) from some course of action," to "inhibit particular actions," or to "stop (or perhaps compel)" action. *Aleman Gonzalez*, 596 U.S. at 549 (quoting 5 Oxford English Dictionary 756 (2d ed. 1989)). An order setting aside the Secretary's vacatur and termination decisions would be an order "restraining" federal officials. *Id*. at 550.

It does not matter for purposes of Section 1252(f)(1) whether Plaintiffs request an order postponing, staying, enjoining, vacating, or setting aside the Secretary's determinations. *See* FAC, Prayer for Relief ¶¶ 4, 5. Like an injunction, an order to "set aside" the vacatur and termination determinations "restrict[s] or stop[s] official action," *Direct Mktg. Ass'n v. Borhl*, 575 U.S. 1, 13 (2015), by prohibiting officials from relying on the agency's determinations—the practical equivalent of an injunction compelling Defendants to stop enforcing the termination and vacatur decisions, determinations pursuant to 8 U.S.C. § 1254a. *See United States v. Texas*, 599 U.S. 670, 691 (2023) (Gorsuch, J., concurring) (questioning the validity of the district court's finding that § 1252(f)(1) does not bar vacatur orders and that § 706(2) authorizes courts to issue them). The Supreme Court has repeatedly given a broad interpretation to terms such as "injunction" in other statutes. For example, the Court interpreted a statute conferring jurisdiction over appeals from "injunction[s] in certain civil actions to apply to orders with a "coercive" effect. *Aberdeen & Rockfish R.R. v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 422 U.S. 289, 307 (1975). The Court commented that it had "repeatedly exercised jurisdiction under [the provision] over appeals from orders" that were "not cast in injunctive language but which by

their terms simply 'set aside' or declined to 'set aside' orders of the [agency]." *Id.* at 308 n.11 (quotation omitted). Here, too, setting aside the Secretary's determinations qualifies as an injunction barred by § 1252(f)(1) because it would coerce and restrain the agency's operation of covered statutes. Thus, to the extent Plaintiffs continue to ask this Court to "set aside" the vacatur order of February 3, 2025, termination order of February 5, 2025, and partial vacatur order of February 24, 2025, from taking effect or being put into effect," this type of order would necessarily constitute an order "restraining" federal officials and is therefore equally prohibited by 8 U.S.C. § 1252(f)(1). FAC, Prayer for Relief ¶¶ 4, 5; *see Aleman Gonzalez*, 596 U.S. at 544.

Finally, it remains the government's view that § 1252(f)(1) also bars declaratory relief. *See Aleman Gonzalez*, 596 U.S. at 551 n.2; *cf. California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982) (Tax Injunction Act barred declaratory relief as well as injunctive relief); *Newdow v. Roberts*, 603 F.3d 1002, 1012 (D.C. Cir. 2010). The government recognizes that the Ninth Circuit has held otherwise, *Rodriguez v. Hayes*, 591 F.3d 1105, 1119 (9th Cir. 2010), but preserves its argument that that decision is error.

## II. THE SECRETARY'S DETERMINATIONS DID NOT VIOLATE THE APA

Even if the Court concludes it has jurisdiction, the Court should dismiss Plaintiffs' three APA claims because the Secretary's determinations were lawful and consistent with 8 U.S.C. § 1254a.

### A. The Secretary's 2025 Venezuela Vacatur Was Not Arbitrary and Capricious or Contrary to Law

The Secretary has inherent authority under 8 U.S.C. §§ 1103(a) and 1254a to reconsider past actions. Plaintiffs, however, contend that the 2025 Venezuela Vacatur "exceeded [Defendants'] statutory authority, and was arbitrary and capricious, contrary to law, pretextual, and deviated from past practice." FAC ¶ 202. Plaintiffs list numerous reasons to support this allegation, none of which is persuasive. *Id.* Statutory authorization to make a decision "must be understood as carrying with it an implied incidental authority" to revoke that decision, *China Unicom*, 124 F.4th at 1143, especially because the TPS statute gives the Secretary discretion over both the length of a TPS designation and the timing of periodic review.

8 U.S.C. § 1254a(b)(3)(A)-(C).

First, Plaintiffs allege that "Defendants had no authority to annul a TPS extension under the timetable and procedures they utilized here." FAC ¶ 202(a). Not so. Courts have long recognized that an administrative agency has inherent or statutorily implicit authority to reconsider and change a decision within a reasonable period if Congress has not foreclosed this authority by requiring other procedures. *See Albertson v. FCC*, 182 F.2d 397, 399 (D.C. Cir. 1950) ("The power to reconsider is inherent in the power to decide."); *Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 229 n. 9 (2d Cir. 2002) (agency's power to reconsider "applies regardless of whether the applicable statute and agency regulations expressly provide for such review, but not where there is contrary legislative intent or other affirmative evidence") (emphasis in original) (quotations omitted); *see also Ivy Sports Medicine, LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014) (collecting cases and explaining that "administrative agencies are assumed to possess at least some inherent authority to revisit their prior decisions"); *The Last Best Beef, LLC v. Dudas*, 506 F.3d 333, 340 (4th Cir. 2007) (federal agencies have broad authority to reconsider their prior decisions, particularly when the prior decision contained an error); *Macktal v. Chao*, 286 F.3d 822, 825-26 (5th Cir. 2002) (holding agency acted lawfully by exercising inherent authority to reconsider decisions) (collecting cases); *Gun South, Inc. v. Brady*, 877 F.2d 858, 862 (11th Cir. 1989) ("[T]he Supreme Court and other courts have recognized an implied authority in other agencies to reconsider and rectify errors even though the applicable statute and regulations do not expressly provide for such reconsideration."). And the Secretary has asserted and exercised this authority previously. *See Reconsideration and Recission of Termination of the Designation of El Salvador for [TPS]; Extension of the [TPS] Designation for El Salvador*, 88 Fed. Reg. 40,282, 40,285 & n.16 (June 21, 2023) (Secretary Mayorkas exercising "inherent authority to reconsider any TPS-related determination, and upon reconsideration, to change the determination" to vacate his predecessor's termination of El Salvador's TPS designation).

Here, Congress gave the Secretary "undoubtedly broad" authority to "make TPS determinations" and ensure the continued designation of a country complies with the law. *Ramos*, 975 F.3d at 890 (finding statutory constraints "on the Secretary's discretion, [are] in favor of limiting unwarranted designations or

DEFS.' MOTION TO DISMISS
No. 3:25-cv-1766

15

extensions…") (cleaned up). Section 1254a requires the Secretary to review conditions within foreign states designated for TPS periodically, but any subsequent action turns on the Secretary's findings about whether the conditions for such designation continue to exist. 8 U.S.C.§ 1254a(b)(3)(A)-(C). The statute also requires the Secretary to determine whether "permitting aliens to remain temporarily in the United States is contrary to the national interest of the United States." 8 U.S.C. § 1254a(b)(1)(C); *cf. Poursina v. USCIS*, 936 F.3d 868, 874 (9th Cir. 2019) (observing, in an analogous INA context, "that the 'national interest' standard invokes broader economic and national-security considerations, and such determinations are firmly committed to the discretion of the Executive Branch—not to federal courts" (citing *Hawaii*, 585 U.S. at 684-86)). Secretary Noem took the steps provided for by the TPS statute and, while Plaintiffs may disagree with her decision, they cannot adequately allege that the vacatur "rested on a misinterpretation of the TPS statute's flexible registration requirements," FAC ¶ 202(c), or that the decision was in any way "pretextual" or contrary to the statutory process. *Id.* at ¶ 202(g)-(h).

Flexibility to reconsider decisions makes especially good sense in the TPS context. The Secretary's TPS authority inevitably requires her to make sensitive assessments affecting United States foreign policy. *See Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952) ("[A]ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations [and] the war power."). When the Executive Branch acts in the field of foreign policy "… pursuant to an express or implied authorization of Congress, [its] authority is at its maximum, for it includes all that [it] possesses in [its] own right plus all that Congress can delegate." *Youngstown Sheet and Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring) (cleaned up).

Employing Plaintiffs' analysis that Section 1254a bars such reconsideration would mean that no Secretary of Homeland Security could ever vacate a designation or extension of a designation, no matter the type of national security threat posed or the seriousness of the error or legal defect in a prior determination. Section 1254a does not mandate such an unworkable and potentially detrimental limitation of the Secretary's ability to fulfill her border security, national security, and foreign policy responsibilities by exercising her broad authority to administer and enforce the immigration laws, *see, e.g.*, 6 U.S.C.

§ 202(1)-(5), 8 U.S.C. § 1103(a)(1), (a)(3), and to do so consistent with the President's Executive Orders. For these articulated reasons, Secretary Noem exercised her inherent authority under Section 1254a in revisiting and reconsidering prior TPS determinations. In fact, Secretary Noem acted promptly to reconsider Secretary Mayorkas's last-minute TPS extension for Venezuela—less than two weeks later—and did so months before the extension's effective date of April 3, 2025. If agencies hold *any* inherent power to reconsider past actions, as the law says they do, this was, as Secretary Mayorkas previously recognized, a quintessential exercise of that power. *See 2023 El Salvador Reconsideration*, 88 Fed. Reg. 40,282, 40,285 & n.16 (June 21, 2023).

The other bases that Plaintiffs invoke do not establish that the Vacatur was arbitrary and capricious. *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989) (Under the arbitrary and capricious standard, a reviewing court must determine whether an agency's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment). The court should overturn an agency's decision only if the agency committed a "clear error of judgment." *California Trout v. Schaefer*, 58 F.3d 469, 473 (9th Cir. 1995). Plaintiffs first allege that the Secretary did not consider that 2021 Venezuelan TPS holders were eligible for TPS under the 2023 Designation. FAC, ¶ 202(b). However, simple eligibility should not overcome the Secretary's reasoned concerns that the 2025 Venezuela Extension consolidated the two overlapping populations and prevented her from making "informed determinations regarding the TPS designation and clear guidance." 2025 Venezuela Vacatur, 90 Fed. Reg. 8,807. For this same reason, it was not arbitrary or capricious for the Secretary to determine that de-consolidating the registration processes would resolve her concern that the 2025 Venezuela Extension implicitly extended the 2021 Designation. *See FAC ¶ 202(c)*.

Plaintiffs' assertion that the 2025 Venezuela Vacatur decision assumes that TPS designations are illegal and that TPS holders are present in the United States illegally is patently incorrect and cannot be arbitrary or capricious.  *See FAC ¶ 202(d-e)*. Each of Plaintiffs' citations to support this allegation merely points to the fact that Secretary Noem intended to review the TPS designations and ensure they comply with the law. *See FAC ¶ 62*. Moreover, TPS is a status that permits aliens who have entered the country

illegally to reside here lawfully on a temporary basis. 8 U.S.C. § 1254a(c)(2)(A). Recognition of the law cannot support vacating the Secretary's decision.

Plaintiffs assert that the 2025 Venezuela Vacatur "decision presupposed that prior TPS designations or extensions can be rescinded merely because of policy disagreements between administrations." FAC ¶ 202(f). But "[i]t is hardly improper for an agency head to come into office with policy preferences and ideas, discuss them with affected parties, sound out other agencies for support, and work with staff attorneys to substantiate the legal basis for a preferred policy." *Dep't of Commerce v. New York*, 588 U.S. 752, 78 (2019). As the Supreme Court has explained, "a court may not set aside an agency's policymaking decision solely because it may have been influenced by political considerations or prompted by Administrative priorities …. Such decisions are routinely informed by unstated considerations of politics, the legislative process, public relations, interest groups, foreign relations, and national security concerns (among others). *Id.* at 782. Nor was the Secretary's Venezuela Vacatur "pretextual", *see supra*, § III, or "deviate from past practice," FAC ¶ 202(g-h). Indeed, it was consistent with the previous Secretary's decisions revisiting and rescinding prior TPS determinations. *See* 2023 El Salvador Reconsideration, 88 Fed. Reg. at 40,285.

Accordingly, the Secretary's 2025 Venezuela Vacatur did not violate the APA and Plaintiffs' First Claim should be dismissed.

## B.    The Secretary's 2025 Venezuela Termination was not Arbitrary and Capricious or Contrary to Law

Plaintiffs' allegations that the 2025 Venezuela Termination was unlawful also fail. FAC ¶¶ 204-207. Plaintiffs allege various reasons why the 2025 Venezuela Termination "was arbitrary, capricious, contrary to law, pretextual, and deviated from past practice." FAC at ¶ 206(a)-(f).

As stated above, Plaintiffs' first assertions that the 2025 Venezuela Termination assumed that TPS designations were illegal and that TPS holders were illegally present in the United States are evidence that the termination was arbitrary and capricious fails. FAC ¶¶ 206(a)-(b).

DEFS.' MOTION TO DISMISS
No. 3:25-cv-1766

18

Plaintiffs also incorrectly assert that the 2025 Venezuela Termination failed to meet the statutory requirements because it "relied entirely on a determination that an extension of TPS would be 'contrary to the national interest,' but that factor is only relevant at the time of the designation; it is not a valid consideration when assessing whether to extend or instead terminate TPS." FAC ¶ 206(c). This argument ignores the statutory language providing that if the Secretary determines during her periodic review that the country no longer continues to meet the conditions for designation, termination is warranted. 8 U.S.C. § 1254a(b)(3)(B). And one of the conditions for designation under § 1254a(b)(1)(C) is a finding by the Secretary that "permitting the aliens to remain temporarily in the United States is [not] contrary to the national interest. If the Secretary determines otherwise with respect to the national interest, as she did with respect to the 2023 Venezuela Designation, then the designation must be terminated.

Likewise, Plaintiffs' claim that the research, consultation, and review process leading up to the decision deviated dramatically from past practice without explanation fails. FAC ¶ 206(d). Secretary Noem reviewed Venezuela's 2023 TPS designation and, after consulting with the appropriate Government agencies, determined that Venezuela no longer continues to meet the conditions for 2023 designation. *See 2025 Venezuela Termination*, 90 Fed. Reg. at 9,042. Based on information provided by U.S. Citizenship and Immigration Services and the U.S. Department of State, Secretary Noem noted that there were "improvements in several areas such as the economy, public health and crime that allow for [Venezuelan] nationals to be safely returned to their home country," but determined that "even assuming relevant conditions in Venezuela remain both 'extraordinary' and 'temporary,' termination…is 'required' because it is contrary to national interest…." *Id.* The Secretary explained that the "'[n]ational interest' is an expansive standard that may encompass an array of broad considerations, including foreign policy, public safety, national security, migration factors, immigration policy, and economic considerations." *Id.* (cleaned up); *see id.* n.5 (citing cases). In her termination notice, Secretary Noem appropriately considered these factors and provided her reasons for terminating the 2023 Designation, including valid concerns for the safety of the U.S. communities, impact that the TPS designation has had on local community resources, and adverse impacts on border security and foreign relations. *Id.* at 9,042-43. Secretary Noem's reasoned

DEFS.' MOTION TO DISMISS
No. 3:25-cv-1766

determination was unquestionably a lawful exercise of her authority to determine whether "permitting aliens to remain temporarily in the United States is contrary to the national interest of the United States." 8 U.S.C. § 1254a(b)(1)(C); *Poursina*, 936 F.3d at 874. Plaintiffs' claim that Secretary Noem's determination was "pretextual," FAC ¶ 206(e), is also wholly without merit.

Nor did the Secretary's Venezuela Termination "deviate from past practice," as it was consistent with the previous Secretary's decisions revisiting and rescinding prior TPS determinations. FAC ¶ 206(d). 88 Fed. Reg. 40,282, 40,285.

As Plaintiffs have not shown that the 2025 Termination was unlawful, or otherwise not in compliance with Section 1254a, Plaintiffs' Second Claim should also be dismissed.

## C. The Secretary's Haiti Partial Vacatur was not Arbitrary and Capricious or Contrary to Law

Plaintiffs' Third Claim should also be dismissed for failure to state a claim. Plaintiffs assert that the Secretary's 2025 Haiti Partial Vacatur "was arbitrary, capricious, contrary to law, pretextual, and deviated from past practice" for various reasons—none persuasive. FAC at ¶ 210(a)-(k).[17]

Contrary to Plaintiffs' assertions, *Id.* at ¶ 210(f-i), Secretary Noem carefully reviewed the decision of former Secretary Mayorkas to extend (for the second time) the 2021 designation of Haiti for TPS for 18 months and redesignate Haiti for TPS until February 3, 2026. 2025 *Haiti Partial Vacatur,* 90 Fed. Reg. 10,513-15. In doing so, and consistent with § 1254a(b)(1)(C), Secretary Noem reasonably found that the former Secretary "failed to evaluate whether 'permitting the aliens to remain temporarily in the United States' is not 'contrary to the national interest of the United States'" and cited the lack of support in the record concerning the former Secretary's national interest finding. *Id*. at 10,511-13. Indeed, the only reference to the national interest element in the 2024 Extension is a conclusory statement that "the Secretary has determined that … it is not contrary to the national interest of the United States to permit Haitian TPS beneficiaries to remain in the United States temporarily." *2024 Haiti Extension,* 89 Fed. Reg.

---

[17] FAC ¶¶206(a)-(d), (j)-(k) are similarly pled in the context of the Venezuela Vacatur, *supra*, and those arguments are incorporated here for the Haiti Partial Vacatur.

DEFS.' MOTION TO DISMISS
No. 3:25-cv-1766

at 54,487-92. Additionally, Secretary Noem reasonably noted that the former Secretary's decision to extend the TPS designation for Haiti did not include a discussion of "why the 18-month period was selected in lieu of a 6- or 12-month period." *2025 Haiti Partial Vacatur,* 90 Fed. Reg. at 10,513-15.

Partially vacating the 2024 Extension on these grounds is not arbitrary and capricious simply because Plaintiffs disagree with the outcome. Secretary Noem's consideration of this issue is entirely consistent with Congress's objective of providing *temporary* relief (subject to mandatory periodic review) to nationals of designated countries until, depending on the designation category at issue, they can safely return home, the country can adequately handle their return, or it is no longer in the national interest to permit them to remain in the United States temporarily. *See* 8 U.S.C. § 1254a. Further, Secretary Noem determined that some of the sources the former Secretary relied on indicated that "significant developments" that "might result in improvement in conditions" took place in 2024, and they were not discussed when assessing the length of the extension. *See 2025 Haiti Partial Vacatur*, 90 Fed. Reg. at 10,511-13; *see also 2024 Haiti Extension*, 89 Fed. Reg. 54,491. These include a United Nations-backed Multinational Security Support Mission deployed to Haiti in 2024 to support the Haitian National Police in "capacity building, combatting gang violence, and provide security for critical infrastructure." *See 2025 Haiti Partial Vacatur*, 90 Fed. Reg. at 10,513-14. Thus, it was entirely reasonable for Secretary Noem to partially vacate the 2024 Extension under these circumstances.

Secretary Noem exercised her inherent authority under Section 1254a to partially vacate the former Secretary's decision, which had the effect of rolling back the extension—not terminating it—from 18 months to 12 months. *Id.* at 10,515. In so doing, Secretary Noem—consistent with her authority under Section 1254a and in light of the deficiencies noted in the former Secretary's decision to extend the designation—determined that this partial vacatur was warranted. Specifically, she found that the partial vacatur would allow for a clearer and more fulsome review of the country conditions in Haiti, whether Haitians could return to Haiti safely, and whether it is contrary to the U.S. national interest to continue to permit Haitian nationals to remain in the United States under the TPS program. *Id*. at 10,514.

The Secretary's 2025 Haiti Partial Vacatur was firmly and appropriately rooted in foreign policy and national interest considerations. *See* 8 U.S.C. § 1254a(b)(1)(C); *Arizona v. United States*, 567 U.S. 387, 409 (2012) (holding the federal government must speak "with one voice" in determining "whether it is appropriate to allow a foreign national to continue living in the United States"); *cf.* U.S. Secretary of State, *Determination: Foreign Affairs Functions of the United States*, 90 Fed. Reg. 12,200 (Mar. 14, 2025) ("[A]ll efforts, conducted by any agency of the federal government, to control the status, entry, and exit of people, and the transfer of goods, services, data, technology, and other items across the borders of the United States, constitute a foreign affairs function of the United States under the Administrative Procedure Act, 5 U.S.C. 553, 554."). Thus, Plaintiffs' allegations that her determinations were "pretextual," FAC ¶ 210(j), or that she did not follow the statutory guidelines, fall flat. *Id.* at ¶ 210(k). The Secretary's action was consistent with her continuing obligation to safeguard the border and national security of the United States and to administer and enforce the immigration laws. *See* 8 U.S.C. § 1254a(b)(1)(C); Exec. Order No. 14159, Protecting the American People Against Invasion, § 16(b), 90 Fed. Reg. 8443 (Jan. 20, 2025).

Furthermore, the Secretary "considered the relevant evidence and factors and "articulated a satisfactory explanation for [her] action including whether there is a rational connection between the facts found and the choice made." *FDA v. Wages and White Lion Invs.*, 145 S. Ct. 898, 917 (2025) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). Plaintiffs have failed to show that the Secretary's actions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and their Third Claim should be dismissed. *Id.* at *9.

## III.    PLAINTIFFS' CONSTITUTIONAL CLAIMS FAIL AS A MATTER OF LAW

Even if the Court finds that it has jurisdiction to consider Plaintiffs' constitutional claims, Secretary Noem's decision to (1) vacate the 2025 Venezuela Extension and terminate the 2023 Venezuela Designation; and (2) partially vacate the 2024 Haiti Extension and roll back the deadline to review Haiti's TPS designation did not violate the Due Process Clause of the Fifth Amendment. Accordingly, this Court should dismiss Plaintiffs' Fourth Claim for failure to state a claim.

Plaintiffs' assertion that the 2025 Venezuela Vacatur and Termination and the 2025 Haiti Partial

DEFS.' MOTION TO DISMISS
No. 3:25-cv-1766

Vacatur were motivated by "intentional discrimination based on race, ethnicity, or national origin" is baseless. FAC ¶ 213. The Supreme Court has been clear that where, as here, a decision is based on immigration policy, courts cannot look behind facially legitimate actions to hunt for illicit purposes. *See Hawaii*, 585 U.S. at 703-04. Indeed, decisions by the political branches about which classes of aliens to exclude or expel will generally be upheld against constitutional challenges so long they satisfy deferential rational-basis review. *Id*. at 704-05; *see also Fiallo v. Bell*, 430 U.S.787, 792 (1977) (The Supreme Court "the power to expel or exclude aliens [i]s a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control"); *Mathews v. Diaz*, 426 U.S. 67, 82 (1976) (a "narrow standard of review" applies to "decisions made by Congress or the President in the area of immigration and naturalization"); *Kleindienst v. Mandel*, 408 U.S. 753, 769-70 (1972) (judicial review of "[p]olicies pertaining to the entry of aliens and their right to remain here" is limited to whether the Executive gave a "facially legitimate and bona fide" reason for its action); *Harisiades*, 342 U.S. at 588-89. Under the standard set forth in *Hawaii*, if "there is persuasive evidence that the [decision] has a legitimate grounding in national security concerns," courts "must accept that independent justification." *Id.* at 706. The holdings in *Hawaii*, *Mandel*, and *Fiallo* support the application of rational basis review in this case, and the challenged government actions readily pass the test.

In deciding to vacate the 2025 Venezuela Extension and terminate the 2023 Venezuela Designation, the Secretary consulted with appropriate governmental agencies, including the Department of State, and found that continuing Venezuela's TPS designation was contrary to the national interest in light of certain factors—such as gang activity and public safety concerns, adverse impact on U.S. communities, foreign policy interests, immigration and border policies, and the potential magnet effect of TPS on illegal immigration of Venezuelans—all of which are rational and related to the Government's legitimate interests in immigration, national security, and foreign policy. *2025 Venezuela Termination*, 90 Fed. Reg. at 9,040, 9042-43. With respect to the Haiti Partial Vacatur, Secretary Noem explained that the six-month rollback of the extension and redesignation date afforded her the opportunity to assess "whether permitting a class of aliens to remain temporarily in the United States is contrary to the national interest,"

in accordance with 8 U.S.C. § 1254a(b)(1)(C). *2025 Haiti Partial Vacatur,* 90 Fed. Reg. at 10,513. These determinations were facially legitimate. Ultimately, TPS decisions involve sensitive, country-specific determinations that both "implicate relations with foreign powers" and "involve classifications defined in the light of changing political and economic circumstances," *Hawaii*, 585 U.S. at 702, – precisely the situation in which the Supreme Court has repeatedly applied rational-basis review. *See id.*; *see also Fiallo*, 430 U.S. at 799. For these reasons, the Secretary's TPS determinations readily pass *Hawaii's* deferential rational basis standard. *See Hawaii*, 585 U.S. at 684 (considering determination "that entry of the covered aliens would be determinantal to the national interest"). Because the Secretary's determinations are firmly anchored in the TPS statute and its objectives, including taking into account the national interest, Plaintiffs fail to state a claim under the Equal Protection Clause of the Constitution. *Hawaii*, 585 U.S. at 704-05.

The Court should not apply a stricter test. The Court in *Hawaii* made clear that courts are "highly constrained" in this context; any "rule of constitutional law that would inhibit the flexibility' of the President 'to respond to changing world conditions should be adopted only with the greatest caution,' and [the Court's] inquiry into matters of entry and national security is highly constrained." *Id.* at 704. But even under the standard set forth in *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252 (1977), Plaintiffs' Equal Protection Claim would still fail. Under that test, Plaintiffs must prove that a racially "discriminatory purpose [was] a motivating factor in the [government's] decision""—something that they cannot do through statements taken out of context and without direct links to the Secretary's determinations. *Id.* at 266; *see DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 34-35 (2020) (explaining that disparate impact, unusual recission history, and pre- and post-election statements failed "to raise a plausible inference that the recission was motivated by animus").

Here, Plaintiffs allege that the Secretary's decisions "were motivated, at least in part, by intentional discrimination based on race, ethnicity, or national origin." FAC ¶ 214. In support of their contention, Plaintiffs cite statements, social media posts, and media appearances from the Secretary to suggest discriminatory motives for the TPS determinations. FAC ¶¶ 6, 8, 121-133. But none of these allegations reflect animus based on race or national origin; they are instead taken grossly out of context. For example,

DEFS.' MOTION TO DISMISS
No. 3:25-cv-1766

1    Plaintiffs repeatedly allege that Secretary Noem referred to Venezuelans as "dirtbags," FAC ¶¶ 9, 123,

2    despite clear context indicating that she was referring to members of the violent, terrorist Tren de Aragua

3    gang, not Venezuelans writ large. *Id.* at ¶ 123 n.123. Plaintiffs further cite statements made by President

4    Trump and other "prominent officials," who are *not* responsible for the challenged determinations, as well

5    as wholly unrelated events during President Trump's first term several years ago – underscoring the

6    paucity of evidence of an invidious discriminatory purpose. FAC ¶¶ 134-157, 158-163, 164-168.

7    Moreover, Plaintiffs fail to show how such statements or prior conduct extended to the determinations at

8    issue here. Indeed, the Ninth Circuit rejected the "cat's paw" theory in the executive agency context. *See*

9    *Ramos*, 975 F.3d at 889 (emphasizing Plaintiffs' failure to "provide any case where such a theory of

10   liability has been extended to governmental decisions in the foreign policy and national security realm").

11   Further, some of these quotes date back *years*, long before Venezuela was ever designated for TPS in the

12   first instance. *See* FAC ¶¶ 136, 139. Some—similar to statements challenged and rejected in *Hawaii*—

13   arose on the campaign trail. *Id.* at ¶¶ 137, 138.

14        None of the evidence outlined in the FAC is sufficient to state a claim that the Secretary's TPS

15   determinations were motivated by racial animus. President Trump and Secretary Noem seek to reduce

16   illegal immigration and crime, policy goals that are reflected in their public statements and that Americans

17   elected President Trump to prioritize. Allowing Plaintiffs' claims to move forward would leave virtually

18   any immigration policy adopted by this Administration susceptible to an Equal Protection challenge. Even

19   if the *Arlington Heights* test is applied, Plaintiffs fail to state an Equal Protection claim under the Fifth

20   Amendment because the Secretary's determinations were consistent the TPS statute, including its

21   emphasis on the temporariness of the protection afforded and its assignment of responsibility for

22   determining whether, in the Secretary's informed judgment, continuing to permit the TPS recipients to

23   remain temporary in the United States is contrary to the  national interest. S*ee* 8 U.S.C. § 1254a(b)(1)(C).

**CONCLUSION**

25        Plaintiffs' FAC should be dismissed in its entirety for lack of subject matter jurisdiction and for

26   failure to state a claim. Fed. R. Civ. P. 12(b)(1), (6).

27

28   DEFS.' MOTION TO DISMISS
     No. 3:25-cv-1766

Dated: April 29, 2025

YAAKOV M. ROTH
Acting Assistant Attorney General

SARAH L. VUONG
Assistant Director

WILLIAM H. WEILAND
Senior Litigation Counsel

ANNA L. DICHTER
CATHERINE ROSS
LUZ MARIA RESTREPO
ERIC SNYDERMAN
JEFFREY HARTMAN
AMANDA SAYLOR
Trial Attorneys

/s/ *Lauren E. Bryant*
LAUREN E. BRYANT
(Bar. No. 5321880)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-0134
Lauren.E.Bryant@usdoj.gov

*Counsel for Defendants*

DEFS.' MOTION TO DISMISS
No. 3:25-cv-1766

26

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division
SARAH L. VUONG
Assistant Director
WILLIAM H. WEILAND
Senior Litigation Counsel
ERIC SNYDERMAN
ANNA DICHTER
LAUREN BRYANT
CATHERINE ROSS
LUZ MARIA RESTREPO
JEFFREY HARTMAN
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, *et. al.*,<br><br>    Plaintiff,<br><br>        v.<br><br>KRISTI NOEM, in her official capacity as<br>Secretary of Homeland Security, *et. al.*,<br><br>    Defendants. | Case No. 3:25-cv-1766<br><br>PROPOSED ORDER GRANTING<br>DEFENDANTS' MOTION TO DISMISS<br>THE COMPLAINT |

PROPOSED ORDER GRANTING DEFS.' MOTION TO DISMISS
No. 3:25-cv-1766

1

**PROPOSED ORDER**

2          Before the Court is Defendants' motion to dismiss the Plaintiffs' First Amended Complaint,

3    pursuant to Federal Rules 12(b)(1) and 12(b)(6). ECF No. 122. Having reviewed the motion and

4    considered the arguments counsel, IT IS HEREBY ORDERED that Defendants' motion to dismiss the

5    First Amended Complaint is GRANTED.

6    Issued this _____ day of _____, 2025.

7

8                                                      _____

9                                                      Edward M. Chen
                                                       United States District Court Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    PROPOSED ORDER GRANTING DEFS.' MOTION TO DISMISS
      No. 3:25-cv-1766