UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL TPS ALLIANCE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, et al.,<br><br>Defendants. | Case No. 25-cv-01766-EMC<br><br>**ORDER RE JOINT DISCOVERY LETTER**<br><br>Docket No. 123 |

The parties have filed a joint letter regarding discovery in the case at bar. Plaintiffs argue that they are entitled to extra-record discovery for both their APA and equal protection claims. The government contends that discovery should be stayed pending the Ninth Circuit's decision on the Court's postponement order, particularly because the government has, as part of the appeal, challenged the Court's jurisdiction over this case. The government also asserts that, even if there is jurisdiction, this is not the kind of case where extra-record discovery is appropriate; it further suggests that the discovery sought by Plaintiffs is overbroad and/or seeks privileged material.

## I. DISCUSSION

A. Stay Pending Appeal

The Court addresses first the government's contention that there should be a stay pending the appeal. This is essentially the same argument that the government makes in its motion to stay, currently set for hearing on May 29, 2025. *See* Docket No. 115 (motion). In that motion, the government argues that the Court should apply the *Landis* test in deciding whether to issue a stay. *See, e.g.*, *Kuang v. U.S. DOD*, No. 18-cv-03698-JST, 2019 U.S. Dist. LEXIS 64392 (N.D. Cal. Apr. 15, 2019) (where the issue was whether there should be a stay pending an interlocutory

appeal (of a preliminary injunction), concluding that the *Landis* test applied, and not the *Nken* test). Under the *Landis* test,

> courts examine (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer [if the case is allowed] to go forward"; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."

*Id.* at *4-5.[1]

Here, the government focuses on the third *Landis* factor. It argues that the Court should await the Ninth Circuit's decision on the postponement order because, if the appellate court were to agree with the government that there is no jurisdiction, then there would be no need for Plaintiffs to take any discovery at all. While the government's position is not without merit, the government gives short shrift to the other *Landis* factors which consider the hardships on the parties. These *Landis* factors weigh heavily against a stay.

First, there is no guarantee that the Ninth Circuit will promptly rule after its hearing in July 2025. If not, then a stay would impose a particular hardship on Haitian TPS beneficiaries. Because of Secretary Noem's partial vacatur of the TPS extension for Haiti, the TPS designation for Haiti lasts only until August 2025. Thus, the Haitian TPS beneficiaries could lose their status if the Ninth Circuit does not rule by that date. The government has suggested that Secretary Noem could, in June 2025, extend the TPS designation. While that is technically true, that seems unlikely in light of the Secretary's rationale for the partial vacatur. The Secretary has given no indication thus far of any intent to extend the TPS designation.

Second, even assuming that the Ninth Circuit promptly adjudicates the appeal, that does not eliminate hardship to Plaintiffs. For example, the Ninth Circuit could reject the government's jurisdictional arguments but still find in the government's favor with respect to Plaintiffs'

---

[1] The *Nken* test has some overlap with the *Landis* test. Like the *Landis* test, the *Nken* test considers the balance of hardships to the parties should a stay be issued or not issued. *See Kuang*, 2019 U.S. Dist. LEXIS 64392, at *5 (listing the *Nken* factors: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies'").

likelihood of success on the merits. Such a ruling would result in vacatur of this Court's postponement order, which would mean that, prior to final adjudication, Venezuelan TPS holders would no longer have any legal status. Postponing discovery would delay final adjudication – which the Court has stated it intends to expedite – and, prior to final adjudication, TPS beneficiaries would be without the protection of postponement under 5 U.S.C. § 705. Haitian TPS holders would face a similar predicament as, with a stay on discovery, it would likely be difficult to timely adjudicate even a motion for postponement by August 2025. In short, if discovery and consequently adjudication on the merits is delayed, these TPS beneficiaries would be deprived of an opportunity to an expedited adjudication on the merits.

To be sure, the Court must consider not only the hardships to Plaintiffs if a stay were to be issued but also the hardships to the government if a stay were not issued. But "'[b]eing required to defend a suit, without more, does not constitute [prejudice].'" *In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1087 (9th Cir. 2024). Furthermore, as indicated below, the Court has carefully considered whether there is a valid basis for extra-record discovery and intends to circumscribe the scope of permissible discovery.

Taking into account all of the *Landis* factors, the Court concludes that a stay of discovery pending the interlocutory appeal is not warranted.

B.  Extra-Record Discovery

The next issue for the Court is whether there is a valid basis for Plaintiffs to take any extra-record discovery. In evaluating this issue, the Court first notes that Plaintiffs have asserted two different kinds of claims: (1) claims pursuant to the APA and (2) a constitutional claim.

1.  APA Claims

With respect to APA claims, "the Supreme Court has expressed a general rule that courts reviewing an agency decision are limited to the administrative record. . . . This general rule derives from [a court's] statutory role to review an agency's action." *Lands Council v. Forester of Region One of the United States Forest Serv.*, 395 F.3d 1019, 1029-30 (9th Cir. 2004). However, there are

> narrow exceptions to this general rule. In limited circumstances,

3

> district courts are permitted to admit extra-record evidence: (1) if admission is necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) if "the agency has relied on documents not in the record," (3) "when supplementing the record is necessary to explain technical terms or complex subject matter," or (4) "when plaintiffs make a showing of agency bad faith." These limited exceptions operate to identify and plug holes in the administrative record. Though widely accepted, these exceptions are narrowly construed and applied.

*Id.* at 1030. If any extra-record evidence is admissible under the circumstances above, then extra-record discovery should be permitted under the same circumstances. *See Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988) (stating that "certain circumstances may justify expanding review beyond the record or permitting discovery").

Consistent with the fourth exception above, the Supreme Court has held that extra-record evidence is admissible, and extra-record discovery permissible, where an agency's explanation for its action was pretextual – something akin to bad faith. *See Dep't of Commerce v. New York*, 588 U.S. 752, 781, 783-84 (2019) (noting that, "[o]n a 'strong showing of bad faith or improper behavior,' such an inquiry [into the mental processes of administrative decisionmakers] may be warranted and may justify extra-record discovery"; concluding that there was "a significant mismatch between the decision the Secretary [of Commerce] made [to reinstate a citizenship question on the census questionnaire] and the rationale he provided" – "the sole stated reason[] seems to have been contrived"); *see also Cook Cty. v. Wolf*, No. 19 C 6334, 2020 U.S. Dist. LEXIS 123077, at *9 (N.D. Ill. July 14, 2020) (stating that, "even if [the] equal protection claim were dismissed, Plaintiffs still would be entitled to take precisely the same discovery in connection with their APA claims" because, in *Department of Commerce*, the Supreme Court held that "a federal agency violates the APA when it provides an 'explanation for [its] action that is incongruent with what the record reveals about the agency's priorities and decisionmaking process' – that is, when the agency presents a 'contrived' or 'pretextual' rationale for the challenged action").

Here, Plaintiffs have asserted in their APA claims that the government's reasons to vacate, partially vacate, or terminate the TPS for Venezuela and Haiti were pretextual and/or taken in bad faith. And as the Court made clear in its postponement order, there is a factual basis for that

4

1    assertion. Plaintiffs presented significant evidence that the decisions were made in bad faith,
2    including repeated discriminatory statements made by Secretary Noem and President Trump, the
3    short timeframe in which decisions were made, the lack of legal and/or evidentiary support for the
4    decisions, and the unprecedented nature of the decisions. Although the postponement order
5    addressed the decisions made with respect to Venezuela, much of the reasoning in that order
6    would apply to the decision made with respect to Haiti as well. For example, as with Venezuela,
7    Secretary Noem claimed the inherent authority to vacate (or rather, partially vacate) for Haiti
8    despite its unprecedented nature. Also, the disparaging statements discussed in the postponement
9    order included statements by President Trump that Haitian immigrants in Springfield, Ohio, were
10   eating people's pets.

The government suggests that Plaintiffs have simply made an argument that "the records do not adequately support the Secretary's determinations, which is not an assertion of pretext (such as alleged in *Dep't of Commerce*, 588 U.S. at 783) but rather a standard arbitrary and capricious argument not meriting extra-record discovery." Letter at 3. The government errs. Here, there are a confluence of factors in addition to the lack of evidentiary support, as discussed in the Court's postponement order.

To the extent the government contends that the case here is not comparable to *Department of Commerce*, the Court does not agree. In *Department of Commerce*,

> [t]he evidence showed that the Secretary [of Commerce] was determined to reinstate a citizenship question from the time he entered office; instructed his staff to make it happen; waited while Commerce officials explored whether another agency would request census-based citizenship data; subsequently contacted the Attorney General himself to ask if DOJ would make the request; and adopted the Voting Rights Act rationale [for including the citizenship question] late in the process.

*Dep't of Commerce*, 588 U.S. at 782-83. The record provided by Plaintiffs, while obviously not identical, presents an equally troubling set of circumstances: "the direct animus of Secretary Noem, the animus of President Trump that appears to have directly influenced the Secretary's decision making, the anomalous procedures followed (the highly compressed time in which the decisions to vacate and then terminate were made and the precedential and unique nature of the

5

United States District Court
Northern District of California

1    decisions made), and the lack of bona fides for the decisions to vacate and then terminate."
2    Docket No. 93 (Order at 75).

3        The Court therefore concludes that extra-record discovery is warranted for Plaintiffs' APA
4    claims.

5        2.    <u>Equal Protection Claim</u>

6        The government argues that, where agency action is subject to judicial review, such review
7    is necessarily limited to the administrative record even if a plaintiff is asserting a constitutional
8    (*i.e.*, non-APA) claim. Here, of course, Plaintiffs are asserting a constitutional claim, specifically,
9    for violation of equal protection.

10       The Court rejects the government's proposition that review is necessarily limited to the
11   administrative record, thereby precluding extra-record discovery. As explained by the district
12   court in *California v. U.S. Department of Homeland Security*, 612 F. Supp. 3d 875 (N.D. Cal.
13   2020), the Ninth Circuit has held that a plaintiff may bring a constitutional claim that "'exist[s]
14   wholly apart from the APA.' It follows, therefore, that if plaintiffs have a constitutional claim that
15   exists outside of the APA, then the APA's administrative record requirement does not govern the
16   availability of discovery." *Id.* at 895.

17       That being said, courts have not automatically approved extra-record discovery simply
18   because a plaintiff brings a constitutional claim. "[D]istrict courts have struggled to coalesce
19   around a categorical rule and instead apply a fact-specific inquiry to reach outcomes that have
20   rejected discovery for constitutional claims in some instances and permitted discovery in others."
21   *Id.*; *see also Mayor of Baltimore v. Trump*, 429 F. Supp. 3d 128, 139 (D. Md. 2019) (noting that
22   "the welter of cases underlines the need for a flexible approach, tailored to the facts and claims of
23   the case"); *Immigrant Defenders Law Ctr. v. U.S. Dep't of Homeland Sec.*, No. CV 21-00395
24   FMO (RAOx), 2021 U.S. Dist. LEXIS 253304, at *7 (C.D. Cal. Dec. 8, 2021) ("agree[ing] with
25   district courts that have taken flexible approaches depending on the facts and claims in the case at
26   hand"). Thus, the Court must proceed cautiously and apply a fact-specific approach.

27       A fact-specific inquiry in the instant case leads the Court to conclude that discovery on the
28   equal protection claim is not categorically barred. Although Plaintiffs have sought extra-record

1  discovery on their APA claims on the basis of pretext, Plaintiffs have not argued solely that the
2  Secretary's decisions were arbitrary and capricious solely because they were contrived or
3  undertaken in bad faith.  Rather, Plaintiffs have also made more conventional APA arguments –
4  *e.g.*, that the Secretary "offered an explanation for [her] decision that runs counter to the evidence
5  before the agency."  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43
6  (1983).  Such arguments on the merits do not necessarily depend on any showing of pretext or bad
7  faith.  Thus, although there is overlap between the bad faith argument under the APA and the
8  equal protection constitutional claim, there is no inherent "fundamental[] overlap" between the
9  conventional APA and equal protection claims.  *Cal. v. DHS*, 612 F. Supp. 3d at 897 (concluding
10 that the APA and constitutional claims did not "fundamentally overlap[]" because there were
11 "different factual allegations between the APA claims and the constitutional claims," even though
12 they "challenge[d] the same Rule and request[ed] the same relief").  Factors such as the degree of
13 relevance to the equal protection claim of the discovery sought and the burden and intrusiveness
14 upon the government's interests and operations might be considerations as well, but it cannot be
15 said at this juncture that extra-record discovery must be completely off the table.

16  C.     Discovery Requests

17      Because the Court does not categorically bar all extra-record discovery for the APA and
18 equal protection claims, the Court now turns to the specific discovery requests made by Plaintiffs.
19 Here, it is not clear from the papers whether the parties have sufficiently met and conferred on the
20 requests.  Based on the parties' joint letter, the government seems to take issue with the number of
21 custodians in RFPs Nos. 1-2 and post-decision statements to the media or public as sought in RFP
22 No. 3.  The government also asserts the deliberative process privilege.

23      The Court orders the parties to immediately meet and confer to see if they can reach
24 agreement on any of the document requests, now that the Court has rejected the government's
25 arguments that discovery should be stayed and that extra-record discovery is not permissible at all.
26 By Wednesday, May 7, 2025, the parties shall report back on the results of their meet and confer.
27 Because of the time sensitive nature of the proceedings, the government shall be prepared to
28 promptly produce documents, whether agreed to by the parties or ordered by the Court.

7

To assist the parties in their meet and confer, the Court provides the following guidance.

- RFPs Nos. 1-2. As a facial matter, the number of custodians is overbroad. Plaintiffs have not explained why each custodian is necessary and/or noncumulative. The open-ended timeframe in RFP No. 1 is also problematic. The Court does not intend to permit general civil discovery. Documents sought must be keyed to Secretary Noem's intent in reaching the decisions challenged herein beyond that already contained in the administrative record, if any.

- RFP No. 3. The open-ended timeframe is problematic. Also, it is not clear why documents related to DHS press releases or guidance about how to respond to questions from the media or TPS holders are relevant (especially post-decision) to any alleged unlawful motivation (*i.e.* pretext, bad faith, or animus) behind the challenged decisions.

- RFP Nos. 4-5. It is not clear what the "Record of Clearance and Approval" is. Plaintiffs should explain how this record could shed light on pretext, bad faith, or animus.

- RFP No. 6. The government previously confirmed at the CMC that it had provided the complete administrative record, and Plaintiffs accepted that representation, so this RFP seems moot. The parties do not seem to have a dispute as to what constitutes a "complete" administrative record. *See, e.g.*, *Regents of the Univ. v. United States Dep't of Homeland Sec.*, No. C 17-05211 WHA, 2017 U.S. Dist. LEXIS 171805, at *7-8 (N.D. Cal. Oct. 17, 2017) ("[J]udicial review of agency action [under the APA] shall be based on 'the whole record.' The administrative record . . . 'consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position.' This includes not only documents that 'literally pass[ed] before the eyes of the final agency decision maker' but also documents that were considered and relied upon by subordinates who provided recommendations to the decision-maker.").

8

- RFP No. 7. The open-ended timeframe is problematic. It also is not clear how diplomatic cables could be relevant to showing pretext, bad faith, or animus (especially post-decision).
- RFP Nos. 8-9. The Court sees no real burden to producing the administrative records for the Biden administration's decisions to extend TPS for Venezuela and Haiti.

## II. CONCLUSION

For the foregoing reasons, the Court does not categorically bar discovery but orders the parties to meet and confer regarding the specific discovery requests. The parties shall report back by Wednesday, May 7, 2025.

**IT IS SO ORDERED**.

Dated: May 2, 2025

_____
EDWARD M. CHEN
United States District Judge

9