| | |
|---|---|
| Ahilan T. Arulanantham (SBN 237841) | Yaakov M. Roth |
| arulanantham@law.ucla.edu | Acting Assistant Attorney General |
| CENTER FOR IMMIGRATION LAW AND | Civil Division |
| POLICY, UCLA SCHOOL OF LAW | Drew Ensign |
| 385 Charles E. Young Dr. East | Deputy Assistant Attorney General |
| Los Angeles, CA 90095 | Sarah L. Vuong (CA Bar 258528) |
| Telephone: (310) 825-1029 | Assistant Director |
| | William H. Weiland (MA Bar 661433) |
| Emilou MacLean (SBN 319071) | Senior Litigation Counsel |
| emaclean@aclunc.org | Lauren Bryant (NY Bar 5321880) |
| Michelle (Minju) Y. Cho (SBN 321939) | Anna Dichter (NJ Bar 304442019) |
| mcho@aclunc.org | Jeffrey Hartman (WA Bar 49810) |
| Amanda Young (SBN 359753) | Luz Maria Restrepo (NY Bar 4907077) |
| ayoung@aclunc.org | Catherine Ross (DC Bar 9007404) |
| ACLU FOUNDATION | Amanda Saylor (FL Bar 1031480) |
| OF NORTHERN CALIFORNIA | Eric Snyderman (VA Bar 99563) |
| 39 Drumm Street | Trial Attorneys |
| San Francisco, CA 94111-4805 | U.S. Department of Justice, Civil Division |
| Telephone: (415) 621-2493 | Office of Immigration Litigation |
| Facsimile: (415) 863-7832 | General Litigation and Appeals Section |
| | P.O. Box 868, Ben Franklin Station |
| Attorneys for Plaintiffs | Washington, DC 20044 |
| *[Additional Counsel Listed on Next Page]* | |
| | Attorneys for Defendants |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, MARIELA GONZÁLEZ, FREDDY JOSE ARAPE RIVAS, M.H., CECILIA DANIELA GONZÁLEZ HERRERA, ALBA CECILIA PURICA HERNÁNDEZ, E.R., HENDRINA VIVAS CASTILLO, A.C.A., SHERIKA BLANC, VILES DORSAINVIL, and G.S.,<br><br>Plaintiffs,<br><br>vs.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,<br><br>Defendants. | Case No. 3:25-cv-01766-EMC<br><br>**JOINT STATUS REPORT PURSUANT TO ORDER RE JOINT DISCOVERY LETTER (DKT. NO. 129)**<br><br>Assigned to: Hon. Edward M. Chen<br><br>Complaint filed: February 19, 2025 |

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitran (SBN 302081)
ebitran@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, 1H
San Diego, CA 92120
Telephone: (949) 603-7411

Pursuant to the Court's May 2, 2025 Order Re Joint Discovery Letter (Dkt. No. 129, the "Order"), counsel for Plaintiffs and Defendants met and conferred on May 6, 2025 and provide this status report and their positions on RFP Nos. 1–9.

## I.   INTRODUCTORY STATEMENTS

### A.   Plaintiffs' Position

Plaintiffs acknowledge the Court's concern that, "[a]s a facial matter," certain requests appear overbroad due to an "open-ended time frame" or the number of custodians. Order 8 at 2–4. This case is unusual. All of the decisions occurred during a compressed time frame, placing inherent time constraints on the reach of these requests. The compressed time frame at issue also means that the number of custodians is unlikely to materially (if at all) impact the ultimate burden on Defendants in terms of gathering and reviewing documents. In addition, this case involves APA, Equal Protection, and declaratory relief claims in a setting where the Court already has found support for Plaintiffs' assertions of pretext, bad faith, arbitrary decisionmaking, and racial animus. But mindful of the Court's guidance, Plaintiffs below describe how they propose to narrow their RFPs to facilitate the prompt production of critical information bearing on issues at the heart of this litigation.[1] Particularly given the exigencies of this litigation, and the number of individuals whose lives hang in the balance, Plaintiffs ask that the Court order Defendants to produce all responsive documents, confirm that no responsive documents exist, and provide any privilege logs for (a) RFP Nos. 4–5 and 7–9 within seven days, and (b) RFP Nos. 1–3 and 6 within ten days. The parties have stipulated to 1) the production of RFP 4-5 within seven days; and 2) an outer temporal limit for searches of RFP Nos. 1-2, as the date of the publication of the challenged Federal Register Notices. The parties have reached partial agreement on search terms for RFP Nos. 1-2. (*See* **Exhibit 1**.)

### B.   Defendants' Position

Plaintiffs continue to be non-specific about the documents they seek and instead request sweeping, general discovery on an accelerated timeline that is unrealistic based on the scope of their

---

[1] Plaintiffs do so without prejudice due to the need for expediency. Should disclosures reveal deficiencies in the administrative records, uncover key custodians, or bring to light as-yet-unknown consequential documents, then Plaintiffs may need to seek assistance from the Court.

1  demands. Plaintiffs draw inapposite comparisons to *Ramos*, where discovery was conducted over a
2  period of months, but demand that similar discovery be conducted here within the next week to 10
3  days. Notably, this Court has not authorized general discovery, but Plaintiffs propound sweeping
4  demands for production without any showing why Defendants are not entitled to the 30 days
5  provided under the Federal Rules to respond to such discovery demands in detail. Even pared down,
6  Plaintiffs seek to minimize that their requests compel the Government to search for, compile, review,
7  and produce the demanded documents in an unreasonably short period of time. Although Plaintiffs
8  argue about the "the exigencies of this litigation," they provide no satisfactory explanation for the
9  speed with which they seek to have the government produce documents when they have failed to
10 take advantage of the appropriate litigation tactic that would decrease the urgency here. Indeed, in
7  order to create a false sense of urgency now, Plaintiffs have walked back from their previous
12 statement that they would file a motion to postpone the Haiti Partial Vacatur by May 29, 2025 (ECF
13 No. 111 at 11), choosing instead to file a Motion for Summary Judgment. Certainly, Fed. R. Civ. P.
14 56 allows Plaintiffs to file such a motion for summary judgment – but Plaintiffs claim that their
15 decision to do so now creates an exigent circumstance in which they must have immediate discovery
16 in order to ensure there are no material facts in dispute is specious at best.

17     Regardless, with a view towards reaching some reasonable middle ground, Defendants offer
18 the following responses to Plaintiffs' "RFPs" below.

19 **II.    RFP Nos. 1–2**

20     **A.    Plaintiffs' Position**

21     <u>***Time frame***</u>:  Plaintiffs agree to narrow these (and other) requests to the period most likely to
22 uncover evidence of "intent in reaching the decisions challenged herein beyond that already
23 contained in the administrative record …." Order at 8:6–7. Namely, Plaintiffs agree to adopt as
24 cutoffs: (a) February 3 and 5, 2025 for the Venezuela vacatur and termination, respectively, and
25 (b) February 24, 2025 for the Haiti partial vacatur. These cutoffs reflect the dates when the pertinent
26 Federal Register Notices were published. They also reflect tight constraints on the scope of extra-
27 record discovery. The Complaint identifies multiple relevant communications that occurred *after* the
28 dates of these publications, and the Court's order granting postponement finds post-decision

statements relevant to the claims at issue. *See, e.g.*, Dkt. No. 93 at 65–66 (citing examples of relevant statements between February 2024 and February 2025).

***Custodians***: Plaintiffs have narrowed the initially proposed 31 custodians/positions to 22 custodians/positions. *See* **Exhibit 1**. Plaintiffs contend 22 custodians/positions is reasonable and proportional based on the stakes of the litigation. In *Ramos*, Defendants advocated for 22 custodians as adequate, and, even then, Plaintiffs were allowed to request an additional seven custodians to fill gaps in the collections. *Ramos* Dkt. Nos. 47 at 10, 56 at 2, 53 at 2.

Limiting discovery to 20–30 custodians presents challenges in this context because diverse personnel and divisions typically play roles in TPS decisionmaking. A typical TPS periodic review process begins months before the Secretary must make a decision.[2] USCIS Refugee, Asylum and International Operations Directorate (RAIO) first prepares a country conditions report. The USCIS Office of Policy & Strategy (OP&S) then prepares a Decision Memo—a detailed and substantiated recommendation from USCIS to DHS[3]—based on the RAIO country conditions report and other governmental and nongovernmental resources, including any recommendation and country conditions report provided by the State Department, and information from other DHS and USCIS components.

USCIS TPS "subject matter experts," who have typically been with the Humanitarian Affairs Division of OP&S, generally are responsible for preparing the Decision Memo for the OP&S Chief.[4] The OP&S Chief, upon review and approval of the Decision Memo, presents it to the USCIS Director and senior leadership.

The USCIS Director then typically sends a final signed Decision Memo as part of a "package" to the DHS Secretary and DHS "Front Office." The "package" may include, e.g., a draft Federal Register Notice, TPS Legal Authority, USCIS RAIO Country Conditions Report,

---

[2] *See generally* U.S. Gov't Accountability Off., GAO-20-134, *Temporary Protected Status: Steps Taken to Inform and Communicate Secretary of Homeland Security's Decisions*, 31 (2020) ("GAO TPS Report") (providing overview of TPS review process); *Ramos* Dkt. No. 128 at 4–5 (Order Granting Plaintiffs' Motion for Preliminary Injunction).

[3] *See, e.g.*, *Ramos* Dkt. Nos. 40–41, 44, 52, 61, 110, 120–122 (examples of decision memoranda and explanation of such memoranda); GAO TPS Report at 21–22.

[4] *Ramos* Dkt. Nos. 47 at 10, 56 at 2, 53 at 2 (seeking as additional custodians TPS "subject matter experts" part of the Humanitarian Affairs Division).

1  Department of State Recommendation & Country Conditions Report.[5] The Secretary consults with
2  the DHS Front Office (which may include the Deputy Secretary, Chief of Staff, Deputy Chief of
3  Staff, and Senior Advisors) and other central components, including the DHS Office of Strategy,
4  Policy, and Plans (DHS Office of Policy). The DHS Office of Policy has been responsible for
5  creating and/or providing documents to the Secretary.[6] The Secretary makes a final decision
6  informed by the recommendation in the USCIS Decision Memo and other sources.

7         OP&S TPS subject matter experts have typically been responsible for preparing a draft
8  Federal Register Notice, often in coordination with Service Center Operations Directorate. DHS
9  Office of General Counsel will also, prior to the Secretary's decision, review the TPS "package"
10 prepared by USCIS and the State Department and provide edits.[7] The General Counsel may also
7  prepare memoranda documenting the Secretary's decision, communicate directly with USCIS
12 officials, and consult about changes to the TPS decision process.[8] The DHS and USCIS Executive
13 Secretariat have typically been responsible for version control, including through securing
14 "clearance" of documents, which for DHS has traditionally relied on a Records of Clearance and
15 Approval at different stages of the process.[9]

16         Here, Plaintiffs face additional hurdles not present in *Ramos* when attempting to winnow
17 down the list of custodians. Unlike in *Ramos*, many of the individuals who formally signed off on
18 these challenged TPS decisions appear to *not* be officially assigned to overseeing relevant DHS

---

[5] *See, e.g.*, Dkt. No. 110-3 at 27 (Haiti Partial Vacatur AR 164) (official administrative record for Haiti partial vacatur at issue here, listing many of these documents included in the "Package" with the DHS Record of Clearance and Approval); *Ramos* Dkt. No. 112-2 at 86 (official administrative record of Nicaragua TPS decision, listing many of these documents as included in the "Package" with the DHS Record of Clearance and Approval).

[6] *See* GAO TPS Report at 31; *see also Ramos* Dkt. No. 122-62 (Memorandum for DHS Deputy Chief of Staff from Scott Krause, "TPS Recommendations for El Salvador, Honduras, and Nicaragua, demonstrating role of DHS Office of Policy and Office of General Counsel in providing analysis and recommendations to Secretary as part of periodic review process).

[7] *See* **Exhibit 2** - KNK 30(b)(6) Dep. at 117:17–119:16; GAO TPS Report at 31.

[8] GAO TPS Report at 32; **Exhibit 2** - KNK 30(b)(6) Dep. at 126:17–127:1, 129:12–18, 164:2–24.

[9] *See, e.g.*, Dkt. No. 110-3 at 27 (Haiti Partial Vacatur AR 164) (official administrative record for Haiti partial vacatur at issue here); *Ramos* Dkt. No. 112-2 at 86 (official administrative record of Nicaragua TPS decision); *Ramos* Dkt. No. 122-47 (Mar.-Apr. 2017) (email thread with USCIS Executive Secretariat concerning review process for Federal Register Notice and USCIS Recommendation Memorandum for Haiti TPS).

1  components, but rather have such titles as "Senior Advisor" or "Senior Counsellor," requiring

2  Plaintiffs to identify custodians who both hold formal positions traditionally integral to TPS

3  decisionmaking as well as "advisors" or "counsellors" who signed off on these decisions. *Compare*

4  **Exhibit 3** *with* **Exhibit 4** (examples of DHS Clearance and Approval documents from 2017 and

5  2025 decisions).  Due to rapid turnover, especially during the early weeks of the current

6  administration, Plaintiffs also have identified instances of multiple people holding a single position

7  in rapid succession—for instance, at least three people have been named, acting, or nominated for

8  the DHS Under Secretary of Strategy, Policy and Plans since January 17, 2025.

9        Accounting for all of these variables, and the Court's concerns, Plaintiffs lay out in **Exhibit 1**

10 their proposed custodians, including the reasons why each is likely to possess relevant information.

7  Defendants have not identified any grounds for further limiting the number of custodians due to

12 burden. Nor should Defendants be allowed to object on burden at this point. Despite multiple

13 requests, Defendants have not shared any information to enable Plaintiffs to safely eliminate

14 custodians without prejudice to the quality of information gathering. Defendants have been unable or

15 unwilling to answer basic questions about, e.g., the identity of persons who approved the challenged

16 Venezuela actions through the DHS "clearance" process, whether relevant positions were filled

17 during the time period at issue, or the names of any TPS "subject matter experts" at DHS or USCIS

18 who participated in the challenged decisions. Defendants should not be rewarded for withholding

19 such information.

20     **B.**    **Defendants' Position**

21       Defendants are amenable to searching for documents from the 9 custodians identified by

22 DHS as likely to have responsive records, utilizing the identified search terms, and to produce

23 responsive non-privileged documents from January 20, 2025 through a) February 3 and 5, 2025 for

24 the Venezuela vacatur and termination determinations, respectively, and (b) February 24, 2025 for

25 the Haiti partial vacatur. *See* Defendants' position in **Exhibit 1**.

26       To the extent that Plaintiffs seek to dictate the scope of the search necessary to respond to

27 their "Requests for Production," Defendants assert they are in the best position to identify the

28 appropriate custodians and search terms. *See In re EpiPen*, No. 17-md-2785, 2018 WL 1440923 at

*1 (D. Kan. Mar. 15, 2018) (stating that "the party responding to discovery requests is typically in the best position to know and identify those individuals within its organization likely to have information relevant to the case" (citing *Enslin v. Coca-Cola Co.*, No. 2:14-CV-6475, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016) ("Asking a court to compel a party to search the ESI of additional custodians is similar to asking a court to compel to undertake additional efforts to search for paper documents. In either case, the requesting party is second-guessing the responding party's representation that it conducted a reasonable inquiry for responsive information….")).

    Plaintiffs continue to compare this lawsuit with the procedural history in Ramos, despite the cases arising in different procedures. In *Ramos*, this Court grappled with four termination determinations for four different countries that were made by three different Secretaries of Homeland Security. The circumstances in that case are far different in scope than those presented here. Defendants have identified the custodians most likely to have relevant information to answer Plaintiffs' inquiries. Additional custodians are unlikely to reap additional evidence and may instead lead to more disputes. For example, the addition of Joseph Mazzara, the Acting General Counsel to DHS, will only lead to attorney-client privilege claims.

    Finally, Defendants note that the request in RFP No. 2 is duplicative of RFP No. 1 and will be captured by searches conducted under the parameters proposed in Exhibit 2.

**III.    RFP No. 3**

    **A.    Plaintiffs' Position**

    Plaintiffs agree to narrow the time frame for RFP No. 3 to the same time frame as RFP Nos. 1–2 (*see supra* § II.A), ensuring responsive documents would have been created contemporaneously with the challenged decisions; and narrow the scope to documents related to media appearances or statements referenced in the Amended Complaint. Plaintiffs propounded RFP No. 3 based on their experience in *Ramos*, where such materials revealed relevant information about motivations and purported reasoning underlying disputed TPS decisions,[10] which is why Plaintiffs respectfully request that the Court order Defendants to respond to RFP No. 3 as narrowed.

---

[10] *See, e.g., Ramos* Dkt. No. 122-17 (May 22, 2017) (email thread about "Haiti TPS readout from the DHS press call").

6

## B.       Defendants' Position

Defendants object to this RFP as it not relevant to the decisions made by Secretary Noem. Furthermore, Plaintiffs have not articulated which specific statements and media packets they believe would be predecisional and relevant to this decision. Announcing a decision is not making a decision, and this request is nothing more than a fishing expedition into matters wholly disconnected from the decision making process.

## IV.     RFP Nos. 4–5

### A.       Plaintiffs' Position

Plaintiffs asked for Record of Clearance and Approval documents because, as noted above, they are official records that memorialize who approved TPS decisions as well as the date of each such approval—i.e., these documents will identify who participated in the challenged decisions at issue. After a meet and confer, Defendants have agreed to production. Defendants' Position

Although not a matter considered in making the determinations at issue, because the Record of Clearance and Approval document was included in the Haiti Partial Vacatur record, Defendants agree to produce these two documents in 7 days.

## V.      RFP No. 6

### A.       Plaintiffs' Position

As the Court notes in the Order, Plaintiffs asked for the Government to confirm on the record at a recent hearing that Defendants consider the administrative records for Venezuela and Haiti to be complete. Order at 8 at 16–17. Plaintiffs sought that representation to avoid a situation where, in opposition to summary judgment or otherwise, Defendants object to the Court granting relief on the ground that one or more of the administrative records remain incomplete. It is against that backdrop that Plaintiffs asked for and accepted the representation by defense counsel at the hearing.

At the same time, Defense counsel's representation that Defendants consider the administrative records complete does not moot RFP No. 6. Defendants have since confirmed that they have excluded from the official administrative records at least some materials provided to or considered by the Secretary to make the challenged decisions. Defendants have not disclosed the number of documents so excluded from the record, but they identified two examples during the

1  meet-and-confer process for RFP No. 6, and both examples are telling. The administrative record in
2  *Ramos* contained a document titled "TPS Legal Authority" (**Exhibit 5**), which is a standard
3  component of the TPS decision-making process, whereas Defendants now take the position that such
4  documents are deliberative, and therefore not part of the record despite being listed on the DHS
5  Clearance and Approval document as a record which Secretary Noem considered in making her
6  decision. (**Exhibit 4.**) Moreover, in *Ramos*, Plaintiffs obtained drafts and final Decision Memos[11],
7  which are regularly circulated as part of the decisionmaking process, and indeed in a typical periodic
8  review process provide the central support for and reasons underlying decisions. None have been
9  provided here in connection with any of the three challenged actions.

10       Plaintiffs therefore ask for a response to RFP No. 6. By definition, documents "provided to,
11  reviewed by, or considered by the Secretary" in connection with the challenged decisions represent
12  core documents of the highest possible relevance. Plaintiffs also need a log of the materials withheld
13  and the basis for withholding them. As the Court may recall from *Ramos*, Plaintiffs learned that
14  many purportedly deliberative and privileged materials were, in fact, not protected at all. For all of
15  these reasons, RFP No. 6 remains vital.

16       **B.**     **Defendants' Position**

17       Defendants object to this RFP on the basis that it seeks to uncover documents covered by the
18  deliberative process privilege, attorney-client privilege, and attorney work product. As stated in
19  discovery letter, the "whole record" is ordinarily the "record the agency presents." *Blue Mountains*
20  *Biodiversity Project v. Jeffries*, 99 F.4th 438, 445 (9th Cir. 2024). And certain "predecisional
21  deliberative materials" are not properly included in the whole record. *Id*. "[W]hen the agency has
22  made formal findings, not every email, draft notice, discussion note, or meeting reminder that
23  agency personnel circulate in the course of making the decision how to apply the statutory directive
24  to the facts that they have found constitutes the whole record." *Ctr. for Biological Diversity v. U.S.*
25  *Fish & Wildlife Serv.*, No. 21-CV-5706 (LJL), 2022 WL 2805464, at *3 (S.D.N.Y. July 18, 2022).
26  For example, documents that relate solely to "'the mental processes of administrative

---

[11] *See, e.g., Ramos*, Dkt. Nos. 122-41 (Decision Memo for Sudan), 122-45 (Decision Memo for Haiti).

8
JOINT STATUS REPORT PURSUANT TO ORDER
RE JOINT DISCOVERY LETTER – CASE NO. 3:25-CV-01766-EMC

decisionmakers'" are characterized as "extra-record" and may be obtained only "[o]n a 'strong showing of bad faith or improper behavior.'" *Id*. (quoting *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573-74 (2019)). To the extent Plaintiffs seek privileged material, they have made no "showing of bad faith or improper behavior" that "might justify production of a [privileged materials and] a privilege log. *Blue Mountains Biodiversity Project*, 99 F.4th at 445.

## VI.  RFP No. 7

### A.  Plaintiffs' Position

Plaintiffs agree to narrow the time frame of RFP No. 7 to the same time frame as RFP Nos. 1–2 (*see supra* § II.A), ensuring the relevance of any responsive materials. Diplomatic cables traditionally contain information about country conditions, which is why they are a regular part of TPS decision making. For instance, in *Ramos*, such cables contradicted assertions about the purported safety of certain countries—i.e., diplomatic cables can serve as powerful evidence of pretext—and included recommendations contrary to the decisions ultimately taken by the Secretary.[12] Given the less than four-week period covered by RFP No. 7 as narrowed, there is no reason to believe that RFP No. 7 would sweep in more than a handful of documents. In fact, given the hurried nature of Defendants' decision-making, Plaintiffs suspect that Defendants may find zero documents responsive to RFP No. 7, which would reinforce how these challenged decisions deviated from settled practice. In short, RFP No. 7 places no undue burden on Defendants and is carefully tailored to elicit relevant information.

### B.  Defendants' Position

Defendants object to this RFP on the basis that to the extent relevant communications from the State Department were received by DHS, they would be subsumed by RFPs No. 1-2.

## VII.  RFP Nos. 8–9

### A.  Plaintiffs' Position

RFP Nos. 8–9 place no meaningful burden on Defendants. Nor do Defendants have grounds

---

[12] *Ramos*, Dkt. Nos. 122-67 (diplomatic cable from U.S. Mission to El Salvador recommending extension of TPS for El Salvador), 122-69 (diplomatic cable from U.S. Mission to Honduras recommending extension of TPS for Honduras).

to oppose production of the administrative records for these earlier TPS decisions. Defendants have placed both of these administrative records squarely at issue by attacking them as flawed. And the administrative records for these earlier decisions have added relevance here because of their close proximity to the vacaturs, providing a direct compare-and-contrast between standard decision-making and whatever process (or lack thereof) employed here.

**B.     Defendants' Position**

Defendants will produce the Administrative Record for the January 17, 2025 decision to extend the TPS designation for Venezuela by May 19, 2025. Defendants will produce the Administrative Record for the July 1, 2024 decision to extend the TPS designation for Haiti by May 28, 2025.

Date: May 7, 2025

Respectfully submitted,

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

 /s/ *Emilou MacLean*
Emilou MacLean

*Attorneys for Plaintiffs*

Date: May 7, 2025

U.S. DEPARTMENT OF JUSTICE

 /s/ *Sarah L. Vuong*
Sarah L. Vuong

*Attorneys for Defendants*

**SIGNATURE ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that each of the other Signatories have concurred in the filing of this document.

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

/s/ *Emilou MacLean*
Emilou MacLean