UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL TPS ALLIANCE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, et al.,<br><br>Defendants. | Case No. 25-cv-01766-EMC<br><br>**ORDER RE DISCOVERY STATUS REPORT**<br><br>Docket No. 132 |

Previously, the Court rejected the government's contention that there was a categorical bar to extra-record discovery and ordered the parties to meet and confer regarding Plaintiffs' document requests. *See* Docket No. 129 (order). The parties have now submitted a status report, updating the Court on the results of their meet and confer.

A.  RFPs Nos. 1-2

The parties have agreed on a narrowed time frame for RFPs Nos. 1 and 2 – adopting cut-off dates of February 3 and 5, 2025, for Venezuela (the vacatur and termination, respectively) and February 24, 2025, for Haiti.  However, the parties still have disputes over the number of custodians and the search terms to be used.

The parties' dispute over the search terms is fairly narrow.  The Court approves the search terms proposed by Plaintiffs.  Plaintiffs' proposed terms are properly narrowly focused.

The bigger dispute concerns the number of custodians.  The parties have agreed to a search with respect to nine custodians.  Plaintiffs ask that an additional thirteen custodians be added to the search.

- Four of the thirteen custodians are persons named in the DHS Record of Clearance

and Approval for the Haiti decision. *See* Status Rpt., Ex. 1 (persons listed in Plaintiffs' Category B). This includes, *inter alia*, Secretary Noem and Corey Lewandowski (DHS Chief Adviser).

- Nine of the thirteen custodians are other individuals who work in the USCIS Front Office, OP&S, or RAIO. *See* Status Rpt., Ex. 1 (persons listed in Plaintiffs' Category C).

The Court finds the search of the thirteen additional custodians proposed by Plaintiffs potentially overbroad. The Court agrees with Plaintiffs that it is appropriate for the search to include those custodians who are named in the DHS Record of Clearance and Approval for the Haiti decision. Given that the custodians are named in the Record of Clearance and Approval, they likely participated in the decision-making with respect to Haiti.

The Court also orders that the search include those custodians named in the DHS Record of Clearance and Approval for each of the Venezuela decisions. To be clear, the Court recognizes that, in the status report, Plaintiffs asked only for the custodians related to Haiti, and not Venezuela. But apparently, that was only because the government had not yet produced the Records of Clearance and Approval for Venezuela. Now that the government will be producing the Records of Clearance and Approval for Venezuela (see RFPs No. 4-5 discussed below), those custodians will be identified. Consistent with the above above, it is proper to include the custodians in the search given that they likely participated in the decision-making with respect to Venezuela.

The Court also agrees with Plaintiffs that it is proper for the search to include Andrew Davidson (who was appointed Acting Deputy Director of USCIS on January 26, 2025). Mr. Davidson's position indicates he was likely a part of the decision-making process for both countries.

As for the remaining individuals, the appropriateness of a search is not clear given the limited information available. Instead of ordering a search of any specific individual by name, the Court orders that the government simply include in its search the person(s) at RAIO who authored the country conditions reports for Venezuela and Haiti and the person(s) at OP&S who authored

2

1   the Decision Memos for Venezuela and Haiti.

2   Documents shall be produced by May 19, 2025.

3   B.   RFP No. 3

4   Plaintiffs have narrowed the scope of RFP No. 3, both in terms of time frame and subject
5   matter. For time frame, Plaintiffs propose the same cut-off dates as above: February 3 and 5,
6   2025, for Venezuela (the vacatur and termination, respectively) and February 24, 2025, for Haiti.
7   For subject matter, Plaintiffs seek only documents related to media appearances or statements
8   referenced in the amended complaint. According to Plaintiffs, they propounded this RFP "based
9   on their experience in *Ramos*, where such materials revealed relevant information about
10  motivations and purported reasoning underlying disputed TPS decisions." Status Rpt. at 6.

11  The Court shall not require the government to respond to this document request, even as
12  narrowed. The example Plaintiffs provide from the *Ramos* case – an email thread related to Haiti
13  – does not shed much light, if any, on motivations as it simply recounts what took place during a
14  DHS press call. Plaintiffs already have information, as referenced in their amended complaint,
15  about statements that, *e.g.*, the Secretary made during press interviews.

16  C.   RFPs Nos. 4-5

17  The parties reached an agreement on RFPs Nos. 4-5. Specifically, the government agreed
18  to produce the Record of Clearance and Approval documents, and within seven days. *See* Status
19  Rpt. at 1, 7.

20  D.   RFP No. 6

21  Plaintiffs acknowledge the government's representation that it has produced the complete
22  administrative record for each decision. However, they explain they sought that representation at
23  the prior conference in order to prevent the government from "object[ing] to the Court granting
24  relief on the ground that one or more of the administrative records remain incomplete." Status
25  Rpt. at 7. Plaintiffs add that they now have specific grounds to challenge the government's
26  position that it did produce the complete administrative records: (1) the government did not
27  produce a document titled "TPS Legal Authority," which is a standard part of the TPS decision-
28  making process (as in *Ramos*) and (2) the government did not produce any draft or even final

3

1   Decision Memos, which are regularly circulated as part of the decision-making process (again, as
2   in *Ramos*).
3         In response, the government invokes, in particular, the deliberative process privilege. The
4   government correctly notes that, under current Ninth Circuit law, deliberative materials are
5   generally not part of an administrative record and, accordingly, there is no requirement that they
6   be placed on a privilege log. *See Blue Mts. Biodiversity Project v. Jeffries*, 99 F.4th 438, 444-45
7   (9th Cir. 2024). However, the government's analysis is problematic for two reasons.
8         First, the government ignores that Plaintiffs have brought not only an APA claim but also a
9   constitutional claim (for violation of equal protection). Although the government may be able to
10  assert the deliberative process privilege for a constitutional claim, *but see FTC v. Meta Platforms,*
11  *Inc.*, No. 20-3590 (JEB), 2022 U.S. Dist. LEXIS 160487, at *16-17 (D.D.C. Sept. 6, 2022)
12  (indicating that, where "Congress create[d] a cause of action that deliberatively exposes
13  government decisionmaking to the light," such as Title VII actions or constitutional claims for
14  discrimination, the deliberative process privilege does not obtain), to do so, it must in the first
15  instance provide a privilege log. Plaintiffs must be able to test the claim of privilege, especially as
16  it is only a qualified one. *See, e.g.*, *Shiflett v. City of San Leandro*, No. 21-cv-07802-LB, 2023
17  U.S. Dist. LEXIS 120793, at *11 (N.D. Cal. July 13, 2023) (noting that "[a] litigant may obtain
18  deliberative materials [or information] if his or her need for the materials [or information] and the
19  need for accurate fact-finding override the government's interest in nondisclosure") (internal
20  quotation marks omitted).
21        Second, even if the Court were to consider only Plaintiffs' APA claim, the Ninth Circuit
22  did not hold in *Blue Mountains* that deliberative process information is never producible or
23  required to be identified on a privilege log in an APA case. Rather, the Ninth Circuit recognized
24  that there could be exceptions to the general rule that deliberative process information is not part
25  of the administrative record and therefore not required to be placed on a privilege log: "For
26  example, we agree with the D.C. Circuit that 'a showing of bad faith or improper behavior' might
27  justify production of a privilege log to allow the district [court] to determine whether excluded
28  documents are actually deliberative." *Id.* at 445; *see also Oceana, Inc. v. Ross*, 920 F.3d 855, 865

4

1  (9th Cir. 2019) (stating that, "on arbitrary and capricious review, absent a showing of bad faith or
2  improper behavior, '[a]gency deliberations not part of the [administrative] record are deemed
3  immaterial'"); *CAN Softtech, Inc. v. United States*, 174 Fed. Cl. 412, 421 (2024) ("[T]here are
4  circumstances in which the Court need not limit its review to the record filed by the agency:
5  specifically, *where* the movant provides clear evidence that the Government improperly withheld
6  documents from the administrative record *or where* the movant provides a reasonable factual
7  predicate for an allegation that the agency engaged in bad faith or other improper behavior.")
8  (emphasis added).

9      In the Court's prior order, it did not categorically bar extra-record discovery for Plaintiffs'
10  APA claim precisely because there was a factual basis for Plaintiffs' assertion that Secretary
11  Noem had acted in bad faith and/or with a discriminatory animus. Indeed, the Court found, in
12  granting Plaintiffs' postponement motion, that they were likely to succeed on the merits for their
13  equal protection claim which requires a showing of discriminatory animus. *See* Docket No. 93
14  (Order at 3). Thus, even if *Blue Mountains* requires clear evidence of bad faith by an agency (*i.e.*,
15  in order to fall within the exception to the general rule), that standard has been met here for
16  purposes of permitting limited extra-record discovery. The Court therefore holds that, even with
17  respect to Plaintiffs' APA claim, this is a situation in which the government must provide a
18  privilege log for any documents over which it claims the deliberative process privilege.

19      The government must produce a privilege log by May 19, 2025. Of course, this does not
20  mean that any documents disclosed on the privilege log will be ordered disclosed. It simply
21  means that at this juncture there is a sufficient basis for requiring compilation of such a log.

22  E.    <u>RFP No. 7</u>

23      Plaintiffs have narrowed the time frame for RFP No. 7. They also explain that they seek
24  diplomatic cables because prior TPS decision-making has involved communications from
25  overseas posts about country conditions for TPS review. *See* GAO-20-134, Temporary Protected
26  Status, Steps Taken to Inform and Communicate Secretary of Homeland Security's Decisions,[1] at

---

[1] Available at https://www.gao.gov/products/gao-20-134 (last visited 5/8/2025).

5

8 (Apr. 3, 2020) (Table 1) (noting that overseas posts affiliated with the State Department "[t]ypically provide information about country conditions for a TPS review"). Cables received prior to the decision are relevant to the claims herein. Particularly in light of the GAO report, the Court requires that the government produce responsive documents, narrowed to the time frame proposed by Plaintiffs. Documents shall be produced by May 16, 2025.

F. RFPs No. 8-9

The government agreed to produce the administrative record for the Biden administration TPS decisions. However, Plaintiffs ask that the production be provided in seven days; the government states that it will produce the administrative record for Venezuela by May 19, 2025, and the administrative record for Haiti by May 28, 2025. The government has not explained why it needs this amount of time to produce the administrative record, particularly when the Court's order of May 2, 2025, forewarned the government that it needed to be prepared for prompt production. *See* Docket No. 129 (Order at 7). Also, the government's proposed dates are problematic given that Plaintiffs' opening brief for summary judgment is due on May 27, 2025. The Court orders that production be made by May 16, 2025.

**IT IS SO ORDERED**.

Dated: May 9, 2025

_____
EDWARD M. CHEN
United States District Judge