Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou H. MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Amanda Young (SBN 359753)
ayoung@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, MARIELA GONZÁLEZ, FREDDY JOSE ARAPE RIVAS, M.H., CECILIA DANIELA GONZÁLEZ HERRERA, ALBA CECILIA PURICA HERNÁNDEZ, E.R., HENDRINA VIVAS CASTILLO, A.C.A., SHERIKA BLANC, VILES DORSAINVIL, and G.S., <br><br> *Plaintiffs,* <br><br> v. <br><br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA, <br><br> *Defendants.* | Case No. 25-cv-1766 <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO PRESERVE STATUS AND RIGHTS UNDER SECTION 705; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:    TBD <br> Time:    TBD <br> Place:    TBD |

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitran (SBN 302081)
ebitran@aclusocal.org
Diana Sanchez (SBN 338871)
dianasanchez@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

1
2

**NOTICE OF MOTION AND MOTION TO PRESERVE STATUS AND RIGHTS UNDER**
**SECTION 705**

3
4
5
6
7
8
9

PLEASE TAKE NOTICE THAT, on May 29, 2025, or as soon thereafter as this matter may be heard before the district court judge of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, assigned to this matter, Plaintiffs move under 5 U.S.C. § 705 of the Administrative Procedure Act ("APA") to "preserve status or rights pending conclusion of the review proceedings." Specifically, Plaintiffs seek an order preserving the status or rights of individuals who received "EADs, Forms I-797, Notices of Action, and Forms I-94 issued with October 2, 2026 expiration dates."[1] *See* Ex. A.

10
11
12
13
14

Plaintiffs met and conferred with Defendants regarding this Motion on May 21, 2025. Defendants stated that DHS is reviewing the Supreme Court's order and has no position to provide at this time. The Parties have agreed that Defendants will file their opposition on Wednesday, May 28, 2025 by 9 am PST. Plaintiffs request that this Motion be heard at the May 29, 2025 status conference. Defendants oppose that request.

15
16
17
18
19
20
21
22

To prevent irreparable harm, and because many TPS holders who possess the documents identified by the Supreme Court could otherwise lose their employment and be subject to imminent detention and deportation, Plaintiffs request that the Court act *as soon as possible* to preserve the status and rights of those individuals until such time as the Court can resolve whether the orders challenged in this case are unlawful. The preservation of the status and rights of these individuals comports with the Supreme Court's ruling of May 19, 2025, which recognized the possibility that such individuals could have claims warranting interim relief and appeared to invite a "challenge" on that basis. *Id*.

23
24
25
26

This Motion is based upon this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the supporting declarations and evidence filed concurrently herewith; all prior pleadings and filings in this case; any additional matter of which the Court may

27
28

[1] Plaintiffs also include in this motion Venezuelan TPS holders who received I-797 forms extending their employment authorization documents by 540 days, which is through September 24, 2026, for reasons explained below.

take judicial notice; and such further evidence or argument as may be presented before, at, or after the hearing.

Date:  May 21, 2025                                    Respectfully submitted,

                                                       ACLU FOUNDATION
                                                       OF NORTHERN CALIFORNIA

                                                        /s/ Emilou MacLean
                                                       Emilou MacLean

                                                       Michelle (Minju) Y. Cho
                                                       Amanda Young
                                                       ACLU FOUNDATION
                                                       OF NORTHERN CALIFORNIA

                                                       Ahilan T. Arulanantham
                                                       CENTER FOR IMMIGRATION LAW AND
                                                       POLICY, UCLA SCHOOL OF LAW

                                                       Eva L. Bitran
                                                       Diana Sanchez
                                                       ACLU FOUNDATION
                                                       OF SOUTHERN CALIFORNIA

                                                       Jessica Karp Bansal
                                                       Lauren Michel Wilfong (*Pro Hac Vice*)
                                                       NATIONAL DAY LABORER ORGANIZING
                                                       NETWORK

                                                       Erik Crew (*Pro Hac Vice*)
                                                       HAITIAN BRIDGE ALLIANCE

                                                       Attorneys for Plaintiffs

1

2

### MEMORANDUM OF POINTS AND AUTHORITIES

### <u>INTRODUCTION</u>

3

4       This case challenges, *inter alia*, Defendants' decisions to "vacate" the January 17, 2025

5   extension of Temporary Protected Status ("TPS") for Venezuela and subsequently terminate TPS for

6   nearly 350,000 Venezuelan TPS holders who first qualified for TPS protection under the 2023

7   designation. This Court granted Plaintiffs' motion to postpone both decisions on March 28, 2025.

8   Defendants moved to stay that order. After this Court and the Ninth Circuit denied Defendants'

9   motion, the Supreme Court granted a stay in a two-paragraph ruling issued on May 19, 2025. This

10  motion arises in light of the second paragraph of the Supreme Court's ruling which states:

11

> This order is without prejudice to any challenge to Secretary Noem's February 3, 2025
> vacatur notice insofar as it purports to invalidate EADs, Forms I-797, Notices of Action, and
> Forms I-94 issued with October 2, 2026 expiration dates. See 8 U. S. C. § 1254a(d)(3).

12  Ex. A.

13      Plaintiffs seek to prevent irreparable harm to the individuals identified in that second

14  paragraph, including Freddy Rivas, other NTPSA members who received TPS-related documents

15  under the January 17, 2025 extension, and any other TPS holders who did so as well. *See* First

16  Amended Complaint ("FAC") ¶¶ 19, 71. Section 1254a(d)(3) states "[i]f the Attorney General

17  terminates the designation of a foreign state … such termination shall only apply to documentation

18  and authorization issued or renewed after the effective date of the publication of notice." In other

19  words, this provision of the TPS statute prohibits the government from abrogating the validity of

20  already-issued TPS documents or otherwise refusing to honor documents it has issued with end dates

21  *after* a termination takes effect.

22      Thus, the plain language of the provision the Supreme Court cited makes clear that Secretary

23  Noem exceeded her authority by purporting to invalidate documents the agency had already issued

24  pursuant to the January 17 extension. Even when the government terminates a TPS designation

25  lawfully, the statute clearly provides that termination "shall only apply to documentation and

26  authorization issued or renewed *after* the effective date of the publication of notice." *Id.* (emphasis

27  added). Any attempt to alter the status or rights of those who obtained documentation *before* the

28

1

effective date of the termination exceeds statutory authority, yet that is precisely what Secretary Noem purported to do. Moreover, although her decision references the reliance interests arising from Secretary Mayorkas's January 17 extension generally, there is no indication that the government ever considered the unique reliance interests of those who availed themselves of the January 17, 2025 extension, paid renewal fees, and thereby lawfully acquired documentation reflecting their status and rights under it.

This Court has authority under Section 705 to preserve the "status and rights" reflected in those documents, including because the Supreme Court's stay ruling expressly was "without prejudice" to Plaintiffs seeking this narrowly tailored relief. Although the Supreme Court's stay ruling contains no reasoning, and has no precedential effect, two features of it provide some guidance. *First*, by singling out a subset of individuals who could apply for interim relief, the stay ruling is inconsistent with the sweeping jurisdictional arguments Defendants advanced before both this Court and the Supreme Court. Defendants argued to the Supreme Court that the TPS "statute commits to the Secretary's unreviewable authority any and all determinations concerning TPS designation, extension, and termination." *See* Ex. B at 16. If the Supreme Court had accepted that position, then the Secretary's decision to cancel TPS documentation issued in violation of Section 1254a(d)(3) would be entirely unreviewable. But the Supreme Court clearly did *not* accept that argument, as its ruling was "without prejudice" to a challenge to the "vacatur notice insofar as it purports to invalidate EADs, Forms I-797, Notices of Action, and Forms I-94 issued with October 2, 2026 expiration dates." *See* Ex. A. In other words, to the extent this Court can take any guidance from the Supreme Court's cursory ruling, it suggests that a jurisdictional basis exists to "challenge [] Secretary Noem's February 3, 2025 vacatur notice," and, moreover, that at least some individuals may seek immediate interim relief on that basis.

*Second*, the stay ruling's focus on those TPS holders who had already acquired documentation establishing their status or rights under the January 17 extension suggests that the Court gave some weight to Defendants' argument that interim relief under Section 705 should be limited to "preserv[ing] status or rights." *See* Ex. C at 12 (arguing that "Section 705 … authoriz[es] interim relief only 'to the extent necessary to prevent irreparable injury' and … "to preserve status or

1  rights"); Ex. B at 32 (relief available under Section 705 "to the extent necessary to prevent

2  irreparable injury" in order to, *inter alia*, "preserve status or rights"). Because the stay ruling

3  contains no reasoning, it is impossible to ferret out whether the Court took this approach based on a

4  textual reading of Section 705, its weighing of the balance of the equities, or simply in the exercise

5  of its inherent discretion. Whatever the reasoning, individuals who already received TPS-related

6  documentation pursuant to the January 17 extension (i.e., those individuals carved out in the second

7  paragraph of the Court's stay ruling) can seek relief even under the Government's position before

8  the Supreme Court that interim relief should be limited to preserving status or rights. Plaintiffs

9  therefore seek this emergency relief on their behalf.

10  ## STATEMENT OF THE ISSUE

11  Should the Court recognize the continuing validity of TPS-related documentation issued

12  pursuant to the January extension pending further litigation in this case in order to preserve the status

13  and rights of individuals who received such documents, under 5 U.S.C. Section 705?

14  ## STATEMENT OF THE RELEVANT FACTS

15  Plaintiffs will not repeat the facts relevant to this case in general, as they are set forth in this

16  Court's order granting postponement under Section 705. *See* Dkt. 93 at 3-13. For purposes of this

17  Motion in particular, the pertinent facts are that the January 17, 2025 extension issued by Secretary

18  Mayorkas opened a registration process whereby "[e]xisting TPS beneficiaries . . . who wish to

19  extend their status through October 2, 2026" could apply to obtain an extension of their work

20  authorization and lawful status through that date. *See, e.g.*, 90 Fed. Reg. 5961, 5961−62; FAC

21  ¶¶ 55−59. Some Venezuelan TPS holders, including at least one of the individual Plaintiffs in this

22  case and other NTPSA members, received documents through that process. When Secretary Noem

23  vacated the January 17 extension, she also purported to "invalidate EADs; Forms I-797, Notice of

24  Action (Approval Notice); and Forms I-94, Arrival/Departure Record (collectively known as TPS-

25  related documentation) that have been issued with October 2, 2026 expiration dates under the

26  [extension] notice," and to "rescind[]" automatic EAD extensions provided under the notice. 90 Fed.

27  Reg. 8805, 8807; *see also* FAC at ¶ 71 (explaining the vacatur notice "invalidates employment

28  authorization and approval notices already granted, and cancels the ongoing processing of

3

applications already filed"), *id.* (quoting vacatur notice, which states "pursuant to this vacatur the automatic EAD extensions provided in the [January 2025 Extension] are hereby rescinded").

**ARGUMENT**

**I.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.**

The Secretary's decision to invalidate documentation is in excess of statutory authority and not in accordance with law, for at least two reasons.

*First*, Section 1254a(d)(3) states "[i]f the Attorney General terminates the designation of a foreign state … such termination shall only apply to documentation and authorization issued or renewed after the effective date of the publication of notice." Yet Defendants' vacatur notice purported to invalidate documentation issued *before* the effective date of the termination notice. As Defendants themselves recognized, some individuals had already received documents approving an extension of their TPS under the January 17, 2025 extension at the time Secretary Noem purported to vacate it. Ex. B at p. 9 n.7. Others, like Plaintiff Freddy Rivas, had applied (and paid the relevant fees) and received a Notice of Action automatically extending their TPS-related work authorization under the extension, but not yet been given proof of a right to reside in the form of an I-94. *See* Dkt. 18 (Rivas Decl.) ¶ 12 (describing application and receipt of 540 day extension on his employment authorization). The Supreme Court's ruling suggests that Secretary Noem's attempt to invalidate these validly-issued documents was unlawful,[2] and this Court retains authority to "preserve status or rights," 5 U.S.C. section 705, for individuals like Plaintiff Mr. Rivas, because Defendants have acted "in excess of statutory jurisdiction, authority, or limitations." *See* 5 U.S.C. § 706(2)(c); *see also In re*

---

[2] There should be no dispute that the Supreme Court's ruling invites a challenge to the invalidation of both categories of documentation, not just a challenge limited to those who received proof of TPS status. The ruling expressly references "EADs" and "Forms I-94 issued with October 2, 2026 expiration dates"—documents received by individuals whose applications were approved under the January 17, 2025 extension—as well as "Forms I-797, Notices of Action"—which includes receipt notices granting automatic extensions of TPS-related work authorization that were received by individuals who applied to re-register under the extension but had not yet received final approval. USCIS issues "numerous types of Form I-797[s]," including Form "I-797, Notice of Action," which is "[i]ssued to communicate receipt or approval of an application or petition." *See* Form I-797: Types and Functions, at https://www.uscis.gov/forms/filing-guidance/form-i-797-types-and-functions. The Supreme Court's reference to "Form*s* I-797" and "Notice*s* of Action" in the plural makes clear that the invalidation of the several varieties of these documents raise similar concerns.

4

1    *Border Infrastructure Envtl. Litig.*, 915 F.3d 1213, 1222 (9th Cir. 2019) (the right of review under

2    the APA includes a right to judicial review of "legal question[s] of statutory authority").

3          *Second*, the government's attempt to "rescind" facially-valid government documents

4    constitutes arbitrary agency action in violation of the APA, including because it contravenes the

5    reasonable reliance interests that individuals gain upon receipt of government documents. *See*

6    *generally DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020) (reversing DHS decision to end

7    DACA program for failure to consider reliance interests). The Ninth Circuit has held that when

8    individuals seek an immigration benefit, they obtain a "vested right" in adjudication of that benefit

9    that warrants consideration as a reliance interest. *Ixcot v. Holder*, 646 F.3d 1202, 1213 (9th Cir.

10   2011) (holding application of narrower rule was "impermissibly retroactive … when applied to an

11   immigrant … who applied for immigration relief prior to [the new rule's] effective date," because

12   those who applied gain a "vested right" in their application). Those who "availed" themselves of

13   rights conferred under the January 17, 2025 extension had justified "expectations above the level of

14   hope" that the status and rights that extension conferred would not be rescinded. *CRVQ v. USCIS*,

15   2020 WL 8994098, at \*7 (C.D. Cal. Sept. 24, 2020) (applying rule against retroactive application as

16   to employment authorization); *see also Montoya v. Holder*, 744 F.3d 614, 616 (2014) ("Whether a

17   right has 'vested' is therefore primarily determined by an individual's actions—the inquiry looks to

18   whether a person has 'availed' himself of the right, or 'took action that enhanced [its] significance to

19   him in particular.'") (citations omitted, emphasis in original omitted). Here, while the Secretary

20   purported to take some steps to ameliorate the harms at issue, 90 Fed. Reg. at 8807, her actions

21   nonetheless resulted in the dramatic impairment of the vested rights of those who sought benefits

22   under the January 17, 2025 extension.

23          Plaintiffs are likely to succeed on these claims, and the Court should therefore issue an Order

24   preserving the rights conferred by the January 17, 2025 extension to prevent irreparable harm to

25   those who availed themselves of those rights. Indeed, this aspect of the challenged decisions gives

26   rise to a separate and independent ground to find them unlawful, apart from those already recognized

27   by this Court. Furthermore, the relief sought by this Motion falls within the scope of the FAC. *See*

28

1  FAC Prayer for Relief at 70 (requesting "any other and further relief that this Court may deem fit

2  and proper").

3  **II.    VENEZUELAN TPS HOLDERS WHO RECEIVED TPS DOCUMENTATION**
   **PURSUANT TO THE JANUARY 17 EXTENSION FACE UNIQUE IRREPARABLE**
4  **HARM, AND THE BALANCE OF EQUITIES AND PUBLIC INTEREST WEIGH**
   **EVEN MORE HEAVILY IN THEIR FAVOR.**
5
        The remaining factors courts must consider in a stay request under Section 705 "substantially
6
   overlap with the [*Winter*] factors for a preliminary injunction," Dkt. 93 at 30–31 (quoting *Immigrant*
7
   *Legal Res. Ctr. v. Wolf*, 491 F. Supp. 3d 520, 529 (N.D. Cal. 2020)), and warrant relief under Section
8
   705 here. Plaintiffs presented substantial evidence that every Venezuelan TPS holder faces
9
   irreparable injury from Defendants' actions. While the Supreme Court obviously did not find that
10
   Plaintiffs' showing warranted a Section 705 postponement for all TPS holders, it left to this Court to
11
   decide whether at least the subset of individual who had already received TPS-related documents
12
   pursuant to the January 17 extension should receive interim relief. 8 U.S.C. § 1254a(d)(3).
13
        For this subset of TPS holders, the irreparable harm from allowing the challenged decisions
14
   to take effect weighs particularly heavily because it would violate fundamental reliance interests.
15
   Notably, five years ago the Supreme Court reversed the Secretary's decision to end the DACA
16
   program in substantial part due to a failure to account for reliance interests. *Regents*, 591 U.S. at
17
   30–31. Moreover, as noted above, individuals who received documents from the federal government
18
   extending their right to live and work in this country until a particular date have a "vested right" in
19
   such benefits, not least because they took affirmative steps to apply for those benefits and paid the
20
   corresponding fees. *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006). On the other side of the
21
   ledger, the Supreme Court at least suggested that the government's interest should not foreclose
22
   these individuals from seeking interim relief. *Cf. California v. HHS,* 281 F. Supp. 3d 806, 831–32
23
   (N.D. Cal. 2017) (finding "the public interest favors the granting of a preliminary injunction"
24
   because the "public interest is served when administrative agencies comply with their obligations
25
   under the APA") (quoting *N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 21 (D.D.C.
26
   2009)).
27

28

## CONCLUSION

The Supreme Court left it to this Court to decide whether to grant interim relief to the subset of the Venezuelan TPS holders it mentioned in the second paragraph of its stay ruling. For the reasons stated above, Plaintiffs respectfully request that the Court issue an order preserving the status and rights conferred by TPS-related documentation already issued pursuant to the January 17, 2025 extension.

Date: May 21, 2025                    Respectfully submitted,

                                      ACLU FOUNDATION
                                      OF NORTHERN CALIFORNIA

                                      _/s/ Emilou MacLean_____
                                      Emilou MacLean

                                      Michelle (Minju) Y. Cho
                                      Amanda Young
                                      ACLU FOUNDATION
                                      OF NORTHERN CALIFORNIA

                                      Ahilan T. Arulanantham
                                      CENTER FOR IMMIGRATION LAW AND
                                      POLICY, UCLA SCHOOL OF LAW

                                      Eva L. Bitran
                                      Diana Sanchez
                                      ACLU FOUNDATION
                                      OF SOUTHERN CALIFORNIA

                                      Jessica Karp Bansal
                                      Lauren Michel Wilfong (*Pro Hac Vice*)
                                      NATIONAL DAY LABORER ORGANIZING
                                      NETWORK

                                      Erik Crew (*Pro Hac Vice*)
                                      HAITIAN BRIDGE ALLIANCE

                                      Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

*/s/ Emilou MacLean*
Emilou MacLean