Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Amanda Young (SBN 359753)
ayoung@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, MARIELA GONZÁLEZ, FREDDY JOSE ARAPE RIVAS, M.H., CECILIA DANIELA GONZÁLEZ HERRERA, ALBA CECILIA PURICA HERNÁNDEZ, E.R., HENDRINA VIVAS CASTILLO, A.C.A., SHERIKA BLANC, VILES DORSAINVIL, and G.S.,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,<br><br>　　　　　Defendants. | Case No. 3:25-cv-01766-EMC<br><br>**PLAINTIFFS' NOTICE OF DEFENDANTS' NON-COMPLIANCE WITH DISCOVERY ORDER AND REQUEST FOR EMERGENCY RELIEF (DKT. 135)** |

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitran (SBN 302081)
ebitran@aclusocal.org
Diana Sanchez (SBN 338871)
dianasanchez@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, 1H
San Diego, CA 92120
Telephone: (949) 603-7411

Once again, Plaintiffs alert the Court to a troubling development that warrants immediate action, but which Plaintiffs are not in a position to brief in full as they only recently learned that Defendants violated the discovery order despite the Court's warning of the "risk [of] being held in contempt[.]" Dkt. 143. Time is running out, and Defendants cannot provide adequate or prompt assurances about compliance with the discovery order. Plaintiffs thus seek emergency relief, including to adjust the summary judgment briefing schedule to account for Defendants' admitted noncompliance with the discovery order. Plaintiffs are entitled to the limited discovery authorized by the Court in advance of moving for summary judgment. Defendants have offered to adjust the briefing schedule on summary judgment, waive their reply on summary judgment, and complete a review of 159 documents by May 27, but they otherwise oppose the relief Plaintiffs seek.

## BACKGROUND

**A.     Defendants Announced an Intent to Violate the Court's Discovery Order.**

On May 19, 2025, Plaintiffs alerted the Court about a footnote in Defendants' motion for leave for reconsideration. In disregard of a May 19 deadline, Defendants had planned to "hold the materials responsive to RFPs 1-2 and 6 until the Court rule[d] on" their motion for reconsideration. Dkt. 142 (quoting Dkt. 141-2 at 4 n.1). Upon being alerted, the Court advised the parties that, "[t]o be clear, the Court's discovery order requiring production today still stands. Defendants are expected to comply with that order unless and until the Court rules otherwise." Dkt. 143. Following the Court's order, Plaintiffs asked, and Defendants confirmed in writing, that "Yes, we did see the Court's order from this evening and we will be sending the discovery responses to RFP 1-2 and 6 shortly, along with accompanying privilege logs." *See* **Ex. A** (email exchange between counsel for the parties on evening of May 19). Yesterday, Plaintiffs learned that Defendants' assurance about compliance with the discovery order was inaccurate. *See id.* (email admitting on May 22 that 159 potentially responsive documents were not reviewed). The problem, however, goes far beyond a purported technical oversight about 159 potentially responsive documents. The discovery order required Defendants to collect and produce responsive communications for 20 custodians,[1] and there

---

[1] The discovery order identified custodians by name and category. Dkt. 135. Defendants have represented that, accounting for the categories, the total number of custodians is 20.

is no reason to believe that has occurred. *See id.* (May 23 email from defense counsel explaining that Defendants still were considering Plaintiffs' requests for adequate assurances as to compliance and about timely completing productions).

### B. The Gaps In Defendants' Production Defy Any Credible Explanation.

Since receiving documents Monday evening, Plaintiffs have diligently sought, without success, to obtain answers from defense counsel to basic questions about glaring holes in Defendants' productions.[2] The Court ordered the production of communications related to the challenged decisions (RFP Nos. 1–2) and documents provided to, reviewed by, or considered by the DHS Secretary that had not yet been produced (RFP No. 6). Dkt. 135. With a May 27 summary judgment deadline looming, Plaintiffs could not afford to continue to wait for adequate assurances. Even if Defendants could establish that the 159 documents were withheld due to a technical oversight, there is no plausible explanation for how Monday's production complies with the Court's discovery order.

- **Zero documents for numerous custodians**: Defendants have not produced or logged a single document for 7 of the 20 custodians. *See* **Ex. E** (table listing number of items logged or produced for each custodian). The missing custodians include two key individuals who signed DHS Clearance Records for one or more of the challenged actions: (1) Secretary Noem; and (2) Corey Lewandowski, DHS Chief Advisor (signed DHS Clearance Record for Haiti decision and possibly the Venezuela termination decision). *See* Dkt. 132-1 (describing roles and responsibilities of these custodians). Among the missing custodians also are four individuals Defendants identified as authors of either an OP&S Decision Memo or RAIO country conditions report: (1) Amany Ezeldin, (2) Emma Krichinsky (3) Tom Perkowski, and (4) Jessica Robles. *See* Dkt. 135 at 2–3 (requiring that the "government simply include in its search the person(s) at RAIO who authored the country conditions reports for Venezuela and Haiti and the person(s) at OP&S who authored the Decision Memos for Venezuela and Haiti"). Following yesterday's identification of 159 potentially responsive documents that had not been reviewed, Defendants represented that the missing 159

---

[2] Plaintiffs are not in any way accusing (and do not intend to suggest) that counsel of record for Defendants have engaged in discovery misconduct. Rather, Defendants themselves appear to have taken matters into their own hands by withholding or delaying disclosure.

documents resulted from searches of the OP&S and RAIO custodians, and that the alleged inadvertent oversight was discovered only after Plaintiffs flagged manifest gaps in Defendants' production.

Given record evidence confirming that the above custodians played critical roles in approving the challenged actions (**Exs. B–D** (DHS clearance records for three challenged agency actions)), it is not credible that Secretary Noem and Corey Lewandowski would not be custodians of a single piece of paper, email, or instant/text message. To take just one example, Corey Lewandowski wrote on a document in the Administrative Record that he "cleared" the Haiti partial vacatur by email, yet there are no emails or other documents produced or logged for which he was the custodian. **Ex. D**. Defense counsel cannot explain the discrepancy, and there is no plausible explanation, other than that Defendants (a) did not gather documents for all of the custodians, (b) did not apply the court-ordered search terms, (c) are withholding responsive materials, (d) have failed to log withheld documents, or (e) have engaged in some combination of the foregoing. See **Ex. E** (summary chart of custodians in privilege log and produced documents).

- **Inexplicably Paltry Productions**: The production borders on farce. These were momentous, marquee decisions by a new administration. Their purpose and intent was to impact the lives of over 1.1 million people. Yet there were hardly any materials produced from the current administration about the challenged decisions. Overall, Defendants produced only 77 documents on Monday. Many were iterations of just four documents related to the now-vacated decisions by the previous administration: 13 copies of a September 24, 2024 letter from Secretary of State Blinken recommending extension of TPS for Venezuela; 8 copies of a January 10, 2025 one-page Decision Document; 6 copies of a January 17, 2025 Federal Register Notice extending TPS for Venezuela; and 8 copies of an August 2024 USCIS country conditions report on Venezuela.

Plaintiffs have received roughly 25 emails. ***That boils down to an average of roughly 1.25 emails produced per custodian.*** Even accounting for roughly 250 emails on privilege logs (which suffer from their own deficiencies), this would mean that the 20 custodians averaged less than one email per day between January 20 and February 24, 2025 while working on three separate momentous decisions to vacate and terminate TPS for Venezuela and Haiti. In addition, and making

3

matters worse, nearly all of the emails produced lack substantive content; most merely circulate attachments; and attachments often have been withheld in full or heavily redacted.

Equally doubtful, Monday's production contains just *seven* documents that even refer to "Haiti." Those documents disclose effectively nothing about the Haiti decisionmaking process. They consist of (1) a Congressional Research Service 2023 report on TPS-related litigation developments (NTPSA 246), (2) an email apparently circulating the Haiti TPS Partial Vacatur (NTPSA 465), (3) a USCIS Immigrant Benefit Tracking document (NTPSA 499), and (4) four heavily redacted emails about the same limited "Haiti stats" (NTPSA 473, 476, 477, and 509). Defendants cannot seriously contend this reflects the universe of non-privileged responsive documents within the possession, custody, and control of 20 custodians concerning the Haiti TPS decision – affecting 500,000 people. Even Defendants' privilege logs contain only 54 entries (43 of which are emails) that appear to relate to Haiti. Especially in a setting where Defendants insist this decision was the product of deliberation, not pretext or racist animus, this would be an impossibly small number of emails, particularly across 20 custodians who needed (among other things) to analyze options, make and adopt recommendations, draft decision documents, and prepare a Federal Register Notice.

- **Absence of text and instant messages**: Despite the ESI protocol (Dkt. 125 § 5.3.d), and basic discovery obligations, the productions do not contain a *single* text or instant message. *See, e.g.*, *In re Google Play Store Antitrust Litig*, 664 F. Supp. 3d 981, 982–83 (N.D. Cal. 2023) (sanctioning defendant who was "no stranger[] to document production and discovery obligations" due to frequent involvement in litigation for failure to preserve after plaintiff identified "curious lack of [instant] messages in [the] document productions"); *RG Abrams Ins. v. Law Offices of C.R. Abrams*, 342 F.R.D. 461, 505–06 (C.D. Cal. 2022) (imposing sanctions for failing to preserve and produce text messages in response to discovery requests). Given modern communication practices, and the number of custodians, this cannot be explained except that Defendants apparently never collected such materials for review. As of this filing, Defense counsel still has not been able to confirm for Plaintiffs whether custodians were asked (a) for their methods of communication, (b) for any instances when they communicated using personal email addresses or phones, (c) for

their paper records, or (d) to search their computers. *See* **Ex. A** (May 23 email). And these are just highlights of some of the blatant deficiencies in Monday's production. *See also id.* (May 21 email summarizing examples of manifest deficiencies).

### C. Efforts to Resolve These Issues Without Court Intervention.

Defendants have offered to complete the review of the 159 documents by May 27, and to stipulate to extend the deadline for Plaintiffs to move for summary judgment to June 3, shortening the time for their opposition, and leaving the deadline for Plaintiffs' reply and hearing the same. *See* **Ex. A** (May 22–23 emails). But this gets nowhere near enough to curing the prejudice. It takes mere hours, not days, to review 159 documents for responsiveness. Moreover, the problem is that Defendants, not defense counsel, have been managing the discovery process. *See supra* n.2. Plaintiffs cannot rely on representations by defense counsel when they have not been personally responsible for the collection or review of the documents. And, despite Plaintiffs' request, Defendants will not provide a sworn declaration from a person with personal knowledge who will confirm that (a) paper, computer, email (including personal emails to the extent used for official business), and instant/text messages were gathered for all 20 custodians, (b) the search terms were applied to all such materials, and (c) all responsive materials have been produced or logged. **Ex. A** (May 23 email).

### RELIEF REQUESTED

Despite the Court's warning of the "risk [of] being held in contempt," Dkt. 143, Defendants did not comply with the Court's discovery order and the extent of the non-compliance appears to extend beyond the 159 documents allegedly missed due to inadvertence. On its face, Defendants' production is grossly deficient, including because it does not include all emails and electronic documents, or any instant/text messages, as well as zero documents for the key decisionmaker (Secretary Noem) and one of her chief advisors. Due to the compressed schedule, however, Plaintiffs currently seek only narrowly tailored relief:

(1) production of all responsive paper documents, emails (official or non-official), and instant/text messages that "hit" the search terms by May 28 or a privilege log explaining why documents that "hit" the search terms are being withheld, including a review and production or

logging by May 27 of the 159 documents already identified and not yet reviewed;

(2) written responses to RFP Nos. 1, 2, and 6 signed by counsel or a party by May 28, confirming that all responsive paper documents, emails (official or non-official), and instant/text messages that "hit" the search terms have been produced or logged;

(3) a declaration by May 28 executed under penalty of perjury by a person with personal knowledge confirming (a) custodians were asked about the locations where they may have responsive documents, including if they used any non-official means of communication (such as personal email addresses or messaging applications that are not stored on government servers), (b) paper documents, emails (official or non-official), and instant/text messages were gathered for all 20 custodians, (c) the court-ordered search terms were applied to all of the documents gathered for the 20 custodians, (d) the total number of resulting "hits" per custodian, and (e) all "hits" have been produced or logged; and

(4) an adjustment of the summary judgment schedule consistent with a proposal by Defendants, namely that Plaintiffs' Motion for Summary Judgment be due June 3, Defendants' Opposition and Cross-Motion due June 17, Plaintiffs' Reply and Opposition due June 27, and Defendants are deemed to have waived their Reply in Support of their Motion for Summary Judgment. *See* **Ex. A** (May 22–23 emails).

Such relief has become necessary to ensure that Defendants will comply with the Court's order and to prevent further prejudice to Plaintiffs, imperiling an already compressed schedule for summary judgment. To be sure, the Court would be free to sanction Defendants at this stage, but Plaintiffs are more interested in securing critical evidence sufficiently in advance of the briefing on summary judgment. Fed. R. Civ. P. 37(b)(2)(A) (authorizing sanctions "[i]f a party or a party's officer, director, or managing agent ... fails to obey an order to provide or permit discovery ... the court where the action is pending may issue further just orders."); *Wanderer v. Johnston*, 910 F.2d 652, 657 (9th Cir. 1990) (explaining sanctions appropriate where a party is guilty of failing to produce documents or things as ordered by the court). Defendants should not be heard to object to the need to produce all documents that "hit" on the court-ordered search terms—subject only to

privilege assertions[3]—because the search terms on their face ensure that all such documents are responsive to the limited discovery authorized by the Court.

Date: May 23, 2025                                     Respectfully submitted,

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

 /s/ *Emilou MacLean*
Emilou MacLean
Michelle (Minju) Y. Cho
Amanda Young

Ahilan T. Arulanantham
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW

Eva L. Bitran
Diana Sanchez
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA

Jessica Karp Bansal
Lauren Michel Wilfong (*Pro Hac Vice*)
NATIONAL DAY LABORER
ORGANIZING NETWORK

Erik Crew (*Pro Hac Vice*)
HAITIAN BRIDGE ALLIANCE

*Attorneys for Plaintiffs*

---

[3] Plaintiffs will separately submit a brief to explain why the Court should overrule Defendants' deliberative process privilege objections as inapplicable and unsubstantiated.

**CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

/s/ *Emilou MacLean*
Emilou MacLean