Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Amanda Young (SBN 359753)
ayoung@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, MARIELA GONZÁLEZ, FREDDY JOSE ARAPE RIVAS, M.H., CECILIA DANIELA GONZÁLEZ HERRERA, ALBA CECILIA PURICA HERNÁNDEZ, E.R., HENDRINA VIVAS CASTILLO, A.C.A., SHERIKA BLANC, VILES DORSAINVIL, and G.S., | Case No. 3:25-cv-01766-EMC |
| | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (DKT. 122)** |
| Plaintiffs, | |
| | Date: July 11, 2025 |
| vs. | Time: 9:00 a.m. |
| | Dept.: Courtroom 5, 17th Floor |
| KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA, | Judge: Hon. Edward M. Chen |
| Defendants. | |

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitran (SBN 302081)
ebitran@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, 1H
San Diego, CA 92120
Telephone: (949) 603-7411

1

TABLE OF CONTENTS

2  INTRODUCTION ................................................................................................................. 1

3  BACKGROUND .................................................................................................................. 2

4  STANDARD OF REVIEW ................................................................................................... 3

5  ARGUMENT ....................................................................................................................... 4

6  I.  This Court Has Jurisdiction  Over All of Plaintiffs' Claims ........................................ 4

7  A.  Plaintiffs Have Standing to Challenge the Partial Vacatur of Haiti's TPS
       Extension and Redesignation, and Their Claims Are Ripe .............................. 4
8
9  B.  The TPS Statute Does Not Bar Review of Plaintiffs' Claims ......................... 6

   C.  The APA Does Not Bar Review of Plaintiffs' Claims .................................... 7
10
   D.  Section 1252(f) Does Not Preclude Relief ...................................................... 8
11
12 II.  Plaintiffs Adequately Alleged that the Challenged Decisions Violate the APA .......... 9

13 A.  Plaintiffs Adequately Allege that the Venezuela Vacatur Violated the APA
       (First Claim) .................................................................................................... 9
14
   1.  The Secretary Lacked Authority to Vacate Venezuela's Extension ..... 9
15
   2.  The Venezuela Vacatur was Arbitrary and Capricious .................... 11
16
   B.  Plaintiffs Adequately Allege that the Termination of Venezuela's 2023 TPS
17     Designation Violated the APA (Second Claim) ............................................ 12

18 1.  The Termination Did Not Observe Procedure Required by Law ....... 12

19 2.  The Termination was Contrary to Law ............................................. 13

20 C.  Plaintiffs Adequately Allege that the Partial Vacatur of Haiti's TPS Extension
       and Redesignation Violated the APA (Third Claim) ..................................... 15
21
   1.  The Secretary Lacked Authority to Partially Vacate Haiti's Extension
22     and Redesignation ............................................................................. 15

23 2.  The Partial Vacatur of Haiti's Extension and Redesignation Failed to
       Observe Procedure Required by Law and Was Pretextual and Contrary
24     to Law ............................................................................................... 16

25 III.  Plaintiffs Adequately Alleged that the Challenged Decisions were Unconstitutionally
       Motivated by Animus (Fourth Claim) ...................................................................... 21

26 CONCLUSION .................................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*389 Orange St. Partners v. Arnold*,
  179 F.3d 656 (9th Cir. 1999) ...................................................................................................3

*Am. Methyl v. EPA*,
  749 F.2d 826 (D.C. Cir. 1984) ...............................................................................................18

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
  570 U.S. 1 (2013) .......................................................................................................................4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................................................3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................................................3

*Calif. Wilderness Coal. v. Dep't of Energy*,
  631 F.3d 1072 (9th Cir. 2011) ................................................................................................14

*China Unicom (Ams.) Ops. Ltd. v. FCC*,
  124 F.4th 1128 (9th Cir. 2024) ...............................................................................................11

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019)................................................................................................9, 13, 19, 21

*DHS v. Regents of the Univ. of Cal.*,
  591 U.S. 1 (2020)................................................................................................................23, 25

*Ecological Rts. Found. v. Pac. Lumber Co.*,
  230 F.3d 1141 (9th Cir. 2000) ..................................................................................................6

*Galvez v. Jaddou*,
  52 F.4th 821 (9th Cir. 2022) .....................................................................................................9

*Gonzalez v. Arizona*,
  624 F.3d 1162 (9th Cir. 2010) ..................................................................................................4

*Guerrero-Lasprilla v. Barr*,
  601 U.S. 209 (2024)....................................................................................................................8

*Hernandez v. USCIS*,
  No. C22-904 MJP, 2023 WL 7386573 (W.D. Wash. Nov. 7, 2023)......................................20

*Ingle v. Cir. City*,
  408 F.3d 592 (9th Cir. 2005) .....................................................................................................4

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ................................................3

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) ................................................3

*Lone Star Sec. & Video, Inc. v. City of Los Angeles*,
    989 F. Supp. 2d 981 (C.D. Cal. 2013), *aff'd*, 827 F.3d 1192 (9th Cir. 2016)...........................4

*Maraziti v. Thorpe*,
    52 F.3d 252 (9th Cir. 1995) ................................................3

*Mazaleski v. Treusdell*,
    562 F.2d 701 (D.C. Cir. 1977) ................................................18

*Nat'l TPS All. v. Noem*,
    No. 25-2120 (9th Cir. Apr. 11, 2025), Dkt No. 11.1 ................................................20, 22

*Ramos v. Nielsen*,
    321 F. Supp. 3d 1083 (N.D. Cal. 2018) ................................................7

*Ramos v. Nielsen*,
    336 F. Supp. 3d 1075 (N.D. Cal. 2018) ................................................14

*Ramos v. Nielsen*,
    709 F. Supp. 3d 871 (N.D. Cal. 2023) ................................................2, 23

*Ramos v. Wolf*,
    975 F.3d 872 (9th Cir. 2020) ................................................23

*Serrato v. Clark*,
    486 F.3d 360 (9th Cir. 2007) ................................................6

*Trump v. Hawaii*,
    585 U.S. 667 (2018)................................................23, 24

*United States v. Suquilanda*,
    116 F.4th 129 (2nd Cir. 2024) ................................................23

*Utah Animal Rts. Coal. v. Salt Lake City Corp.*,
    371 F.3d 1248 (10th Cir. 2004) ................................................5

*Washington v. DHS*,
    598 F.Supp.3d 1051 (E.D. Wash. 2020) ................................................23

**Statutes**

5 U.S.C. § 701(a)(2)................................................7

5 U.S.C. § 705................................................2, 8

5 U.S.C. § 706 ...................................................................................................................2, 8

5 U.S.C. § 706(2) ...................................................................................................................11

5 U.S.C. § 706(2)(D) ..............................................................................................................18

8 U.S.C. § 1103(a) ..................................................................................................................11

8 U.S.C. § 1252(f)(1) .......................................................................................................8, 9, 10

8 U.S.C. § 1254a(b)(1)(C) ......................................................................................................16

8 U.S.C. § 1254a(b)(3)(A) ...................................................................................13, 14, 17, 18

8 U.S.C. § 1254a(b)(3)(B) ................................................................................................16, 17

8 U.S.C. § 1254a(b)(3)(C) ................................................................................................18, 22

8 U.S.C. § 1254a(b)(5)(A) ........................................................................................................7

8 U.S.C. § 1254a(d)(3) .....................................................................................................12, 18

8 U.S.C. § 1326 .......................................................................................................................23

**Other Authorities**

8 C.F.R. § 244.12(a)-(c) ..........................................................................................................12

101 Cong. Rec. H25811 (daily ed. Oct. 25, 1989) (statement of Rep. Sander Levine)
    (debating Central American Studies and Temporary Relief Act of 1989,
    immediate precursor to the TPS statute) .......................................................................16, 17

65 Fed. Reg. 33356 (May 23, 2000) ................................................................................13, 19

81 Fed. Reg. 66059 (Sept. 16, 2016) ..............................................................................13, 19

88 Fed. Reg. 5022 (Jan. 26, 2023) ..........................................................................................17

89 Fed. Reg. 54484 (Jul. 1, 2024) .......................................................................................2, 3

90 Fed. Reg. 10,513 (Feb. 24, 2025) ......................................................................................26

90 Fed. Reg. 5936 (Jan. 17, 2025) ..........................................................................................20

90 Fed. Reg. 8805 (Feb. 3, 2025) ...........................................................................12, 13, 14, 19

90 Fed. Reg. 9040 (Feb. 5, 2025) ......................................................................................14, 15

90 Fed. Reg. 10511 (Feb. 24, 2025) .........................................................................5, 18, 19, 20

Fed. R. Civ. P. 8(a)(2) .............................................................................................................3

Fed. R. Civ. P. 12(b)(1)............................................................................................3

Fed. R. Civ. P. 12(b)(6)............................................................................................3

GAO, *Temporary Protected Status: Steps Taken to Inform and Communicate
    Secretary of Homeland Security's Decisions* 20-21 (Apr. 2020), *available at*
    https://www.gao.gov/products/gao-20-134...............................................................14

H.R. Rep. No. 104-469, pt. 1 ...................................................................................9

Jill E. Family, *Another Limit on Federal Court Jurisdiction? Immigrant Access to
    Class-Wide Injunctive Relief*, 53 Clev. St. L. Rev. 11 (2005) ....................................9

Press Release, DHS, Secretary Noem Rescinds Previous Administration's Extension
    of Haiti's TPS (Feb. 20, 2025), https://www.dhs.gov/news/2025/02/20/secretary-
    noem-rescinds-extension-haitis-temporary-protected-status .....................................21

1

**INTRODUCTION**

2       This Court already rejected nearly every argument in Defendants' motion to dismiss in its

3   detailed order granting Plaintiffs' motion to postpone and subsequent rulings. As the Court made

4   clear in those orders, the reduction of a fixed period of legal status and work authorization is injury

5   sufficient to establish standing; neither the TPS statute nor Section 1252(f) bars Plaintiffs' claims or

6   requested relief; the Secretary of Homeland Security lacks authority to vacate a TPS extension; even

7   if the Secretary had vacatur authority, the vacatur of TPS for Venezuela was arbitrary and

8   capricious; and "significant evidence" establishes that the decisions to vacate, partially vacate, or

9   terminate TPS for Venezuela and Haiti were discriminatory. Dkt. 129 at 4-5. *See generally* Dkt. 93;

10  Dkt. 102. These holdings are law of the case, and they suffice to reject Defendants' motion *in its*

11  *entirety*.

12      The few new arguments Defendants raise are meritless. Defendants argue the APA would

13  preclude this Court from reviewing a claim that the Secretary abused her discretion in assessing the

14  national interest, but Plaintiffs make no such claim. Defendants also argue the Secretary's

15  termination of Venezuela's TPS designation and partial vacatur of Haiti's extension and

16  redesignation would have been lawful if the Secretary had vacatur authority, but she does not. And

17  even if she did, Plaintiffs have adequately alleged that both the Venezuela termination and the Haiti

18  partial vacatur were contrary to law because, under the plain text of the TPS statute, national interest

19  is a permissible consideration only when making an *initial* designation, not when conducting a

20  periodic review. Plaintiffs have also adequately alleged that both decisions violate the APA because

21  Secretary Noem failed to observe statutorily required procedures, and that the Haiti partial vacatur

22  violates the APA because it was pretextual and based on the Secretary's legally erroneous belief that

23  there is a six-month default period for extension decisions.

24      The Supreme Court's order granting a stay of this Court's postponement order does not

25  change this analysis. The stay order provides no reasoning and has no precedential effect. Further,

26  the Supreme Court's suggestion that a subset of TPS holders affected by the Venezuela vacatur may

27  warrant preliminary relief indicates that it did not credit Defendants' jurisdictional arguments.

28  Rather, it appears the Supreme Court may have instead credited Defendants' arguments with respect

to the proper scope of preliminary relief under 5 U.S.C. § 705—concerns which do not affect Plaintiffs' ability to obtain final relief under 5 U.S.C. § 706. *See* Dkt. 144 (motion for interim relief after Supreme Court's order). Accordingly, this ourt should deny Defendants' motion.

## BACKGROUND

This Court laid out the relevant background regarding the Venezuela vacatur and termination in its order granting Plaintiffs' motion to postpone. Dkt. 93 at 3-13. In addition to challenging the Venezuela decisions that were the subject of the postponement motion, Plaintiffs' First Amended Complaint also challenges the Secretary's decision to "partially vacate" the July 1, 2024, extension and redesignation of Haiti for TPS.

Haiti was first designated for TPS in 2010 based on "extraordinary and temporary conditions" that prevent its nationals "from returning … in safety." FAC ¶ 82. Haiti was redesignated and extended for TPS again in 2011; and subsequently extended for TPS in 2012, 2014, and 2015. FAC ¶¶ 82, 83.

Under the first Trump Administration, Acting Secretary Elaine Duke terminated TPS for Haiti. FAC ¶ 84. However, the termination never took effect due to legal challenges. *Ramos v. Nielsen*, 709 F. Supp. 3d 871, 877-79 (N.D. Cal. 2023). On August 3, 2021, in the wake of the assassination of Haitian President Jovenel Moïse, Secretary Mayorkas newly designated Haiti for TPS for an eighteen-month period on the basis of extraordinary and temporary conditions. FAC ¶ 88. On January 26, 2023, and again on July 1, 2024, Secretary Mayorkas both extended and redesignated TPS for Haiti. FAC ¶¶ 89-90. The July 2024 extension was due to "remain in effect for 18 months, ending on February 3, 2026." 89 Fed. Reg. 54484, 54485 (Jul. 1, 2024).

Less than one month after Secretary Noem's confirmation, she partially vacated the July 2024 TPS extension and redesignation for Haiti, reducing the period of protection from eighteen to twelve months and setting it to expire on August 3, 2025, instead of February 3, 2026. FAC ¶¶ 92-95. In the press release announcing her decision, DHS expressed that it was "part of President Trump's promise to rescind policies that were magnets for illegal immigration and inconsistent with the law." FAC ¶ 92. The release asserted that "[f]or decades the TPS system has been exploited and abused" and claimed that, though the extension predated the new administration by seven months,

1    "Biden and Mayorkas attempted to tie the hands of the Trump administration by extending Haiti's

2    Temporary Protected Status by 18 months." *Id.*

3         As justification for the partial vacatur Secretary Noem cited (1) that the 2024 extension did

4    not specify why an eighteen-month period was selected for extension, as opposed to a six- or twelve-

5    month period; (2) that Secretary Mayorkas did not provide enough detail as to why TPS for Haitians

6    was not "contrary to the national interest"; and (3) that the extension cited statistics from 2022-23, in

7    addition to earlier years, alongside more proximate country conditions information. FAC ¶ 96.

8                                    **STANDARD OF REVIEW**

9         A motion to dismiss under Rule 12(b)(1) tests the subject matter jurisdiction of the court,

10    while a motion under Rule 12(b)(6) tests the legal sufficiency of a claim. *See* Fed. R. Civ. P.

11    12(b)(1), (6). Under both rules, courts must accept the plaintiff's allegations as true and draw all

12    reasonable inferences in the plaintiff's favor. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir.

13    2014); *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).[1] The rules require only a "short and

14    plain statement of the claim" at the pleading stage; dismissal is improper if the plaintiff alleges

15    enough facts to make the claim plausible on its face. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v.*

16    *Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual

17    content that allows the court to draw the reasonable inference that the defendant is liable for the

18    misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

19         A motion to dismiss is not a proper vehicle for rearguing issues the court has previously

20    decided. Where a party seeks reconsideration, that request must satisfy the standard for motions for

21    reconsideration. Such motions should be granted only in "highly unusual circumstances," such as

22    based on "newly discovered evidence," due to "clear error" by the court, or as a result of an

23    "intervening change in the controlling law." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665

24    (9th Cir. 1999); *see also Maraziti v. Thorpe*, 52 F.3d 252, 255 (9th Cir. 1995). Otherwise, the "law

25    of the case" doctrine generally precludes a court from reconsidering an issue it has already decided.

26    *Ingle v. Cir. City*, 408 F.3d 592, 594 (9th Cir. 2005). Courts have applied this doctrine to uphold

27

28    _____

[1] Defendants raise a "facial" rather than "factual" attack under Rule 12(b)(1). *See Leite*, 749 F.3d at 1121-22.

1    prior decisions based on pure issues of law, even those made in the interim relief context. *See Lone*

2    *Star Sec. & Video, Inc. v. City of Los Angeles*, 989 F. Supp. 2d 981, 989 (C.D. Cal. 2013), *aff'd*, 827

3    F.3d 1192 (9th Cir. 2016); *Gonzalez v. Arizona*, 624 F.3d 1162, 1186 (9th Cir. 2010), *on reh'g en*

4    *banc*, 677 F.3d 383 (9th Cir. 2012), *aff'd sub nom. Arizona v. Inter Tribal Council of Ariz., Inc.*, 570

5    U.S. 1 (2013).

6                                          **ARGUMENT**

7    **I.      This Court Has Jurisdiction Over All of Plaintiffs' Claims**

8            Defendants' assertion that Plaintiffs lack standing to challenge the partial vacatur of TPS for

9    Haiti is unavailing. The challenged agency action has caused actual harm, and increased the risk of

10    future harm, either of which suffices to confer standing. Every other jurisdictional argument

11    Defendants raise is foreclosed by this Court's prior decision granting Plaintiffs' motion to postpone.

12    Dkt. 93 at 14-30.

13
       **A.    Plaintiffs Have Standing to Challenge the Partial Vacatur of Haiti's TPS Extension**
14           **and Redesignation, and Their Claims Are Ripe**

15           Defendants assert Plaintiffs lack standing to challenge "a future termination of Haiti's TPS

16    designation" because it "has yet to occur." Mot. 9. This Court already implicitly rejected this

17    argument in granting relief to the beneficiaries of the 2021 TPS designation for Venezuela.

18    Defendants' vacatur of the January 2025 TPS extension for Venezuela meant that 250,000

19    Venezuelan TPS holders in the 2021 cohort will have their TPS status subject to review by

20    September 2025, rather than October 2026. While the Secretary has not yet made a decision about

21    whether these Venezuelan TPS holders will lose their status in September 2025, the fact that they

22    have lost 13 months of legal status previously granted under the January extension (as this Court

23    recognized, Dkt. 93 at 6, 13) sufficed for this Court to treat their claims as ripe. *See id.* at 34-36

24    (describing harms to Venezuelan TPS holders protected by both the 2021 and 2023 designations); *id.*

25    at 1 (describing Secretary's vacatur as "taken against over 600,000 Venezuelan" TPS holders).

26    Defendants never explain how this Court's decision that the 2021 cohort of Venezuelan TPS holders

27    have suffered an injury comports with their theory.

28           In any event, Plaintiffs do not challenge "a future termination" as to Haiti. Mot. 9. Plaintiffs

                                                    4

1    challenge the Secretary's February 24, 2025, partial vacatur. The partial vacatur moved up the

2    expiration of Plaintiffs' lawful status and work authorization by six months—causing immediate,

3    actual injury. The partial vacatur also exposes Plaintiffs to the risk of losing TPS as soon as August

4    3, 2025, six months earlier than would have been possible under the July 1, 2024, decision—creating

5    an imminent risk of increased harm. Both this immediate injury and this increased risk of future

6    harm are sufficient to confer standing and render ripe for decision Plaintiffs' challenge to the Haiti

7    partial vacatur.

8            As this Court has recognized, "[a]lthough ... TPS designations … are only temporary, they

9    still afford TPS holders with concrete, meaningful relief: for a *fixed time*, TPS holders have both the

10   right to work and the right to be free from removal, which give not only stability but also security in

11   their lives and time with their families …." Dkt. 93 at 37 (emphasis added). By reducing the "fixed

12   time" provided under the July 1, 2024, extension and redesignation for Haiti, the partial vacatur

13   inflicted a concrete injury sufficient to confer standing. *Cf. Utah Animal Rts. Coal. v. Salt Lake City*

14   *Corp.*, 371 F.3d 1248, 1256 (10th Cir. 2004) (holding that reduction of time available to plaintiff to

15   organize demonstrations was sufficient to establish standing). For example, NTPSA member Stanley

16   Louis, who has TPS under Haiti's 2023 designation, recently was unable to accept an airport security

17   position he interviewed for because the job required proof of employment authorization valid for at

18   least six months. FAC ¶ 179(e). Prior to the partial vacatur, Stanley could meet this requirement;

19   afterward, he could not. *See* 90 Fed. Reg. 10511 at 10514 (Feb. 24, 2025) (directing "[e]mployers"

20   to "update their records to note that" work permits with February 3, 2026 expiration dates are now

21   valid only "through August 3, 2025"). That concrete injury is unquestionably sufficient to confer

22   standing.

23           The partial vacatur also exposes Plaintiffs to the risk of losing lawful status and work

24   authorization as soon as August 3, 2025, a risk they would otherwise not have faced until six months

25   later. An "increased risk of harm can itself be injury in fact sufficient for standing." *Ecological Rts.*

26   *Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1151 (9th Cir. 2000) (finding "threatened environmental

27   injury" sufficient to confer standing). Similarly, exposing Plaintiffs to an opportunity to be

28   considered for loss of status constitutes cognizable injury, even without a guarantee that status will

be lost. *See Serrato v. Clark*, 486 F.3d 360, 566 (9th Cir. 2007) (holding that loss of opportunity to be considered for a program that could reduce incarceration constitutes an injury-in-fact, even without a guarantee of acceptance to the program). In the face of this unexpected and destabilizing risk, Plaintiff A.C.A. "has been experiencing severe anxiety and nightmares about being deported" and Plaintiff G.S., a trained medical doctor who works as a housing case manager, has been left feeling "hopeless and drained of motivation." FAC ¶¶ 187, 190. And even in the unlikely event that the Secretary issues the maximum permissible extension of TPS for Haiti at some point this summer, Haitian TPS holders would still have received six months less status than they would have received absent the vacatur they challenge here.

In any event, while Defendants assert that the risk that Haiti's TPS will be terminated in August is "mere[] speculat[ion]," Mot. 9, Plaintiffs have plausibly alleged that termination for Haiti is likely. *See* Dkt. 129 (noting that an extension of Haiti's TPS designation "seems unlikely in light of the Secretary's rationale for the partial vacatur"). Secretary Noem has reiterated her position that "[TPS] has been abused and manipulated," that TPS holders are "violat[ing] our laws," and that "extensions going forward" will not proceed as they had been. FAC ¶¶ 107, 108. President Trump has stated that he considers TPS unlawful and will revoke TPS for Haitian TPS holders: "You have to remove [Haitian TPS holders in Springfield]; you cannot destroy our country ... In my opinion, it's not legal. … Absolutely I would revoke [TPS]." FAC ¶ 112. *See also* ¶¶ 105-168.

## B. The TPS Statute Does Not Bar Review of Plaintiffs' Claims

Defendants argue that 8 U.S.C. § 1254a(b)(5)(A) bars review of Plaintiffs' claims, but their position is foreclosed by this Court's decision granting Plaintiffs' motion for postponement, Dkt. 93 at 23-28, as well as its prior decision in *Ramos v. Nielsen*, 321 F. Supp. 3d 1083 (N.D. Cal. 2018), to which this Court "adheres." Dkt. 93 at 24. To summarize, the word "determination" in Section 1254a(b)(5)(A) refers to the Secretary's conclusion that a nation satisfies certain country conditions requirements relevant to TPS decisionmaking. "Determination" does *not* refer to predicate legal judgments such as whether the agency has inherent authority to vacate prior extensions or whether the statute permits the Secretary to terminate TPS based on "national interest." Nor does "determination … under *this* subsection" in Section 1254a(b)(5)(A) refer to issues addressed in *other*

1    subsections, such as TPS registration processes—which are discussed in subsection (c) rather than

2    (b). This Court's legal conclusions as to jurisdiction are law of the case, and Defendants offer no

3    reason to depart from those well-considered rulings.[2]

4         Defendants again contend that this Court lacks jurisdiction to review even constitutional

5    claims. Mot. 9. The Court already rejected that argument as well. Dkt. 93 at 27-28. The statute

6    provides no evidence, much less "clear and convincing," of Congress's intent to bar constitutional

7    review. Defendants present no reason to reconsider this analysis here.

8    ### C.  The APA Does Not Bar Review of Plaintiffs' Claims

9         Defendants make a distinct jurisdictional argument that the Secretary's "national interest"

10   determination is not subject to review because it is "committed to agency discretion by law," under 5

11   U.S.C. § 701(a)(2). But Plaintiffs do not argue that the Secretary abused her discretion in assessing

12   the national interest. Rather, they contend she committed legal error in applying that criterion at all,

13   because the statute's plain text makes clear that the Secretary is only to assess "national interest" at

14   the time of initial designation. FAC ¶¶ 206(c), 210(h); *see infra* II.B.2. Similarly, as to her partial

15   vacatur of TPS for Haiti, she committed legal error in asserting that a Secretary is obliged to

16   specifically explain why an extension is not contrary to the national interest because the statute

17   imposes no such requirement. FAC ¶ 210(i). The APA's provision limiting review of discretionary

18   decisions does not bar claims that challenge the agency's failure to apply the proper statutory

19   criteria. If the Secretary granted a TPS extension for five years claiming that timeline was in the

20   national interest, courts would still have power to review whether that invocation of "national

21   interest" was consistent with the statute's requirements. So too here. *Cf. Guerrero-Lasprilla v. Barr*,

22   601 U.S. 209, 210 (2024) (finding legal questions reviewable notwithstanding jurisdiction-stripping

23

24   [2] To the extent that Defendants now argue the Venezuela termination order may stand separate from
     the vacatur order, Mot. 10, that argument is contrary to the position they took in the United States
25   Supreme Court. *See* Dkt. 114-2, Gov. Stay Appl. 18 n.12. It is also wrong. Absent the vacatur,
     Secretary Mayorkas's January 17 extension extends TPS for all Venezuelan beneficiaries until
26   October 2026. The termination has no legal effect unless coupled with the vacatur. Moreover, the
     Secretary's conclusion that she has authority to end an extension before its end-date is reviewable
27   regardless of whether the document in which it operates is labeled a vacatur or a termination,
     because it is a legal conclusion rather than a "determination … under [subsection (b)]."
28

provision barring review of discretionary determinations).

### D.  Section 1252(f) Does Not Preclude Relief

Defendants also repeat their argument that Plaintiff's claims are "jurisdictionally barred" under 8 U.S.C. § 1252(f)(1).  Mot. 13. That contention is foreclosed by this Court's detailed analysis and resolution of this question. Dkt. 93 at 15-22. As this Court has already explained, postponement relief under Section 705 and "vacatur" relief under Section 706 are not injunctive. The Court need go no further to reject Defendant's Motion to Dismiss.

To be clear, Plaintiffs do not agree with Defendants' assertion that Section 1252(f)(1)'s bar on injunctive relief necessarily extends to Section 1254a (the TPS statute). While Defendants are correct that Section 1254a came within Part IV of the Immigration and Nationality Act at the time IIRIRA was enacted in September 1996, the Ninth Circuit has instructed that courts should focus on whether the provisions at issue were "*amended by* the [IIRIRA] of 1996." *Galvez v. Jaddou*, 52 F.4th 821, 831 (9th Cir. 2022) (emphasis added in *Galvez*) (citing Section 1252(f)(1)). *Galvez* held that an injunction covering a provision of the Trafficking Victims Protection Act of 2008 (TVPRA) was not barred by Section 1252(f)(1) even though that provision of the TVPRA was "within Title 8, Chapter 12, Subchapter II of the United States Code," because it was enacted more than a decade after Section 1252(f)(1), and therefore was "certainly not a provision of the INA '*as amended by* the [IIRIRA] of 1996,' 8 U.S.C. § 1252(f)(1)." *Galvez*, 52 F.4th at 831.

Like the TVPRA, the TPS statute was not substantively "amended" by IIRIRA, albeit for a different reason. The TPS statute was enacted several years before IIRIRA, but IIRIRA did not amend the text of the TPS statute (apart from changes in nomenclature that IIRIRA implemented throughout the immigration code). Because IIRIRA did not change the substantive provisions of the TPS statute, it is not a part of the INA "as amended by" IIRIRA.

This reading makes sense in light of Section 1252(f)(1)'s legislative history. The House Judiciary Committee Report that recommended enactment of what would become Section 1252(f)(1) explained that subparagraph (f) "limits the authority of Federal courts other than the Supreme court to enjoin the operation of the *new removal procedures* established in *this legislation*." H.R. Rep. No.

104-469, pt. 1, at 161 (emphasis added).[3] The language of Section 1252(f)(1) thus reflects a specific concern about injunctions interfering with the operation of IIRIRA's *new* removal procedures, not interference with the TPS statute, which was enacted years earlier and not substantively amended by IIRIRA.

Although Plaintiffs do not agree with Defendant's reading of Section 1252(f)(1), the Court should not reach this issue at this time. Plaintiffs have not moved for injunctive relief or any form of "coercive order," Mot. 12. Given this Court's conclusion that the relief afforded by Sections 705 and 706 is not injunctive in nature, there is no need for the Court to address what is now only a hypothetical question. Because the Court has already held that Section 1252(f)(1) is not a jurisdictional bar to Plaintiffs' claims, it need not decide whether Plaintiffs could obtain an injunctive order they may never seek.

## II.    Plaintiffs Adequately Alleged that the Challenged Decisions Violate the APA

Plaintiffs have adequately alleged that the Secretary's decisions to vacate and terminate Venezuela's 2023 TPS designation and to partially vacate Haiti's 2024 TPS extension and redesignation violate the APA because they exceed her statutory authority, rest on legal errors, fail to consider obvious alternatives, are pretextual, and fail to follow procedures required by law. 5 U.S.C. § 706(2). In arguing otherwise, Defendants primarily rehash arguments the Court has already rejected, and which are thus foreclosed. Their new arguments are similarly unavailing.

### A.    Plaintiffs Adequately Allege that the Venezuela Vacatur Violated the APA (First Claim)

#### 1.  The Secretary Lacked Authority to Vacate Venezuela's Extension

As this Court has held, Secretary Noem's assertion of "inherent authority" to reconsider prior TPS decisions, Mot. 14, "is at odds with the structure of the TPS statute." Dkt. 93 at 44-55. The TPS statute forecloses vacatur authority because it lays out specific processes for altering TPS designations and because the statute's "use of a fixed term" is "affirmatively inconsistent with positing an implied power to revoke a license at any time," Dkt. 93 at 51 (quoting *China Unicom (Ams.) Ops. Ltd. v. FCC*, 124 F.4th 1128, 1148 (9th Cir. 2024)). Defendants make no attempt to

[3] *See also* Jill E. Family, *Another Limit on Federal Court Jurisdiction? Immigrant Access to Class-Wide Injunctive Relief*, 53 Clev. St. L. Rev. 11, 30 (2005) ("Congress meant only to block injunctive relief halting the functioning of the new system").

1    engage with this Court's previous analysis, simply repeating arguments this Court has already

2    rejected. *Compare* Mot. 14 (asserting vacatur authority under 8 U.S.C. §§ 1103(a) and 1254a) *with*

3    Dkt. 93 at 45-46 (holding that 8 U.S.C. §§ 1103(a) and 1254a "do not give [the Secretary] authority

4    to vacate"); Mot. 14 (arguing that *China Unicom* supports finding of vacatur authority) *with* Dkt. 93

5    at 51 (holding that, under *China Unicom*, the TPS statute's "clear temporal expectations … and clear

6    stated terms for extensions and terminations of TPS designations are … affirmatively inconsistent

7    with … positing an implied power to revoke or vacate a prior designation (or extension)" (quoting

8    *China Unicom*, 124 F.4th at 1148)).[4] Defendants provide no reason for the Court to reconsider its

9    well-reasoned analysis.

10           Further, by purporting to invalidate TPS-related documentation already issued, the vacatur

11   violates Subsection (d)(3) of the TPS statute. 90 Fed. Reg. 8805 at 8807 (Feb. 3, 2025) (stating that

12   USCIS "will invalidate" TPS-related documentation issued pursuant to the January 2025 extension).

13   The Supreme Court specifically cited Subsection (d)(3) when it stated that its stay "is without

14   prejudice to any challenge to Secretary Noem's February 3, 2025 vacatur notice insofar as it purports

15   to invalidate" certain TPS-related documents. Dkt. 144-1. That provision provides that even a lawful

16   termination of a country's TPS designation "shall only apply to documentation and authorization

17   issued or renewed after the effective date of the publication of notice" of the termination. 8 U.S.C. §

18   1254a(d)(3). *See also* 8 C.F.R. § 244.12(a)-(c) (providing that employment authorization remains

19   valid until the "date stated on the employment authorization document" even if TPS status is

20   subsequently withdrawn or denied). While Section (d)(3) explicitly refers only to termination, the

21   clear implication is that the Secretary lacks authority to invalidate documentation issued before the

22   effective date of *any* notice purporting to alter a country's TPS designation, including the Venezuela

23   vacatur.

24

25   ---

[4] This Court has also rejected Defendants' argument, Mot. 15-16, that "foreign policy" or "national
26   security" considerations provide the government with reconsideration authority otherwise foreclosed
by statute. Dkt. 93 at 16-17, 53-54 ("Congress did not create a national security exception to the
27   framework it prescribed for the termination of TPS status."); *see also* Def's Opp. to Mot. to
Postpone, Dkt. 60 at 15-16 (making same argument). In any event, the Venezuela vacatur was not
28   based on national security or foreign policy justifications. *See* Dkt. 93 at 61.

### 2.  The Venezuela Vacatur was Arbitrary and Capricious

Whether or not the Secretary has vacatur authority in general, Plaintiffs have adequately alleged a distinct claim that the Venezuela vacatur violated the APA because it was arbitrary and capricious for at least three independent reasons, each of which this Court already credited. Dkt. 93 at 55-59. First, the vacatur was founded on legal error. Dkt. 93 at 55-58. Contrary to Secretary Noem's assertion, "the practical operation of the extension of the 2023 Designation was not 'novel,' did not engender undue confusion as to registration, and was entirely consistent and compliant with the TPS statute." *Id.* at 58. Second, the Secretary arbitrarily failed to consider obvious alternatives to vacatur. *Id.* at 58-59. Defendants do not argue otherwise here. Mot. 17 (asserting without argument that Secretary's failure to consider deconsolidation was not arbitrary and capricious). Third, the vacatur was pretextual: "[C]onfusion was not [the Secretary's] concern so much as the desire to totally undo Secretary Mayorkas's decision." Dkt. 93 at 59. *See also* Dkt. 129 at 5-6 ("The record provided by Plaintiffs, while obviously not identical, presents an equally troubling set of circumstances" as those in *Dep't of Com. v. New York*, 588 U.S. 752 (2019)). Defendants provide no reason to reconsider the Court's analysis, and the law of the case prevents it.

Finally, Plaintiffs also plausibly allege the Venezuela vacatur violated the APA because Defendants failed to conduct statutorily required consultation or country conditions review. FAC ¶¶ 63-71, 202(h). The TPS statue requires that the Secretary conduct regular periodic reviews, including "consultation with appropriate agencies of the Government" and a "review [of] the conditions in the foreign state," to assess whether a country's TPS designation should be extended or, instead, terminated. 8 U.S.C. § 1254a(b)(3)(A). While the TPS statute's periodic review provision does not mention vacatur, its periodic review provisions clearly contemplate that any decision that affects a country's TPS decision must be based on consultation and country conditions review. Accordingly, even assuming the Secretary has authority to vacate a TPS decision, such authority may be exercised only after inter-agency consultation and a review of country conditions.

Nonetheless, it is clear from the face of the vacatur notice that the Secretary's decision was not based on consultation with the State Department or any other agency. *Compare* 90 Fed. Reg. 8805 (failing to state that decision was made in consultation with any other agency) *with, e.g.,* 81

Fed. Reg. 66059, 66060 (Sept. 16, 2016) (terminating TPS for Liberia "[b]ased on [country conditions] reviews and after consulting with DOS"); 65 Fed. Reg. 33356 (May 23, 2000) (terminating TPS for Kosovo based on "review of conditions …. by the Departments of Justice and State"). Nor was it based on any "review [of] conditions in the foreign state …[to] determine whether the conditions for such designation … continue to be met." 8 U.S.C. § 1254a(b)(3)(A). Rather, the Secretary stated only that she would "determine, by February 1, 2025, whether to extend or terminate the 2023Venezuela TPS designation." 90 Fed. Reg. 8805 at 8807.

> **B.    Plaintiffs Adequately Allege that the Termination of Venezuela's 2023 TPS Designation Violated the APA (Second Claim)**

Plaintiffs adequately allege Secretary Noem's decision to terminate Venezuela's 2023 designation violated the APA because she failed to conduct the consultation and country conditions review required by statute, and her decision was founded on legal error. FAC ¶ 206(d)-(f).

> ### 1.    The Termination Did Not Observe Procedure Required by Law

Plaintiffs have alleged, and Defendants do not contest, that under the TPS statute, a termination decision may be made only after "consultation with appropriate agencies of the Government" and a "review [of country] conditions." 8 U.S.C. § 1254a(b)(3)(A). That process "typically begins months before" a decision is due. FAC ¶¶ 37-40 (describing standard review process); *Ramos v. Nielsen*, 336 F. Supp. 3d 1075, 1082 (N.D. Cal. 2018) (same).[5] Yet on February 1, 2025, just *three days* after Secretary Noem decided to vacate Venezuela's TPS extension—at which time she represented that she had not yet "determined … whether to extend or terminate" the designation itself," 90 Fed. Reg 8805 at 8807 (Feb. 3, 2025)—she "decided to terminate." FAC ¶ 72. Plaintiffs' complaint plausibly alleges that meaningful consultation and review could not, and did not, occur on this timeframe. FAC ¶¶ 72-81, 206(d),(f). *See, e.g.*, *Calif. Wilderness Coal. v. Dep't of Energy*, 631 F.3d 1072, 1088 (9th Cir. 2011) (discussing cases defining agency consultation requirements and noting the consultation is an "affirmative duty," that must be "meaningful" and

---

[5] *See also* GAO, *Temporary Protected Status: Steps Taken to Inform and Communicate Secretary of Homeland Security's Decisions* 20-21 (Apr. 2020), *available at* https://www.gao.gov/products/gao-20-134 (explaining that review process typically begins six months before expiration of designation).

1 | must occur *before* making a decision) (internal quotation marks and citations omitted).

2 |      The Certificated Administrative Record (CAR) for the Venezuela termination confirms the

3 | plausibility of Plaintiffs' claim. It shows that Defendants deviated substantially from the normal TPS

4 | decision making process. The termination notice states that DHS "in consultation with the

5 | Department of State, has reviewed conditions in Venezuela." 90 Fed. Reg. at 9042. *See also* Mot. at

6 | 19 (stating that termination was based on information provided by USCIS and DOS). But the only

7 | country conditions reports in the CAR pre-date the January 17, 2025 extension, were apparently

8 | prepared as part of the periodic review process for *that* extension decision, and overwhelmingly

9 | support the conclusion that conditions in Venezuela remain dire. *See* Dkt. 104-4 at VZ

10 | Termination_0211-221 (State Department  recommendation dated Sept. 2024 detailing ongoing

11 | "complex emergency" in Venezuela and recommending 18-month extension and redesignation);

12 | Dkt. 104-8 at VZ Termination_0424-0454 (USCIS country conditions report dated August 2024

13 | describing Venezuela's "complex, serious, and multidimensional humanitarian crisis). The sum total

14 | of inter-agency "consultation" regarding the *termination* decision appears to consist of a two-page

15 | letter from Secretary of State Marco Rubio, which assesses only "the national interest of the United

16 | States" and says nothing about country conditions in Venezuela. Dkt. 104-4 at VZ Termination

17 | 0222. The rest of the CAR consists almost entirely of Executive Orders and old Federal Register

18 | notices, reports, and articles—some of which appear to have been downloaded from the internet

19 | weeks *after* the Secretary announced her decision, only after this case was filed. *See* Index of

20 | Administrative Record – Venezuela Termination, Dkt 104; Dkt. 104-1 at VZ Termination_0042

21 | (noting download date of March 7 in upper left); Dkt. 104-4 at VZ Termination_0160 (same); *id.* at

22 | VZ Termination_0224 (same); i*d.* at VZ Termination 0272 (same).

23 | **2.  The Termination was Contrary to Law**

24 |      Plaintiffs also allege the termination was contrary to law for two reasons. First, the

25 | termination was unlawful because it was predicated on the unlawful vacatur. The premise of the

26 | termination was that "[t]he 2023 designation of Venezuela for TPS is set to expire on April 2, 2025,"

27 | and so "a determination whether to extend the 2023 Venezuela designation was due by February 1,

28 | 2025." 90 Fed. Reg. 9040, 9040-9041 (Feb. 5, 2025). However, if this Court grants Plaintiffs'

1    request to set aside the vacatur as in excess of the Secretary's authority, then that premise is false.

2    Instead, the January 17, 2025 extension remains in effect; the 2023 TPS designation of Venezuela

3    does not expire until October 2, 2026; a determination whether to extend the 2023 designation is not

4    due until August 3, 2026; and any termination "shall not be effective earlier" than October 2, 2026. 8

5    U.S.C. § 1254a(b)(3)(B). Because the Secretary's termination decision was based on the contrary

6    (and legally erroneous) belief that the TPS periodic review process required a decision by February

7    1, 2025; because it unlawfully set a termination effective date *before* October 2, 2026; and because it

8    was based on conditions that may change materially before the next periodic review is required, it

9    must be set aside along with the vacatur.

10          Second, the TPS statute does not permit the Secretary to terminate a TPS designation based

11    on a conclusion that the designation is contrary to the national interest. FAC ¶¶ 76; 206(c).

12    Defendants suggest Plaintiffs ignore the statutory language, but it is Defendants who neglect the text.

13    Mot. 19. Section 1254a(b)(1) governs initial TPS designations. It requires that the Secretary consider

14    "national interest" when designating a country for TPS based on extraordinary and temporary

15    conditions. 8 U.S.C. § 1254a(b)(1)(C). But it does not permit the Secretary to consider national

16    interest in making *other* TPS-related decisions. For example, national interest is not identified as a

17    factor to consider when designating a country for TPS based on armed conflict or environmental

18    disasters. *Id.* at § 1254a(b)(1)(A)-(B). Nor, as relevant here, is national interest identified as a

19    permissible consideration during the periodic review process. *Id.* at § 1254a(b)(3). Rather, during

20    periodic review, the Secretary must review "the *conditions in the foreign state*" and determine

21    whether the "*foreign state* … continues to meet the conditions for designation under paragraph (1)."

22    *Id.* at § 1254a(b)(3)(A) (emphasis added). In other words, the statute directs the Secretary to focus

23    on conditions in the country designated for TPS, not conditions in the United States. Defendants'

24    contrary interpretation—that the periodic review provision requires the Secretary to consider

25    whether the "foreign state continues to meet the condition" that "permitting the aliens to remain

26    temporarily in the United States is [not] contrary to the national interest of the United States"—

27    makes no sense, particularly given the statute's overarching purpose to bring objectivity to TPS

28

14

1   decisionmaking.[6] FAC ¶ 32 & n.8. Moreover, consistent with Plaintiffs' interpretation of the TPS

2   statute, in the 35-year history of the program, no Secretary has *ever* terminated a TPS designation on

3   the basis that it was "no longer in the national interest." FAC ¶ 76. Accordingly, Plaintiffs have

4   adequately stated a claim that Secretary Noem's decision to do so here was contrary to law.

   **C.    Plaintiffs Adequately Allege that the Partial Vacatur of Haiti's TPS Extension
   and Redesignation Violated the APA (Third Claim)**

   **1.    The Secretary Lacked Authority to Partially Vacate Haiti's Extension
   and Redesignation**

8   As discussed, *supra* Pt. II.A.1, the Secretary lacks authority to vacate a TPS extension. *See*

9   *also* Dkt. 93 at 44-55. Secretary Noem's partial vacatur of Haiti's extension and redesignation is

10  unlawful for the same reasons this Court found her vacatur of Venezuela's extension unlawful.

11  Specifically, the TPS statute's fixed time-periods and "clear stated terms for extensions and

12  terminations of TPS designations are … 'affirmatively inconsistent with … positing an implied

13  power to revoke' or vacate a prior designation (or extension)." Dkt. 93 at 51 (quoting *China Unicom*,

14  124 F.4th at 1148). And, just as with the Venezuela vacatur, Secretary Noem's attempt to

15  retroactively change "the expiration of the most recent previous extension" of Haiti's TPS

16  designation, thereby permitting termination before that date, contravenes the TPS statute's express

17  provision that terminations "shall not be effective earlier than … the expiration of the most recent

18  previous extension …." 8 U.S.C. § 1254a(b)(3)(B).

19  The Haiti partial vacatur also contravenes the TPS statute and regulations for two additional

20  reasons. First, the TPS statute provides that the Secretary "shall" decide whether to extend or

21  terminate a TPS designation "[a]t least 60 days before [the] end of the initial period of designation,

22  and any extended period of designation …." 8 U.S.C. § 1254a(b)(3)(A). But the Secretary published

23  her "partial vacatur" of Haiti's July 2024 extension *205 days after* the end of the previous "period of

---

[6] Congress designed TPS to ensure nationality-based humanitarian relief would be based on "identifiable conditions" rather than "the vagaries of our domestic politics," 101 Cong. Rec. H25811, 25838 (daily ed. Oct. 25, 1989) (statement of Rep. Sander Levine) (debating Central American Studies and Temporary Relief Act of 1989, immediate precursor to the TPS statute); replace the "ad hoc, haphazard ... procedures" that existed before, *id.* at 25837 (statement of Rep. Richardson); and provide beneficiaries with certainty about "what [their] rights are, how the Justice Department determines what countries merit EVD status [and] how long they will be able to stay." *Id.*

1  designation." FAC ¶ 92; 88 Fed. Reg. 5022, 5023 (Jan. 26, 2023) (extending and redesignating Haiti

2  for TPS through August 3, 2024). Accepting Defendants' asserted authority to reconsider a TPS

3  decision on that timeline would mean the Secretary could change her decision "after the [60]-day

4  period had elapsed, thereby writing the [60]-day time limit"—and the default automatic extension

5  that occurs if no decision is made by that time, 8 U.S.C. § 1254a(b)(3)(C)—out of the statute."[7] *Am.*

6  *Methyl v. EPA*, 749 F.2d. 826, 836-37 (D.C. Cir. 1984) (holding EPA lacked authority to revoke

7  waiver where statute provided waiver applications were granted by default if EPA failed to act on

8  them within a specific timeframe).

9       Second, as discussed above, *see supra* Pt. II.A.1, the Secretary lacks authority to invalidate

10  documentation issued *before* the effective date of a notice purporting to alter a country's TPS

11  designation. 8 U.S.C. § 1254a(d)(3). The Supreme Court recently referenced that provision explicitly

12  as to the Venezuela vacatur. *See supra*, Pt. II.A.1; Dkt. 144-1. Secretary Noem's instruction that

13  employment authorization documents issued to Haitian TPS holders under the July 1, 2024 extension

14  and redesignation "with a February 3, 2026 expiration date" are now valid only through August 3,

15  2025 directly contravenes the statute. 90 Fed. Reg. 10511 at 10514.

16         **2.**    **The Partial Vacatur of Haiti's Extension and Redesignation Failed to**
17                **Observe Procedure Required by Law and Was Pretextual and Contrary**
               **to Law**

18       Even if the Secretary had authority to partially vacate Haiti's extension and redesignation,

19  Plaintiffs have adequately alleged that the partial vacatur violated the APA because Secretary Noem

20  failed to follow statutorily required procedures and because the reasons she gave for her decision

21  were pretextual and contrary to law. FAC ¶ 210(j)-(k).

22       <u>*The Secretary failed to follow statutorily required procedures*</u>. As described, *supra* Pt.II.A.2,

23  the TPS statue requires "consultation with appropriate agencies of the Government" and a "review

24  [of] the conditions in the foreign state" prior to any decision about a country's TPS designation. 8

25

---

26  [7] Further, even where implied reconsideration authority exists, it must be exercised within a
reasonable time, generally measured in weeks. *Mazaleski v. Treusdell*, 562 F.2d 701, 720 (D.C. Cir.
27  1977) (considering whether failure to accept agency reconsideration offer precluded claim based on
original offer where no party challenged agency's authority to reconsider). Even if the Secretary's
28  vacatur decision as to Venezuela could be defended on that basis, the Haiti vacatur cannot be.

1    U.S.C. § 1254a(b)(3)(A).  Plaintiffs have adequately alleged that the partial vacatur violated the

2    APA because the Secretary failed to observe these statutorily required procedures. FAC ¶ 210(a),

3    (k); 5 U.S.C. § 706(2)(D). It is clear from the face of the Partial Vacatur notice that the Secretary's

4    decision was not based on consultation with the State Department or any other agency.[8] *Compare* 90

5    Fed. Reg. 10511 (failing to state that decision was made in consultation with any other agency) *with,*

6    *e.g.,* 81 Fed. Reg. 66059, 66060 (Sept. 16, 2016) (terminating TPS for Liberia "[b]ased on [country

7    conditions] reviews and after consulting with DOS"); 65 Fed. Reg. 33356 (May 23, 2000)

8    (terminating TPS for Kosovo based on "review of conditions …. by the Departments of Justice and

9    State"). Nor was it based on any review of country conditions; rather, the Secretary stated only that

10   she would review country conditions at some future time. *Id*. at 10514 ("The Secretary intends to

11   conduct a review of current country conditions in Haiti and make a new determination *in due*

12   *course*.") (emphasis added).

13          The CAR for the Haiti partial vacatur confirms the plausibility of Plaintiffs' claim. It

14   includes no recommendation from the Department of State and no country conditions reports

15   compiled in connection with the partial vacatur. *See* Index of Haiti Partial Vactur CAR, Dkt. 110-1.

16   Instead, it includes only the recommendations and country conditions reports supporting the July 1,

17   2024 extension and redesignation. *Id.;* Dkt. 110-4 at HT Vacatur AR_0331-0344 (February 2024

18   DOS recommendation and country conditions report); Dkt. 110-5 at HT Vacatur AR_0473 (January

19   2024 USCIS country conditions report).

20          <u>*The Secretary's explanation for the partial vacatur was pretextual.*</u> Plaintiffs have adequately

21   alleged that the partial vacatur of Haiti's TPS extension and redesignation was a preordained

22   decision based not on the reasons given in the partial vacatur notice, but rather, like the Venezuela

23   vacatur, on "the desire to totally undo Secretary Mayorkas's decision." Dkt. 93 at 59. *See* FAC ¶

24   210(j). Indeed, just as with the Venezuela vacatur, Defendants *concede* that the ultimate purpose of

25   the Haiti partial vacatur was to "afford[] [Secretary Noem] the opportunity" to make a new decision.

26   Mot. 23-24.

27   ~~[8] The same is true for the Venezuela vacatur, which is another reason that decision violated the APA~~
     ~~even if the Secretary had vacatur authority. *See* 90 Fed. Reg. 8805 (failing to state decision was~~
28   ~~made in consultation with any other agency or was based on any country conditions review).~~

The partial vacatur "cannot be adequately explained in terms of" the reasons provided by Secretary Noem in the Federal Register. *Dep't of Com.*, 588 U.S. at 783. Those reasons—that Secretary Mayorkas did not explain why he chose an 18-month period or why he concluded that extension and redesignation were not contrary to the national interest, and that he cited both contemporaneous and slightly older country conditions reports—could be invoked to vacate *all* previous TPS extensions, because they are not flaws but rather standard features of TPS decisions. "[N]o Secretary has ever explained in the Federal Register why they chose a particular duration rather than an alternative." FAC ¶100. Nor have Secretaries typically elaborated on their national interest conclusions, which would require proving a negative.[9] *Id.* ¶ 103. *Cf. Hernandez v. USCIS*, No. C22-904 MJP, 2023 WL 7386573, at *9 (W.D. Wash. Nov. 7, 2023) ("[A]n agency may act arbitrarily and capriciously where it requires [an applicant] to prove a negative."). Finally, "Secretaries have traditionally considered facts both close in time to and further from the determination" when conducting a TPS periodic review. FAC ¶ 104.[10]

Because Secretary Noem's stated justification for reconsideration would apply equally to *all* previous TPS extensions and redesignations, it fails to explain why Haiti's extension and redesignation specifically were selected for reconsideration instead of other TPS extensions. *See, e.g.*, 90 Fed. Reg. 5936 (Jan. 17, 2025) (extending Ukraine's TPS designation for 18 months without explaining why the Secretary chose an 18-month period or concluding that extension was not contrary to the national interest, and citing both contemporaneous and slightly older country reports).

The focus on Haiti *is* explained, however, by public statements from Secretary Noem, President Trump, Vice President Vance and DHS itself. *See* Dkt. 129 at 4-6 (noting that the showing of bad faith for the Venezuela decisions would apply to Haiti, including "disparaging statements

---

[9] Defendants assert that the Haiti partial vacatur was rooted in national interest and foreign policy considerations, Mot. 22, but the notice references national interest only to critique Secretary Mayorkas's alleged failure to properly consider that criterion; it does not suggest Secretary Noem made a determination regarding whether the continued presence of Haitian TPS holders in the United States is contrary to national interest. 90 Fed. Reg. 10511 (Feb. 24, 2025). *Id.* Indeed, such a conclusion would be inconsistent with her having extended TPS for Haiti for 12 months. Nor does the notice mention foreign policy concerns.

[10] The CAR for Secretary Noem's decision terminating TPS for Venezuela indicates that even Secretary Noem considered 2021 and 2023 country conditions reports in making her decision. Dkt. 104 (CAR Index, citing VT AR 78-85, 165-209, 253-71, 461-92).

1    discussed in the postponement order … by President Trump that Haitian immigrants in Springfield,

2    Ohio, were eating people's pets"). In a press release issued to announce the partial vacatur, DHS

3    cited as proof for its belief "the TPS system has been exploited and abused" that "Haiti has been

4    designated for TPS since 2010, with each extension … allow[ing] more Haitian nationals, even those

5    who entered the U.S. illegally, to qualify for legal protected status."[11] FAC ¶ 92. *See also* FAC ¶ 107

6    (Secretary Noem: "[TPS] has been abused and manipulated by the Biden Administration and that

7    will no longer be allowed … and these extensions going forward the way that they are, the program

8    was intended to be temporary"); FAC ¶ 112 (President Trump: "You have to remove [Haitians]; you

9    cannot destroy our country … In my opinion, it's not legal …. Absolutely I would revoke [TPS].");

10    FAC ¶ 114, 116 (Vice President Vance: "The media loves to say that the Haitian migrants, hundreds

11    of thousands of them, by the way … they are here legally. And what they mean is that Kamala

12    Harris used two separate programs, mass parole and temporary protective status …. Well, if Kamala

13    Harris waves the wand illegally and says these people are now here legally, I'm still going to call

14    them an illegal alien").

15        The CAR for the Haiti partial vacatur confirms the plausibility of Plaintiffs' pretext claim.

16    Dkt. 110. Nothing in it substantiates the reasons the Secretary gave to explain the partial vacatur in

17    the Federal Register. To the contrary, it is made up almost entirely of old Federal Register notices

18    regarding Haiti's designation, documents from cases challenging the termination of TPS for Haiti

19    during the first Trump Administration, and documents considered by *Secretary Mayorkas* in arriving

20    at his July 2024 decision to extend and redesignate TPS for Haiti. The *only* document in the CAR

21    that post-dates Secretary Mayorkas's decision—other than the partial vacatur notice itself and a one-

22    page "record of clearance and approval" for that decision—is President Trump's Executive Order

23    "Protecting the American People Against Invasion." *See* CAR Index, Dkt. 110-1.

24        Because "the evidence tells a story that does not match the explanation the Secretary gave for

25    [her] decision," Plaintiffs have adequately alleged a claim that the partial vacatur is pretextual in

26

27    ───────────────
    [11] Press Release, DHS, Secretary Noem Rescinds Previous Administration's Extension of Haiti's
28    TPS (Feb. 20, 2025), https://www.dhs.gov/news/2025/02/20/secretary-noem-rescinds-extension-
    haitis-temporary-protected-status.

1    violation of the APA. *Dep't of Com.*, 588 U.S. at 784. *See also* Dkt. 129 at 5.

2        <u>*The partial vacatur was contrary to law.*</u> The partial vacatur was also contrary to law for two

3    reasons. First, the Secretary justified the partial vacatur on the ground that Secretary Mayorkas had

4    failed to adequately consider the national interest. FAC ¶ 96. But, as explained above, the statute

5    does not permit the Secretary to consider national interest when reviewing an existing TPS

6    designation. *See supra* Pt. II.B.2. By basing vacatur of the extension on a supposed "fail[ure] to

7    evaluate" whether allowing Haitian nationals to remain would be "contrary to the national interest,"

8    Mot. 20, Secretary Noem misinterpreted the TPS statute and inserted a legal requirement for TPS

9    extension that does not exist.[12] FAC ¶¶ 210(e), (i).

10        Second, the partial vacatur was based on the Secretary's legally erroneous conclusion that the

11    TPS statute has a default six-month extension period. Contrary to Secretary Noem's statement, there

12    is no "default" period for TPS extensions. Rather, the TPS statute allows a period of 6, 12, or 18

13    months "in [the Secretary's] discretion." 8 U.S.C. § 1254a(b)(3)(C); FAC ¶¶ 101, 210(g). The six-

14    month default applies only if the Secretary fails to make any determination. *Id.* Indeed, of more than

15    200 TPS extensions since 1990, six-month extensions were granted on only a handful of occasions

16    with unique circumstances. FAC ¶ 101. The overwhelming majority of TPS extensions in the past

17    twenty years have been for 18 months. Resp. In Opp'n To Defs.' Mot. For Stay Pending Appeal at

18    Table A, *Nat'l TPS All. v. Noem*, No. 25-2120 (9th Cir. Apr. 11, 2025), Dkt No. 11.1,  (88% of TPS

19    extensions over past two decades have been for an 18-month period). Even assuming that there is a

20    "default" six-month period, there is no requirement for a separate justification for extensions beyond

21    the six-month period, and no such explanation was provided in previous extension decisions. 8

22    U.S.C. § 1254a(b)(3)(C); FAC ¶¶ 210(e)-(g). The government does not claim otherwise. In fact, over

23    the 35-year history of the statute, in virtually all cases in which Secretaries designated or extended

24    TPS for a country, they announced the length of the designation without elaborating their reasons for

25    choosing that duration and not another. FAC ¶ 99. Secretary Noem's partial vacatur for Haiti TPS is

26    itself consistent with that practice—it does not explain why she chose a twelve-month period. *Id.*

27    ───────────────
[12] Plaintiffs raise this argument only as to the partial vacatur of the *extension*, and not the partial
28    vacatur of the redesignation. National interest is a permissible consideration at the redesignation
     stage.

III.    **Plaintiffs Adequately Alleged that the Challenged Decisions were Unconstitutionally Motivated by Animus (Fourth Claim)**

This Court previously held that Plaintiffs adequately alleged a constitutional claim with regard to the Venezuela vacatur and termination decisions. Dkt. 93 at 59-75. Further, this Court has recognized that "much of the reasoning in [the postponement] order would apply to the decision made with respect to Haiti as well," noting that "the disparaging statements discussed in the postponement order included statements by President Trump that Haitian immigrants in Springfield, Ohio, were eating people's pets." Dkt. 129 at 5 (finding that "there is a factual basis" for Plaintiffs' assertion that the government's reasons to partially vacate TPS for Haiti "were pretextual and/or taken in bad faith"). Defendants present no reason to reconsider the Court's reasoned analysis here. Plaintiffs also adequately allege a constitutional claim regarding the Haiti partial vacatur under any standard of review, and Defendants' arguments otherwise are unavailing.

This Court previously rejected Defendants' assertion that *Trump v. Hawaii*, 585 U.S. 667 (2018), supplies the correct standard of review. Dkt. 93 at 59-63. Defendants again overread *Hawaii*, asserting the "Supreme Court has been clear" that deferential review applies to any "immigration policy." Mot. 22. This is false. Indeed, after *Hawaii*, the Supreme Court applied the *Arlington Heights* standard to a race discrimination claim brought by undocumented immigrants challenging the rescission of an immigration policy. *See DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 34 (2020) (plurality). Lower courts have done the same. *See United States v. Suquilanda*, 116 F.4th 129, 139-40 (2nd Cir. 2024) (reviewing challenge to 8 U.S.C. § 1326 under *Arlington Heights*); *Washington v. DHS*, 598 F.Supp.3d 1051, 1070 (E.D. Wash. 2020) (collecting cases). During the *Ramos* TPS litigation, every judge of the Ninth Circuit to consider the question concluded that review under *Arlington Heights* was proper. *See Ramos v. Wolf*, 975 F.3d 872, 896 (9th Cir. 2020) (vacated panel majority); *id.* at 925 (Christen, J., dissenting). As this Court previously found, the factors in *Hawaii* counseling in favor of rational basis review are inapplicable in the context of a challenge to a decision by the Secretary, pursuant to a statute that constrains her discretion, on behalf of lawfully present individuals within the U.S. Dkt. 93 at 60-62. Defendants have no answer to this. *See* Mot. 24 (relying on *Hawaii* as authority for deference to the *President*, but not the *Secretary*).

1      Plaintiffs' allegations nonetheless state a plausible claim of impermissible animus even under

2   the deferential *Hawaii* standard of review. The "four corners" of the challenged decisions, along

3   with "extrinsic evidence" considered only "to the extent of applying rational basis review," show the

4   Secretary's actions were not rationally related to her stated goals. *Hawaii*, 585 U.S. at 704-05. This

5   Court already held as much with regard to the Venezuela vacatur and termination decisions.[13] Dkt.

6   93 at 64-75 (Secretary Noem and President Trump made discriminatory statements about

7   Venezuelan migrants and TPS holders in general which "play[ed] on 'longstanding tropes or

8   stereotypes that certain races have inherently immoral traits,'" and both the statements and the

9   rationales provided for the challenged actions lack a factual basis); Dkt. 102 at 4 ("*[E]ven if the*

10  deferential review of *Trump v. Hawaii*, 585 U.S. 667 (2018), were to apply … [b]ased on the record

11  evidence on the motion to postpone, Plaintiffs have raised at least a serious question whether, in fact,

12  the Secretary's actions are plausibly related to her stated objective."

13      The same is true with regard to the partial vacatur of the Haiti TPS designation. Defendants

14  argue that the partial vacatur was legitimate because a "six-month rollback" would allow the

15  Secretary to assess whether continuing TPS would be in the national interest. Mot. 23, citing 90 Fed.

16  Reg. at 10,513. But the TPS statute would have *required* her to conduct an assessment in due time.

17  And Defendants' argument confirms that Plaintiffs adequately pleaded facts showing the Secretary's

18  stated justifications are pretextual—the Secretary's true motivation was to advance the review, and

19  potential for termination, of TPS for Haiti. Moreover, the justifications within the Federal Register

20  notice are contrary to legal requirements and historical practice. As elaborated above, there is no

21  requirement that Secretaries explain why they are designating a country for a certain period of time,

22  and in fact virtually all TPS extensions over the past two decades have been for an 18-month period

23  without explanation; extension decisions consistently and properly rely partly on older data; and, as

24  explained above, *see supra* Pt. II.B.2, national interest is not a permissible reason to terminate a TPS

---

25  [13] As they did before, Dkt. 60 at 18-20, Defendants conflate the Venezuela vacatur and termination
    decisions to challenge Plaintiffs' unconstitutional animus claim as to the vacatur. Defendants do not
26  mount any argument why Plaintiffs' allegations do not state a claim as to the vacatur, pointing
    instead only to reasons provided in the termination notice. *See* Mot. 23. By conflating their analysis
27  of the two agency actions, Defendants further substantiate Plaintiffs' claim that the stated reason for
    the vacatur was mere pretext manufactured to justify the intended termination.
28

22

1    designation. Because the partial vacatur was not based on a rational or plausible justification,

2    Plaintiffs' allegations suffice under even rational basis review.

3    In any case, the correct standard is set forth in *Arlington Heights*, Plaintiffs easily allege facts

4    "rais[ing] a plausible inference that an 'invidious discriminatory purpose was a motivating factor'"

5    for the Secretary's decisions. *Regents*, 591 U.S. at 34 (quoting *Arlington Heights*, 429 U.S. at 266).

6    This Court has already found "the Secretary made sweeping negative generalizations about

7    Venezuelan TPS beneficiaries *in toto*" and "decided to take *en masse* actions against" all of them:

8    "the classic example of racism." Dkt. 93 at 66. Defendants assert that Secretary Noem's

9    discriminatory statements are taken "grossly out of context," Mot. at 24, but that is belied by the

10   record evidence, which includes statements directly related to the challenged decisions. Dkt. 93 at

11   64-66. Plaintiffs' allegations further support finding animus under the remaining *Arlington Heights*

12   factors, including the historical background of the decision, FAC ¶¶ 164-68; procedural and

13   substantive departures from the normal sequence,[14] *id.* ¶¶ 99-104; and the disparate impact of the

14   official action on a disfavored minority, *see id.* ¶¶ 112-13, 134-39. Dkt. 93 at 72-75. Defendants'

15   Motion entirely ignores these factors.

16   Defendants do not squarely challenge the adequacy of Plaintiffs' allegations about the Haiti

17   partial vacatur. *See* Mot. 23. But these also suffice under *Arlington Heights*. Plaintiffs sufficiently

18   allege that the Secretary's partial vacatur was motivated by animus against Haitians and, as

19   elaborated above, her pretextual intent to review, and likely terminate, TPS for Haitians six months

20   earlier than the law allows. The Secretary has also baselessly accused Haitian TPS holders of

21   "exploit[ing] and abus[ing]" TPS. FAC ¶ 110. Her assertion that Haitians' mere act of applying and

22   qualifying for TPS is exploitation or abuse reflects her animus against them. Additionally, Secretary

23   Noem invoked President Trump's Executive Order *Protecting the American People Against*

24   *Invasion* as "direct[ing]" her to limit TPS designations. 90 Fed. Reg. 10,513 (Feb. 24, 2025); *see*

25   *also* FAC ¶ 153 (Secretary stated her TPS decisions reflected the President's "desire" to see TPS

---

26   [14] The CAR now shows the Secretary did not actually consult with the State Department prior to
27   vacating either the Venezuela or Haiti TPS extensions, contrary to Defendants' assertion. Dkts. 103
     (index of CAR for Venezuela vacatur) & 110-1 (index of CAR for Haiti partial vacatur); *see* Mot.
28   23.

1    "used properly," and "when the President gives a directive, the Department of Homeland Security

2    will follow it"). And Plaintiffs have sufficiently alleged that President Trump's desire to limit TPS

3    for Haitians is motivated by his animus against them. *See*, *e.g.*, FAC ¶¶ 112-113, 136-39.

4    Accordingly, Secretary Noem's explicit reliance on President Trump's animus against Haitians to

5    justify her partial vacatur further reflects her animus. *See* Dkt. 93 at 70 ("there is evidence *in this*

6    *case* that President Trump directly influenced TPS policy and/or decision-making at issue").

7                                              **CONCLUSION**

8            For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants'

9    motion in its entirety.

10

11    Date:  May 28, 2025                                    Respectfully submitted,

12                                                           ACLU FOUNDATION
                                                            OF NORTHERN CALIFORNIA
13
                                                             /s/ Emilou MacLean
14                                                          Emilou MacLean
                                                            Michelle (Minju) Y. Cho
15                                                          Amanda Young

16                                                          Ahilan T. Arulanantham
                                                            CENTER FOR IMMIGRATION LAW AND
17                                                          POLICY, UCLA SCHOOL OF LAW

18                                                          Eva L. Bitran
                                                            ACLU FOUNDATION
19                                                          OF SOUTHERN CALIFORNIA

20                                                          Jessica Karp Bansal
                                                            Lauren Michel Wilfong (*Pro Hac Vice*)
21                                                          NATIONAL DAY LABORER
                                                            ORGANIZING NETWORK
22
                                                            Erik Crew (*Pro Hac Vice*)
23                                                          HAITIAN BRIDGE ALLIANCE

24                                                          *Attorneys for Plaintiffs*

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2          I hereby certify that on May 28, 2025, I caused the foregoing to be electronically filed with

3    the Clerk of Court using the CM/ECF system, which will then send a notification of such filing

4    (NEF) to all counsel of record.

5

6                                             ACLU FOUNDATION
                                             OF NORTHERN CALIFORNIA
7

8                                             /s/ *Emilou MacLean*
                                             Emilou MacLean
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28