1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7
8
9
10
11

| | |
|---|---|
| NATIONAL TPS ALLIANCE, et al., | Case No.  25-cv-01766-EMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO PRESERVE** |
| KRISTI NOEM, et al., | |
| Defendants. | Docket No. 144 |

12
13
14      Currently pending before the Court is Plaintiffs' motion to preserve status and rights

15  pursuant to 5 U.S.C. § 705.  Having considered the parties' briefs, as well as the oral argument of

16  counsel, the Court hereby **GRANTS** in part and **DENIES** in part Plaintiffs' motion.

17                          I.        BACKGROUND

18      On January 17, 2025, Secretary Mayorkas (part of the Biden administration) extended the

19  2023 TPS Designation for Venezuela from April 2, 2025, to October 2, 2026.

20      On February 3, 2025, Secretary Noem (part of the Trump administration) vacated the

21  extension.

22      On February 5, 2025, Secretary Noem terminated the 2023 TPS Designation for

23  Venezuela.  Assuming her vacatur of the prior extension was effective, the earliest date the

24  Secretary was allowed to terminate the designation under the TPS statute, 8 U.S.C. § 1254a, was

25  April 7, 2025, *i.e.*, 60 days after publication of the notice of termination.  *See* 8 U.S.C. §

26  1254a(b)(3)(B) ("If the [Secretary] determines . . . that a foreign state . . . no longer continues to

27  meet the conditions for designation . . . , [she] shall terminate the designation by publishing notice

28  in the Federal Register . . . .  Such termination is effective in accordance with subsection (d)(3), but

1  shall not be effective earlier than 60 days after the date the notice is published . . . ."). The

2  Secretary's ability to terminate as of April 7, 2025, was predicated on her vacatur of the extension

3  given by Secretary Mayorkas.

4      On March 31, 2025, this Court granted Plaintiffs' motion to postpone agency action – the

5  postponement under 5 U.S.C. § 705 (part of the APA) applied to both Secretary Noem's vacatur

6  decision and her termination decision.

7      On May 19, 2025, the Supreme Court issued its order staying this Court's postponement

8  order.  The second paragraph of the Supreme Court order states as follows:

9          This order is without prejudice to any challenge to Secretary Noem's
           February 3, 2025 vacatur notice insofar as it purports to invalidate
10         EADs [employment authorization documents], Forms I-797, Notices
           of Action, and Forms I-94 issued with October 2, 2026 expiration
11         dates.  *See* 8 U.S.C. § 1254a(d)(3).

12  The order identified Secretary Noem's vacatur decision because that decision purported to

13  invalidate such TPS-related documents:

14         Pursuant to this vacatur, USCIS will no longer accept Venezuela
           TPS re-registration applications (Form I-821) and associated
15         Applications for Employment Authorization (Form I-765) filed
           under the Mayorkas Notice [of January 17, 2025].  For TPS
16         beneficiaries who have already filed applications to re-register for
           TPS pursuant to the Mayorkas Notice and paid any fees associated
17         with their applications, USCIS will cease processing their
           applications, and issue refunds of any fees paid by those aliens.
18         **Additionally, USCIS will invalidate EADs; Forms I-797, Notice
           of Action (Approval Notice); and Forms I-94, Arrival/Departure
19         Record (collectively known as TPS-related documentation) that
           have been issued with October 2, 2026 expiration dates under
20         the Mayorkas Notice.** USCIS will provide refunds to any fees paid
           by these aliens as well.
21
           Additionally, pursuant to this vacatur the automatic EAD extensions
22         provided in the Mayorkas Notice are hereby rescinded.  USCIS will
           provide additional guidance regarding the two Venezuela TPS
23         designations on a future date in accordance with applicable laws.

24  90 Fed. Reg. 8805 (emphasis added).

25  / / /

26  / / /

27  / / /

28  / / /

2

## II.    DISCUSSION

Plaintiffs now ask this Court for relief based on the second paragraph of the Supreme Court's order.[1]  Specifically, they ask that the Court recognize the continuing validity of TPS-related documentation issued pursuant to the extension given by Secretary Mayorkas in January 2025 (which extended legal status and employment authorization to October 2, 2026) in order to preserve the status and rights of Venezuelan TPS holders who received such documents.  *See* Mot. at 3.  Plaintiffs predicate their challenge on 5 U.S.C. § 705 (part of the APA) which states as follows:

> When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review.  On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action **or to preserve status or rights** pending conclusion of the review proceedings.

5 U.S.C. § 705 (emphasis added).

The factors that a court considers when a party seeks relief under § 705 overlap with the factors for a preliminary injunction.  *See* Docket No. 93 (Order at 30-31).  That is, a court considers whether the party seeking relief is likely to succeed on the merits, whether that party would likely suffer irreparable harm in the absence of relief, whether the balance of equities tips in the favor of that party, and whether issuing that party relief would be in the public interest.  *See* Docket No. 93 (Order at 31) (adding that there is a sliding scale where relief may be given if the

---

[1] Neither party suggested in its papers that the pending Ninth Circuit appeal divests this Court of jurisdiction to consider Plaintiffs' pending motion.  *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (stating that the filing of a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal").  The Court also independently concludes that it has not been divested of jurisdiction with respect to Plaintiffs' motion.  To be sure, Plaintiffs seek relief for a "subset" of the Venezuelan TPS holders for whom they sought relief in their motion to postpone (now the subject of the Ninth Circuit appeal).  But the issues raised in the motion to preserve are distinct and separate from those raised in the motion to postpone.  The core issue presented here in the motion to preserve, pertaining to the rights of a discrete group of documents holders, is not currently at issue in that pending appeal.  Even if the parties and the Court were incorrect, the Court could still issue an indicative ruling for the Ninth Circuit.  *See* Fed. R. Civ. P. 62.1.  It does so here in the alternative.

1    party seeking relief shows that there are serious questions on the merits and that the balance of

2    hardships tips sharply in its favor).

3    A.    Likelihood of Success on the Merits

4         According to Plaintiffs, they are likely to succeed on the merits for the subset of

5    Venezuelan TPS holders who hold documents invalidated by Secretary Noem's vacatur decision

6    for two reasons: (1) Secretary Noem exceeded her statutory authority in invalidating the

7    documents, and (2) Secretary Noem acted arbitrarily and capriciously in invalidating the same.

8    The Court largely agrees.

9         1.    Exceeding Statutory Authority

10        According to Plaintiffs, Secretary Noem exceeded her statutory authority when she

11   effectively canceled, on February 3, 2025, TPS-related documentation that had already been

12   issued based on the extension to October 2, 2026.  Plaintiffs' position is meritorious.  Nothing in

13   the TPS statute allows the Secretary to take such action.  In fact, § 1254a(d)(3), the provision in

14   the TPS statute cited by the Supreme Court in its stay order, underscores that such action is not

15   permissible because the provision recognizes that TPS holders have reliance interests when issued

16   TPS-related documentation.  Section 1254a(d)(3) (titled "Effective date of terminations") states:

17            If the Attorney General terminates the designation of a foreign state
              (or part of such foreign state) under subsection (b)(3)(B), such
18            termination shall only apply to documentation and authorization
              issued or renewed **after** the effective date of the publication of
19            notice of the determination under that subsection (or, at the Attorney
              General's option, after such period after the effective date of the
20            determination as the Attorney General determines to be appropriate
              in order to provide for an orderly transition).
21

22   8 U.S.C. § 1254a(d)(3) (emphasis added).[2]  When Secretary Noem issued the vacatur decision on

23   February 3, there had been no publication of the notice of determination terminating the 2023 TPS

24   Designation for Venezuela.  That notice was not published until February 5, 2025.

25        In response, the government argues that § 1254a(d)(3) is not applicable because §

26

27   [2] *See also* 8 U.S.C. § 1254a(d)(1) ("Upon the granting of temporary protected status to an alien
     under this section, the Attorney General shall provide for the issuance of such temporary
28   documentation and authorization as may be necessary to carry out the purposes of this section.").

1254a(d)(3) is about *terminations* and Secretary Noem invalidated the TPS-related documentation in conjunction with her decision to *vacate*. There are several problems with this argument. First, the government exalts form over substance; though contained in a vacatur notice, the notice expressly purports to invalidate TPS documents issued pursuant to the Mayorkas extension. That is why the Supreme Court cited the vacatur decision. As Plaintiffs assert, there is "no reason why Congress would expressly prohibit the agency from retroactively invalidating already issued documents in the context of a termination, but not a vacatur." Reply at 2. Moreover, even if § 1254a(d)(3) is not technically applicable, it is highly relevant given the Supreme Court's stay order cited the provision.[3] As stated above, the provision at the very least underscores the importance of reliance interests that must be recognized here. The government effectively asks this Court to disregard the plain language of the Supreme Court's order.

In its papers, the government suggests that, at best, the relevant provision in the TPS statute is § 1254a(d)(2) and not (3). But § 1254a(d)(2) explicitly says, "*[s]ubject to paragraph [(d)](3)*." *See* 8 U.S.C. § 1254a(d)(2) ("Subject to paragraph (3), such documentation shall be valid during the initial period of designation of the foreign state (or part thereof) involved and any extension of such period."). Because § 1254a(d)(2) incorporates § 1254a(d)(3), the government cannot avoid the impact of § 1254a(d)(3). And again, the Supreme Court's order makes explicit reference to Section 1254a(d)(3).

The government also makes a passing argument that the Mayorkas extension never went into effect, thus freeing Secretary Noem from having to terminate TPS status as a condition to invalidating TPS-related documents issued under the Mayorkas extension. This argument seems to be based on the language in the Federal Register for the Mayorkas extension. *See* 90 Fed. Reg. 5961 (Jan. 17, 2025) ("On the basis of this determination, I am extending the existing October 3, 2023 designation of Venezuela for TPS for 18 months, *beginning* on April 3, 2025, and ending on October 2, 2026. See INA sec. 244(b)(1) and (b)(2); 8 U.S.C. 1254a(b)(1), and (b)(2).") (emphasis added). However, the government's position is not convincing, especially as it has conceded that

---

[3] The Supreme Court's stay order also indicates that there is room for at least some judicial review of agency action, which cuts against the government's jurisdictional arguments.

1  TPS-related documentation *was* in fact issued based on the October 2, 2026, date.  The extension

2  had real world consequences: it was effective, even if only for a brief period of time.

3  Accordingly, Secretary's Noem's purported immediate invalidation on February 3 of TPS-

4  related documents issued pursuant to the Mayorkas extension exceeded her statutory authority.

5  2.    Arbitrary and Capricious

6  Plaintiffs also argue a likelihood of success on the merits on the basis that the Secretary's

7  vacatur decision was arbitrary and capricious under the APA.  This argument is similar to that

8  above.  Specifically, Plaintiffs assert that, once any Venezuelan TPS holder *was* issued TPS-

9  related documentation (*e.g.*, an EAD, I-797, I-94) based on the October 2, 2026, extension date,

10  they had a protectible reliance interest or vested right, and thus the Secretary's invalidation of such

11  was arbitrary and capricious.  As above, Plaintiffs' argument has merit – at the very least presents

12  serious questions on the merits.  *See DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020)

13  (holding DHS Secretary's decision to end DACA program was arbitrary and capricious because,

14  *inter alia*, she "failed to address whether there was 'legitimate reliance' on the DACA

15  Memorandum"); *cf. Ramos v. Nielsen*, 321 F. Supp. 3d 1083, 1122 (N.D. Cal. 2018) (in evaluating

16  plaintiffs' due process claim, stating that "Plaintiffs arguably have a property interest in loss of

17  TPS status"); *Saget v. Trump*, 375 F. Supp. 3d 280, 333 (E.D.N.Y. 2019) (in holding that there

18  was judicial review in a TPS case, stating that "[p]rotecting liberty interests such as those

19  associated with TPS is vital to the property functioning of the rule of law"); *Nasor v. USCIS*, 685

20  F. Supp. 3d 1000, 1013 (W.D. Wash. 2023) (holding that "a prima facie eligible TPS applicant has

21  a property interest in temporary employment authorization subject to due process protections").

22  The Supreme Court's order was clearly informed by the reliance interest on the part of those TPS

23  holders who *did* receive such TPS-related documentation.

24  B.    Likelihood of Irreparable Harm/Balance of Equities/Public Interest

25  The reliance interest of TPS holders who did receive documentation based on the October

26  2, 2026, date also factors into the likelihood of irreparable harm.  Those who received

27  documentation based on that date are especially likely to suffer irreparable injury because they

28  relied on that documentation to make plans to stay in the United States through October 2, 2026.

United States District Court
Northern District of California

6

1   Plaintiff Freddy Jose Arape Rivas is one such example.  As explained in his declaration submitted

2   in conjunction with Plaintiffs' motion to postpone:

3           On January 17, 2025, the government announced the extension of
            TPS for Venezuela, and that same day I submitted my renewal
4           application.  I received a receipt that confirmed my work
            authorization was automatically extended for 540 days, which I
5           submitted to my employers so that I could continue working for my
            employer.  With that reassurance, I renewed my lease on my home.
6
    Docket No. 18 (Rivas Decl. ¶ 12).  TPS holders like Mr. Rivas, of course, also face irreparable
7
    injury without relief for the same reasons discussed in the Court's postponement order.  *See*
8
    Docket No. 93 (Order at 31-39) (discussing how, absent relief, TPS holders will lose legal status
9
    which means not only loss of, *e.g.*, driver's licenses and educational opportunities, but also the
10
    prospect of removal from the United States).
11
            The public interest also weighs in favor of relief, first for the reasons discussed in the
12
    Court's postponement order.  *See* Docket No. 93 (Order at 38-41) (discussing, *e.g.*, economic
13
    contributions that Venezuelan TPS holders make to the United States).  In addition, as Plaintiffs
14
    underscored at the hearing on the instant motion to preserve, the public interest weighs in favor of
15
    relief because it is not simply TPS holders who have relied on the documentation issued based on
16
    the October 2, 2026, extension date.  Third parties have also relied on such documentation,
17
    including employers of TPS holders and local and state agencies.  *See* Reply at 2 (noting that
18
    "[e]mployers are *required* to accept as proof of work authorization both unexpired Employment
19
    Authorization Documents (EADs) and facially expired EADs accompanied by Form I-797 receipt
20
    notices automatically extending those EADs"; adding that "[m]any state agencies also rely on
21
    Forms I-797 and Notices of Action to determine an individual's immigration status") (emphasis in
22
    original).
23
            Finally, the government's claimed injury if the Court were to grant relief is not compelling
24
    for the reasons stated in the Court's postponement order.  The Court also notes that the relief here
25
    would not extend to all Venezuelan TPS holders but rather a discrete subset – somewhere in the
26
    neighborhood of 5,000 individuals in the government's estimation.  This smaller number cuts
27
    against any contention that the continued presence of these TPS holders who were granted TPS-
28

1  related documents by the Secretary would be a toll on the national or local economies or a threat to

2  national security.

3  C.      TPS Holders Entitled to Relief

4          For the foregoing reasons, the Court concludes that Plaintiffs' motion to preserve has

5  merit.  The only issue remaining is which Venezuelan TPS holders are entitled to relief.  As

6  discussed at the hearing, the parties had two disagreements related to scope.

7          First, Plaintiffs argued that relief should be given to not only those TPS holders who

8  received documentation concretely reflecting final approval of legal status or work authorization

9  through October 2, 2026 (*e.g.*, I-94s)[4] but also documentation issued to TPS holders because of the

10 extension, even if it did not explicitly bear the October 2, 2026, date or was not a formal final

11 approval document (*e.g.*, EADs, some I-797s).  Mot. at 4 n.2.  The Court agrees with Plaintiffs

12 that such TPS holders are entitled to relief.  The Supreme Court's order referencing the October 2,

13 2026, date appears to modify only I-94s which generally bear an expiration date;  other documents

14 listed in the order such as EADs typically do not bear an express expiration date.  And this is

15 consistent with a grammatical construction of the sentence since the October 2, 2026, date is

16 linguistically proximate to the last item listed – I-94s.  Moreover, such construction safeguards

17 the reliance interests of document holders;  all holders of TPS documents issued pursuant to the

18 Mayorkas extension share the same reliance interest.

19         Second, Plaintiffs argued that TPS holders should be given relief so long as they were

20 issued and/or received documentation up through the date of the Supreme Court's order of May

21 19, 2025.  Plaintiffs explained that, even though the Secretary vacated the extension on February

22 3, 2025, and then terminated the 2023 TPS Designation for Venezuela on February 5, 2025, this

23 Court postponed that agency action on March 31, 2025.  No termination was effective during the

24 pendency of this Court's postponement order.  Plaintiffs contend that, because of the

25 postponement order, DHS continued to process applications seeking the benefit of the October 2,

26 2026, date until the Supreme Court stayed the postponement order on May 19, 2025, allowing

27

28 ─────────────────
[4] At the hearing, the government indicated that there were about 5,000 such TPS holders.

United States District Court
Northern District of California

Secretary Noem's vacatur and termination to go into effect. In the alternative, Plaintiffs suggested that the "cut-off" date should be April 7, 2025, which is the date that the 2023 TPS Designation was formally terminated based on the express terms of Secretary Noem's February 5 termination notice and the operation of § 1254a(b)(3)(B).

Plaintiffs' proposed cut-off date of April 7, 2025, is problematic. April 7 is the date that the 2023 TPS Designation was terminated pursuant to the terms of Secretary Noem's February 5 termination notice and the operation of § 1254a(b)(3)(B) (termination may be effective no earlier than 60 days after publication of notice). But § 1254a(d)(3) keys protection of TPS-related documents to the "effective date of the *publication of the notice* of the determination [*i.e.*, termination]" 8 U.S.C. § 1254a(d)(3) (emphasis added), not "effective date of termination." The statute provides:

> If the Attorney General terminates the designation of a foreign state (or part of such foreign state) under subsection (b)(3)(B), such termination shall only apply to documentation and authorization issued or renewed **after the effective date of the publication of notice of the determination** under that subsection (or, at the Attorney General's option, after such period after the effective date of the determination as the Attorney General determines to be appropriate in order to provide for an orderly transition).

8 U.S.C. § 1254a(d)(3) (emphasis added). The statute could have stated that a "termination shall only apply to documentation . . . issued . . . after the effective date of the termination," but it did not, referring instead to the "effective date of the publication of notice." Moreover, it may be argued that any reliance interest is diminished upon publication of a notice of termination. A TPS beneficiary who received documentation after such termination notice arguably has a diminished reliance and expectancy interest in any such documentation which purports to extend benefits beyond that date of the stated termination.[5]

---

[5] Although the Court thus rejects Plaintiffs' alternative cut-off date, it acknowledges that there is arguably some ambiguity in the statute. Section 1254a(d)(3) could have stated that a "termination shall only apply to documentation . . . . issued after the date of the publication of notice," but it did not, referring instead to the "*effective* date of the publication of notice." 8 U.S.C. § 1254a(d)(3) (emphasis added). The use of the word "effective" could suggest that Congress meant to tie the reliance interest to the effective date of termination as set forth in 8 U.S.C. § 1254a(b)(3)(B) (providing that a termination of a TPS designation shall be published in the Federal Register and that "[s]uch termination is effective in accordance with subsection (d)(3), but shall not be effective

United States District Court
Northern District of California

1    The Court also rejects Plaintiffs' position that the cut-off date should be May 19, 2025, the

2    date this Court's postponement order was stayed by the Supreme Court.  That date is not moored

3    to 8 U.S.C. § 1254a(d)(3) or any other statutory provision.  Moreover, with respect to reliance

4    interests, those who received documentation because of this Court's postponement order do not

5    have the same kind of reliance interest based on what would appear to be lawful actions of the

6    Secretary.  The Court's order was vigorously contested and was subject to appeal and potential

7    stay, which, of course, ultimately materialized with the Supreme Court's order.

8    As to what *is* the appropriate cut-off date, § 1254a(d)(3) provides guidance, as indicated

9    above.  Specifically, § 1254a(d)(3) effectively vindicates reliance interests up to "the effective

10   date of the publication of notice of the determination."  8 U.S.C. § 1254a(d)(3).  That

11   determination is the termination of a TPS designation.  Here, although Secretary Noem was

12   without authority to invalidate on February 3, 2025, TPS-related documentation already issued,

13   she did have the authority to prospectively invalidate such documentation once she published

14   notice that the TPS designation was being terminated consistent with § 1254a(b)(3)(B).  That date

15   is February 5, 2025 (*i.e.*, two days after the vacatur decision) when she published the notice of

16   termination.[6]

17   Thus, the Court grants relief to those Venezuelan TPS holders who received TPS-related

18   documentation based on the Mayorkas extension anytime up to and including February 5, 2025 –

19   when the Secretary published notice that the 2023 TPS Designation was being terminated.[7]

20

21   earlier than 60 days after the date the notice is published or, if later, the expiration of the most
     recent previous extension under subparagraph (C)").  Notably, Section 1254a(d)(3) does refer to §

22   1254a(b)(3)(B).

23   [6] Technically, the vacatur decision in and of itself did not terminate the 2023 TPS Designation.  It
     simply *enabled* Secretary Noem to terminate the designation in April 2025 – *i.e.*, because she

24   vacated the extension that Secretary Mayorkas had given to October 2, 2026, she was then able to
     terminate the designation in April 2025 rather than waiting for October 2, 2026, to act.

25   [7] The Court notes that, although there is a two-month difference between February 5 (the date of
     the publication of termination) and April 7 (the date of the actual termination), there does not seem

26   to be much difference between the two dates as a practical matter.  The Court did not grant any
     relief to Plaintiffs until it issued its postponement order on March 31.  It seems unlikely that any

27   documentation was issued to TPS holders between February 5 (when the termination was
     announced) and March 31 (when that act was postponed).  At most, there is a small window –

28   between March 31 and April 7 – where documentation could have been issued using the Mayorkas

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.    CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Plaintiffs' motion to preserve.  The motion is largely granted.  It is denied only to the extent the Court has narrowed the scope of the TPS holders who are entitled to relief (*i.e.*, those who received TPS-related documentation based on the October 2, 2026, date up through February 5, 2025).

Accordingly, the Court orders that, to preserve the status and rights of those TPS holders described above – who received EADs, Forms I-797, Notices of Action, and Forms I-94 issued with October 2, 2026 expiration dates pursuant to the January 17, 2025, extension of TPS for Venezuela, as referenced in the Supreme Court's order on May 19, 2025 – the effective date of the portion of the Secretary's vacatur decision purporting to invalidate those documents is postponed pending resolution of this case on the merits.

This order disposes of Docket No. 144.

**IT IS SO ORDERED**.

Dated: May 30, 2025

_____
EDWARD M. CHEN
United States District Judge

extension date because of the Court's postponement order.