Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Amanda Young (SBN 359753)
ayoung@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, MARIELA GONZÁLEZ, FREDDY JOSE ARAPE RIVAS, M.H., CECILIA DANIELA GONZÁLEZ HERRERA, ALBA CECILIA PURICA HERNÁNDEZ, E.R., HENDRINA VIVAS CASTILLO, A.C.A., SHERIKA BLANC, VILES DORSAINVIL, and G.S., <br><br> Plaintiffs, <br><br> vs. <br><br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA, <br><br> Defendants. | Case No. 3:25-cv-01766-EMC <br><br> **DECLARATION OF SHERIKA BLANC IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGEMENT** <br><br> Date:   July 11, 2025 <br> Time:   9:00 a.m. <br> Place:  Courtroom 5, 17th Floor |

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitran (SBN 302081)
ebitran@aclusocal.org
Diana Sanchez
dianasanchez@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

**DECLARATION OF SHERIKA BLANC**

I, Sherika Blanc, declare:

1.    I have personal knowledge of the facts set forth in this declaration. If called upon to testify as a witness, I could do so and would testify to these facts.

2.    I am a native of Haiti and I am a beneficiary of Temporary Protected Status (TPS). I am now 34 years old, and I have lived in the United States since I was only eight. TPS is currently my only form of immigration protection. I am married to a U.S. citizen, and I am the mother of four U.S. citizen children. I am a member of the National TPS Alliance and I was a plaintiff in the lawsuit *Ramos v. Nielsen* when TPS for Haiti was under threat of termination for the first time. I am dismayed that I find myself in the same difficult position seven years later, but it is very important to me to stand up for my rights and the rights of others who rely on the TPS program.  I am writing this declaration to describe the harm I have suffered since the announcement of the partial vacatur of TPS for Haiti and the harm I will suffer if TPS is terminated.

**Background and Impact of TPS**

3.    I was brought to the United States as a young child. I did not know that I was undocumented until I graduated high school in 2009 and found out that I could not qualify for financial aid to attend college. In 2010, Haiti was designated for TPS after the earthquake struck. I was approved for TPS and since that time, I have always maintained lawful status through TPS or DACA.

4.    Thanks to TPS and the work authorization that the program provides, I have been able to build a career and support myself and my family. I became a certified nursing assistant and health unit coordinator in 2011 and have worked in healthcare administration since that time. I am currently a healthcare coordinator. My job involves coordinating care and supportive services for disabled patients.

5.    My husband is a U.S. citizen by birth. We met in high school and got married in 2013. Despite that fact, I am currently not eligible to apply for a green card.  I hope that someday I can adjust my status, but for the time being, I rely entirely on TPS for

work authorization and protection from deportation.

6.    My husband and I have a big family. I am blessed to be the mother of four beautiful children, all born in the United States. My oldest is almost 13 and my youngest is one year old.

7.    Together, my husband and I are able to make ends meet. My husband works as a truck driver. I work full time as a medical coordinator and I also run my own business, a nail salon. My mom, who is also under TPS, cares for my youngest child while I am working. Our income covers our basic expenses, including the mortgage payment for our home.

**Impact of the Partial Vacatur**

8.    I am grateful that, due to TPS, I have been able to give my children a comfortable and secure life. However, since the partial vacatur of TPS for Haiti was announced, I have been living in a state of fear and limbo, with the uncertainty of my status hanging over me like a cloud. If I lose my work authorization, I will lose my job. If I lose my job, I will not be able to put food on the table or keep a roof over my family's heads. We would not be able to make the mortgage payments on our home and would probably have to move.

9.    I have had TPS for a long time. I understood that, as long as conditions in Haiti did not significantly improve, that TPS should be extended. Haiti remains a very dangerous place, so it made sense that TPS was again extended in 2024. I promptly re-registered and applied to renew my work permit. I received receipt notices, including an automatic extension of my work permit for 540 days. Based on that, I thought that I could count on TPS until February 2026, and I made plans for that time period. I invested in my nail business and signed a lease on the salon space following the extension of TPS in 2024. I was shocked when I heard the news that Secretary Noem decided to shorten the timeframe of TPS. I didn't know that was even possible. Now, I am facing having to shut down my business and break my lease in August of this year. I am terrified that TPS will ultimately be terminated, leaving me without work authorization or legal status.

10.     Being forced to return to Haiti would be an absolute nightmare for me. I have not lived there since I was a small child. I do not have any prospects for work or housing, or any support there. The situation in my hometown of Port de Paix, from what I understand, is a humanitarian crisis. The city is overrun with displaced people who have fled the gang violence in Port au Prince. There is not enough water, food, or housing for everyone. People are living in tents and in unsanitary conditions. I would face hunger, lack of water, shelter, with no way to make money and nowhere to go. Because I have lived almost my entire life in the United States, I would be viewed as American and would be even more vulnerable to violence like kidnapping or even being killed. There is no life for me in Haiti and I am terrified of being deported there.

11.     Being forced to return to Haiti would also mean being permanently separated from my four U.S. citizen children. Between the political instability, corruption, lack of basic services and goods, and widespread violence, I cannot bring my children with me to live in those conditions. I would fear for their health, their futures, and their physical safety, especially my three daughters, as gangs commonly use sexual violence to terrorize communities.

12.     At the same time, if I left my children in the U.S., they would also suffer greatly in my absence. My husband would be left alone to support our family, including providing for me in Haiti, because I will not be able to support myself there. The stability and safety that we have been able to provide for our family will be destroyed, and my children's lives will be turned upside down. I do not know how my husband would make ends meet and care for our children if I was forced to return to Haiti. They would likely have to rely on public assistance to meet their basic needs because my husband would have to scale back his hours in order to care for our children. Furthermore, because my mother also has TPS, my children would lose the love and support of their grandmother, and my husband would have no one to help him care for our children. So much is uncertain right now, but one thing is for sure: my entire family will suffer a lot of harm if the partial vacatur goes into effect.

1          13.     I declare under penalty of perjury that the foregoing is true and correct, and

2    that this declaration was executed at Kentucky, this _30_ day of May, 2025.

3

4                                                    _____

5                                                    Sherika Blanc

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28