| | |
|---|---|
| Ahilan T. Arulanantham (SBN 237841)<br>arulanantham@law.ucla.edu<br>CENTER FOR IMMIGRATION LAW AND<br>POLICY, UCLA SCHOOL OF LAW<br>385 Charles E. Young Dr. East<br>Los Angeles, CA 90095<br>Telephone: (310) 825-1029<br><br>Emilou MacLean (SBN 319071)<br>emaclean@aclunc.org<br>Michelle (Minju) Y. Cho (SBN 321939)<br>mcho@aclunc.org<br>Amanda Young (SBN 359753)<br>ayoung@aclunc.org<br>ACLU FOUNDATION<br>OF NORTHERN CALIFORNIA<br>39 Drumm Street<br>San Francisco, CA 94111-4805<br>Telephone: (415) 621-2493<br>Facsimile: (415) 863-7832<br><br>Attorneys for Plaintiffs<br>*[Additional Counsel Listed on Next Page]* | YAAKOV M. ROTH<br>Acting Assistant Attorney General<br>Civil Division<br>SARAH L. VUONG (CA Bar 258528)<br>Assistant Director<br>WILLIAM H. WEILAND (Mass. Bar 661433)<br>Senior Litigation Counsel<br>LAUREN BRYANT (NY Bar 5321880)<br>ANNA DICHTER (NJ Bar 304442019)<br>JEFFREY HARTMAN (WA Bar 49810)<br>CATHERINE ROSS (DC Bar 9007404)<br>AMANDA SAYLOR (FL Bar 1031480)<br>ERIC SNYDERMAN (VA Bar 99563)<br>Trial Attorneys<br>U.S. Department of Justice, Civil Division<br>Office of Immigration Litigation<br>General Litigation and Appeals Section<br>P.O. Box 868, Ben Franklin Station<br>Washington, DC 20044<br><br>Attorneys for Defendants |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, MARIELA GONZÁLEZ, FREDDY JOSE ARAPE RIVAS, M.H., CECILIA DANIELA GONZÁLEZ HERRERA, ALBA CECILIA PURICA HERNÁNDEZ, E.R., HENDRINA VIVAS CASTILLO, A.C.A., SHERIKA BLANC, VILES DORSAINVIL, and G.S.,<br><br>    Plaintiffs,<br><br>vs.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,<br><br>    Defendants. | Case No. 3:25-cv-01766-EMC<br><br>Hon. Sallie Kim<br><br>**JOINT SUBMISSION RE IN CAMERA REVIEW OF MATERIALS WITHHELD AS SUBJECT TO DELIBERATE PROCESS AND ATTORNEY CLIENT PRIVILEGE** |

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitran (SBN 302081)
ebitran@aclusocal.org
Diana Sanchez (SBN 338871)
dianasanchez@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

Consistent with the May 29, 2025 ruling by Judge Edward M. Chen and ECF Docket 161, undersigned counsel for the parties submit this brief with 25 "bellwether" documents for in camera review regarding Defendants' assertions of deliberative process and attorney client privilege ("DPP" and "ACP"). *See* Volume 1 "Corrected" Privilege Log, attached as **Exhibit 1** and Volume 2 Privilege Log, attached as **Exhibit 2** (both sorted by date and time, with PII redacted).

The parties attest that they met and conferred telephonically on May 30, 2025, regarding the discovery disputes at issue and that they have complied with Section 9 of the Northern District of California's Guidelines for Professional Conduct regarding discovery.

| | |
|---|---|
| */s/ Emilou MacLean* | */s/ Sarah L. Vuong* |
| Emilou MacLean | Sarah L. Vuong |
| ACLU Foundation of Northern California | U.S. Department of Justice |
| *Attorney for Plaintiffs* | *Attorney for Defendants* |

I.      **PLAINTIFFS' POSITION**

**DPP**: This Court overruled Defendants' DPP assertions in *Ramos v. Nielsen*, No. 18-cv-01554-EMC, Dkts. 63, 79, 84 (N.D. Cal.). The grounds for overruling DPP as inapplicable, unsubstantiated, and outweighed by need are even stronger here; and DPP should be overruled.

*First*, DPP is not a valid objection in lawsuits about misconduct, pretext, and the wrongful intent of government actors. *Convertino v. DOJ*, 674 F. Supp. 2d 97, 102 (D.D.C. 2009); *In re Subpoena Duces Tecum Served on OCC*, 145 F.3d 1422, 1424 (D.C. Cir. 1998).

*Second*, the DPP assertions are unsubstantiated. Defendants have "no declaration, and hence no evidence, that any of the documents reviewed is typically kept confidential or that disclosure of such is likely to inhibit frank discussions and debate." *Ramos*, Dkt. 73 at n.4; *L.H. v. Schwarzenegger*, No. CIV S-06-2042 LKK GGH, 2008 WL 2073958, at *7 (E.D. Cal. May 14, 2008) (finding DPP waived absent declarations); *United States v. Rozet*, 183 F.R.D. 662, 665 (N.D. Cal. 1998) (DPP invoked only by agency head upon personal review). Absent a declaration, there is no assurance that withheld materials (a) were truly deliberative, *United States ex rel. Poehling v. UnitedHealth Grp., Inc.*, No. CV 16-8697 WWF (SSx), 2018 WL 8459926, at *13–14 (C.D. Cal. Dec. 14, 2018) (materials from a "superior" to a "subordinate" less likely to be deliberative), (b) have not "lost their predecisional status by being adopted as final policies" *id.*, or (c) pre-date challenged decisions. *Ramos*, Dkt. 73 (doubting DPP applies to post-decisional records). Numerous log entries appear to be post-decisional, final adopted policies, or otherwise not deliberative.[1]

*Third*, DPP is at most a qualified privilege, and evidence of misconduct, pretext, and wrongful intent establish a compelling need that outweighs Defendants' purported interest in maintaining DPP. *Ramos*, 2018 WL 5264529, at *2; *FTC v. Warner Commc'ns*, 742 F.2d 1156, 1161 (9th Cir. 1984) (identifying relevance, lack of alternatives, and government's role as pertinent factors in weighing whether to overrule DPP). Plaintiffs' showing of compelling need is stronger than in *Ramos*, where

---

[1] Numerous records withheld as DPP appear to be final agency action. *See, e.g.*, DHSHQ_00000167 ("Att B - Notice TPS Vacatur - Venezuela FINAL.docx"); DHSHQ_00000317 ("For S1 action - USCIS TPS Venezuela Package"). And 32% (62) of the log entries Defendants identified as concerning the Venezuela Vacatur, and 10% (20) of those identified as concerning the Termination, are tagged as DPP even though they postdate the vacatur and termination decisions, respectively. Until presented with Plaintiffs' in camera review document list, Defendants even withheld a "TPS Legal Authority" document produced with the AR in *Ramos*, and a draft congressional response.

1

JOINT SUBMISSION RE IN CAMERA REVIEW – CASE NO. 3:25-CV-01766-EMC

this Court overruled all DPP assertions, *Ramos*, Dkts. 63, 79, 84, because the Court already found evidence of pretext and "classic … racism" underlying the challenged decisions, Dkt. 93 at 58–59, 66, 74, which warrants overruling DPP, *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1020 (E.D. Cal. 2010). The withheld materials are essential for Plaintiffs to demonstrate the full extent of the pretext already apparent from the log and very limited production, which show the challenged decisions were preordained and not based on reasoned deliberation: Defendants began drafting the Venezuela vacatur notice before Secretary Noem's confirmation; advanced the termination before she signed the vacatur; and began drafting the partial vacatur of TPS for Haiti the day after the new administration's first communications about Haiti's designation. *See* Dkt. 165 at 3-10, 22. Other factors favoring disclosure include "the interest of the litigant, and ultimately society, in accurate judicial fact finding, … [and] the seriousness of the litigation and the issues [.]" *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003). The public interest in disclosure is at its apex where the challenged decisions impact more than 1.1 million people.

**ACP**: Defendants have withheld far more documents on ACP than they have produced. Over 50% of responsive documents have been withheld in whole or part as *both* DPP and ACP. It is not credible that ACP warrants withholding this breadth of documents. "Because [ACP] impedes full and free discovery of the truth, [it] is strictly construed," and Defendants "bear[] the burden of proving each essential element." *United States v. Ruehle*, 583 F.3d 600, 607–08 (9th Cir. 2009). Defendants' logs cannot support their sweeping ACP assertions. They should be required to (1) immediately produce documents where log entries lack substantiation and (2) either produce or supply compliant log entries within 7 days as to all other entries or be deemed to have waived ACP.

*First*, at least 194 entries do not identify *any* sender or recipient, yet over 95% have been withheld fully.[2] Communications with no sender or recipient cannot be for the "primary purpose" of seeking or providing confidential legal advice. *In re Grand Jury*, 23 F.4th 1088, 1091-92 (9th Cir. 2021). These entries are so facially deficient they should be ordered produced immediately.

---

[2] While many of these documents may be attachments, Defendants did not provide any family-identification field in the privilege log, making family assessments effectively impossible.

1   *Second*, adding in-house counsel to an email does not automatically trigger ACP. In particular, ACP does not apply to communications with counsel that serve dual purposes (e.g., to implement policy initiatives and general decision-making), not primarily to secure confidential legal advice. *See, e.g.*, *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998) (per curiam) (holding "advice on political, strategic, or policy issues [is] not ... shielded from disclosure by the [ACP]"); *Jud. Watch v. DHS*, 926 F. Supp. 2d 121, 146 (D.D.C. 2013) (holding discussions re general guidelines and efficiency not ACP); *Oracle Am., Inc. v. Google, Inc.*, 2011 U.S. Dist. LEXIS 96121, at *18–19 (N.D. Cal. Aug. 26, 2011) (requiring "clear showing" of purpose for including in-house counsel). Yet, for almost every purported ACP communication, Defendants also invoked DPP, reflecting that withheld communications veered more towards policy than legal advice, as the logs also indicate. *See, e.g.*, USCIS_1618 (subject: "Re: TPS VZ Termination: Data and Policy Matters").

*Third*, emails that solicit comments from a group do not qualify for ACP even if some recipients were in-house lawyers. *See, e.g.*, *Garcia v. County of Stanislaus*, 2022 WL 4237960, at *19 (E.D. Cal. Sept. 13, 2022); *Shenwick v. Twitter, Inc.*, 2018 WL 5750119, at *2 (N.D. Cal. Oct. 30, 2018). Likewise, underlying facts do not become shielded as ACP by dint of adding a lawyer to an email. *See, e.g.*, *Garcia*, 2022 WL 4237960, at *18–19 (collecting cases); *DAPs v. Thomson*, 2015 U.S. Dist. LEXIS 197474, at *65 (N.D. Cal. July 22, 2015). At a minimum, factual content should be disclosed. *See, e.g.*, *Castaneda v. Burger King Corp.*, 259 F.R.D. 194, 200 (N.D. Cal. 2009) (ordering "factual material" produced, permitting redactions only "to remove opinions and legal strategies"). For example, USCIS_00001623 and USCIS_00001371 appear to be communications curating positive country conditions facts to justify the termination of TPS.

*Fourth*, "courts have consistently refused to apply the [ACP] to information that the client intends or understands may be conveyed to others," and "the party asserting the [ACP] must prove it has not waived the privilege." *Garcia*, 2022 WL 4237960, at *7–8 (collecting cases). Here, the TPS statute explicitly requires inter-agency coordination, and, by all accounts, the Administration is actively involved in TPS decisionmaking. Participants in relevant communications necessarily expected the substance of emails and drafts to be shared outside of DHS. They also surely knew the

substance of documents would be made public, including via publication in the Federal Register.[3]

*Finally*, the logs are inadequate for Defendants to carry their burden of making a prima facie ACP showing. They do not consistently identify: "(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities … furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated." *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992). The descriptions are also typically so boilerplate as to be meaningless. For instance, 110 entries (25%) have the generic privilege description: "Email communications reflecting predecisional, deliberative discussions among DHS counsel and DHS regarding policy options and legal advice for Venezuela [or Haiti] TPS." *See Garcia*, 2022 WL 4237960, at *5, *17 (describing as deficient entries such as "confidential inter-department correspondence" and "communication made in confidence for the purpose of giving or obtaining legal advice").

Due to the log's deficiencies, Plaintiffs largely have had to fly blind when making selections for in camera review. But Defendants' over-assertion of ACP is apparent nonetheless. A side-by-side comparison of different iterations of log entries reveal that Defendants consider even generic words and phrases to be ACP: A "corrected" log withheld as ACP subject names previously disclosed, including such generic information as "RE: Venezuela package from early January" and "FW: TPS Haiti Vacatur: Request to USCIS for Actual Numbers." DHSHQ_00000634, USCIS_00001521. In addition, after Plaintiffs notified Defendants of their selections for in camera review, Defendants committed to withdraw privilege assertions at least in part from an unknown number of records.

Plaintiffs thus request that the Court 1) overrule DPP and order Defendants to produce within 3 days all documents withheld in whole or in part solely as DPP; and 2) order Defendants to produce facially unsubstantiated ACP log entries immediately and, within one week, provide compliant log entries or produce documents currently withheld in whole or in part as ACP.[4]

---

[3] *See, e.g*, DHSHQ_00000317 & DHSHQ_00000239 (circulating final Venezuela vacatur and termination documents); USCIS_00001477 (draft Haiti notice).

[4] Plaintiffs' last opportunity to present late-produced discovery to the Court in support of summary judgment will be in their June 27 reply, compelling an urgent production schedule.

## II.   DEFENDANTS' POSITION

As an initial matter, and as Defendants have argued previously, although the Court has determined it has jurisdiction to proceed, the Ninth Circuit will soon address this determination. Given that the Supreme Court has stayed this Court's postponement order, *Noem v. Nat. TPS Alliance*, No. 24A1059 (S. Ct. May 19, 2025) (staying ECF No. 93), Defendants again respectfully assert that this Court should refrain from requiring the Defendants from turning over any documents identified as privileged until the Ninth Circuit and the Supreme Court have issued their decisions on the matter. This is particularly so in light of the potential prejudice posed to Defendants if privileged materials are disclosed, only to find out they should not have been. Certainly, this court should not wholly remove Defendants' ability to invoke privilege while such a question remains pending.

The deliberative process privilege is a qualified privilege under federal law. *FTC v. Warner Comm'n, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984); *see also* 5 U.S.C. § 552(b)(5). "Federal courts, including the Ninth Circuit, have accepted the general premise that forced disclosure of predecisional deliberative communications can have an adverse impact on government decision-making." *Desert Survivors v. U.S. Dept. of the Interior,* 231 F. Supp. 3d 368, 383 (N.D. Cal. Feb. 6, 2017) (citing *Warner Commc'ns Inc.*, 742 F.2d at 1162)). In order to qualify for this privilege, the document must be both pre-decisional and deliberative. Pre-decisional documents are those that are "generated before the adoption of the agency's policy or decision." *See Warner Comm'n, Inc.*, 742 F.2d at 1161. Documents that are "deliberative in nature [] contain[n] opinions, recommendations, or advice about agency policies." *Id.* Plaintiffs do not contest that the documents at issue are pre-decisional and deliberative in nature. Instead, Plaintiffs contend that the deliberative process privilege should be waived wholesale because the lawsuit concerns the intent of government actors and government misconduct. ECF No. 159.

In assessing whether the deliberative process privilege applies, the court must weigh the following four factors: (1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in litigation; and (4) the extent to which disclosure would hinder frank and independent discussion. *See Warner Comm'n, Inc.*, 742 F.2d at 116. Here, the first and fourth factor weigh heavily in the government's favor.

1    First, the documents at issue are not relevant to Plaintiffs' allegations of racial animus and/or government misconduct. *See* Exhibit 3 (Declaration of Kika Scott, hereinafter "Scott Dec."); Exhibit 4 (Declaration of Robert Law, hereinafter "Law Dec."). Plaintiffs' sweeping demand that every pre-decisional, deliberative document should be turned over based solely on their baseless hunch that one of those documents might show the racial animus needed to substantiate their claim is the equivalent of "a blind fishing expedition seeking unknown evidence." *See e.g., U.S. v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984); *U.S. v. Larson*, No. 12-CR-00886-BLF-1, 2014 WL 5696204, at *2 (N.D. Cal. Nov. 4, 2014). Indeed, the entirety of Plaintiffs' discovery requests rest on the belief that the evidence provided might uncover pretextual justifications for the TPS determination, contrary to the Secretary's provided reasons. This is ultimately baseless speculation and Plaintiffs should not be allowed to circumvent privilege in hopes of uncovering some possible evidence of value. *See Securities Exchange Commission v. Stein*, 906 F.3d 823, 832 (9th Cir. 2018) (finding that "mere speculation" about outstanding discovery needed is insufficient to justify additional discovery).

Further, while the second and third factors may inure to Plaintiffs' favor, they are outweighed by the fourth factor – the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions – i.e., the very risk that deliberative process privilege aims to mitigate. *See e.g. Desert Survivors*, 231 F. Supp. 3d at 383 (recognizing "binding authority that requires this Court to be mindful of the possibility of chilling of frank and candid deliberations by administrative decision-makers"); *see also* 5 U.S.C. § 552(b)(5). There can be no doubt that any Temporary Protected Status determination involves an iterative, deliberative process, as the Secretary of Homeland Security considers various inputs in deciding whether to designate a country for TPS status in the first place or to later extend or terminate TPS status. Here, many of the documents Defendants are ordered to produce are deliberative in nature, covering internal comments, track changes, and deliberations that were not ultimately adopted and opinions provided to assist decisionmakers in developing policy. *See* Scott Dec. at ¶¶ 6 (a)-(c), 7; Law Dec. at ¶ 6 (a)-(c). In particular, the non-final draft documents identified contain "candid discussions, disagreements, and

explanations between agency attorneys, TPS subject matter experts, and operations personnel." *See* Law Dec. at ¶ 6 (a).[5]

The very purpose of the privilege is to promote candid discussions of policy decisions and to prevent public disclosure of internal agency opinions. The deliberative process privilege is rooted in "the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Citizens Union of City of New York v. Atty. Gen. of New York*, 269 F. Supp. 3d 124, 170 (S.D.N.Y. 2017) (internal quotations omitted); *Greenpeace v. Nat'l Marine Fisheries Serv.*, 198 F.R.D. 540, 543 (W.D. Wash.2000) ("The accepted rationale [of the deliberative process privilege] is that frank and open discussions within governmental agencies would be 'chilled' if the personal opinions and ideas of government personnel involved in the decision-making process were subject to public scrutiny."). The purpose of facilitating "open and frank discussion among those who make" decisions within the government, *Desert Survivors*, 231 F. Supp. 3d at 383, would not be served by exposing candid, subjective advice shared between Department officials about how best to apply U.S. immigration laws. *See* Scott Dec. at ¶¶ 8-9; Law Dec. at ¶¶ 7-8 (explaining that the protection of deliberations is necessary "to protect the open and honest exchange of ideas and opinions among DHS employees."). Plaintiffs' rush to pierce the deliberative process here to expose communications and documents that reveal the recommendations of agency officials on sensitive policy matters does nothing more than make it less likely that officials will be as forthcoming in their future communications. *See* Law Dec. at ¶ 8 ("This exchange is necessary to assist final decisionmakers in ensuring that DHS's mission of protecting the United States is faithfully executed. Release of the redacted information in the above referenced general topic could chill this exchange and impede DHS's decision-making process. This concern is particularly apt where, as here, the opinions, proposals, and recommendations of DHS employees concern approaches to the government's immigration enforcement that are the subject of public controversy. If DHS employees are aware that their opinions, deliberations, and recommendations may be subject to public

---

[5] *See* NTPSA-DHSHQ_00000086; NPTSA_DHSHQ_0000157; NPTSA_DHSHQ_0000172; NPTSA_DHSHQ_0000239; NPTSA_DHSHQ_0000317; NPTSA_DHSHQ_0000522; NTPSA-DHSHQ_00000379; NPTSA_USCIS_00000401; NPTSA_USCIS_00000419; NTPSA_USCIS_00001473; NTPSA_USCIS_00001477; NTPSA_USCIS_00001588.

1  disclosure—and the scrutiny and criticism which may follow—the candor of their views could be
2  chilled.").

3  In addition, several of the documents in question are protected from discovery by attorney-
4  client privilege.[6] The purpose of attorney-client privilege "is to encourage full and frank
5  communication between attorneys and their clients and thereby promote broader public interests in the
6  observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389
7  (1981). This privilege applies where, as here, "the agency is consulting its attorney as would any
8  private party seeking advice to protect personal interest." *Our Children's Earth Found. v. Nat'l Marine
9  Fisheries Serv.*, 85 F. Supp. 3d 1074, 1086 (N.D. Cal. 2015). Attorney-client privilege also protects
10 "legal advice and recommendations regarding agency action." *United States v. Pacific Gas and Elec.
11 Company,* No. 14-cr-00175-TEH-1, 2016 WL 3252779 *3 (N.D. Cal. Jun. 14, 2016); *see also Elec.
12 Frontier Found. v. Dep't of Def.*, No. C 09-05640 SI, 2012 WL 4364532, at *13 (N.D. Cal. Sept. 24,
13 2012) (holding that the attorney-client privilege applied to agency communications regarding
14 "whether certain policies apply to new situations, impressions, corrections and changes to prior
15 guidance, tentative guidance, seeking input regarding future issues, and otherwise seeking legal advice
16 that is not a neutral application of established policies"). Plaintiffs challenge internal briefing
17 memorandum, such as draft federal register notices with attorney and client comments, a legal memo
18 from the Acting General Counsel to the Secretary, and Department discussions regarding
19 administrative developments of immigrations policies, which involved legal advice from counsel
20 regarding statutory requirements and are precisely the type of evidence protected from discovery under
21 attorney-client privilege. *See* Law Dec. at ¶ 6 (a)-(c).

22 In sum, the documents provided for in camera review, including those identified by Plaintiffs,
23 are exempt from disclosure based on the aforementioned privileges.

---

[6] *See* NTPSA_USCIS_00000401; NTPSA_USCIS_00000419; NTPSA_USCIS_00001165; ; NTPSA_USCIS_00001309; NTPSA_USCIS_00001442; NTPSA_USCIS_00001443; NTPSA_USCIS_00001473; NTPSA_USCIS_00001477; NTPSA_USCIS_00001503; NTPSA_USCIS_00001588; NTPSA_USCIS_00001618; NTPSA_USCIS_00001856; NTPSA-DHSHQ_00000086; NPTSA_DHSHQ_0000157; NPTSA_DHSHQ_0000172; NPTSA_DHSHQ_0000239; NPTSA_DHSHQ_0000317; NPTSA_DHSHQ_0000522.

| | | |
|---|---|---|
| 1 | Date: June 4, 2025 | Respectfully submitted, |
| 2 | | |
| 3 | | ACLU FOUNDATION<br>OF NORTHERN CALIFORNIA |
| 4 | | |
| 5 | | */s/ Emilou MacLean*<br>Emilou MacLean |
| 6 | | Michelle (Minju) Y. Cho |
| 7 | | Amanda Young<br>ACLU FOUNDATION<br>OF NORTHERN CALIFORNIA |
| 8 | | Ahilan T. Arulanantham |
| 9 | | CENTER FOR IMMIGRATION LAW AND<br>POLICY, UCLA SCHOOL OF LAW |
| 10 | | Eva L. Bitran |
| 11 | | Diana Sanchez<br>ACLU FOUNDATION |
| 12 | | OF SOUTHERN CALIFORNIA |
| 13 | | Jessica Karp Bansal<br>Lauren Michel Wilfong (*Pro Hac Vice*) |
| 14 | | NATIONAL DAY LABORER ORGANIZING<br>NETWORK |
| 15 | | Erik Crew (*Pro Hac Vice*) |
| 16 | | HAITIAN BRIDGE ALLIANCE |
| 17 | | Attorneys for Plaintiffs |
| 18 | Date June 4, 2025 | YAAKOV M. ROTH |
| 19 | | Acting Assistant Attorney General<br>Civil Division |
| 20 | | WILLIAM H. WEILAND (Mass. Bar 661433) |
| 21 | | Senior Litigation Counsel |
| 22 | | CATHERINE ROSS (DC Bar 9007404) |
| 23 | | ERIC SNYDERMAN (VA Bar 99563)<br>ANNA DICHTER (NJ Bar 304442019) |
| 24 | | LAUREN BRYANT (NY Bar 5321880)<br>JEFFREY HARTMAN (WSBA 49810) |
| 25 | | AMANDA SAYLOR (FL Bar 1031480)<br>Trial Attorneys |
| 26 | | |
| 27 | | */s/ Sarah L. Vuong*<br>SARAH L. VUONG |
| 28 | | Assistant Director (CA Bar 258528)<br>U.S. Department of Justice, Civil Division |

9

JOINT SUBMISSION RE IN CAMERA REVIEW – CASE NO. 3:25-CV-01766-EMC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-1263
sarah.l.vuong@usdoj.gov

*Attorneys for the Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

/s/ *Sarah L. Vuong*
Sarah L. Vuong
U.S. Dept. of Justice, Civil Division
Assistant Director