1
2
3
4                          UNITED STATES DISTRICT COURT
5                        NORTHERN DISTRICT OF CALIFORNIA
6

7    NATIONAL TPS ALLIANCE, et al.,          Case No.  25-cv-01766-EMC   (SK)
8                  Plaintiffs,
                                             **ORDER REGARDING**
9          v.                                **DELIBERATIVE PROCESS**
                                             **PRIVILEGE**
10   KRISTI NOEM, et al.,
11                Defendants.                Regarding Docket Nos. 159, 177

12         Plaintiffs seek an order requiring Defendants to produce documents that Defendants have

13   withheld on the basis of the deliberative process privilege and attorney-client privilege.  For the

14   reasons set forth below, the Undersigned GRANTS IN PART and DENIES IN PART Plaintiffs'

15   motion.

16   **A.     Background**

17         Within her first month as Secretary of the Department of Homeland Security, Kristi Noem

18   altered the Temporary Protected Status ("TPS") designations for Venezuela and Haiti so as to

19   deprive over one million individuals of the right to live and work legally in the United States.

20   (Dkt. No. 74, ¶¶ 1-3.)  On February 19, 2025, Plaintiffs filed the instant action, alleging that

21   Secretary Noem's designations regarding TPS for Venezuela and Haiti were motivated by racial

22   and national-origin animus and thus violate the Fifth Amendment and the Administrative

23   Procedure Act.  (Dkt. Nos. 1, 74.)

24         On March 31, 2025, the District Court granted Plaintiffs' motion to postpone Secretary

25   Noem's TPS designations.  (Dkt. No. 93.)  In doing so, the District Court concluded that

26   Secretary Noem's "actions appear predicated on negative stereotypes casting class-wide

27   aspersions on their character" and that Plaintiffs "will likely succeed in demonstrating that the

28   actions taken by the Secretary are . . . motivated by unconstitutional animus."  (Dkt. No. 93, p. 2-

United States District Court
Northern District of California

3.)  The District Court relied on the following evidence of discriminatory motivation:

- Secretary Noem "made sweeping negative generalizations about Venezuelan TPS beneficiaries," such as "Venezuela didn't send us their best. They emptied their prisons and sent criminals to America," "the people of this country want these dirt bags out," and "Venezuela purposely emptied out their prisons, emptied out their mental health facilities and sent them to the United States of America."  (*Id.* at pp. 64-66.)  Many of these statements directly related to TPS policy and were made in close proximity to Secretary Noem's TPS designations.  (*Id.* at pp. 69-70.)

- President Donald J. Trump made similar discriminatory statements, including "they took the criminals out of Caracas and they put them along your border," Haitian immigrants (and TPS holders) are "eating the pets of the people that live" in Springfield, Ohio, and "we will put these vicious and bloodthirsty criminals in jail."  (*Id.* at pp. 66-69.)  Like Secretary Noem's statements, many of  President Trump's statements were directly connected to the TPS designations.  (*Id.* at pp. 69-70.)

- The first Trump Administration established a pattern of targeting non-white, non-European TPS holders.  (*Id.* at p. 72.)

- Secretary Noem's decision-making process was clearly anomalous in its speed and lack of consultation from constituent agencies.  (*Id.*)  The Secretary's decision to vacate existing TPS was unprecedented in the 35 years of the TPS program.  (*Id.* at 72-73.)

- The TPS designations lacked legal and evidentiary support.  (*Id.* at pp. 73-75.)  For example, Secretary Noem's justifications were based on "[g]eneralization of criminality to the Venezuelan TPS population as a whole," which "is baseless and smacks of racism predicated on generalized false stereotypes."  (*Id.* at 73.)

Although the Supreme Court stayed the District Court's postponement order, litigation on the merits proceeds.  (Dkt. No. 143.)  Plaintiffs pursued limited discovery related to a motion for summary judgment, which is set for hearing on July 11, 2025.  (Dkt. No. 165.)  The instant dispute centers on Defendants' withholding or redacting of documents based on the deliberative process privilege and the attorney-client privilege.  (Dkt. No. 159.)  The District Court referred this case to the Undersigned for the purposes of discovery and ordered the parties to agree to and submit 20-25

2

bellwether documents for in camera review.  (Dkt. Nos. 161, 164.)  The parties submitted the

bellwether documents and supporting briefing on June 4, 2025.  (Dkt. No. 177.)

**B.    Deliberative Process Privilege**

The deliberative process privilege is a qualified privilege under federal law.  *FTC v. Warner Comm'n, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (per curiam).  To qualify for the privilege, a document "must be predecisional—it must have been generated before the adoption of an agency's policy or decision."  *Id.*  In addition, a document must be "deliberative in nature, containing opinions, recommendations, or advice about agency policies."  *Id.*  Plaintiffs argue that the deliberative process privilege does not apply because Defendants failed to provide sufficient support to show that the documents are deliberative in nature.  After in camera review of the bellwether documents, the Undersigned finds that the documents designated under the deliberative process privilege qualify for that privilege.  In addition, Defendants provided declarations showing that the documents in question are deliberative in nature.  (Dkt. Nos. 177-3, 1770-4.)

However, the deliberative process privilege is not absolute.  *Id.*  "A litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure.  *Id.*  "Among the factors to be considered in making this determination are: 1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions."  *Id.*

Because Defendants have not argued for a "granular analysis," the Undersigned addresses the documents collectively.  *See Karnoski v. Trump*, 926 F.3d 1180, 1206 (9th Cir. 2019) (per curiam).  After examining the *Warner* factors, the Undersigned finds that applying the qualified deliberative process privilege is not warranted here.

**1.    Relevance**

First, the withheld documents are relevant to Plaintiffs' allegations of discriminatory motivations for the TPS designations.  Plaintiffs contend that Defendants provided one reason for the TPS designations, but in fact, relied upon other invalid reasons for those decisions.  To determine if Plaintiffs are correct, the decision-maker will need to examine Defendants'

United States District Court
Northern District of California

United States District Court
Northern District of California

1    deliberative process.  Defendants' pleas that Plaintiffs' requests for production are a "fishing

2    expedition" are unpersuasive.  As previously explained, the District Court has already found

3    support—including from the decisionmakers' own comments—for Plaintiffs allegations of racial

4    animus and national-origin animus.  Given the discriminatory statements, discriminatory history,

5    anomalous process, and lack of justification associated with the TPS designations, Plaintiffs'

6    requests for decisional materials are far from speculative.

7        In considering the relevance of the evidence, courts may also consider the seriousness of

8    the issues and litigation, the presence of issues concerning alleged misconduct by the government,

9    the interest of the litigant and society in accurate fact finding by the courts, and the federal interest

10   in enforcement of the law.  *North Pacifica LLC v. City of Pacifica*, 274 F.Supp.2d 1118, (N.D.

11   Cal. 2003) (internal citation omitted).  Those considerations also weigh heavily in support of

12   Plaintiffs.  The issues at stake in this litigation could not be more serious—the immigration status,

13   livelihoods, and security of over one million individuals who have rebuilt their lives in the United

14   States after fleeing humanitarian crises.  Governmental conduct is squarely at issue here, where

15   Plaintiffs have credibly alleged that racial and national-origin animus led to the decisions at issue.

16   Consequently, society has a strong interest in accurate fact finding where the propriety of

17   government decision making is at issue.  Enforcement of the law is not a central issue for either

18   party.

19       **2.  Availability of Other Evidence and Government's Role in Litigation**

20       There is no dispute that the second and third factors favor Plaintiffs.  (*See* Dkt. No. 177, p.

21   6 (Defendants conceding that the second and third factors "inure to Plaintiffs' favor").)  "The

22   evidence sought is primarily, if not exclusively, under Defendants' control, and the government—

23   the Executive—is a party to and the focus of the litigation."  *See Karnoski*, 926 F.3d at 1206.

24       **3.  Extent to Which Disclosure Would Hinder Future Discussions**

25       As for the fourth factor—the potential chilling effect on frank government deliberations—

26   "the disclosure of some types of documents will be less likely to cause embarrassment or chilling

27   than others."  *Desert Survivors v. US Dep't of the Interior*, 231 F. Supp. 3d 368, 385 (N.D. Cal.

28   2017).  The disclosure of "preliminary drafts" is "not likely to chill speech," because "these are

4

1    relatively polished drafts, and the recreation of the decisionmaking process should in no way

2    embarrass the agencies." *Id.* (citation omitted).  Disclosure of "preliminary staff views or tentative

3    opinions" might chill speech because they "represent the give-and-take of the agencies' internal

4    deliberations, and their disclosure would discourage such deliberations." *Id.* (citation omitted).

5        Here, Defendants argue that many of the documents contain disagreements and

6    explanations, whose disclosure would chill frank discussions in the future given that the subject

7    matter involves "public controversy." (Dkt. No. 177, p. 7.)  Defendants offer evidence that

8    disclosure of the documents "would jeopardize DHS's ability to engage in decision-making by

9    discouraging future candid discussion and debate within the government." (Dkt. No. 177-4

10   (Declaration of Robert Law, Senior Counselor to the Secretary, U.S. Department of Homeland

11   Security).)  Law further posits that "DHS and other government personnel would be reluctant to

12   share their opinions for or against a particular decision if those pre-decisional comments were

13   subject to disclosure" and that "it is imperative to protect the open and honest exchange of ideas

14   and opinions among DHS employees . . . to assist final decisionmakers in ensuring that DHS's

15   mission of protecting the United States is faithfully executed." (*Id.*)  Finally, Law argues that

16   release of the documents in question would particularly chill discussion because the documents

17   concern "approaches to the government's immigration enforcement that are the subject of public

18   controversy." (*Id.*)  Other evidence that Defendants submit echoes these concerns in identical

19   terms.  (Dkt. No. 177-3 (Declaration of Kika Scott, Acting Deputy Director, U.S. Citizenship and

20   Immigration Services).)

21        Defendants' argument about chilling future discussions applies to any case in which a

22   party asserts the deliberative process privilege.  If courts were to accept this explanation to

23   override any attempt to obtain documents otherwise shielded by the deliberative process privilege,

24   then the deliberative process privilege would be absolute.  However, the government's interest in

25   frank communication is "not insurmountable." *Karnoski*, 926 F.3d at 1206.  Here, the arguments

26   in support of nondisclosure are particularly weak.  Defendants have not explained specifically how

27   disclosure of the documents in question "would cause embarrassment on the part of the author or

28   give rise to confusion on the part of the public." *Desert Survivors v. US Dep't of the Interior*, No.

16-CV-01165-JCS, 2017 WL 1549373, at *7 (N.D. Cal. May 1, 2017).  Instead, Defendants' statements are general in nature.  The only specific argument that Defendants make is that the issue in this case is "the subject of public controversy."  Again, this argument could apply to any situation in which a party seeks documents otherwise protected by the deliberative process privilege, and that the subject matter is controversial shows that the information is serious and relevant, as discussed in the analysis of factor one above.

Defendants previously raised the same deliberative process argument in *Ramos et al. v. Nielsen et al.*, No. 18-cv-01554-EMC, in connection with materials related to TPS designations during the first Trump administration.  (*Ramos et al v. Nielsen et al*, No. 18-cv-01554-EMC, Dkt. Nos. 61, 62, 73.)  In that case, Defendants contended that disclosure would chill internal preparation for meetings and congressional hearings.  (*Id.* at Dkt. No. 73.)  Both the Undersigned and the District Court rejected that argument.  (*Id.* at Dkt. Nos. 63, 79, 84.)  As a result, "[t]he government produced thousands of documents, including a significant number of drafts, emails, and other deliberative materials."  *Ramos v. Wolf*, 975 F.3d 872, 884 (9th Cir. 2020), *reh'g en banc granted, opinion vacated*, 59 F.4th 1010 (9th Cir. 2023).  There is no indication that these disclosures had any chilling effect on future deliberations. To the contrary, the existence of deliberative materials in the present case suggests that the prior disclosures did not materially inhibit the government's ability to engage in candid internal discussions.

### 4.  Balancing of Factors

Defendants do not provide any analysis for balancing the factors and do not explain why the Plaintiffs' need for the materials and the need for accurate fact-finding overrides Defendants' interest in non-disclosure.  Here, the balance tips in favor of Plaintiffs, as, in these circumstances, applying the deliberative process privilege to protect disclosure of materials from Defendants is not warranted.  Plaintiffs cannot obtain this evidence in any other manner, and their arguments have support in evidence.  Their need for this evidence on this important topic outweighs the potential chilling effect on future discussions.

/ / /

/ / /

6

C.    **Attorney-Client Privilege**

    1.  **Bellwether Documents**

Among the 25 bellwether documents submitted for in camera review, it is clear that some fall within the attorney-client privilege. Those documents are bates labeled as NTPSA_USCIS_00000086, 00000157, 00000173, 00000239, 00000317, 00000522, and 00001618.

Defendants also claim the protection of the attorney-client privilege for additional documents: NTPSA_USCIS_00000401, 00000419, 00001473, 00001471. However, Defendants' privilege log with regard to those documents is insufficient to assess whether each document's designation as privileged is justified. To the extent that Defendants continue to assert the attorney-client privilege for documents other than the ones listed above, Defendants SHALL produce an amended privilege log that complies with the Undersigned's standing order on or before June 10, 2025.

    2.  **Privilege Log in General**

In general, Plaintiffs allege that Defendants have withheld documents without properly identifying the basis for attorney-client privilege. For example, Defendants claim privilege for 194 documents without identifying an author/sender and recipient. Defendants bear the burden to show that the attorney-client privilege protects a document from disclosure. *United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009). Defendants cannot carry this burden if they fail to identify the author/sender and recipient.

D.    **Conclusion**

The Undersigned GRANTS Plaintiffs' motion to compel production of responsive documents withheld on the basis of the deliberative process privilege. The Undersigned ORDERS Defendants to produce documents for which Defendants claim only the deliberative process privilege by June 13, 2025. Defendants are not required to produce the bellwether documents described above that the attorney-client privilege protects.

Those Undersigned reserves ruling on those documents which (1) were not included by the bellwether documents, and (2) purportedly fall within the attorney-client privilege. The Undersigned ORDERS Defendants to produce a privilege log for those documents, in compliance

United States District Court
Northern District of California

1    with the Standing Order, by June 13, 2025.

2        **IT IS SO ORDERED**.

3    Dated: June 6, 2025

4    
     _____

5    SALLIE KIM
     United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California