YAACOV M. ROTH
Acting Assistant Attorney General
Civil Division
SARAH L. VUONG (CA Bar 258528)
Assistant Director
WILLIAM H. WEILAND (Mass. Bar 661433)
Senior Litigation Counsel
LAUREN BRYANT (NY Bar 5321880)
ANNA DICHTER (NJ Bar 304442019)
JEFFREY HARTMAN (WA Bar 49810)
CATHERINE ROSS (DC Bar 9007404)
AMANDA SAYLOR (FL Bar 1031480)
ERIC SNYDERMAN (VA Bar 99563)
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, *et al.*,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,<br><br>　　　　　Defendants. | Case No. 3:25-cv-1766-EMC<br><br>Judge: Hon. Edward M. Chen<br><br>DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS [ECF 122]<br><br>Date:　July 11, 2025<br>Time:　9:00 A.M.<br>Place:　Courtroom 5, 17th Floor,<br>　　　　San Francisco U.S. Courthouse |

DEFS.' REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-1766-EMC

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

    I.    The Court Lacks Subject-Matter Jurisdiction Over All of Plaintiffs' Claims ................... 2

        A.    Plaintiffs Lack Standing to Challenge the Partial Vacatur of Haiti's TPS Designation ............................................................................................. 3

        B.    8 U.S.C. § 1254a(B)(5)(a) Expressly Bars Review of TPS Determinations .......... 3

        C.    The APA Precludes Review of TPS Determinations Concerning National Interest ................................................................................................ 4

        D.    8 U.S.C. §1252(f)(1) Bars Relief from This Court ............................................... 6

    II.    Plaintiffs Fail to State a Claim Under the APA ................................................................ 8

        A.    The Secretary's Determinations Were Not Contrary to the Law ........................... 8

        B.    The Secretary's Termination and Vacatur Were Not Arbitrary and Capricious... 10

    III.    Plaintiffs' Equal Protection Claim Fails ......................................................................... 11

        A.    Trump v. Hawaii Provides the Appropriate Standard of Review ........................ 11

        B.    Plaintiffs Fail to State a Claim Even Under a Heightened Standard of Review ... 12

CONCLUSION ......................................................................................................................... 14

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Albertson v. FCC*,
  182 F.2d 397 (D.C. Cir. 1950) ........................................................................................... 9

*Arizona v. United States*,
  567 U.S. 387 (2012) ........................................................................................................... 5

*California v. Grace Brethren Church*,
  457 U.S. 393 (1982) ........................................................................................................... 7

*DHS v. Regents*
  591 U.S. 1 (2020) ...................................................................................................... 13, 14

*Fiallo v. Bell*,
  430 U.S. 787 (1977) ........................................................................................................... 5

*Galvan v. Press*,
  347 U.S. 522 (1954) ......................................................................................................... 12

*Galvez v. Jaddou*,
  52 F.4th 821 (9th Cir. 2022) .......................................................................................... 6, 7

*Garland v. Aleman Gonzalez*,
  596 U.S. 543 (2022) ........................................................................................................ 6, 7

*Harisiades v. Shaughnessy*,
  342 U.S. 580 (1952) .................................................................................................... 11, 12

*Holder v. Humanitarian Law Project*,
  561 U.S. 1 (2010) ............................................................................................................. 11

*Hollingsworth v. Perry*,
  558 U.S. 183 (2010) ........................................................................................................... 1

*Ivy Sports Medicine, LLC v. Burwell*,
  767 F.3d 81 (D.C. Cir. 2014) ............................................................................................. 9

*Kelch v. Dir., Nev. Dep't of Prisons*,
  10 F.3d 684 (9th Cir. 1993) ............................................................................................... 9

*Labrador v. Poe*,
  144 S. Ct. 921 (2024) ......................................................................................................... 3

*Last Best Beef, LLC v. Dudas*,
   506 F.3d 333 (4th Cir. 2007) ................................................................................................... 9

*Macktal v. Chao*,
   286 F.3d 822 (5th Cir. 2002) ................................................................................................... 9

*Mathews v. Diaz*,
   426 U.S. 67 (1976) ............................................................................................................. 5, 11

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) ................................................................................................. 3

*Mazaleski v. Treusdell*,
   562 F.2d 701 (D.C. Cir. 1977) ................................................................................................. 9

*Newdow v. Roberts*,
   603 F.3d 1002 (D.C. Cir. 2010) ............................................................................................... 7

*Old Person v. Brown*,
   312 F.3d 1036 (9th Cir. 2002) ................................................................................................. 2

*Poursina v. United States Citizenship & Immigr. Servs.*,
   936 F.3d 868 (9th Cir. 2019) ............................................................................................ 4, 11

*Ramos v. Nielsen*,
   975 F.3d 872 (9th Cir. 2020) ........................................................................................... 10, 14

*S. Or. Barter Fair v. Jackson County*,
   372 F.3d 1128 (9th Cir. 2004) ................................................................................................. 2

*Trump v. Hawaii*,
   585 U.S. 667 (2018) ......................................................................................................... 11, 12

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*,
   429 U.S. 252 (1977) ......................................................................................................... 12, 13

**STATUTES**

**Immigration and Nationality Act of 1952, as amended:**

5 U.S.C. § 701(a)(2) ........................................................................................................................ 4

8 U.S.C. § 1252(f)(1) ............................................................................................................ 1, *passim*

8 U.S.C. § 1252a(b)(5)(A) ............................................................................................................ 12

8 U.S.C. § 1254a ................................................................................................................... 6, 8, 10

DEFS.' REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-1766-EMC

iii

8 U.S.C. § 1254a(a)(1)(A) ................................................................................................................ 7

8 U.S.C. § 1254a(b) .................................................................................................................... 1, 8

8 U.S.C. § 1254a(b)(1) .................................................................................................................. 11

8 U.S.C. § 1254a(b)(1)(C) ............................................................................................................ 11

8 U.S.C. § 1254a(b)(3)(A) ................................................................................................... 5, 8, 10

8 U.S.C. § 1254a(b)(3)(B) ......................................................................................................  8, 10

8 U.S.C. § 1254a(b)(3)(C) ................................................................................................... 8, 9, 10

8 U.S.C. § 1254a(b)(5)(A) .......................................................................................................... 1, 3

8 U.S.C. § 1254a(b)(C) ................................................................................................................... 5

8 U.S.C. § 1254a(d)(2) .................................................................................................................. 10

8 U.S.C. § 1254a(d)(3) .................................................................................................................. 10

## **OTHER AUTHORITIES**

*Reconsideration and Recission of Termination of the Designation of El Salvador for [TPS]; Extension of the [TPS] Extension for El Salvador*,
   88 Fed. Reg. 40,282, (June 21, 2023) ....................................................................................... 8

*Vacatur of 2025 Temporary Protected Status Decision for Venezuela*,
   90 Fed. Reg. 8,806, 8,809 (Feb. 3, 2025) ................................................................................. 8

*Partial Vacatur of 2024 Temporary Protected Status Decision for Haiti*,
   90 Fed. Reg, 10,511, 10,513 (Feb. 24, 2025) ........................................................................... 8

*Termination of the October 3, 2023 Designation of Venezuela for Temporary Protected Status*,
   90 Fed. Reg. 9,040, 9,042 (Feb. 5, 2025) ................................................................................ 13

H. Rept. 101-244 Pt. 1 at 7-8 (1989) ............................................................................................... 7

## **FEDERAL RULES OF APPELLATE PROCEDURE**

Fed. R. Civ. P. 12(b)(1) ................................................................................................................. 14

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 14

DEFS.' REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-1766-EMC

iv

# INTRODUCTION

The Supreme Court's May 19, 2025 order in *Noem v. National TPS Alliance*, No. 24A1059 (S. Ct. May 19, 2025), which granted the government's application for a stay of this Court's order postponing the Secretary of Homeland Security's "decision to vacate the extension of the 2023 Designation and to terminate the 2023 Designation" as to Venezuela, ECF No. 93, underscores the strength of the government's position in this case. With just one justice noting dissent, the Supreme Court ruled that the government is likely to succeed in challenging this Court's order accepting the same legal theories advanced by Plaintiffs here. *See Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curium) (in order to "obtain a stay pending the filing and disposition of a petition for writ of certiorari, an applicant must show," among other things, "a fair prospect that a majority of the Court will vote to reverse the judgment below."). By the same measure, the Court should grant Defendants' motion to dismiss in this case.

The issues before this Court are straightforward. First, the Court lacks subject-matter jurisdiction because the INA reflects Congress' clear choice to preclude judicial review of "*any* determination . . . with respect to the designation, or termination, or extension of a designation of foreign state" for Temporary Protected Status. 8 U.S.C. § 1254a(b)(5)(A). Secretary Noem's determinations to vacate and partially vacate TPS extensions for Venezuela and Haiti, and her determination to terminate TPS for Venezuela, plainly fall within the scope of the INA's bar on judicial review of TPS determinations. A separate provision of the INA – 8 U.S.C. § 1252(f)(1) – likewise bars this Court from "enjoin[ing] or restrain[ing]" the Secretary's authority to designate, extend, or terminate TPS under 8 U.S.C. § 1254a(b).

Second, even if judicial review were available, Plaintiffs have not plausibly alleged how the Secretary's reasoned decision making, pursuant to a broad delegation of authority by Congress, was nonetheless "contrary to law" or "arbitrary and capricious." Nor have Plaintiffs plausibly alleged that

DEFS.' REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-1766-EMC

1

the Secretary's actions violate their rights to equal protection or substantive due process. The Supreme Court has long held – and recently reaffirmed – that constitutional challenges to immigration policy choices are reviewed for rational basis. Properly reviewed under the rational basis standard, Plaintiffs fail to state a claim. Even under a heightened review standard, the Court should dismiss Plaintiffs' constitutional claims because their claims of discriminatory animus rest entirely on public statements of the Secretary and the President that are remote in time from the challenged TPS determinations and made in unrelated contexts. And more fundamentally, the statements on which Plaintiffs rely simply reflect concern regarding illegal immigration and criminal activity and have nothing to do with race or ethnicity.

## ARGUMENT

### I. THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER ALL OF PLAINTIFFS' CLAIMS

At the outset, Plaintiffs argue that Defendants' jurisdictional arguments—as well as most of our merits arguments—are foreclosed by the Court's decision granting preliminary relief for Venezuela TPS holders. Plaintiffs argue that this decision is now the law of the case. ECF No. 158, 1, 4, 9. But "the general rule" is that "decisions on preliminary injunctions" are not binding in later stages of the proceedings and "do not constitute the law of the case." *S. Or. Barter Fair v. Jackson County*, 372 F.3d 1128, 1136 (9th Cir. 2004). Regardless, even if the law of the case doctrine applied, it is subject to exceptions when "the decision is clearly erroneous and its enforcement would work a manifest injustice," "intervening controlling authority makes reconsideration appropriate," or "substantially different evidence" has since been introduced. *Old Person v. Brown*, 312 F.3d 1036, 1039 (9th Cir. 2002). Here, respectfully, the Court's initial decision was clearly erroneous, as the Supreme Court concluded with just one noted dissent that the government was likely to prevail on the merits and would be irreparably harmed in the interim.

DEFS.' REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-1766-EMC

2

Likewise, the Supreme Court's stay decision clearly makes reconsideration appropriate; nothing requires the Court to continue adhering to reasoning the Supreme Court has since rejected. Plaintiffs suggest that the Supreme Court may have merely "credited Defendants' arguments with respect to the proper scope of preliminary relief," but they offer no support for that reading, and that reading does not accord with the Supreme Court's decision to stay the Court's order wholesale rather than narrowing its scope. ECF No. 158, 1-2; *see, e.g.*, *Labrador v. Poe*, 144 S. Ct. 921, 921 (2024) (staying a preliminary injunction "except as to … the plaintiffs"). The law of the case doctrine does not apply here.

### A. Plaintiffs Lack Standing to Challenge the Partial Vacatur of Haiti's TPS Designation

As Defendants' motion to dismiss explained, Plaintiffs lack standing to challenge the February 2025 partial vacatur of the June 2024 extension and redesignation of Haiti for TPS because Plaintiffs did not experience a concrete harm when the Secretary moved up the deadline for reconsideration of Haiti's TPS status and with it, the end date of Haiti's latest TPS extension. ECF No. 122, 8. Plaintiffs fail to demonstrate that the February 2025 action—distinct from a possible future termination of TPS for Haiti— caused them an injury that is "concrete, particularized and imminent, rather than conjectural or hypothetical." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

### B. 8 U.S.C. § 1254a(B)(5)(a) Expressly Bars Review of TPS Determinations

Congress has unambiguously committed to the Secretary's unreviewable authority any and all determinations with respect to TPS designation, extension, and termination. 8 U.S.C. § 1254a(b)(5)(A). The Secretary's determinations vacating and partially vacating the prior TPS extensions for Venezuela and Haiti are undeniably determinations *with respect to* the extension of TPS designations. These determinations are thus not subject to this Court's review. *See* ECF No. 122, 10.

Plaintiffs try to resist this conclusion, asserting that aside from Article III standing, "[e]very other jurisdictional argument Defendants raise is foreclosed by this Court's prior decision." *See* ECF No. 158,

DEFS.' REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-1766-EMC

3

4 (citing ECF No. 93). But the Supreme Court stayed that decision pending the outcome of the Government's appeal, indicating that eight justices found the government, not Plaintiffs, likely to succeed on jurisdiction, the underlying merits, or both. *See Noem v. National TPS Alliance*, No. 24A1059.

Plaintiffs narrowly construe the word "determination" in Section 1254a(b)(5)(A), asserting that it refers only to "the Secretary's conclusion that a nation satisfies certain country conditions requirements relevant to TPS decisionmaking." ECF No. 158, 6. But that is an unreasonably narrow reading of a statute that is written in strikingly broad terms. If Congress meant what Plaintiffs say, it could have simply said there would be "no judicial review of a determination to designate, or terminate or extend designation, of a foreign state under this subsection." Congress instead wrote a much broader jurisdictional bar, using broadening language that Plaintiffs never account for. Courts cannot review *any* determination, not just a final factual determination of country conditions; and courts cannot review any determination *with respect to* a TPS designation, extension, or termination—again, not just a final factual determination about country conditions. *See* ECF No. 158, 9-10.

Because Congress broadly precluded review of TPS determinations, ECF No. 122, 9-10, and because Plaintiffs' claims go directly to that prohibited subject matter, the Court lacks authority to consider those claims.

**C. The APA Precludes Review of TPS Determinations Concerning National Interest**

The APA precludes review where the agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Plaintiffs' APA claims attempt to attack the Secretary's reasoning, justifications, and considerations for the challenged actions. ECF No. 158, 7; Compl. ¶¶ 198-215. The APA's jurisdictional bar applies here because the Secretary's determination concerning the national interest is committed to her discretion, and courts lack meaningful standards for reviewing it. *Poursina v. United States Citizenship & Immigr. Servs.*, 936 F.3d 868, 871 (9th Cir. 2019) ("The invocation of the 'national

DEFS.' REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-1766-EMC

4

interest' is a core example of a consideration that lacks a judicially manageable standard of review."). Because this determination calls upon the Secretary's unique expertise and lacks a meaningful standard for judicial review, it would be improper for this Court to review it—or to do so through a back door by considering Plaintiffs' challenges to the Secretary's reasoning, justifications, and considerations for the challenged actions. *Id*. at 874.

Plaintiffs also argue that under 8 U.S.C. § 1254a(b)(C), the Secretary is "only to assess 'national interest' at the time of initial designation." ECF No. 158, 7, 14. Not so. The statute requires the Secretary to periodically assess "whether the conditions for [TPS] designation under this subsection continue to be met" in deciding whether to extend or instead terminate a designation. 8 U.S.C. § 1254a(b)(3)(A). And if that left any doubt, the termination provision refers back to "the conditions for designation under paragraph (1)"—which includes the national-interest assessment. *Id.* § 1254a(b)(3)(B). So does the extension provision. *Id.* § 1254a(b)(3)(C) ("the conditions for designation under paragraph (1)").

Even if the text did not *require* consideration of the national interest, it certainly would not *foreclose* that consideration, as Plaintiffs argue. ECF No. 158, 20. A national interest finding by the Secretary touches on core statutory and constitutional duties relating to control of entry of persons and the conduct of foreign relations. ECF No. 122, 12, 16; *see Arizona v. United States*, 567 U.S. 387, 409 (2012) (holding the federal government must speak "with one voice" in determining "whether it is appropriate to allow a foreign national to continue living in the United States"); *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (describing "the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control."); *Mathews v. Diaz*, 426 U.S. 67, 81 (1976) (such judgments "are frequently of a character more appropriate to either the Legislature or the Executive."); *see also* ECF No. 60, 16. It would be astonishing for a statute to be

able to foreclose the Secretary of Homeland Security from considering national security, especially without saying as much.

### D.  8 U.S.C. §1252(f)(1) Bars Relief from This Court

Plaintiffs' arguments regarding whether 8 U.S.C. 1252(f)(1) applies in this matter are unavailing. ECF No. 158, 8-9. As Defendants have explained, § 1252(f)(1) bars lower courts from entering an order that "enjoin[s] or restrain[s]" federal officials from enforcing, implementing, or otherwise carrying out "the specified statutory provisions." ECF No. 122, 12; s*ee Garland v. Aleman Gonzalez*, 596 U.S. 543, 549-50 (2022). Here, Plaintiffs seek an order to "set aside" the Secretary's determinations. *See* FAC ¶ 10, Prayer for Relief 6. But, again, such an order would "enjoin or restrain" the Secretary and DHS from implementing the TPS provisions laid out in § 1254a. Plaintiffs can call it what they wish, but at base, they seek exactly the restraint that § 1252(f)(1) prohibits. Even this Court, in its now-stayed order granting postponement of the effective date of some challenged actions, did not directly rule on whether the relief Plaintiffs seek would operate as an injunction. ECF No. 93, 18.

Plaintiffs argue that Section 1252(f)(1) does not apply to the TPS statute because IIRIRA did not substantively amend the TPS statute. ECF No. 158, 8. That argument is meritless. Section 1252(f)(1) applies to part IV of subchapter II of the INA, "as amended by" IIRIRA. That means that Section 1252(f)(1) applies to the relevant provisions of the INA, including IIRIRA's amendments to those provisions. The case Plaintiffs cite, *Galvez v. Jaddou*, supports rather than undermining this straightforward reading. ECF No. 158, 8 (citing 52 F.4th 821 (9th Cir. 2022)). *Galvez* explained that the relevant provision there was "not a provision of the INA" because it "d[id] not amend the INA"—in contrast to Section 1254a, which is a provision of the INA. 52 F.4th at 830. And *Galvez*'s holding that a provision added *after* IIRIRA was not part of the INA as amended by IIRIRA is irrelevant here, where

DEFS.' REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-1766-EMC

6

Section 1254a preceded IIRIRA. *Id.* at 831. Whether IIRIRA "substantively amended" the TPS statute is irrelevant, and *Galvez* does not say otherwise. ECF No. 158, 8.

Plaintiffs also incorrectly read the legislative history of § 1252(f)(1) to ignore Congress' stated intent at the time of final passage of IIRIRA. *See* ECF No. 158, 8-9. Congress intended to bar judicial review not just of the operation of removal procedures established in the statute, but also the decisions about whether to "commence proceedings" against an alien. *See* H.R. Rep. No. 104-828 Pt. 1, at 221 (1996) (Conf. Rep.).[1] Use of the term "commence proceedings" by conferees selected by both Houses to describe their intent for the provision indicates that they meant to bar judicial review of any decision concerning whether to enforce immigration statutes against an alien. *See id*. And, as the legislative history of the TPS Statute shows, decisions to designate a country for TPS represent a decision by the Secretary not to commence proceedings against individual aliens during the time their country is designated and they individually qualify for TPS. *See* 8 U.S.C. § 1254a(a)(1)(A); *see also* H. Rept. 101-244 Pt. 1 at 7-8 (1989) (describing the aim of a precursor TPS bill as to create statutory procedures and standards for "blanket relief from deportation for a national group").

Section 1252(f)(1) is a clear bar to review of the Secretary's actions, and Plaintiffs' arguments fail to overcome the specific evidence demonstrating that the "setting aside" of the vacatur and termination determinations is the type of coercive order barred by § 1252(f)(1). And this applies even where Plaintiffs seek declaratory relief. *See Aleman Gonzalez*, 596 U.S. at 551 n.2; cf. *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982) (Tax Injunction Act barred declaratory relief as well as injunctive

---

[1] Legislative history cited by Plaintiffs is the product only of the House Judiciary Committee, where the Conference Report and Joint Explanatory Statement cited above reflects the views of conferees selected by the entirety of both Houses of Congress on the final IIRIRA bill. *See* Stanley Basch, Cong. Rsch. Serv., 98-382 at 1, Conference Reports and Joint Explanatory Statements (last updated 2015).

DEFS.' REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-1766-EMC

7

relief); *Newdow v. Roberts*, 603 F.3d 1002, 1012 (D.C. Cir. 2010). This Court cannot grant Plaintiffs the relief they seek, and thus, these claims should be dismissed.

## II. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE APA

Even if this Court finds it has jurisdiction, the Secretary's decisions were lawful and consistent with the procedures set forth under 8 U.S.C. § 1254a. Plaintiffs have failed to state a claim and this matter should be dismissed.

### A. The Secretary's Determinations Were Not Contrary to the Law.

Nothing in the TPS statute forecloses the Secretary's inherent authority to reconsider a prior TPS determination, particularly an erroneous one. In fact, the Secretary has discretion over both the length of a TPS designation and the timing of periodic review. 8 U.S.C. § 1254a(b)(3)(A)-(C). Secretary Noem is not the first official to recognize as much. In fact, former Secretary Mayorkas reconsidered an earlier TPS determination during his tenure. *See Consideration and Recission of Termination of the Designation of El Salvador for [TPS]; Extension of the [TPS] Extension for El Salvador*, 88 Fed. Reg. 40,282, 40,285 n.16 (June 21, 2023) ("2023 Mayorkas Reconsideration"). The TPS statute imposes no deadlines or timeframes for modifying or vacating a deficient extension. *See* 8 U.S.C. § 1254a(b).

Here, the Secretary permissibly exercised her reconsideration authority, acting promptly once she took office to reconsider and vacate Secretary Mayorkas's prior TPS decisions. The Secretary's determination was necessary because former Secretary Mayorkas's prior decision concerning Venezuela "did not acknowledge the novelty of its approach or explain how it is consistent with the TPS statute." *Vacatur of 2025 Temporary Protected Status Decision for Venezuela*, 90 Fed. Reg. 8806, 8809 (Feb. 3, 2025) ("Venezuela Vacatur"). The prior decision for Haiti lacked explanation as to why the 18-month extension period was chosen, failed to consider how the decision may impact the national interest, and relied on dated country conditions information. *Partial Vacatur of 2024 Temporary Protected Status*

*Decision for Haiti*, 90 Fed. Reg, 10,511, 10,513 (Feb. 24, 2025) ("Haiti Partial Vacatur"). An administrative agency has inherent or statutorily implicit authority to "reconsider and change a decision if it does so within a reasonable period of time" if Congress has not foreclosed this authority by requiring other procedures. *Mazaleski v. Treusdell*, 562 F.2d 701, 720 (D.C. Cir. 1977); *see, e.g.*, *Kelch v. Dir., Nev. Dep't of Prisons*, 10 F.3d 684, 687 (9th Cir. 1993) (applying Nevada law holding "administrative agencies have an inherent authority to reconsider their own decision, since the power to decide in the first instance carries with it the power to reconsider"); *Albertson v. FCC*, 182 F.2d 397, 399 (D.C. Cir. 1950) ("The power to reconsider is inherent in the power to decide."); *Ivy Sports Medicine, LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014); *Macktal v. Chao*, 286 F.3d 822, 825-26 (5th Cir. 2002); *see also The Last Best Beef, LLC v. Dudas*, 506 F.3d 333, 340 (4th Cir. 2007). The Secretary acted within her implicit authority, this Court cannot grant Plaintiffs the relief they seek, and these claims should be dismissed.

Plaintiffs' argument that the Secretary lacks authority to reconsider past determinations fails. ECF No. 158, 9-10. As just explained, an administrative agency has inherent authority to reconsider and change a decision within a reasonable period if it has not been congressionally foreclosed through other procedures. *Mazaleski*, 562 F.2d at 720; *see, e.g.*, *Kelch*, 10 F.3d at 687. Here, the TPS statute lacks an explicit procedural mechanism to correct erroneous decision-making, underscoring that the Secretary's exercise of inherent authority was proper. Plaintiffs' reading of the situation would render a Secretary unable to correct any mistaken or unlawful action once the action has been announced, perversely leaving the agency bound to that action unless a court decides to order the agency to correct that action.

Plaintiffs' argument that the Secretary mistakenly concluded that the TPS statute has a default six-month extension period also lacks merit. ECF 158, 20. Section 1254a(b)(3)(C) plainly provides that an extension runs for "an additional period of 6 months" absent an exercise of the Secretary's "discretion" to instead prolong the extension to "12 or 18 months." That secretaries have often exercised their discretion

DEFS.' REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-1766-EMC
9

to depart from the six-month baseline, as Plaintiffs argue, does nothing to undermine that straightforward reading of the text. ECF 158, 20.

Plaintiffs also incorrectly claim that the fact that the Secretary's vacatur of the 2025 extension of Venezuela's 2021 TPS designation on national interest grounds would invalidate certain documents issued with October 2, 2026 expiration dates demonstrates the legal invalidity of her action. ECF No. 158, 10. However, even if judicial review of the February 2025 vacatur were not barred, a vacatur is a determination distinct from a termination, meaning that 8 U.S.C. § 1254a(d)(2) allows the Secretary to shorten the duration of any TPS-related documentation that would only have been valid throughout the noticed extension. *See* ECF No. 155, 3. Plaintiffs' contention that § 1254a(d)(3), pertaining to expiration of TPS documentation after termination, applies, would lock the Secretary into previous TPS extensions regardless of concerns that the presence in the United States of nationals of designated countries would be contrary to the national interest.

**B. The Secretary's Termination and Vacatur Were Not Arbitrary and Capricious.**

Plaintiffs focus on the timeframe in which these determinations were made to suggest that meaningful consultation and review was not possible. ECF No. 158, 12-13, 15-16. As discussed in Defendants' Motion to Dismiss, the Secretary complied with the statutorily required procedures, including review of country conditions after consulting with the appropriate government agencies, and issued determinations in accordance with the time limitations. ECF No. 122, 19-20. Here, Congress gave the Secretary "undoubtedly broad" authority to "make TPS determinations" and ensure the continued designation of a country complies with the law. *Ramos v. Nielsen*, 975 F.3d 872, 890 (9th Cir. 2020), *vacated by Ramos v. Wolf*, 59 F.4th 1010, 1011 (9th Cir. 2023) (finding statutory constraints "on the Secretary's discretion, [are] in favor of limiting unwarranted designations or extensions…") (cleaned up). Section 1254a requires the Secretary to periodically review conditions within foreign states designated for

DEFS.' REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-1766-EMC
10

TPS, but any subsequent action turns on the Secretary's findings about whether the conditions for such designation continue to exist. 8 U.S.C. § 1254a(b)(3)(A)-(C). The statute does not require that consultation or review last for a particular duration, and the administrative record indicates that the Secretary carried out the required consultation and received and reviewed the required information. *See* 8 U.S.C. § 1254a(b)(1); ECF No. 104-4, 222-23. The statute also requires the Secretary to determine whether "permitting aliens to remain temporarily in the United States is contrary to the national interest of the United States." 8 U.S.C. § 1254a(b)(1)(C); *cf. Poursina*, 936 F.3d at 874. Therefore, these claims should be dismissed.

Finally, as explained below, Plaintiffs have not adequately alleged that the Secretary's determinations were "pretextual and policy driven." ECF No. 158, 9; *see infra.*

### III. PLAINTIFFS' EQUAL PROTECTION CLAIM FAILS

#### A. *Trump v. Hawaii* Provides the Appropriate Standard of Review.

As explained in Defendant's motion to dismiss, ECF No. 122, rational basis review governs Equal Protection Clause challenges to immigration policy choices because "'[a]ny rule of constitutional law that would inhibit the flexibility' of the President 'to respond to changing world conditions should be adopted only with the greatest caution.'" *Trump v. Hawaii*, 585 U.S. 667, 704 (2018) (quoting *Mathews v. Diaz*, 426 U.S. 67, 81-82 (1976)). TPS determinations are precisely the kind of immigration policy decisions where there is a "lack of competence on the part of the courts," *id.* (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 31 (2010)), to probe the Executive Branch's decision making. *See Harisiades v. Shaughnessy*, 342 U.S. 580, 591 (1952) ("However desirable worldwide amelioration of the lot of aliens, we think it is peculiarly a subject for international diplomacy. It should not be initiated by judicial decision . . . [and] must be entrusted to the branches of the Government in control of our international relations and treaty-making powers."). TPS determinations involve country-specific analysis that "implicate[s]

relations with foreign powers" and "involve[s] classifications defined in the light of changing political and economic circumstances." *Hawaii*, 585 U.S. at 702. And Congress's decision to shield TPS determinations from judicial review reflects its judgment that this is an area in which the risk of erroneous or overreaching judicial action is greater than the risk of erroneous action by the Executive Branch. *See* 8 U.S.C. § 1252a(b)(5)(A).

Plaintiffs argue that *Hawaii*'s deferential standard of review does not apply to TPS holders because TPS holders are "lawfully present individuals within the U.S." ECF No. 158, 21. But *Hawaii* did not hint that its standard applies only to foreign nationals residing outside the United States; instead, it emphasized that rational basis review applies "across different contexts and constitutional claims." 585 U.S. at 703. In earlier constitutional challenges brought by aliens within the United States, the Supreme Court repeatedly cautioned against applying a rigorous standard of review. *See Galvan v. Press*, 347 U.S. 522, 531 (1954); *Shaughnessy*, 342 U.S. at 590. Plaintiffs have therefore failed to present any convincing reason why rational basis review under *Hawaii* should not apply.[2]

### B. Plaintiffs Fail to State a Claim Even Under a Heightened Standard of Review.

Even under heightened scrutiny, however, Plaintiffs' equal protection claims fail because they have not alleged a plausible claim that a racially "discriminatory purpose was a motivating factor" in the Secretary's determinations. *See Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977).

Plaintiffs' constitutional claims rest entirely on an attempt to label as "discriminatory" various public statements by the Secretary, the President, and "Trump Surrogates," in which they advocated for a reduction of illegal immigration and crime. *See* FAC ¶¶ 121-63. But these allegations do not suggest

---

[2] Plaintiffs argue they would prevail even if *Hawaii* applies because the Secretary lacked a facially legitimate reason for her actions. ECF No. 158, 22-23. That is plainly wrong, as the Federal Register notices recount at length the legitimate, nondiscriminatory reasons for the actions.

DEFS.' REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-1766-EMC

12

animus based on race or national origin, rather an interest in the safety and security of the United States. For example, Plaintiffs' complaint criticizes reliance on gang violence or the designation of the Venezuelan gang Tren de Aragua ("TdA") as a terrorist organization as a basis for decision-making. FAC ¶ 126. But concern regarding international gang violence and the designation of a known terrorist organization reflects the legitimate "national security, border enforcement, public safety, immigration policy, and economic and public welfare concerns" that informed the Secretary's determinations. *See, e.g. Venezuela Termination*, 90 Fed. Reg. at 9042 (recognizing that "among the Venezuelan nationals who have crossed into the United States are members of . . . Tren de Aragua").

Plaintiffs ask this Court impute racial animus onto President Trump based upon various statements, FAC ¶¶ 134-57, but those claims should be also rejected for the same reason the Supreme Court rejected reliance on similar statements in *DHS v. Regents*: "even as interpreted by [plaintiffs], these statements – remote in time and made in unrelated contexts – do not qualify as 'contemporary statements' probative of the decision at issue." 591 U.S. 1, 35 (2020) (citing *Arlington Heights*, 429 U.S. at 268). None of the evidence outlined in the FAC is sufficient to state a claim that the Secretary's TPS determinations were motivated by racial animus. Instead, Plaintiffs rely on statements that in many instances date back years, are made by individuals not involved in TPS decision-making, and—significantly—have nothing to do whatsoever with the TPS determinations at issue in this case, demonstrating the scantiness of Plaintiffs' claims.

Also, although Plaintiffs cite statements supposedly suggesting discriminatory animus on the part of the President and members of his Administration, these statements do not speak to the reasons behind the TPS decisions at issue. Rather, they reflect the Executive's general view that the prior Administration's border policies encouraged a mass illegal influx of aliens and created an unsustainable situation.

DEFS.' REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-1766-EMC

13

As to Plaintiffs' assessment that Defendants have failed to address what they deem to be "procedural and substantive departures from the normal sequence," ECF No. 158, 23, as discussed *infra*, the Secretary's actions complied fully with the TPS statute. To the extent her actions may have deviated from actions past Secretaries have taken, that is irrelevant, because Secretary Noem acted within the authority given to her. And to the extent that Plaintiffs argue that the decisions at issue were driven by a desire to reduce immigration from non-white individuals—ECF No. 158, 23—the Supreme Court has rejected such claims. *DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 34 (2020) (observing that "because Latinos make up a large share of the unauthorized alien population, one would expect them to make up an outsized share of recipients of any cross-cutting immigration relief program" such that "any generally applicable immigration policy could be challenged on equal protection grounds."); *see also Ramos,* 975 F.3d at 899 (rejecting race-based disparate impact analysis as to TPS termination while observing that "virtually every country that has been designated for TPS since its inception has been 'non-European.'").

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed in its entirety for lack of subject matter jurisdiction and for failure to state a claim. Fed. R. Civ. P. 12(b)(1), (6).

Dated: June 10, 2025                              Respectfully submitted,

YAACOV M. ROTH
Acting Assistant Attorney General
Civil Division

SARAH L. VUONG (CA Bar 258528)
Assistant Director

WILLIAM H. WEILAND (Mass. Bar 661433)
Senior Litigation Counsel

DEFS.' REPLY IN SUPPORT OF MOTION TO DISMISS
No. 3:25-cv-1766-EMC

14

CATHERINE ROSS (DC Bar 9007404)
ERIC SNYDERMAN (VA Bar 99563)
LAUREN BRYANT (NY Bar 5321880)
AMANDA SAYLOR (FL Bar 1031480)
Trial Attorneys

*/s/ Anna L. Dichter*
ANNA L. DICHTER
Assistant Director (NJ Bar 304442019)
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-1263
Anna.l.dichter@usdoj.gov

*Attorneys for the Defendants*