Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Amanda Young (SBN 359753)
ayoung@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, MARIELA GONZÁLEZ, FREDDY JOSE ARAPE RIVAS, M.H., CECILIA DANIELA GONZÁLEZ HERRERA, ALBA CECILIA PURICA HERNÁNDEZ, E.R., HENDRINA VIVAS CASTILLO, A.C.A., SHERIKA BLANC, VILES DORSAINVIL, and G.S.,<br><br>Plaintiffs,<br><br>vs.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,<br><br>Defendants. | Case No. 3:25-cv-01766-EMC<br><br>Hon. Sallie Kim<br><br>**JOINT DISCOVERY DISPUTE SUBMISSION RE RESPONSIVENESS** |

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitran (SBN 302081)
ebitran@aclusocal.org
Diana Sanchez (SBN 338871)
dianasanchez@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

The parties submit this brief regarding RFPs 1, 2 and 6. Lead counsel met and conferred telephonically and by email multiple times regarding these issues in an effort to avoid seeking guidance from the Court, but have been unable to reach resolution.

## I.      PLAINTIFFS' POSITION

Defendants refuse to produce or log documents that "hit" narrow search criteria approved by the Court for RFPs 1, 2 and 6 (directly related to the challenged TPS decisions) that Plaintiffs designed specifically to ensure responsiveness. It is not plausible that documents could meet all of the search criteria, yet still not be responsive to RFPs 1, 2, and 6. Moreover, Defendants waived their ability to cull out documents in this manner, including by failing to object to these requests on relevance grounds. In all events, at a minimum, Defendants should be ordered to disclose a search report listing "hits" per custodian and provide verified responses confirming compliance.

The parties litigated the scope of extra-record discovery before this Court. Dkts. 123, 129, 132, 135. Without prejudice to seeking further relief, Plaintiffs narrowed the scope of RFPs 1, 2, and 6 to just those documents that contain relevant words or phrases to limit the universe of "hits" to responsive documents. Dkts. 132, 132-1. Rather than engage in a fishing expedition, the time periods and search terms were so narrowly tailored as to make all "hits" by definition responsive because the requests encompass all documents (a) "regarding whether to vacate, partially vacate, or terminate the TPS designations for Venezuela or Haiti" (RFP 1), (b) "concerning the TPS periodic review process … to the extent applied in whole or in part to the decisions to vacate, partially vacate, or terminate TPS designations for Venezuela or Haiti" (RFP 2), and (c) "provided to, reviewed by, or considered by the Secretary of DHS regarding whether to vacate, partially vacate or terminate the TPS designation for Venezuela or Haiti" (RFP 6). Dkt. 123-1. Boiled down, the search terms "hit" only on three categories of relevant documents—documents that reference (a) Venezuela or Haiti *and* TPS, (b) TPS *and* vacatur,[1] or (c) TPS *and* Tren de Aragua/TdA (the name of a Venezuelan gang referenced in one of the challenged TPS decisions for Venezuela). Dkt. 135-1 at 10. The time period

---

[1] Venezuela and Haiti were the only TPS decisions vacated during the narrowed time periods. Indeed, they are the first vacaturs in the history of TPS.

1  at issue is approximately one month—from January 20 through February 24, 2025—the period
2  during which Defendants made the challenged decisions. Dkts. 135 at 1, 132 at 2–3, 132-1 at 10.
3        The Court granted Plaintiffs' revised discovery requests, specifically "approv[ing] the search
4  terms proposed by Plaintiffs" as "properly narrowly focused." Dkt. 135 at 1. Defendants **never**
5  served objections to the requests as narrowed and approved by the Court as vague, ambiguous,
6  overbroad, or otherwise encompassing irrelevant documents—thus waiving any basis to withhold
7  documents as purportedly so irrelevant as to be non-responsive. *See, e.g.*, *Richmark Corp. v. Timber*
8  *Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to
9  object to discovery requests within the time required constitutes a waiver of any objection."). Nor
10 have Defendants provided any substantiation for how such narrowly tailored search criteria could
11 "hit" on non-responsive documents. The lack of objections and substantiation therefore warrant
12 compelling Defendants to promptly produce or log all documents that "hit" on the search criteria.
13       It is doubly improper for Defendants to attempt to refuse to produce, log, or even disclose the
14 number of "hits" on the tailored search terms at this stage. If Defendants wanted to reserve the right
15 to object to documents that "hit" on the narrowly tailored search terms for this subset of custodians
16 as irrelevant, then they needed to alert Plaintiffs and the Court of that plan in no uncertain terms,
17 rather than force Plaintiffs to uncover the practice. *Compare Mi Familia Vota v. Fontes*, 344 F.R.D.
18 496, 527–28 (D. Ariz. 2023) (holding that defendant who initially refused to produce any
19 documents, and was compelled to use search terms, could not later apply techniques to withhold
20 documents as non-responsive without moving for reconsideration) *with* Dkt. 132 at 5–6 (objecting to
21 RFPs 1 and 2 on the ground that Defendants preferred their search terms) *and id.* at 8–9 (objecting to
22 RFP 6 based on deliberative-process and attorney-client privileges).
23       At a minimum, Defendants should be required to disclose the number of "hits" per search
24 string per custodian and provide verified responses under penalty of perjury confirming that all
25 documents responsive to RFPs 1, 2, and 6 have been produced or logged. *See, e.g.*, *Gosain v.*
26 *Bergquist Wood McIntosh Seto, LLP*, 2022 WL 2439180, at *3 (N.D. Cal. July 5, 2022) (ordering
27 party to verify RFP responses in light of initial failure to provide adequate responses). A "hit" report
28 will enable Plaintiffs and the Court to better assess their purported compliance with the Court's order

1  requiring compliance with RFPs 1, 2, and 6. The verification requirement ensures that someone
2  takes the obligation to comply seriously.

3        There is no possible burden associated with furnishing a "hit" report and providing a
4  verification. Defendants repeatedly have represented that they ran each of the search strings for each
5  of the custodians. Defendants thus should be willing and able to immediately disclose the statistics,
6  which are neither privileged nor confidential, and ultimately furnish a verification confirming full
7  compliance with their discovery obligations. *Cf.* Fed. R. Civ. P. 34, Adv. Comm. Notes to 2015
8  Amendment (explaining Rule 34(b)(2)(C) was added to clarify the importance of "an informed
9  discussion" when "documents have been withheld"). Rather than leaving Plaintiffs and the Court in
10 the dark, Defendants should want to disclose basic statistics about "hits" and verify their RFP
11 responses to assure Plaintiffs and the Court of their full compliance.

12       Finally, there is good cause for concern to warrant ordering, at a minimum, a "hit" report and
13 verification. Defendants have repeatedly violated unambiguous discovery obligations and deadlines.
14 Dkts. 143, 157, 178, 179, 183. Due to one of the instances of noncompliance, Plaintiffs learned that,
15 out of a subset of 159 documents, Defendants produced and/or logged just 54 documents—roughly
16 34%. Dkt. 157 at 1. Most recently, after repeatedly representing that they had fully complied with
17 the Court's discovery orders, Defendants produced roughly 130 new documents on June 6, 2025 and
18 added nearly 400 more documents to the privilege log—roughly doubling the number of documents
19 they had previously produced and logged in total. Yet even now, Defendants have identified
20 strikingly few responsive documents. Critical custodians identified by both parties are not associated
21 with a ***single*** document, including, notably, the Secretary and her senior advisor Corey
22 Lewandowski. This is even more concerning because the Secretary's senior advisor (Mr.
23 Lewandowski) appears in produced email correspondence, and yet is not identified as a custodian for
24 any document. This could not occur if Defendants, in fact, fully complied with their discovery
25 obligations.

26       Plaintiffs therefore ask that Defendants be ordered to comply with the current discovery
27 order, Dkt. 135, which approved a narrowly tailored set of search strings designed to ensure that
28 "hits" would be responsive, and produce or log all "hits," including because Defendants failed to

3

JOINT SUBMISSION RE RESPONSIVENESS – CASE NO. 3:25-CV-01766-EMC

1  serve objections. In the alternative, and at a minimum, Defendants should be ordered to disclose the
2  number of "hits" by search string and custodian, and provide a verification upon completion of their
3  productions. With a "hit" report, Plaintiffs can better assess the extent of ongoing compliance issues,
4  including whether to request a random selection of materials for in camera review to test non-
5  responsiveness designations.

6  **II.    DEFENDANTS' POSITION**

7  Plaintiffs now want to expand the limited discovery authorized in this case into discovery
8  about discovery. But the root flaw in Plaintiffs' argument is their fundamental misunderstanding of
9  the scope of Defendants limited extra-record production obligations. Plaintiffs contend that because
10 Defendants did not object to certain discovery requests, they are obligated to produce documents that
11 are unresponsive to RFPs 1, 2, and 6. This argument is contrary to the Federal Rules of Civil
12 Procedure and without merit.

13 First, this is an action to be decided on the record (as supplemented), and the Court has
14 explicitly stated that it did "not intend to permit general civil discovery. Documents sought must be
15 keyed to Secretary Noem's intent in reaching the decisions challenged herein beyond that already
16 contained in the administrative record, if any." ECF No. 129, at 8. This limited extra-record
17 discovery is to be conducted on an accelerated basis and restricted to a search and production that is
18 based on the limits set by the Court. *See* ECF No. 135. Specifically, RFPs 1 and 2 are limited to the
19 decision-making process. And regarding RFP 3, the Court noted that communications about the
20 decision, and how to publish or implement it, shed no light on how the decision was made itself.
21 ECF No. 132 ("it is not clear why documents related to DHS press releases or guidance about how to
22 respond to questions from the media or TPS holders are relevant (especially post-decision) to any
23 alleged unlawful motivation (*i.e.* pretext, bad faith, or animus) behind the challenged decisions.").
24 Plaintiffs' attempt to expand the universe of discovery needlessly beyond that which the Court
25 ordered should be rejected.

26 Second, the absence of objections does not expand the scope of discovery beyond what is
27 legally required or create an obligation to produce documents that fall outside the requests' scope,
28 including documents that are irrelevant or not reasonably calculated to lead to the discovery of

1  admissible evidence. This is even more pertinent here, where Plaintiffs did not propound the RFPs
2  and Defendants were not required to respond or object under Federal Rule 26. ECF No. 123-1
3  (attaching RFPs to Plaintiffs' letter to the Court); *id*. ("The Court shall not require the government to
4  respond to this document request, even as narrowed."). Even without the obligation to formally
5  respond to these RFPs, Defendants produced all documents responsive to Plaintiffs' court-ordered
6  discovery requests in good faith and within the scope of the requests. Certainly, Defendants' now
7  object that Plaintiffs' sweeping misinterpretation of the Court's discovery orders has become
8  abundantly clear.

9        Third, discovery requests must be read according to their plain language. Even without
10 objections, parties are only obligated to produce documents that are actually responsive to the
11 requests as written. Courts consistently hold that the duty to produce is limited to what the requests
12 actually seek. *LKQ Corp. v. Kai Motors Am., Inc.*, 345 F.R.D. 152, 158 (N.D. Ill. 2023) ("The
13 language of Rule 26(b)(1) is limited to claims and defenses. To be clear, discovery about the process
14 by which a party searches for, reviews, and collects documents is *not* discovery relevant to a claim
15 or defense."); *246 Sears Rd. Realty Corp. v. Exxon Mobil Corp.*, 2011 WL 13254283, at *4
16 (E.D.N.Y. Apr. 1, 2011) (denying discovery because "[n]one of these requests bear on plaintiff's
17 underlying claim; rather, they represent plaintiff's meandering attempt to prove defendant's
18 noncompliance with its discovery obligations."). Federal Rule 26(b)(1) defines the permissible scope
19 of discovery. This scope exists independently of whether objections are raised. A party cannot be
20 compelled to produce documents that fall outside this scope merely because they did not object. The
21 failure to object does not constitute a waiver of the right to argue that particular documents are not
22 responsive to the requests either. Responsiveness is determined by content and scope of the request
23 itself, not by the presence or absence of objections.

24       Fourth, Plaintiffs reliance on the search terms to approximate responsiveness is
25 inappropriate. The search terms describe the universe of potentially responsive documents, including
26 the outer limits of what must be searched, but they are not a substitute for a responsiveness review
27 and they do not eliminate a party's ability to conduct one. For example, the search term
28 "['Temporary Protected Status' or 'TPS' or 1254a] AND [Venezuela]" would necessarily hit on

*every document* that has the term "TPS" and "Venezuela" in it. ECF No. 132-1 at 10. This expansive term would – and did – sweep up documents far beyond the Court's order to limit production to only those documents reflecting "Secretary Noem's intent in reaching the decisions challenged [.]" ECF No. 129 at 8. As an example of non-responsiveness, this search term necessarily also sweeps up documents the Court specifically declined to order Defendants to produce under RFP 3. Moreover, the number of hits on a term does not reflect the number of documents that are responsive. A single document might hit multiple times on a single search term (e.g. – "TPS" and Venezuela), and it might also hit on multiple terms (for example, there were 3 search terms each with multiple variables for Venezuela alone). *See* ECF No. 132-1 at 10. Accordingly, Plaintiffs' demand for the number of search term hits is a demand for information that sheds no light on an imaginary pool of responsive documents that have not been produced. A universal document count would not be informative either. If any document in a family hit on a search term, that document and all associated document family members were included within the initial universe for review – regardless of whether or not those family member documents hit on a search term themselves.

Fifth, discovery methodology itself is generally not subject to opposing party inquiry, particularly when the government is a party in the litigation. *Taylor v. Google*, 2024 WL 4947270, at *2 (N.D. Cal. Dec. 3, 2024) ("As a general matter, discovery of another party's evidence preservation and collection efforts—or 'discovery on discovery'—is disfavored, as such discovery is typically not relevant to the merits of a claim or defense, and is rarely proportional to the needs of a case."); *LKQ Corp.*, 345 F.R.D. at 158, 161. Federal courts consistently hold that parties control their own search methodologies, subject only to reasonableness standards and good faith requirements. *Id*. "Mere speculation about missing evidence" is not enough. *Id*. Opposing parties are not entitled to dictate or discover the specific search procedures used by the responding party. *Id*.

Finally, requiring Defendants to conduct a privilege review and log non-responsive documents needlessly increases the burden on Defendants. As Defendants have noted, all discovery is inappropriate here, where the Supreme Court has granted Defendants' application for a stay of this Court's postponement order. Certainly, any additional requirement to produce privilege logs, especially for non-responsive documents properly withheld, is inappropriate here.

| | | |
|---|---|---|
| 1 | | |
| 2 | Date: June 10, 2025 | Respectfully submitted, |
| 3 | | ACLU FOUNDATION |
| 4 | | OF NORTHERN CALIFORNIA |
| 5 | | */s/ Emilou MacLean* |
| | | Emilou MacLean |
| 6 | | |
| | | Michelle (Minju) Y. Cho |
| 7 | | Amanda Young |
| | | ACLU FOUNDATION |
| 8 | | OF NORTHERN CALIFORNIA |
| 9 | | Ahilan T. Arulanantham |
| | | CENTER FOR IMMIGRATION LAW AND |
| 10 | | POLICY, UCLA SCHOOL OF LAW |
| 11 | | Eva L. Bitran |
| | | Diana Sanchez |
| 12 | | ACLU FOUNDATION |
| | | OF SOUTHERN CALIFORNIA |
| 13 | | |
| | | Jessica Karp Bansal |
| 14 | | Lauren Michel Wilfong (*Pro Hac Vice*) |
| | | NATIONAL DAY LABORER ORGANIZING |
| 15 | | NETWORK |
| 16 | | Erik Crew (*Pro Hac Vice*) |
| | | HAITIAN BRIDGE ALLIANCE |
| 17 | | |
| | | Attorneys for Plaintiffs |
| 18 | | |
| 19 | Date June 10, 2025 | YAAKOV M. ROTH |
| | | Acting Assistant Attorney General |
| 20 | | Civil Division |
| 21 | | SARAH L. VUONG |
| | | Assistant Director |
| 22 | | |
| | | WILLIAM H. WEILAND |
| 23 | | Senior Litigation Counsel |
| 24 | | ERIC SNYDERMAN |
| | | LAUREN BRYANT |
| 25 | | CATHERINE ROSS |
| | | AMANDA B. SAYLOR |
| 26 | | JEFFREY M. HARTMAN |
| | | Trial Attorneys |
| 27 | | |
| | | */s/ Anna L. Dichter* |
| 28 | | ANNA L. DICHTER |

7

JOINT SUBMISSION RE RESPONSIVENESS – CASE NO. 3:25-CV-01766-EMC

Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 353-2405
Anna.L.Dichter@usdoj.gov

*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 10, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

*/s/ Emilou MacLean*
Emilou MacLean