June 13, 2025

**Filed Electronically Via CM/ECF**

The Honorable Sallie Kim
United States District Court,
Northern District of California
Philip Burton Federal Building and U.S. Courthouse
450 Golden Gate Avenue, Courtroom A — 15th Floor
San Francisco, California 94102

      Re:    *National TPS Alliance, et al. v. Noem, et al.*, Case No. 3:25-cv-01766-EMC

Dear Judge Kim:

This joint letter concerns a discovery dispute related to Defendants' claim of Presidential Communications Privilege. Counsel have conferred telephonically, but lead counsel have concluded they are unable to reach agreement. The parties submit this brief letter regarding a dispute over Defendants' invocation of the presidential communications privilege.

**I.    PLAINTIFFS' POSITION**

Defendants have not properly justified their invocation of the presidential communications privilege ("PCP") over 8 documents: NTPSA_PRIVID_000005, 000006, 000007, 000008, 000009, 000011, 000012, and 000371. The privilege is a narrowly construed and qualified privilege available for "presidential advisers in the course of preparing advice for the President." *In re Sealed Case*, 121 F.3d 729, 752 (D.C. Cir. 1997). The burden is on the White House to justify that the PCP applies. *See In re Sealed Case*, 121 F.3d at 758 (White House invoking PCP is "expected to demonstrate" the privilege applies). For a document to be eligible for the privilege, it must be authored or "solicited and received" by either a presidential adviser or member of a presidential adviser's staff who has "broad and significant responsibility for investigating and formulating the advice to be given to the President on a particular matter." *Id.* at 757. The PCP is "construed . . . narrowly" and "should never serve as a means of shielding information regarding governmental operations that do not call ultimately for direct decisionmaking by the President." *Id.* at 752. "Not every person who plays a role in the development of presidential advice, no matter how remote and removed from the President, can qualify for the

privilege. *In particular, the privilege should not extend to staff outside the White House in executive branch agencies*," such as DHS or its sub-agencies. *Id.* (emphasis added).

Defendants' privilege log entries do not substantiate their assertion of the privilege and, in some cases, strongly suggest the privilege does not apply. Defendants have repeatedly informed Plaintiffs of their intent to update the privilege log to adequately support their use of the privilege, and despite multiple amendments, the log still fails to do so. Plaintiffs request the Court order Defendants to, by June 16, provide adequate substantiation of the relevant privilege log entries and a declaration from a person authorized to invoke the privilege justifying its invocation.

Defendants have not identified on the privilege log a single instance showing that a presidential adviser (or certain of their staff meeting the requirements of *In re Sealed Case*), rather than agency staff, *either* authored the challenged documents *or* solicited and received them.

**NTPSA_PRIVID_000009** identifies the authors, senders and recipients as DHS and not White House staff, making the privilege unavailable to them.

**NTPSA_PRIVID_000371** comprises "informal notes" written by Joseph Guy, an individual Defendants have identified as a DHS Custodian, during a phone call with "the Assistant to the President for Homeland Security," also called the "Homeland Security Advisor." According to the log, these notes were not sent to anyone—that is, they are not "communications" because they were not communicated to anyone. Indeed, the qualifier "informal" suggests Mr. Guy took the notes on his own initiative and for his own use, rather than for communication to a presidential adviser or a qualifying member of their staff.

The final six challenged documents include essentially identical explanations in the privilege log—none of which contend that the documents are authored or "solicited *and received*" by either a presidential adviser or member of a presidential adviser's staff. *See In re Sealed Case*, 121 F.3d at 757 (emphasis added). Instead, the privilege log entries for these documents—**NTPSA_PRIVID_000005, 000006, 000007, 000008, 000011, and 000012**—indicate that the documents contain communications *between agency personnel* in response to a presidential advisor's solicitation of "information in support of an upcoming meeting wherein members of the HSC were set to meet and discuss ongoing homeland security matters." The log does not confirm that the presidential advisor ever *received* the

information, instead affirming that the record "reflects the DHS staff's gathering of information in direct response to that query." Specifically, the log asserts that the withheld records contain "information gathered by DHS personnel, and their discussions of what to include, in response to an email query from" a member of the Homeland Security Council.

None of these justifications are sufficient to invoke the PCP. The PCP extends only over "communications . . . either authored or received in response to a solicitation by presidential advisers in the course of gathering information and preparing recommendations on official matters for presentation to the President," *or* "communications authored or solicited and received by those members of an immediate White House advisor's staff who have broad and significant responsibility for investigating and formulating the advice to be given to the President on a particular matter." *In re Sealed Case*, 121 F.3d at 757. Examples of presidential advisers include the White House Counsel, Deputy White House Counsel, Chief of Staff, and Press Secretary, but *not*, for instance, associate White House Counsel. *Id.* at 758. Associate White House Counsel may be "members of an immediate White House adviser's staff" whose communications are privileged under the PCP only *if* they are given the required "broad and significant responsibility" for preparing advice for the President. *Id.* at 752, 758 (finding associate White House Counsel in question "clear[ly] . . . exercised broad and significant responsibility for" investigating a certain matter "and authoring initial drafts of the White House Counsel's report").

Here, the only *authors* listed for the documents in question are Alan De Beaufort Florez, who appears to be a DHS "analyst" based on publicly available information, and Joseph Guy, whom Defendants have identified as a DHS custodian. The *senders* are listed as USCIS staff Aaron L. Calkins and Andrew J. Davidson. And the *recipients* on "to" and "cc" lines, in addition to Calkins and Davidson, are Thierry A. Ghattas, Michael J. McDermott, Karla V. Moran, Nicolas S. Bartell, and Ihsan Gunduz, all of whom have USCIS or DHS email addresses. The privilege is not available for documents authored or received by any of these DHS agency or sub-agency personnel.

Assuming the Homeland Security Advisor ("HSA"), or other HSC personnel, are either "presidential advisers" or "members of an immediate White House adviser's staff who have broad and significant responsibility for investigating and formulating the advice to be given to the President on

a particular matter," none of the documents logged here appear to have been *either* authored *or* solicited and received by any of those individuals, which is an absolute requirement for invoking the PCP. *See In re Sealed Case*, 121 F.3d at 757. And communications between nonqualifying personnel about topics identified by qualifying personnel—but not solicited *and* received by those qualifying personnel—does not somehow render those records protected by the PCP. *See id.* at 752 ("[T]he privilege only applies to communications that [presidential] advisers and their staff author or solicit and receive . . . .").

Throughout its analysis, the *Sealed Case* court was highly sensitive to the importance of "openness in government" as "crucial to ensuring that the people remain in control of their government." 121 F.3d at 749. It sought to strike the "appropriate balance between openness and informed presidential deliberation," *id.* at 762, without shielding "more factual information" than absolutely necessary, *id.* at 751. The Court recognized that the president and his advisers must have "sufficient elbow room . . . to obtain information from all knowledgeable sources," *id.* at 752, while warning against the "potential for abuse of the privilege" and "the risk that a broad array of materials in many areas of the executive branch w[ould] become 'sequester[ed]' from public view," *id.* at 749 (quoting *Wolf v. HHS*, 815 F.2d 1527, 1533 (D.C. Cir. 1987)). Accordingly, the PCP must "be narrowly construed"; indeed, "[t]he argument for a narrow construction is particularly strong in cases . . . where the public's ability to know how its government is being conducted is at stake." *Id.* at 749.

Defendants have not substantiated the privilege within its proper parameters. Plaintiffs request that the Court compel them to do so, with adequate privilege log entries and a supportive declaration; or else to withdraw the invocation of the privilege over each of the documents.

## II.     DEFENDANTS' POSITION

Defendants oppose Plaintiffs' request that the Court order Defendants, by June 16, to provide additional substantiation of the relevant privilege log entries and a declaration from a person authorized to invoke the privilege justifying its invocation. To the extent Plaintiffs seek withdrawal of the privilege over each of the documents altogether, Defendants doubly oppose. The communications at issue are protected by the presidential communications privilege, which is essential to preserving the confidentiality necessary for effective presidential decision making. "The privilege covers

documents reflecting 'presidential decisionmaking and deliberations,' regardless of whether the documents are predecisional or not, and it covers the documents in their entirety." *Karnoski v. Trump*, 926 F.3d 1180, 1203 (9th Cir. 2019); *Protect Democracy Project, Inc. v. NSA*, 10 F.4th 879, 885-86 (D.C. Cir. 2021) ("whereas the deliberative process privilege covers only pre-decisional and deliberative material," the presidential communications privilege also covers "post-decisional and factual material[.]"). Plaintiffs have failed to demonstrate the compelling need required to overcome this fundamental and presumptive executive privilege.

Plaintiffs have not shown a basis for their request that Defendants update the relevant privilege log entries or provide a formal declaration from the White House.[1] The privilege log entries provided by Defendants specifically include communications from Homeland Security Council and Homeland Security Advisors. The Homeland Security Council, the Secretary of Homeland Security, and the President's Homeland Security Advisor are all defined as part of the President's National Security Council, and "have the distinct purpose of advising the president on matters pertaining to homeland security."[2]

**NTPSA_PRIVID_000005, 000006, 000007, 000008, 000011, and 000012 (as well as now 00009 and 000010)** indicate that these documents contain information gathered by DHS personnel in response to an email query from the Director for Interior Enforcement on the Homeland Security Council. The Homeland Security Council is the President's National Security Council plus the Secretary of Homeland Security and the President's Homeland Security Advisor. As noted in Defendants' privilege log, a member of the Homeland Security Council solicited information from DHS in support of an upcoming meeting to discuss ongoing homeland security matters, with a view toward advising the President with regard to his homeland security policy initiatives. These documents are multiple versions of an attachment to an email between DHS personnel for forwarding to the

---

[1] Defendants acknowledge that Entries 000009 and 000010 in the privilege log require additional specificity as these documents are virtually identical to NTPSA_PRIVID_000005, 000006, 000007, 000008, 000011, and 000012 and will supplement these entries in the updated privilege log that will be provided in accordance with this Court's order regarding the invocation of Attorney-Client Privilege.

[2] https://www.whitehouse.gov/presidential-actions/2025/01/organization-of-the-national-security-council-and-subcommittees/ (last visited June 13, 2025).

Homeland Security Council and reflect the agency's substantive responses to that query. Thus, these documents were "solicited" by a presidential advisor and the response was due after the cutoff date for discovery. Plaintiffs are mistaken in arguing that a document reflecting information or advice conveyed to a presidential advisor must itself ultimately be received by a presidential advisor in order to be protected by the privilege. *See Jud. Watch, Inc. v. United States Dep't of Def.*, 913 F.3d 1106, 1112 (D.C. Cir. 2019) (upholding the privilege even though "the government ma[de] no claim that the authors of the memoranda briefed the President or his senior advisers directly, or even that they were the intended recipients of the memoranda or reviewed the memoranda," and instead claimed only "that the memoranda 'memorialize' the analysis and advice briefed, thereby implying they were prepared after the briefing"); *Buzzfeed, Inc. v. Federal Bureau of Investigation*, 613 F. Supp. 3d 453, 473 (May 7, 2020 D.D.C.) ("disclosing the [] interview notes used to compose privileged [documents] would undermine the privilege by revealing sensitive information compiled in the service of presidential decision-making" regardless of whether the President's staff ever received the notes).

**NTPSA_PRIVID_000371** indicates that this document contains notes taken during a teleconference with the Assistant to the Homeland Security Advisor. The Homeland Security Advisor is part of the President's National Security Council. The notes directly record communications solicited and received by a presidential advisor for the purpose of advising the President. The privilege log explains that these notes reflect communications and advice from the Homeland Security Advisor regarding discussed policy options. A conversation with a presidential advisor where he is being briefed on matters directly relevant to his advice to the President necessarily involves the soliciting and receiving of information by that advisor. Concluding that the presidential communications privilege does not apply to written notes reflecting those communications would undermine the core of the privilege, leading to the "temper[ed] candor" to the "detriment of the decisionmaking process" that the privilege guards against. *Nixon*, 418 U.S. at 705; *see In re Sealed Case*, 121 F.3d at 758 (the privilege applies to "notes taken at meetings [] at which these advisers were present, since these notes reflect these advisers' communications"); *see also Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Homeland Security*, No. 06-cv-0173, 2008 WL 2872183, at *3 (D.D.C. July 22, 2008)

(upholding privilege for documents that "referred to or reflected" communications with the President's staff).

The privilege log provided by Defendants includes sufficient information to explain the privilege invocation and meets the standard set forth in *In re Sealed Case*, 121 F.3d 729, 752 (D.C. Cir. 1997). Plaintiffs' view that only communications sent to or received directly from the President by his advisors are privileged would leave none of the conversations, information gathering, and drafting of responses to queries from those advisors, which reveal the content of the communications Plaintiffs agree *are privileged*, protected at all. This defies logic, as many of these documents contain confidential information that, if disclosed, would undermine the President's ability to receive candid advice and set dangerous precedent encouraging fishing expeditions into executive deliberations. Plaintiffs fall well short of the lines drawn on the presidential communications privilege by the Supreme Court and this Court should reject their request.

Separately, even if the Court otherwise agrees with Plaintiffs, Plaintiffs' expedited timeline requiring the White House to issue a formal declaration invoking the privilege is unreasonable and unworkable. Their demand for a declaration by a White House official by the next business day, June 16, is unrealistic and appears designed to prejudice the Executive Branch's ability to respond adequately. Presidential communications privilege involves sensitive questions that cannot be rushed—the Executive Branch must carefully review materials, consult with relevant departments, and ensure national security implications are fully considered. A compressed timeline, built around artificial time constraints, appears calculated to prevent thorough review and force hasty decisions. Plaintiffs request at least a week from any adverse ruling to produce any such declaration.

Even more unreasonable than Plaintiffs' demand for a declaration is their alternative demand to revoke the privilege entirely, without the opportunity to further substantiate the invocation of the privilege—a request that is constitutionally impermissible and would eviscerate the executive's ability to receive candid counsel. This wholesale assault on executive privilege lacks any legal foundation and would set a dangerous precedent undermining the separation of powers.

Plaintiffs' alternative relief essentially asks this Court to declare that presidential communications privilege does not exist in this case, a position that contradicts Supreme Court

precedent, exceeds judicial authority, would cause irreparable constitutional harm, and ignores the deliberate process. The Supreme Court has unequivocally recognized that executive privilege is "fundamental to the operation of Government and inextricably rooted in the separation of powers." *U.S. v. Nixon,* 418 U.S. 683, 708 (1974).[3] Plaintiffs cite no authority—because none exists—for the wholesale revocation of this constitutional protection. Moreover, courts lack power to categorically eliminate executive privilege. Even in *Nixon*, where the court ordered disclosure of specific records, it expressly reaffirmed the validity and importance of the executive privilege. *Id*. at 705-08. Complete revocation would permanently chill executive deliberations, not just in this case but for future administrations. Presidential advisers would know that no communication is safe from judicial scrutiny, fundamentally altering the nature of executive decision-making. The presidential communications privilege exists precisely because "human experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances." *Id*. at 705; *In re Sealed Case*, 121 F.3d at 750 ("If presidential advisers must assume they will be held to account publicly for all approaches that were advanced, considered but ultimately rejected, they will almost inevitably be inclined to avoid serious consideration of novel or controversial approaches to presidential problems."). Plaintiffs' request would eliminate this protection entirely. Accordingly, this Court should reject Plaintiffs' alternative request.

---

[3] The D.C. Circuit has contrasted the Presidential Communications Privilege with the Deliberative Process privilege in order to demonstrate the former's broader nature and scope. "[C]ongressional or judicial negation of the presidential communications privilege is subject to greater scrutiny than denial of the deliberative process privilege." *Protect Democracy Project, Inc. v. NSA*, 10 F.4th 879, 885 (D.C. Cir. 2021) (alterations omitted). For example, there is no duty to segregate information protected by the Presidential Communications Privilege from information that is not privileged. *Id.* at 887.

Date:  June 13, 2025

Respectfully submitted,

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

 */s/ Emilou MacLean*
Emilou MacLean

Michelle (Minju) Y. Cho
Amanda Young
ACLU FOUNDATION
OF NORTHERN CALIFORNIA

Ahilan T. Arulanantham
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW

Eva L. Bitran
Diana Sanchez
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA

Jessica Karp Bansal
Lauren Michel Wilfong (*Pro Hac Vice*)
NATIONAL DAY LABORER ORGANIZING
NETWORK

Erik Crew (*Pro Hac Vice*)
HAITIAN BRIDGE ALLIANCE

*Attorneys for Plaintiffs*

Date June 13, 2025

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

SARAH L. VUONG
Assistant Director

ANNA L. DICHTER
ERIC SNYDERMAN
LAUREN BRYANT
CATHERINE ROSS
AMANDA B. SAYLOR
JEFFREY M. HARTMAN
Trial Attorneys

/s/ *William H. Weiland*
WILLIAM H. WEILAND
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation

General Litigation and Appeals Section<br>
P.O. Box 868, Ben Franklin Station<br>
Washington, DC 20044<br>
Tel: (202) 305-0770<br>
William.H.Weiland@usdoj.gov

*Attorney for Defendants*

## **SIGNATURE ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the other Signatory has concurred in the filing of this document.

Date: June 13, 2025

ACLU FOUNDATION OF NORTHERN CALIFORNIA

 */s/ Emilou MacLean*
Emilou MacLean