BRETT A. SHUMATE
Assistant Attorney General
Civil Division
YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
SARAH L. VUONG
Assistant Director
WILLIAM H. WEILAND
Senior Litigation Counsel
ERIC SNYDERMAN
ANNA DICHTER
LAUREN BRYANT
CATHERINE ROSS
LUZ MARIA RESTREPO
JEFFREY HARTMAN
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, *et al.*,<br><br>        Plaintiff,<br>    v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al*.,<br><br>        Defendants. | Case No. 3:25-cv-1766<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Judge: Hon. Edward M. Chen<br>Date:  July 11, 2025<br>Time: 9:00 a.m.<br>Place: Courtroom 5, 17th Floor,<br>    San Francisco U.S. Courthouse |

Dated: June 17, 2025                         Respectfully submitted,


                                             BRETT A. SHUMATE
                                             Assistant Attorney General

                                             YAAKOV M. ROTH
                                             Principal Deputy Assistant Attorney General

                                             SARAH L. VUONG
                                             Assistant Director

                                             WILLIAM H. WEILAND
                                             Senior Litigation Counsel

                                             ERIC SNYDERMAN
                                             ANNA DICHTER
                                             LAUREN BRYANT
                                             CATHERINE ROSS
                                             JEFFREY HARTMAN
                                             Trial Attorneys

                                             /s/ *Anna L. Dichter*
                                             ANNA L. DICHTER
                                             Assistant Director
                                             U.S. Department of Justice, Civil Division
                                             Office of Immigration Litigation
                                             General Litigation and Appeals Section
                                             P.O. Box 868, Ben Franklin Station
                                             Washington, DC 20044
                                             Tel: (202) 353-2405
                                             Anna.l.dichter@usdoj.gov

                                             *Attorneys for the Defendants*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND .................................................................................................................2

   I. Statutory Background ...............................................................................................3

   II. Factual Background ................................................................................................ 3

      A. Venezuela ......................................................................................................3

      B. Haiti ............................................................................................................ 5

STANDARD OF REVIEW ................................................................................................ 6

ARGUMENT ..................................................................................................................... 7

   I. SECRETARY NOEM'S CHALLENGED ACTIONS ARE NOT REVIEWABLE UNDER THE ADMINISTRATE PROCEDURE ACT ............................................................... 7

      A. Plaintiffs' Claims are Unreviewable Under the APA Because the TPS Statute Preclude Judicial Review ....................................................................... 7

      B. Additional Barriers to Review Plaintiffs' Claims ............................................... 8

   II. THE SECRETARY'S DETERMINATIONS DID NOT VIOLATE THE APA............. ..9

      A. The Secretary's 2025 Venezuela Vacatur Was in Accordance with Law ............. ..9

      B. The Venezuela Vacatur Was Lawful under the APA ..................................... 13

      C. The Secretary's Termination of Venezuela's 2023 TPS Designation Was Issued in Accordance with the Law......................................................................... .15

      D. The Secretary's Haiti Partial Vacatur Did Not Violate the APA .................... .18

   III. PLAINTIFFS' CONSTITUTIONAL CLAIMS FAIL AS A MATTER OF LAW .... .20

CONCLUSION ................................................................................................................ ..22

# TABLE OF AUTHORITIES

## CASES

*Alaska Dep't of Envtl. Conservation v. EPA,*
   540 U.S. 461 (2004) ..................................................................................................... 7

*Ali v. Fed. Bureau of Prisons,*
   552 U.S. 214 (2008) ..................................................................................................... 8

*Arizona v. United States,*
   567 U.S. 387 (2012) ................................................................................................... 17

*Belville Mining Co. v. United States,*
   999 F.2d 989 (6th Cir.1993) ...................................................................................... 10

*Bureau of Alcohol, Tobacco & Firearms v. Fed. Lab. Rels. Auth.,*
   464 U.S. 89 (1983) ..................................................................................................... 12

*Chao v. Russell P. Le Frois Builder, Inc.,*
   291 F.3d 219 (2d Cir. 2002) ...................................................................................... 10

*China Unicom (Ams.) Ops. Ltd. v. FCC,*
   124 F.4th 1128 (9th Cir. 2024) ............................................................................ 10, 11

*Dan's City Used Cars, Inc. v. Pelkey,*
   569 U.S. 251 (2013) ..................................................................................................... 8

*Dep't of Commerce v. New York,*
   588 U.S. 752 (2019) ................................................................................................... 12

*DHS v. Regents*
   591 U.S. 1 (2020) ....................................................................................................... 22

*Fiallo v. Bell,*
   430 U.S. 787 (1977) ................................................................................................ 9, 17

*Fla. Power & Light Co. v. Lorion,*
   470 U.S. 729 (1985) ..................................................................................................... 6

*Garland v. Ming Dai,*
   141 S. Ct. 1669 (2021) ............................................................................................... 14

*Gun South, Inc. v. Brady,*
   877 F.2d 858 (11th Cir. 1989) ................................................................................... 11

*Haig v. Agee,*
   453 U.S. 280 (1981) ................................................................................................... 10

*Harisiades v. Shaughnessy,*
   342 U.S. 580 (1952) ................................................................................................ 12

*Hollingsworth v. Perry*,
   558 U.S. 183 (2010) .................................................................................................. 8

*Hotel & Rest. Emps. Union, Loc. 25 v. Smith,*
   846 F.2d 1499 (D.C. Cir. 1988) ................................................................................ 9

*Lamar, Archer & Cofrin, LLP v. Appling*,
   584 U.S. 709 (2018) .................................................................................................. 8

*Lopez v. Ashcroft*,
   366 F.3d 799 (9th Cir. 2004) .................................................................................. 14

*Mathews v. Diaz,*
   426 U.S. 67 (1976) ............................................................................................ 17, 18

*Matter of Ferrante*,
   No. 23-55005, 2023 WL 8449198 (9th Cir. Dec. 6, 2023) ...................................... 3

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
   463 U.S. 29 (1983) .................................................................................................. 19

*Nw. Motorcycle Ass'n v. U.S. Dep't Agric.,*
   18 F.3d 1468 (9th Cir. 1994) .................................................................................... 7

*Occidental Eng'g Co. v. I.N.S.,*
   753 F.2d 766 (9th Cir. 1985) ................................................................................ 6, 7

*Old Person v. Brown*,
   312 F.3d 1036 (9th Cir. 2002) .................................................................................. 7

*Patel v. Garland*,
   596 U.S. 328 (2022) .................................................................................................. 8

*Poursina v. USCIS*,
   936 F.3d 868 (9th Cir. 2019) ................................................................................ 9, 13

*Ramos v. Wolf*,
   975 F.3d 890 ...................................................................................................... 10, 12

*Rancher Cattlemen Action Legal Fund United Stockgrowers of Am.*
   *v. United States Dep't of Agric.,*
   415 F.3d 1078 (9th Cir. 2005) .................................................................................. 7

*Ru Jun Zhang v. Lynch*,
   2018 WL 1157756 (E.D.N.Y. Mar. 1, 2018) .......................................................... 18

*S. Or. Barter Fair v. Jackson County,*
 372 F.3d 1128 (9th Cir. 2004) ........................................................................... 7

*Sanchez v. Mayorkas,*
 593 U.S. 409 (2021) ........................................................................................... 2

*Trump v. Hawaii,*
 585 U.S. 684 ...................................................................................................... 13

*Village of Arlington Heights v. Metropolitan Housing Development Corp.,*
 429 U.S. 252 (1977) ........................................................................................... 22

*Youngstown Sheet and Tube Co. v. Sawyer,*
 343 U.S. 579 (1952) ........................................................................................... 12

*Zhu v. Gonzales,*
 411 F.3d 292 (D.C. Cir. 2005) ............................................................................ 9

### **STATUTES**

5 U.S.C. § 701(a)(1) ............................................................................................ 1, 8

5 U.S.C. § 701(a)(2) ............................................................................................ 1, 9

5 U.S.C. § 704 ...................................................................................................... 6

5 U.S.C. § 706(2)(A) ............................................................................................ 6

5 U.S.C. § 706(2)(D) ............................................................................................ 15, 16

8 U.S.C. § 1252(f)(1) ........................................................................................... 1, 9

8 U.S.C. § 1254a ................................................................................................... 1, 9

8 U.S.C. § 1254a(a) .............................................................................................. 2, 3

8 U.S.C. § 1254a(b) .............................................................................................. 2

8 U.S.C. § 1254a(b)(1)(C) .................................................................................... 6, 12, 13

8 U.S.C. § 1254a(b)(2) ......................................................................................... 2

8 U.S.C. § 1254a(b)(3) ......................................................................................... 4, 16

8 U.S.C. § 1254a(b)(3)(A) .................................................................................... 2, 10, 12, 15

8 U.S.C. § 1254a(b)(3)(B) .................................................................................... 2, 10, 11, 12

8 U.S.C. § 1254a(b)(3)(C) .................................................................................... 3, 10, 12, 16, 17, 18, 20,  21

8 U.S.C. § 1254a(b)(5)(A) ................................................................................ 1, 3, 7, 8, 9, 17

## OTHER AUTHORITIES

The Immigration Act of 1990 Pub. L. No. 101-649 ............................................... 2, 12, 13

## FEDERAL RULES OF EVIDENCE

Fed. R. of Evid. 201(b) .............................................................................................. 3

## REGULATIONS

*Termination of Designation of Liberia Under Temporary Protected Status Program After Final 6-month Extension*, 63 Fed. Reg. 15437 ...................................... 16

*Designation of Haiti for [TPS]*, 75 Fed. Reg. 3476, 3477 ...................................... 5

*Extension and Redesignation of Haiti for [TPS]*,76 Fed. Reg. 29,000 ................... 5

*Extension of the Designation of Haiti for [TPS]*, 77 Fed. Reg. 59,943 ................... 5

*Extension of the Designation of Haiti for [TPS]*, 79 Fed. Reg.11,808 ..................... 5

*Extension of the Designation of Haiti for [TPS]*, 80 Fed. Reg. 51,582 ................... 5

*Extension of the Designation of Haiti for [TPS]*, 82 Fed. Reg. 23,830 ................... 5

*Termination of Designation of Haiti for [TPS]*, 83 Fed. Reg. 2,648 ....................... 5

*Designation of Venezuela for [TPS] and Implementation of Employment Authorization for Venezuelans Covered by Deferred Enforced Departure*, 86 Fed. Reg. 13574 ..................... 3

*Designation of Haiti for [TPS]*, 86 Fed. Reg. 41,863 ............................................. 5

*Extension of the Designation of Venezuela for [TPS]*, 87 Fed. Reg. 55,024 ........... 3

*Extension & Redesignation of Haiti for [TPS]*, 88 Fed. Reg. 5,022 ........................ 5

*Extension and Redesignation of Venezuela for [TPS]*, 88 Fed. Reg. 68,130 ............ 6

*2023 El Salvador Reconsideration, Rescission, and Extension*, 88 Fed. Reg. 40,282 ..................... 10, 12

*2023 El Salvador Reconsideration, Rescission, and Extension*, 88 Fed. Reg. 40,285 ..................... 10, 12

*Extension & Redesignation of Haiti for, [TPS]*, 89 Fed. Reg. 54,484 ...................... 6

*Extension of the 2023 Designation of Venezuela for [TPS]*, 90 Fed. Reg. 5961. ...................... 4

*Vacatur of 2025 [TPS] Decision for Venezuela*, 90 Fed. Reg. 8,805 ..................... 4

*Termination of the October 3, 2023 Designation of Venezuela for [TPS]*, 90 Fed. Reg. 9,040........................................................................4

*Termination of the October 3, 2023 Designation of Venezuela for [TPS]*, 90 Fed. Reg. 9,042......................................................................21

*Termination of the October 3, 2023 Designation of Venezuela for [TPS]*, 90 Fed. Reg. 9,043......................................................................21

*Partial Vacatur of 2024 [TPS] Decision for Haiti*, 90 Fed. Reg. 10,511. ...............................................6

*Partial Vacatur of 2024 [TPS] Decision for Haiti*, 90 Fed. Reg. 10,513. ...............................................

**PRELIMINARY STATEMENT**

Secretary Noem's detemrinations to revisit and vacate, in whole or in part, her predecessor's extensions of certain TPS designations were a lawful and valid exercise of the Secretary's statutory authority. Similarly, her determination to terminate Venezuela's 2023 TPS designation complied with the statutory requirements. Indeed, the purpose of TPS is to provide *temporary* relief from removal to certain aliens who are in the United States when their country of nationality experiences armed conflict, a natural disaster, or other extraordinary and temporary conditions and who are thus temporarily unable to return home safely or whose country is temporarily unable to adequately handle their return. And, in enacting the TPS statute, Congress reposed to the Secretary's judgment, informed by appropriate consultation, determinations whether a country's designation should be extended or terminated. 8 U.S.C. § 1254a. Plaintiffs move for partial summary judgment, alleging that Secretary Noem's vacatur and termination of Venezuela's 2023 TPS designation, as well as her partial vacatur of Haiti's 2024 TPS designation, were unlawful and seek to set aside these actions under the Administrative Procedure Act ("APA"). *See* ECF No. 165 ("Pls.' MSJ"). Plaintiffs are not entitled to partial summary judgment for several reasons.

First, Plaintiffs' claims are not reviewable under the APA because Congress has explicitly barred judicial review of TPS determinations. *See* ECF No. 122 ("Def. Mot."). Congress could hardly be clearer here: "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS. 8 U.S.C. § 1254a(b)(5)(A); *see also* 5 U.S.C. § 701(a)(1) (precluding review under the APA "to the extent" that other "statutes preclude judicial review."). Second, Plaintiffs' claims are also foreclosed by another section of the INA—section 1252(f)(1)—which bars district courts from "enjoin[ing] or restrain[ing]" the operation of certain provisions of the INA. Third, Plaintiffs' claims are inconsistent with the principle that the APA does not allow for review of agency action that is committed to agency discretion by law. 5 U.S.C. § 701(a)(2). Fourth, even if judicial review were available, Plaintiffs have not shown that the determinations they

challenge were contrary to law or "arbitrary and capricious." Rather, these determinations were consistent with the Secretary's broad statutory authority and, as the record reflects, were based on a finding that her predecessor's extensions contained flaws warranting reconsideration, particularly in light of evidence demonstrating that such a reconsideration is warranted. Plaintiffs' reliance on the Court-ordered extra-record discovery is unavailing, as the existing administrative record already makes clear that the agency acted within its legal authority. Indeed, the Supreme Court granted the Government's application for a stay pending appeal, which requires the applicant to show *both* a likelihood of success on the merits *and* a likelihood of irreparable harm.  *Noem v. Nat'l TPS All.*, No. 24A1059, 2025 WL 1427560 (U.S. May 19, 2025); *see Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curiam). For these reasons, this Court should deny Plaintiffs' Motion and enter summary judgment in favor of Defendants.

## BACKGROUND

### I.  STATUTORY BACKGROUND

The Immigration Act of 1990 established a program for providing temporary shelter in the United States on a discretionary basis for aliens from designated countries experiencing ongoing armed conflict, environmental disaster, or "extraordinary and temporary conditions" that temporarily prevent the aliens' safe return or, in the case of environmental disasters, temporarily render the country unable to handle adequately the return of its nationals. Pub. L. No. 101-649, § 302, 104 Stat. 4978. The statute authorizes the Secretary of Homeland Security,  "after consultation with appropriate agencies of the Government," to designate countries for "Temporary [P]rotected [S]tatus," if she finds:

> ****
> (C) … there exist extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety, unless the [Secretary] finds that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States.

8 U.S.C. § 1254a(b).

When the Secretary designates a country for TPS, eligible aliens who are granted TPS may not be removed from the United States and are authorized to work for the duration of the country's TPS designation, so long as they remain in valid temporary protected status. 8 U.S.C. § 1254a(a), (c); *see*

DEFENDANTS' OPPOSITION AND CROSS-MOTION FOR SUMMARY JUDGMENT
Case No. 3:25-cv-1766-EMC
2

*Sanchez v. Mayorkas*, 593 U.S. 409, 412 (2021). Initial designations and extensions thereof may not exceed eighteen months. *Id.* § 1254a(b)(2), (b)(3)(C). The Secretary must consult with appropriate agencies and review each designation before it ends to determine whether the conditions for the country's designation continue to be met. *Id.* § 1254a(b)(3)(A). If the Secretary finds that the foreign state "no longer continues to meet the conditions for designation," she "shall terminate the designation" by publishing notice in the Federal Register of the determination and the basis for the termination. *Id.* § 1254a(b)(3)(B). If the Secretary "does not determine" that the foreign state "no longer meets the conditions for designation," then "the period of designation of the foreign state is extended for an additional period of 6 months (or, in the discretion of the [Secretary], a period of 12 or 18 months)." *Id.* § 1254a(b)(3)(C).

Finally, the statute makes unreviewable any determination of the Secretary relating to TPS determinations. "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under [§ 1254a(b)]." *Id.* § 1254a(b)(5)(A).

## II.   FACTUAL BACKGROUND

### A. Venezuela

On March 9, 2021, former Secretary of Homeland Security Alejandro Mayorkas designated Venezuela for TPS based on extraordinary and temporary conditions that prevented nationals of Venezuela from safely returning (the 2021 Venezuela Designation).[1,2] The former Secretary extended Venezuela's TPS designation twice.[3] On October 3, 2023, in addition to extending the 2021 Venezuela TPS status through September 2025, the former Secretary redesignated Venezuela for TPS, effective from

---

[1] Pursuant to Fed. R. of Evid. 201(b), Defendants ask the Court to take judicial notice of the Federal Register Notices cited throughout the brief. *See Matter of Ferrante*, No. 23-55005, 2023 WL 8449198, at *1 (9th Cir. Dec. 6, 2023) (holding that "a court may take judicial notice of matters of public record").

[2] *See Designation of Venezuela for [TPS] and Implementation of Employment Authorization for Venezuelans Covered by Deferred Enforced Departure*, 86 Fed. Reg. 13574 (Mar. 9, 2021).

[3] *See Extension of the Designation of Venezuela for [TPS]*, 87 Fed. Reg. 55,024 (Sept. 8, 2022); *see also Extension and Redesignation of Venezuela for [TPS]*, 88 Fed. Reg. 68,130 (Oct. 3, 2023).

1   October 3, 2023, through April 2, 2025 (the 2023 Venezuela Designation).[4] *See* ECF No. 103-1 at 92.

2   This notice provided procedures for initial applicants registering for TPS under the 2023 Venezuela

3   Designation, and it also allowed Venezuelan nationals who had previously registered for TPS under the

4   2021 Designation to re-register for TPS and apply to renew their employment authorization document

5   with U.S. Citizenship and Immigration Services (USCIS). *Id.* On January 17, 2025, former Secretary

6   Mayorkas issued a notice (the 2025 Venezuela Extension) extending the 2023 Venezuela Designation for

7   18 months, allowing a consolidation of filing processes such that all eligible Venezuela TPS

8   beneficiaries—whether under the 2021 or 2023 designations—could obtain TPS through October 2,

9   2026.[5] ECF No. 103-2 at 3.

10          In light of the deficiencies found within this notice, on January 28, 2025, Secretary Noem vacated

11  the 2025 Venezuela Extension and restored the status quo that preceded that decision (the 2025 Venezuela

12  Vacatur).[6] ECF No. 103-1 at 1-3. She explained that the 2025 Venezuela Extension "did not acknowledge

13  the novelty of its approach" or "explain how it is consistent with the TPS statute." *Id.* at 2; *see* 8 U.S.C.

14  § 1254a(b)(3). The Secretary determined that the "lack of clarity" warranted a vacatur to "untangle the

15  confusion and provide an opportunity for informed determinations regarding the TPS designations and

16  clear guidance." *Id.*

17          As a result of the vacatur, Secretary Noem had the opportunity to conduct a fresh review of the

18  Venezuelan country conditions and consult with the appropriate U.S. Government agencies. On February

19  1, 2025, Secretary Noem determined that Venezuela no longer continued to meet the conditions for the

20  2023 Venezuela Designation and that it was "contrary to the national interest to permit the covered

21  Venezuelan nationals to remain temporarily in the United States."[7] ECF No. 104-1 at 1. Accordingly,

22  Secretary Noem terminated the 2023 Designation of Venezuela, effective April 7, 2025 (the 2025

23  ───────────────

24  [4] *See 2023 Venezuela Designation*, 88 Fed. Reg. 68,130.

25  [5] *See Extension of the 2023 Designation of Venezuela for [TPS]*, 90 Fed. Reg. 5,961 (Jan. 17, 2025).

26  [6] *See Vacatur of 2025 [TPS] Decision for Venezuela*, 90 Fed. Reg. 8,805 (Feb. 3, 2025).

    [7] *See Termination of the October 3, 2023 Designation of Venezuela for [TPS]*, 90 Fed. Reg. 9,040 (Feb.
27  5, 2025).

28          DEFENDANTS' OPPOSITION AND CROSS-MOTION FOR SUMMARY JUDGMENT
                            Case No. 3:25-cv-1766-EMC
                                       4

Venezuela Termination). *Id.* at 3. In making this determination, she highlighted the "notable improvements in several areas, such as the economy, public health, and crime," that allow for Venezuelan nationals to be "safely returned to their home country." *Id.* However, even assuming extraordinary and temporary conditions remained, the Secretary explained that terminating the 2023 Venezuela TPS designation is necessary because it is contrary to the national interest to permit the covered Venezuelan nationals to remain temporarily in the United States. *Id.* The national interest is "an expansive standard that may encompass an array of broad considerations" which "calls upon the Secretary's expertise and discretionary judgment." *Id.* Secretary Noem explained that the significant population of TPS holders has resulted in "associated difficulties in local communities where local resources have been inadequate to meet the demands cause by increased numbers," and further underscored that, across the United States, "city shelters, police stations and aid services are at maximum capacity." *Id.* In considering the national interest, she found that this population includes members of Tren de Aragua, a transnational criminal organization recently determined to "pos[e] threats to the United States." *Id.* at 3-4. Secretary Noem also observed that "U.S. foreign policy interests, particularly in the Western Hemisphere, are best served and protected by curtailing policies that facilitate or encourage illegal and destabilizing migration." *Id.*

### B. Haiti

On January 21, 2010, former Secretary Janet Napolitano designated Haiti for TPS for a period of 18 months due to the "conditions in Haiti following the [7.0 magnitude] earthquake" that struck Haiti in January 2010.[8] *See* ECF No. 110-3 at 42. Various Secretaries extended and redesignated TPS for Haiti through 2018.[9] *See* ECF No. 110-3 at 77-79, 106-108, 109-111; 115-118; 122-124. On January 18, 2018, then-Acting Secretary Elaine Duke terminated the designation, finding that "the conditions for Haiti's designation for TPS—on the basis of 'extraordinary and temporary conditions' relating to the 2010

---

[8] *Designation of Haiti for [TPS]*, 75 Fed. Reg. 3476, 3477 (Jan. 21, 2010).

[9] *Extension and Redesignation of Haiti for [TPS]*,76 Fed. Reg. 29,000 (May 19, 2011); *Extension of the Designation of Haiti for [TPS]*, 77 Fed. Reg. 59,943 (Oct. 1, 2012); *Extension of the Designation of Haiti for [TPS]*, 79 Fed. Reg.11,808 (Mar. 3, 2014); *Extension of the Designation of Haiti for [TPS]*, 80 Fed. Reg. 51,582 (Aug. 25, 2015); *Extension of the Designation of Haiti for [TPS]*, 82 Fed. Reg. 23,830 (May 24, 2017).

earthquake that prevented Haitian nationals from returning in safety—are no longer met."[10] ECF No. 110-5 at 22. On August 3, 2021, former Secretary Alejandro Mayorkas newly designated Haiti on the basis of extraordinary and temporary conditions.[11] ECF No. 110-3 at 46. Thereafter, he extended and redesignated TPS for Haiti for 18 months, ending on August 3, 2024.[12] ECF No. 110-3 at 82. On July 1, 2024, former Secretary Mayorkas again extended and redesignated TPS for Haiti for 18 months, ending on February 3, 2026 (the 2024 Haiti Extension).[13] ECF No. 110-3 at 93.

On February 24, 2025, Secretary Noem partially vacated the 2024 Haiti Extension (the 2025 Haiti Partial Vacatur).[14] ECF No. 110-2 at 1. In so doing, the Secretary shortened the existing designation period from 18 months to 12 months. Secretary Noem explained that the extension "failed to evaluate" whether permitting Haitian nationals to remain temporarily is "contrary to the national interest of the United States." *See id.* at 3-4; 8 U.S.C. § 1254a(b)(1)(C). Secretary Noem also noted that "there is no discussion in the [2024 Haiti Extension] of why the 18-month period was selected in lieu of a [six] or [twelve] month period." *Id.* at 3. She further relied on indications from the Department of State and DHS of "significant developments" that "might result in improvement in conditions," including United Nations Involvement to "support the Haitian National Police in capacity building, combatting gang violence and provid[ing] security for critical infrastructure." *Id.* at 3-4. The Secretary considered the putative reliance interests of those impacted by the 2025 Haiti Partial Vacatur but found that they were outweighed by the overriding interests and concerns articulated in the notice. *Id.*

## STANDARD OF REVIEW

The APA permits judicial review of a "final agency action for which there is no other adequate remedy in court." 5 U.S.C. § 704. Courts may only set aside the underlying agency decision if it is

---

[10] *Termination of Designation of Haiti for [TPS]*, 83 Fed. Reg. 2,648 (Jan. 18, 2018).

[11] *Designation of Haiti for [TPS]*, 86 Fed. Reg. 41,863 (Aug. 3, 2021).

[12] *Extension & Redesignation of Haiti for [TPS]*, 88 Fed. Reg. 5,022 (Jan. 26, 2023).

[13] *See Extension & Redesignation of Haiti for [TPS]*, 89 Fed. Reg. 54,484 (July 1, 2024).

[14] *See Partial Vacatur of 2024 [TPS] Decision for Haiti*, 90 Fed. Reg. 10,511 (Feb. 24, 2025).

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id*. § 706(2)(A). Thus, a Court does not determine whether there is any genuine dispute of material fact, as it would in ruling on an ordinary summary judgment motion. *See Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985); *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). Instead, summary judgment serves as a mechanism for deciding, as a matter of law, whether the agency action passes muster under the APA. *Nw. Motorcycle Ass'n v. U.S. Dep't Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994); *Occidental Eng'g*, 753 F.2d at 769-70. Accordingly, the Court reviews the evidence included in the administrative record to determine whether, as a matter of law, the evidence permitted the agency to make the decision it did. *Id*. Although the Court's review of the evidence is to be "searching and careful," it is "not empowered to substitute [its] judgment for that of the agency." *Rancher Cattlemen Action Legal Fund United Stockgrowers of Am. v. United States Dep't of Agric.*, 415 F.3d 1078, 1103 (9th Cir. 2005). As a result, federal courts should uphold an agency decision—even one "of less than ideal clarity"—"if the agency's path may reasonably be discerned." *Id*. at 1097 (*citing Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 496 (2004)).

## ARGUMENT

## I. SECRETARY NOEM'S CHALLENGED ACTIONS ARE NOT REVIEWABLE UNDER THE ADMINISTRATIVE PROCEDURE ACT

At the outset, Plaintiffs argue that the Court's decision granting preliminary relief for Venezuela TPS holders continues to control as the law of the case. But "the general rule" is that "decisions on preliminary injunctions" are not binding in later stages of the proceedings and "do not constitute the law of the case." *S. Or. Barter Fair v. Jackson County*, 372 F.3d 1128, 1136 (9th Cir. 2004). Even if the law of the case doctrine applied, it is subject to exceptions when "the decision is clearly erroneous and its enforcement would work a manifest injustice," "intervening controlling authority makes reconsideration appropriate," or "substantially different evidence" has since been introduced. *Old Person v. Brown*, 312 F.3d 1036, 1039 (9th Cir. 2002). Here, respectfully, the Court's initial decision was clearly erroneous, as the Supreme Court concluded with just one noted dissent that the government was likely to prevail on the

merits. Likewise, the Supreme Court's stay decision clearly makes reconsideration appropriate; nothing requires the Court to continue adhering to reasoning the Supreme Court has since rejected. And the Court now has additional evidence before it compared to the limited record available at the preliminary-relief stage.

### A. Plaintiffs' Claims are Unreviewable Under the APA Because the TPS Statute Precludes Judicial Review

As a threshold matter, Defendants recognize that this Court concluded that it had jurisdiction to review the Secretary's 2025 Vacatur and Termination determinations under the APA notwithstanding the jurisdictional bar at 8 U.S.C. § 1254a(b)(5)(A). ECF No. 93 at 15-30. However, Defendants respectfully maintain that this Court lacks jurisdiction over Plaintiffs' claims.[15] Under the APA, judicial review is not available "to the extent that…statutes preclude judicial review." 5 U.S.C. § 701(a)(1). The TPS statute precludes review here in the plainest possible language: "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS relief. 8 U.S.C. § 1254a(b)(5)(A) (emphasis added). The statute commits to the Secretary's unreviewable authority any and all determinations concerning TPS designation, extension, and termination. Several features of 8 U.S.C. § 1254a(b)(5)(A) reflect Congress' intent that the statute sweep broadly. *See* Def. Mot. at 9-11. First, in describing which "determinations" should be shielded from judicial review, Congress chose the word "any," which the Supreme Court has long recognized as having

---

[15] On May 19, 2025, the Supreme Court stayed this Court's postponement order (ECF No. 93) pending disposition of Defendants' interlocutory appeal and any timely sought petition for a writ of certiorari. *Noem v. Nat'l. TPS All*, No. 24A1059, 2025 WL 1427560 (U.S. Ct. May 19, 2025). With only one justice noting dissent, the Supreme Court indicated its disagreement with the decisions assessment of the merits. *See Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curiam) (in order to "obtain a stay pending the filing and disposition of a petition for writ of certiorari, an applicant must show," among other things, "a fair prospect that a majority of the Court will vote to reverse the judgment below"); *see also CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 230 (4th Cir. 2020) ("We may of course have the technical authority to hold that, notwithstanding the Supreme Court's view, the plaintiffs are likely after all to succeed on the merits of their challenge. But every maxim of prudence suggests that we should decline to take the aggressive step of ruling that the plaintiffs here are in fact likely to succeed on the merits right upon the heels of the Supreme Court's stay order necessarily concluding that they were unlikely to do so.").

an "expansive meaning." *Patel v. Garland*, 596 U.S. 328, 338 (2022). The provision thus captures determinations of whatever kind." *Id.* (*quoting* Webster's Third International Dictionary 97 (1993)); *see Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) (same). Likewise, Congress's use of the phrase "with respect to" has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717 (2018); *see also Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (the similar phrase "related to" means "having a connection with or reference to . . . whether directly or indirectly"); Webster's New Collegiate Dictionary 1004 (9th ed. 1990) (defining "respect" as "a relation to or concern with something usually specified"). Reinforcing this interpretation, "the Government's political departments [are] largely immune from judicial control" in the immigration context, *Fiallo v. Bell*, 430 U.S. 787, 792 (1977), particularly when making the sensitive foreign-policy judgments at issue here. The Executive Branch has long exercised inherent authority to afford temporary protection from removal based on its assessment of conditions in foreign states, even before there was any "specific statutory authority" for such relief. *See Hotel & Rest. Emps. Union, Loc. 25 v. Smith*, 846 F.2d 1499, 1510 (D.C. Cir. 1988). That authority includes the discretion "not to extend [protected] status to a particular class of aliens," and the D.C. Circuit had recognized that the Executive Branch's decision in that respect was "unreviewable" by courts. *Id.* Congress legislated against that backdrop when it enacted the TPS program, and codified in Section 1254a(b)(5)(A) the understanding that "[t]here is no judicial review" of such determinations. 8 U.S.C. § 1254a(b)(5)(A).

Here, Plaintiffs challenge the 2025 Venezuela Vacatur and Termination and the 2025 Haiti Partial Vacatur determinations. But each is a determination with respect to "termination or extension of a [TPS] designation." 8 U.S.C. § 1254a(b)(5)(A). Because judicial review is foreclosed by § 1254a(b)(5)(A), Plaintiffs' APA claims are barred, and Defendants are entitled to summary judgment on these claims.

### B.    Additional Barriers to Review Plaintiffs' Claims

Other barriers foreclose this Court's review of Plaintiffs' claims, too. *See* Def Mot. at 11-14. First, the APA precludes review of agency action that is "committed to agency discretion by law." 5 U.S.C.

1    § 701(a)(2). The Secretary's determination that continuing to permit Venezuelan nationals to remain

2    temporarily in the United States is contrary to the "national interest" is precisely the kind of judgment call

3    that depends upon the Secretary's "expertise and judgment" such that there is no manageable legal

4    standard. Def. Mot. at 12 (*citing Zhu v. Gonzales*, 411 F.3d 292, 295 (D.C. Cir. 2005)); *see Poursina v.*

5    *USCIS*, 936 F.3d 868, 872 (9th Cir. 2019) ("the invocation of 'national interest' is a core example of a

6    consideration that lacks a judicially manageable standard"). Second, Plaintiffs' request that the Court "set

7    aside" the Secretary's determinations, *see* Pls.' MSJ. at 1, cannot be squared with 8 U.S.C. § 1252(f)(1),

8    which bars district courts and courts of appeals from entering an order that "enjoin[s] or restrain[s]" the

9    operation of the statutory provisions Section 1252(f)(1) covers, including § 1254a. *See* Def. Mot. at 12.

10    Moreover, while recognizing that the Ninth Circuit has held otherwise, the government maintains the

11    view—and preserves the argument—that Section 1252(f)(1) also bars declaratory relief. *See* Def. Mot. at

12    14.

13    **II.    THE SECRETARY'S DETERMINATIONS DID NOT VIOLATE THE APA**

14        **A.    The Secretary's 2025 Venezuela Vacatur Was in Accordance with Law**

15        Courts have long recognized that an administrative agency has inherent or statutorily implicit

16    authority to reconsider and change a decision within a reasonable period if Congress has not foreclosed

17    this authority by requiring other procedures. Plaintiffs do not disagree with this analysis, but instead allege

18    that, since the TPS statute provides "specific processes for TPS designations, extensions and

19    terminations," "any implied reconsideration authority" has been foreclosed. Pls.' MSJ at 13. However,

20    Plaintiffs failed to point to any such specific statutory procedures limiting the Secretary's authority to

21    revisit and reconsider a prior determination, nor have they demonstrated how a reconsideration of a prior

22    TPS decision evades any of the procedural requirements they point to. Instead, Plaintiffs simply assert

23    that the processes laid out in the TPS statute do not "include the option to vacate an extension." Pls.' MSJ.

24    at 13. However, statutory authorization to make a decision "must be understood as carrying with it an

25    implied incidental authority" to revoke that decision, *China Unicom (Ams.) Ops. Ltd. v. FCC*, 124 F.4th

26    1128, 1143 (9th Cir. 2024) ("CUA"); *see also Haig v. Agee*, 453 U.S. 280, 290-91 (1981) (holding that

27

28    DEFENDANTS' OPPOSITION AND CROSS-MOTION FOR SUMMARY JUDGMENT

the State Department's statutory authority to "grant and issue passports included an implied authority to revoke passports"); *Belville Mining Co. v. United States*, 999 F.2d 989, 998 (6th Cir.1993) (noting that "[e]ven if an agency lacks express statutory authority to reconsider an earlier decision, an agency possesses inherent authority to reconsider administrative decisions, subject to certain limitations") (citations and internal quotations omitted). Congress has given the Secretary "broad authority" over TPS determinations, *Ramos*, 975 F.3d at 890, including discretion over both the length of the TPS designation and timing of periodic review. 8 U.S.C. § 1254a(b)(3)(A)-(C). And such broad authority in making TPS determinations carries an authority to revisit and reconsider a prior determination. *Chao v. Russell P. Le Frois Builder, Inc.,* 291 F.3d 219, 229 n.9 (2d Cir. 2002) (agency's power to reconsider "applies regardless of whether the applicable statute and agency regulations expressly provide for such review, but not where there is contrary legislative intent or other affirmative evidence") (emphasis in original) (quotations omitted); ); *Gun South, Inc. v. Brady*, 877 F.2d 858, 862 (11th Cir. 1989) ("[T]he Supreme Court and other courts have recognized an implied authority in other agencies to reconsider and rectify errors even though the applicable statute and regulations do not expressly provide for such reconsideration.").

The Secretary has asserted and exercised this authority previously. *See 2023 El Salvador Reconsideration, Rescission, and Extension*, 88 Fed. Reg.40,282, 40,285 (2023) (Secretary Mayorkas exercising "inherent authority to reconsider any TPS-related determination, and upon reconsideration, to change the determination" to vacate his predecessor's termination of El Salvador's TPS designation). If agencies hold any inherent power to reconsider their past actions—consistent with former Secretary Mayorkas's exercise of the same power, *see id.*—then Secretary Noem's decision to vacate her predecessors' extension was a quintessential exercise of that power. And Plaintiffs' arguments that the specific processes contained within the TPS statute limit Secretary Noem's inherent authority, Pls.' MSJ at 13, fail because none of the processes constitute the sort of specific statutory mechanism for vacating that might preclude recognition of such an implied power. Essentially, "if there is no statutory procedure for [a vacatur] that the agency could be said to be evading by relying on implied authority, then the entire predicate for the sort of statutory-structure argument referenced…is lacking." *CUA*, 124 F.4th 1128, 1143

1  (9th Cir. 2024). As such, Plaintiffs cannot show that such an action has been foreclosed by Congress.

2          Plaintiffs' contentions that the "timeframe for which a TPS designation may be terminated,"

3  constitutes a Congressional limitation on the Secretary's authority to vacate an extension are equally

4  unavailing. According to Plaintiffs, the Vacatur was contrary to Section 1254a(b)(3)(B) in that it

5  terminates an extension prior to the "expiration of the most recent previous extension," which, in

6  Plaintiffs' view, is October 2, 2026. But the Vacatur determination was not a "termination" under the TPS

7  statute. ECF No. 103-1 at 2-3. Rather, it was a reconsideration of a prior extension that had not yet taken

8  effect. No statutory time limits bar the Secretary from correcting her predecessor's error.

9          Plaintiffs also fail to point to any evidence demonstrating that Secretary Noem's sole purpose in

10  vacating the extension is merely to "undo the previous administration's decision." Pls.' MSJ. at 14.

11  Contrary to these assertions, Secretary Noem thoroughly explained her reasons for vacating her

12  predecessor's extension, as it provides an opportunity for "clear guidance" regarding the TPS

13  designations. ECF No. 103-1 at 3. Nevertheless, "[i]t is hardly improper for an agency head to come into

14  office with policy preferences and ideas, discuss them with affected parties, sound out other agencies for

15  support, and work with staff attorneys to substantiate the legal basis for a preferred policy." *Dep't of*

16  *Commerce v. New York*, 588 U.S. 752, 778 (2019); *see  Bureau of Alcohol, Tobacco & Firearms v. Fed.*

17  *Lab. Rels. Auth.*, 464 U.S. 89, 98, n.8 (1983) ("an agency acting within its authority can make policy

18  choices consistent with the congressional mandate so long as its actions conform to applicable procedural

19  requirements …."). As the Supreme Court has explained, "a court may not set aside an agency's

20  policymaking decision solely because it may have been influenced by political considerations or prompted

21  by Administrative priorities …. Such decisions are routinely informed by unstated considerations of

22  politics, the legislative process, public relations, interest groups, foreign relations, and national security

23  concerns (among others). *Id.* at 782; *see Ramos*, 975 F.3d at 897-98 ("It is expected—perhaps even critical

24  to the functioning of government—for executive officials to conform their decisions to the

25  administration's policies."). Here, the Secretary's TPS authority inevitably requires her to make sensitive

26  assessments affecting United States foreign policy. *See Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89

27

28  DEFENDANTS' OPPOSITION AND CROSS-MOTION FOR SUMMARY JUDGMENT
Case No. 3:25-cv-1766-EMC

(1952) ("[A]ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations [and] the war power."). When the Executive Branch acts in the field of foreign policy "… pursuant to an express or implied authorization of Congress, [its] authority is at its maximum, for it includes all that [it] possesses in [its] own right plus all that Congress can delegate." *Youngstown Sheet and Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring) (cleaned up).

In an effort to circumvent this unquestionable inherent authority, Plaintiffs argue that "Congress created TPS specifically to *constrain* executive discretion in humanitarian relief programs." Pls.' MSJ at 14. This argument is both unsubstantiated and patently false. Congress enacted the TPS program to provide *temporary* shelter in the United States "on a discretionary basis" for foreign nationals. Pub. L. No. 101-649, 104 Stat. 4978. While Section 1254a requires the Secretary to review conditions within foreign states designated for TPS periodically, any subsequent action turns on the Secretary's findings about whether the conditions for such designation continue to exist. 8 U.S.C.§ 1254a(b)(3)(A)-(C). Additionally, the statute requires the Secretary to determine whether "permitting aliens to remain temporarily in the United States is contrary to the national interest of the United States." 8 U.S.C. § 1254a(b)(1)(C); *cf. Poursina*, 936 F.3d at 874 (observing, in an analogous INA context, "that the 'national interest' standard invokes broader economic and national-security considerations, and such determinations are firmly committed to the discretion of the Executive Branch—not to federal courts" (*citing Hawaii*, 585 U.S. at 684-86)). And vacating a designation or extension of a designation, specifically where the Secretary finds a serious error or legal defect in a prior determination, or a potential national security threat, is a valid exercise of her authority under the TPS statute and her responsibility in ensuring a continued designation of a county complies with the law.

Here, Secretary Noem acted promptly to reconsider Secretary Mayorkas's last-minute TPS extension and did so months before the extension's effective date of April 3, 2025. The steps Secretary Noem took to vacate what she deemed an ill-considered decision by her predecessor were entirely consistent with her inherent authority under the statute governing TPS determinations. Therefore,

Defendants are entitled to summary judgment on this claim.

**B. The Venezuela Vacatur Was Lawful under the APA.**

Plaintiffs also make an overarching argument that the Venezuela Vacatur was "arbitrary and capricious" and "without observance of procedure required by law." Pls.' MSJ. at 15. However, none of Plaintiffs' five assertions supporting that conclusion are persuasive. First, Plaintiffs contend that the Vacatur was "founded on legal error." *Id*. Not so. The evidence provided conclusively demonstrates that Secretary Noem carefully reviewed the decision of former Secretary Mayorkas and determined that the decision contained flaws warranting reconsideration. She found that the determination, which consolidated filing processes and allowed all eligible TPS beneficiaries to obtain TPS through the same extension date of October 2, 2026, regardless of whether they are under the 2023 designation or the 2021 designation, failed to "explain how it is consistent with the TPS statute," and, "[g]iven these deficiencies," Secretary Noem explained that the vacatur was necessary to provide an "opportunity for informed determinations regarding the TPS designations." ECF No. 103-1 at 3-4. Additionally, Plaintiffs' arguments that the Vacatur "failed to consider alternatives and reliance interests" are unsupported. Pls.' MSJ at 15. In fact, the Vacatur notice shows that Secretary Noem considered reliance interests in issuing the determination but found that any putative reliance interests are negligible "given the exceedingly brief period in which the January 17, 2025, extension has been in effect." ECF No 103-1 at 3. Therefore, Plaintiffs have not demonstrated any legal error in Secretary Noem's reasoned decision-making. The fact that Plaintiffs disagree with the Secretary's determination does not render it unlawful.

Despite Secretary Noem's stated reasons, Plaintiffs also allege that the Vacatur was "pretextual," and assert that evidence "confirms" that the "true purpose" of the Vacatur was to provide a "path to termination." Pls.' MSJ at 16. However, the Vacatur was well supported by statutorily authorized criteria. In fact, ample evidence within the record demonstrates that Secretary Noem reviewed her predecessors' extension alongside prior TPS determinations, ECF No. 103-2 at 15-35; ECF No. 103-3 at 146-148, 103-4 at 1-28; considered U.S. national interests and foreign policy, ECF No. 103-5 at 96-98, 159-161; and evaluated country conditions in Venezuela, ECF No. 103-5 at 162-208; all of which are relevant factors

in making TPS determinations. *See Lopez v. Ashcroft*, 366 F.3d 799, 807 n.6 (9th Cir. 2004) (The agency "does not have to write an exegesis on every contention. What is required is merely that it consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted."); *cf. Garland v. Ming Dai*, 592 U.S. 357, 368 (2021) (in reviewing an agency's factual determination, a court must ask whether "the agency's finding qualifies as one of potentially many reasonable possibilities" and cannot give "conclusive weight to any piece of testimony that cuts against the agency's finding"). This evidence supports the Secretary's finding that former Secretary Mayorkas' decision to extend TPS for Venezuela warrants further review. *See* Exhibit 1 (discussing the pros and cons of various options for the Venezuela TPS 2023 Extension and Redesignation. One noted concern was that a concurrent extension and redesignation of Venezuela for TPS did not follow "standard practice" and some beneficiaries would have their benefits extended for fewer months than the extension received by others). Because Secretary Noem "articulated a reasoned connection between the facts found" and the final agency action of vacating the extension, the Vacatur decision should be upheld. *Pac. Coast Fe'n of Fishermen's Ass'ns v. U.S. Bureau of Reclamation*, 426 F.3d 1082, 1091 (9th Cir. 2005).

In an effort to bolster their argument that the decision was preordained, Plaintiffs point to evidence in the record describing communications between agency employees prior to Secretary Noem's confirmation. Pls.' MSJ at 5-6. However, this evidence merely depicts communications between agency personnel gathering information regarding country conditions in Venezuela and finalizing drafts for the Secretary to review. It is not unreasonable for an agency to prepare such documents in anticipation of an administration's potential policy changes and in accordance with its stated mission.  And this is consistent with agency preparation in prior determinations. *See* ECF No. 110-2 at 37 (Order, *Saget v. Trump*, No. 18-cv-1599(WFK)(ST) (E.D.N.Y. Apr. 11, 2019) (noting that USCIS employees were directed to "refashion" draft memorandum to former DHS Secretary after "prognosticat[ing] that the Secretary may wish to terminate [a TPS designation].").

Finally, Plaintiffs cannot demonstrate that the Vacatur did not "observe procedures required by

[the TPS statute]. Pls.' MSJ. at 16-17. Plaintiffs say the Secretary failed to comply with requirements for "interagency consultation and [assessment of] country conditions," but those requirements apply to extensions and terminations. The vacatur was neither; instead, it was a reconsideration of a prior TPS determination, and its effect was only to move forward the Secretary's consideration of whether to terminate the TPS designation. Indeed, this determination complied with past practice of revisiting prior determinations independently. *See* 8 U.S.C. § 1254a(b)(3)(A); *2023 El Salvador Reconsideration, Rescission, and Extension*, 88 Fed. Reg. 40,282, 40,285 (June 21, 2023) ("After conducting an independent assessment of the country conditions in El Salvador as they existed in 2018 and exist today…"). Based on all the evidence in the record, the Secretary reasonably determined that a vacatur would provide an opportunity for "informed determinations regarding TPS designations" and, as such, she restored the status quo preceding former Secretary Mayorkas' decision. Accordingly, Secretary Noem was required to determine whether to extend or terminate the TPS designation by February 1, 2025. And she did so, consistent with the requirements under 8 U.S.C. § 1254a(b)(3). ECF No. 104-1 at 1-3. Therefore, Plaintiffs cannot plausibly show that the Vacatur violates 5 U.S.C. § 706(2)(D). Pls.' MSJ at 17.

### C.    The Secretary's Termination of Venezuela's 2023 TPS Designation Was Issued in Accordance with the Law

Plaintiffs' argument that the Termination was unlawful is likewise without merit because it depends on Plaintiffs' view that the Vacatur was unlawful. Pls' MSJ at 17 ("the termination was unlawful because it was predicated on the unlawful vacatur."). To support this argument, Plaintiffs rely on the same logic as above, claiming that that termination of a TPS designation can only take effect after "the expiration of the most recent previous extension," which Plaintiffs' say is October 2, 2026. *Id*. But because the 2025 Extension was vacated by the 2025 Vacatur, the status quo preceding that decision was restored, and the "expiration of the most recent previous extension" for the 2023 Venezuela TPS designation was April 2, 2025. *See* ECF No. 103-1. The Termination, which was published on February 5, 2025, became effective 60 days later on April 7, 2025. *See* ECF No. 104-1 at 1-3. Because the termination went into

1   effect after the "expiration of the most recent previous extension," it was lawful under the statute, and

2   Plaintiffs' claim fails.

3       Plaintiffs also incorrectly assert that the 2025 Venezuela Termination failed to meet the statutory

4   requirements because the determination was based on the finding that permitting Venezuelan nationals to

5   remain temporarily in the United States is "contrary to the national interest." Pls.' MSJ. at 18. Plaintiffs

6   argue that the national interest can be considered only when deciding whether to designate a country for

7   TPS, not when deciding whether to terminate or extend a TPS designation. *Id.* But this argument overlooks

8   the statutory language expressly requiring the Secretary to determine whether the country continues to

9   meet the conditions for designation, which in the case of Venezuela's designation under § 1254a(b)(1)(C),

10  includes a "national interest" finding as a necessary element. *See* 8 U.S.C. § 1254a(b)(1)(C) (authorizing

11  the Secretary to designate a country for TPS based on "extraordinary and temporary conditions" "*unless*

12  the [Secretary] finds that permitting the aliens to remain temporarily in the United States is contrary to the

13  national interest of the United States" (emphasis added)). The statute directs the Secretary to conduct a

14  periodic review, and if she determines that the conditions for designation are no longer met, termination

15  is warranted. 8 U.S.C. § 1254a(b)(3)(C). Far from directing the Secretary to solely "focus on the conditions

16  in the country designated for TPS," Pls.' MSJ at 18, rather than conditions in the United States, the plain

17  statutory language requires an assessment of both factors when reviewing a TPS designation. 8 U.S.C. §

18  1254a(b)(3)(C). This is further evidenced by consistent past practice of considering national interest while

19  reviewing a TPS designation based on extraordinary and temporary conditions. *See, e.g.*, *Extension of the*

20  *Designation of Haiti for Temporary Protected Status*, 77 Fed. Reg. 59,943, 59,945 (Oct. 1, 2012) (finding,

21  for purposes of a determination to extend Haiti's TPS designation, that "[i]t is not contrary to the national

22  interest of the United States to permit Haitians . . . to remain in the United States temporarily");

23  *Termination of Designation of Liberia Under Temporary Protected Status Program After Final 6-month*

24  *Extension*, 63 Fed. Reg. 15437, 15438 (Mar. 31, 1998) ("I have had consultations with the appropriate

25  agencies of the U.S. Government concerning … (b) whether permitting nationals of Liberia …to remain

26  temporarily in the United States is contrary to the national interest of the United States. As a result of these

27

28  DEFENDANTS' OPPOSITION AND CROSS-MOTION FOR SUMMARY JUDGMENT
    Case No. 3:25-cv-1766-EMC
    17

1  consultations, I have determined that Liberia no longer continues to meet the conditions for designation

2  of TPS under section 244(b)(1) of the Act"). Here, in reviewing the 2023 TPS designation, Secretary

3  Noem determined that Venezuela no longer met the conditions for the 2023 TPS designation because she

4  found that "permitting the aliens to remain temporarily in the United States is contrary to national interest."

5  8 U.S.C. § 1254a(b)(1)(C).

6          Plaintiffs also contend that the Termination did not observe the statutory procedures for

7  terminating a TPS designation, such as "consultation" and review of "country conditions." Pls.' MSJ at

8  19. Putting aside the fact that this argument urges a quintessential re-weighing of the evidence, which is

9  barred by § 1254a(b)(5)(A), Plaintiffs are simply wrong. Contrary to this assertion, the record reflects that

10 Secretary Noem consulted with the appropriate Government agencies and reviewed country conditions in

11 determining that Venezuela no longer continues to meet the conditions for 2023 designation. *See* ECF No.

12 104-1 at 3 (indicating that the Secretary consulted with the Department of State); 104-4 at 75-76 (Letter

13 of Recommendation from the Department of State); Exhibit 2 (showing that USCIS recommended

14 termination). Specifically, Secretary Noem identified that there were "improvements in several areas such

15 as the economy, public health and crime that allow for [Venezuelan] nationals to be safely returned to

16 their home country," and that these findings were based on information provided by U.S. Citizenship and

17 Immigration Services and the U.S. Department of State. *Id*. She then noted, however, that "even assuming

18 the relevant conditions remain both 'extraordinary and temporary,'" termination of the 2023 TPS

19 designation for Venezuela is required because it is contrary to the national interest to permit Venezuelan

20 nationals to remain temporarily in the United States, in accordance with her statutory authority under 8

21 U.S.C.§ 1254a(b)(3)(B). *Id*. Secretary Noem thus appropriately considered the country conditions for

22 Venezuela, consulted with the relevant government agencies, and provided her reasons for terminating the

23 2023 Designation, including valid concerns for the safety of the U.S. communities, impact that the TPS

24 designation has had on local community resources, and adverse impacts on border security and foreign

25 relations. *Id*. at 3-4. Consistent with the statutory guideline, Secretary Noem reasonably determined that,

26 for the reasons above, Venezuela "no longer continues to meet the conditions for designation." It is clear

27

28

1    that the Secretary "considered the pertinent evidence, examined the relevant factors, and articulated a

2    satisfactory explanation for" her action. *Ru Jun Zhang v. Lynch*, 2018 WL 1157756, at *6 (E.D.N.Y. Mar.

3    1, 2018) (citation omitted); *see Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29,

4    43 (1983) (agency action should be set aside only "if the agency relied on factors which Congress has not

5    intended it to consider, entirely failed to consider an important aspect of the problem, offered an

6    explanation for its decision that runs counter to the evidence before the agency, or is so implausible that

7    it could not be ascribed to a difference in view or the product of agency expertise"). Accordingly, the 2025

8    Termination complied with the procedures and timeframe laid out in the TPS statute, and Plaintiffs are

9    not entitled to summary judgment on that claim.

10           **D.    The Secretary's Haiti Partial Vacatur Did Not Violate the APA**

11           As a preliminary matter, Plaintiffs' argument that Secretary Noem lacked the authority to partially

12    vacate a prior TPS determination falls flat. Pls.' MSJ at 20-21. Rather, the record demonstrates that

13    Secretary Noem carefully reviewed her predecessors' extension and redesignations of the 2024 TPS Haiti

14    designation, after finding flaws warranting reconsideration, and took the "mere action" of abbreviating

15    the extension and designation period by six months. 2025 Haiti Partial Vacatur, 90 Fed. Reg. 10,513-15;

16    *See also* ECF No. 110-2 at 3-5. As described above, this decision was a lawful exercise of her inherent

17    authority to revisit and reconsider prior TPS determinations.

18           Moreover, contrary to Plaintiffs' assertions, Pls.' MSJ. 20-21, in making this determination,

19    Secretary Noem considered the potential reliance interests and alternatives, particularly weighing the

20    outcome of partially vacating a decision rather than "entirely rescinding" it. *Id*. She explained that the

21    partial vacatur "[did] not alter the 60-day re-registration period that permitted existing beneficiaries under

22    the 2024 extension," and "eligible new applicants will still be able to register under the 2024 new

23    designation…by August 3, 2025," but determined that "any putative reliance interests arguably

24    engendered" are "outweighed by the overriding interests and concerns articulated in this notice." *Id*. Any

25    further arguments that the partial vacatur contravened the time limitations governing extensions and

26    terminations under the TPS statute should not be entertained because the partial Vacatur was not a

27

28    DEFENDANTS' OPPOSITION AND CROSS-MOTION FOR SUMMARY JUDGMENT
       Case No. 3:25-cv-1766-EMC
       19

1  termination under the TPS statute, and, thus, there are no statutory time limits barring the Secretary from

2  correcting her predecessor's error. Pls.' MSJ at 21.

3       Plaintiffs also contend that the partial vacatur "failed to follow statutorily required procedures,"

4  such as "interagency consultation and country conditions review." *Id.* at 21-22. But this process governs

5  extensions and terminations under the statute. Again, the partial vacatur was neither, and instead

6  functioned only to move up the date for consideration of those factors. Here, Secretary Noem reviewed

7  the sources the former Secretary relied on and found that her predecessor failed to discuss the "significant

8  developments" that took place in 2024 that "might result in improvement in conditions." *See* ECF No.

9  110-2 at 3-5; *see also* ECF No. 110-3 at 93. These include a United Nations-backed Multinational Security

10  Support Mission deployed to Haiti in 2024 to support the Haitian National Police in "capacity building,

11  combatting gang violence, and provide security for critical infrastructure." See ECF No. 110-2 at 3-5.

12  Thus, it was entirely reasonable for Secretary Noem to partially vacate the 2024 Extension under these

13  circumstances.

14       Nor have Plaintiffs shown that the Secretary Noem's reasoned explanation for the partial vacatur

15  was "pretextual." Pls.' MSJ at 16. In their motion, Plaintiffs point to statements, social media posts, and

16  media appearances from the Secretary and the Administration to suggest an underlying motive to

17  "terminate TPS for Haiti." Pls' MSJ at 23. But none of these statements demonstrate a "predetermined

18  decision" to terminate TPS. Rather, they reflect the Executive's general view that the prior

19  Administration's border policies encouraged a mass illegal influx of aliens and created an unsustainable

20  situation. *See* Ex. 15 (USCIS press release announcing the partial vacatur and discussing illegal

21  immigration); Ex. 17 at 144 (statements taken from Secretary Noem's confirmation hearing where TPS

22  was discussed in relation to gang violence and crime). President Trump and Secretary Noem seek to reduce

23  illegal immigration and crime, policy goals that are reflected in these public statements and that Americans

24  elected President Trump to prioritize. However, these statements—taken from campaign speeches and

25  confirmation hearings where immigration policies are discussed in broad terms—are insufficient to show

26  a pretextual motive behind the Partial Vacatur. And the record further supports this determination

27

28

1    complied with the "general requirements of reasoned agency decisionmaking." Pls.' MSJ at 22.

2    Here, Secretary Noem revisited her predecessor's determination and found that, "[g]iven…the

3    absence of any meaningful appraisal of national interest factors or justification for the 18-month

4    extension...," reducing the designation period to 12 months was warranted. *Id.* Far from any "preordained

5    decision," Pls.' MSJ at 22, she found that the partial vacatur would allow for a clearer and more fulsome

6    review of the country conditions in Haiti, whether Haitian nationals could return to Haiti safely, and

7    whether it is contrary to the U.S. national interest to continue to permit Haitian nationals to remain in the

8    United States under the TPS program. ECF No. 110-2 at 1-3. This reasoning was fully consistent with the

9    TPS statute.[16]

10    Finally, Plaintiffs' argument that the Secretary mistakenly concluded that the TPS statute has a

11    default six-month extension period also lacks merit. Pls.' MSJ at 24-25. Section 1254a(b)(3)(C) plainly

12    provides that an extension runs for "an additional period of 6 months" absent an exercise of the Secretary's

13    "discretion" to instead prolong the extension to "12 or 18 months." 8 U.S.C. § 1254a(b)(3)(C). That

14    Secretaries have often exercised their discretion to depart from the six-month baseline, as Plaintiffs argue,

15    does nothing to undermine that straightforward reading of the text. *Id.* Accordingly, the Haiti Partial

16    Vacatur complied with the statutory guidelines, and Defendants are entitled to summary judgment on this

17    claim.

18    **III. PLAINTIFFS' CONSTITUTIONAL CLAIMS FAIL AS A MATTER OF LAW**

19    Defendants are entitled to summary judgment on Plaintiffs' constitutional claims, too. In Plaintiffs'

20    First Amended Complaint, their claims rest entirely on an attempt to label as "discriminatory" various

21    public statements by the Secretary and the President in which they advocated for a reduction of illegal

22    immigration and crime. *See* ECF No. 74, First Amended Complaint ("FAC") ¶¶ 212-215. The statements

23    and sources highlighted by Plaintiffs in their FAC reflect that their racial animus claims are entirely

24

25

---

26    [16] Plaintiffs again argue that the TPS statute forecloses consideration of the national interest other than
      when designating a country for TPS. Pls' MSJ 14. That argument fails for the reasons already explained
27    above.

without foundation. Pls.' Mot. at 23; *see also* FAC ¶¶ 6, 8, 121-133. Rather, the Secretary's statements were plainly non-discriminatory in nature and simply mirror the legitimate "national security, border enforcement, public safety, immigration policy, and economic and public welfare concerns" that informed the Secretary's vacatur and termination determinations. 90 Fed. Reg. at 9043; *see* 90 Fed. Reg. at 9042 (recognizing that "among the Venezuelan nationals who have crossed into the United States are members of . . . Tren de Aragua"); *Haiti Partial Vacatur*, 90 Fed. Reg. 10,513 (the "notice is bereft of any justification of why permitting the ever-increasing population of Haitian TPS recipients, particularly those who entered the country unlawfully, to remain temporarily in the United States is not contrary to the U.S. national interest") Additionally, Plaintiffs' attempt to rely on statements by President Trump and other "prominent officials," who are *not* responsible for the challenged determinations should be rejected here for the same reason the Supreme Court rejected reliance on similar statements in *DHS v. Regents*: "even as interpreted by [plaintiffs], these statements—remote in time and made in unrelated contexts—do not qualify as 'contemporary statements' probative of the decision at issue." 591 U.S. 1, 35 (2020) (*citing Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977)). The Court should reject Plaintiffs' far-fetched attempt to locate discriminatory animus in a collection of statements that say nothing whatsoever about race or ethnicity. To the contrary, the statements that appear in the First Amended Complaint—and Plaintiffs' motion for summary judgment—simply reflect the current administration's goal of reducing illegal immigration and crime. Plaintiffs' untenable position would mean that these statements vitiate every ensuing immigration policy of this administration based on equal protection grounds. The Court should reject this reasoning and should enter summary judgment in favor of Defendants.

## CONCLUSION

Defendants respectfully request that the Court deny Plaintiffs' motion for partial summary judgment and enter summary judgment in Defendants' favor. Multiple provisions of the INA bar review of Plaintiffs' claims. But even if they did not, the Secretary has authority to vacate a prior extension and vacatur and termination determinations complied with the law. For these reasons, the Court should deny

1    Plaintiffs' motion and enter summary judgment in Defendants' favor.

2

3    Dated: June 17, 2025

4    Dated: June 17, 2025                              Respectfully submitted,

5

6                                                     BRETT A. SHUMATE
                                                      Assistant Attorney General

7
                                                      YAAKOV M. ROTH
8                                                     Principal Deputy Assistant Attorney General

9                                                     SARAH L. VUONG
                                                      Assistant Director
10

11                                                    WILLIAM H. WEILAND
                                                      Senior Litigation Counsel
12

13                                                    ERIC SNYDERMAN
                                                      ANNA DICHTER
14                                                    LAUREN BRYANT
                                                      CATHERINE ROSS
15                                                    JEFFREY HARTMAN
                                                      Trial Attorneys
16
                                                      /s/ *Anna L. Dichter*
17                                                    ANNA L. DICHTER
                                                      Trial Attorney
18                                                    U.S. Department of Justice, Civil Division
                                                      Office of Immigration Litigation
19                                                    General Litigation and Appeals Section
                                                      P.O. Box 868, Ben Franklin Station
20                                                    Washington, DC 20044
                                                      Tel: (202) 353-2405
21                                                    Anna.l.dichter@usdoj.gov

22
                                                      *Attorneys for the Defendants*
23

24

25

26

27

28    DEFENDANTS' OPPOSITION AND CROSS-MOTION FOR SUMMARY JUDGMENT
                             Case No. 3:25-cv-1766-EMC
                                        23

1  BRETT A. SHUMATE
   Assistant Attorney General
2  YAAKOV M. ROTH
   Principal Deputy Assistant Attorney General
3  SARAH L. VUONG
   Assistant Director
4  WILLIAM H. WEILAND
   Senior Litigation Counsel
5  ERIC SNYDERMAN
   ANNA DICHTER
6  LAUREN BRYANT
   CATHERINE ROSS
7  JEFFREY HARTMAN
8  Trial Attorneys
   U.S. Department of Justice, Civil Division
9  Office of Immigration Litigation
   General Litigation and Appeals Section
10 P.O. Box 868, Ben Franklin Station
   Washington, DC 20044
11 Attorneys for Defendants
12

13                    UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15                      SAN FRANCISCO DIVISION

16

17 NATIONAL TPS ALLIANCE, *et. al.*,              Case No. 3:25-cv-1766

18         Plaintiff,
                v.
19 KRISTI NOEM, in her official capacity as      PROPOSED ORDER GRANTING
   Secretary of Homeland Security, *et. al.*,    DEFENDANTS' MOTION FOR SUMMARY
20                                                JUDGMENT
           Defendants.
21

22

23

24

25

26

27
   PROPOSED ORDER GRANTING DEFS.' MOTION FOR SUMMARY JUDGMENT
28 No. 3:25-cv-1766

1

**PROPOSED ORDER**

2          Before the Court is Defendants' Cross-Motion for Summary Judgment, pursuant to Federal

3   Rules 56(f). ECF _____. Having reviewed the motion and considered the arguments, IT IS HEREBY

4   ORDERED that Defendants' Motion for Summary Judgment GRANTED.

5   Issued this _____ day of _____, 2025.

6

7                                                         _____

8                                                         Edward M. Chen
                                                          United States District Court Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   PROPOSED ORDER GRANTING DEFS.' MOTION FOR SUMMARY JUDGMENT
     No. 3:25-cv-1766