# EXHIBIT 1

DELIBERATIVE/ATTORNEY-CLIENT PRIVILEGED

**Options for Venezuela TPS Extension and Redesignation – September 23, 2023**

**ISSUE:**

- The Secretary has announced an 18-month redesignation of Venezuela for TPS and an 18-month extension of Venezuela's TPS designation. The 18-month *redesignation* will become effective upon publication of the *Federal Register Notice* (FRN) making the redesignation effective, anticipated to be on or around October 6, 2023. The 18-month redesignation period would then run from October 6, 2023, through April 5, 2025. Venezuela's existing designation runs through March 10, 2024.
- There are approximately 242,700 current beneficiaries plus 35,900 pending applications (totaling 278,600) under the existing designation and approximately 472,000 Venezuelans estimated to become newly eligible for TPS under the redesignation.
- Question is: Whether the 18-month *extension* announced by the Secretary will begin at the end of the existing designation, on March 11, 2024, and run through September 10, 2024 2025, or will instead begin on the same day the redesignation becomes effective, October 6, 2023, and run through April 5, 2025.

**Option 1 – Concurrent Extension/Redesignation Date**

This option provides for the 18-month extension and redesignation of Venezuela for TPS to run concurrently, with the effective dates of both beginning with the publication of the *Federal Register notice* (FRN). The FRN is currently anticipated to publish on October 6, 2023, so this would mean both periods would run concurrently from October 6, 2023, through April 5, 2025.

Any initial or re-registration applications pending at the time of publication of the FRN or filed thereafter would receive TPS through April 5, 2025. EADs issued in conjunction with these initials or re-registrations would also be valid through April 5, 2025. The FRN would auto-extend Employment Authorization Documents (EADs) for current beneficiaries through the entire redesignation period through April 5, 2025. The initial registration period for the redesignation would run throughout the entire 18 months of the redesignation, and the re-registration period would be set for some shorter amount of time (e.g., approximately 5 months) during the 18-month redesignation. The FRN could auto extend EADs for current beneficiaries through the entire redesignation/extension period, or for some shorter period of time (e.g., 6 or 12 months). Any initial or re-registration applications pending at the time of publication of the FRN or filed thereafter would receive TPS through April 5, 2025. EADs issued in conjunction with these initials or re-registrations would be also be valid through April 5, 2025.

PROs:

- Easiest and fastest way to operationalize the extension and redesignation as there would be no out-of-normal process updates to adjudication systems needed.
- Requires no modifications to the existing SCP and PFE development plans.
- Less confusing for employers in that they will not have to try to distinguish between TPS beneficiaries with varying EAD end dates.
- Consistent with the general practice of running TPS redesignations and extensions simultaneously, although this situation differs in that the extension period would be beginning prior to the end of the current designation period.

1

DELIBERATIVE/ATTORNEY-CLIENT PRIVILEGED

- Gets the designations on the same time cycle, so that future redesignations or extensions could also have simultaneous dates.
- Avoids litigation risk associated with claims of disparate treatment between Venezuelans and issuance of documentation with incorrect dates.
- Taking this approach could simplify finalization and clearance of the FRN, increasing the chance it could get to OFR prior to a possible [If there are complications resulting from the government shutdown, and an unknown about future ability to publish FRNs, it may provide more certainty by including the extensions for Venezuela in the FRN for redesignations.]

CONs:

- Shortens the length of time that current Venezuela TPS beneficiaries hold TPS by 5 months if Venezuela's designation is not extended in a future TPS action.
    - Note that one way to offset the impact of this could be to extend TPS for Venezuela in advance of the statutorily required 60 days ahead of the end of the validity date. For example, a decision to extend and/or redesignate TPS Venezuela could be announced in December 2024 in advance of the April 2024 expiration date.
- Given that TPS extensions typically run from the date the current period ends, stakeholders may be anticipating that the announced 18-month extension would run through September 2025. Announcing instead that it only runs through April 2025 may be received negatively from some.
- Because the standard practice has been to start TPS extensions when the current period ends, beginning it early could give rise to litigation on behalf of those who received an extension only through April 2025 rather than through September 2025.

**Option 2 – Two different designation dates for Venezuela TPS**

This option provides for differing Venezuela TPS dates and populations. Those registering under the redesignation would hold TPS from October 6, 2023, through April 5, 2025, while those currently holding TPS or who filed their applications for TPS prior to October 6, 2023, would hold TPS through September 10, 2025. Venezuelans filing under the redesignation would have through April 5, 2025, to file their initial TPS applications, and Venezuelans filing re-registration applications would have a 60-day re-registration period. EADs issued for those under the redesignation would have an end date of April 5, 2025, while EADs issued for re-registrants would have an end date of September 10, 2025. There are approximately 242,700 current beneficiaries plus 35,900 pending applications (totaling 278,600) under the existing designation and approximately 472,000 Venezuelans estimated to become newly eligible for TPS under the redesignation. The Secretary has discretion to determine the length of time for TPS, with 18 months being the maximum period permitted in the statute.

PROs:

- Current TPS beneficiaries and those with pending applications (approximately 278,600)approximately 240,000) would benefit from an additional 5 months of TPS through September 10, 2025. This is particularly important if TPS for Venezuela is not extended when it is next scheduled for TPS action.
- Avoids potential criticism from stakeholders and litigation risk resulting from not providing an extension for the full 18-months from the date the current designation ends.

**Comments:**

- **[HER1]:** @Deshommes, Samantha L - Please verify.
- **[DSL2R1]:** Confirmed. Uncertainty is definitely a factor. While we have an argument to make to the OFR that delaying publication would be related to duties we are funded to carry out, there's a small chance there could be pushback from the OFR. Also unknown at this time is how review functions at OGC and OIRA would be implemented during a shutdown.
- **[AKE3R1]:** The FRN would cover both the redesignation and extension either way. No need for a second FRN regardless of the dates. But using one date could simplify FRN clearance, allowing us to publish earlier and avoid impact of the shutdown. Revised accordingly.
- **[USCIS4]:** Isn't a con that we could be sued by those who feel they were cheated out of 5 months of their current TPS/EADs?
- **[AKE5R4]:** Yes, that is covered in the last bullet point.
- **[RDB6]:** This seems like an important point in favor of Option 1.
- **[HER7R6]:** Is there precedent for doing this? Is there any way to message this, such as indicating that country conditions will continuously be monitored to determined whether further extension is warranted?
- **[RDB8]:** Are these two bullets redundant?
- **[HER9R8]:** I think the litigation point is important.

DELIBERATIVE/ATTORNEY-CLIENT PRIVILEGED

CONs:

- Without significant system modifications that will take time to implement and particular instructions to applicants, it will not be possible to distinguish between these different groups at the lockbox during intake or via direct online filing before being routed to ELIS for processing. [This will result in delays in accepting and adjudicating these filings.]
- It will be difficult to operationalize differentiating these two groups of Venezuela TPS beneficiaries in our existing systems. It may be difficult for E-Verify and SAVE to properly verify/confirm employment authorization or eligibility for other benefits. This may lead to confusion and could lead to discrimination in the context of employers requiring employees to provide evidence of nationality and other documents that are not acceptable for I-9 verification purposes. This option also makes drafting I-9 guidance extremely difficult which leads to both employers and employees misunderstanding the requirements, resulting in employers inadvertently violating I-9 rules and agencies improperly rejecting documentation.
- May have a negative impact on current initial streamlined case processing (SCP) efforts for Venezuela. As the two different populations have different end validity dates and continuous residence (CR) and continuous physical presence (CPP) dates, two separate processes will have to be developed creating delays. This is a critical concern given the massive incoming workload of roughly 472,000 newly eligible individuals on top of the approximately 278,600 current and pending beneficiaries.
- Risk of litigation associated with claims of disparate treatment between Venezuelans and issuance of documentation with incorrect dates.

- It will be difficult to synchronize these two different Venezuela TPS designation groups together in any potential future TPS actions. This will result in ongoing operational issues and confusion for stakeholders and employers. Not having parity going forward in the TPS life cycle could also give rise to challenges in the development of recommendations and decisions on TPS Venezuela, as well as FRN publications.

**RECOMMENDATION**

Comments:
- **[HER10]:** Do we also run the risk of redesignated folks being incorrectly issued EADs through Sept, and thus have a different type of litigation risk on our hands, issuing TPS/EAD beyond the max of 18 months?
- **[AKE11R10]:** Yes. This was presented as a PRO in Option 1. Have added as a CON here.
- **[RDB12]:** Has OIT provided specific and candid estimates of how much this would slow down SCP I-821 and/or SCP PFE?
- **[AKE13R12]:** No detailed estimate at this point OIT has said it is doable, but we've not asked for an LOE.
- Formatted: Font:
- Formatted: Space After: 0 pt, Line spacing: single
- Formatted: Normal, No bullets or numbering
- **[HER14]:** Should we be providing a recommendation to D1?
- Formatted: Font: Bold
- Formatted: Normal
- Formatted: Font: Bold
- Formatted: Font: Bold

NTPSA2_001265_0002