Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Amanda Young (SBN 359753)
ayoung@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, MARIELA GONZÁLEZ, FREDDY JOSE ARAPE RIVAS, M.H., CECILIA DANIELA GONZÁLEZ HERRERA, ALBA CECILIA PURICA HERNÁNDEZ, E.R., HENDRINA VIVAS CASTILLO, A.C.A., SHERIKA BLANC, VILES DORSAINVIL, and G.S.,<br><br>Plaintiffs,<br><br>vs.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,<br><br>Defendants. | Case No.  3:25-cv-01766-EMC<br><br>Hon. Sallie Kim<br><br>**JOINT DISCOVERY LETTER BRIEF** |

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitran (SBN 302081)
ebitran@aclusocal.org
Diana Sanchez (SBN 338871)
dianasanchez@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

1  The parties submit this brief regarding outstanding discovery disputes. Lead counsel met and conferred and complied with Section 9 of the District's Guidelines for Professional Conduct.

## I.     FACTUAL BACKGROUND & RELEVANT DEADLINES

The issues in dispute, elaborated here, concern Plaintiffs' allegations that Defendants are improperly withholding documents based on assertions of nonresponsiveness, attorney-client privilege (ACP) and presidential communications privilege (PCP). Plaintiffs assert the discovery issues raised are time-sensitive as they relate to a pending summary judgment motion for which Plaintiffs will file a reply brief on June 27, in which they are permitted to introduce new material received through discovery after their motion was filed. Dkt. 181.

The Court ordered Defendants to produce discovery in response to Plaintiffs' RFPs 1 and 2, seeking communications "regarding whether to vacate, partially vacate, or terminate the TPS designations for Venezuela or Haiti" and "concerning the TPS periodic review process . . . to the extent applied in whole or in part" to these decisions. Dkts. 129, 135. The Court ordered the search and production of responsive communications for the date range January 20 through February 24, 2025 with limited search terms: ["Temporary Protected Status" or "TPS" or 1254a] AND [Venezuela], ["Tren de Aragua" or "Tren de Agua" or TdA], [Haiti], or [vacat*]. Dkts. 135 & 132-1. To date, Defendants have produced 551 documents and logged 601 documents on a privilege log. The logged documents are withheld pursuant to ACP and, in 17 cases, PCP.

The parties submitted three joint letter briefs concerning discovery. The letter brief concerning PCP is outstanding. Dkt. 197. This Court also previously reviewed in camera 25 "bellwether" documents, some withheld pursuant to ACP. The Court agreed that 7 of these documents fell within ACP, but found Defendants had provided insufficient information for a determination concerning 4 others; and "reserve[d] ruling" on ACP as to documents not included among the bellwether documents. Dkt. 184. In accordance with the Court's order, Defendants produced amended privilege logs on June 10 and 13. See **Ex. 1** (current privilege log). The Court also denied Plaintiffs' motion concerning nonresponsiveness without prejudice. Dkts. 191, 198.

//
//

1

JOINT DISCOVERY LETTER BRIEF – CASE NO. 3:25-CV-01766-EMC

## II. PLAINTIFFS' POSITION

Plaintiffs respectfully request that this Court: 1) find that documents related to a new administration "coming in and assessing Venezuela and TPS as a whole" are responsive and must be produced; 2) order prompt disclosure of all non-privileged hits for searches conducted in connection with RFPs 1 & 2 except for limited categories which Defendants contend are burdensome to review and nonresponsive, prioritizing for immediate production certain documents which are inexplicably absent—hits for the period January 20-24 and of the custodians Corey Lewandowski and Secretary Kristi Noem; 3) compel Defendants' verification that all responsive documents have been produced or logged; 4) conduct in camera review of high-priority documents withheld in their entirety as ACP where the log suggests they may concern, in whole or in part, policy decisions rather than the solicitation or provision of legal advice, and/or may not include agency counsel; and 5) order the substantiation or withdrawal of PCP for 6 documents where the log does not substantiate the privilege.

### A. Defendants' Withholding of Relevant Records as Nonresponsive

Plaintiffs seek compliance with the Court's order for the production of communications of key decisionmakers concerning their decisions to cut TPS for over one million people. Defendants are withholding an unidentified, but apparently significant percentage of the documents that hit on the Court-ordered search terms as purportedly "nonresponsive." Plaintiffs contend that it is not plausible that a substantial number of documents could meet the search criteria, yet still be nonresponsive. The custodians, time periods and search terms were narrowly tailored so as to make virtually all "hits" by definition responsive.[1] Dkt. 135 at 1. In an effort at compromise and the prompt production of essential discovery, Plaintiffs at this stage only move this Court to order Defendants to produce certain records previously withheld as nonresponsive because they related to "TPS and Venezuela as a whole"; and order Defendants to produce all non-privileged "hits" that do not fall into the following specific categories of documents, which Defendants identified as burdensome to review, and which Defendants consider categorically nonresponsive—1) family members of documents that hit on the search terms, but which do not themselves hit on the search terms; 2) communications concerning agency press

---

[1] Failing to object, Defendants also waived a basis to withhold documents as so irrelevant to be non-responsive. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992).

releases; and 3) the circulation of media clips related to the relevant TPS designations.[2] Plaintiffs request that the Court order Defendants to prioritize for immediate production hits for the period January 20-24, and from custodians Corey Lewandowski and Secretary Kristi Noem, which are inexplicably absent.

Plaintiffs do not seek nonresponsive documents. However, there is good cause to believe Defendants are withholding documents based on their view of *relevance* rather than *responsiveness* to the Court-ordered scope of production:

1) Defendants asserted to Plaintiffs that they have withheld as nonresponsive documents related to a new administration "coming in and assessing Venezuela and TPS as a whole." Plaintiffs contend that such documents would be indisputably responsive, and must be produced.

2) Defendants produced no documents custodial to the Secretary's Chief Advisor Corey Lewandowski, despite that Defendants produced (with others as custodians) email threads including communication to Mr. Lewandowski, where he responds. *See* **Ex. 2**, Dkt. 147-1. This suggests either an inadequate search or spoliation, possibly in contravention of preservation obligations.

3) Defendants identified no documents custodial to Secretary Noem, the decisionmaker.

4) Important TPS decisions appear to emerge from thin air, with no prior communications. For example, the earliest Venezuela-related communication is the circulation of a draft Federal Register notice for the vacatur. *See* **Ex. 3**. Defendants neither produced nor logged any prior communications concerning what prompted this action, or was considered in taking it.

5) Defendants have refused to identify the quantity of documents withheld as nonresponsive, but inadvertently provided information confirming the number is likely substantial. After Defendants admitted they had inadvertently failed to review 159 potentially responsive documents, Defendants ultimately produced or logged only 54, or *one-third* of these documents. *See* Dkts. 153, 157 at 1.

Plaintiffs also request that the Court require Defendants to verify under penalty of perjury they have produced or logged all responsive documents. This is appropriate where Plaintiffs provide concrete evidence of insufficient production, and Defendants concede discovery violations (Dkts. 153, 157). *See, e.g.*, *Gosain v. Bergquist Wood McIntosh Seto,* , at *3 (N.D. Cal. July 5, 2022)

---

[2] Plaintiffs also proposed to consider other categories Defendants deem categorically nonresponsive.

1  (ordering party to verify RFP responses in light of initial failure to provide adequate responses).

2  *Taylor v. Google, LLC*, at *2 (N.D. Cal. Dec. 3, 2024) (discovery on discovery warranted where

3  Plaintiffs make specific showing of production deficiencies).

### B. Defendants' Attorney-Client Privilege Invocations

Defendants continue to withhold a large portion of responsive records in full as ACP, including many draft Federal Register notices and Decision Memos, and related communications, even though these types of documents were of great relevance to the Court's analysis in *Ramos v. Nielsen*, 336 F. Supp. 3d 1075, 1086, 1096, 1101, 1104 (N.D. Cal. 2018). Plaintiffs acknowledge ACP may be appropriate as to certain of these documents, but, despite Plaintiffs' limited knowledge about their contents, Plaintiffs have reason to believe they are of heightened relevance and Defendants are over-invoking the privilege, for instance, withholding records in their entirety where redaction would be more appropriate; or where counsel serve dual purposes—providing legal advice and implementing policy initiatives; or where no counsel is listed as author, sender or recipient. *See* Dkt. 177 at 2-4. This Court "reserve[d] ruling" on the propriety of Defendants' invocation of ACP as to documents not included among the bellwether documents, and as to four documents for which the Court held that Defendants had insufficiently justified the privilege assertion. Dkt. 184 (finding the prior iteration of the log "insufficient" to assess the propriety of the privilege as to NTPSA_USCIS 401, 419, 1473, and 1471). Plaintiffs now move this Court 1) to determine whether these 4 documents are properly withheld in light of the revised privilege log; and 2) to review in camera a limited number of additional documents which Plaintiffs believe, based on the limited available information, may not be properly and entirely withheld either because they concern, in whole or in part, policy decisions rather than the solicitation or provision of legal advice, *see* **Ex. 4**; or because they do not appear to include agency counsel, based on the log entries, *see* **Ex. 5**.

### C. Defendants' Presidential Communications Privilege Invocations

The parties narrowed the PCP dispute, *see* Dkt. 197, which now concerns 6 of 17 documents over which Defendants now assert PCP (NTPSA_PRIVID 5, 6, 7, 8, 10, 12), for which Plaintiffs ask the Court to order Defendants to substantiate or withdraw PCP. Defendants cannot substantiate PCP over internal emails among agency staff, not solicited and received by the President, his advisers, or

1  certain qualifying staff; or for internal agency documents which do not memorialize information sent
2  to the President or for his direct decisionmaking. *See Jud. Watch, Inc. v. DOJ*, 365 F.3d 1108, 1117
3  (D.C. Cir. 2004); *Citizens for Resp. & Ethics in Wash. v. DHS*, No. CIV. 06-0173 (RJL), 2008 WL
4  2872183, at *2 (D.D.C. July 22, 2008).

## III.    DEFENDANTS' POSITION

Plaintiffs repeat many of the same arguments made in the Joint Discovery Dispute Submission Re Responsiveness, ECF No. 191, that the Court considered last week. *See* ECF No. 198 (dismissing without prejudice); *see also* ECF No. 177, 197. Plaintiffs' concerns that Defendants have not produced responsive documents are baseless—particularly where the scope of discovery is limited to a narrow window in time, the attorney-client privilege applies to many of the documents, and Defendants are continuing to look into any issues Plaintiffs raise and correct any mistakes made during an incredibly expedited discovery production. The Court should reject Plaintiffs' request to expand the scope of production. *See* ECF No. 191 at 4-6.

### A.    Records Withheld as Nonresponsive

Defendants vigorously object to Plaintiffs' overbroad and burdensome request to produce documents related to "Venezuela and TPS as a whole." Plaintiffs now seek records previously withheld as nonresponsive simply because they think they may be "responsive" and want them. But this is not how discovery works. As Defendants have consistently maintained, responsiveness is determined by the Requests for Production (RFPs). Defendants are only obligated to produce documents that are actually responsive to the requests as written and courts consistently hold that the duty to produce is limited to what the requests actually seek. *LKQ Corp. v. Kai Motors Am., Inc.*, 345 F.R.D. 152, 158 (N.D. Ill. 2023). Furthermore, the search terms describe the universe of potentially responsive documents, including the outer limits of what must be searched, but they are not a substitute for a responsiveness review and they do not eliminate a Defendants' ability to conduct one. *See* ECF No. 191 at 6 (giving examples).

Here, Judge Chen ordered that "[d]ocuments sought must be keyed to Secretary Noem's intent in reaching the decisions challenged herein beyond that already contained in the administrative record, if any." ECF No. 129. Additionally, this limited extra-record discovery is to be conducted on an

5

1   accelerated basis and restricted to a search and production that is based on the limits set by the Court.
2   *See* ECF No. 135. RFPs 1 and 2 are limited to the decision-making process. Regarding RFP 3, the
3   Court noted that communications about the decision, and how to publish or implement it, shed no light
4   on how the decision was made itself. ECF No. 132 ("it is not clear why documents related to DHS
5   press releases or guidance about how to respond to questions from the media or TPS holders are
6   relevant (especially post-decision) to any alleged unlawful motivation (*i.e.* pretext, bad faith, or
7   animus) behind the challenged decisions."). Accordingly, documents related to "TPS and Venezuela
8   as a whole" plainly do not fall within the scope of the Court's orders. The same goes for "all non-
9   privileged 'hits' that do not fall into [] specific categories of documents, which Defendants consider
10  categorically nonresponsive,"i.e., (1) family members of documents that hit on the search terms, but
11  which do not themselves hit on the search terms; 2) communications concerning agency press releases;
12  and 3) the circulation of media clips related to the relevant TPS designations). None of these
13  documents fall within the Court-ordered scope of discovery for this case and the Court should reject
14  Plaintiffs' last-minute attempt to broaden the scope of discovery.[3]

15  Regarding Plaintiffs' concern that Defendants have not adequately searched and produced
16  documents custodial to the Secretary's Chief Advisor Corey Lewandowski, Defendants are continuing
17  to investigate this issue. However, discovery about the process by which a party searches for, reviews,
18  and collects documents is *not* discovery relevant to a claim or defense."); *Taylor v. Google*, 2024 WL
19  4947270, at *2 (N.D. Cal. Dec. 3, 2024) ("As a general matter, discovery of another party's evidence
20  preservation and collection efforts—or 'discovery on discovery'—is disfavored, as such discovery is
21  typically not relevant to the merits of a claim or defense, and is rarely proportional to the needs of a
22  case."); *246 Sears Rd. Realty Corp. v. Exxon Mobil Corp.*, 2011 WL 13254283, at *4 (E.D.N.Y. Apr.
23  1, 2011) (denying discovery because "[n]one of these requests bear on plaintiff's underlying claim;
24  rather, they represent plaintiff's meandering attempt to prove defendant's noncompliance with its

---

[3] In a footnote, Plaintiffs argue that by "[f]ailing to object, Defendants waived a basis to withhold documents as so irrelevant to be nonresponsive." But Federal Rule 26(b)(1) defines the permissible scope of discovery. This scope exists independently of whether objections are raised. The absence of objections does not expand the scope of discovery beyond what is legally required or create an obligation to produce documents that fall outside the requests' scope, including documents that are irrelevant or not reasonably calculated to lead to the discovery of admissible evidence. *See also* ECF No. 191 at 4-5.

discovery obligations."). And discovery methodology itself is generally not subject to opposing party inquiry, particularly when the government is a party in the litigation. *LKQ Corp.*, 345 F.R.D. at 158, 161. Federal courts consistently hold that parties control their own search methodologies, subject only to reasonableness standards and good faith requirements. *Id*. "Mere speculation about missing evidence" is not enough. *Id*; *Carter v. Dawson*, 2010 WL 4483814, at *5 (E.D. Cal. Nov. 1, 2010) (defendants' assertion that they are unable to locate responsive documents does not provide a ground for granting a motion to compel "unless Plaintiff can identify a specific document that Defendants have withheld").[4] Opposing parties are not entitled to dictate or discover the specific search procedures used by the responding party. *LKQ Corp.*, 345 F.R.D. at 158, 161. In sum, Plaintiffs' fishing expedition cannot overcome the fact that Defendants have produced all documents responsive to Plaintiffs' Court-ordered discovery requests in good faith and within the scope of the requests.

### B.  Defendants' Attorney-Client Privilege Invocations

As explained, *see* ECF No. 177, the attorney-client privilege applies where, as here, "the agency is consulting its attorney as would any private party seeking advice to protect personal interest." *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1086 (N.D. Cal. 2015). Attorney-client privilege also protects "legal advice and recommendations regarding agency action." *United States v. Pacific Gas and Elec. Company,* No. 14-cr-00175-TEH-1, 2016 WL 3252779 *3 (N.D. Cal. Jun. 14, 2016); *see also Elec. Frontier Found. v. Dep't of Def.*, No. C 09-05640 SI, 2012 WL 4364532, at *13 (N.D. Cal. Sept. 24, 2012) (holding that the attorney-client privilege applied to agency communications regarding "whether certain policies apply to new situations, impressions, corrections and changes to prior guidance, tentative guidance, seeking input regarding future issues, and otherwise seeking legal advice that is not a neutral application of established policies"). Plaintiffs challenge internal briefing memorandum, such as draft federal register notices with attorney and client comments, a legal memo from the Acting General Counsel to the Secretary, and Department discussions regarding administrative developments of immigrations policies, which

---

[4] *See also Bethea v. Comcast*, 218 F.R.D. 328, 329 (D.D.C. 2003) (requesting party's suspicion that responding party failed to produce responsive documents does not justify compelled inspection).

1  involved legal advice from counsel regarding statutory requirements and are precisely the type of
2  evidence protected from discovery under attorney-client privilege.

3       **C.    Defendants' Presidential Communications Privilege Invocations**

4        Defendants reiterate the arguments set forth in the June 13, 2025 Joint Letter concerning
5  discovery dispute related to Defendants' claim of Presidential Communications Privilege. ECF No.
6  197. The documents at issue contain information gathered by DHS personnel in response to an email
7  query from the Director for Interior Enforcement on the Homeland Security Council. The Homeland
8  Security Council is the President's National Security Council plus the Secretary of Homeland Security
9  and the President's Homeland Security Advisor. As noted in Defendants' privilege log, a member of
10 the Homeland Security Council solicited information from DHS in support of an upcoming meeting
11 to discuss ongoing homeland security matters, with a view toward advising the President about his
12 homeland security policy initiatives. These documents are multiple versions of an attachment to an
13 email between DHS personnel for forwarding to the Homeland Security Council and reflect the
14 agency's substantive responses to that query. Thus, these documents were "solicited" by a presidential
15 advisor and the response was due after the cutoff date for discovery. Plaintiffs mistakenly argue that a
16 document reflecting information or advice conveyed to a presidential advisor must itself ultimately be
17 received by a presidential advisor in order to be protected by the privilege. *See Jud. Watch, Inc. v.*
18 *United States Dep't of Def.*, 913 F.3d 1106, 1112 (D.C. Cir. 2019) (upholding the privilege even
19 though "the government ma[de] no claim that the authors of the memoranda briefed the President or
20 his senior advisers directly, or even that they were the intended recipients of the memoranda or
21 reviewed the memoranda," and instead claimed only "that the memoranda 'memorialize' the analysis
22 and advice briefed, thereby implying they were prepared after the briefing"); *Buzzfeed, Inc. v. Federal*
23 *Bureau of Investigation*, 613 F. Supp. 3d 453, 473 (May 7, 2020 D.D.C.) ("disclosing the [] interview
24 notes used to compose privileged [documents] would undermine the privilege by revealing sensitive
25 information compiled in the service of presidential decision-making" regardless of whether the
26 President's staff ever received the notes). Thus, Defendants reiterate the arguments set forth in the
27 June 13, 2025 Joint Letter addressing Defendants' invocation of the Presidential Communications
28 Privilege.

Date: June 20, 2025

Respectfully submitted,

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

*/s/ Emilou MacLean*
Emilou MacLean

Michelle (Minju) Y. Cho
Amanda Young
ACLU FOUNDATION
OF NORTHERN CALIFORNIA

Ahilan T. Arulanantham
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW

Eva L. Bitran
Diana Sanchez
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA

Jessica Karp Bansal
Lauren Michel Wilfong (*Pro Hac Vice*)
NATIONAL DAY LABORER ORGANIZING
NETWORK

Erik Crew (*Pro Hac Vice*)
HAITIAN BRIDGE ALLIANCE

Attorneys for Plaintiffs

Date June 20, 2025

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Acting Assistant Attorney General

SARAH L. VUONG
Assistant Director

WILLIAM H. WEILAND
Senior Litigation Counsel

ERIC SNYDERMAN
LAUREN BRYANT
CATHERINE ROSS
AMANDA B. SAYLOR
JEFFREY M. HARTMAN
Trial Attorneys

/s/ *Anna L. Dichter*
ANNA L. DICHTER
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 353-2405
Anna.L.Dichter@usdoj.gov

*Attorney for Defendants*

**SIGNATURE ATTESTATION**

I am the ECF User whose identification and password are being used to file the foregoing Joint Letter Brief in compliance with Civil Local Rule 5-1 (i)(3).

Date: June 20, 2025

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

*/s/ Emilou MacLean*
Emilou MacLean

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

*/s/ Emilou MacLean*
Emilou MacLean