Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Amanda Young (SBN 359753)
ayoung@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, MARIELA GONZÁLEZ, FREDDY JOSE ARAPE RIVAS, M.H., CECILIA DANIELA GONZÁLEZ HERRERA, ALBA CECILIA PURICA HERNÁNDEZ, E.R., HENDRINA VIVAS CASTILLO, A.C.A., SHERIKA BLANC, VILES DORSAINVIL, and G.S.,<br><br>        Plaintiffs,<br><br>    vs.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,<br><br>        Defendants. | Case No.  3:25-cv-01766-EMC<br><br>Hon. Sallie Kim<br><br>**DISCOVERY LETTER BRIEF RE: SUBJECT MATTER WAIVER OF ATTORNEY CLIENT PRIVILEGE** |

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitran (SBN 302081)
ebitran@aclusocal.org
Diana Sanchez (SBN 338871)
dianasanchez@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

## I. INTRODUCTION

Plaintiffs submit this letter brief concerning Defendants' attempt to use attorney-client privilege ("ACP") as both a sword and a shield. As one of only two exhibits filed in support of their opposition to Plaintiffs' summary judgment motion, Defendants publicly filed and relied on a document that is clearly marked as "ATTORNEY-CLIENT PRIVILEGED" and contains track changes and comments from various commentators. In fact, Plaintiffs' review of the privilege log reveals that five other copies of that same document *are currently being* withheld on the grounds of ACP, as are all the other documents in the email chains in which these documents appear. In total, *20 out of 21* documents in the two email chains have been withheld as privileged, with this document being the sole exception. When pressed about the clear subject matter waiver triggered by this intentional disclosure, however, Defendants have not responded. When asked about whether the filing of the document constituted a waiver of the privilege, Defendants have taken the implausible position that the document is somehow *not* privileged (despite all indicia to the contrary), and that they are "looking into" the other five copies they are currently withholding as privileged. That is not a tenable position. Defendants intentionally disclosed one document out of 21 total documents across two email chains in support of their argument. Fundamental fairness and the Federal Rules of Evidence therefore require that Defendants now disclose the other emails and documents on this same subject matter to avoid unfair prejudice to Plaintiffs.

## II. FACTUAL BACKGROUND

In their Motion for Summary Judgment, Plaintiffs explained that Secretary Noem's purported vacatur of Secretary Mayorkas's extension of TPS for Venezuela was arbitrary and capricious and without observance of procedure required by law because, among many other reasons, the reason given for the vacatur was pretextual. Dkt. 165 at 15-17. Secretary Noem claimed that she was vacating the extension because of confusion purportedly caused by Secretary Mayorkas's decision to consolidate the registration process for individuals who had registered under the two different designation of Venezuela for TPS, in 2021 and 2023. *Id.* at 15. But, as Plaintiffs explained, this was not the real reason for the vacatur. Defendants have conceded that the Secretary's "ultimate goal … was to revisit and undo Secretary Mayorkas's decision to extend the TPS designation for Venezuela"

1

1    and Judge Chen has found that "confusion was not [the Secretary's] concern so much as the desire to
2    totally undo Secretary Mayorkas's decision." *Id.* at 16 (citing Dkt. 93 at 59).

3          In opposition, Defendants asserted that the vacatur was not pretextual, but rather in response
4    to "the Secretary's finding that former Secretary Mayorkas' decision to extend TPS for Venezuela
5    warrants further review." Dkt. 199 at 15. In support of this point, Defendants cited a Biden-era
6    document discussing "Options for Venezuela TPS Extension and Redesignation – September 2023."
7    Dkt. 209-1 ("Options Document").[1] This document was one of only two documents filed by
8    Defendants in support of their opposition, and it was the *only* document cited on this point. *See* Dkt.
9    199 at 15. The Options Document considered the advantages and disadvantages of two separate
10   Venezuela designations (i.e., with concurrent or different designation dates). *See* Dkt. 209-1.

11         The Options Document is labeled as "ATTORNEY-CLIENT PRIVILEGED" at the top. *Id.* It
12   contains track changes, and comments from multiple unnamed individuals. *Id,* Analyzing the
13   metadata of this document, it appears that there are five exact duplicates of this document that were
14   withheld as ACP. *See* Ex. 1 (privilege log excerpts containing all entries for documents in families
15   that contain the Options Document) at NTPSA_PRIVID_000069, 000217, 000235, 000364, 000436.
16   The privilege log entries for these duplicates describe this document as being prepared in part by
17   agency counsel. *Id.* This metadata analysis also indicates that, of the documents produced or logged
18   in this matter, this document was circulated in two different email chains. Those two email chains
19   have a combined ten emails and 11 attachments. Of the 21 documents in these two email chains,
20   Defendants withheld **20 of 21 as ACP**. *See id.* The only document *not* withheld as such is the
21   document that Defendants selectively filed with their opposition to Plaintiffs' motion for summary
22   judgment.

23         Plaintiffs first raised this document with Defendants on Wednesday, June 18, the day after
24   Defendants filed it with their opposition. Five days later, Defendants have still not offered a
25   plausible explanation of why this disclosure should not act as a subject matter waiver.

---

[1] Defendants originally filed a version of this document that had no track changes or comments, although it was still marked as "ATTORNEY-CLIENT PRIVILEGED." *See* Dkt. 199-2. When Plaintiffs informed Defendants that this clean version of the document was not produced to Plaintiffs in discovery, Defendants filed an errata with the track-changes version. *See* Dkts. 209, 209-1.

1    Defendants' counsel has claimed that the document is not attorney-client privileged, but has
2    offered no explanation for why it was marked as such or why Defendants withheld five exact copies
3    of this document as privileged. Defendants' counsel has also said that agency counsel were not
4    involved in the creation of this document, but have offered no explanation for why the privilege log
5    entries for the exact duplicates of this document claimed that agency counsel *were* involved in the
6    preparation of this document.

### III.    ARGUMENT

The public filing and disclosure in discovery of this document constitutes a subject matter waiver of ACP. Because Defendants have voluntarily disclosed this document and relied on it to their advantage, Federal Rule of Evidence 502(a) and principles of fundamental fairness compel the disclosure of documents concerning Defendants' analysis of whether the registration consolidation caused confusion, and whether that confusion warranted vacatur of Secretary Mayorkas's extension of TPS for Venezuela. This includes, at a minimum, the 20 other documents in the two email chains discussing this document. Conversely, if this document truly is *not* privileged, then the other documents in those chains should not be, either.

The Federal Rules of Evidence codify the longstanding rule that a party may not waive privilege for select communications which serve them while withholding from their adversary on the basis of privilege other communications and information on the same subject matter. See Fed. R. Evid. 502(a). In such cases, "fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." *Century Aluminum Co. v. AGCS Marine Ins. Co.*, 285 F.R.D. 468, 471-72 (N.D. Cal. 2012) (the doctrine of subject matter waiver is "rooted in notions of fundamental fairness: 'to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable'" (citation omitted)); *see also Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003) (courts "give[] the holder of the privilege a choice: If you want to litigate this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it"); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d

1156, 1162 (9th Cir. 1992) (because "privilege . . . may not be used both as a sword and a shield," "[w]here a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived").

In evaluating whether a party has waived privilege over certain subject matter, "'courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures.'" *Phoenix Sols. Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 576 (N.D. Cal. 2008) (citation omitted). Here, these factors compel a subject matter waiver. This document was one of only two documents which Defendants filed as exhibits to their summary judgment motion, and the only piece of evidence Defendants provided in support of their assertion that "the Vacatur decision should be upheld" because Secretary Noem found that "former Secretary Mayorkas' decision to extend TPS for Venezuela warrants further review." Dkt. 199 at 15. Defendants have thus afforded this document considerable weight and importance. Plaintiffs would be unduly prejudiced if Defendants are allowed to rely on this document to oppose summary judgment, without allowing Plaintiffs to see and explain the context in which this document was actually reviewed and analyzed by Defendants. This is precisely the situation where subject matter waiver is essential—where a party "has attempted to use the disclosed document as both a shield and a sword, that is, to reveal a limited aspect of privileged communications in order to gain a tactical advantage in litigation." *Century Aluminum Co.*, 285 F.R.D. at 472. And Defendants' "bare assertion" that they do not consider the document privileged does not change this outcome. *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 341 (9th Cir. 1996) ("[H]older's disclosure of privileged communications during discovery waives the holder's right to claim the privilege as to communications about the matter actually disclosed, despite the holder's 'bare assertion that it did not subjectively intend to waive the privilege' when it made the disclosure." (citation omitted)).

Defendants should thus be compelled to disclose all documents on the same subject matter as the document for which they have voluntarily waived privilege. The appropriate scope of the subject matter, as shown by Defendants' use of the document, is all documents concerning Defendants' analysis of whether the registration consolidation caused confusion, and whether that confusion warranted vacatur of Secretary Mayorkas's extension of TPS for Venezuela. These appear to

include, from a review of the privilege log, at least all the 20 documents in the email chains in which this document was discussed. *See* Ex. 1. Such disclosure is compelled by Federal Rule of Evidence 502, and proportionate to the voluntary disclosures made by Defendants.

Date: June 23, 2025

Respectfully submitted,

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

*/s/ Emilou MacLean*
Emilou MacLean

Michelle (Minju) Y. Cho
Amanda Young
ACLU FOUNDATION
OF NORTHERN CALIFORNIA

Ahilan T. Arulanantham
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW

Eva L. Bitran
Diana Sanchez
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA

Jessica Karp Bansal
Lauren Michel Wilfong (*Pro Hac Vice*)
NATIONAL DAY LABORER ORGANIZING
NETWORK

Erik Crew (*Pro Hac Vice*)
HAITIAN BRIDGE ALLIANCE

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on June 23, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

*/s/ Emilou MacLean*
Emilou MacLean