Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Amanda Young (SBN 359753)
ayoung@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, MARIELA GONZÁLEZ, FREDDY JOSE ARAPE RIVAS, M.H., CECILIA DANIELA GONZÁLEZ HERRERA, ALBA CECILIA PURICA HERNÁNDEZ, E.R., HENDRINA VIVAS CASTILLO, A.C.A., SHERIKA BLANC, VILES DORSAINVIL, and G.S.,<br><br>        Plaintiffs,<br><br>    vs.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,<br><br>        Defendants. | Case No. 3:25-cv-01766-EMC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER [ECF 194]**<br><br>Date:    July 7, 2025<br>Time:   9:30 am<br>Place:   Courtroom C, 15th Floor |

1  Additional Counsel for Plaintiffs

2  Jessica Karp Bansal (SBN 277347)
   jessica@ndlon.org
3  Lauren Michel Wilfong (*Pro Hac Vice*)
   lwilfong@ndlon.org
4  NATIONAL DAY LABORER
   ORGANIZING NETWORK
5  1030 S. Arroyo Parkway, Suite 106
   Pasadena, CA 91105
6  Telephone: (626) 214-5689

7  Eva L. Bitran (SBN 302081)
   ebitran@aclusocal.org
8  Diana Sanchez (SBN 338871)
   dianasanchez@aclusocal.org
9  ACLU FOUNDATION
   OF SOUTHERN CALIFORNIA
10 1313 West 8th Street
   Los Angeles, CA 90017
11 Telephone: (213) 977-5236

12 Erik Crew (*Pro Hac Vice*)
   ecrew@haitianbridge.org
13 HAITIAN BRIDGE ALLIANCE
   4560 Alvarado Canyon Road, Suite 1H
14 San Diego, CA 92120
   Telephone: (949) 603-7411

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

The only type of information for which Defendants have identified a need for confidentiality is contact information of governmental personnel. Plaintiffs have already agreed to a limited protective order, or stipulated agreement, to redact the contact information of governmental personnel. Now, under the guise of protecting "personnel contact information," Defendants demand an indefinite blanket protective order that would (1) convert the ordinary production of routine agency e-mails into "confidential" material, (2) shift the burden to Plaintiffs to police improper designations, (3) constrain Plaintiffs' ability to use materials even in open-court, and (4) hobble public oversight of litigation that directly affects hundreds of thousands of people. Defendants offer nothing more than generalized rhetoric about "privacy," "sensitivity," and the "deliberative process" to justify the broad restrictions they seek. (Dkt. 194). When pushed for specifics, Defendants have identified *no* documents that currently need to be protected on any of these grounds. Federal Rule of Civil Procedure 26(c) does not permit a protective order with no need for protection identified. Discovery in federal litigation is presumptively public, and a party seeking blanket protection bears the heavy burden of demonstrating—with particularized facts and concrete examples—that specific, identifiable harm will result absent judicial intervention. Defendants' motion is long on speculation and short on evidence; it therefore fails at the threshold.

Plaintiffs do not oppose reasonable measures to safeguard truly private information. Indeed, Plaintiffs have already offered the very protection Defendants claim to need—specifically, the redaction of personal contact details of government personnel in connection with any public filings. What Plaintiffs will not accept, and what Rule 26(c) does not countenance, is an order that would allow Defendants to shroud virtually every document they produce in secrecy. Defendants' inconsistent approach to confidentiality designations further reveals the risk of such an order. Because Defendants have not carried, and cannot carry, their burden of showing "good cause," their motion should be denied in its entirety. At most, the Court should enter a narrowly tailored order limited to the protection of personal contact details—an accommodation Plaintiffs have repeatedly offered and Defendants have inexplicably refused as insufficient. Anything more is premature. Should Defendants in the future identify specific harms associated with disclosure of particular

1

1    documents or categories of documents, Plaintiffs remain open to meeting and conferring regarding a

2    protective order in that instance.

3    **BACKGROUND**

4         This case concerns Plaintiffs' challenge to the Secretary of the Department of Homeland

5    Security's decision to vacate and terminate the previous administration's TPS extension for

6    Venezuela and partially vacate the previous administration's TPS extension for Haiti, depriving

7    more than a million people of legal status and employment authorization which the government had

8    previously granted. On February 20, 2025, Plaintiffs moved to postpone the agency's actions (Dkt.

9    16), and on March 31, 2025, this Court granted that motion (Dkt. 93). However, on May 19, 2025,

10   the Supreme Court of the United States granted Defendants' request to stay this Court's order,

11   thereby allowing the agency's actions to proceed pending further review. *Noem v. Nat'l TPS All.,*

12   No. 24A1059, 2025 WL 1427560, at *1 (U.S. May 19, 2025). In light of the urgent and far-reaching

13   consequences of Defendants' actions, Plaintiffs requested—and this Court granted—an expedited

14   briefing schedule to ensure prompt adjudication of their claims. Dkt. 152. The hearing on the parties'

15   cross-motions for summary judgment is now scheduled for August 1, 2025. Dkt. 227. There are four

16   other cases nationwide which challenge Defendants' vacatur and/or termination decisions.[1]

17        The Court granted limited extra-record discovery including the disclosure of communications

18   related to the challenged decisions. To date, Defendants have produced approximately 550

19   documents. Roughly 100 documents – or 18 % – are marked "CONFIDENTIAL." The

20   "CONFIDENTIAL" markings are widespread, yet also random and inconsistent. For instance,

21   Defendants designated as "CONFIDENTIAL" numerous blank messages where the only substantive

22   content is the subject line, and in some cases, the messages consist solely of the subject line. *See*

23   **Exs. 1–3 (**NTPSA2_000360, NTPSA2_000789, NTPSA2_001780). Defendants also marked

24   NTPSA2_000805 as "CONFIDENTIAL" while leaving NTPSA_000473, its near-identical

25   counterpart, unmarked. *See* **Exs. 4–5**. Other internal communications were marked

26   "CONFIDENTIAL" without any particular harms evident from disclosure on the face of the

---

[1] *See CASA, Inc. v. Noem*, No. 8:25-CV-00525-GLR (D. Md. 2025); *Haitian-Americans United Inc. v. Trump*, No. 1:25-CV-10498 (D. Mass. 2025); *CASA, Inc. v. Noem*, No. 8:25-CV-1484-TDC (D. Md. 2025); *Haitian Evangelical Clergy Ass'n v. Trump*, No. 1:25-cv-01464 (E.D.N.Y. 2025).

2

1    document. *See* **Exs. 6–15** (NTPSA2_000677, NTPSA2_000933, NTPSA2_000856,

2    NTPSA2_000870, NTPSA2_000873, NTPSA2_001005, NTPSA2_001010, NTPSA2_001012,

3    NTPSA2_001043, NTPSA2_001207). Indeed, when Plaintiffs notified Defendants that they

4    intended to file 22 documents marked "CONFIDENTIAL" in connection with today's filing,

5    Defendants did not assert that any documents should be withheld from the public because of

6    particular concerns—only that documents should be redacted to protect contact information. In

7    response to further inquiry, Defendants were unable to identify a *single document* that is currently

8    marked confidential for any other reason than the redaction of personal contact information. *See* **Ex.**

9    **21**.

10        The parties have met and conferred regarding a protective order. *See* MacLean Dec. & **Exs.**

11   **16–21**. In response to Defendants' concerns about the disclosure of governmental contact

12   information, Plaintiffs proposed that the parties have a formal agreement to redact all such

13   information before filing any documents with the Court or otherwise sharing publicly. *See id.* This is

14   consistent with an agreement the plaintiffs in *Ramos v. Nielsen* had with the government in related

15   litigation where far more documents were produced in discovery. *See* **Ex. 22**. Despite repeated

16   inquiries from Plaintiffs, Defendants failed to identify any other particularized concerns which

17   would warrant a protective order until the date of filing their motion. They noted only that their

18   "primary focus has been to protect PII" but that "certain documents might contain sensitive non-

19   public information not otherwise amenable to general public release or dissemination." **Ex. 20.**

20   Immediately prior to today's filing, Defendants were still unable to identify any documents that

21   needed protection for any reason other than to safeguard the contact information of government

22   personnel. **Ex. 21.** Now, Defendants seek to impose a protective order that would allow them to

23   categorically bar public disclosure of all documents marked "CONFIDENTIAL," regardless of their

24   actual sensitivity or the public's interest in transparency.

25                              **STANDARD OF REVIEW**

26        Discovery is presumptively public. *See In re Roman Cath. Archbishop of Portland in*

27   *Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (citation and quotation marks omitted); *San Jose Mercury*

28   *News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1103 (9th Cir. 1999) ("It is well-established that the

3

1   fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively

2   public."). Only a showing of "good cause" can override the presumption of public access to

3   discovery. *See Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir.

4   2002); Fed. R. Civ. P. 26(c) ("The court may, for good cause, issue an order to protect a party or

5   person from annoyance, embarrassment, oppression, or undue burden or expense …."). To meet the

6   good cause standard, the party seeking protection must make a "particularized showing of good

7   cause with respect to [each] individual document." *San Jose Mercury News*, 187 F.3d at 1103.

8                                               **ARGUMENT**

9   **I.      There Is No Good Cause for a Protective Order in This Case.**

10         Defendants fail to show that "good cause" exists in this case such that public disclosure of

11  individual documents would result in "specific" harm. Defendants do not satisfy the standard for a

12  protective order extending beyond the protection of personal contact information of government

13  employees, which the parties have agreed to protect from disclosure. No broader protective order is

14  necessary or justified here.

15         **A.      Defendants' Broad, Speculative Assertions Do Not Satisfy the Requirements of**

16         **Rule 26(c).**

17         Defendants' motion is premised on generalized concerns about the disclosure of (1) personal

18  information, (2) sensitive government documents, and (3) deliberative process materials. *See* Dkt.

19  194. As a threshold matter, Defendants fail to provide any specific examples or evidence of harm

20  that would result from disclosure, instead relying on broad, speculative assertions that do not satisfy

21  the requirements of Rule 26(c). This alone is fatal to Defendants' motion for a protective order. *See*

22  *San Jose Mercury News*, 187 F.3d at 1103; *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122,

23  1130 (9th Cir. 2003).

24         For "good cause" to exist, the party seeking protection bears the burden of showing specific

25  prejudice or harm will result if no protective order is granted. *Phillips ex rel.* at 1210–11. Defendants

26  cannot meet their burden. "Broad allegations of harm, unsubstantiated by specific examples or

27  articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966

28  F.2d 470, 476 (9th Cir. 1992) (citation and quotation marks omitted); *see also Deford v. Schmid*

                                                    4

1  *Prods. Co.,* 120 F.R.D. 648, 653 (D. Md. 1987) (cited by *Foltz*, 331 F.3d at 1130) (requiring party

2  requesting protective order to provide "specific demonstrations of fact, supported where possible by

3  affidavits and concrete examples, rather than broad, conclusory allegations of potential harm").

4  Here, broad allegations of harm are all that Defendants have put forth.

**B.    Defendants' Purported Justifications for a Protective Order Are Meritless.**

6  Plaintiffs address Defendants' purported justifications for the proposed order in turn.

**1.    Personal Identifying Information**

8  Defendants assert that the Court should issue a protective order because production likely

9  includes "email communications revealing the identity and personal contact information for low

10  level officials," which may expose officials to "unwarranted harassment" given the "emotionally

11  charged" rhetoric surrounding immigration policy. Dkt. 194 at 3.

12  To the extent that Defendants claim the "identities" of government personnel are

13  confidential, they have not identified any specific harm that would result from disclosing the names

14  of lower-level officials involved in the decision-making process. Nor have they consistently marked

15  as "CONFIDENTIAL" all documents which would implicate this concern. Defendants' assertion of

16  "unwarranted harassment" is vague and lacks supporting detail. Furthermore, labeling every

17  document that includes the name of a low-level government official as "CONFIDENTIAL" would

18  enable Defendants to withhold a wide range of documents from public access.

19  Second, courts in this Circuit have held that the mere identification of a government

20  employee in an agency document does not, without more, constitute an unwarranted invasion of

21  privacy or justify confidentiality. *See Gordon v. FBI*, 388 F. Supp. 2d 1028, 1040 (N.D. Cal. 2005)

22  ("[R]evealing the names of TSA employees that appear on otherwise disclosable documents would

23  [not] 'constitute an unwarranted invasion of personal privacy.'"). On the contrary, revealing the

24  names of government employees who craft important government policy serves an important

25  purpose in contributing to the public's understanding of how its government operates. *Id.* at 1041.

26  The balancing of privacy interests against public interests is crucial in determining whether the

27  names of government employees should be disclosed. *Id.* at 1044. Here, there is substantial public

28  interest in the decisionmaking process resulting in more than a million people being stripped of their

5

1  legal status.

2         Third, Plaintiffs have proactively redacted all personal contact information for government

3  personnel and have conferred with Defendants about filing documents that contain

4  "CONFIDENTIAL" markings. Further, Plaintiffs have repeatedly offered to stipulate to an

5  agreement, like the one used in *Ramos*, to redact government contact information from any

6  document that is publicly filed. *See* **Exs. 16–22**. That commonsense solution directly addresses

7  Defendants' only plausible concern and mirrors the informal practice that functioned without issue

8  in *Ramos*, a far more extensive discovery undertaking involving similar privacy issues. Plaintiffs

9  remain entirely amenable to conferring about additional documents that Defendants consider

10  confidential. However, Defendants have not identified any such documents. Instead, Defendants

11  insist, without justification, on a broad protective order that extends far beyond protecting contact

12  information.

13              **2.       "Sensitive Information"**

14         Defendants gesture vaguely toward documents "not amenable to widespread public

15  dissemination" and information that "would not be disclosed under FOIA." Dkt. 194 at 3–4. As an

16  initial matter, Defendants have not demonstrated what, if any, of the materials disclosed in discovery

17  would not be disclosed under FOIA, and it is not clear whether any would. Moreover, the Ninth

18  Circuit has made clear that the FOIA regime and Rule 26 serve entirely distinct purposes. *Kamakana*

19  *v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1185 (9th Cir. 2006). "FOIA is a statutory scheme

20  directed to regulating the public access to documents held by the federal government; the public's

21  "need" for a document is unrelated to whether it will be disclosed." *Id.* "By contrast, the public right

22  of access to court documents is grounded on principles related to the public's right and need to

23  access court proceedings." *Id.* Therefore, it is unsound to equate the FOIA exemptions and similar

24  discovery privileges. *Id.*

25         Defendants' insistence on unnecessary and sweeping protections reveals their Motion for

26  what it is: an effort to shield from public scrutiny governmental documents which are presumptively

27  public. To date, Defendants have unilaterally stamped "CONFIDENTIAL" on scores of innocuous

28  documents—some of which contain nothing more than an e-mail subject line. **Exs. 1–3.** Defendants

6

1    marked some documents as "CONFIDENTIAL" while leaving near-identical documents unmarked.

2    *See* **Exs. 4–5**. Documents with substantive content do not appear to include "sensitive" content that

3    meets the good cause standard. *See* **Exs. 6–15**. Defendants conceded, when pressed, that none need

4    to be protected. **Ex. 21.** Further, when pressed to justify the confidentiality designations for *any*

5    documents, Defendants failed to provide any specific justification other than the need to redact

6    government contact information. Defendants have acknowledged that all documents marked

7    "CONFIDENTIAL" which Plaintiffs have presented to them do not actually contain confidential

8    information requiring filing under seal so long as governmental contact information is redacted. *See*

9    *e.g.,* MacLean Dec. ¶ 9; Dkt. 166; **Ex. 18**. These inconsistencies expose the arbitrariness of

10   Defendants' approach and the burdensomeness of their proposed protective order; and they confirm

11   that a broad protective order would only magnify the problem.

12                    **3.      Deliberative Documents**

13           Next, Defendants recycle generic arguments about the chilling effect of disclosing

14   predecisional deliberations. Dkt. 194 at 4. Defendants state, "the harm in disclosing deliberative

15   process information is the impairment of the agency decision-making process if internal discussions

16   were made public, thereby discouraging 'frank discussion' of legal or policy matters." *Id*. The Court

17   previously observed that Defendants' arguments in support of non-disclosure of deliberative

18   documents were "particularly weak." Dkt. 184 at 5. Indeed, in its June 6, 2025 Order regarding

19   Defendants' asserted deliberative process privilege, the Court stated that the Defendants' arguments

20   were "general in nature" and failed to "explain[] specifically how disclosure of the documents in

21   question would cause embarrassment on the part of the author or give rise to confusion on the part of

22   the public." *Id.* at 5–6 (citation and quotation marks omitted). Here, Defendants' renewed invocation

23   of identical language does nothing to cure the deficiency previously identified by the Court.

24   Defendants fail to demonstrate how public disclosure of deliberative documents would result in

25   specific prejudice or harm.

26   **II.      Defendants' Purported Interests Do Not Outweigh the Public's Right of Access.**

27           Defendants' conclusory and generalized assertions cannot overcome the strong presumption

28   of public access to discovery materials. *Beckman Indus., Inc.*, 966 F.2d at 476; *Foltz*, 331 F.3d at

                                          7

1   1130 (collecting cases). The public has a substantial interest in understanding how government

2   decisions are made, particularly in cases involving significant public controversy and policy issues,

3   such as those at issue here. Under Defendants' proposal, virtually every document produced could be

4   used only "for purposes related to this Action," would have to be destroyed or returned at the

5   conclusion of the case, and could never be shared with the public—even if the Court relies on it in

6   making decisions that affect hundreds of thousands of TPS holders and their families. Such

7   sweeping secrecy is antithetical to the "strong presumption in favor of access" to court records,

8   *Kamakana*, 447 F.3d at 1178, and would deprive the public of information critical to evaluating the

9   government's decision-making. Moreover, a court must consider "the needs of parties engaged in

10   collateral litigation," and in light of the numerous related cases and the strong public interest, the

11   balance here tips strongly in favor of access to discovery materials for the public and other litigants.

12   *See Foltz*, 331 F.3d at 1131-32. Where, as here, Defendants have failed to articulate any concrete,

13   non-speculative harm, the balance decisively favors transparency.

14   **CONCLUSION**

15        Defendants seek a blanket protective order without identifying a single document that would

16   result in prejudice or harm if publicly disclosed. For the foregoing reasons, this Court should deny

17   Defendants' motion for a protective order. In the alternative, the Court should adopt the far narrower

18   protection Plaintiffs have already offered: redaction of personal identifying information of

19   government officials from any document filed on the public docket either through a stipulated

20   agreement or a protective order filed with the Court.

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
CASE NO. 3:25-CV-01766-EMC

1

2

Date:  June 30, 2025

Respectfully submitted,

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

3

4

/s/*Emilou MacLean*
Emilou MacLean
Michelle (Minju) Y. Cho
Amanda Young
ACLU FOUNDATION
OF NORTHERN CALIFORNIA

5

6

7

8

Jessica Karp Bansal
Lauren Michel Wilfong (*Pro Hac Vice*)
NATIONAL DAY LABORER ORGANIZING
NETWORK

9

10

Ahilan T. Arulanantham
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW

11

12

Eva L. Bitran
Diana Sanchez
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA

13

14

15

Erik Crew (*Pro Hac Vice*)
HAITIAN BRIDGE ALLIANCE

16

*Attorneys for Plaintiffs*

17

18

19

20

21

22

23

24

25

26

27

28

9

1

**<u>CERTIFICATE OF SERVICE</u>**

2        I hereby certify that on June 30, 2025, I caused the foregoing to be electronically filed with

3   the Clerk of Court using the CM/ECF system, which will then send a notification of such filing

4   (NEF) to all counsel of record.

5

6                                              ACLU FOUNDATION
                                               OF NORTHERN CALIFORNIA

7                                              */s/ Emilou MacLean*
                                               Emilou MacLean
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28