1  BRETT SHUMATE
   Assistant Attorney General
2  YAAKOV M. ROTH
   Principal Deputy Assistant Attorney General
3  Civil Division
   WILLIAM H. WEILAND
4  Acting Assistant Director
   ANNA L. DICHTER
5  Senior Litigation Counsel
   ERIC SNYDERMAN
6  LAUREN BRYANT
   CATHERINE ROSS
7  SHELBY WADE
   AMANDA SAYLOR
8  DANIEL CAPPELLITTI
   JEFFREY HARTMAN
9  Trial Attorneys
   U.S. Department of Justice, Civil Division
10 Office of Immigration Litigation
   General Litigation and Appeals Section
11 P.O. Box 868, Ben Franklin Station
   Washington, DC 20044
12 Attorneys for Defendants
13
14
15             UNITED STATES DISTRICT COURT
16            NORTHERN DISTRICT OF CALIFORNIA
17               SAN FRANCISCO DIVISION
18
   NATIONAL TPS ALLIANCE, *et al.*,
19
                Plaintiff,                    Case No. 3:25-cv-1766
20
        v.
21                                            **DEFENDANTS' MOTION TO DISMISS
                                              PLAINTIFF'S FIRST AMENDED AND
22 KRISTI NOEM, in her official capacity as   SUPPLMENTAL COMPLAINT**
   Secretary of Homeland Security, *et al.*,
23                                            Judge: Hon. Edward M. Chen
                Defendants.                   Date: August 1, 2025
24                                            Time: 10:00 a.m.
                                              Place: Courtroom 5, 17th Floor,
25                                                  San Francisco U.S. Courthouse
26
27
28
                          i

Dated: July 21, 2025

Respectfully submitted,

BRETT SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Acting Assistant Attorney General

WILLIAM H. WEILAND
Acting Assistant Director

ERIC SNYDERMAN
LAUREN BRYANT
CATHERINE ROSS
SHELBY WADE
AMANDA SAYLOR
DANIEL CAPPELLITTI
JEFFREY HARTMAN
Trial Attorneys

*/s/ Anna L. Dichter*
Anna Dichter
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 353-2405
Anna.l.dichter@usdoj.gov

*Attorneys for the Defendants*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................. iii

TABLE OF AUTHORITIES ........................................................................................................... iv

NOTICE OF MOTION...................................................................................................................1

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND ............................................................................................................................3

I.        PROCEDURAL BACKGROUND...................................................................................3

II.       STATUTORY BACKGROUND......................................................................................4

III.      FACTUAL BACKGROUND ...........................................................................................5

          A.        Venezuela.............................................................................................................5

          B.        Haiti......................................................................................................................7

STANDARD OF REVIEW ...........................................................................................................9

ARGUMENT .................................................................................................................................10

I.        This Court Lacks Jurisdiction over Plaintiffs' Entire Action .........................................10

          A.        The TPS Statute Bars Plaintiffs' Claims............................................................10

          B.        The APA Precludes Review of an Agency's Discretionary Determinations.....................13

          C.        Section 1252(f)(1) Precludes Plaintiffs' Requested Relief................................14

II.       Plaintiffs' APA Claims Should Be Dismissed Because the Secretary's Determinations Were Not Contrary to Law, in Excess of Statutory Limitations, or Otherwise Unlawful .................................................................................................................16

          A.        2025 Venezuela Vacatur and Haiti Partial Vacatur (Counts I and III).............................16

          B.        2025 Venezuela and Haiti Termination Decisions (Counts II and IV).............................20

III.      Plaintiffs' Constitutional Claims Fail as a Matter of Law. ..........................................23

CONCLUSION.............................................................................................................................25

1

2

**TABLE OF AUTHORITIES**

Page(s)

3

4

<u>**CASES**</u>

5

6

*Aberdeen & Rockfish R.R. v. Students Challenging Regulatory Agency Procedures (SCRAP),*
422 U.S. 289 (1975)............................................................................................................ 15

7

8

*Albertson v. FCC,*
182 F.2d 397 (D.C. Cir. 1950) .......................................................................................... 16

9

*Ali v. Pompeo,*
2018 WL 2058152 (E.D.N.Y. May 2, 2018) ..................................................................... 23

10

11

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)............................................................................................................. 9

12

13

*Biden v. Texas,*
597 U.S. 785 (2022)........................................................................................................... 14

14

15

*California Trout v. Schaefer,*
58 F.3d 469 (9th Cir. 1995) ............................................................................................... 19

16

*California v. Grace Brethren Church,*
457 U.S. 393 (1982)........................................................................................................... 15

17

18

*Chao v. Russell P. Le Frois Builder, Inc.,*
291 F.3d 219 (2d Cir. 2002)............................................................................................... 16

19

20

*China Unicom (Ams.) Ops. Ltd .v. FCC,*
124 F.4th 1128 (9th Cir. 2024) ......................................................................................... 16

21

*Direct Mktg. Ass'n v. Borhl,*
575 U.S. 1 (2015)............................................................................................................... 15

22

23

*DOC v. New York,*
588 U.S. 752 (2019)........................................................................................................... 20

24

25

*Galvez v. Jaddou,*
52 F.4th 821 (9th Cir. 2022) ............................................................................................. 14

26

27

*Garland v. Aleman Gonzalez,*
596 U.S. 543 (2022).................................................................................................... 14, 15

28

*Gun South, Inc. v. Brady,*
877 F.2d 858 (11th Cir. 1989) ........................................................................................... 17

iv

*Harisiades v. Shaughnessy*,
    342 U.S. 580 (1952) .................................................................................................. 18

*Herguan University v. ICE*,
    258 F. Supp. 3d 1050 (N.D. Cal. 2017) ................................................................... 10

*Ivy Sports Medicine, LLC v. Burwell*,
    767 F.3d 81 (D.C. Cir. 2014) .................................................................................. 16

*Jordan v. Presidio Tr.*,
    No. 16-CV-02122-KAW, 2017 WL 5479607 (N.D. Cal. Nov. 15, 2017) ........................................... 9

*Lackey v. Stinnie*,
    145 S. Ct. 659 (2025) ................................................................................................ 1

*Last Best Beef, LLC v. Dudas*,
    506 F.3d 333 (4th Cir. 2007) ................................................................................... 17

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) ................................................................................................ 13

*Macktal v. Chao*,
    286 F.3d 822 (5th Cir. 2002) ................................................................................... 17

*Marsh v. Oregon Natural Res. Council*,
    490 U.S. 360 (1989) ................................................................................................ 18

*Matter of Ferrante*,
    No. 23-55005, 2023 WL 8449198 (9th Cir. Dec. 6, 2023) ........................................................ 5

*Newdow v. Roberts*,
    603 F.3d 1002 (D.C. Cir. 2010) ............................................................................... 15

*Patel v. Garland*,
    596 U.S. 328 (2022) ................................................................................................ 12

*Poursina v. USCIS*,
    936 F.3d 868 (9th Cir. 2019) ................................................................................... 17

*Ramos v. Wolf*,
    975 F.3d 872 (9th Cir. 2020) ............................................................................. 11, 17

*Ramos v. Wolf*,
    59 F.4th 1010 (9th Cir. 2023) .................................................................................. 11

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ................................................................................. 16

*Sanchez v. Mayorkas,*
    593 U.S. 409 (2021)..................................................................................................... 4

*Trump v. Hawaii,*
    585 U.S. 667 (2018)................................................................................. 3, 13, 17, 23

*U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.,*
    508 U.S. 439 (1993)................................................................................................... 14

*United States v. Carroll,*
    105 F.3d 740 (1st Cir. 1997)..................................................................................... 14

*United States v. Texas,*
    599 U.S. 670 (2023)................................................................................................... 15

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.,*
    429 U.S. 252 (1977)..................................................................................................... 3

*Webster v. Doe,*
    486 U.S. 592 (1988)................................................................................................... 13

*White v. Lee,*
    227 F.3d 1214 (9th Cir. 2000)................................................................................... 10

*Youngstown Sheet and Tube Co. v. Sawyer,*
    343 U.S. 579 (1952)................................................................................................... 18

*Yu v. Chertoff, No. C,*
    06-7878CW, 2007 WL 1742850 (N.D. Cal. June 14, 2007) ..................................... 9

*Zhu v. Gonzales,*
    411 F.3d 292 (D.C. Cir. 2005)................................................................................... 13

## STATUTES

1 U.S.C. § 112............................................................................................................... 14

1 U.S.C. § 204(a) .......................................................................................................... 14

5 U.S.C. 553 .................................................................................................................. 22

5 U.S.C. § 701(a)(1)...................................................................................................... 12

5 U.S.C. § 701(a)(2)................................................................................................... 2, 13

6 U.S.C. § 202(1) .......................................................................................................... 18

6 U.S.C. § 202(2) .......................................................................................................... 18

6 U.S.C. § 202(3) ......................................................................................................... 18

6 U.S.C. § 202(4) ......................................................................................................... 18

6 U.S.C. § 202(5) ......................................................................................................... 18

8 U.S.C. § 1103(a)(1) ................................................................................................... 18

8 U.S.C. § 1103(a)(3) ................................................................................................... 18

8 U.S.C. § 1252(f)(1) ................................................................................... 2, 13, 14, 15,

8 U.S.C. § 1254a ............................................................................................... 11, passim

8 U.S.C. § 1254a(a) ..................................................................................................... 4, 5

8 U.S.C. § 1254a(b) ......................................................................................................... 4

8 U.S.C. § 1254a(b)(1)(C) ................................................................................. 8, passim

8 U.S.C. § 1254a(b)(2) ..................................................................................................... 4

8 U.S.C. § 1254a(b)(3) ..................................................................................................... 6

8 U.S.C. § 1254a(b)(3)(A) ................................................................................ 2, 5, 16, 17, 20

8 U.S.C. § 1254a(b)(3)(B) ................................................................................ 2, 5, 16, 17, 20

8 U.S.C. § 1254a(b)(3)(C) ........................................................................................ 5, 16, 17

8 U.S.C. § 1254a(b)(5)(A) ................................................................................ 2, 5, 10, 11, 12

8 U.S.C. § 1254a(c) ......................................................................................................... 4

8 U.S.C. § 1254a(c)(2)(A) ........................................................................................ 20, 21

### FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 12(b)(1) ......................................................................................... 1, 3, 9, 25

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 1, 3, 9

Fed. R. Civ. P. 15(d) ......................................................................................................... 3

### FEDERAL RULES OF EVIDENCE

Fed. R. of Evid. 201(b) ..................................................................................................... 5

### FEDERAL REGISTER

76 Fed. Reg. 3,476 (Jan 21, 2010) ................................................................................. 7

76 Fed. Reg. 29,000 (May 19, 2011) ...................................................................................... 7

77 Fed. Reg. 59, 943 (Oct. 1, 2012) ....................................................................................... 7

80 Fed. Reg. 51,582 (Aug. 25, 2015) ..................................................................................... 7

82 Fed. Reg. 23,830 (May 24, 2017) ...................................................................................... 7

83 Fed. Reg. 2,648 (Jan. 18, 2018) ........................................................................................ 7

86 Fed. Reg. 13,574 (Mar. 9, 2021) ……………………………………………………...5

86 Fed. Reg. 41,863 (Aug. 3, 2021)…………………………………………………………7

87 Fed. Reg. 55,024 (Sept. 8, 2022) ....................................................................................... 5

88 Fed. Reg. 5,022 (Jan. 26, 2023) ........................................................................................ 6

88 Fed. Reg. 40,282 (June 21, 2023) ............................................................................... 17, 18

88 Fed. Reg. 68, 130 (Oct. 3, 2023) ....................................................................................... 4

89 Fed. Reg. 54, 484 (Jul. 1, 2024) ........................................................................................ 7

90 Fed. Reg. 5,961 (Jan. 17, 2025) ........................................................................................ 6

90 Fed. Reg. 9,040 (Feb. 5, 2025) ................................................................................... 6,11,12

90 Fed. Reg. 8,805 (Feb. 3, 2025) .......................................................................................... 6

90 Fed. Reg. 10,511 (Feb. 24, 2025) ............................................................................... *passim*

90 Fed. Reg. 19,217 (May 6, 2025) ....................................................................................... 26

90 Fed. Reg. 28760 (Jul. 1, 2025) .................................................................................... 8, 11

## OTHER AUTHORITIES

Executive Order No. 14159 ............................................................................................ 19, 22

House of Representatives Report No. 101-245.................................................................... 10

**NOTICE OF MOTION**

PLEASE TAKE NOTICE THAT at 10:00 a.m. PDT on August 1, 2025, or as soon thereafter as this matter may be heard, before the Honorable Edward M. Chen of the United States District Court for the Northern District of California, Defendants move to dismiss Plaintiffs' First Amended and Supplemental Complaint, *see* ECF No. 250 (Supp. Compl.) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Defendants seek an order dismissing Plaintiffs' First Amended and Supplemental Complaint because: (1) the Court lacks jurisdiction over Plaintiffs' claims; (2) the Secretary's TPS determinations did not violate the Administrative Procedure Act (APA); and (3) Plaintiffs have not alleged a plausible Equal Protection claim as a matter of law. Accordingly, dismissal is warranted pursuant to Federal Rules 12(b)(1) and 12(b)(6).[1]

**PRELIMINARY STATEMENT**

Defendants, Kristi Noem, in her official capacity as Secretary of Homeland Security, U.S. Department of Homeland Security, and United States of America (collectively, Defendants), submit this memorandum in support of Defendants' Motion to Dismiss Plaintiffs' First Amended and Supplemental Complaint. *See* Supp. Compl.

Two months ago, the Supreme Court considered this Court's stay of the Secretary's termination of the 2023 designation for Venezuela for TPS. *Noem v. Nat'l TPS Alliance*, No. 24A1059, 2025 WL 1427560 (S. Ct. May 19, 2025). With just one noted dissent, the Supreme Court granted Defendants' request for a stay pending appeal and, in doing so, necessarily determined that the Government, not Plaintiffs, was likely to prevail. *Id.*; *see Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010). To the extent

---

[1]Defendants acknowledge that the Court granted a postponement of the 2025 Venezuela Vacatur and Termination, concluding that Plaintiffs would likely succeed on the merits. Defendants respectfully maintain that that decision was in error, and their interlocutory appeal of that decision is pending. *See National TPS Alliance et al. v. Noem et al.*, Case No. 25-2120 (9th Cir.) (Dkt No. 3.1 at 16-17). Regardless, the Court's ruling on interim relief does not control at this stage, and the Court can and should consider Defendants' arguments anew. *See, e.g.*, *Lackey v. Stinnie*, 145 S. Ct. 659, 667 (2025) (preliminary relief based on likely success "do[es] not conclusively resolve" a case and is not "tantamount to [a] decision[] on the underlying merits"). And, in any event, that ruling did not address the claims regarding Haiti.

DEFS.' MOT. TO DISMISS PLS.' FIRST AMEND. AND SUPP. COMPL.
No. 3:25-cv-1766

1    Plaintiffs are now amending and supplementing their complaint in an effort to distance their claims from

2    the claims the Supreme Court has already found unlikely to succeed, that effort fails: Plaintiffs' new claims

3    are, if anything, even more clearly barred by the TPS statute's judicial-review bar. The Court should

4    dismiss Plaintiffs' claims for lack of jurisdiction.

5          Exercising her clear and unreviewable statutory authority, Secretary of Homeland Security Kristi

6    Noem vacated her predecessor's extension of Venezuela's Temporary Protected Status (TPS) designation

7    and, thereafter, terminated the designation. Additionally, she partially vacated Haiti's TPS designation,

8    shortening the existing designation period from 18 months to 12 months. Thereafter, after determining

9    that Haiti no longer met the conditions for TPS, she terminated that designation. Notwithstanding the

10   Secretary's clear authority and Congress's decision to commit her determination to her discretion alone,

11   Plaintiffs bring claims under the Administrative Procedure Act (APA), alleging that Secretary Noem's

12   TPS determinations were arbitrary and capricious under 8 U.S.C. § 1254a(b)(3)(A)-(B). Plaintiffs also

13   claim that the determinations were motivated by discriminatory animus towards Venezuelans and Haitians

14   in violation of the Equal Protection guarantee of the Fifth Amendment Due Process Clause. Dismissal of

15   this action in its entirety is appropriate because this Court lacks jurisdiction over all of Plaintiffs' claims.

16   First, the TPS statute broadly prohibits judicial review of "any determination of the Secretary with respect

17   to" designations, terminations, or extensions of TPS designations. 8 U.S.C. § 1254a(b)(5)(A). The

18   Secretary's vacatur and termination determinations—like the previous Secretary's extension of the TPS

19   designation for Venezuela—are not subject to judicial review. Second, Plaintiffs' claims are inconsistent

20   with the principle that the APA does not allow for review of agency action that is committed to agency

21   discretion by law. 5 U.S.C. § 701(a)(2). Third, Plaintiffs' claims are foreclosed by another section of the

22   INA—section 1252(f)(1)—which bars district courts from "enjoin[ing] or restrain[ing]" the operation of

23   certain provisions of the INA.

24         Even if the Court had jurisdiction, Plaintiffs fail to state a claim on the merits. Secretary Noem's

25   determinations were not arbitrary and capricious. They were based on the determination that her

26   predecessor's extensions contained flaws warranting reconsideration. Plaintiffs' equal protection and due

27

28   DEFS.' MOT. TO DISMISS PLS.' FIRST AMEND. AND SUPP. COMPL.
     No. 3:25-cv-1766

process claims are equally unavailing because they fail to plausibly allege that the Secretary was motivated by discriminatory animus. Secretary Noem's determinations are facially legitimate and not motivated by racially discriminatory intent. That is true under the correct standard—the deferential review applicable to such claims in the immigration context, *see Trump v. Hawaii*, 585 U.S. 667 (2018)—and, under the standard proposed by Plaintiffs and sometimes applied in other contexts, *See Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977). The Court should dismiss Plaintiff's First Amended and Supplemental Complaint with prejudice pursuant to Federal Rule 12(b)(1) or 12(b)(6).

## BACKGROUND

### I.   PROCEDURAL BACKGROUND

On February 19, 2025, Plaintiffs filed their initial Complaint. ECF No. 1. On March 20, 2025, Plaintiffs filed their First Amended Complaint. ECF No. 74. On April 29, 2025, Defendants' filed a Motion to Dismiss Plaintiffs' First Amended Complaint. ECF No. 122. On July 7, 2025, Plaintiffs filed an Unopposed Motion for Leave to File a Supplemental Complaint Pursuant to Fed. R. Civ. P. 15(d). ECF No. 246. On July 8, 2025, the Court granted Plaintiffs' Motion and ordered Plaintiffs to file "the proposed First Amended and Supplemental Complaint as a separate docket entry." ECF No. 248. In its order, the Court directed Defendants to "file a response to Plaintiffs' supplemental complaint on or before July 21, 2025." *Id*. Plaintiffs' First Amended and Supplemental Complaint re-alleges the same allegations from their First Amended Complaint and adds facts and claims related to the 2025 Haiti Termination. ECF No. 250. Because Plaintiffs' First Amended and Supplemental Complaint, ECF No. 250, supersedes their First Amended Complaint, ECF No. 74, all motions directed at the superseding complaint are now moot. *See* ECF No. 122, 165. *Jackson v. Fong*, 870 F.3d 928, 934 (9th Cir. 2017) ("[A] supplemental complaint completely supersedes any earlier complaint, rendering the original complaint non-existent ...."); *Ramirez v. County of San Bernardino*, 506 F.3d 1002, 1008 (9th Cir. 2015) (It is well-established in our circuit that an amended complaint supersedes the original, the latter being treated thereafter as non-existent." Consequently, motions directed at the superseded complaint generally are to be denied as moot).

1    Defendants submit this memorandum to address all claims in First Amended and Supplemental

2    Complaint.[2]

3    **II. STATUTORY BACKGROUND**

4          The Immigration Act of 1990 established a program for providing temporary shelter in the United

5    States on a discretionary basis for aliens from designated countries experiencing ongoing armed conflict,

6    environmental disaster, or "extraordinary and temporary conditions" that temporarily prevent the aliens'

7    safe return or, in the case of environmental disasters, temporarily render the country unable to handle

8    adequately the return of its nationals.  Pub. L. No. 101-649, 104 Stat. 4978.  The statute authorizes the

9    Secretary of Homeland Security, "after consultation with appropriate agencies of the Government," to

10   designate countries for "Temporary [P]rotected [S]tatus," if she finds:

11                                          ****

12        (C)  … there exist extraordinary and temporary conditions in the foreign state that prevent
                 aliens who are nationals of the state from returning to the state in safety, unless
13               the [Secretary] finds that permitting the aliens to remain temporarily in the United
                 States is contrary to the national interest of the United States.

14   8 U.S.C. § 1254a(b).

15         When the Secretary designates a country for TPS, eligible aliens who are granted TPS may not be

16   removed from the United States and are authorized to work for the duration of the country's TPS

17   designation, so long as they remain in valid temporary protected status. 8 U.S.C. § 1254a(a), (c); *see*

18   *Sanchez v. Mayorkas*, 593 U.S. 409, 412 (2021). Initial designations, and any extensions thereof, may not

19   exceed eighteen months.  *Id*. § 1254a(b)(2). The Secretary must consult with appropriate agencies and

20   review each designation before it ends to determine whether the conditions for the country's designation

21

22   —————————————————

23   [2] Defendants' position is that prior dispositive motions regarding Plaintiffs' First Amended Complaint are
     now moot, and for this reason respond to Plaintiffs' entire First Amended and Supplemental Complaint,
24   ECF No. 250. *Jackson v. Fong*, 870 F.3d 928, 934 (9th Cir. 2017) ("[A] supplemental complaint
     completely supersedes any earlier complaint, rendering the original complaint non-existent ...."); *Ramirez
25   v. County of San Bernadino*, 506 F.3d 1002, 1008 (9th Cir. 2015) (It is well-established in our circuit that
     an amended complaint supersedes the original, the latter being treated thereafter as non-existent."
26   Consequently, motions directed at the superseded complaint generally are to be denied as moot). However,
     the Court may incorporate all arguments and authorities presented in Defendants' Motion to Dismiss
27   Plaintiffs' First Amended Complaint. ECF No. 122.

28   DEFS.' MOT. TO DISMISS PLS.' FIRST AMEND. AND SUPP. COMPL.
     No. 3:25-cv-1766

continue to be met. *Id.* § 1254a(b)(3)(A). If the Secretary finds that the foreign state "no longer continues to meet the conditions for designation," she "shall terminate the designation" by publishing notice in the Federal Register of the determination and the basis for the termination. *Id.* § 1254a(b)(3)(B). If the Secretary "does not determine" that the foreign state "no longer meets the conditions for designation," then "the period of designation of the foreign state is extended for an additional period of 6 months (or, in the discretion of the [Secretary], a period of 12 or 18 months)." *Id.* § 1254a(b)(3)(C).

Finally, the statute makes the Secretary's TPS determinations unreviewable. "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." *Id.* § 1254a(b)(5)(A).

## III.    FACTUAL BACKGROUND

### A.    Venezuela

On March 9, 2021, former Secretary of Homeland Security Alejandro Mayorkas designated Venezuela for TPS based on extraordinary and temporary conditions that prevented nationals of Venezuela from safely returning (the 2021 Venezuela Designation).[3,4] The former Secretary extended Venezuela's TPS designation twice.[5] On October 3, 2023, in addition to extending the 2021 Venezuela TPS status through September 2025, the former Secretary redesignated Venezuela for TPS, effective from October 3, 2023, through April 2, 2025 (the 2023 Venezuela Designation).[6] This notice provided procedures for initial applicants registering for TPS under the 2023 Venezuela Designation, and it also allowed Venezuelan nationals who had previously registered for TPS under the 2021 Designation to re-register for TPS and apply to renew their employment authorization document with U.S. Citizenship and

---

[3] Pursuant to Fed. R. of Evid. 201(b), Defendants ask the Court to take judicial notice of the Federal Register Notices cited throughout the brief. *See Matter of Ferrante*, No. 23-55005, 2023 WL 8449198, at *1 (9th Cir. Dec. 6, 2023) (holding that "a court may take judicial notice of matters of public record").

[4] *See Designation of Venezuela for [TPS] and Implementation of Employment Authorization for Venezuelans Covered by Deferred Enforced Departure*, 86 Fed. Reg. 13, 574 (Mar. 9, 2021).

[5] *See Extension of the Designation of Venezuela for [TPS]*, 87 Fed. Reg. 55,024 (Sep. 8, 2022); *see also Extension and Redesignation of Venezuela for [TPS]*, 88 Fed. Reg. 68,130 (Oct. 3, 2023).

[6] *See 2023 Venezuela Designation*, 88 Fed. Reg. 68,130.

DEFS.' MOT. TO DISMISS PLS.' FIRST AMEND. AND SUPP. COMPL.
No. 3:25-cv-1766

Immigration Services (USCIS). *Id*. On January 10, 2025, former Secretary Mayorkas issued a notice extending the 2023 Venezuela Designation for 18 months, allowing a consolidation of filing processes such that all eligible Venezuela TPS beneficiaries (whether under the 2021 or 2023 designations) could obtain TPS through October 2, 2026 (the 2025 Venezuela Extension).[7]

On January 28, 2025, Secretary Noem vacated the 2025 Venezuela Extension, thereby restoring the status quo that preceded that decision (the 2025 Venezuela Vacatur).[8] She explained that the 2025 Venezuela Extension "did not acknowledge the novelty of its approach" or "explain how it is consistent with the TPS statute." *Id*. at 8,807; *see* 8 U.S.C. § 1254a(b)(3). The Secretary determined that the "lack of clarity" warranted a vacatur to "untangle the confusion and provide an opportunity for informed determinations regarding the TPS designations and clear guidance." *Id*.

After reviewing the Venezuelan country conditions and consulting with the appropriate U.S. Government agencies, on February 1, 2025, Secretary Noem determined that Venezuela no longer continued to meet the conditions for the 2023 Venezuela Designation and that it was "contrary to the national interest to permit the covered Venezuelan nationals to remain temporarily in the United States."[9] Accordingly, Secretary Noem terminated the 2023 Designation of Venezuela, effective April 7, 2025 (the 2025 Venezuela Termination). *Id*. at 9,040-9,041. In making this determination she highlighted the "notable improvements in several areas, such as the economy, public health, and crime," that allow for Venezuelan nationals to be "safely returned to their home country." *Id*. at 9,042. However, even assuming extraordinary and temporary conditions remained, the Secretary explained that terminating the 2023 Venezuela TPS designation is necessary because it is contrary to the national interest to permit the covered Venezuelan nationals to remain temporarily in the United States. *Id*. The national interest is "an expansive standard that may encompass an array of broad considerations" which "calls upon the Secretary's expertise

---

[7] *See Extension of the 2023 Designation of Venezuela for [TPS]*, 90 Fed. Reg. 5,961 (Jan. 17, 2025).

[8] *See Vacatur of 2025 [TPS] Decision for Venezuela*, 90 Fed. Reg. 8,805 (Feb. 3, 2025).

[9] *See Termination of the October 3, 2023 Designation of Venezuela for [TPS]*, 90 Fed. Reg. 9,040 (Feb. 5, 2025).

DEFS.' MOT. TO DISMISS PLS.' FIRST AMEND. AND SUPP. COMPL.
No. 3:25-cv-1766

and discretionary judgment." *Id*. Secretary Noem explained that the significant population of TPS holders has resulted in "associated difficulties in local communities where local resources have been inadequate to meet the demands cause by increased numbers," and further underscored that, across the United States, "city shelters, police stations and aid services are at maximum capacity." *Id*. In considering the national interest, she found that this population includes members of Tren de Aragua, a transnational criminal organization recently determined to "pos[e] threats to the United States." *Id*. at 9,042-43. Secretary Noem also observed that "U.S. foreign policy interests, particularly in the Western Hemisphere, are best served and protected by curtailing policies that facilitate or encourage illegal and destabilizing migration." *Id*.

### B. Haiti

On January 21, 2010, former Secretary Janet Napolitano designated Haiti for TPS for a period of 18 months due to the "conditions in Haiti following the [7.0 magnitude] earthquake" that struck Haiti in January 2010.[10] Various Secretaries extended and redesignated TPS for Haiti through 2018.[11] On January 18, 2018, then-Acting Secretary Elaine Duke terminated the designation, finding that "the conditions for Haiti's designation for TPS—on the basis of 'extraordinary and temporary conditions' relating to the 2010 earthquake that prevented Haitian nationals from returning in safety—are no longer met."[12] On August 3, 2021, former Secretary Alejandro Mayorkas newly designated Haiti on the basis of extraordinary and temporary conditions.[13] Thereafter, he extended and redesignated TPS for Haiti for 18 months, ending on August 3, 2024.[14] On July 1, 2024, former Secretary Mayorkas again extended and redesignated TPS for Haiti for 18 months, ending on February 3, 2026 (the 2024 Haiti Extension).[15]

---

[10] *Designation of Haiti for [TPS]*, 75 Fed. Reg. 3476, 3477 (Jan. 21, 2010).

[11] *Extension and Redesignation of Haiti for [TPS]*,76 Fed. Reg. 29,000 (May 19, 2011); *Extension of the Designation of Haiti for [TPS]*, 77 Fed. Reg. 59,943 (Oct. 1, 2012); *Extension of the Designation of Haiti for [TPS]*, 79 Fed. Reg. 11,808 (Mar. 3, 2014); *Extension of the Designation of Haiti for [TPS]*, 80 Fed. Reg. 51,582 (Aug. 25, 2015); *Extension of the Designation of Haiti for [TPS]*, 82 Fed. Reg. 23,830 (May 24, 2017).

[12] *Termination of Designation of Haiti for [TPS]*, 83 Fed. Reg. 2,648 (Jan. 18, 2018).

[13] *Designation of Haiti for [TPS]*, 86 Fed. Reg. 41,863 (Aug. 3, 2021).

[14] *Extension & Redesignation of Haiti for [TPS]*, 88 Fed. Reg. 5,022 (Jan. 26, 2023).

[15] *See Extension & Redesignation of Haiti for [TPS]*, 89 Fed. Reg. 54,484 (Jul. 1, 2024).

1    On February 24, 2025, Secretary Noem partially vacated the 2024 Haiti Extension (the 2025 Haiti

2   Partial Vacatur).[16] In so doing, the Secretary shortened the existing designation period from 18 months to

3   12 months. In rolling back the 18-month extension, Secretary Noem explained that the extension "failed

4   to evaluate" whether permitting Haitian nationals to remain temporarily is "contrary to the national interest

5   of the United States." *See id*. at 10,511-12; 8 U.S.C. § 1254a(b)(1)(C). Secretary Noem also noted that

6   "there is no discussion in the [2024 Haiti Extension] of why the 18-month period was selected in lieu of

7   a [six] or [twelve] month period." *Id*. at 10,513. She further relied on indications from the Department of

8   State and DHS of "significant developments" that "might result in improvement in conditions," including

9   United Nations Involvement to "support the Haitian National Police in capacity building, combatting gang

10  violence and provid[ing] security for critical infrastructure." *Id*. at 10,513-14. The Secretary considered

11  the putative reliance interests of those impacted by the 2025 Haiti Partial Vacatur but found that they were

12  outweighed by the overriding interests and concerns articulated in the notice. *Id*.

13    After reviewing the Haiti country conditions and consulting with the appropriate U.S.

14  Government agencies, Secretary Noem determined that Haiti no longer continued to meet the conditions

15  for the 2024 Designation and that it was "contrary to the national interest to permit the [covered] Haitian

16  nationals to remain temporarily in the United States." [17] *2025 Haiti Termination*, 90 Fed. Reg. 28,762.

17  Accordingly, Secretary Noem terminated the 2024 Designation effective September 2, 2025. *Id*. In

18  making this determination, she explained that national interest is "an expansive standard that may

19  encompass an array of broad considerations" which "calls upon the Secretary's expertise  and

20  discretionary judgment." *Id*. Secretary  Noem cited recent reports highlighting a "pattern of large-scale

21  irregular migration" from Haitian nationals that is "unsustainable" and inconsistent with U.S. national

22  interests. *Id*. at 28,763. She further emphasized that "limited access to critical information," particularly

23  in a "high-volume border environment" has hindered the ability of U.S. officials to reliably screen foreign

24  nationals arriving in the United States. *Id*. at 28,762. The Secretary explained that this "inability to access

25

26  [16] *See Partial Vacatur of 2024 [TPS] Decision for Haiti*, 90 Fed. Reg. 10,511 (Feb. 24, 2025).

27  [17] *Termination of Designation of Haiti for [TPS]*, 90 Fed. Reg. 28760 (July 1, 2025).

DEFS.' MOT. TO DISMISS PLS.' FIRST AMEND. AND SUPP. COMPL.
28  No. 3:25-cv-1766

1  reliable law enforcement or security information from the alien's country of origin" combined with the

2  "serious threat posed by Haitian gangs" directly impacts U.S. national security interests, particularly in

3  the context of "uncontrolled migration." *Id.* at 28,763. In considering U.S. public safety, Secretary Noem

4  pointed to a recent report from the U.S. Department of State, which designated organizations such as the

5  Viv Ansanm coalition and Gran Grif as Foreign Terrorist Organizations and Specially Designated Global

6  Terrorists. *Id.* She noted that members of these organizations "have already been identified among those

7  who have entered the United States" and, in some instances, "have been apprehended by law

8  enforcement for committing serious and violent crimes." *Id.* Secretary Noem observed that the "U.S.

9  must prioritize its national interests," which includes assessing factors such as "foreign policy, public

10  safety, national security, migration factors, immigration policy, and economic considerations." *Id.* In

11  weighing these factors, the Secretary determined that "continuing TPS for Haiti is not in the national

12  interest." *Id.*[18]

13                              **STANDARD OF REVIEW**

14          Dismissal is appropriate under Rule 12(b)(1) when the court lacks subject matter jurisdiction over

15  the claim. *See Yu v. Chertoff*, No. C 06-7878CW, 2007 WL 1742850, at *1 (N.D. Cal. June 14, 2007); Fed.

16  R. Civ. P. 12(b)(1). "Subject matter jurisdiction is a threshold issue which goes to the power of the court

17  to hear the case." *Id.* A motion to dismiss for lack of subject matter jurisdiction must be granted if the

18  complaint fails to allege facts sufficient to establish subject matter jurisdiction. *See Jordan v. Presidio Tr.*,

19  No. 16-CV-02122-KAW, 2017 WL 5479607, at *3 (N.D. Cal. Nov. 15, 2017); *Kelly v. Fleetwood Enters.,*

20  *Inc.*, 377 F.3d 1034, 1036 (9th Cir. 2004) ("because the district court lacked subject matter jurisdiction,

21  the claims should have been dismissed").

22          A court should dismiss for failure to state a claim under Rule 12(b)(6) when a complaint fails to

23  plead enough facts to state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S.

24

25  _____

26  [18] On July 15, 2025, Judge Cogan issued a judgment in favor of Plaintiffs and ordered that the Secretary's
    partial vacatur of Haiti's TPS designation is stayed under § 706 of the APA. *Haitian Evangelical Clergy*
27  *Association, et al. v. Trump et al.*, No. 1:25-cv-01464, 2025 WL 180874 (E.D.N.Y July 15, 2025).

28  DEFS.' MOT. TO DISMISS PLS.' FIRST AMEND. AND SUPP. COMPL.
    No. 3:25-cv-1766
                              9

544, 570 (2007); Fed. R. Civ. P. 12(b)(6). When considering a motion made pursuant to Rule 12(b)(6), "a court may look beyond the complaint to matters of public record without having to convert the motion to one for summary judgment." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). When a district court reviews agency action under the APA, "the district judge sits as an appellate tribunal." *See Herguan Univ. v. Immig. And Cust. Enf't*, 258 F. Supp. 3d 1050, 1063 (N.D. Cal. 2017). Accordingly, the case on review is a question of law and the Court's review is limited as to whether the agency acted in an arbitrary and capricious manner. *Id.*

## ARGUMENT

### I.    This Court Lacks Jurisdiction over Plaintiffs' Entire Action

#### A.    The TPS Statute Bars Plaintiffs' Claims

The TPS statute provides that "[t]here is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS relief. 8 U.S.C. § 1254a(b)(5)(A). This provision bars all of Plaintiffs' claims in this Court, whether statutory or constitutional, each of which challenges Secretary Noem's vacaturs and terminations. *Id.*; *see also* H.R. Rep. No. 101-245, at 14 (1989) ("Moreover, none of the [Secretary's] decisions with regard to granting, extending, or terminating TPS will be subject to judicial review.").

Section 1254a(b)(5)(A)'s judicial-review bar is broad. *First*, Congress prefaced "determination" with the term "any." 8 U.S.C. 1254a(b)(5)(A). As the Supreme Court explained "the word 'any' has an expansive meaning." *Patel v. Garland*, 596 U.S. 328, 338 (2022) (cleaned up). The provision thus captures determinations "of whatever kind." *Id. Second*, the phrase "with respect to" has "a broadening effect," as it "ensur[es] that the scope of [the] provision covers not only its subject but also matters relating to that subject." *Id.* at 339. When Congress has stripped a court of jurisdiction "in respect to" certain claims, the Supreme Court has construed that as a "broad prohibition." *United States v. Tohono O'odham Nation*, 563 U.S. 307, 312 (2011). The TPS statute thus plainly commits to the Secretary's unreviewable authority any and all determinations relating to any TPS termination. *Id.*

DEFS.' MOT. TO DISMISS PLS.' FIRST AMEND. AND SUPP. COMPL.
No. 3:25-cv-1766

Reinforcing this interpretation, "the Government's political departments [are] largely immune from judicial control" in the immigration context, *Fiallo v. Bell*, 430 U.S. 787, 792 (1977), particularly when making the sort of sensitive foreign policy judgments at issue here. The Executive Branch had long exercised inherent authority to afford temporary immigration status based on its assessment of conditions in foreign states, even before there was any "specific statutory authority" for such relief. *See Hotel & Rest. Emps. Union, Loc. 25 v. Smith*, 846 F.2d 1499, 1510 (D.C. Cir. 1988) (per curiam). That authority included the discretion "not to extend [protected] status" to a particular class of aliens, and the D.C. Circuit had recognized that such decisions were "unreviewable" by courts. *Id*. Congress legislated against that backdrop when it enacted the TPS program and codified in Section 1254a(b)(5)(A) the understanding that "[t]here is no judicial review" of such determinations. 8 U.S.C. § 1254a(b)(5)(A).

Plaintiffs' APA claims fall squarely within § 1254a(b)(5)(A)'s prohibition on judicial review. They are challenging, and seeking to vacate, the Secretary's "determination[s] … with respect to the … extension or termination … of a designation, of a foreign state" for TPS. 8 U.S.C. § 1254a(b)(5)(A). Courts lack the authority to review or set aside those determinations. Section 1254a plainly precludes judicial review of the Secretary's 2025 Venezuela Termination and the 2025 Haiti Termination because they are both "determination(s) with respect to the termination" of TPS designations. *See 2025 Venezuela Termination*, 90 Fed. Reg. 9,040; *2025 Haiti Termination*, 90 Fed. Reg. 28,760. A decision to terminate a TPS designation is at the core of the jurisdictional statute's broad sweep. Because the Secretary's determinations to terminate the 2023 Venezuela Designation and the 2024 Haiti Designation were clearly a determination "with respect to" the TPS extension or termination, this Court lacks jurisdiction to review it. *See Ramos*, 975 F.3d 872, 889 (9th Cir. 2020) (this bar "preclude[s] direct review of the Secretary's country-specific TPS determinations"), *vacated*, 59 F.4th 1010, 1011 (9th Cir. 2023).

The Secretary's 2025 Venezuela Vacatur and 2025 Haiti Partial Vacatur likewise fall within § 1254a(b)(5)(A)'s bar. A determination to fully or partially vacate an extension of a designation is undoubtedly a determination "with respect to" the "extension of a designation." 8 U.S.C. § 1254a(b)(5)(A); *see Merriam-Webster's Dictionary* (2025), Determination ("the act of deciding

1    definitely and firmly"); *The American Heritage Dictionary* (2022), Determination ("The act of making or

2    arriving at a decision[;] The decision reached[;] The settling of a question by an authoritative decision or

3    pronouncement"); Black's Law Dictionary 450 (defining determination as "[t]o settle or decide by choice

4    of alternatives or possibilities."); Webster's New Collegiate Dictionary 346 ("the act of deciding

5    definitively and firmly"); Webster's Encyclopedic Unabridged Dictionary 393 ("the act of coming to a

6    decision or of fixing or settling a purpose"). Those determinations are therefore not subject to any judicial

7    review—full stop. *See Patel*, 596 U.S. at 338 (acknowledging importance of broadening terms "any" and

8    "regarding" in similar jurisdiction-stripping provision).

9         Plaintiffs try to overcome this jurisdictional bar by challenging the factors and criteria that

10   Secretary Noem used to make her decisions. Supp. Compl. ¶¶ 211(a)-(f), 215(c)-(d), 219(g)-(h), 223(c)-

11   (d), Prayer for Relief ¶ 2. But the TPS statute explicitly bars termination decisions and encompasses the

12   vacatur decisions by barring review of "any determination" "with respect to" the "termination or extension

13   of a designation" of a country for TPS. 8 U.S.C. § 1254a(b)(5)(A); *see Patel*, 596 U.S. at 338-39 (similar

14   jurisdictional bar did not "restrict itself to certain kinds of decisions," but instead covered both subsidiary

15   determinations and the ultimate, "last-in-time judgment" on the matter). Review of the considerations and

16   results of those considerations *is* review of a determination and is barred under the statute.

17        Plaintiffs also endeavor to circumvent the jurisdictional bar by claiming that any process engaged

18   by Defendants in making the determinations was "so deficient as to amount to no process at all." *Id*. at ¶¶

19   211(h), 215(f), 219(k), 223(f). However, regarding the termination determinations, the Secretary followed

20   all statutory requirements. 8 U.S.C § 1254a(b)(3)(A)-(B); *2025 Venezuela Termination*, 90 Fed. Reg.

21   9,040; *2025 Haiti Termination*, 90 Fed. Reg. 28,760. And regarding the vacatur determinations, the Ninth

22   Circuit has instructed that the statutory authorization to make a decision "must be understood as carrying

23   with it an implied incidental authority" to revoke that decision, *China Unicom (Ams.) Ops. Ltd. v. FCC*,

24   124 F.4th 1128, 1143 (9th Cir. 2024), especially because the TPS statute gives the Secretary discretion

25   over both the length of a TPS designation and the timing of periodic review. 8 U.S.C. § 1254a(b)(3)(A)-

26

27   DEFS.' MOT. TO DISMISS PLS.' FIRST AMEND. AND SUPP. COMPL.

28   No. 3:25-cv-1766

(C); *see Macktal v. Chao*, 286 F.3d 822, 825-26 (5th Cir. 2002) (holding agency acted lawfully by exercising inherent authority to reconsider decisions) (collecting cases).

Accordingly, judicial review is foreclosed by § 1254a(b)(5)(A) and this Court should dismiss Plaintiffs' First Amended and Supplemental Complaint for lack of jurisdiction. As Congress has explicitly barred judicial review of TPS determinations, Plaintiffs' claims are likewise not reviewable under the APA. *See* Supp. Compl. ¶¶ 222-24. *See* 5 U.S.C. § 701(a)(1) (precluding review under the APA "to the extent" that other "statutes preclude judicial review.")

Thus, judicial review is foreclosed by § 1254a(b)(5)(A) and this Court should dismiss this case for lack of jurisdiction.

## B.    The APA Precludes Review of an Agency's Discretionary Determinations

The APA also precludes review where the agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). While "rare," this section of the APA applies "where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993). A determination of the national interest is one of these rare circumstances. *See Hawaii*, 585 U.S. at 684-86 (explaining that where the President has statutory discretion to determine if an alien's entry "would be detrimental to the interests of the United States," federal courts should not inquire "into the persuasiveness of the President's justifications"). The determination of "national interest" is one that calls upon the Secretary's "expertise and judgment" and is not a manageable legal standard. *See Zhu v. Gonzales*, 411 F.3d 292, 295 (D.C. Cir. 2005); *see also Webster v. Doe*, 486 U.S. 592, 600 (1988); ); *see also Webster v. Doe*, 486 U.S. 592, 600 (1988); *Poursina v. USCIS*, 936 F.3d 868, 874 (9th Cir. 2019) ("[T]he 'national interest' standard invokes broader economic and national-security considerations, and such determinations are firmly committed to the discretion of the Executive Branch—not to federal courts.") (citing *Trump v. Hawaii*, 585 U.S. 667, 685-86 (2018)). Because there is no manageable standard by which this Court can judge the Secretary's finding that permitting TPS holders from Venezuela or Haiti is contrary to the national interest, this Court also lacks

jurisdiction to review any determination based upon that finding. *See 2025 Venezuela Vacatur; 2025 Venezuela Termination; 2025 Haiti Partial Vacatur; 2025 Haiti Termination*.

### C.    Section 1252(f)(1) Precludes Plaintiffs' Requested Relief

By seeking to "[e]njoin all Defendants … from enforcing the vacatur order of February 3, 2025, termination order of February 5, 2025, partial vacatur order of February 24, 2025, and the termination order on July 1, 2025," Supp. Compl. "Prayer for Relief" ¶ 6, Plaintiffs also seek the type of coercive order prohibited by 8 U.S.C. § 1252(f)(1). Section 1252(f)(1) bars district courts and courts of appeals from entering an order that "enjoin[s] or restrain[s]" the operation of the statutory provisions § 1252(f)(1) covers. Section 1254a is one of those covered provisions. Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), div. C, Pub. L. No. 104-208, §§ 306, 308, 110 Stat. 3009-546. Although Section 1254a appears in Part V of the U.S. Code, the U.S. Code is inconsistent with the INA, wherein the TPS provisions in Section 244 appear in Chapter 4. *Id*. When there is a conflict, the INA prevails. *See Galvez v. Jaddou*, 52 F.4th 821, 830-31 (9th Cir. 2022); *U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 448 (1993) ("Though the United States Code is 'prima facie' evidence that a provision has the force of law, 1 U.S.C. § 204(a), it is the Statutes at Large that provides the 'legal evidence of laws,' [1 U.S.C.] § 112...."); *United States v. Carroll*, 105 F.3d 740, 744 (1st Cir. 1997). INA § 244 lies within chapter 4 of title II of the INA, as amended.

Regardless of how Plaintiffs frame the relief sought, an order that would have the effect of enjoining or restraining DHS's implementation of the TPS provisions in § 1254a, is jurisdictionally barred under § 1252(f)(1). *See Biden v. Texas*, 597 U.S. 785, 797 (2022) (§ 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or *to refrain from taking* actions to enforce, implement, or otherwise carry out the specified statutory provisions.") (quoting *Garland v. Aleman Gonzalez*, 596 U.S. 543, 544 (2022)) (emphasis added); *see* Black's Law Dictionary (12th ed. 2024) (An injunction is "[a] court order commanding or preventing an action"). To "restrain" means to "check, hold back, or prevent (a person or thing) from some course of action," to "inhibit particular actions," or to "stop (or perhaps compel)" action. *Aleman Gonzalez*, 596 U.S. at 549 (quoting 5 Oxford

English Dictionary 756 (2d ed. 1989)). An order setting aside the Secretary's determinations would be an order "restraining" federal officials. *Id*. at 550.

It does not matter for purposes of Section 1252(f)(1) whether Plaintiffs request an order postponing, staying, enjoining, vacating, or setting aside the Secretary's determinations. *See* Supp. Compl. Prayer for Relief ¶¶ 4, 5. Like an injunction, an order to "set aside" the determinations "restrict[s] or stop[s] official action," *Direct Mktg. Ass'n v. Borhl*, 575 U.S. 1, 13 (2015). It prohibits officials from relying on the agency's determination, producing the same practical effect as an injunction by preventing Defendants from implementing the determinations. *See United States v. Texas*, 599 U.S. 670, 691 (2023) (Gorsuch, J., concurring) (questioning the validity of the district court's finding that § 1252(f)(1) does not bar vacatur orders and that § 706(2) authorizes courts to issue them). The Supreme Court has repeatedly given a broad interpretation to terms such as "injunction" in other statutes. For example, the Court interpreted a statute conferring jurisdiction over appeals from "injunction[s] in certain civil actions to apply to orders with a "coercive" effect. *Aberdeen & Rockfish R.R. v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 422 U.S. 289, 307 (1975). The Court commented that it had "repeatedly exercised jurisdiction under [the provision] over appeals from orders" that were "not cast in injunctive language but which by their terms simply 'set aside' or declined to 'set aside' orders of the [agency]." *Id.* at 308 n.11 (quotation omitted). Here, too, setting aside the Secretary's determinations would qualify as an injunction barred by § 1252(f)(1) because it would coerce and restrain the agency's operation of covered statutes. Thus, to the extent Plaintiffs continue to ask this Court to "set aside" the Secretary's determinations, this type of order would necessarily constitute an order "enjoining or restraining" federal officials and is therefore equally prohibited by § 1252(f)(1). Supp. Compl., Prayer for Relief ¶¶ 4, 5; *see Aleman Gonzelez*, 596 U.S. at 544.

Finally, it remains the government's view that § 1252(f)(1) also bars declaratory relief. *See Aleman Gonzalez*, 596 U.S. at 551 n.2; *cf. California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982) (Tax Injunction Act barred declaratory relief as well as injunctive relief); *Newdow v. Roberts*, 603 F.3d 1002,

DEFS.' MOT. TO DISMISS PLS.' FIRST AMEND. AND SUPP. COMPL.
No. 3:25-cv-1766

15

1   1012 (D.C. Cir. 2010). The government recognizes that the Ninth Circuit has held otherwise, *Rodriguez*

2   *v. Hayes*, 591 F.3d 1105, 1119 (9th Cir. 2010), but preserves its argument that that decision is error.

3   **II.    Plaintiffs' APA Claims Should Be Dismissed Because the Secretary's Determinations Were**
        **Not Contrary to Law, in Excess of Statutory Limitations, or Otherwise Unlawful**

4

5        Even if the Court concludes it has jurisdiction, the Court should dismiss Plaintiffs' First Amended

6   and Supplemental Complaint because the Secretary's determinations were lawful and consistent with 8

7   U.S.C. § 1254a.

8        A.    2025 Venezuela Vacatur and 2025 Haiti Partial Vacatur (Counts I and III)

9        The Secretary has inherent authority to reconsider past actions. Plaintiffs, however, contend that

10  the 2025 Venezuela Vacatur and Haiti Partial Vacatur "exceeded [Defendants'] statutory authority, and

11  was arbitrary and capricious, contrary to law, pretextual, and deviated from past practice. Supp. Compl.

12  ¶¶ 211, 219. Plaintiffs list numerous reasons to support these allegations, none of which is persuasive. *Id*.

13  Statutory authorization to make a decision "must be understood as carrying with it an implied incidental

14  authority" to revoke that decision, *China Unicom (Ams.) Ops. Ltd. v. FCC*, 124 F.4th 1128, 1143 (9th Cir.

15  2024), especially because the TPS statute gives the Secretary discretion over both the length of a TPS

16  designation and the timing of periodic review. 8 U.S.C. § 1254a(b)(3)(A)-(C); *see Ivy Sports Medicine,*

17  *LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014) (collecting cases and explaining that "administrative

18  agencies are assumed to possess at least some inherent authority to revisit their prior decisions, at least if

19  done in a timely fashion.").

20       First, Plaintiffs allege that "Defendants had no authority to annul a TPS extension under the

21  timetable and procedures they utilized here." Supp. Compl. ¶¶ 211(a), 219 (a). Not so. Courts have long

22  recognized that an administrative agency has inherent or statutorily implicit authority to reconsider and

23  change a decision within a reasonable period if Congress has not foreclosed this authority by requiring

24  other procedures. *See Albertson v. FCC*, 182 F.2d 397, 399 (D.C. Cir. 1950) ("The power to reconsider is

25  inherent in the power to decide."); *Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 229 n. 9 (2d

26  Cir. 2002) (agency's power to reconsider "applies regardless of whether the applicable statute and agency

27

28  DEFS.' MOT. TO DISMISS PLS.' FIRST AMEND. AND SUPP. COMPL.
    No. 3:25-cv-1766

regulations expressly provide for such review, but not where there is contrary legislative intent or other affirmative evidence") (emphasis in original) (quotations omitted); *see also The Last Best Beef, LLC v. Dudas*, 506 F.3d 333, 340 (4th Cir. 2007) (federal agencies have broad authority to reconsider their prior decisions, particularly when the prior decision contained an error); *Macktal v. Chao*, 286 F.3d 822, 825-26 (5th Cir. 2002) (holding agency acted lawfully by exercising inherent authority to reconsider decisions) (collecting cases); *Gun South, Inc. v. Brady*, 877 F.2d 858, 862 (11th Cir. 1989) ("[T]he Supreme Court and other courts have recognized an implied authority in other agencies to reconsider and rectify errors even though the applicable statute and regulations do not expressly provide for such reconsideration."). And the Secretary has asserted and exercised this authority previously. *See Reconsideration and Recission of Termination of the Designation of El Salvador for [TPS]; Extension of the [TPS] Designation for El Salvador*, 88 Fed. Reg. 40,282, 40,285 & n.16 (June 21, 2023) (Secretary Mayorkas exercising "inherent authority to reconsider any TPS-related determination, and upon reconsideration, to change the determination" to vacate his predecessor's termination of El Salvador's TPS designation).

Congress gave the Secretary "undoubtedly broad" authority to "make TPS determinations" and ensure the continued designation of a country complies with the law. *Ramos*, 975 F.3d at 890 (finding statutory constraints "on the Secretary's discretion, [are] in favor of limiting unwarranted designations or extensions…") (cleaned up). Section 1254a requires the Secretary to review conditions within foreign states designated for TPS periodically, but any subsequent action turns on the Secretary's findings about whether the conditions for such designation continue to exist. 8 U.S.C.§ 1254a(b)(3)(A)-(C). The statute also requires the Secretary to determine whether "permitting aliens to remain temporarily in the United States is contrary to the national interest of the United States." 8 U.S.C. § 1254a(b)(1)(C); *cf. Poursina v. USCIS*, 936 F.3d 868, 874 (9th Cir. 2019) (observing, in an analogous INA context, "that the 'national interest' standard invokes broader economic and national-security considerations, and such determinations are firmly committed to the discretion of the Executive Branch—not to federal courts" (citing *Hawaii*, 585 U.S. at 684-86)). Secretary Noem took the steps provided for by the TPS statute and,

1  while Plaintiffs may disagree with her decision, they cannot adequately allege that the vacaturs were in

2  any way "pretextual" or contrary to the statutory process. *Id.* at ¶¶ 211(g)-(h), 219(j).

3      Flexibility to reconsider decisions makes especially good sense in the TPS context. The Secretary's

4  TPS authority inevitably requires her to make sensitive assessments affecting United States foreign policy.

5  *See Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952) ("[A]ny policy toward aliens is vitally and

6  intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations [and]

7  the war power."). When the Executive Branch acts in the field of foreign policy "… pursuant to an express

8  or implied authorization of Congress, [its] authority is at its maximum, for it includes all that [it] possesses

9  in [its] own right plus all that Congress can delegate." *Youngstown Sheet and Tube Co. v. Sawyer*, 343

10  U.S. 579, 635 (1952) (Jackson, J., concurring) (cleaned up).

11      Employing Plaintiffs' analysis that Section 1254a bars such reconsideration would mean that no

12  Secretary of Homeland Security could ever vacate a designation or extension of a designation, no matter

13  the type of national security threat posed or the seriousness of the error or legal defect in a prior

14  determination. Section 1254a does not mandate such an unworkable and potentially detrimental limitation

15  of the Secretary's ability to fulfill her border security, national security, and foreign policy responsibilities

16  by exercising her broad authority to administer and enforce the immigration laws, *see, e.g.*, 6 U.S.C.

17  § 202(1)-(5), 8 U.S.C. § 1103(a)(1), (a)(3), and to do so consistent with the President's Executive Orders.

18  For these articulated reasons, Secretary Noem exercised her inherent authority under Section 1254a in

19  revisiting and reconsidering prior TPS determinations. If agencies hold *any* inherent power to reconsider

20  past actions, as the law says they do, this was, as Secretary Mayorkas previously recognized, a

21  quintessential exercise of that power. *See 2023 El Salvador Reconsideration*, 88 Fed. Reg. 40,282, 40,285

22  & n.16 (June 21, 2023).

23      The other bases that Plaintiffs invoke do not establish that the vacaturs were arbitrary and

24  capricious either. *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989) (Under the arbitrary

25  and capricious standard, a reviewing court must determine whether an agency's decision was based on a

26  consideration of the relevant factors and whether there has been a clear error of judgment). The court

27

28  DEFS.' MOT. TO DISMISS PLS.' FIRST AMEND. AND SUPP. COMPL.
   No. 3:25-cv-1766

should overturn an agency's decision only if the agency committed a "clear error of judgment." *California Trout v. Schaefer*, 58 F.3d 469, 473 (9th Cir. 1995). First, Plaintiffs' assertions that the 2025 Venezuela Vacatur and Haiti Partial Vacatur decisions assume that TPS designations are illegal and that TPS holders are present in the United States illegally is patently incorrect and cannot be arbitrary or capricious. *See* Supp. Compl. ¶¶ 211(d)-(e), 219(b)-(c). Plaintiffs' citations to support these allegations merely point to the fact that Secretary Noem found flaws in her predecessor's extension that warranted further review and reconsideration. *See* Supp. Compl. ¶¶ 69-71, 97.

Regarding the 2025 Venezuela Vacatur, Plaintiffs also allege that the Secretary did not consider that 2021 Venezuelan TPS holders were eligible for TPS under the 2023 Designation. Supp. Compl. ¶ 211(b). However, simple eligibility should not overcome the Secretary's reasoned concerns that the 2025 Venezuela Extension consolidated the two overlapping populations and prevented her from making "informed determinations regarding the TPS designation and clear guidance." *2025 Venezuela Vacatur*, 90 Fed. Reg. 8,807. For this same reason, it was not arbitrary or capricious for the Secretary to determine that de-consolidating the registration processes would resolve her concern that the 2025 Venezuela Extension implicitly extended the 2021 Designation. *See* Supp. Compl. ¶ 211(c). And Plaintiffs' claims that "the decision assumed that the Secretary has an obligation to specifically explain why a designation is not contrary to the national interest" fail as well. Supp. Compl. ¶ 219(i). The Secretary's action was consistent with her continuing obligation to safeguard the border and national security of the United States and to administer and enforce the immigration laws. *See* 8 U.S.C. § 1254a(b)(1)(C); Exec. Order No. 14159, Protecting the American People Against Invasion, § 16(b), 90 Fed. Reg. 8443 (Jan. 20, 2025). Furthermore, the Secretary "considered the relevant evidence and factors and "articulated a satisfactory explanation for [her] action including whether there is a rational connection between the facts found and the choice made." *FDA v. Wages and White Lion Invs.*, 145 S. Ct. 898, 917 (2025) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Plaintiffs further allege that the 2025 Venezuela Vacatur and Haiti Partial Vacatur determinations "presupposed that prior TPS designations or extensions can be rescinded merely because of policy

DEFS.' MOT. TO DISMISS PLS.' FIRST AMEND. AND SUPP. COMPL.
No. 3:25-cv-1766

19

1   disagreements between administrations." Supp. Compl. ¶¶ 211(f), 219(d); *see also id.* ¶ 219(e). But "[i]t

2   is hardly improper for an agency head to come into office with policy preferences and ideas, discuss them

3   with affected parties, sound out other agencies for support, and work with staff attorneys to substantiate

4   the legal basis for a preferred policy." *DOC v. New York*, 588 U.S. 752, 78 (2019). As the Supreme Court

5   has explained, "a court may not set aside an agency's policymaking decision solely because it may have

6   been influenced by political considerations or prompted by Administrative priorities …. Such decisions

7   are routinely informed by unstated considerations of politics, the legislative process, public relations,

8   interest groups, foreign relations, and national security concerns (among others). *Id.* at 782. Nor were

9   these determinations "pretextual", *see supra*, § III, or "deviate from past practice," Supp. Compl. ¶¶ 211(g-

10  h), 219(j)-(k). Indeed, it was consistent with the previous Secretary's decisions revisiting and rescinding

11  prior TPS determinations. *See* 2023 El Salvador Reconsideration, 88 Fed. Reg. at 40,285.

12      Accordingly, the 2025 Venezuela Vacatur and Haiti Partial Vacatur determinations did not violate

13  the APA and Plaintiffs' First Amended and Supplemental Complaint should be dismissed.

14      B.    2025 Venezuela and Haiti Termination Decisions (Counts II and IV)

15      Plaintiffs' assertions that the 2025 Venezuela and Haiti Terminations "[were] arbitrary and

16  capricious, contrary to law, pretextual, and deviated from past practice" fail. Supp. Compl. ¶¶ 215(a)-(f),

17  223(a)-(f). Plaintiffs incorrectly assert that the termination decisions assume that TPS designations are

18  illegal and that TPS holders are present in the United States illegally. *See* Supp. Compl. ¶¶ 215(a)-(b),

19  223(a-b). Not so. Each of Plaintiffs' citations to support these allegations merely point to the fact that

20  Secretary Noem complied with the law—she reviewed the TPS designations and determined that

21  Venezuela and Haiti no longer continue to meet the conditions for designation under § 1254a(b)(1)(C).

22  Supp. Compl. ¶¶ 73-82, 106-110. Moreover, TPS is a status that permits aliens who have entered the

23  country illegally to reside here lawfully on a temporary basis. 8 U.S.C. § 1254a(c)(2)(A). The Secretary's

24  understanding of the law was correct, and her correct view of the law does not render her decisions

25  arbitrary and capricious.

26

27

28  DEFS.' MOT. TO DISMISS PLS.' FIRST AMEND. AND SUPP. COMPL.
    No. 3:25-cv-1766

Plaintiffs also allege that the 2025 Venezuela and Haiti Terminations failed to meet the statutory requirements because they "relied entirely on a determination that an extension of TPS would be 'contrary to the national interest,' but that factor is only relevant at the time of the designation; it is not a valid consideration when assessing whether to extend or instead terminate TPS." Supp. Compl. ¶¶ 215(c), 223(c). Plaintiffs misread the statute. The statute provides that if the Secretary determines during her periodic review that the conditions present for designation are no longer met, she shall terminate. 8 U.S.C. § 1254a(b)(3)(A)-(B). The national interest determination is one of the conditions for designation, *id.* § 1254a(b)(1)(C), so it is one of the conditions the Secretary must evaluate when deciding whether a country continues to meet the conditions for designation, *see* § 1254a(b)(3)(B).

Likewise, Plaintiffs' claim that the research, consultation, and review process leading up to the decision deviated dramatically from past practice without explanation fails. Supp. Compl. ¶¶ 215(d), 223(d). Secretary Noem reviewed the Venezuela 2023 and Haiti 2024 TPS designations and, after consulting with the appropriate Government agencies, determined that Venezuela and Haiti no longer continue to meet the conditions for designation. *See 2025 Venezuela Termination*, 90 Fed. Reg. at 9,042; *2025 Haiti Termination*, 90 Fed. Reg. at 28, 760. The Secretary reviewed Venezuela's designation and, based on the U.S. Department of State's assessment, noted "improvements in several areas such as the economy, public health and crime that allow for [Venezuelan] nationals to be safely returned to their home country," but determined that "even assuming relevant conditions in Venezuela remain both 'extraordinary' and 'temporary,' termination…is 'required' because it is contrary to national interest…." *2025 Venezuela Termination*, 90 Fed. Reg. at 9,042. She explained that the "'[n]ational interest' is an expansive standard that may encompass an array of broad considerations, including foreign policy, public safety, national security, migration factors, immigration policy, and economic considerations." *Id.* (cleaned up); *see id.* n.5 (citing cases).

The Secretary reviewed Haiti's designation and, based on a joint assessment conducted by the U.S. Department of State, the Secretary of Homeland Security, and the Director of National Intelligence, found that Haiti's lack of "functioning central authority capable of maintaining or sharing critical information"

has hindered the ability of U.S. officials to "access reliable law enforcement or security information from the alien's country of origin." *2025 Haiti Termination*, 90 Fed. Reg. at 28,763. She highlighted that this limited access to information, "particularly in the context of uncontrolled migration," coupled with the "serious threat posed by Haitian gangs," directly impacts the national interest. *Id*. In her termination notices, Secretary Noem appropriately considered country conditions, evaluated the national interest, and provided her reasons for terminating Venezuela's and Haiti's designations, including valid public safety and national security concerns, the impact of destabilizing migration, and adverse impacts on foreign relations. *2025 Venezuela Termination*, 90 Fed. Reg. at 9,042; *2025 Haiti Termination*, 90 Fed. Reg. at 28760. The Secretary's reasoned determinations were unquestionably a lawful exercise of her authority to determine whether "permitting aliens to remain temporarily in the United States is contrary to the national interest of the United States." 8 U.S.C. § 1254a(b)(1)(C); *Poursina*, 936 F.3d at 874.

Plaintiffs also allege that the 2025 Venezuela and Haiti Terminations were "pretextual." Supp. Compl. ¶¶ 215(e), 223(e). But the Secretary's termination decisions were firmly and appropriately rooted in foreign policy and national interest considerations. *See* 8 U.S.C. § 1254a(b)(1)(C); *Arizona v. United States*, 567 U.S. 387, 409 (2012) (holding the federal government must speak "with one voice" in determining "whether it is appropriate to allow a foreign national to continue living in the United States"); *cf.* U.S. Secretary of State, Determination: Foreign Affairs Functions of the United States, 90 Fed. Reg. 12,200 (Mar. 14, 2025) ("[A]ll efforts, conducted by any agency of the federal government, to control the status, entry, and exit of people, and the transfer of goods, services, data, technology, and other items across the borders of the United States, constitute a foreign affairs function of the United States under the Administrative Procedure Act, 5 U.S.C. 553, 554."). Thus, Plaintiffs' allegations fail to rise to the level of plausibility required for their claims to proceed. The Secretary's actions were consistent with her continuing obligation to safeguard the border and national security of the United States and to administer and enforce the immigration laws. *See* 8 U.S.C. § 1254a(b)(1)(C); Exec. Order No. 14159, Protecting the American People Against Invasion, § 16(b), 90 Fed. Reg. 8443 (Jan. 20, 2025).

DEFS.' MOT. TO DISMISS PLS.' FIRST AMEND. AND SUPP. COMPL.
No. 3:25-cv-1766

22

1    Furthermore, the Secretary "considered the pertinent evidence, examined the relevant factors, and

2    articulated a satisfactory explanation for" her action "including whether there is a rational connection

3    between the facts found and the choice made." *J. Andrew Lange, Inc. v. FAA*, 208 F.3d 389, 391 (2d Cir.

4    2000) (*quoting Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). Plaintiffs have

5    accordingly failed to show that the Secretary's actions were arbitrary, capricious, an abuse of discretion,

6    or otherwise not in accordance with law, and Plaintiffs' First Amended and Supplemental Complaint

7    should be dismissed. *Id.* at *9.

8    **III.    Plaintiffs' Constitutional Claims Fail as a Matter of Law.**

9    The Secretary's determinations did not violate the Due Process Clause of the Fifth Amendment.

10    Plaintiffs' allegations that the Secretary's determinations were motivated by "intentional

11    discrimination based on race, ethnicity, or national origin" are baseless. Supp. Compl. ¶ 227. The Supreme

12    Court has been clear that where, as here, a decision is based on immigration policy, courts cannot look

13    behind facially legitimate actions to hunt for illicit purposes. *See Hawaii*, 585 U.S. at 703-04. The

14    deferential, "highly constrained" review of *Trump v. Hawaii* applies here, and the Secretary's decisions

15    easily passes muster under it. *See id.* at 704 ("Any rule of constitutional law that would inhibit the

16    flexibility' of the President 'to respond to changing world conditions should be adopted only with the

17    greatest caution,' and [the Court's] inquiry into matters of entry and national security is highly

18    constrained").

19    The Supreme Court "ha[s] long recognized the power to expel or exclude aliens as a fundamental

20    sovereign attribute exercised by the Government's political departments largely immune from judicial

21    control. *Fiallo v. Bell*, 430 U.S.787, 792 (1977). Because decisions in these matters implicate "relations

22    with foreign powers" and involve "classifications … defined in the light of changing political and

23    economic circumstances," such judgments "are frequently of a character more appropriate to either the

24    Legislature or the Executive." *Mathews v. Diaz*, 426 U.S. 67, 81 (1976); *see also Galvan v. Press*, 347

25    U.S. 522, 531 (1954) ("Policies pertaining to the entry of aliens and their right to remain here are peculiarly

26    concerned with the political conduct of government"). Decisions by the political branches about which

27

28    DEFS.' MOT. TO DISMISS PLS.' FIRST AMEND. AND SUPP. COMPL.
     No. 3:25-cv-1766

classes of aliens to exclude or expel will generally be upheld against constitutional challenges so long they satisfy deferential rational-basis review. *Hawaii*, 585 U.S. at 704-05; *see also Kleindienst v. Mandel*, 408 U.S. 753, 769-70 (1972) (judicial review of "[p]olicies pertaining to the entry of aliens and their right to remain here" is limited to whether the Executive gave a " facially legitimate and bona fide" reason for its action); *Mathews*, 426 U.S. at 82 (a "narrow standard of review" applies to "decisions made by Congress or the President in the area of immigration and naturalization"); *Shaughnessy*, 342 U.S. at 588-89.

The holdings in *Hawaii*, *Mandel*, and *Fiallo* support the application of rational basis review in this case,. In addition to reviewing country conditions and consulting with appropriate government agencies, the Secretary appropriately considered "whether permitting a class of aliens to remain temporarily in the United States is contrary to the national interest," in accordance with 8 U.S.C. § 1254a(b)(1)(C); *See 2025 Venezuela Termination*, 90 Fed. Reg. at 9,040, 9042-43; *2025 Haiti Termination*, 90 Fed. Reg. at 28763. TPS decisions, such as the determinations at issue, involve sensitive, country-specific determinations that both "implicate relations with foreign powers" and "involve classifications defined in the light of changing political and economic circumstances," *Hawaii*, 585 U.S. at 702—precisely the situation in which the Supreme Court has repeatedly applied rational-basis review. *See id.*; *see also Fiallo*, 430 U.S. at 799.

Plaintiffs' equal protection claim would fail even if a less deferential standard applied. Plaintiffs cannot show that the Secretary's TPS determinations were "motivated by animus or discriminatory intent based on race, national origin, and ethnicity," Supp. Compl. ¶ 227, through statements taken out of context and without direct links to the Secretary's determinations. *See DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 34-35 (2020) (explaining that disparate impact, unusual recission history, and pre- and post-election statements failed "to raise a plausible inference that the recission was motivated by animus"). For example, Plaintiffs repeatedly allege that the Secretary referred to Venezuelans as "dirtbags," Supp. Compl. ¶¶ 10, 131-132, 192, despite clear context indicating that she was referring to members of the violent, terrorist Tren de Aragua gang, not Venezuelans writ large. *Id.* at ¶ 131 n.126. Moreover, Plaintiffs' reliance on the President's statements emphasizes the paucity of evidence of an invidious discriminatory purpose and

their invocation of a "cat's paw" theory, which courts have previously rejected. *See Ramos*, 975 F.3d at 889 (emphasizing Appellees' failure to "provide any case where such a theory of liability has been extended to governmental decisions in the foreign policy and national security realm"). Plaintiffs also point to statements from the President to suggest discriminatory motives for the 2025 Haiti Termination, Supp. Compl. ¶¶ 147-148, but Plaintiffs have failed to show how these statements extend to Secretary Noem's determination. Accordingly, Plaintiffs have failed to plausibly allege an equal-protection violation.

Here, the Secretary's determinations are consistent with Congress's goal of providing TPS to eligible aliens so long as it is not contrary to the national interest and until the Secretary determines that the conditions for the country's TPS designation no longer continues to exist. *2025 Haiti Termination*, 90 Fed. Reg. at 28,761; 8 U.S.C. § 1254a(b)(1)(C); *see also Hawaii*, 585 U.S. at 704-05; *United States R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980). Thus, under the rational basis test, Plaintiffs' equal protection claim fails as a matter of law. *See Twombly*, 550 U.S. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

## CONCLUSION

For the foregoing reasons, Plaintiffs' First Amended and Supplemental Complaint should be dismissed in its entirety for lack of subject matter jurisdiction and for failure to state a claim. Fed. R. Civ. P. 12(b)(1), (6).

Dated: July 21, 2025                         BRETT SHUMATE
                                             Assistant Attorney General

                                             YAAKOV M. ROTH
                                             Principal Deputy Assistant Attorney General
                                             Civil Division

                                             WILLIAM H. WEILAND
                                             Acting Assistant Director

                                             CATHERINE ROSS
                                             ERIC SNYDERMAN
                                             SHELBY WADE

DEFS.' MOT. TO DISMISS PLS.' FIRST AMEND. AND SUPP. COMPL.
No. 3:25-cv-1766

DANIEL CAPPELLITTI
LAUREN BRYANT
AMANDA SAYLOR
JEFFREY HARTMAN

Trial Attorneys

s/   *Anna L. Dichter*
ANNA L. DICHTER
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044

*Counsel for Defendants*

DEFS.' MOT. TO DISMISS PLS.' FIRST AMEND. AND SUPP. COMPL.
No. 3:25-cv-1766

26

1  BRETT SHUMATE
   Assistant Attorney General
2  Civil Division
   YAAKOV M. ROTH
3  Principal Deputy Assistant Attorney General
   WILLIAM H. WEILAND
4  Acting Assistant Director
   ERIC SNYDERMAN
5  CATHERINE ROSS
   LAUREN BRYANT
6  JEFFREY HARTMAN
   ANNA DICHTER
7  DANIEL CAPPELLETTI
   SHELBY WADE
8  Trial Attorneys
   U.S. Department of Justice, Civil Division
9  Office of Immigration Litigation
   General Litigation and Appeals Section
10  P.O. Box 868, Ben Franklin Station
    Washington, DC 20044
11  Attorneys for Defendants

12

13                      UNITED STATES DISTRICT COURT

14                      NORTHERN DISTRICT OF CALIFORNIA

15                         SAN FRANCISCO DIVISION

16

17  NATIONAL TPS ALLIANCE, *et al.*,
                                              Case No. 3:25-cv-1766
18           Plaintiff,

19       v.                                   PROPOSED ORDER GRANTING
                                              DEFENDANTS' MOTION TO DISMISS
20  KRISTI NOEM, in her official capacity as  THE FIRST AMENDED AND SUPPLEMENTAL
21  Secretary of Homeland Security, *et al.*, COMPLAINT

22           Defendants.

23

24

25

26

27
    PROPOSED ORDER GRANTING DEFS.' MOTION TO DISMISS
28  No. 3:25-cv-1766

1

**PROPOSED ORDER**

2          Before the Court is Defendants' Motion to Dismiss the Plaintiffs' First Amended and

3   Supplemental Complaint, pursuant to Federal Rules 12(b)(1) and 12(b)(6). ECF _____. Having reviewed

4   the motion and considered the arguments counsel, IT IS HEREBY ORDERED that Defendants' Motion

5   to Dismiss the First Amended Complaint and Supplemental Complaint is GRANTED.

6   Issued this _____ day of _____, 2025.

7

8                                                      _____

9                                                      Edward M. Chen
                                                       United States District Court Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROPOSED ORDER GRANTING DEFS.' MOTION TO DISMISS
No. 3:25-cv-1766