1  Ahilan T. Arulanantham (SBN 237841)
   arulanantham@law.ucla.edu
2  CENTER FOR IMMIGRATION LAW AND
   POLICY, UCLA SCHOOL OF LAW
3  385 Charles E. Young Dr. East
   Los Angeles, CA 90095
4  Telephone: (310) 825-1029

5  Emilou MacLean (SBN 319071)
   emaclean@aclunc.org
6  Michelle (Minju) Y. Cho (SBN 321939)
   mcho@aclunc.org
7  Amanda Young (SBN 359753)
   ayoung@aclunc.org
8  ACLU FOUNDATION
   OF NORTHERN CALIFORNIA
9  39 Drumm Street
   San Francisco, CA 94111-4805
10 Telephone: (415) 621-2493
   Facsimile: (415) 863-7832

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, MARIELA GONZÁLEZ, FREDDY JOSE ARAPE RIVAS, M.H., CECILIA DANIELA GONZÁLEZ HERRERA, ALBA CECILIA PURICA HERNÁNDEZ, E.R., HENDRINA VIVAS CASTILLO, A.C.A., SHERIKA BLANC, VILES DORSAINVIL, and G.S.,<br><br>Plaintiffs,<br><br>vs.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,<br><br>Defendants. | Case No. 3:25-cv-01766-EMC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (ECF. 262)** |

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitran (SBN 302081)
ebitran@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, 1H
San Diego, CA 92120
Telephone: (949) 603-7411

**INTRODUCTION**

After Plaintiffs supplemented their First Amended Complaint to add allegations related to the termination of TPS for Haiti—which arose after Plaintiffs filed the Amended Complaint and Defendants filed their Motion to Dismiss—Defendants filed a new Motion to Dismiss the First Amended and Supplemental Complaint ("FASC"), apparently on the mistaken belief that their original Motion to Dismiss became moot when Plaintiffs supplemented their Amended Complaint. Dkt. 262. A supplemental complaint "is not a substitute for, and does not supersede, the original complaint, but assumes that the original complaint is to stand, and both together constitute the complaint in the action." 71 C.J.S. Pleading § 479; *Sweet v. Cardona*, 121 F.4th 32, 47 (9th Cir. 2024) ("[U]nder Rule 15(d), Plaintiffs' supplemental complaint merged with their then-operative complaint."). As the Court correctly recognized in relieving Plaintiffs from any obligation to repeat arguments from the prior opposition, Dkt. 263, Plaintiffs' prior opposition to the Motion to Dismiss remains operative. In keeping with the Court's instructions and the settled understanding of the purpose and effect of a supplemental pleading, Plaintiffs hereby incorporate all their prior arguments in opposition to the Motions to Dismiss; Plaintiffs intend for all of their arguments to apply to each of Defendants' Motions to Dismiss. *See* Dkt. 158 (responding to Dkt. 122).[1]

Defendants' renewed Motion does not substantively change or add any new arguments related to any of the agency actions at issue in this case other than the 2025 Haiti TPS Termination, and even as to that action, most of their arguments simply repeat arguments identical to those they made with respect to the Venezuela termination. Defendants provided no redline comparing the original motion to their new one, but based on Plaintiffs' review, the new Motion to Dismiss differs from the prior one only in that it adds a procedural background section; drops claims of unripeness vis-à-vis Haitian TPS holders (presumably because the agency has now terminated TPS for Haiti);

---

[1] Defendants never directly assert that the summary judgment motion or any other unresolved motions are moot due to the supplemental complaint, which also would be wrong. Among other things, the Court always has discretion to deem already pending motions and related briefing as responsive to the now-operative supplemental complaint. *United States v. Albert C. Kobayashi, Inc.*, No. CV 19-00531 LEK-RT, 2023 WL 2163678, at *1 n.3 (D. Haw. Feb. 22, 2023); *see also Avina v. Bohlen*, 882 F.3d 674, 676 (7th Cir. 2018); *TERA II, LLC v. Rice Drilling D, LLC*, 679 F. Supp. 3d 620, 636 (S.D. Ohio 2023), *on reconsideration in part*, No. 2:19-CV-2221, 2024 WL 231456 (S.D. Ohio Jan. 22, 2024), *and opinion clarified*, No. 2:19-CV-02221, 2024 WL 248889 (S.D. Ohio Jan. 22, 2024).

adds a new factual description for the Secretary's termination of TPS for Haiti; and slightly reorganizes its argument structure without adding any substantively new arguments. The only new cases cited are cumulative and do not introduce new arguments. In light of the Court's instruction, Plaintiffs address *only* Defendants' new arguments, which relate to a handful of the supplemental allegations. For the reasons below, this Court should deny Defendant's renewed Motion to Dismiss as to those allegations (just as it should as to the pre-existing allegations in Plaintiffs' First Amended Complaint).[2]

**ARGUMENT**

With respect to Plaintiffs' new claims arising from the 2025 Haiti termination decision, Defendants' new Motion to Dismiss primarily just applies the same arguments to the Haiti termination that Defendants advanced in their motion to dismiss as to the Venezuela TPS termination. Plaintiffs' incorporation by reference of all the arguments in their original response to Defendants' original Motion to Dismiss suffices to establish that they have sufficiently pled violations of the APA and the Constitution as to the Haiti termination as well. Therefore, the Court should deny Defendants' new Motion to Dismiss. Nonetheless, Defendants make several further points regarding the Haiti termination that warrant brief discussion.

### A.   Plaintiffs Adequately Allege that the Haiti Termination Decision Violates the APA

Plaintiffs adequately allege that the Haiti termination violates the APA because, *inter alia*, (1) it was based on the unlawful partial vacatur of Haiti's previous TPS extension; (2) it relied on the Secretary's finding that permitting Haitian TPS holders to remain in the U.S. would be contrary to the national interest, which is not a permissible basis for termination; and (3) it was not based on a review of country conditions, as required by the TPS statute, but instead a predetermined decision to terminate. FASC ¶¶ 221–224.

As to (1) and (2), Defendants' Motion should be denied for the reasons described in

---

[2] As always, the Court should evaluate Defendants' Motion to Dismiss on the assumption that Plaintiffs' allegations are true, as are any reasonable inferences that could be drawn therefrom. That assumption is particularly appropriate here, as Defendants still have not produced the Certified Administrative Record for the Haiti termination decision, despite Plaintiffs having requested it.

1  Plaintiffs' Opposition to Defendants' first Motion to Dismiss, which apply equally to the Haiti
2  termination. Dkt. 158 at 13–15.
3        As to (3), Defendants argue that the Secretary's decision was "based on a joint assessment"
4  of the national interest and that the Secretary's termination Notice "appropriately considered country
5  conditions, evaluated the national interest, and provided her reasons for terminating." Dkt. 262 at
6  21–22 (arguing that "[t]he Secretary's reasoned determinations were unquestionably a lawful
7  exercise of her authority to determine whether 'permitting aliens to remain temporarily in the United
8  States is contrary to the national interest of the United States.'") (*citing* 8 U.S.C. § 1254a(b)(1)(C);
9  *Poursina v. USCIS*, 936 F.3d 868, 874 (9th Cir. 2019)). But this argument ignores that Defendants
10 provided two fundamentally inconsistent reasons for their decision to terminate TPS for Haiti.
11       The June 7, 2025 DHS Press Release announcing the decision to terminate Haiti's TPS
12 designation asserted that the Secretary determined that country conditions had *improved* to the point
13 where Haitians could safely return home. FSAC ¶ 106. But the July 1, 2025 Federal Register Notice
14 contained no such determination regarding country conditions. *Id.* ¶ 107. Instead, the Notice cited
15 the "national interest" clause of 8 U.S.C. § 1254a(b)(1)(C) as the exclusive basis for termination.
16 The Secretary only analyzed country conditions in the context of the agency's "national interest"
17 findings. *Id.* Ironically, there the Secretary acknowledged the catastrophic conditions—"a
18 devastating political, environmental, social, and economic situation . . . in Haiti"; "Gang violence in
19 Haiti persists as armed groups operate with impunity, enabled by a weak or effectively absent central
20 government"; and "Haiti is in the grip of severe humanitarian and human rights crisis." *Id.* (quoting
21 90 Fed. Reg. 28760, 28762–63 (July 1, 2025)). While acknowledging that "[t]he current situation in
22 Haiti is concerning," Secretary Noem nonetheless determined that termination was warranted
23 because "the United States must prioritize its national interests." *Id.* (quoting 90 Fed. Reg. at 28763).
24       Defendants' simultaneous promulgation of two directly contradictory explanations for the
25 Haiti termination suffices to demonstrate, at least for purposes of a motion to dismiss, that the
26 reasons given were pretextual. As Plaintiffs allege, the truth is that Defendants decided to terminate
27 TPS for Haiti well before conducting *any* review. *Id.* ¶¶ 121–23. Such a preordained decision
28 violates the APA's requirement that agencies provide "genuine justifications for important

decisions," *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019), and the TPS statute's requirement that TPS decisions be based on a review of country conditions. 8 U.S.C. § 1254a(b)(3)(A). Plaintiffs have therefore stated a claim and Defendants' Motion to Dismiss fails for this additional reason.

### B. Plaintiffs Adequately Allege that the Haiti Termination Decision was Unconstitutionally Motivated by Animus (Fourth Claim)

In their FASC, Plaintiffs adequately alleged that the 2025 Haiti termination decision was unconstitutionally motivated by animus. The arguments regarding the discrimination claims that Plaintiffs have incorporated by reference pursuant to the Court's Order, Dkt. 263, suffice to establish that Defendants' Motion to Dismiss this claim fails. *See* Dkt. 158.

While those arguments suffice to establish that the Secretary's TPS decisions as to Haiti (like the decisions as to Venezuela) are motivated by racism, Defendants' new Motion to Dismiss offers further support for that claim. Defendants assert the Secretary considered a recent U.S. State Department of State action designating two organizations in Haiti as Foreign Terrorist Organizations when considering U.S. public safety, which was one of the factors on which the Secretary relied to conclude that terminating TPS for Haiti was not in the national interest. Defendants assert the Secretary "noted that members of these organizations … in some instances" engage in harmful conduct, Dkt. 262 at 9, but the termination Notice for Haiti identifies a grand total of *one* individual—not identified to be a TPS holder—as evidence of harm to public safety. The person they name in the Notice, Wisteguens Jean Quely Charles, is not described as a TPS holder. FASC ¶ 110.

The Federal Register Notice justifies termination of TPS for all Haitians based on the allegedly dangerous actions of this *one individual*. The Notice states "[t]his case underscores the broader risk posed by rising Haitian migration, particularly in light of multiple large-scale prison breaks in Haiti and the increasing numbers of encounters reported by U.S. Customs and Border Protection." 90 Fed. Reg. at 28763. Even assuming the allegations against Mr. Charles to be accurate, the Notice provides no evidence that there are *any* TPS holders convicted of crimes or alleged to have gang involvement, let alone enough of them to justify attributing any heightened risk to the group as a whole. DHS's reliance on one individual case of a Haitian in the United States— perhaps without TPS—to justify stripping TPS status for several hundred thousand people is, as this

4
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – CASE NO. 3:25-CV-01766-EMC

1    Court previously described it, the "classic example of racism." Dkt. 93 at 66.

2        Finally, the Secretary's national interest justifications relied heavily on President Trump's Executive Orders "Protecting the American People Against Invasion" and "America First Policy Directive to the Secretary of State," as well as his Presidential Proclamations "Guaranteeing the States Protection Against Invasion" and "Restricting the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and Other National Security and Public Safety Threats." 90 Fed. Reg. at 28762–63. These Executive Orders and Proclamations characterized lawfully admitted Haitian immigrants as "illegal" and their admission into and presence in the United States as a "flood" and "invasion," thus invoking the racist trope that non-white immigrants are "invading" the U.S. with the goal of replacing white American culture. *See generally* Dkt. 158 at 21–24. There is no need to rely on "cat's paw" theory in light of the Federal Register Notice having explicitly adopted President Trump's racist statements within the four corners of the official agency Notice.

    For these reasons as well, Plaintiffs have pled more than enough evidence of racial animus to survive a motion to dismiss.

## CONCLUSION

    For the foregoing reasons, and for the reasons given in Plaintiffs' opposition to Defendants' original Motion to Dismiss, Plaintiffs' respectfully request that the Court deny Defendants' motion to dismiss in its entirety.

Date: July 28, 2025                                           Respectfully submitted,

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

/s/ *Emilou MacLean*
Emilou MacLean
Michelle (Minju) Y. Cho
Amanda Young

Ahilan T. Arulanantham
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW

Eva L. Bitran
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA

Jessica Karp Bansal
Lauren Michel Wilfong (*Pro Hac Vice*)
NATIONAL DAY LABORER
ORGANIZING NETWORK

Erik Crew (*Pro Hac Vice*)
HAITIAN BRIDGE ALLIANCE

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 28, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

ACLU FOUNDATION
OF NORTHERN CALIFORNIA


/s/ *Emilou MacLean*
Emilou MacLean

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – CASE NO. 3:25-CV-01766-EMC