Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Amanda Young (SBN 359753)
ayoung@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, MARIELA GONZÁLEZ, FREDDY JOSE ARAPE RIVAS, M.H., CECILIA DANIELA GONZÁLEZ HERRERA, ALBA CECILIA PURICA HERNÁNDEZ, E.R., HENDRINA VIVAS CASTILLO, A.C.A., SHERIKA BLANC, VILES DORSAINVIL, and G.S., <br><br> Plaintiffs, <br><br> vs. <br><br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA, <br><br> Defendants. | Case No. 3:25-cv-01766-EMC <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR A STAY PENDING APPEAL** |

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitran (SBN 302081)
ebitran@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, 1H
San Diego, CA 92120
Telephone: (949) 603-7411

**INTRODUCTION**

Following six months of intensive litigation, this Court entered final judgment for Plaintiffs on their Administrative Procedure Act claims, providing relief to over one million immigrants whom Defendants illegally stripped of humanitarian protections without reasoned explanation and in violation of the Temporary Protected Status statute. Defendants have yet to comply with this Court's order, and they have not appealed it. Nonetheless, with unclean hands, they ask the Court to stay its order based on a procedurally improper, cursory motion that ignores binding Ninth Circuit precedent. The only argument Defendants make is that the Supreme Court granted a stay at an earlier stage of this case, but that stay order cannot establish likelihood of success on appeal of this final judgment for various reasons, including that it concerned relief under a different provision of the APA, at a different stage of litigation, on a different factual record, and on fewer claims.

Because Defendants' motion makes a mockery of this Court's well-reasoned judgment and carefully designed procedural rules, this Court should deny Defendants' motion without prejudice on the ground that Defendants failed to properly notice their motion in violation of the Local Rules, have not yet appealed, and cannot seek a stay of a judgment with which they are not complying. Should the Court reach the merits, it should deny the motion because Defendants have utterly failed to establish likelihood of success and have not even asserted irreparable injury. If it takes that approach, the Court should explicitly find that Defendants waived arguments not made in their stay motion, or at minimum require them to make every argument they intend to raise on appeal.

**PROCEDURAL BACKGROUND**

Plaintiffs filed suit on February 19, 2025. The original complaint challenged Defendants' vacatur and termination of Venezuela's TPS designation under the Administrative Procedure Act (APA) and the Equal Protection component of the Fifth Amendment. Dkt. 1. On February 20, Plaintiffs moved to postpone the effective date of the Venezuela vacatur and termination under 5 U.S.C. § 705. Dkt. 16. On March 20, Plaintiffs amended the complaint to add APA and Fifth Amendment challenges to Defendants' partial vacatur of Haiti's TPS designation. Dkt. 74.

On March 31, this Court granted Plaintiffs' motion to postpone. Dkt. 93. It held Plaintiffs were likely to succeed on their discrimination claim and on two separate APA claims: (1) that DHS

1

1    lacked authority to vacate the prior extension of Venezuela's TPS designation, and (2) that even if

2    there were vacatur authority, the vacatur was arbitrary and capricious because it rested on legal error,

3    was pretextual, and failed to consider obvious alternatives.

4         Defendants appealed and sought a stay of the postponement order pending appeal. This Court

5    and the Ninth Circuit both denied Defendants' stay motion. On May 19, 2025, the Supreme Court

6    granted a stay. Dkt. 140. The Supreme Court did not explain its decision. In the second paragraph of

7    its order, it stated that the stay was "without prejudice to any challenge" to the Venezuela vacatur to

8    the extent it invalidated TPS-related documents that had already been issued. *Id.* Plaintiffs

9    subsequently moved to postpone the effective date of the Venezuela vacatur as to already issued

10   TPS-related documentation. Dkt. 144. On May 30, this Court granted Plaintiffs' motion in part,

11   postponing the vacatur to the extent it invalidated TPS-related documentation received before

12   February 5, 2025. Dkt. 162. Defendants have not appealed that order, and the motion makes no

13   mention of that order.

14        Following the Supreme Court stay, this case proceeded to final adjudication. After targeted

15   extra-record discovery, on June 3 Plaintiffs moved for partial summary judgment on their APA

16   challenges to the vacatur and termination of Venezuela's TPS designation and the partial vacatur of

17   Haiti's TPS designation, seeking a court order setting aside the challenged decisions under 5 U.S.C.

18   § 706. Dkt. 165. Plaintiffs' motion raised several new APA arguments based on evidence obtained

19   during discovery, including that the termination of Venezuela's TPS designation violated the APA

20   because DHS had failed to consult with other agencies regarding country conditions as required by

21   the TPS statute. *Id.*; 8 U.S.C. § 1254a(b)(3)(A).

22        On August 29, the Ninth Circuit affirmed this Court's postponement order, finding Plaintiffs

23   likely to succeed on their vacatur authority claim. Dkt. 277 at 31-40. The Ninth Circuit further held

24   this Court did not abuse its discretion in finding, based on multiple expert declarations and evidence

25   from amici states and cities, that Plaintiffs would be irreparably harmed by the Venezuela vacatur

26   and termination and that the balance of hardships tips sharply in Plaintiffs' favor. *Id.* at 42-44.

27        On September 5, this Court granted Plaintiffs' motion for partial summary judgment and

28   entered final judgment on their APA challenges to the Venezuela vacatur and termination and the

                                                    2

1    Haiti partial vacatur. Dkt. 279. In addition to ruling in Plaintiffs' favor on the two APA claims at

2    issue in the postponement motion, the Court ruled for Plaintiffs on an additional APA claim: that

3    DHS violated the APA by failing to consult with other agencies regarding country conditions prior

4    to terminating Venezuela's TPS designation and by deviating from past practice regarding TPS

5    decisionmaking without explanation. *Id.* at 50-53 (discussing 8 U.S.C. § 1254a(b)(3)(A)).

<b>ARGUMENT</b>

6

7    **I.    The Court Should Reject Defendants' Motion As Procedurally Defective**

8           The Court should reject Defendants' motion as procedurally defective for two reasons. *First*,

9    the motion seeks a stay pending appeal pursuant to Federal Rule of Appellate Procedure 8, Mot. at 2,

10   but as of this time Defendants have not appealed (and apparently lack permission to appeal). Mot. at

11   4. Defendants cite no authority for a stay pending appeal when there is no appeal, and the Ninth

12   Circuit recently found none. *See Vasquez Perdomo v. Noem*, No. 25-4312 (9th Cir. July 16, 2025),

13   ECF No. 9 (denying motion for stay pending appeal for failure to comply with FRAP 8 where

14   Defendants' stay motion in the district court sought a stay to allow the Solicitor General to determine

15   whether to appeal); *Gonzalez v. Tagged, Inc.*, No. 16-CV-00574-YGR, 2016 WL 6696125, at *1

16   (N.D. Cal. Nov. 15, 2016) (denying stay motion where applicant had not filed appeal because

17   "Plaintiff may only seek a stay under ... Rule 8(a) if he has filed an appeal from the judgment in this

18   Court"). It is particularly inappropriate for Defendants to ask this Court to rule on a stay motion with

19   momentous consequences for over one million people on a shorter schedule than Defendants have

20   imposed on themselves to make up their minds about whether to appeal.

21           *Second*, the Court should deny Defendants' motion because it does not comply with Local

22   Rule 7-2 in any respect. It is styled as a "motion." Under this Court's rules, motions must be filed

23   with hearing dates and come with default briefing schedules. Defendants made no attempt to comply

24   with those rules. Of course, the requirements of Local Rule 7-2 do not apply to all motions. Parties

25   may file "administrative motions" that have different default timing requirements. Local Rule 7-11.

26   They may also seek emergency relief on shortened time, but still must comply with the rules for

27   doing so. Local Rule 6-3. But Defendants have not argued their motion is administrative. Nor have

28   they complied with the procedures for emergency relief or explained what the emergency might be.

1    Particularly when there are serious questions concerning the extent to which the Government

2    is abiding by the rule of law, this Court should require Defendants to follow it. This Court should

3    deny the motion without prejudice to Defendants seeking a stay after they have appealed, and if they

4    file a motion in compliance with this Court's duly established local rules.

5    **II.    Defendants' Unclean Hands Bar Them From Obtaining a Stay From an Order With**

6    **Which They Are Not Complying**

7    Defendants cannot seek a stay because they are not complying with the Court's order. The

8    order means the January 17, 2025 extension of TPS for Venezuela is currently in effect. However,

9    Defendants' USCIS website, which the public relies on to know the status of TPS designations for

10   individual countries, still does not reflect this. Instead, it states that Venezuela's 2023 TPS

11   designation has "terminated." *See* Ex. A (USCIS TPS Venezuela webpage stating, as of today, that

12   "TPS for Venezuelans with April 2, 2025 documentation has terminated pursuant to Secretary of

13   Homeland Security Kristi Noem's Feb. 5, 2025 decision to terminate TPS under the 2023

14   designation for Venezuela"). Plaintiffs emailed counsel for Defendants yesterday (September 8)

15   asking them to update the website. Defendants stated that they would not do so as of yesterday, and

16   appeared to assert they have no obligation to do so at any time. *See* Ex. B.

17   Plaintiffs intend to file a motion for compliance today. However, Defendants' blatant

18   disregard for this Court's order already renders them ineligible for a stay under "[t]he unclean hands

19   doctrine[, which] closes the doors of a court of equity to one tainted with inequitableness or bad faith

20   relative to the matter in which he seeks relief." *Adler v. Fed. Republic of Nigeria*, 219 F.3d 869,

21   876–77 (9th Cir. 2000) (citation omitted), *as amended on denial of reh'g and reh'g en banc* (Aug.

22   17, 2000). Any belated effort by Defendants to follow the law does not cure the fact that they were

23   not complying with this Court's order when they sought to stay it, and the stay should be denied on

24   that basis alone.

25   **III.    The May 19 Supreme Court Stay Order Does Not Establish Defendants' Likelihood of**

26   **Success**

27   Defendants' sole argument for a stay is that they are likely to prevail on appeal under the

28   Supreme Court's stay of this Court's postponement order. Dkt. 140. This argument fails for at least

4

six independent reasons.

*First*, this Court is bound by the Ninth Circuit's recent published opinion holding that "Plaintiffs are likely to succeed on the merits" of their vacatur authority claim "[b]ecause the TPS statute does not authorize the vacatur of a prior grant of TPS." Dkt. 277 at 40. "[A] published decision of [the Ninth Circuit] constitutes binding authority 'which "must be followed unless and until overruled by a body competent to do so."'" *In re Zermeno-Gomez*, 868 F.3d 1048, 1052 (9th Cir. 2017) (quoting *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc)) (granting petition for writ of mandamus and ordering district courts to comply with published Ninth Circuit decision even though issuance of mandate had been stayed). Defendants "note" that the Solicitor General is considering whether to seek review of the Ninth Circuit's decision, Mot. at 3, but that fact is immaterial. The Solicitor General is not a court; he is not competent to overrule the Ninth Circuit. Nor is it relevant that the mandate has not yet issued. Even if the Ninth Circuit's opinion is not yet directly binding on this Court, it nonetheless has precedential effect, as "a stay of the mandate does not 'destroy the finality of an appellate court's judgment,' and … a published decision is 'final for such purposes as stare decisis, and full faith and credit, unless it is withdrawn by the court.'" *Id.* (quoting *Wedbush, Noble, Cooke, Inc. v. SEC*, 714 F.2d 923, 924 (9th Cir. 1983).

*Second*, the Supreme Court stay of this Court's postponement order lacks any reasoned explanation, distinguishing this case from *Trump v. Boyle,* 145 S. Ct. 2653 (2025), on which Defendants rely. Mot. at 3. *Boyle* treated another shadow docket order—*Trump v. Wilcox*, 145 S. Ct. 1415 (2025)—as "control[ling]" for purposes of "exercise [of] equitable discretion in like cases," even as it acknowledged that the *Wilcox* order was "not conclusive as to the merits." *Boyle*, 145 S. Ct. at 2654. The order in *Wilcox* is fundamentally different from the stay order in this case because it contained two pages of substantive reasoning as to why equitable factors warranted a stay. Namely, *Wilcox* reasoned that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Id.* (quoting *Wilcox*, 145 S. Ct. at 1415); *see also Wilcox*, 145 S. Ct. at 1415 (stating "the disruptive effect of the repeated removal and reinstatement of officers during the pendency of this litigation" justified a stay). In contrast, the stay order in this

1    case provided no analysis of any kind—concerning the merits or any equitable factors.

2         *Third*, the Supreme Court stay order concerned preliminary relief granted by this Court under

3    Section 705 of the APA. Before the Supreme Court, Defendants argued that Section 705 authorizes

4    postponement of agency action only to the extent necessary to "prevent irreparable injury" and that

5    Plaintiffs had failed to show the requisite irreparable harm. Dkt. 144-2 at 32-33, 37. Again, because

6    the Supreme Court provided no explanation for its decision, it is impossible to know whether it

7    credited these arguments. But it may have. *See, e.g., Trump v. CASA, Inc.,* 145 S. Ct. 2540, 2562

8    (2025) (explaining that stay may be granted based on "a threshold error" without also assessing

9    whether the opposing party "will prevail on the underlying merits"). As a result, it is not possible to

10   discern from the order what, if anything, the Court thought about the underlying merits of Plaintiffs'

11   claims or the propriety of granting relief under Section 706. Indeed, this Court explained in some

12   detail why relief under Section 706 is fundamentally distinct from relief under Section 705, and why

13   those differences matter for purposes of summary judgment. Defendants' failure to even address that

14   detailed explanation constitutes a waiver. *See* Dkt. 279 at 63-66.

15        *Fourth*, the Supreme Court stay order concerned only the vacatur of Venezuela's TPS

16   designation, and not the partial vacatur of Haiti's TPS designation. That matters, because even if

17   Defendants could establish likelihood of success on the Venezuela vacatur claim, it does not follow

18   that they could also establish likelihood of success on Plaintiffs' challenge to the Haiti vacatur.

19   Before this Court, and especially before the Supreme Court, Defendants relied heavily on the fact

20   that the Venezuela vacatur decision was made just a few weeks after the prior administration's

21   extension decision and before that extension period began to run. *See, e.g.*, Dkt. 144-3 at 6-8

22   (framing argument at Supreme Court around Secretary's authority to "vacate[] a not-yet-effective

23   extension"); Ex. C, Aug. 1, 2025 Tr. at 45:15-19 (Defense counsel stating "the agency's on its

24   strongest footing with regards to an extension that had yet to take effect"). The same cannot be said

25   of the Haiti partial vacatur decision, which was made *seven months* after Haiti's extension and

26   redesignation. Dkt. 165 at 21. Even if the Secretary had some implied reconsideration authority, such

27   a long-delayed vacatur would exceed its bounds. *See Mazaleski v. Treusdell*, 562 F.2d 701, 720

28   (D.C. Cir. 1977) (any agency implied reconsideration authority must be exercised in "a short and

1    reasonable period" which "absent unusual circumstances …  would be measured in weeks").

2    Further, permitting vacatur on such a delayed timeline "fail[s] to comply with the timing provided

3    for in the TPS statute," which provides for an automatic *extension* of TPS if the Secretary fails to

4    make a decision at least 60 days before a designation is set to expire. Dkt. 279 at 54 n.19; *see also* 90

5    Fed. Reg. 8805, 8807 (Feb. 3, 2025) (vacating prior TPS extension for Venezuela and stating that

6    "statutory deadline" required new decision by February 1, 60 days before its designation was set to

7    expire). If Defendants can vacate a TPS decision at any time, nothing prevents them from simply

8    blowing the statutory deadline, then deciding later to vacate the statutorily mandated automatic

9    extension and terminate. That is not the process Congress designed. Nor is it the process that was

10   before the Supreme Court when it issued its prior stay.

11          *Fifth*, this Court's final judgment finds Plaintiffs likely to succeed on their APA challenge to

12   the Venezuela termination on another ground that was not before the Supreme Court when it stayed

13   the postponement order: that DHS failed to comply with the statutory requirement to "consult[] with

14   appropriate agencies" when making TPS decisions. 8 U.S.C. § 1254a(b)(3)(A). Dkt. 279 at 50-53.

15   Defendants cannot establish likelihood of success on this claim—which provides a wholly

16   independent ground on which to affirm this Court's final judgment as to the Venezuela

17   termination—where their sole justification for seeking a stay is based on an order that never

18   considered this argument and a stay motion that also fails to address it.

19          *Sixth*, this Court's final judgment on Plaintiffs' second APA claim—that, even if Secretary

20   Noem had authority to vacate Venezuela and Haiti's TPS extensions, her decisions to do so violated

21   the APA because the reasons she provided for her decision were pretextual and rested on legal

22   error—was based in part on facts that were uncovered *after* the Supreme Court issued its stay and so

23   were not before the Court at that time. Dkt. 279 at 45-46, 54-58. These facts mattered to this Court,

24   and the Supreme Court has held that such facts matter as well. *See Dep't of Com. v. New York*, 588

25   U.S. 752, 785 (2019) ("The reasoned explanation requirement of administrative law … is meant to

26   ensure that agencies offer genuine justifications for important decisions, reasons that can be

27   scrutinized by courts and the interested public. Accepting contrived reasons would defeat the

28   purpose of the enterprise. If judicial review is to be more than an empty ritual, it must demand

7

1    something better than the explanation offered for the action taken in this case.").

2    　　　For each of the foregoing reasons, Defendants have failed to establish that they are likely to

3    succeed on the merits, and so do not meet the standard for granting a stay pending appeal. *Nken v.*

4    *Holder*, 556 U.S. 418, 434 (2009).

5    **IV.    Defendants Cannot Show Irreparable Injury**

6    　　　Even if Defendants could show likelihood of success on merits (which they cannot), their

7    motion fails because they cannot show that they will be irreparably harmed by this Court's final

8    judgment. Defendants' sole argument regarding irreparable injury is that the Supreme Court's prior

9    stay decision is dispositive on this factor. Mot. at 3. Not so. While the Ninth Circuit has found that

10   the Supreme Court "necessarily held that the Government would face irreparable harm if the district

11   court's *postponement order* were to remain in effect," Dkt. 277 at 21 (emphasis added), it does not

12   necessarily follow that this Court's *final judgment* imposes irreparable harm. As described above,

13   the Supreme Court may have found irreparable harm based on a "threshold error" regarding the

14   propriety of interim relief under Section 705. *See CASA, Inc.*, 145 S. Ct. at 2562 (finding irreparable

15   harm where district court lacked authority to issue requested relief, regardless of underlying merits

16   of claims). If so, its stay order says nothing about whether Defendants would be irreparably harmed

17   by an order issued pursuant to APA Section 706. Further, the Ninth Circuit has recently reaffirmed

18   that "the mere existence of the Executive Branch's desire to enact a policy is not sufficient to satisfy

19   the irreparable harm prong." *Immigr. Defs. Law Ctr. v. Noem*, 2025 WL 2017247, at *5 (9th Cir.

20   July 18, 2025). Defendants have submitted *no other evidence* that the ongoing presence—and lawful

21   status and work authorization—of Venezuelan and Haitian TPS holders harms anyone. *See, e.g.*,

22   Dkt. 279 at 17 (noting that Defendants have submitted "zero" evidence that Venezuelan TPS holders

23   constitute a threat to national security). Accordingly, they have failed to establish irreparable harm.

24   　　　Defendants' arguments regarding irreparable harm fail for two additional reasons. First, to

25   obtain a stay, Defendants must show that they will be irreparably harmed during the time it takes for

26   an appeal to be litigated. Even assuming the Solicitor General decides to appeal, *see supra* Section

27   III, Defendants cannot establish injury based on any delay caused by the time needed to appeal when

28   they have not yet even filed that appeal. Second, Defendants cannot show irreparable harm from

complying with this Court's final judgment, because, as described above, they are not complying with it.

**V.    The Court Should Make Explicit Findings Regarding Defendants Having Waived Arguments Not Raised in their Stay Motion**

The Federal Rules of Appellate Procedure require a party seeking a stay pending appeal to move first in the district court, and on appeal require the applicant to provide "any reasons given by the district court for its action." Fed. R. App. Pro. 8(a)(2)(ii). In their cursory motion, Defendants offer no argument regarding the following issues, none of which was before the Supreme Court when it stayed this Court's postponement order: (1) the differences between relief under Sections 705 and 706; (2) the statutory consultation requirements; (3) the extensive new evidence establishing pretext; (4) all arguments concerning the Haiti vacatur; and (5) concrete evidence concerning why Defendants would be irreparably injured absent a stay.

Defendants' failure to address these issues is particularly concerning because, in another TPS case in this district, Defendants recently raised arguments for the first time during stay briefing that were never briefed during the merits phase of the case, and additional new arguments on appeal. *See NTPSA v. Noem* ("*NTPSA II*")*,* Case No. 25-4901, ECF 13.1 at 12-13 (describing new jurisdictional arguments raised for the first time in stay briefing). Plaintiffs anticipate that Defendants may do the same here. Accordingly, Plaintiffs respectfully request that, if this Court does reach the merits of Defendants' motion, it either hold that Defendants have waived any arguments not made in their motion, or direct Defendants to provide supplemental briefing addressing all the arguments they intend to make in support of a stay on appeal, so that Plaintiffs and this Court have a fair opportunity to address Defendants' arguments in the first instance.

**VI.    Even if a Stay Were Warranted, It Should Not Extend to TPS Holders Who Already Received TPS-Related Documents**

Finally, even were this Court to find a stay pending appeal warranted, any stay should not apply to the Court's order to the extent it protects TPS holders who received TPS-related documents under the January 17, 2025 extension of Venezuela's designation and the July 1, 2024 extension and redesignation of Haiti's designation *prior to* DHS's publication of the respective termination

decisions for each country. *See* Dkt. 162 (granting Plaintiffs' motion to postpone the effective date of the Venezuela vacatur as to this subset of TPS holders in light of Supreme Court order); Dkt. 279 at 42-43, 47, 54 (holding that Secretary "clearly" exceeded authority "by effectively cancelling TPS documentation that had already issued"). Defendants did not appeal this Court's order granting relief to this subset of TPS recipients, nor did they defend their decision to strip Haitian and Venezuelan TPS holders of already-issued documents in opposition to Plaintiffs' motion for partial summary judgment. Dkt. 199. To the extent Defendants now seek to stay the Court's order as to that group, that request should be denied as both waived and unwarranted.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion for a Stay Pending Appeal, without prejudice to re-filing at a time and in a manner consistent with this Court's rules and the law governing stays pending appeal. Alternatively, it should deny the motion on the merits as Defendants have made no showing of likelihood of success or irreparable harm. The Court should also hold that Defendants have waived all arguments not made in their motion, or direct Defendants to provide supplemental briefing addressing all the arguments they intend to make in support of a stay prior to issuing any ruling. In the event that the Court issues a stay, it should not apply to limit the rights of TPS holders who already received TPS-related documentation prior to the Secretary's challenged actions.

Date:  September 9, 2025

Respectfully submitted,

NATIONAL DAY LABORER
ORGANIZING NETWORK


  /s/ *Jessica Karp Bansal*
Jessica Karp Bansal
Lauren Michel Wilfong (*Pro Hac Vice*)
NATIONAL DAY LABORER
ORGANIZING NETWORK

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Emilou MacLean
Michelle (Minju) Y. Cho
Amanda Young
ACLU FOUNDATION
OF NORTHERN CALIFORNIA

Ahilan T. Arulanantham
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW

Eva L. Bitran
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA

Erik Crew (*Pro Hac Vice*)
HAITIAN BRIDGE ALLIANCE

*Attorneys for Plaintiffs*

1

## CERTIFICATE OF SERVICE

2        I hereby certify that on September 9, 2025, I caused the foregoing to be electronically filed

3    with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing

4    (NEF) to all counsel of record.

5

6                                                    NATIONAL DAY LABORER ORGANIZING
                                                     NETWORK
7

8                                                    /s/ Jessica Karp Bansal
                                                     Jessica Karp Bansal
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28