**PAGES 1 - 24**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Eumi K. Lee, Judges

NATIONAL TPS ALLIANCE, et al.,      )
                                    )
          Plaintiffs,               )
                                    )
v.                                  ) **NO. 3:25-CV-01766-EMC**
                                    )
KRISTI NOEM, et al.,                )
                                    )
          Defendants.               )
_____)

San Francisco, California

Tuesday, June 24, 2025

<u>**TRANSCRIPT OF PROCEEDINGS (via Zoom videoconference)**</u>

<u>**APPEARANCES:**</u>

For Plaintiffs:
                    ACLU Foundation of Northern California
                    39 Drumm Street
                    San Francisco, California 94111
          BY:  **EMILOU MACLEAN, ATTORNEY AT LAW**

                    National Day Laborer Organizing Network
                    1030 S. Arroyo Parkway, Suite 106
                    Pasadena, California 91105
          BY:  **JESSICA K. BANSAL, ATTORNEY AT LAW**

                    UCLA School of Law
                    35 Charles E. Young Drive East
                    Box 951476
                    Los Angeles, California 90095
          BY:  **AHILAN T. ARULANANTHAM, ATTORNEY AT LAW**

(Appearances continued on following page)

REPORTED REMOTELY BY:  April Wood Brott, CSR No. 13782,
Official United States Reporter

**<u>APPEARANCES (continued):</u>**

For Defendants:

> DOJ-CIV
> Office of Immigration Litigation
> P.O. Box 868 Ben Franklin Station
> Washington, D.C. 20044
> **BY:    SARAH L. VUONG, ATTORNEY AT LAW**
> **WILLIAM WEILAND, ATTORNEY AT LAW**

**Tuesday - June 24, 2025**                              <u>**1:00 P.M.**</u>

<u>**R E M O T E   P R O C E E D I N G S**</u>

---o0o---

**THE COURTROOM DEPUTY:**  This court is now in session, the Honorable Edward M. Chen presiding.  Court is calling the case National TPS Alliance, et al. versus Noem, et al., Case Number 25-1766.

Counsel, please state your appearance for the record, beginning with the plaintiffs.

**MS. BANSAL:**  Good morning.  Jessica Bansal for the plaintiffs.

**JUDGE CHEN:**  All right.  Thank you.  Good morning -- or afternoon, Ms. Bansal.

**MS. MACLEAN:**  Good afternoon, Your Honor.

**MS. BANSAL:**  Apologies, Your Honor.

**MS. MACLEAN:**  Emi MacLean, also for the plaintiffs.

**JUDGE CHEN:**  All right.  Good afternoon, Ms. MacLean.

**MR. ARULANANTHAM:**  Good afternoon, Your Honor.  Ahilan Arulanantham, also for the plaintiffs.

**JUDGE CHEN:**  All right.  Good afternoon, Mr. Arulanantham.

**MS. VUONG:**  Good afternoon.  Sarah Vuong for the defendants, and I'm here with William Weiland.

**JUDGE CHEN:**  All right.  Thank you, Mr. Weiland, Ms. Vuong.

As you can see, I've invited Magistrate Judge Kim, who is tasked with discovery in this case, and I thought it would be useful because we're going to be talking about a number of matters that relate to the status of the case and scheduling questions.  So she was kind enough to make herself available.

The first matter at hand is the -- was the motion for compliance with court order and the wording of the website that appears, from what I can see now, to have been resolved for now; is that correct?

**MS. BANSAL:**  Yes, Your Honor.  We heard from Ms. Leon and Jane Doe, our declarant, that they have both received their jobs back as of yesterday.  We believe the corrected website language has resolved the issue.

**JUDGE CHEN:**  Great.  All right.  Well, I'm glad to hear that.  I preferred not to intervene.  I know that there were issues that the Government raised about whether this court has the jurisdiction or the power to sort of quote, "micromanage," close quote, matters.  I won't have to face that.

I will say that I think it's obvious that if there is any kind of error or misstatement in a public-facing website of the defendants, that if it were not in compliance with this court order, that would be highly problematic.  But I'm not going to say anything more than that.  Let's hope that we can keep things on an even keel here.

So I appreciate the Government's changing of the language, and it appears to have had the effect that the plaintiffs were concerned about.  So thank you.

I do want to discuss the timing and the status of discovery and make sure that the discovery issues can be accommodated in the scheduling that we have.  I think currently the reply briefs from the plaintiffs are due actually within days, June 27th.

But there are some outstanding discovery matters, and maybe I should turn it over to Judge Kim to perhaps bring us all up to date into what the status of these matters are.  Some late-breaking developments -- I know there was an issue about the Government's attachment of one or more exhibits to its opposition to summary judgment, and some of which were labeled privileged under the deliberative process privilege, others by the attorney-client privilege.

But it's my understanding from the last filing that was just received that the one document that had attorney-client privilege is now acknowledged not really to be part of the -- privileged by the attorney-client privilege; is that correct?

**MS. VUONG:**  That's what the Government has submitted.  Yes, that's correct.

**JUDGE CHEN:**  Okay.  So what does that leave -- I'll call it the sword/shield issue that's been raised by the plaintiff.  Are there any documents now that fall into the

category of a privileged document that this court has deemed privileged that could raise the issue of sword/shield?

**MS. MACLEAN:**  Your Honor, if that is directed to Plaintiffs -- is that --

**JUDGE CHEN:**  Yes.

**MS. MACLEAN:**  -- question directed to Plaintiffs?

**JUDGE CHEN:**  Yes.

**MS. MACLEAN:**  That issue, it's our contention -- and I haven't fully gone through the cases that are cited in the Government's filing, but our contention is that their mere assertion that that document is not privileged, where it is marked "privileged" on its face and where there's multiple other items that are withheld on the privilege log of the exact same document that are being withheld as privileged, and where the Government has asserted in the privilege log that agency counsel are communicating and providing comments on the document basically the same justification that they're asserting to withhold many other documents as attorney-client privileged -- so the fact that they're relying on that one document as justification for a central point that they make in their filing and are now trying to assert that it is not attorney-client privileged, we, you know, respectfully assert that that does not resolve the issue and would -- are still concerned and seek a finding that they have waived attorney-client privilege over a limited -- over limited

subject matter where they are discussing that document.

That's essentially what Plaintiffs seek here.  There's a number of documents -- there's a number of emails, about 20 emails, where -- emails and attachments where government officials are circulating two email chains, that document and discussing that document and making determinations about the rationale of vacatur of TPS, relying on that document and the fact that they are relying on that document in their opposition but not providing the full context of the document is concerning for Plaintiffs.

And we believe that does raise the sword and the shield issue which is at the center of, you know, considerations of subject matter waiver.

**JUDGE CHEN:**  So the sword/shield question arises because of Judge Kim's ruling and my affirmance of that, that the deliberative process privilege is not the one at play. We're talking about the one that is still active is the attorney-client, and you are still asserting that there is still a waiver in particular to about 20 emails that then discuss the document that was presented in question?

**MS. MACLEAN:**  Yes.  There's essentially two email chains.  Excuse me, Your Honor.  Basically it is our view, based on a review of the documents that we've seen and the privilege log, that the Federal Register notice vacating TPS for Venezuela was drafted over a weekend, and the agency, over

that weekend, was circulating, you know, various communications.

And many of those communications -- it seems like two chains of emails -- include that document as an attachment, and it's a document from the prior administration, where, according to the privilege log, agency counsel are involved in making representations regarding the -- you know, whether the timelines for the 2021 and the 2023 Venezuela designations should be overlapping or distinct.

And ultimately the agency vacated TPS for Venezuela in part based on an assertion that the previous administration's actions led to confusion, and they've relied in their opposition on this document to make that justification.  That is the one document that they are citing.

It is one of two exhibits they have attached to their opposition, and it is clearly demarcated as attorney-client privileged, and it has expressly withheld exact duplicates of that document as attorney-client privileged.  And now we believe that they are asserting that it is not attorney-client privileged after we have raised the concern about the fact that they're withholding other documents based on the same justifications.

And so, you know, it's our view that there still should be subject matter waiver notwithstanding the Government's assertion belatedly after the filing and after we've brought

this to their attention that it is not attorney-client privileged, all evidence to the contrary, you know, notwithstanding.

**JUDGE CHEN:** All right. So there's the question of whether or not a waiver still pertains, given the sequence of things that have happened here and the nature of the documents at issue -- I just want to make clear we're talking about attorney-client waiver, and it's specifically with respect to about 20 emails in two email chains that discuss this document in substance, because this was a document that was -- originated during the prior administration, correct?

**MS. MACLEAN:** Yes.

**JUDGE CHEN:** All right. Well, since Judge Kim is, in the first instance, charged with, I think, this issue, I'm going to turn this proceeding for the moment over to you, Judge Kim, to see how you think we should proceed or if you have any questions of --

**JUDGE KIM:** Okay. I do have a couple of questions. So for the Government, so I understand the Government's position that this was wrongfully labeled as attorney-client privileged; is that correct?

**MS. VUONG:** Yes, Your Honor. And if I could, in response to Ms. MacLean's telling of how these events have transpired, this document was turned over because the Court ordered us to turn over all the deliberative process privileged

documents.  There is a label on top, but on that specific document, we did not assert attorney-client privilege.

The reason we relied upon it is because it has been turned over to Plaintiffs.  Plaintiffs' story assumes that we purposefully did not assert an attorney-client privilege over one specific document such that we could later then get this one document in with our motion for summary judgment.  And that really doesn't make any sense, if you look at the timeline.

The documents -- the document productions all went very quickly.  We had attorneys going through for the Government reviewing the documents.  Different calls were made that this one document was turned over.  It's not as if we cherry-picked one document to withhold our attorney-client privilege on and then used it in our filing.

JUDGE CHEN:  What is in the privilege log with regard to this document?  In other words, are there drafts of this document, or are there documents simply discussing this document?

MS. VUONG:  I do not -- well, I think the document itself is a draft.  It's not a final document.

JUDGE CHEN:  This is Docket 199-2.  This is Exhibit 1 to the opposition to the summary -- motion for partial summary judgment.

MS. VUONG:  Exactly, Your Honor, and it was filed -- we filed it the first time without the edits -- sorry -- the

comment bubbles, I guess, and the errata was filed with the comment bubbles.

**JUDGE KIM:** Okay. And who are the comment bubbles by?

**MS. VUONG:** The comment bubbles appear to be by -- from USCIS individuals from -- I believe it's SCOPS or OPS -- from policy individuals within USCIS.

**JUDGE KIM:** And by any lawyers?

**MS. VUONG:** No. We don't see any lawyers on the draft document itself.

**JUDGE KIM:** Okay. Okay. I will take a look at it then. Thank you.

**JUDGE CHEN:** All right.

**MS. MACLEAN:** Your Honor, if I may --

**JUDGE CHEN:** Yeah.

**MS. MACLEAN:** -- just add one quick --

**JUDGE KIM:** Sure.

**MS. MACLEAN:** -- point here?

**JUDGE CHEN:** Yeah.

**MS. MACLEAN:** It really raises some serious questions about the defendants' privilege log in its entirety if they're asserting that there's no agency counsel on this document where multiple duplicate copies of this exact document are currently withheld as attorney-client privileged documents, and the item -- and the entry in the privilege description says agency counsel are involved in the communications and the editing of

that document, so --

**JUDGE KIM:**  Let me ask the Government this question: So is it the same version of the document that's in the privilege logs that the plaintiffs are pointing out, or is it a different version of the document?

**MS. VUONG:**  I'm going to have to go back and check on that, Your Honor.  I think some of them are the same.  I don't believe all of them are the same.

**JUDGE KIM:**  Okay.  I need an answer to that, because I want to know if they are the same, why are they still in the privilege log?  If they're different, how are they different? And maybe I'll have to look at them in camera as well.

**MS. MACLEAN:**  We've looked at the metadata for the documents, and they appear to be identical.

**JUDGE KIM:**  I see.

**MS. MACLEAN:**  I mean, there are other documents that are not identical, but there appear to be five other documents that are identical, withheld with a justification that agency counsel are providing comments.

**JUDGE KIM:**  Okay.  Thank you.  I appreciate that.

**JUDGE CHEN:**  So just so I understand, Ms. MacLean, what you're looking for then is disclosure of the 20 or so emails at this point?

**MS. MACLEAN:**  Yes, Your Honor.  I mean, there's agency counsel who may have been involved, along with policy

personnel, in discussing this document and using it as justification for the Secretary's decision, and then they have filed this document for exactly that purpose as the sole support for a central position that they're taking, and they're not producing the documents where they are discussing that in that context.

And it's our position that that limited category of information, where they're discussing, you know, the concerns related to consolidation, should be disclosed. At this point, we've identified those 20 documents, which are in those two email chains.

**JUDGE KIM:** And for the Government, you said that 199-1 -- 199-2 was the earlier version. What's the docket number for the corrected version that was filed with the comment bubbles? Do you know what -- if you could let me know, that would be helpful.

**MS. VUONG:** I can let you know --

**JUDGE KIM:** Okay.

**MS. VUONG:** -- but I don't know that offhand.

**JUDGE KIM:** Okay. I'm looking at the docket, and I just don't see it, so.

**MS. VUONG:** I believe it's listed as errata. The entry would have been "errata," so it should be --

**JUDGE KIM:** Okay.

**MS. VUONG:** -- shortly after.

**JUDGE KIM:** Oh, I see. Okay. Wait. You know what? I found it.

**MS. VUONG:** Okay.

**JUDGE KIM:** I think I found it.

**JUDGE CHEN:** All right. So besides -- if I understand, besides the sword/shield question with respect to this particular document and the possible, or at least asserted, waiver, of about 20 emails or so, what else is it that is in dispute or needs to be turned over? I had the impression that there's still a fair amount of things outstanding, or is that...

**JUDGE KIM:** We still have some discovery matters that have not been resolved on -- the plaintiffs have argued that the Government has not produced appropriate documents. There's still a question about 25 attorney-client privileged documents that I'm looking at in camera, and there's a proposed order that the plaintiffs submitted at my request to talk about how to address what the plaintiffs perceive as the deficiencies. And the Government has responded to that proposed order.

**JUDGE CHEN:** Okay.

**JUDGE KIM:** Based on the schedule that I gave them.

**JUDGE CHEN:** So I asked that question because, given the immediacy of the pending reply brief, it appears that it's not going to be possible to resolve all those disputes and then have the production of whatever is ordered, if any, to be

completed and reviewed in time.  Is that -- and I take it that's -- that the plaintiffs are looking for additional time to file a reply to take into account the resolution and obtaining of additional documents?

MS. BANSAL:  Your Honor, we were looking for an additional three days, if that's possible, while leaving that hearing date as July 11th.  We're very concerned about, you know, the harm that our clients are experiencing every day, and we don't want to push the hearing, but we believe three additional days would go a long way on the reply.

JUDGE KIM:  And let me just say that, from my perspective, I'm not sure if I'm going to be able to address all these issues and order the Government and give them enough time to respond to all of the questions that you've asked.  In other words, on the issue of the additional searches, and also, we also have the presidential communications privilege issues.

So I want to make sure that if you say three days, you really mean three days.  You may not have all these issues resolved before the time your reply brief is done.

MS. MACLEAN:  Your Honor, we're amenable to a short -- or Your Honors.  We're amenable to a short extension of time to file a reply to permit Your Honor to resolve the open discovery disputes and for the Government to reply to the extent possible.  But as my cocounsel identified, we are really concerned about any delay in the schedule.

So we understand that we might not be able to get all of the relevant information, unfortunately, in part due to what we identify as deficiencies in the production to date, but we feel to serve the interests of our clients in light of the stay that the Government sought at the Supreme Court and the extraordinarily expedited schedule that they -- you know, for which the, you know, vacaturs and terminations entered into effect, you know, we're not at liberty to seek additional time.

**JUDGE KIM:** Okay. I understand. Thank you. I just wanted to give you a fair warning that even if I said the Government has to do what you asked them to do, probably not going to happen by the time that you file your reply brief.

**MS. MACLEAN:** Yeah. We defer to the Court about what schedule would allow for sufficient additional compliance without interfering with the exact hearing date that currently exists.

**JUDGE CHEN:** Well, so if you want to keep the hearing date of July 11th, there's not a whole lot of room there, because we need time, the Court needs time, to go over it. So I guess that's the question.

Does it make more sense to build in a little bit of time to allow Judge Kim to resolve what she's got to resolve and for those discovery matters to be accommodated and, at the same time, move the reply date and, I guess, the hearing date to a date that does work?

And still in time -- I mean, your concern, obviously -- there are some events that are going to happen, certainly, by September 9th or September 10th with respect to the 2021 group. And I guess the Haitian situation is a little bit up in the air.

Is there -- so keeping that in mind, is there a difference between hearing this matter, let's say, on -- two weeks later, either the 25th or maybe even August 1st, if this court, aware of the impending deadlines, is able to then issue a decision prior to the September time frame?

**MR. ARULANANTHAM:**  Your Honor?

**JUDGE CHEN:**  Yeah.

**MR. ARULANANTHAM:**  Would it be possible for us to confer briefly if -- or I don't know if we could do that at the end or we could do it now, in the middle or something, before we answer?

**JUDGE CHEN:**  Yeah.

**MR. ARULANANTHAM:**  And I thought the same.  There's those two deadlines, the 2021 cohort, and there's the Haitian group.

In addition, you know, our view is that if we were fortunate enough to win the summary judgment motion, that would reinstate protection as to the 2023 cohort.  You know, obviously maybe they would seek a stay of that too.  But that's our -- so we're thinking about all three groups with respect to

this timing question, and obviously the harm to the last group is ongoing and happening every day.

But that being said, if it would be permissible, maybe the three of us could talk about it briefly before --

**JUDGE CHEN:** Yeah. Do you want us to just put this hearing on hold and you can come back online after? I mean, there are breakout -- I don't know how to -- I don't know how to manipulate that, so --

**JUDGE KIM:** Not in the public Zoom.

**JUDGE CHEN:** Oh, not in the public. That's right. So you have to --

**MR. ARULANANTHAM:** We can call each other. We can call each other, Your Honor.

**JUDGE CHEN:** All right. Why don't we --

**MR. ARULANANTHAM:** Should we do that now, or --

**JUDGE CHEN:** Yeah. Why don't we go ahead and take a quick break and -- what do you need? 10 minutes? 15 minutes? 10 minutes? Because I have other matters that -- or we could reconvene. I have some other CMCs that I've got to deal with at 1:30. We could come back on at 2:00 o'clock. Would that make sense?

**MS. VUONG:** Just, Your Honor, for our purposes, I have to leave to pick up my son from daycare at 5:15.

**JUDGE CHEN:** Okay.

**MS. VUONG:** Eastern Standard Time. I am available

tomorrow.

**MR. ARULANANTHAM:** We could do ten minutes, or even less, Your Honor, if that would -- if that would make it possible for government counsel to --

**JUDGE CHEN:** Okay. Why don't we reconvene in ten minutes. I'll just shut my camera and stuff down for now.

**MS. VUONG:** Thank you, Your Honor.

**JUDGE CHEN:** And we'll wait for you to come back on. Thanks.

**THE COURTROOM DEPUTY:** Court is in recess.

(Recess taken.)

**JUDGE CHEN:** Okay. We're back on the record.

**MR. ARULANANTHAM:** I think our preference would be to push it by one week and do the 18th and hope that perhaps the Court could also give us a few days, or -- and give Judge Kim as well. So if you took a little bit of time out of the two weeks, you know, like what we were proposing earlier, so I don't know what that would be, but whatever, you know, would be viable for the Court to allow you to obviously prepare, as you always do, but still give time for the discovery process to play out.

If we can't do that, unfortunately, the following week, we also -- we're also looking at your schedule also, and we're currently scheduled to be out the following week. We can, you know, adjust --

**JUDGE CHEN:** I am available the 25th.

**MR. ARULANANTHAM:** Oh, okay. So yeah. We could -- I suppose we could adjust that if needed, but we're currently all also scheduled -- we're all scheduled to be out that week. But, you know -- but we -- yeah. You know, we could, if needed, you know -- or the 1st would -- the 1st definitely would work for us as well. I think our preference is the 18th. Our second preference is the 1st, I think.

Or is that -- or not? Is that right? I don't know. You all -- yeah.

Our second preference is the 1st, and the 25th only is last resort, I think.

**JUDGE CHEN:** All right. Well, I'm going to move it to the 1st. I think that to do it on the 18th really -- I need, you know, two weeks because it's important enough. That really only gives you an extra five days or something, and given Judge -- we've got Judge Kim's tasks ahead of her too, and to get it meaningfully done, frankly, I think this is important enough that I think the record ought to be complete.

I understand there's risk as time goes on, and people's rights are being lost; on the other hand, I think it's important that we get this right. So I'm going to set it for the 8th, and we can set it for --

**JUDGE KIM:** For August 1st, Judge Chen?

**JUDGE CHEN:** I'm sorry. August 1st, yeah. And can we

set that in the morning, 10:00 o'clock.  And the reply brief, I will give you two weeks before.  That will be the 18th.

**MS. VUONG:**  Actually, Your Honor, if we're pushing this, are we able -- we gave up our reply brief in order to try to accommodate the schedule with the July 11th hearing and to provide kind of -- to accommodate with Plaintiffs where we realized that we had not produced completely.

If we're pushing this out, can the Government recoup that reply brief then?

**JUDGE CHEN:**  That would be a consecutive reply brief or a simultaneous reply?

**MS. VUONG:**  Consecutive.

**JUDGE CHEN:**  Well, I need to get the -- whatever the last brief, I need to get it by the 18th at the very latest, and if I give the Government a chance to reply, we've got to allocate about two weeks for this process to unveil.  So I guess if the plaintiffs file by the 11th -- it's two and a half weeks from now.  Is that enough time?

**MS. MACLEAN:**  Your Honor, we would just note -- I mean, we defer to the Court in terms of figuring out the scheduling, but just to remind the Court, the reason that there was this accommodation that Ms. Vuong is talking about with regard to the defendants not having a reply was because of discovery deficiencies that they had identified, and the reason that we are needing to push back now is also because of

discovery deficiencies that need to be resolved.

And so to the extent that the hearing date is intended to allow for the discovery process to play out and to have access to the documents that we need for a more complete record, we would be concerned about then cutting into that discovery time. But we defer to, you know, both Judge Kim and Your Honor about, you know, what timing is necessary to resolve the discovery disputes.

JUDGE KIM:  I don't think July 11th is going to give enough time for everything to play out.  That's my concern.

JUDGE CHEN:  I see.  So what would you suggest, Judge Kim?

JUDGE KIM:  That the Plaintiffs' response is due July 18th.

JUDGE CHEN:  All right.  So you --

JUDGE KIM:  But I defer to you, Judge Chen, on whether the Government gets a reply or not.  I wasn't involved in those earlier communications.

JUDGE CHEN:  Okay.

JUDGE KIM:  So I'm not sure what that was about.

JUDGE CHEN:  And I need two weeks between.  So I'm just going to leave the schedule as it is and require the plaintiffs to file their brief by the 18th, and we'll just --

MS. VUONG:  So then the Government does not get a reply brief?

**JUDGE CHEN:**  Correct.

**MS. VUONG:**  And just for the record, I would note that the Government had asked for extensions because of the accelerated schedule, the issues that we foresaw happening with discovery.

**JUDGE CHEN:**  Okay.  Well, given the situation now and given what Judge Kim has indicated, it takes time for her to resolve some of these matters and then get back with you all.  By the time we get that done, I think I'm being told that it's not realistic to have time for both the Plaintiffs' brief and then a response of a reply brief by the Government.  So I've got to go with what I'm given at this point.

So the 18th for the plaintiffs, hearing on August 1st at 10:00.

Judge Kim will also look at this issue that has just arisen, the sword/shield question, whether there's been a waiver or not.

Right, Judge Kim?  I'm sure that's in your --

**JUDGE KIM:**  Yes.

**JUDGE CHEN:**  -- court.

**JUDGE KIM:**  Yes.

**JUDGE CHEN:**  And maybe we'll have a little guidance.  I guess the advantage of holding it a little bit later is at least we'll be able to hear what the Ninth Circuit is thinking about, because your argument is scheduled for the 16th; is that

right?

**MS. VUONG:**  Yes, Your Honor.

**JUDGE CHEN:**  I don't know if we'll get a decision by then, but maybe -- you know, we might get some indication, so.

**MR. ARULANANTHAM:**  Your Honor, just so you know, the Ninth Circuit just asked us for supplemental briefing on whether there's appellate jurisdiction over the appeal of the 705 order.  Just, you know, so I would -- I mean, who knows what will happen, but I'm not sure I would count on --

**JUDGE CHEN:**  Okay.  I won't count on it.  But if there is anything there, that might be helpful to us.  So we'll see.

All right.  So we'll memorialize this scheduling in a brief scheduling order.

Anything else we need to talk about?  All right.  Thank you, everyone.  Appreciate it.

We'll go on to the next case.

**MR. ARULANANTHAM:**  Thank you, Your Honor.

**JUDGE CHEN:**  Thank you.

**THE COURTROOM DEPUTY:**  This hearing is concluded.

(The proceedings concluded at 1:37 P.M.)

---O0O---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


DATE:  Friday, September 26, 2025

_____

April Wood Brott, CSR No. 13782