**Pages 1 - 49**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

NATIONAL TPS ALLIANCE, et al., )
)
        Plaintiffs, )
)
  VS. )      **NO. C 25-01766 EMC**
)
KRISTI NOEM, in her official )
capacity as Secretary of )
Homeland Security, et al., )
)
        Defendants. )
)

San Francisco, California
Friday, December 5, 2025

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:
        UCLA SCHOOL OF LAW
        385 Charles E. Young Drive E. Box 951476
        Los Angeles, California  90095
     **BY:  AHILAN ARULANANTHAM, ATTORNEY AT LAW**

For Defendants:
        U.S. DEPARTMENT OF JUSTICE
        Civil Division
        P.O. Box 878
        Ben Franklin Station
        Washington, D.C.  20044
     **BY:  JEFFREY M. HARTMAN, ATTORNEY AT LAW**

Remotely Reported:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
        U.S. District Court - Official Reporter

**Friday - December 5, 2025**                                    **11:57 a.m.**

                              **P R O C E E D I N G S**

                                    ---000---

          **THE CLERK:**  This court is now in session.  The Honorable Edward M. Chen presiding.

     Court is calling the case National TPS Alliance, et al. versus Noem, et al., case number 25-1766.

     Counsel, please state your appearance for the record beginning with the Plaintiff.

          **MR. ARULANANTHAM:**  Good morning, Your Honor, Ahilan Arulanantham for the National TPS Alliance for the Center of Immigration Law and policy at UCLA.

          **THE COURT:**  Good afternoon or good morning, Mr. Arulanantham.

          **MR. HARTMAN:**  Good morning, Your Honor, Jeffrey Hartman appearing for the Government.

          **THE COURT:**  All right.  Good afternoon, Mr. Hartman. And if I get disconnected, don't be concerned.  I will try to get connected.  Right now I have got a spinning circle and something weird in the screen, but as long as I can hear you, that's the main thing if you can hear me.

     So, thank you for your accommodation with respect to my schedule.  So, let me ask Plaintiffs in this case, there are sort of three problems that -- it seems to me that you have to address.

One is a jurisdictional question of whether this Court has been divested of jurisdiction by virtue of the appeal that's been filed.  And second, if there is jurisdiction, what vehicle is available given the time -- the alleged untimeliness of the filing, which was more than 28 days after the notice of appeal and judgment.  And then what about would the relief you seek contravene or be inconsistent with the Supreme Court's stay of the final judgment in this case?

So, maybe we should start with the jurisdictional question.  I know there are cases that say there are ancillary things that a court can do like award prejudgment interest maybe or fees or something like that.  But if you are dealing with something that is the center of what is before the appellate court by virtue of the notice of appeal, doesn't that divest this Court of jurisdiction?

**MR. ARULANANTHAM:**  Thank you, Your Honor.  I think if we had sought declaratory relief in the summary judgment motion so that the Ninth Circuit had some obligation or even the possibility that it would opine on the availability of declaratory relief, then we might have that problem, you know, but the rule as I understand it from the -- both Ninth Circuit and Supreme Court cases about it is that the district court is divested of jurisdiction if the relief sought would materially alter the status of the appeal because you cannot -- that's from *Southwest Marine* --

**THE CLERK:** Sorry -- I'm sorry to interrupt you, Counsel. If you can hold on one moment, it appears we lost the Judge.

(Pause in proceedings.)

**THE COURT:** Sorry about that. I don't know what's -- I'm going to need a new computer here. So, let's -- you were explaining how -- why you think there is jurisdiction in this case, and you said the Ninth Circuit and then you cut off.

**MR. ARULANANTHAM:** Okay. Got it. So the rule from the Ninth Circuit is that the relief -- this Court is divested of jurisdiction if the relief that we are seeking here would materially alter the status of the appeal.

That's the language used in *Southwest Marine* -- *NRDC v. Southwest Marine*, which is the case we cite in footnote 1 of our opening brief. And another thing the Ninth Circuit says in the *Mayweathers* case, which is another one we cite, is that this Court can't adjudicate anew the merits. That's another case we cite in that same footnote. It's about the PLRA.

Both of those are decisions upholding district court jurisdiction to grant further relief after a case is on appeal. In *Southwest Marine* they are actually clarifying and modifying the injunction really, and in *Mayweathers* it is extending -- temporally extending the injunction.

And the first thing that I said, which hopefully you heard, Your Honor, was if we had sought declaratory relief,

that that was before the Ninth Circuit now, and the Ninth Circuit was going to opine on the availability of declaratory relief in our case, then I think it probably would be barred or at least we would have a much harder argument.

But, here, the Ninth Circuit doesn't have anything involving declaratory relief before them, and we had been careful not to argue anything about the merits in this motion. So, we haven't argued, for example, a new theory for APA relief or even to modify or in any way alter the scope of this Court's ruling as to any of the issues that are already before the Ninth Circuit.  So, that's the first reason.

Two other things I want to say on the divestiture jurisdiction point, this is a common law rule that was later codified into the Federal Rules -- I mean, federal common law kind of rule.  And it was designed to prevent confusion -- that's what a number of the cases say -- confusion arising from the overlap of issues.

What would happen if this Court and the Ninth Circuit had the same issues in front of them at the same time?  That's the kind of purpose of the rule, and we seem -- that seems to completely not be a problem here.  So, if you look beyond even the sort of text of what the Ninth Circuit decisions say about this and look at the underlying reasons, as I said, there is no way that anything this Court is going to say in this case is going to alter what the Ninth Circuit is looking at.

And, conversely, whatever the Ninth Circuit does, you know, if they say there is no jurisdiction because of 1254(a) -- the TPS statute -- that obviously would take out the declaratory relief here.  If they rule in our favor and apply on TPS(a)(1), then the merits issues which are sort of the predicate issue of this motion -- it is just based on what you already held earlier, Your Honor, then, you know, those could remain in place.

And then the third thing, quickly I want to say on this subject is, we cite in our reply brief cases where there are appeals of declaratory relief rulings -- this is *United Teachers* is one of them.  The other one is the case *Bolt*.

A court orders declaratory relief.  The other side appeals that.  And then while the appeal is pending, the party -- the plaintiff comes back and asks for other relief.  And those cases say that that is permissible, and you can get the other relief from the district court while the declaratory relief appeal is pending.

Those are very close to our case.  You know, they are not exactly a hundred percent on point because here we got the other relief first and now we are seeking the declaratory relief, but they are very, very close to on point.  So, I don't think there is any reason why if you can get -- you know, declaratory relief, they appeal that and then you can seek other relief and that's fine, why you can't do it the other way

which is what we are doing it here.

**THE COURT:**  Well, that assumes, for instance, that asking for declaratory relief, this Court would not re-visit, for instance, the merits issues.  And the possibility that this Court could -- I'm not saying it would but the Court could revisit -- that would create a potential conflict, wouldn't it? I mean, if it changed the underlying basis occasioned by re-visiting or visiting the question of declaratory relief.

**MR. ARULANANTHAM:**  Yeah, but -- yes, Your Honor, but wouldn't that also have been true in, for example, *NRDC* when they came to seek clarification of the injunction.  You know, if the Court had had some reason to deviate from law of the case, disregard its, you know, 70-page ruling explaining very clearly why it came out the way it did, then that presumably would have upset the whole applecart.  But you presume that all those doctrines apply and it's foreclosed.

Similarly, with *Mayweathers*, they are just saying this PLRA injunction that you have that is going to otherwise expire, they say please extend it.  Is it going to expire of its own force?  And the court -- yes, the court extends it.

You know, of course, there the court said, No, I changed my mind actually.  I think this injunction is illegal now and I'm getting rid of it.  But that doesn't -- maybe it is because that possibility is barred by law of the case or because it is remote or, you know, maybe if you did that, there wouldn't be

jurisdiction or if you did that, there would be.  I don't know but that seems to be equally true of the other cases.

**THE COURT:**  Let me ask the Government:  What would the impact be -- the concern is, you know, putting the case with courts at issue as -- as has been stated -- I think maybe Justice Jackson did it in dissent -- you know, one court stepping on the toes of the other; but if the only thing that is done here is to amend the judgment to add declaratory relief based on everything that the Court found with respect to setting aside the agency action under the APA, how would that affect the appeal -- how would that interfere with the appeal?

**MR. HARTMAN:**  Well, our view is that it shouldn't interfere with the appeal because the Court has been divested of jurisdiction over that question.

**THE COURT:**  I'm saying if the Court is not -- for a moment we pretend there is no divestment and the Court went ahead and issued declaratory relief but didn't change anything on the merits.  Said nothing.  Just entered declaratory relief just based on the previous findings.  How would that interfere with the Court of Appeals' current appeal?

**MR. HARTMAN:**  Well, I don't know because then the Government would be litigating two appeals raising the same merits issues, and I think that's why the divestiture rule draws a bright line to avoid confusion and the waste of resources that would arise if the Court could issue piecemeal

relief with respect to the same underlying APA claims in this case.

Plaintiffs explicitly are relying on the APA claims that the Government appealed in the Court's judgment, and they make that clear on page 1 of their motion.  Quote, Plaintiffs' request for declaratory relief under 28 U.S.C. 2201, a subset of the APA issues in this case, the three claims on which the Court has already granted summary judgment regarding TPS for Venezuela.

And we don't think there is a way for the Court to evade Rule 59.  It is pretty clear that the time for the Plaintiffs to alter or amend the judgment was within 28 days.  That deadline passed on October 3rd, the same day that the Supreme Court stayed this Court's judgment.

And there are cases like *Southwest Marine* -- I take my friend's point that that case involved a junction -- and the rule at 62(d) has an express provision authorizing district courts to take care of their injunctions during the pendency of appeal and to modify them.

But, conversely, the Ninth Circuit is very clear in cases like *In Re: Padilla* that the Court is not free to, quote, alter or expand upon the judgment during the pendency of the appeal.

And, likewise, the Supreme Court in *Osterneck*, the Court can't entertain a motion unless it is wholly collateral to the judgment in the main cause of action.  And, here, we know that

the claims aren't collateral because they are expressly predicated on my friend's APA challenges with respect to the Venezuela vacatur and termination and their cases -- the Fifth Circuit case, *United Teachers Association*, is readily distinguishable because those cases were instances where the district court had entered a declaratory judgment at the outset.  That was the judgment; that there was some form of declaratory relief.

And then 28 U.S.C. 2202 authorizes the District Court to basically take care of declaratory relief during the pendency of the appeal.

So, there is express statutory authorization to do that where the declaration is the initial judgment, but those cases don't stand for the proposition that the Court can enter some form of judgment, have the Rule 59(e) deadline go by, and then later enter a separate declaratory judgment because then there would be two judgments presumably going to the Ninth Circuit raising the same issues about the jurisdictional bar, about the merits of these APA claims, about the applicability of 1252.

**THE COURT:**  All right.  Well, let me ask Plaintiffs' Counsel, what would happen mechanically if this Court granted your motion?  Would it enter a new judgment?  Would it amend the judgment?  Would there be another appeal from that that then would have to be consolidated?  What procedurally happens?

**MR. ARULANANTHAM:**  I think it's -- I want to answer a

few things my friend said, but let me answer your question first, Your Honor.  I do think it is a new judgment.  It is not an amendment of the judgment.  The Government could certainly appeal that, but the merits questions are not open.  They are not open here, and that was precisely our point.  We did not make even a single argument about the merits, and I don't think they are open because they were already decided by this Court; and they are now on appeal in the Ninth Circuit.

And if there was anything we were doing that was expanding the scope of the merits in any way, then we would have a serious jurisdictional problem.

**THE COURT:**  But you would have two cases on appeal overlapping merits.  One --

**MR. ARULANANTHAM:**  Exactly.  Exactly.  And we do not have that, just -- instead what we have is a situation where this Court would be ordering further relief, which is expressly authorized by the statute.

For example, to take back here, let's talk about *Southwest Marine* or *Mayweathers*, these cases.  Let's say the Government had appealed the second order, right, or the second clarification of the injunction or the extension of it in *Mayweathers*, in cases like that.  If they had appealed that, the second appeal wouldn't -- it wouldn't be open in the second appeal to argue that the injunction -- the original injunction was not valid.  That's the issue in the first appeal.

The issue in the second appeal is just about, you know, other issues.  And the threshold question is:  Does it materially alter the status of the appeal?  And if it doesn't -- if what we have sought does not materially alter the status of the appeal, then it is permissible.

Now, let me just quickly say just a couple of other things, Your Honor.  The *Padilla* case which Mr. Hartman cites, *In re: Padilla*, you know, there the district court order massively enlarged the judgment in a way that took out basically huge chunks of the first appeal.  It is a bankruptcy case.  I think they just discharged the whole -- the posture was a bit hard to follow.  It basically discharges the whole bankruptcy.

And so, you know, it makes almost irrelevant, I think, the whole threshold question -- all the questions that are -- I mean, all the questions that are on appeal at the beginning. So, I think certainly if that were the case here, you know, then that would present different issues.

The other thing is, Your Honor, when we are talking about what the text of the statute authorizes -- what 2201 says.  I'm talking about the declaratory judgment act -- he was saying he thinks the *United Teachers* case from the Fifth Circuit is distinguishable because there you have a textual authorization for the relief -- 2201 says if there is an actual controversy, then declaratory judgment is authorized.  And I quote, whether

or not further relief is or could be sought.

That's --

**THE COURT:** Well, but that's -- but that assumes -- that's what the initial court -- it encompasses or it imbues the initial court with that discretion, with that function. That doesn't answer the question what happens if there has been appeal taken from a final judgment and whether you can sort of enlarge that judgment or add something to that after the fact. I don't see how 2201 addresses that question.

**MR. ARULANANTHAM:** Like I said, I was just saying it doesn't say anything about the timing. That's my only point. You know, we are not -- I will get to the questions about altering or amendment of the judgment. The Rule 59 question is a distinct question.

**THE COURT:** That is distinct. Let me ask you this -- I mean, the other way to approach this is do a 62.1 indicative ruling. I mean, that's the safest thing to do. The Court could say if -- on remand this Court would, in fact, enter and add declaratory relief to its judgment and let the Ninth Circuit decide whether there is a jurisdictional need or not. And if so, they can -- if they think there is no jurisdiction, they can send it back for limited remand. Enter the amended judgment and then take it back up again.

**MR. ARULANANTHAM:** I think from a practical standpoint, we would not favor that because what we want to do

with this judgment is go into other courts where the Government is detaining and deporting our clients -- the people who are the same parties in this case -- and make the argument in those courts that the question whether the TPS -- January 17th TPS extension is lawful or not has been decided in this case by this Court and that that is binding just on that -- the threshold legal question about whether the January 17th extension is in effect or not.

And so, you know, if you sort of wait for the indicative ruling -- I guess I don't know exactly how the 62.1 procedure would work in the context that you are describing, Your Honor.

THE COURT: I think the way it works is the Court indicates -- it could do several things. One thing it could do is say it would indicate it would do X, and then the Ninth Circuit would be free to demand remand back to this Court so it would have clear jurisdiction to enter whatever judgment it would enter and there would be your judgment. And then it resumes the appeal or something, I guess. It is like a time-out.

MR. ARULANANTHAM: I see. Well, I think if it would be okay with Your Honor, we would love the chance just to explore that a little bit carefully because to be honest, we haven't looked at that as a third -- as another alternative here. Maybe if Your Honor will entertain it, submit something very early next week on that question if -- it sounds like if

you are not persuaded by what the rest of what we are trying to say because maybe that would assure some of the effect. Yeah, I don't know. I guess I haven't looked at it so I don't know enough about whether that would be --

THE COURT: Let me ask the Government if it has a view on 62.1.

MR. HARTMAN: I'm of the same view as my friend. I haven't had a chance to look at it or think through the --

THE COURT: Okay.

MR. HARTMAN: So, if the Court was inclined to go that route, we would ask for supplemental briefing.

THE COURT: All right. Let's switch gears for a moment and talk about the Rule 59, Rule 60. Even if there were jurisdiction, it is clearly untimely, right, to move under Rule 59 to amend the judgment. What authority does the Court have?

Rule 60(b) is for extraordinary circumstances, usually when there's something beyond the control of the party and there is not -- you know, there was no opportunity, for instance, to, you know, seek the judgment earlier because of changed facts or something.

What authority does this Court have -- if it has jurisdiction, under what rule could this Court act? So, I'm directing that to the Plaintiffs' Counsel.

MR. ARULANANTHAM: Our position and the presumption on which we brought the motion was that we are not seeking to

amend the judgment, and the case that they cite, the Ninth Circuit case -- *U.S. ex.rel. Hoggett* -- defines when a motion is a motion to amend the judgment. And what it says is -- I'm going to quote again -- a motion that does not request a substantive change of mind by the court is not a Rule 59(e) motion to alter or amend the judgment.

That's why our position is this is a new judgment. It is a different judgment and a different form of relief, just like a party might seek declaratory relief, win it. And then whether or not there is an appeal, they might later come back and seek injunctive relief. I mean, that's the whole purpose of the declaratory judgment act. So, too you might do it the other way and first win set aside relief under the APA or postponement and then later come back and seek declaratory relief.

It is the controlling test for what counts as a motion to amend in the Ninth Circuit that says you have to request a substantive change of mind, and we are not. We are obviously not requesting Your Honor to change your mind about anything.

So, yeah, I mean, I agree that it would be untimely. We haven't -- maybe we could try to make a case for Rule 60(b) but that wasn't what we were trying to do here. We just think it is a free-standing separate form of relief that is authorized, you know, by statute and we can seek it.

THE COURT: What is the authority to -- is it just

common law or inherent authority for the court after it has entered a final judgment -- because there was a final judgment for purposes of appeal -- to then, you know, enhance that by getting additional relief.

MR. ARULANANTHAM:  Well, I think the text of 2201, which, as I said earlier, makes no mention of -- I mean, explicitly says it doesn't matter whether or not you've sought other relief.  It is that.  And then, you know, it is the cases -- some of which we have already been talking about and there are others that we cited in our reply brief where -- and it is routine in trademark and IP cases -- obviously not routine in this situation -- but I think it is actually nothing unusual at all about a party seeking declaratory relief and then later coming back and seeking another form of relief.

And our view is if you can do that, there is no reason why you can't do it the other way around.  Obviously, it is novel. Nobody normally would do this.  If you win the set aside, normally there wouldn't be a need to go seek the declaratory judgment afterward.  It is all produced by the anomaly of the SCOTUS stay and all of that.

But when you have a novel situation like this, our view is you apply the text of the statute; and the text of the statute says that it is a separate -- you can seek it without regard to whether or not there is other relief that is or could be sought.

The *Center for Biological Diversity* case, which we also cite, Your Honor, it says declaratory relief is separate remedy to be awarded when it is warranted.  And the Supreme Court said -- that was citing the Supreme Court case *Powell*, which said it is independent of whether other forms of relief are appropriate.

So, it's not amending the judgment because that judgment was for the APA relief.  It is just a new judgment granting a different form of relief, which the statute makes available.

THE COURT:  So what -- do any of the cases you cite involve a situation where there has been a final judgment and then -- without having to utilize Rule 60 or Rule 59, there has been an amendment -- or further judgment, however you want to put it?

MR. ARULANANTHAM:  So, the cases -- I don't recall if the declaratory judgment cases where the declaratory judgment comes first, whether they call that final or not; but obviously the label wouldn't control anyway.  They are final; right. They are final in that they have issued a declaratory judgment, which says one side wins and the other side loses.

So, in my view, like, a declaratory judgment is always -- I mean, it's always final.  There's also no -- I believe there is no preliminary declaratory relief available.  We didn't --

THE COURT:  No.  I meant where there has already been a final judgment and then -- in this case and then somebody

comes in and asks for another judgment.  I mean, there has been one final judgment in the case.

MR. ARULANANTHAM:  Yes, Your Honor.  As I said, the cases where, you know, like *Teachers* and *Bolt* and the other cases that we cite where a declaratory judgment is granted, in those cases -- and then the parties come back -- the winner comes back and now asks for an injunction, I think all of those cases are cases where the declaratory judgment is final.  And so, in that sense it is a final judgment.

I also think if we leave the declaratory relief part aside and go back to our cases about divestiture for a minute, Your Honor, like, those are final judgments too; right.  An injunction is entered in *Mayweathers* and in *Southwest Marine*, those are final judgments.  It doesn't mean you can't come back to the court and ask for other things.

I mean, I'm sure -- I have litigated -- now, we are not talking about declaratory relief cases, but I have litigated -- and I'm sure Your Honor has had cases before you cases where you win a judgment and there is a dispute about something involving the enforcement and then you come back and you seek more.  You know, if it is bad enough, you seek training or you seek supervision of some kind or data recording.

The fact that you have a final judgment doesn't mean that everything is sort of necessarily closed off completely.  And so, to me the declaratory relief statute just seems like doing

similar to what courts do in other contexts like that all the time.

THE COURT:  Well, 2201 or is it 02?

MR. ARULANANTHAM:  Both.

THE COURT:  Kind of states the obverse; that is, if you have declaratory relief, the statute expressly says that, perhaps, you know, further necessary or proper relief based on that declaratory judgment.  So, that assumes the predicate that there has been -- you can sort of expand or enforce or do something with the declaratory judgment.  Here, we don't have that.  So, it is the inverse.  The statute -- there is no statute that expressly addresses the converse situation there.

MR. ARULANANTHAM:  I acknowledge that, Your Honor.  And, as I said earlier, I think the reason for that is probably because people who win an injunction or who win a set aside under the APA probably don't very often come back and then ask for declaratory relief.

THE COURT:  Is there a reason why declaratory relief wasn't sought in the original along with the injunction?

MR. ARULANANTHAM:  We thought we didn't need it.  I mean, we thought if we won the set aside, you know, that would get us the relief that we needed.

THE COURT:  All right.  Let me hear from the Government.  This is not a Rule 59 motion.  It is not a Rule 60(b) motion.  It is really -- and I don't know what

you -- I'm not sure there is a statute but there is almost as a matter of logic or common law or something that the judge -- Court can always enter a further judgment or another judgment that's consistent with the prior judgment.  What's your view of that?

MR. HARTMAN:  So, our view is the Court has been divested of jurisdiction over the underlying APA claims.  As Your Honor knows, the declaratory judgment act, it isn't a separate standalone basis for subject matter jurisdiction.  So, my friend's APA claims are riding on the underlying APA claims that the Government has filed a timely appeal of and that are under consideration.

And the 2201 declaratory relief, Rule 57 brings that in and expressly states that the declaratory judgment act is subject to all of the rules of federal and civil procedure. And so, that makes it subject to Rule 58(a) where the declaratory judgment needs to be set apart in a separate written judgment, and it also makes it -- pardon me, Your Honor -- subject to Rule 59(e) and the time constraints.

And the Government has seen this situation before in the *Haitian Evangelical Clergy* case which involved the same AD TPS designations as this case, and the case number is 25-CV-01464. It was before Judge Cogan in the Eastern District of New York. And there, the Plaintiffs got an APA set aside, and then they moved under Rule 59(e) to also get declaratory judgment.

And the difference between that case and this case -- which Judge Cogan didn't provide declaratory relief -- but in that case the Plaintiffs timely sought the relief, and then the Government's time to appeal under FRCP 4 ran from the time that Judge Cogan addressed the timely motion under Rule 15(e) for declaratory relief.

In their motion, you know, quote, plaintiffs ask the Court to amend the judgment to include the following declaration, and then they have three points with respect to the Haiti TPS determination.

And so, we really see that as the proper operation of the rules, and we think that Judge Cogan was both correct to deny declaratory relief because it is an unnecessary and in our view it is forbidden by 1252(f)(1)'s prohibition, but also Judge Cogan and the plaintiffs in that case sought that relief within the window that Rule 59(e) gives this Court to alter, amend its judgment to bring in any form of relief.

And we think that what's happening here is the Supreme Court stayed this Court's judgment expressly those parts of the judgment with respect to the Venezuela TPS vacatur and termination.

And so, this is Plaintiffs' attempt, in our view, to impermissibly circumvent the Supreme Court's stay of this Court's judgment of those merits issues, which in any event this Court would have been divested of jurisdiction to consider

the Government's timely appeal.

THE COURT:  Well, you are now talking about the last issue which I want to raise.

MR. HARTMAN:  Yes, sorry.

THE COURT:  Let me -- before we go to that question, if this Court were to deny the instant motion, is that an appealable ruling?  Let me ask the Plaintiffs that.

MR. ARULANANTHAM:  I would assume so.  We would really prefer not to do that.  But, yes, I think it is probably appealable because -- for the same reasons that I think it doesn't overlap because it is a free standing question whether declaratory relief is available.  And by the time we litigate that appeal, lots of people will be detained and deported; but, you know, I rather get it first here and litigate it.  But, yes, I think it is appealable.

I just have two other quick thoughts before we move to the Supreme Court unless the Court has another --

THE COURT:  Well, I would like to -- I'm still trying to -- I struggle with what would be the authority, if it is not Rule 59 you are relying on, not Rule 60(b), not 2202, what is the authority to -- at this juncture where there has already been a judgment entered granting APA relief and now enter another judgment granting declaratory relief that's not within the normal time lines of Rule 59(e), what would be the authorities?  Is it common law or logic or what is it?

**MR. ARULANANTHAM:** Actually, I would say three things. I think it is 2201 because it says whether or not further relief is or could be sought -- declaratory relief may be granted whether or not further relief is or can be sought. I take your point, it doesn't explicitly say anything about the timing. That fact could certainly mean it doesn't matter what the timing is.

And then I would point to the authority of any court to issue further relief even after there has been a final judgment in situations like the ones that we were talking about, you know, like *Mayweathers* and *Southwest Marine* and *NRDC v. Southwest Marine*. Those, like I said, are just examples of probably -- you know, there must be dozens at least of cases where courts enter some kind of relief after the case is ostensibly over because they are doing compliance or modification or whatever it is.

I don't -- I don't think those -- I mean, those certainly don't have to happen in a Rule 59, and in my experience they have often not happened under -- I mean, I filed those not under Rule 60(b). They are just, you know, seeking further relief from the court.

And then the third thing I would point to is the cases that, as you say, are the obverse. You say they are under 2202. Your point is taken, Your Honor, but still there doesn't seem to me anything logically about why a court wouldn't be

able to do dec relief after other relief if you can do other relief after dec relief.  So, maybe that's the same as the 2201 point.

Just two other very quick things about this, Your Honor --

THE COURT:  Before you go onto that, you know, the *Southwest Marine*, one could read the authority as suggesting that Rule 62(d) codifies a more general principle that the Court has power to preserve the status quo that exists at the time of the appeal.  But, here, it is hard to see how -- and so, that's why sometimes an injunction might follow declaratory relief.  I don't know how a declaratory relief would preserve the status quo.

MR. ARULANANTHAM:  Yes, so, I thought about this, Your Honor.  I will say one thing super quick because it is such a quick point and then I will address that.  Your Honor's order was a partial judgment and you explicitly left, for example, the equal protection claim open.  You have stayed that now.  I think it is pretty clear if Your Honor decided to unstay it, if we made a motion, of course, we could litigate the rest of the equal protection claim.

So, and I don't know if that's relevant but it feels relevant, that it is a partial final judgment even though obviously we didn't contemplate this.  We were contemplating the equal protection claim.

To answer your question about the status quo,

Your Honor --

**THE COURT:** Remind me, did I certify under 54(b).

**MR. ARULANANTHAM:** Yes.

**THE COURT:** Is that --

**MR. ARULANANTHAM:** Yes.

**THE COURT:** Okay.

**MR. ARULANANTHAM:** It is -- yeah, I think -- yes, it is.

**THE COURT:** Okay.

**MR. ARULANANTHAM:** You certified this for that issue as appealable even though the rest of it --

**THE COURT:** Okay.

**MR. ARULANANTHAM:** The "preserves the status quo," Your Honor, I looked at some of the cases about that and a lot of them use that language, "preserves the status quo."

Other ones, like the Ninth Circuit case, which we don't cite, but I think it is cited in *Padilla*, which they cite or maybe it is cited in *Southwest Marine*, it was a case called *McClatchy Newspapers*.  It says that the district court can modify in order to achieve the same enforcement purpose as the original order.  It is a Ninth Circuit case.

And they use those two interchangeably.  I think actually a lot of cases in this area seem to use those concepts interchangeably, the status quo meaning what you ordered; right.  And so, that's why, yeah, it is the same enforcement

purpose.

And even if you look at some of these other cases -- like the modification of the order in *Southwest Marine* or the continuation of the PLRA injunction in *Mayweathers* -- what the Court is doing is kind of continuing doing the same thing that the order was originally designed to do while the appeal is going up.

That's really odd here obviously because we have the stay. And I want to address that stay. I know that's the elephant in the room in a sense, the Supreme Court stays. But, you know, if you take those cases literally and look at the purpose of the rule, I mean, Your Honor's enforcement purpose was to give people their TPS rights; and obviously that's what this motion is trying to do in a much more limited way than the set aside order that we already won.

Now, you know, all of that is strange because of the stay; and the stay is not procedurally contemplated in any of these cases because it is so novel.

I do think if that's the way you are thinking about it -- that Your Honor can issue an order that preserves the status quo meaning what the enforcement purpose of the Court's prior order was -- then it is permissible. And, yeah, so, you know, but I acknowledge it is -- the reason why we didn't sort of talk about this more is because it is a little bit weird because what is the status quo in this case is a little bit

hard to figure out.  I mean, they are the appellant.  It is their appeal but obviously, you know, the order is stayed.

So, let me get to that point about the Supreme Court opinion, the Supreme Court orders.  And I will start with the lead, which is, like -- the bottom line is all of this is, we understand, novel.  We recognize that.  We must be the first people ever to seek declaratory relief after winning a set aside, I would imagine is my guess.  We are probably the first people to do that.

But that's because what's happening now with these stays is novel, and everybody is trying to understand how the legal rules operate in this very odd world where we have won and they are the ones appealing; but the world is allowing them -- the Court is allow them to do kind of what they want.

And so, I think my bottom line -- I can explain why.  The bottom line is, I think Your Honor should apply the law as it is written with the Ninth Circuit cases and the -- all the controlling cases say on this, and that's the Texas 2201.  *Hoggett* that says a motion to amend the judgment is only a motion that asks you to change your mind in a substantive way, and the other cases we have been talking about.

Now, you know, the SCOTUS stays, just two things are important about them.  One is neither of them stayed all of the relief that Your Honor had ordered.

Then the second one it was explicit.  Haiti is carved out.

The Government didn't even seek it, and they didn't seek review of Your Honor's order awarding -- they didn't seek a stay, I should say.  They have sought review -- they didn't seek a stay of Your Honor's order governing people who have already gotten their documents.

And, you know, in the first time in the 705 motion, they wrote a whole separate paragraph suggesting that those people should be carved out.  I don't know how -- this is now, like, months ago.  But, you know, Your Honor, there were two groups of people.

**THE COURT:**  Yes.

**MR. ARULANANTHAM:**  I think it is important to state at the outset, it is not like they have completely shut everything that's happening in this case.  There have been these certain kind of carve-outs.

Second thing is a big part of their arguments in the Supreme Court both times -- as to both the scope of relief and the harm to the Government -- both times was that the orders here are overbroad because they are protecting every TPS holder and they are not only protecting the people who are, A, parties to this case -- because they said it should only be limited to parties in the case -- and, B, people who actually face injury, which in their view means you have to, I think, be facing detention and deportation or maybe some other terrible thing and in their view just losing their sort of -- generally being

a TPS holder doesn't count.  And, obviously, we disagreed with all that; but, you know, they won their stays.  So, what we are seeking now is in line with that conception of the scope of relief.

This order, if we won it, it would be useless until somebody went into another court because they had -- they could establish standing in that court because they have been detained or they are facing deportation, and they would be able to say, I'm facing imminent harm and one of the arguments that I want to make is I should still be entitled to TPS status and that issue has already been litigated in this other case.

And then the second thing, Your Honor, is in that world it would not be preclusive as to Plaintiffs in this case, people who are parties to this case, which would be NTPSA members, our clients, the individual named clients and then the NTPSA members.

And so, people who are not members, everybody who should have benefited from the set aside order Your Honor issued, they are not protected.  It's only people who are parties to this case.  Only if you are a party to this case is it actually preclusive, you know, in the future litigation.  That's the way the declaratory relief works.

So, in that way, it is conforming to one of the arguments that they made for why the stay should be granted.  Now, you know, that may not have been the reason why the Supreme Court

granted the stay. There might not be one reason. They don't say anything. It is six people, they may have had six different reasons.

But all Your Honor can do is apply the law that has been given. That stay order does not bar declaratory relief, and one of the reasons the Government gave for it, if that's the reason the majority of them accepted, then they might not seek to stay this ruling.

So, that's why I think -- you know, we took this very seriously. We don't believe this is -- of course, we are trying to get the most relief we can for our clients, but this is not inconsistent with the Supreme Court stay order. Absolutely is not. It is a different form of relief that was not before them, and there is a legal theory for why it may be appropriate and why they wouldn't stay it.

**THE COURT:** All right. Let me hear the Government, number one, going backwards for a second, the fact that only a partial final judgment was entered and I apparently certified in my discretion Rule 54(b) so that an immediate appeal can be taken on the set aside judgment, the case is not over. There is not a final, final judgment.

Does that not inform -- does that have any impact on the ability of this Court to provide for additional, for instance, declaratory relief?

And then, two, what about on the stay without a clear

understanding of what the stay was based on, aren't there grounds that on which the Court could have granted the stay that didn't necessarily apply to the issuance of declaratory relief?

**MR. HARTMAN:**  Sorry, Your Honor, I missed the last question.

**THE COURT:**  The last question is would it necessarily be inconsistent to grant declaratory relief in the face of a stay since the stay could have been based on a number of things that are kind of particular to that set aside -- you know, Section 706 APA judgment -- that may not apply to declaratory relief for some of the reasons your opponent stated but also, you know, this whole question of 1252(f)(1) does it extend. You know, that question has been left open -- it may -- you know, the Court could say it doesn't apply to 706.  It does apply to 706 set aside but it doesn't apply to declaratory relief or it could say it applies to everything.  We don't know.

So, is it necessarily inconsistent for the Court to issue declaratory relief, assuming we get past jurisdiction, all those other hurdles, would it necessarily be barred by the Supreme Court's stay?

**MR. HARTMAN:**  Sure, Your Honor.  So, to pick up with the Rule 59(e) point -- I'm looking at Your Honor's judgment at 280 -- and the Court granted Plaintiffs' APA claims with

respect to the Venezuela vacatur -- Venezuela termination, Haiti vacatur, pursuant to FRCP -- Rule 58, entered final judgment.

And so, we think *Griggs* and the divestiture rule draws a bright line to those three merits questions. This Court has been divested of jurisdiction. Those are the same merits issues that Plaintiffs' motion for declaratory relief is predicated on.

And so, we think, you know, the fact that it's a partial final judgment doesn't affect the divestiture and the rule that this Court cannot go back and look at the merits of those claims to issue additional relief.

And I would be remiss not to mention cases like *Hoggett*. The Ninth Circuit merely held that a motion for a stay before the district court didn't constitute a Rule 59(e) motion. And so, it didn't extend the litigant's time to seek appeal in that case.

And so, it really is far afield from the expansive ultimate relief that the Plaintiffs seek here in their untimely motion for a declaratory judgment.

And with respect to the Supreme Court stay, we do think that the Court cannot go back and provide any additional relief with respect to the APA claims, which is the subject matter jurisdiction that the Court has to look at the vacatur and the termination with respect to Venezuela.

And looking at the Supreme Court stay order, it doesn't parse relief.  It just says the September 5th order of the United States District Court for the Northern District of California in this case is stayed as to the Venezuela vacatur and Venezuela termination, any disposition of the Government's appeal and then ultimately if cert is sought, the resolution of that petition.

So, the Supreme Court's stay applies to this Court's entire judgment, the scope of the judicial review bar, the APA claims, the 1252(f)(1) issue.  And so, I think this case is a lot like the *D.V.D.* case where the district court there had entered an injunction; a few days later had entered an order with respect to relief basically enforcing its injunction; then the Supreme Court entered a stay of the injunction, and the district court went back and said, okay, my injunction has been stayed but not my order with respect to relief of the same claims and then granted the Plaintiffs in that case relief. And when that case went back to the Supreme Court, they said that's inconsistent with our --

**THE COURT:**  Was that injunctive relief in that second round?

**MR. HARTMAN:**  It was injunctive relief that was stayed by the Supreme Court in the second - I think they couched it as a motion for relief, Your Honor, and I think the same principal --

**THE COURT:**  What did the court -- remind me.  That was Judge Young, I believe.  What was it that he ordered the second time around that got countermanded?

**MR. HARTMAN:**  I believe it was hearings with respect to third -- I don't want to misstate the facts.  It was due process with respect to people that were going to be, I believe, removed to third countries, and it was about how much notice and process you needed to provide them.

**THE COURT:**  Okay.  But it actually sought to restrain or somehow control government action?

**MR. HARTMAN:**  Correct.

**THE COURT:**  Which is different from just declaring without any enforcement.

**MR. HARTMAN:**  Well, I think Your Honor's judgment, you know, with respect commands the Government to follow the judgment.  We respect that, which is why we needed to go to the Supreme Court to seek a stay of the judgment.  And once the Supreme Court stayed that judgment, we think cases like *D.V.D.* will illustrate that the Court can't go back to the same underlying merits issues and then issue another form of relief notwithstanding the Supreme Court having stayed that form of relief on a previous order.  So, we don't see how this case is distinguishable from *D.V.D.*

**THE COURT:**  What happens -- if the Court were to issue declaratory relief notwithstanding all the objections that you

have, what practical import would that have?  I mean, there is no set aside.  That has been stayed pending, you know, further -- it wouldn't require the Government to do anything or not do anything, would it?

MR. HARTMAN:  With respect, I don't think that's right.  I mean, Plaintiffs intend to use the declaratory relief to go to other courts and get the relief that they would have got had the judgment been stayed.  They would use it to get work authorization.  They would use it to get out of detention.  And so, they would get the same relief that the Supreme Court stayed when it stayed this Court's judgment.

We think that's impermissible in both because it violates 1252(f)(1) in our view -- I recognize that's an open question with the Supreme Court -- but also because it improperly circumvents the Supreme Court's stay of this Court's judgment.

And I think the practical effect is that the Government would be litigating the same issues it attained a stay from the Supreme Court and numerous district courts.  And in our view that's improper.

THE COURT:  Well, so, it would be -- in the first instance, it wouldn't require anything, but the implication it would if it were deemed binding, have legal effect in a subsequent action.

MR. HARTMAN:  I think that's right.  I think that's illustrated by the fact that my friends, they didn't see a

declaratory relief with respect to Your Honor's Haiti APA claims, and there was a recent new determination with respect to Haiti; but at the time this motion was filed, Your Honor had the last word with respect to the Haiti determination.

And so, I think that pretty well illustrates the fact that Plaintiffs here seek relief with respect to Venezuela only because they need to circumvent the Supreme Court's order. And if it wasn't about that, I don't see why my friends wouldn't have sought declaratory relief with respect to the Haiti designation.

**THE COURT:** If the Court were to issue declaratory relief, is that something that could be subject to -- I have never heard of this -- but subject to a stay, either by this Court or a higher court? I understand staying injunctive relief or set aside relief. Can you stay -- is there such a thing as staying declaratory relief?

**MR. HARTMAN:** So, in our view, Rule 58(a) requires this Court to set declaratory relief aside in a separate judgment. And so, there would be, I guess, a second judgment on all the same issues we are already litigating in the Ninth Circuit, and the Government could seek a stay of this Court's judgment if that's what they did. But for all the reasons we have discussed in our papers, we think that's improper.

**THE COURT:** All right. Let me hear from opposing Counsel, any response.

**MR. ARULANANTHAM:** Yes, Your Honor. You know, *D.V.D.* is very different. It is seeking to enforce an injunction, and it is the same form of relief -- it is the same form of relief limited to the set of people who were already in, I believe, Yemen. But, you know, the only difference between the kind of big injunction in *D.V.D.* and the follow-on is that these people were already halfway there because they were stuck in an interim third country which was not the final destination.

The Supreme Court described it as an order to follow specified procedures with respect to -- I'm quoting -- follow specified procedures with respect to these rules about third country removals. That's completely different. This is not the same form of relief. That's the whole point.

It doesn't require the Government -- not just it doesn't require them to do anything, but all it is doing is creating this new form of relief, which is more limited than the form of relief than we obtained before and that has been stayed and had this different effect that we have been talking about. So, you know, that order really kind of sat in contempt. That's what the underlying -- it wasn't styled that way, but that was sort of what was kind of motivating how it was litigated. So, I think it is very different. It is not the same relief.

The only other thing I would say is, you know, when he says, we agree, it is a new judgment; but I don't think it's right to say that it's a new judgment that involves all the

same issues that are involved in the appeal -- in the case that's already on appeal.

I mean, if they had argued in this motion -- in response to our motion, if they had said, Oh, no, you should deny this motion because we have actually complied with the APA or because 1254(a) -- you know, the TPS tripping statute -- bars this -- you know, the merits that you -- we would all would say, like, no, that's the law of the case; you have already decided it; that's not on appeal, and that's not at issue in this motion.

And that's just sort of the whole point. This is a different thing. It's not the same thing as what's already pending on appeal. It's a separate form of relief that we are allowed to get based on the same ruling that we have won before. And I think that's both why there is jurisdiction. It is why it is not a motion to alter the judgment. It's a new judgment, which he just said. It is a separate judgment. And it is why also it doesn't violate the Supreme Court -- you know, the Supreme Court stay even in spirit, and it obviously doesn't violate it in letter.

THE COURT: The judgment you seek is your proposed judgment. So, it would say nothing about distinguishing for 1252 purposes set asides and declaratory relief. It is just simply --

MR. ARULANANTHAM: The January 17 extension is in

effect because the termination and vacatur were unlawful for the reasons set forth in the other -- you know, the prior order, and I'm declaring that pursuant to 2201.

THE COURT: What is the timing of the current appeal as -- has the briefing schedule, has that begun? What's happening with that?

MR. ARULANANTHAM: The argument is the week of January 12th, and I don't think they have given us a day; but it's in that week is my memory of it.

THE COURT: It has already been -- the briefing of the merits have been completed?

MR. HARTMAN: Yes.

MR. ARULANANTHAM: Yes. But, of course, Your Honor, that order -- that decision isn't going to have any operative legal effect because that's the appeal of the 706, and it is still stayed even after the result of the Ninth Circuit decision regardless of what that decision says.

THE COURT: So, if I were to enter a judgment, that would institute -- that would trigger yet another appeal then?

MR. ARULANANTHAM: If the Government chooses to appeal it, you know, I don't think it is pertinent to this motion but I don't necessarily agree with them that -- well, I think that they can certainly get an appeal, but it doesn't mean that they can get -- that they can get a stay. And part of the reason for that is because any harm to the Government would play out

in other proceedings.  And so, they would have to get stays of those.

This relates to something else he says.  He says it is the same relief.  I mean, there is a huge relief between the set aside, which sets the rule for everyone, and a rule that requires people to go litigate in other cases where they have Article III standing and then win separate orders only as to those particular individuals is a far, far cry from the same relief.

**THE COURT:**  I don't disagree with that but the question about if there were a stay, why couldn't the Government seek -- if I were to issue declaratory relief, why couldn't the -- rather than wait for every individual case to be filed thereafter and seeking individual stays, why couldn't the Government seek a stay of the declaratory relief judgment, which is a predicate for all these other potential future actions?

**MR. ARULANANTHAM:**  Well, if the state standard applies -- and I mean that literally because it is not clear what standard the Court is applying -- but if you take the words of the stay standard seriously, they can't show harm because it doesn't require them to do anything.

They could appeal one of the other orders.  So, you know, if there's a -- say we win a habeas petition based on the ruling that the January 17th extension is in effect -- you

know, which is what this Court's legal conclusion was -- they could appeal that.  And when that -- a ruling that actually -- you know, that's wrong or it doesn't have preclusive effect or something like that, I think that would be their way of -- in a case where they are actually suffering what they call harm to show it.

**THE COURT:**  Okay.  Let me ask the Government, what's your view of any potential stay?  If declaratory relief were granted here, how would that work?

**MR. HARTMAN:**  That's a determination that's up to the Solicitor General.  So, it is above my grade, Your Honor.

**THE COURT:**  I mean, who would make -- mechanically, is a stay sought in this case or would it be sought in subsequent cases where they tried to use a judgment or do you have any views on that?

**MR. HARTMAN:**  So, I guess my professional point is that getting declaratory relief on the same underlying claims is barred by the divestiture rule and *Griggs*.  And so, I want to make that point and preserve it.

To get to Your Honor's question, I think the Government, if authorized, would have the capability to appeal a judgment with declaratory relief -- it would be improper for all the reasons we have discussed -- but Rule 58(a) says that if you have a properly timed judgment, which we don't have here, it has to go in a separate judgment document.  That would trigger

the time to appeal in FRCP 4, and the Government would have the opportunity to appeal within the usual 60 days.

THE COURT:  And seek a stay of its effect?

MR. HARTMAN:  Yes, Your Honor.

THE COURT:  All right.  What I would like -- I would like to give the parties an opportunity -- but quickly -- to address the question of the indicative ruling possibility under Rule 62.1.  That might address and obviate potentially this whole question of divestiture of this Court's jurisdiction because a lot of times even when it has been divested, that's why a Rule 62.1 I think was enacted in order to allow the district court to say, well, wait a minute, some things have changed, I want to do something.  And then the appellate court can say, all right, if we know that this is happening, we could remand it -- I think it is still discretionary -- but could remand it and say, go ahead and do it so that we have -- but I'm not sure that applies here since there is already a final judgment.  Now, you are saying it is going to be heard in January, just in another three weeks or four weeks.  I didn't realize that thing had moved so quickly.

MR. ARULANANTHAM:  Again, Your Honor, it's not going to -- that ruling will not have any operative effect; right.

THE COURT:  Yeah, I guess, not.

MR. ARULANANTHAM:  I know we are pass the cert deadline, for what that is worth, on December 15th or something

like that.  So, the soonest this case would be heard in the Supreme Court is the October term.  October 2026 is the soonest this case is going to be in the Supreme Court.

THE COURT:  If I were to deny for either divestiture reasons or a lack of authority the ability to add on to the judgment here, enter a second judgment, would there be something to prevent the Plaintiffs from filing another action and just seeking declaratory relief?

MR. ARULANANTHAM:  I think because we sought it here -- I'm scared to say no because I don't want to foreclose -- but I think because it is the same parties and we sought it here, my just sort of intuitive civil procedure thought is, no.

THE COURT:  Well, let me ask the other question. Besides all the procedural matters, what's the harm to the Government in the Court entertaining a declaratory relief?  In other words, had the Rule 59 motion been made -- what is it, 40 days earlier on, whatever it is, October 3rd or whatever it is, October something instead of on, what, November, whenever this motion was filed, the 15th -- what's the harm -- I understand the rules are the rules and all that sort of stuff.

I want to hear from the Government.  What's the harm to the Government in sort of a 40-day delay in re-examining this question about additional relief?  Because it would have been okay under Rule 59 had it been filed by that deadline.  I think

it was October --

**MR. HARTMAN:**  October 3rd.

**THE COURT:**  -- October 3rd.  What's the prejudice -- it was filed looks like November 13th.  It was 40 days late -- 41 days late, what's the harm from that?

**MR. HARTMAN:**  I mean, I think the rules are the rules; and the purpose of the divestiture rule is to create clear lines of authority so that the Court of Appeals isn't exercising -- can grant jurisdiction with the district court over the same merits issues.

And I guess the underlying harm are all the reasons we think the Supreme Court stayed this Court's judgment to the Government in terms of its operation of the TPS statute, but in the litigation itself, I think the harm is that the Government expeditiously briefed its appeal -- it is a fully briefed appeal -- by the time we argue this case.

And the Government is harmed by -- would be harmed by having to brief another appeal that raises the same underlying merits issues with respect to the TPS bar and the APA claims that a declaratory judgment, which would be improper but would be predicated on.

And then also declaratory relief, as my friend just said, they would take to across the country and their members would use to sue the Government and prevent the Secretary from operating the TPS statute in the ways that we think is

permissible and why the Supreme Court granted the Government a stay of the judgment.

And so, in many ways this form of relief is the worst case scenario for the Government because it would be required to litigate in all of these new venues.  And the Court doesn't need to entertain that motion.  Judge Cogan identified the proper procedure; dealt with, like, a very identical request for declaratory relief after an APA set aside disposed of it under Rule 59(e), which is the proper procedure.

The Court has also been divested of jurisdiction, and we think the Court can't re-visit the same underlying claims in its judgment to issue new relief in light of the Supreme Court stay.  And so, we ask the Court to deny the motion.

**MR. ARULANANTHAM:**  Your Honor, I would just briefly say, like, if we knew the reason the Supreme Court had denied the stay -- I mean, had granted the stay, you know, that to me might be more compelling.  We don't know.  And if the Government hadn't made the argument that the problem -- one of the problems with this Court's order is that it grants universal relief and that TPS holders aren't harmed unless they are actually facing potential deportation, then maybe they would be able to make these arguments now.  They did say those things, and the Supreme Court didn't give any reasons.  And so, you don't know whether the declaratory relief that we are seeking here is actually inconsistent with the Supreme Court's

ruling.

**THE COURT:** Right.  Let me ask a different question. What -- the Ninth Circuit is going to rule on the set aside on the merits, raise all the issues.  Are there issues -- legal issues that would be raised by an appeal on declaratory relief based on the same findings, et cetera, et cetera that I had made that are different?

**MR. ARULANANTHAM:** Only the availability of declaratory relief, and that's the way we have litigated the motion.  We explicitly relied on this Court's prior decision. Any other argument that we would make would be waived.

The only argument is whether or not declaratory relief is available under these conditions, the argument that we are making before you now.  The Government is saying --

**THE COURT:** On the merits of declaratory relief, assuming you get over all the procedural barriers and divestiture of jurisdiction and all that sort of stuff, on the merits -- if the Court were to hear both appeals at the same time, would there be a hundred percent overlap or is there some difference on the merits?

**MR. ARULANANTHAM:** Well, the difference is all the arguments the Government is making now.  No.  The merits are exactly the same.  Just like in those injunction cases -- you know, *Mayweathers* and *Southwest Marine* and cases like that -- of course, the injunction -- the underlying merits arguments

against the first injunction if they were correct would also take out the second injunction.  It is the same exact thing.  So, there is not confusion.  There is no overlap.  There is nothing that Your Honor can say which is going to sort of cause the Government to rewrite its brief or anything like that.  It's all contained in the first appeal already.

THE COURT:  Was the -- so, I take it the issue of potential declaratory relief was not discussed in any appellate briefs?

MR. ARULANANTHAM:  Not at all.

MR. HARTMAN:  We pointed out in our reply brief that Plaintiffs waived declaratory relief when we addressed 1252(f)(1).

MR. ARULANANTHAM:  Yeah.

THE COURT:  All right.  Here is what I would like to do:  I would like you to submit something very quickly on the propriety or not of using -- if I were inclined to grant declaratory relief, to do so in an indicative ruling under 62.1, which would then leave it to the appellate court to decide whether or not to remand or not.

MR. ARULANANTHAM:  Yes, Your Honor.  Can I just ask if we are going to do that anyway, would you mind if we also very briefly -- you can set a page limit if you want -- but if we very briefly addressed *H.E.C.A.*, the Judge Cogan case, because my memory of that is that they were seeking a new federal

registry notice.  I didn't want to say that because I don't remember exactly what happened with that order fight or --

THE COURT:  I don't need that to tell me what the -- what actually happened there.  I don't need pages.  You know, just a paragraph on that.

MR. ARULANANTHAM:  Okay.  Okay.

THE COURT:  So, you know, let's do that.  I would like to get something by Monday actually, end of Monday and -- so, I can rule on it as quickly as I can to figure out what we are going to do here.  And then I will take it under submission.

MR. ARULANANTHAM:  Very good, Your Honor.

THE COURT:  All right.

MR. HARTMAN:  Thank you, Your Honor.

THE COURT:  Thank you, Counsel.  Appreciate it.  Thank you for your patience as well with all the technical problems.

THE CLERK:  Hearing is concluded.

(Proceedings adjourned at 1:08 p.m.)

---oOo---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:    December 18, 2025

_____

Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
United States District Court - Official Reporter