Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou H. MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Amanda Young (SBN 359753)
ayoung@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, MARIELA GONZÁLEZ, FREDDY JOSE ARAPE RIVAS, M.H., CECILIA DANIELA GONZÁLEZ HERRERA, ALBA CECILIA PURICA HERNÁNDEZ, E.R., HENDRINA VIVAS CASTILLO, A.C.A., SHERIKA BLANC, VILES DORSAINVIL, and G.S.,<br><br>Plaintiff,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 3:25-cv-1766-EMC<br><br>**SECOND SUPPLEMENTAL COMPLAINT**<br><br>**Administrative Procedure Act Case** |

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitran (SBN 302081)
ebitran@aclusocal.org
Diana Sanchez (SBN 338871)
dianasanchez@aclusocal.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

Plaintiffs hereby supplement their First Amended and Supplemental Complaint, Dkt. 250, under Rule 15(d) of the Federal Rules of Civil Procedure with the following allegations:

1. Secretary Noem's July 1, 2025 termination of TPS for Haiti did not go into effect on September 2, 2025 as planned due to court orders that set aside the February 20, 2025 "partial vacatur," thereby preserving Haiti's current TPS designation through February 3, 2026. *See Haitian Evangelical Clergy Ass'n. v. Trump,* 789 F. Supp. 3d 255, 273 (E.D.N.Y. 2025); Dkt. 279.

2. On November 28, 2025, Secretary Noem published a notice in the Federal Register terminating Haiti's TPS designation effective February 3, 2026. 90 Fed. Reg. 54,733 (Nov. 28, 2025). The notice purports to "supersede[]" the July 1 termination notice. It states that DHS is "newly announc[ing]" the termination of Haiti's TPS designation, which "[b]ecause of interference by a federal district court judge . . . is set to expire on February 3, 2026."

3. The "Reasons for . . . Termination" section of the November 28 termination notice repeats, nearly verbatim, the entirety of the "Reasons for . . . Termination" section in the July 1 termination notice, including its reliance on President Trump's executive orders and overbroad generalizations and stereotypes of Haitians relating to criminality.

*4.* In addition to repeating the reasons for termination provided in the July 1 termination notice, the November 28 termination notice includes several new paragraphs. Two address country conditions; one describes supposedly unlawful visa overstays by Haitian immigrants; and one addresses alleged criminal activity by an unspecified number of lawful permanent residents and one individual identified only as a "Haitian alien."

*5.* In contrast to the July 1 termination notice, which was based solely on the Secretary's conclusion that "it is contrary to the national interest . . . to permit Haitian nationals . . . to remain temporarily in the United States," the November 28 notice states both that "the Secretary has determined that there are no extraordinary and temporary conditions in Haiti that prevent Haitian nationals … from returning in safety" and that, that even if it were unsafe for Haitian nationals to return to Haiti, the Secretary would still terminate Haiti's designation as contrary to the national interest.

6. The Secretary did not consult with the State Department regarding country conditions in Haiti before deciding to terminate TPS for Haiti via the November 28 termination notice.

7. In or around March 2025, the State Department ceased providing country conditions information as part of the TPS periodic review process. *See* Exhibits in Support of Plaintiffs' Motion for Summary Judgment, Dkt. 176-22 at 1504_3; Dkt. 176-27 at 1524; Dkt. 176-28 at 2342, *Nat'l TPS All. v. Noem*, Case No. 3:25-cv-05687-TLT (N.D. Cal. July 7, 2025) ("*NTPSA II*").

8. Defendants did not conduct an objective review of country conditions in Haiti before deciding to terminate TPS for Haiti. Instead, they searched for "positive developments," 90 Fed. Reg. at 54,735, cherry picked to support the Secretary's "predetermined desire to terminate Haiti's TPS." Dkt. 279 at 57. For example, the termination notice relies on a United Nations article quoting the UN General Secretary as identifying "emerging signals of hope" for Haiti's future, but fails to acknowledge that the same article also quotes the General Secretary describing *current* conditions in Haiti as "a life-and-death emergency." 90 Fed. Reg. at 54,735 (quoting United Nations, "The people of Haiti are in a perfect storm of suffering,' warns UN chief," Aug. 28, 2025, https://news.un.org/en/story/2025/08/1165738).

9. Defendants' decision to terminate Haiti's TPS designation was based on new DHS guidance providing that "generalized crime/violence" are "not sufficient" to support a TPS designation based on extraordinary and temporary conditions. *See NTPSA II*, Dkt. 176-2 at 1693. This guidance reflects an unacknowledged and unexplained break with past practice, whereby generalized crime and violence *could* support a TPS designation based on extraordinary and temporary conditions. *See, e.g.,* 89 Fed. Reg. 54,484, 54,488-90 (July 1, 2024) (redesignating Haiti for TPS based in part on generalized crime and violence).

10. Defendants' decision to terminate Haiti's TPS designation was based on new DHS guidance providing that TPS periodic reviews should "[f]ocus on conditions described in the original designation," *NTPSA II*, Dkt. 176-2 at 1693, while disregarding intervening conditions, in an arbitrary and unexplained return to the "new rule" found unlawful during the first Trump

Administration. *See Ramos v. Nielsen*, 336 F. Supp. 3d 1075 (N.D. Cal. 2018), *vacated and remanded sub nom. Ramos v. Wolf*, 975 F.3d 872 (9th Cir. 2020), *reh'g en banc granted, opinion vacated*, 59 F.4th 1010 (9th Cir. 2023).

11.     Both the July 1 and November 28 termination notices identify supposedly high rates of Haitian nationals overstaying nonimmigrant visas as a factor supporting the conclusion that extending Haiti's TPS designation is contrary to the national interest. The November 28 notice asserts that "[o]verstaying the terms of the nonimmigrant visa is a violation of U.S. immigration laws," but fails to acknowledge that, under the July 1, 2024 redesignation of Haiti for TPS, Haitian nationals who had been residing in the U.S. since June 3 of that year—including pursuant to nonimmigrant visas—were eligible to apply for TPS, so would have had a lawful basis to stay in the country after their nonimmigrant visas expired. This error reflects Defendants' ongoing—and erroneous—assumption that TPS is itself illegal and that Haitians with TPS are in the U.S. illegally.

12.     The November 28 termination notice repeats the July 1 termination notice's assertion that the actions of one Haitian national (who is not reported to be a TPS holder) are indicative of "a broader risk posed by rising Haitian migration." It also newly makes the same claim on the basis of the deportation of an unspecified number of unidentified lawful permanent residents allegedly affiliated with Viv Ansanm, designated by the State Department as a terrorist organization, and the immigration arrest of one "Haitian alien" with alleged gang connections.

13.     Between July 1, 2025 and the present, Defendants have noticed six new TPS terminations. In all, since the second Trump Administration took office, Defendants have terminated TPS for every country that has come up for review, for a total of twelve termination decisions for ten countries (including two terminations each for Venezuela and Haiti).[1] Defendants' termination decisions repeatedly assert that foreign nationals can safely return to the

---

[1] *See* 90 Fed. Reg. 9040 (Feb. 3, 2025) (Venezuela 2023); 90 Fed. Reg. 20,309 (May 13, 2025) (Afghanistan); 90 Fed. Reg. 23,697 (June 4, 2025) (Cameroon); 90 Fed. Reg. 24,151 (June 6, 2025) (Nepal); 90 Fed. Reg. 28,760 (July 1, 2025) (Haiti); 90 Fed. Reg. 30,089 (July 8, 2025) (Honduras); 90 Fed. Reg. 30,086 (July 8, 2025) (Nicaragua); 90 Fed. Reg. 43,225 (Sept. 8, 2025) (Venezuela 2021); 90 Fed. Reg. 45,398 (Sept. 22, 2025) (Syria); 90 Fed. Reg. 50,484 (Nov. 6, 2025) (South Sudan); 90 Fed. Reg. 53,378 (Nov. 25, 2025) (Burma); 90 Fed. Reg. 54,733 (Nov. 28, 2025) (Haiti).

terminated countries even though the majority, including Venezuela and Haiti, remain so dangerous the State Department advises against any travel there.[2]

14. Another court in this district found that several terminations at issue (for Honduras, Nepal, and Nicaragua) were likely "based on a preordained determination to end the TPS program, rather than an objective review of the country conditions" and were likely motived, at least in part, by "racial and discriminatory animus." *NTPSA II*, 2025 WL 2233985, at *12, *17 (July 31, 2025).

15. In addition to the ten countries for which TPS has been officially terminated, President Trump also announced in November, via social media, his intent to terminate TPS for Somalia.[3] Shortly thereafter, he publicly described Somali nationals as "garbage," declaring, "we don't want them in our country."[4]

16. On December 1, 2025, Secretary Noem posted on social media regarding a recommended travel ban on 19 predominantly non-white countries (including Haiti). The Secretary described the countries as "flooding our nation with killers, leeches, . . . entitlement junkies" and "foreign invaders" coming "to slaughter our heroes, suck dry our hard-earned tax dollars, or snatch the benefits owed to AMERICANS."[5]

17. On December 10, 2025, President Trump declared that he had "announced a permanent pause on Third World migration, including from hellholes like Afghanistan, Haiti, Somalia and many other countries."[6] In response to an individual in the audience who called out,

---

[2] *See id. See also, e.g.,* State Department Travel Advisory, Venezuela at https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/venezuela-travel-advisory.html; State Department Travel Advisory, Haiti, at https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/haiti-travel-advisory.html; State Department Travel Advisory: South Sudan, at https://travel.state.gov/en/international-travel/travel-advisories/south-sudan.html.
[3] *See* Nicholas Bogel-Burroughs, *Trump Moves to End Temporary Protected Status for Somalis*, NY Times (Nov. 23, 2025), *at* https://www.nytimes.com/2025/11/23/us/trump-somali-tps-protected-minnesota.html.
[4] *See* Zolan Kanno-Youngs and Shawn McCreesh, *Trump Calls Somalis "Garbage" He Doesn't Want in the Country*, NY Times (Dec. 2, 2025), *at* https://www.nytimes.com/2025/12/02/us/politics/trump-somalia.html.
[5] Kristi Noem (@Sec_Noem), X (Dec. 1, 2025), https://x.com/Sec_Noem/status/1995642101779124476 (last visited Dec. 10, 2025).
[6] *See* Alexandra Marquez, *Trump revives slur while discussing immigrants from Somalia and other "disgusting" nations*, NBC News (Dec. 10, 2025), *at* https://www.nbcnews.com/politics/donald-trump/trump-immigrants-somalia-slur-rcna248395

"shithole," President Trump subsequently confirmed and reiterated comments he made during his first administration denigrating immigrants, including Haitian TPS holders, from what he described as "shithole countries" and asking, "Why can't we have some people from Norway, Sweden – just a few – let us have a few. From Denmark – do you mind sending us a few people? Send us some nice people."[7]

## SUPPLEMENTAL CLAIMS FOR RELIF

### SIXTH CLAIM

**Violation of the Administrative Procedure Act (Haiti November Termination)**

**(Plaintiff NTPSA and Individual Haitian Plaintiffs Against All Defendants)**

18. Plaintiffs reallege and incorporate by reference each and every allegation above and those in the First Amended and Supplemental Complaint, Dkt. 250.

19. The November 28, 2025 order terminating the TPS designation for Haiti constitutes "final agency action for which there is no other adequate remedy in a court" under 5 U.S.C. 704 because it will result in TPS holders' loss of TPS "automatically and without further notice or right of appeal."[8]

20. Defendants' November 28, 2025 termination of the Haiti TPS designation exceeded their statutory authority and was arbitrary and capricious, contrary to law, pretextual, and deviated from past practice, including because:

a) The decision assumed that TPS designations, including the Haiti designation, are illegal.

b) The decision assumed that TPS holders are present in the United States illegally.

c) The decision primarily relied on a determination that an extension of TPS would be "contrary to the national interest," but that factor is only relevant at the time of designation; it is not a valid consideration when assessing whether to extend or instead terminate TPS.

---

[7] See Daniel Dale, *Almost eight years later, Trump confirms he used the phrase "shithole countries"*, CNN (Dec. 10, 2025), at https://www.cnn.com/2025/12/10/politics/donald-trump-shithole-countries-phrase.
[8] 8 C.F.R. 244.19.

     d)     The research, consultation, and review process leading up to the decision deviated dramatically from past practice without explanation.

     e)     The decision occurred under circumstances and a timeline that reflect that it was pretextual.[9]

     f)     To the extent Defendants engaged in any process, it was so deficient as to amount to no process at all, defeating the purpose of the TPS statute.

21. Haitian Plaintiffs (including Haitian NTPSA members) will suffer irreparable injury from the unlawful termination.

## SEVENTH CLAIM

## Violation of the Equal Protection Guarantee of the

## Due Process Clause of the Fifth Amendment

**(Plaintiff NTPSA and Individual Haitian Plaintiffs Against All Defendants)**

22. Plaintiffs reallege and incorporate by reference each and every allegation above and those in the First Amended and Supplemental Complaint, Dkt. 250.

23. The Fifth Amendment contains an implicit guarantee of equal protection that invalidates any official action that in part reflects a racially discriminatory intent or purpose. Classifications based on race, ethnicity, or national origin receive exacting scrutiny, and even facially neutral policies and practices will be held unconstitutional when they reflect a pattern unexplainable on grounds other than race.

24. Defendants' November 28, 2025 decision to terminate the Haiti TPS designation is unconstitutional because it was motivated, at least in part, by intentional discrimination based on race, ethnicity, or national origin.

25. Plaintiffs (including Haitian NTPSA members) will suffer irreparable injury resulting from the illegal termination of the Haiti TPS designation.

## SUPPLEMENTAL PRAYER FOR RELIEF

For the foregoing reasons, in addition to the other relief requested in the First Amended

---

[9] *Cf. Dep't of Com. v. New York*, 588 U.S. 752, 784–85 (2019) (reversing agency action because stated reason for decision was pretextual).

and Supplemental Complaint, Plaintiffs ask this Court to grant the following relief:

1. Declare that Defendants' purported termination of TPS for Haiti on November 28, 2025 was unlawful under the APA and unconstitutional under the Due Process Clause of the Fifth Amendment;

2. "Set aside" Defendants' termination order of November 28, 2025 as beyond Defendants' authority and/or unlawful under the APA;

3. Postpone or stay the termination order of November 28, 2025 from taking effect or being put into effect;

4. Enjoin and restrain all Defendants, and their officers, agents, servants, employees, attorneys, and all other persons who are in active concert or participation with any of them from enforcing the termination order of November 28, 2025;

5. Order Defendants to take all steps necessary to ensure that Haiti's TPS designation remains in full force and effect absent a lawful termination from the Secretary;

6. Grant an award of attorneys' fees and costs; and

7. Grant any other and further relief that this Court may deem fit and proper.

Date:   December 24, 2025               Respectfully submitted,

                                        NATIONAL DAY LABORER
                                        ORGANIZING NETWORK


                                        /s/ *Jessica Karp Bansal*
                                        Jessica Karp Bansal
                                        Lauren Michel Wilfong (*Pro Hac Vice*)

                                        Emilou MacLean
                                        Michelle (Minju) Y. Cho
                                        Amanda Young
                                        ACLU FOUNDATION OF NORTHERN
                                        CALIFORNIA

                                        Ahilan T. Arulanantham
                                        CENTER FOR IMMIGRATION LAW
                                        AND POLICY, UCLA SCHOOL OF LAW

                                        Eva L. Bitran
                                        Diana Sanchez
                                        ACLU FOUNDATION OF SOUTHERN
                                        CALIFORNIA

Erik Crew (*Pro Hac Vice*)
HAITIAN BRIDGE ALLIANCE

*Attorneys for Plaintiffs*