Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Amanda Young (SBN 359753)
ayoung@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, MARIELA GONZÁLEZ, FREDDY JOSE ARAPE RIVAS, M.H., CECILIA DANIELA GONZÁLEZ HERRERA, ALBA CECILIA PURICA HERNÁNDEZ, E.R., HENDRINA VIVAS CASTILLO, A.C.A., SHERIKA BLANC, VILES DORSAINVIL, and G.S.,<br><br>Plaintiffs,<br><br>vs.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,<br><br>Defendants. | Case No. 3:25-cv-01766-EMC<br><br>Hon. Edward M. Chen<br><br>**JOINT LETTER RE: MEET & CONFER FOR SECOND HAITI TERMINATION RECORD PRODUCTION AND EXTRA-RECORD DISCOVERY (DKT. 354)** |

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitran (SBN 302081)
ebitran@aclusocal.org
Diana Sanchez (SBN 338871)
dianasanchez@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

Pursuant to the Court's December 23, 2025 Order (Dkt. No. 354, the "Order"), counsel for Plaintiffs and Defendants met and conferred on December 30, 2025 to "discuss production and filing of the certified administrative record … as well as the need for any discovery[.]" ECF 354 at 2. The Parties provide this joint letter to "report back on their meet and confer[.]" *Id*.

## I.     PLAINTIFFS' POSITION

### A.     Factual Background.

On December 23, 2025, the Court granted Plaintiffs leave to file a supplemental complaint to challenge Defendants' November 28, 2025 termination of TPS for Haiti. Dkt. 354. The termination is scheduled to enter into effect on February 4, 2026. Termination of the Designation of Haiti for Temporary Protected Status, 90 Fed. Reg. 54733, 54733 (Nov. 28, 2025). In a hearing on the same date, Plaintiffs requested that Defendants immediately produce the CAR for the Haiti termination, which had already been produced in *Miot v. Trump*, No. C-25-2471 (D.D.C.) on December 10; update existing extra-record discovery ordered in this case, Dkts. 129 & 135; and be compelled to provide limited additional extra-record discovery. The Court ordered the parties to meet and confer regarding the production and filing of the CAR in this case and "the need for any discovery (including scope and timeline)," and report back by joint letter on January 2, 2026. Dkt. 354.

Plaintiffs formally requested these three items from Defendants by email on December 24, 2025, requesting a response in writing by December 29. Exhibit A. Defendants did not respond in writing but agreed to a telephonic meet and confer on December 30. During the December 30 meet and confer, Defendants asserted that they could not commit to produce the CAR before January 6, and could not substantively negotiate regarding any extra-record discovery—including custodians and date ranges for previously ordered discovery—absent a court order requiring extra-record discovery at this stage of the litigation. *Id.* On January 1, following the meet and confer, Defendants produced the CAR, Dkt. 357, but did not otherwise modify their positions regarding extra-record discovery. *Id.*

Plaintiffs seek a court order compelling Defendants to update the extra-record discovery this Court previously ordered and produce the limited additional extra-record discovery Plaintiffs seek. Defendants oppose such an order. To the extent the Court seeks additional briefing, the parties seek to file a joint letter brief regarding the outstanding issues on Thursday, January 8.

1

**B.     Certified Administrative Record.**

By email on December 24, Plaintiffs sought the immediate production of the CAR. Exhibit A. On December 30, Defendants informed Plaintiffs that they could not commit to producing the CAR for the second Haiti termination until Tuesday, January 6, 2026, even though it had already been produced in *Miot* on December 10. On January 1, following Plaintiffs' expression of concern about this proposed timeline during the meet and confer, Defendants produced the CAR. Dkt. 357.

The CAR consists primarily of publicly available documents: prior Federal Register notices designating, extending, terminating or vacating TPS for Haiti or other countries (Items 1, 2, 6–13, 16, 18–24[1]); public policy statements or directives (Items 3–5, 14–15, 17, 27, 56); a two-page summary of TPS law (Item 26); governmental and non-governmental documents related to country conditions in Haiti (Items 45, 48–50, 54, 58, 62–63, 68–175); documents concerning the designation of Haitian gangs as terrorist organizations and newspaper articles related to Haitian nationals without TPS with alleged criminal histories (Items 52–53, 59–61); visa statistics (Items 25, 46, 47, 55, 66); a statement that the U.S. Embassy in Haiti cannot provide consular services or complete visa processing (Item 67); two administrative opinions (Items 64–65); and a transcript of Secretary Rubio on Fox & Friends speaking about President Trump's United Nations address (Item 57). Dkt. 357.

Aside from the publicly available documents, the CAR contains five USCIS memoranda concerning the TPS periodic review of Haiti (Items 37–41, Dkt. 357-2 at 182–255); a single document representing consultation with the State Department—a one-line statement in an email where a State Department official (not the Secretary) asserts that "State believes that there would be no foreign policy concerns with respect to a change in the TPS status of Haiti" (Item 51, Dkt. 357-3 at 409–10); and data concerning Haitians and other TPS holders in the United States (Items 28–36 & 42–44, Dkt. 357-2 at 164–81 & 256-61).

**C.     Update of Existing Extra-Record Discovery.**

By email on December 24, Plaintiffs requested that Defendants update the responses to the already issued RFPs as to Haiti, with a deadline no later than ten days after agreement regarding search terms, custodians, and dates, consistent with this Court's prior orders. Exhibit A; Dkts. 129 & 135.

---

[1] The "Items" refer to the portions of the CAR identified in the Index, Dkt. 357.

1  Defendants previously produced responsive documents based on a stipulated date range and a court-ordered set of custodians and search terms. Dkts. 132 & 135. For the proposed updated search, Plaintiffs proposed a list of search terms, custodians, and date ranges, informed by this Court's order in the instant case and the search terms, custodians, and date ranges the parties stipulated to in *NTPSA II*, as modified for Haiti. Exhibit B (Plaintiffs' proposed custodians, date ranges and search terms). *See NTPSA v. Noem*, No. 25-cv-5687-TLT, Dkt. 84-1, Exh. A-1 & Dkt. 105 at 1-2 (N.D. Cal. 2025) (stipulating to custodians, search terms and date ranges).

Defendants take the position, as they have since the start of this litigation, that no extra-record discovery is warranted in this case. Defendants' counsel asserted during the December 30 meet and confer that they were not authorized to confer about custodians, search terms, and date ranges to update even the existing discovery requests this Court previously ordered prior to the production of the CAR in this case and any subsequent court order concerning extra-record discovery. Exhibit A. That position is unchanged since the production of the CAR on January 1. *Id.*

This Court already ordered extra-record discovery in this case, including related to Defendants' effort to cancel TPS for Haiti. Dkts. 129 & 135. The Court's findings were based in part on discriminatory statements and unprecedented agency actions. *Id.* Nothing in this case to date has undermined the Court's earlier findings that extra-record discovery is warranted. Indeed, the Federal Register Notice and CAR for the most recent Haiti termination provide further evidence supporting the Court's findings. For instance, the Federal Register notice provides as justification for the termination of TPS for at least 350,000 Haitians that a few specific individual Haitians (not even Haitian TPS holders) are alleged to be gang-associated**.** 90 Fed. Reg. at 54738 ("July 2025 … deportation actions against U.S. lawful permanent residents" alleged to be associated with a Haitian gang). As this Court previously admonished, "[a]cting on the basis of a negative group stereotype and generalizing such stereotype to the entire group is the classic example of racism." Dkt. 93 at 66.

The CAR and Federal Register are also replete with evidence of the unprecedented nature of the agency's termination decisions. For instance, the CAR includes neither a formal recommendation nor country conditions analysis from the State Department regarding whether TPS for Haiti should be extended or terminated. Instead, the only State Department consultation related to the Haiti TPS

periodic review consists of a one-line statement in an email. Dkt. 357-3 at 409–10 ("State believes that there would be no foreign policy concerns with respect to a change in the TPS status of Haiti"). Moreover, Haiti's TPS termination rests principally on the ground that extension would be contrary to the U.S. national interest. *See, e.g.*, Dkt. 357-2 at 203 (USCIS Decision Memo: "Even if you find that the extraordinary and temporary conditions . . . exist, the statute nonetheless compels you to terminate it if you find that it is contrary to the national interest to allow Haitians to remain in the United States."). Prior to this administration, in the 35-year history of TPS, there had *never* previously been a termination on the ground that extension would be contrary to the U.S. national interest; this year, Defendants have terminated many TPS designations relying on this ground.[2]

Plaintiffs contend that the existing extra-record discovery this Court ordered regarding Haiti should be updated as required by Rule 26(e). Plaintiffs request that this Court either order Defendants to update the searches regarding Haiti termination with the search terms, custodians, and date ranges Plaintiffs propose; or, in the alternative, order the parties to meet and confer promptly regarding custodians, date ranges, and search terms, and submit any dispute to the Court should they not reach agreement. Discovery should be compelled within seven to ten days of the Court's order, consistent with the Court's prior order regarding the same discovery. Dkt. 135.

### D.    Additional Extra-Record Discovery.

Finally, Plaintiffs intend to propound two additional Requests for Production (RFPs) which are warranted now. Defendants oppose the RFPs, and Defendants' counsel represented that they were not otherwise authorized to meet and confer substantively about them absent a Court order. This limited additional discovery is relevant and proportional to the needs of the case, and important to reveal evidence of pretext and agency policy and practice.

---

[2] Termination of the October 3, 2023 Designation of Venezuela for [TPS], 90 Fed. Reg. 9040, 9040-44 (Feb. 5, 2025); Termination of the Designation of Afghanistan for [TPS], 90 Fed. Reg. 20309, 20310-12 (May 13, 2025); Termination of the Designation of Cameroon for [TPS], 90 Fed. Reg. 23697, 23698-99 (June 4, 2025); Termination of the Designation of Syria for [TPS], 90 Fed. Reg. 45398, 45400-02 (Sept. 22, 2025); Termination of the 2021 Designation of Venezuela for [TPS], 90 Fed. Reg. 43225-02, 43227-31 (Sept. 8, 2025); Termination of the Designation of South Sudan for [TPS], 90 Fed. Reg. 50484, 50485-87 (Nov. 6, 2025); Termination of the Designation of Burma (Myanmar) for [TPS], 90 Fed. Reg. 53378, 53379-82 (Nov. 25, 2025); Termination of the Designation of Ethiopia for [TPS], 90 Fed. Reg. 58028-02, 58030-32 (Dec. 15, 2025).

  *First*, Plaintiffs seek a Court order compelling the production of communications regarding public representations of the Haiti TPS termination decisions. In its prior discovery order, the Court did not require the government to produce this information based on the limited evidence Plaintiffs put forward at the time. Dkt. 135 at 3. Since then, however, discovery during the first Trump administration and the current Trump administration has uncovered media-related communications that bear directly on these claims. These types of emails contain unfiltered discussions by agency personnel. The limited available examples depict agency personnel admitting that the terminations do not square with facts on the ground or past agency practice, contrary to what Defendants then told the public and now want to tell this Court. Plaintiffs contend the evidence supports the Court revisiting this finding. As an initial matter, this Court in *Ramos* expressly relied on such evidence in support of its finding that "DHS changed its practices with regard to TPS designations" to reach the termination decisions during the first Trump administration. *Ramos v. Nielsen*, 336 F. Supp. 3d 1075, 1092-94 (N.D. Cal. 2018), *vacated and remanded sub nom. Ramos v. Wolf*, 975 F.3d 872 (9th Cir. 2020), *reh'g en banc granted, opinion vacated*, 59 F.4th 1010 (9th Cir. 2023) (referencing among the "wealth of record evidence" two press calls—a May 22, 2017 call regarding Haiti and a November 6, 2017 call regarding Nicaragua and Honduras). A sister court also recently relied on such evidence in finding the terminations of Honduras, Nicaragua, and Nepal illegal—citing as important evidence of pretext an internal email questioning the public messaging regarding the Nicaraguan TPS termination in light of "[the country's] murderous, dictatorial regime." *NTPSA v. Noem*, No. 25-cv-5687-TLT, Dkt. 197 at 9, 42, 47 (N.D. Cal. Dec. 31, 2025); *id.* at Dkt. 176-11 at 14.

  *Second*, Plaintiffs seek a Court order compelling the production of documents concerning this administration's general policies and practices with respect to the TPS program and periodic reviews since January 20, 2025. Specifically Plaintiffs seek: 1) draft and final Decision Memos; 2) draft and final country conditions reports for TPS decisions; 3) consultation with the State Department regarding TPS; and 4) communications regarding TPS periodic reviews involving a limited set of custodians

5

JOINT LETTER BRIEF RE: MEET & CONFER – CASE NO. 3:25-CV-01766-EMC

centrally involved in TPS decisionmaking.[3] Plaintiffs did not previously request a court order compelling the production of such documents for the simple reason that there were no other TPS decisions at the time of the Court's prior discovery orders, and thus no evidence of agency policy and practice outside of those initial decisions.

This information is directly relevant and proportional to the needs of the case. Plaintiffs claim in the Supplemental Complaint that Defendants are engaged in a preordained effort to terminate TPS writ large, on the assumption that TPS designations and TPS holders are illegal. Dkt. 355 at ¶¶ 20(a)–(b). Plaintiffs allege that Defendants terminated TPS for every country that has come up for review, that these terminations were preordained, and that President Trump has prematurely announced an intent to terminate TPS for a country not yet ripe for review (and for which he does not, in fact, have the authority to make a determination); and further that both President Trump and Secretary Noem have denigrated Haitians alongside other non-white foreigners as "killers," "leeches," and "invaders." *Id*. at ¶¶ 13–17. This Court has already found that Defendants engaged in preordained decisionmaking in connection with TPS decisions at issue. Dkt. 279 at 48.

Plaintiffs' requests pertaining to other TPS periodic reviews are limited—seeking only the central documents considered by the Secretary in connection with the periodic review of a TPS designation (Decision Memos and country conditions reports); consultation with the State Department regarding TPS periodic reviews, which is by all accounts sparse, *see* Dkt. 279 at 13–14; and communications with a restricted list of custodians. *See* n. 3, supra. Without this additional limited discovery, agency actions, discussions, and rules related to TPS that do not expressly reference "Haiti" would not be produced even if directly relevant. Evidence of consistent agency practice may suffice to prove policy. *See*, *e.g.*, Fed. R. Evid. 406 ("Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in

---

[3] Plaintiffs propose this be limited to the following custodians: Rob Law, Nominee for DHS Undersecretary, Office of Strategy, Policy and Plans; DHS Senior Advisor and General Counsel Nominee James Percival; USCIS Director Joe Edlow; USCIS Office of Policy & Strategy (OP&S) Director Samantha Deshommes; USCIS OP&S Humanitarian Affairs Division Chief Rena Cutlip Mason; USCIS RAIO Associate Director Ted Kim; USCIS RAIO subject matter expert responsible for drafting the country conditions review for the country at issue; and USCIS OP&S Policy Advisor responsible for drafting the Decision Memo for the country.

accordance with the habit or routine practice."); *S.R. Nehad v. Browder*, 929 F.3d 1125, 1141 (9th Cir. 2019) ("As an initial matter, Appellants need not show evidence of a policy or deficient training; evidence of an informal practice or custom will suffice."). Here, evidence of a preordained policy of termination may only be available through evidence of consistent agency practice.

### E. Timing Considerations.

Plaintiffs seek expedited discovery. Given that the termination of TPS for Haiti is scheduled to enter into effect on February 4 and the parties have repeatedly briefed issues related to extra-record discovery within this and other TPS-related litigation, Plaintiffs respectfully request that this Court set a deadline for the parties to brief the appropriateness of extra-record discovery by no later than January 8, 2026 should the Court find additional briefing necessary. Delay is prejudicial to Plaintiffs because the termination of Haiti's TPS is scheduled to go into effect imminently, and Plaintiffs need timely production of any discovery the Court orders to be able to move for relief from this Court should that become necessary depending on what occurs in *Miot*.

## II.  DEFENDANTS' POSITION

### A. Summary of the December 30, 2025 Meet and Confer.

On December 30, 2025, the Parties met and conferred as ordered by the Court. Dkt. No. 354. Defendants explained that regarding the November 2025 Haiti Termination, the Court had not ordered extra-record discovery in this record-review case, and Defendants would not agree to extra-record discovery. Defendants noted that Plaintiffs' request for extra-record discovery was premature because the Certified Administrative Record ("CAR") had not yet been provided at that stage. Thus, Plaintiffs could not yet show that extra-record discovery is necessary.

Plaintiffs asserted that the Court has already granted extra-record discovery in this case, thus they were entitled to this additional extra-record discovery. *See* Dkt. No. 135. Defendants countered that Plaintiffs now were seeking extra-record discovery on a separate and distinct agency action (the November 2025 Haiti termination), and thus they would have to make a new showing that extra-record discovery is warranted based on the CAR produced for the November 2025 Haiti termination. In other words, Plaintiffs could not simply rest on findings the Court may have made with respect to prior agency actions.

1  Defendants reiterated that they would not agree to extra-record discovery, but explained that if the Court ordered it, they would be willing to confer with Plaintiffs on any discovery requests. Regarding the draft Requests for Proposals ("RFPs") circulated by Plaintiffs, Defendants stated that they opposed the RFPs, and offered several bases on which they would challenge them if Plaintiffs were to serve the RFPs as written.

The Parties discussed the timeline for Defendants to file the CAR. On January 1, 2026, Defendants filed the CAR for the November 2025 Haiti Termination in this matter. Dkt. No. 357.

### B. Extra-Record Discovery is Not Warranted in this Matter.

As a preliminary matter, the instant letter is not the procedurally appropriate vehicle for Plaintiffs to seek extra-record discovery. This Court's Civil Standing Order on Discovery at § 4 states that: "no motions regarding discovery disputes may be filed without prior leave of the Court." Leave has not been sought or granted. Furthermore, the Order outlines a specific process for "All other requests for discovery relief." *Id.* Among other requirements, it limits the joint letter briefs to "no longer than three pages." *Id.* Additional briefing is only permitted if the Court determines it is "necessary." *Id.*

Plaintiffs have decided these rules do not apply to them. Instead of the one and a half pages Plaintiffs would receive to articulate their position under the Civil Standing Order, they have dedicated nearly *five* pages to their discovery demands in the instant letter. But the Court has not "advise[d] the parties if additional briefing … will be necessary." *Id.* Plaintiffs should not be rewarded for flouting this Court's Civil Standing Order.

Beyond this, Plaintiffs' utter disregard for the Court's procedures prejudices Defendants, who were only afforded limited time during a holiday week to respond to Plaintiffs' in-depth arguments. Defendants twice proposed that the parties submit a joint letter brief on this discovery dispute, as this Court's Order requires, but Plaintiffs insisted on presenting substantive arguments on this discovery issue in the instant letter. Defendants object and ask the Court to order the parties to abide by Civil Standing Order on Discovery and file a joint letter brief by January 9, 2026. But in an abundance of caution, Defendants include a brief response to Plaintiffs' position herein.

1    The November 2025 Haiti Termination Notice arises out of an entirely new factual context that is distinct and separate from the Secretary's prior TPS determinations previously considered in this case. *See* 8 U.S.C. § 1254a(b)(3)(B); *see also* Dkt. No. 351 at 3–5. As Plaintiffs acknowledged in their Motion for Leave to File a Second Supplemental Complaint, Dkt. No. 343, the newly challenged agency action—the November 2025 termination of Haiti's TPS designation, "is a *post-pleading event* that *could not* have been included in Plaintiffs' operative complaint, which was filed on July 8, 2025." Dkt. No. 343 at 1 (emphasis added).

As in any APA case, "[t]he task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985). *See Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 444 (9th Cir. 2024) (the APA requires courts reviewing agency action to use the administrative record of an action to assess its legality) (citing 5 U.S.C. § 706); *see also In re Subpoena Duces Tecum*, 156 F.3d 1279, 1279-80 (D.C. Cir. 1998) ("the actual subjective motivation of agency decisionmakers is immaterial as a matter of law—unless there is a showing of bad faith or improper behavior."). Judicial review of agency action should be based on the record before the agency at the time of the decision, barring exceptional circumstances. *Dep't of Commerce v. New York*, 588 U.S. 752, 780 (2019) ("[I]n reviewing agency action, a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record.") (citations omitted); *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006). "That principle reflects the recognition that further judicial inquiry into 'executive motivation' represents 'a substantial intrusion' into the workings of another branch of Government and should normally be avoided." *Id.* (citation omitted).

Extra-record discovery is the exception, not the rule, and should only be permitted where there is a strong showing of bad faith or improper behavior. *Dep't of Commerce*, 588 U.S. at 780–81 (citing *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)). These rules apply equally to cases involving constitutional claims. *See* 5 U.S.C. § 706(2)(B); *Chiayu Chang v. United States Citizenship & Immigration Servs.*, 254 F. Supp. 3d 160, 161 (D.D.C. 2017) (collecting cases). That a party "premises the challenges to agency action on constitutional grounds does not take them out of

1  the purview of the APA" as "the APA contemplates constitutional challenges to agency action but
2  provides that the court shall review the administrative record in considering such challenges."

3  In an APA case, the "whole record" is ordinarily the "record the agency presents." *Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 445 (9th Cir. 2024). "[P]redecisional deliberative materials" are not properly included in the whole record. *Id*. "[W]hen the agency has made formal findings, *not every* email, draft notice, discussion note, or meeting reminder that agency personnel circulate in the course of making the decision how to apply the statutory directive to the facts that they have found constitutes the whole record." *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 2022 WL 2805464, at *3 (S.D.N.Y. July 18, 2022) (emphasis added).

Because this matter before the Court is an APA matter, judicial review of the agency action should only be based on the record before the agency *at the time of the decision*, unless exceptional circumstances are shown. *Dep't of Commerce*, 588 U.S. at 780. Here, Plaintiffs baldly assert that because this Court has already ordered extra-record discovery, they are entitled to more extra-record discovery on the new TPS termination that occurred in November 2025. *See* Dkt. No. 129 at 3–6. Plaintiffs contend that nothing in this specific matter undermines the Court's earlier findings that extra-record discovery is warranted. However, Plaintiffs have not demonstrated any exceptional circumstances that would allow judicial review to extend outside the CAR.[4]

Plaintiffs disregard the fact that this Court *only* granted extra-record discovery in this case *after* it found Plaintiffs "presented *significant evidence* that the decisions were made in bad faith," which included an alleged lack of legal and/or evidentiary support for the decisions and the "unprecedented nature" of the decisions. *Id*. at 5. Here, Plaintiffs now submit minimal evidence, including mere inferences from the text of Secretary Noem's prior administrative actions, that the November 2025 Haiti TPS termination was conducted in "bad faith," and instead expect the Court to broaden and expand its previous "bad faith" finding to include a *new* and separate agency action. But a "*strong showing* of bad faith or improper behavior" is required, and Plaintiffs' conclusory assertion does not meet the requisite standard. *Id*. at 4 (citing *Dep't of Commerce*, 588 U.S. at 781, 783–84).

---

[4] Plaintiffs tacitly acknowledge that the CAR contains evidence of consultation with the State Department. Indeed, the statute does not require any specific format of "consultation."

Additionally, Defendants stress that the Supreme Court has emphasized that judicial review of agency action should be based on the *record* before the agency at the time of the decision. *Dep't of Commerce*, 588 U.S. at 780. This principle "reflects the recognition that further judicial inquiry into 'executive motivation' represents 'a *substantial intrusion*' into the workings of another branch of Government and should normally be avoided." *Id*. (citation omitted) (emphasis added). These rules additionally apply equally to any case that involves constitutional claims. *See* 5 U.S.C. § 706(2)(B); *Chiayu Chang v. United States Citizenship & Immigration Servs.*, 254 F. Supp. 3d 160, 161 (D.D.C. 2017) (collecting cases). Even if the plaintiffs in a matter assert constitutional claims, "wide-ranging discovery is not blindly authorized at a stage in which such an administrative record is being reviewed." *See J.L. v. Cissna*, 2019 WL 2224851, at *1 (N.D. Cal. 2019).

Consequently, Plaintiffs have not shown an exception to the general rule, specifically regarding the new CAR produced in this matter. Instead, Plaintiffs only present minimal, uncompelling information to simply seek to extend the Court's previous findings to cover the new 2025 Haiti Termination for which this Court has not even had a chance to review the CAR.

### C. Plaintiffs' Additional Proposed Requests for Production Exceed the Scope of Previously Granted Extra-Record Discovery.

Defendants oppose any extra-record discovery in relation to the November 2025 Haiti Termination. Defendants oppose the procedural vehicle with which Plaintiffs now seek that discovery. Defendants request further briefing to fully address this discovery issue and reserve the right to challenge any discovery demands Plaintiffs serve. Defendants include a brief response below in the event that the Court is inclined to allow Plaintiffs to have their discovery disputes heard here despite the Court's Civil Standing Order on Discovery.

Plaintiffs' proposed first additional Request for Production (RFP), seeks irrelevant "communications regarding public representations of the Haiti TPS termination decisions." As Plaintiffs acknowledge, this Court has already rejected a similar RFP seeking "All documents and communications … about DHS press releases or internal DHS memoranda concerning vacating, partially vacating, or terminating TPS designations for Venezuela or Haiti, including any memoranda or guidance about how to respond to questions from media or TPS holders about such decisions." Dkt.

1  No. 123-1 at 4. Even before the Parties met and conferred, this Court warned that "it is not clear why
2  documents related to DHS press releases or guidance about to how respond to questions from the
3  media or TPS holders are relevant (especially post-decision) to any alleged unlawful motivation (*i.e.*
4  pretext, bad faith, or animus) behind the challenged decisions." Dkt. No. 129 at 8. Subsequent
5  narrowing of the request could not resolve these flaws, and this Court did "not require the government
6  to respond to this document request, even as narrowed." Dkt. No. 135 at 3. This RFP is not relevant
7  to the decisions made by Secretary Noem. Furthermore, Plaintiffs have not articulated which specific
8  statements and media packets they believe would be predecisional and relevant to this decision.
9  Announcing a decision is different from making a decision, and this request is nothing more than a
10 fishing expedition into matters wholly disconnected from the decision-making process.

11         Plaintiffs' proposed second request seeks production of documents "concerning this
12 administration's general policies and practices with respect to the TPS program and periodic reviews
13 since January 20, 2025." This too is irrelevant and far exceeds the scope of this case (as well as
14 previously granted extra-record discovery). Indeed, the "Court [did] not intend to permit general civil
15 discovery" and "[d]ocuments sought must be keyed to Secretary Noem's intent in reaching the
16 *decisions challenged herein* beyond that already contained in the administrative record, if any." Dkt
17 No. 129 at 8 (emphasis added). In a similar case challenging the terminations of TPS for Honduras,
18 Nepal, and Nicaragua, a sister court considered and rejected the plaintiffs' request for "limited records
19 concerning the TPS periodic reviews conducted by this administration for countries other than
20 Honduras, Nepal, and Nicaragua—draft and final USCIS Decision Memoranda (RFP 4) and draft and
21 final country conditions analyses, and communications related to these country conditions analyses
22 (RFP 5)." *NTPSA v. Noem*, No. 25-cv-5687-TLT, Dkt. 105 at 5, 7 (N.D. Cal. Aug. 28, 2025) (refusing
23 to grant extra-record discovery for countries other than Honduras, Nepal, or Nicaragua when the
24 defendants had not been ordered to, and had not, produced an administrative record for any other
25 countries).

26         By requesting information pertaining to all 2025 TPS periodic reviews, this RFP goes well
27 beyond the scope of previously ordered discovery in this case, which only concerned the TPS
28 "decisions challenged" in this case. Dkt. No. 129 at 8. Typically, judicial review of agency action is

based on the record before the agency at the time of the decision, barring exceptional circumstances. *Dep't of Com. v. New York*, 588 U.S. 752, 780 (2019). While this Court concluded that Plaintiffs' claims relating to Secretary Noem's February 2025 partial vacatur of her predecessor's re-designation and extension of Haiti for TPS and January 2025 vacatur and termination of one of two of Venezuela's TPS designations fell within the "bad faith" exception to the general practice of prohibiting extra-record discovery in APA cases, it only determined that extra-record discovery is warranted for Plaintiffs' APA and Equal Protection claims relating to those three specific agency actions. Dkt. No. 129 at 4-5. Here, Plaintiffs have filed a Second Supplemental Complaint claiming that Defendants' November 2025 termination of the TPS of designation for Haiti violated the APA and Due Process Clause of the Fifth Amendment. ECF No. 355. Not only has extra-record discovery not been granted regarding this decision, but this Court previously did not permit discovery into TPS decisions for countries other than Venezuela and Haiti when granting discovery on prior claims.

Furthermore, the RFPs regarding unrelated TPS designations where there has been a periodic review during the Secretary's tenure are neither relevant to the decision-making process regarding Haiti nor are these Requests "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); *see Herbert v. Lando*, 441 U.S. 153, 177 (1979) ("The requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery where 'justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense'"). It is unclear what Plaintiffs are looking for, and it is speculative at best that a response would produce any information relevant to this case. *See Blagman v. Apple Inc.*, Case No. CV 13-8496-PSG, 2014 WL 12607841, at *2 (C.D. Cal. Jan. 6, 2014) (court will not compel discovery that is "impermissibly overboard, and if answered would produce much tangential if not irrelevant information"); *Zewdu v. Citigroup Long Term Disability Plan*, 264 F.R.D. 622, 626 (N.D. Cal. 2010) ("Discovery must be narrowly tailored . . . and must not be a fishing expedition"). Plaintiffs allege that the Secretary's decisions regarding Haiti are all part of a "preordained effort to terminate TPS writ large"—but this wholly unsupported conjecture fails to justify the Homeric fishing expedition they seek to embark on.

Simply put, Plaintiffs propose an expansion of prior discovery far beyond the relevant records, and far beyond what has ever been authorized in these TPS termination challenges.

As a last resort, Plaintiffs rely on Rule 26(e), which requires, generally, a party to supplement a discovery response if it learns that the prior response was incomplete or incorrect or if additional information has not otherwise been made known to the other parties. Fed. R. Civ. P. 26(e)(1). This argument is fundamentally flawed because, as Defendants have consistently maintained, the November 2025 Haiti Termination is an independent agency action that is separate and distinct from the partial vacatur of the July 1, 2024 extension and redesignation of Haiti for TPS (which is the agency action forming the basis of the prior discovery responses). Therefore, the responses Plaintiffs now demand are not "updates" as contemplated by Rule 26(e), but instead brand-new discovery demands stemming from a different agency action. Therefore, Plaintiffs' Rule 26(e) argument is meritless.

### D. Expedited Discovery is Unwarranted.

Plaintiffs demand an unreasonable timeline for their new discovery demands. Plaintiffs acknowledged during the proceedings held on December 23, 2025, that their additional claims regarding the November 2025 Haiti Termination would essentially take a back seat to the ongoing litigation in *Miot v. Trump*, No. C-25-2471 (D.D.C.), where there is a pending § 705 motion to postpone. Dkt. No. 354 at 2 ("Plaintiffs reserve the right to file a § 705 motion, depending on the results in *Miot*"). Despite this concession, Plaintiffs boldly claim that expedited discovery is necessary, and that Defendants should only receive one-third the time to respond that the Federal Rules of Civil Procedure allow. They have not justified this extraordinary departure from the normal course.

Date: January 2, 2026                                  Respectfully submitted,

                                                                                 ACLU FOUNDATION
                                                                                 OF NORTHERN CALIFORNIA

                                                                                 */s/ Emilou MacLean*
                                                                                 Emilou MacLean
                                                                                  Michelle (Minju) Y. Cho
                                                                                  Amanda Young
                                                                                 ACLU FOUNDATION
                                                                                 OF NORTHERN CALIFORNIA

Ahilan T. Arulanantham
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW

Eva L. Bitran
Diana Sanchez
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA

Jessica Karp Bansal
Lauren Michel Wilfong (*Pro Hac Vice*)
NATIONAL DAY LABORER ORGANIZING
NETWORK

Erik Crew (*Pro Hac Vice*)
HAITIAN BRIDGE ALLIANCE

*Attorneys for Plaintiffs*

Date January 2, 2026

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

RUTH ANN MUELLER
Senior Litigation Counsel

LAUREN BRYANT
JEFFREY HARTMAN
CATHERINE ROSS
DANIEL CAPPELLETTI
LORI MACKENZIE
ILANA KRAMER
SHELBY WADE
Trial Attorneys

/s/ Eric M. Snyderman

ERIC MICHAEL SNYDERMAN
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 742-7079
Eric.M.Snyderman@usdoj.gov

*Attorneys for the Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 2, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

*/s/ Emilou MacLean*
Emilou MacLean
