Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Amanda Young (SBN 359753)
ayoung@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, MARIELA GONZÁLEZ, FREDDY JOSE ARAPE RIVAS, M.H., CECILIA DANIELA GONZÁLEZ HERRERA, ALBA CECILIA PURICA HERNÁNDEZ, E.R., HENDRINA VIVAS CASTILLO, A.C.A., SHERIKA BLANC, VILES DORSAINVIL, and G.S., <br><br> Plaintiffs, <br><br> vs. <br><br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA, <br><br> Defendants. | Case No.  3:25-cv-01766-EMC <br><br> Hon. Sallie Kim <br><br> **JOINT DISCOVERY LETTER BRIEF RE: HAITI TERMINATION EXTRA-RECORD DISCOVERY** |

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitran (SBN 302081)
ebitran@aclusocal.org
Diana Sanchez (SBN 338871)
dianasanchez@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411


BRETT A. SHUMATE
Assistant Attorney General
Civil Division
YAAKOV M. ROTH
Acting Assistant Attorney General
RUTH ANN MUELLER
Senior Litigation Counsel
ERIC SNYDERMAN
LAUREN BRYANT
JEFFREY HARTMAN
CATHERINE ROSS
DANIEL CAPPELLETTI
LORI MACKENZIE
ILANA KRAMER
SHELBY WADE
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044

Attorneys for Defendants

Counsel met and conferred on March 12 and seek assistance from this Court to resolve discovery disputes. The parties complied with Section 9 of the Guidelines for Professional Conduct.

## I.    FACTUAL BACKGROUND & RELEVANT DEADLINES

This case concerns challenges to vacatur and terminations of TPS for Venezuela and Haiti. After an earlier termination for Haiti, *see* 90 Fed. Reg. 28760, was blocked by litigation, Plaintiffs supplemented the Complaint on December 24 to challenge a November 28 termination of TPS for Haiti, which was scheduled to take effect on February 4. Dkts. 354–55. *See* 90 Fed. Reg. 54733. On February 2, the District Court for the District of Columbia postponed that February 4 termination. Memorandum Opinion, *Miot v. Trump*, No. C-25-2471-ACR (D.D.C. Feb. 2, 2026), Dkt. 124. On March 11, Defendants asked the U.S. Supreme Court for a stay of that postponement order and certiorari before judgment. *See* Dkt. 379. On March 16, 2026, the Supreme Court granted certiorari in *Miot* and another case where Defendants encouraged the Court to resolve threshold jurisdictional issues. *See* Nos. 25A952; 25A999. Briefing will be highly expedited, and the Supreme Court will hear oral argument in its April sitting.

This Court initially authorized discovery related to the Haiti partial vacatur, covering January 20 through February 24, 2025—the publication date of that decision. Dkts. 123-1 (RFPs), 132 (stipulated date range), 129 & 135 (discovery orders). On January 20, 2026, this Court also authorized discovery relevant to the November 28 Haiti termination decision. Dkt. 367. The Court held "the relevant time period suggested by Defendants [wa]s appropriate" for discovery on Plaintiffs' supplemental claims. Dkt. 367. Defendants were to produce those documents by February 17, finding Plaintiffs' proposed deadline for production was "not realistic." *Id*. The Court applied Plaintiffs' search terms and custodians (Dkt. 364-2) for the period July 15 through November 19, 2025. Dkt. 367. Those requests cover communications about the Haiti termination and the TPS periodic review process bearing on that termination (Set One), and "All documents (including communications) concerning the Trump administration's general policies and practices with respect to the TPS program and TPS periodic reviews" (Set Two). Dkts. 358, 360, 367.

On February 17, Defendants served Plaintiffs with discovery materials responsive to the Court's order. *See* Dkt. 367. On March 5 and 6, Plaintiffs identified discovery deficiencies, which the

1

parties discussed on March 12. On March 6, Defendants advised Plaintiffs that they were working to address a specific issue Plaintiffs identified with discovery production (confidentiality designations other than personal identifying information), and on March 12, Defendants identified specific redactions they intended to address Plaintiffs' concerns about the confidentiality designations. On March 13, Plaintiffs advised that one alleged deficiency in the production—the failure to disclose metadata—was no longer at issue. Plaintiffs advised they would file this joint letter brief by March 16 absent resolution of remaining concerns.

## II.    PLAINTIFFS' POSITION

Defendants refuse to cure manifest deficiencies in their productions. The deficiencies concern matters this Court has repeatedly resolved in favor of Plaintiffs. Defendants nonetheless have forced Plaintiffs to seek this Court's assistance again. Plaintiffs now request that this Court:

1.   Order Defendants to produce all information withheld on deliberative process privilege (DPP) grounds, as the Court has overruled those objections (Dkts. 184 & 195);

2.   Order Defendants to provide compliant privilege logs that include, at least (a) the names of attorneys who purportedly gave legal advice or created work product, and (b) adequate grounds to evaluate an invocation of privilege (Dkt. 184 at 7; Dkt. 249 at 2);

3.   Order Defendants to conduct a search and produce responsive records with the same custodians and search terms, for the time period March 10-July 15, 2025, in light of evidence in the production that the November 28 termination incorporated the review conducted for the July 1 Haiti termination;

4.   Review 20 disputed ACP/AWP withholdings in camera, order disclosure where improperly withheld, and if the Court has doubt about the propriety of the redactions writ large based on the in camera review, order a re-review of these withholdings and produce records improperly withheld; and

5.   Order Defendants to verify they have produced or logged all responsive documents to RFP 1 (Set Two), and provide the hit count and how many documents were withheld as nonresponsive.

**1. Defendants Have Violated This Court's Numerous DPP Orders.**

The Court has repeatedly made clear that "applying the qualified [DPP] is not warranted." Dkts. 184 at 3 & 195. Nonetheless, Defendants have withheld 57 documents as DPP contrary to the Court's express orders. In one egregious example, Defendants withheld information on DPP grounds

2

that had been publicly disclosed as part of the administrative record.[1] The Court's orders prohibiting the application of the DPP apply squarely to the documents for which Defendants have invoked this privilege. Defendants have not provided reasoning as to why these documents should be treated any differently. They should not. Defendants rely on boilerplate "predecisional" and/or "deliberative language," and fail to explain to why DPP is properly invoked here in light of the Court's prior rulings.

**2.  Defendants Have Failed to Provide an Adequate Privilege Log.**

Defendants fail to justify the withholdings in the privilege log (Exhibits A & B), contrary to Court orders. *See* Dkt. 184 at 7. *First*, Defendants fail to consistently identify the attorneys purported to be providing legal advice. *Second*, the descriptions often fail to substantiate the withholdings. In particular, the descriptions sometimes identify that legal advice is only a portion of the withheld information, suggesting that portions may be withheld despite being policy advice or otherwise not properly privileged.[2] *Finally*, the log in some cases is inaccurate when viewed with the document.[3]

**3.  Defendants Have Improperly Withheld Records Pursuant to ACP and AWP.**

Defendants have improperly withheld information as ACP or AWP despite express admonitions from the Court about the improper invocation of ACP. Dkt. 222 at 3 ("Defendants mischaracterized approximately one third of the [sampled] documents[.]").

Due to inconsistent redactions, it is clear some information withheld is not, in fact, legal advice or AWP despite being withheld on that ground. For instance, in a document with no agency counsel, Defendants redacted this line: "[It] would be great to distribute to OCC and OP&S FO informally to get their take on whether this is on the right track of what kind of product they'd like us to produce[.]"[4]

In other instances, it appears unlikely that information is properly withheld as ACP or AWP. For instance, Defendants withheld numerous documents *in their entirety* as ACP where the description

---

[1] *Compare* Dkt. 357-3 at 409-10 *with* NTPSA2_008690 (Defendants withheld: "State believes that there would be no foreign policy concerns with respect to a change in the TPS status of Haiti.").

[2] *See, e.g.*, NTPSA2_005675 ("Discussions about legal review of Haiti TPS DM *including language proposed by DHS counsel*" (emphasis added)); NTPSA2_005630; NTPSA2_008307 (similar).

[3] *See, e.g.*, NTPSA2_006535 (the redaction is described as "Discussion among USCIS OCC counsel regarding legal advice" despite apparently no agency counsel on the email).

[4] *Compare* NTPSA2_006387 at 3 *with* NTPSA2_007956.

suggests that the documents should be produced without such an extreme withholding. These include, for example, draft letters to congressmembers and draft Decision Memos. *See* Exhibit C. Defendants have also withheld in its entirety a "Draft legal recommendation memo from Acting General Counsel to Secretary" despite that the Court previously required the production of a parallel document. *See* Order Regarding Challenged Documents at 3, *NTPSA v. Noem*, Case No. 25-cv-5687-TLT (N.D. Cal. Oct. 31, 2025), Dkt. 169.

The improper redactions raise serious concerns about systematic improper withholdings. Plaintiffs thus respectfully ask this Court to review 20 disputed ACP/AWP withholdings in camera (see Exhibit C), order disclosure where improperly withheld, and if the Court has doubt about the propriety of the redactions writ large based on the in camera review, order Defendants to re-review their ACP/AWP withholdings and produce records improperly withheld on these grounds. See Dkt. 222 at 3 & 231 (ordering re-review of documents withheld under ACP).

**4. The Court Should Order the Search of Records for the Period March 10-July 15, 2025.**

On January 20, this Court ordered Defendants to conduct a search for discovery relevant to the Haiti termination, limiting the period of search to July 15 through November 19. Dkt. 367. However, discovery reveals that Defendants directly relied on the agency's July 1 termination decision in its November 28 termination decision. This includes—for the two primary documents that form the basis of TPS periodic reviews decisions (the "Decision Memo" and the "country conditions report")—producing an "addendum" to the prior document rather than preparing reports anew after litigation invalidated the July 1 decision.[5] In light of this, Plaintiffs seek discovery related to the July 1 Haiti termination decision. This would require expanding the date range for the search to include the period March 10 through July 15, 2025. This period is justified, and proportional, as USCIS's prior Haiti country conditions report was dated March 24, Defendants published the Federal Register Notice on July 1, and a federal court order on the same date forced Defendants to re-consider TPS for Haiti at that time. *See* 90 Fed. Reg. 28760 (July 1, 2025); *Haitian Evangelical Clergy Ass'n v. Trump*, 2025 WL 1808743, at *1 (E.D.N.Y. July 1, 2025). Defendants have falsely stated that this search would be

---

[5] *See, e.g.*, NTPSA2_006535 (producing an addendum to prior Decision Memo); NTPSA2_006833 (providing March 24 country conditions report and supplemental "addendum").

4

duplicative of a search already conducted. Dkt. 378 at 2. It is not. Defendants' prior search (from an earlier stage of this litigation) only pertained to the partial vacatur, with the period covering January 20 through February 24—the publication date of the vacatur decision. The *lack* of access to this information would deprive Plaintiffs and the Court of critical information related to how Defendants reached the decision to terminate TPS for 350,000 people.

**5.  Defendants Failed to Adequately Search for Records Responsive to RFP 1 (Set Two).**

This Court ordered Defendants to conduct a search for "documents … concerning the Trump administration's general policies and practices with respect to the TPS program." Dkt. 364 at 4; Dkt. 367. This search was not limited to the Haiti termination, and seeks decisionmaking policies and practices writ large. However, Plaintiffs have not identified *any* documents responsive to this RFP, and Defendants have refused to identify whether *any* were produced. Plaintiffs thus request that the Court require Defendants to verify under penalty of perjury they have produced or logged all responsive documents; and provide the hit count and number of documents withheld as nonresponsive. This is appropriate where Plaintiffs provide concrete evidence of insufficient production, and where there has been a history of discovery violations. *See, e.g.*, *Gosain v. Bergquist Wood McIntosh Seto, LLP*, 2022 WL 2439180, at *3 (N.D. Cal. July 5, 2022) (ordering verification of RFP responses in light of initial discovery deficiencies); *Taylor v. Google, LLC*, 2024 WL 4947270, at *2 (N.D. Cal. Dec. 3, 2024) (discovery on discovery warranted where Plaintiffs make specific showing of deficiencies). Here, such an order is proper where this Court has recognized Defendants previously improperly withheld documents as nonresponsive, Dkt. 249 at 2 (finding Defendants improperly withheld as nonresponsive 16 of 40 documents submitted for review), and where Plaintiffs demonstrated good cause for such a finding here. *See* Dkt. 253 (ordering production or logging of documents coded as nonresponsive).

**III.    DEFENDANTS' POSITION**

Defendants have worked diligently to produce all non-privileged materials responsive to the Court's discovery order on the supplemental claims. *See* Dkt. 367. Even Plaintiffs recognize that Defendants have worked to address their concerns, removing one alleged deficiency from this motion.

**1. Plaintiffs' Attempt to Expand The Discovery Period is Improper & Violates Earlier Rulings.**

Plaintiffs' fourth request above (repeated *supra* Sec. II(4)) improperly attempts to expand the scope of discovery beyond this Court's orders — Dkt. 367 at 1 — and far beyond the scope of proportionality to the challenged agency action. *See* Fed. R. Civ. P. 26(b)(1); Dkt. 378 at 2. Defendants reiterate the assertion made to Judge Kim last week in the Joint Status Report that despite Plaintiffs' invitation to make an illogical leap that connects earlier time periods to the "relevant" one for this production, the November 2025 Haiti TPS Termination is a distinct agency action from those before. *See* Dkt. 378 at 2-3; Dkt. 367 at 1; *Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 444 (9th Cir. 2024) (the APA requires courts reviewing agency action to use the administrative record of an action to assess its legality).

As Plaintiffs acknowledged in their Motion for Leave to File a Second Supplemental Complaint, Dkt. 343, the newly challenged agency action "is a post-pleading event that could not have been included in Plaintiffs' operative complaint, which was filed on July 8, 2025." *Id*. at p. 1 (emphasis added). Defendants expect the parties will discuss the Court's previous ruling on this point at the Status Conference with Judge Chen tomorrow, meaning any ruling on this procedurally-inappropriate motion is both improvident and premature. *See* Civil Standing Order on Discovery at § 4 ("no motions regarding discovery disputes may be filed without prior leave of the Court.")

**2.  Defendants Properly Assert Deliberative Process Privilege Under the Court's Orders.**

Contrary to Plaintiffs' contention, this Court's prior ruling regarding Deliberative Process Privilege ("DPP") does not equate to a blanket preclusion of DPP in this case, particularly in discovery on supplemental claims concerning a distinct agency action. *See FTC v. Warner Comm'n, Inc*., 742 F.2d 1156, 1161 (9th Cir. 1984). While several *Warner* factors weigh in favor of Defendants, the first, "relevance of the evidence" is especially strong given the multitude of non-privileged materials produced which document the reasons for the November 2025 termination.

In its June 12, 2025 order, Judge Chen acknowledged his willingness to limit DPP assertions for the first discovery production in this case because of the limits placed on the volume of documents at issue in that production set. Dkt. 195, pp. 3-4 ("[T]his Court placed limits on the discovery Plaintiffs sought—e.g., in terms of time period and the number of custodians. Furthermore, the actual number

6

of documents at issue is several hundred, not, e.g., thousands.").

Here, in discovery into Plaintiffs' supplemental claims, production over a longer period time yielded a thousands of documents. Accordingly, under Rule 26(b)(2), proportionality weighs in favor of the ability to assert DPP given the sheer scope of documents produced. *See e.g.*, Dkt. 195.

**3. It is Defendants Choice to Invoke or Waive the Attorney Client Privilege (ACP) and Attorney Work Product Privilege (AWP).**

The Attorney-Client Privilege (ACP) is extensive, but it is waivable by over-disclosure of privileged communications to third parties. *See United States v. Sanmina Corp. & Subsidiaries*, 968 F.3d 1107, 1116-17 (9th Cir. 2020) (acknowledging that "voluntarily disclosing privileged documents to third parties will generally destroy the privilege") (quotation marks omitted). This privilege protects the rights of the asserting party to "confidential communications" with counsel regarding legal advice. *Id* at 1116 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). As here, a party in litigation must stand on its rights to assert ACP to avoid waiver. *Id* at 1116 (privilege asserted "at [the client's] instance") (quoting *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010)).

Thus, Defendants have asserted ACP over documents which Defendants understand relate to seeking legal advice, including where the context of a request for legal advice would be improperly revealed absent such an assertion, avoiding waiver by disclosure as the law requires.

Likewise, Attorney Work Product Privilege (AWP) "protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation.'" *Id* at 1119. A party is entitled to "prevent exploitation of [its] efforts in preparing for litigation." *Id*.

Here, USCIS prepared a new factual analysis based on relevant country conditions to assist Secretary Noem in determining, pursuant to statute, whether Haiti continued to meet the requirements for the designation. Defendants did so with the understanding that her February 2025 *partial vacatur* of Haiti's TPS designation was set aside in litigation, meaning a future decision could also be the subject of litigation as here. *See, e.g.*, *Haitian Evangelical Clergy Ass'n*, 789 F. Supp. 3d 255 (E.D.N.Y. 2025). Thus, while the November 2025 Haiti Termination Notice arises out of an entirely new factual context that is distinct and separate from the Secretary's prior TPS determinations, documents prepared to support the Secretary's factfinding on that decision are entitled to AWP where

they incorporate mental impressions of counsel discussing anticipated or ongoing litigation or where they incorporate action taken in response to legal advice from counsel relating to ongoing litigation. *See*, *e.g.*, 968 F.3d at 1116; 8 U.S.C. § 1254a(b)(3)(B); *see also* Dkt. 351 at 3–5. Defendants' assertions of AWP, as described in the privilege log, are therefore proper and entitled to protection by this Court.

**4. Defendants' Privilege Log Contains Sufficient Privilege Descriptions.**

Defendants provided Plaintiffs with an extensive privilege log incorporating specific details in support of the assertion of privilege over each document over which a privilege was asserted. Defendants redacted documents in accordance with the Court's discovery orders.

**5. Defendants Searched for Records Responsive to RFP 1 (Set Two); Plaintiffs' Objection is Baseless.**

As explained in the Joint Status Report, Defendants worked diligently to produce all non-privileged materials responsive to the Court's discovery order on the supplemental claims. *See* Dkt. 367. The order for supplemental discovery does not require a hit count for each request for production, and indeed, some produced items may respond to several such requests. *See* Dkt. 367; *see also* Dkt. 360. Defendants cannot identify the basis for Plaintiffs' objection aside from pure speculation that the document count appears low. Defendants searched for all relevant materials.

Date:  March 16, 2026

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

RUTH ANN MUELLER
Senior Litigation Counsel

ERIC SNYDERMAN
LAUREN BRYANT
JEFFREY HARTMAN
CATHERINE ROSS
DANIEL CAPPELLETTI
ILANA KRAMER
SHELBY WADE
Trial Attorneys

/s/ Eric M. Snyderman
Eric Michael Snyderman
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 742-7079
Eric.M.Snyderman@usdoj.gov

*Attorneys for the Defendants*

Date:  March 16, 2026

Respectfully submitted,

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

 */s/  Emilou MacLean*
Emilou MacLean

Michelle (Minju) Y. Cho
Amanda Young
ACLU FOUNDATION
OF NORTHERN CALIFORNIA

Ahilan T. Arulanantham
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW

Eva L. Bitran
Diana Sanchez
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA

Jessica Karp Bansal
Lauren Michel Wilfong (*Pro Hac Vice*)
NATIONAL DAY LABORER ORGANIZING
NETWORK

Erik Crew (*Pro Hac Vice*)
HAITIAN BRIDGE ALLIANCE

Attorneys for Plaintiffs

9

## SIGNATURE ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that each of the other Signatories have concurred in the filing of this document.

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

*/s/ Emilou MacLean*

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

*/s/ Emilou MacLean*