**FOR PUBLICATION**

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| NATIONAL TPS ALLIANCE; MARIELA GONZALEZ; FREDDY ARAPE RIVAS; M.H.; CECILIA GONZALEZ HERRERA; ALBA PURICA HERNANDEZ; E. R.; HENDRINA VIVAS CASTILLO; VILES DORSAINVIL; A.C.A.; SHERIKA BLANC, <br><br> *Plaintiffs - Appellees*, <br><br> v. <br><br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES OF AMERICA, <br><br> *Defendants - Appellants*. | No. 25-2120 <br><br> D.C. No. 3:25-cv-01766-EMC <br> Northern District of California, San Francisco <br><br> ORDER |

Filed March 18, 2026

Before: Kim McLane Wardlaw, Salvador Mendoza, Jr., and
Anthony D. Johnstone, Circuit Judges.

2                NATIONAL TPS ALLIANCE V. NOEM

## SUMMARY[*]

### Immigration

The panel denied the Government's motion to vacate the panel's opinion in *National TPS Alliance v. Noem*, 150 F.4th 1000 (9th Cir. 2025) ("*NTPSA I*").

The question was whether the appeal became moot when—after the panel issued its decision—the district court entered partial summary judgment against the Government, thus transforming the preliminary relief (postponement) into permanent relief (set aside). The panel assumed without deciding that the issue of whether the district court erred by granting postponement of the vacatur of Venezuela's Temporary Protected Status became moot when the district court set aside the vacatur on the same grounds.

The Government argued that vacatur was warranted under *United States v. Munsingwear*, 340 U.S. 36 (1950), in which the Supreme Court explained that its established practice in dealing with a civil case that has become moot prior to the Court's decision is to reverse or vacate the judgment below and remand with a direction to dismiss. However, this court has since explained that, when mootness arises *after* a valid decision has already been rendered, whether to vacate is a question that lies within the court's discretion. The panel held that the circumstances of this case were distinguishable from those in *Munsingwear*, and *Munsingwear* therefore did not compel vacatur.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel wrote that Judge Berzon recently suggested that the court weigh three equitable considerations when deciding whether the extraordinary remedy of vacatur is appropriate: (1) whether the opinion is valuable to the legal community as a whole; (2) whether letting the opinion stand would result in prejudice to the parties; and (3) whether mootness arose due to the voluntary conduct of the parties. *Redd v. Guerrero*, 122 F.4th 1203 (9th Cir. 2024) (Mem.) (Berzon, J., statement respecting the denial of reh'g en banc). Concluding that the first two factors weigh in favor of Plaintiffs, and the third factor was, at best, neutral, the panel concluded that the public interest weighed heavily against vacatur.

---

**COUNSEL**

Ahilan T. Arulanantham (argued), Center for Immigration Law and Policy, UCLA School of Law, Los Angeles, California; Eva L. Bitran and Diana Sanchez, ACLU Foundation of Southern California, Riverside, California; Michelle Y. Cho, Emilou MacLean, and Amanda Young, ACLU Foundation of Northern California, San Francisco, California; Jessica K. Bansal and Lauren M. Wilfong, National Day Laborer Organizing Network, Pasadena, California; Erik Crew, Haitian Bridge Alliance, San Diego, California; for Plaintiffs-Appellees.

Drew C. Ensign (argued), Deputy Assistant Attorney General; Amanda Saylor, Carlton F. Sheffield, Jeffrey M. Hartman, Lauren Bryant, Lori Mackenzie, Anna Dichter, Eric M. Snyderman, Catherine Ross, Daniel Cappelletti, Ilana Kramer, Shelby Wade, and Luz M. Restrepo, Trial

Attorneys; Craig A. Newell Jr. and Ruth M. Mueller, Senior Litigation Counsel; William H. Weiland, Acting Assistant Director; Sarah L. Vuong, Assistant Director; Office of Immigration Litigation; Yaakov M. Roth, Principal Deputy Assistant Attorney General; Brett A. Shumate, Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Defendants-Appellants.

Matt A. Crapo and Christopher J. Hajec, Immigration Reform Law Institute, Washington, D.C., for Amicus Curiae Immigration Reform Law Institute.

Jeremiah L. Morgan and William J. Olson, William J. Olson PC, Vienna, Virginia; Rick Boyer, Integrity Law Firm, Lynchburg, Virginia; Patrick M. McSweeney, Powhatan, Virginia; Michael Boos, Citizens United, Washington, D.C.; for Amicus Curiae America's Future, Citizens United, and Conservative Legal Defense and Education Fund.

Steven K. Ury, Elena Medina, Deborah L. Smith, and Nathanial Putnam, Service Employees International Union, Washington, D.C.; Daniel B. Rojas, Rothner, Segall & Greenstone, Pasadena, California; Matthew Holder, Communications Workers of America, Washington, D.C.; Mario Martinez, United Farm Workers of America, Keene, California; for Amici Curiae Service Employees International Union, Communications Workers of America, and United Farm Workers of America.

Anne Lai, UC Irvine School of Law, Irvine, California; Andrew I. Schoenholtz, Georgetown University Law Center, Washington, D.C.; Jaya Ramji-Nogales, Beasley School of Law, Temple University, Philadelphia, Pennsylvania; for Amici Curiae Immigration Law Scholars.

Jesse P. Basbaum, Alex Flores, and Annabelle Wilmott, Deputy Attorneys General; Vilma Palma-Solana, Supervising Deputy Attorney General; Michael Newman, Senior Assistant Attorney General; Rob Bonta, California Attorney General; Office of the California Attorney General, Oakland, California; Cleland B. Welton II, Assistant Solicitor General; Zoe Levine, Special Counsel for Immigrant Justice; Judith N. Vale, Deputy Solicitor General; Barbara D. Underwood, Solicitor General; Letitia James, New York Attorney General; Office of the New York Attorney General, New York, New York; William Tong, Connecticut Attorney General, Office of the Connecticut Attorney General, Hartford, Connecticut; Kathleen Jennings, Delaware Attorney General, Office of the Delaware Attorney General, Wilmington, Delaware; Brian L. Schwalb, District of Columbia Attorney General, Office of the District of Columbia Attorney General, Washington, D.C.; Anne E. Lopez, Hawaiʻi Attorney General, Office of the Hawaiʻi Attorney General, Honolulu, Hawaiʻi; Kwame Raoul, Illinois Attorney General, Office of the Illinois Attorney General, Chicago, Illinois; Aaron M. Frey, Maine Attorney General, Office of the Maine Attorney General, Augusta, Maine; Dana Nessel, Michigan Attorney General, Office of the Michigan Attorney General, Lansing, Michigan; Keith Ellison, Minnesota Attorney General, Office of the Minnesota Attorney General, St. Paul, Minnesota; Aaron D. Ford, Nevada Attorney General, Office of the Nevada Attorney General, Carson City, Nevada; Matthew J. Platkin, New Jersey Attorney General, Office of the New Jersey Attorney General, Trenton, New Jersey; Dan Rayfield, Oregon Attorney General, Office of the Oregon Attorney General, Salem, Oregon; Peter F. Neronha, Rhode Island Attorney General, Office of the Rhode Island

Attorney General, Providence, Rhode Island; Anthony G. Brown, Maryland Attorney General, Office of the Maryland Attorney General, Baltimore, Maryland; Andrea J. Campbell, Commonwealth of Massachusetts Attorney General, Office of the Commonwealth of Massachusetts Attorney General, Boston, Massachusetts; Charity R. Clark, Vermont Attorney General, Office of the Vermont Attorney General, Montpelier, Vermont; Nicholas W. Brown, Washington Attorney General, Office of the Washington Attorney General, Olympia, Washington; for Amici Curiae States of California, New York, Connecticut, Delaware, Hawaiʻi, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, Oregon, Rhode Island, Vermont, Washington, and the District of Columbia.

Robert S. Chang and Shaleen Shanbhag, Fred T. Korematsu Center for Law and Equality, UC Irvine School of Law, Irvine, California; Rose Cuison-Villazor, Center for Immigrant Justice, Rutgers Law School, Newark, New Jersey; for Amici Curiae Members of Congress.

## ORDER

Before us is Defendant-Appellee's (the "Government") Motion to Vacate our opinion in *National TPS Alliance v. Noem*, 150 F.4th 1000 (9th Cir. 2025) ("*NTPSA I*"). The Government argues that the district court's subsequent entry of partial summary judgment in favor of Plaintiffs-Appellees, National TPS Alliance and seven individual Temporary Protected Status ("TPS") holders, *National TPS Alliance v. Noem*, 798 F. Supp. 3d 1108 (N.D. Cal. Sept. 5, 2025), mooted *NTPSA I* and that vacatur is warranted under *United States v. Munsingwear*, 340 U.S. 36, 39 (1950). Plaintiffs argue that *Munsingwear* vacatur is inappropriate because mootness arose after we published *NTPSA I*, and the Government has failed to demonstrate that the "extraordinary remedy" of vacatur is appropriate here. *See U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26–27 (1994) (the Government, "as the party seeking relief from the status quo of the appellate judgment," bears the burden of "demonstrat[ing] . . . equitable entitlement to the extraordinary remedy of vacatur"). We deny the Government's motion.

1. There is no dispute that this appeal was not moot when we issued our decision on August 29, 2025. As of that date, the district court's postponement order remained in effect, and we could grant relief to either party by affirming or reversing the district court. The question is whether the appeal became moot when the district court entered partial summary judgment against the Government, thus

transforming the preliminary relief (postponement) into permanent relief (set aside).[1]

We assume without deciding that the issue of whether the district court erred by granting postponement under 5 U.S.C. § 705 of Secretary Noem's vacatur of Venezuela's TPS became moot when the district court set aside the vacatur on the same grounds. However, even under this assumption, mootness did not occur until September 5, 2025—*after* we published our opinion in *NTPSA I*. Therefore, we must consider whether post-decisional mootness has any bearing on the Government's Motion to Vacate.[2]

---

[1] The Government appealed the district court's March 31, 2025, postponement order in appeal No. 25-2120. *See National TPS Alliance v. Noem*, 773 F. Supp. 3d 807 (N.D. Cal. 2025). We affirmed the district court in *NTPSA I*. One week after our decision in *NTPSA I*, the district court entered partial summary judgment for Plaintiffs and set aside Secretary Kristi Noem's vacatur and termination of Venezuela's TPS, as well as her partial vacatur of Haiti's TPS. *National TPS Alliance v. Noem*, 798 F. Supp. 3d 1108 (N.D. Cal. Sept. 5, 2025). The Government appealed the district court's summary judgment order in appeal No. 25-5724. We affirmed the district court again in *National TPS Alliance v. Noem*, 166 F.4th 739 (9th Cir. Jan. 28, 2026) ("*NTPSA III*"). The Government's Motion seeks to vacate the decision we issued in No. 25-2120, *NTPSA I*.

[2] We note that the case law concerning mootness in this context is unclear. The standard case involving mootness due to the entry of final relief by the district court involves the appeal of a preliminary injunction that is mooted by the entry of a permanent injunction. Preliminary and permanent injunctions have similar elements, though "the standard for granting permanent injunctive relief is higher (in that it requires actual success on the merits)." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 784 n.13 (9th Cir. 2019). The Supreme Court has explained that where a litigant is "found to be entitled to the permanent injunction that he seeks," the issuance of a preliminary injunction is almost always "harmless error."

2. In *Munsingwear*, the Supreme Court explained that "[t]he established practice of the Court in dealing with a civil case . . . which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss." 340 U.S. at 39. However, we have since explained that "[t]here is a significant difference between a request to dismiss a case or proceeding for mootness prior to the time an appellate court has rendered its decision on the merits and a request made after that time." *Armster v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 806 F.2d 1347, 1355 (9th Cir. 1986). When mootness arises after "a valid decision has already been rendered," "[w]hether or not to dismiss [or vacate] is a question that lies within our discretion." *Id.* We will not vacate an earlier decision of our court without "a sufficient justification for the exercise of that limited, discretionary power." *Id.*

---

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 314–15 (1999). But set asides are not injunctions. *See NTPSA III*, 166 F.4th at 759–61, 767; *see also Trump v. CASA, Inc.*, 606 U.S. 831, 873 (Kavanaugh, J., concurring) (explaining that set asides operate in a "functional[ly] equivalent" manner to preliminary injunctions but are not universal injunctions). As we explained in *NTPSA III*, "our opinion [] for the first time addresse[d] solely the merits of Plaintiffs' claims," and did not turn on any "assessment of the balance of the equities or the parties' respective irreparable harms." *NTPSA III*, 166 F.4th at 754. In that respect, it is odd to say that the entry of partial summary judgment and set aside relief on Plaintiffs' Administrative Procedure Act claims mooted the appeal of the postponement order, since the district court's partial summary judgment order turned on fewer (not the same or more burdensome) elements than did its postponement order. Nonetheless, we need not resolve these complicated issues today. We assume for the sake of this motion that the Government is correct that appeal No. 25-2120 became moot when the district court entered partial summary judgment in favor of Plaintiffs.

We hold that the circumstances of this case are distinguishable from those in *Munsingwear*, and *Munsingwear* therefore does not compel vacatur.[3] Our decision in *Donovan v. Vance*, 70 F.4th 1167, 1172–73 (9th Cir. 2023), is distinguishable for the same reason.

3. Vacatur for post-decisional mootness is an "extraordinary remedy." *See Dickens v. Ryan*, 744 F.3d 1147, 1148 (9th Cir. 2014) (en banc) (quoting *U.S. Bancorp Mortg. Co.*, 513 U.S. at 26). In *Armster*, we explained that "vacat[ing] our decision . . . based upon conduct occurring after its issuance . . . would [have the effect of] depriving the [parties] of the benefit of an appellate court decision that adjudicated properly presented questions concerning their specific . . . rights," and that this "alone would give us considerable pause." 806 F.3d at 1355. We also considered the lack of "any public or juridical interest that would warrant our withdrawal of our opinion." *Id.* In *Dickens*, which similarly concerned a motion to vacate a published opinion for post-decisional mootness, we also weighed the prejudice of mootness to the parties and that "judicial precedents . . . are valuable to the legal community as a whole." 744 F.3d at 1148 (internal quotations and citation omitted).

Recently, Judge Berzon suggested that we "weigh[] three equitable considerations when deciding whether vacatur is appropriate: (1) whether the opinion is valuable to the legal community as a whole; (2) whether letting the opinion stand would result in prejudice to the parties; and (3) whether mootness arose due to the voluntary conduct of the parties."

---

[3] Even if *Munsingwear* was not factually distinguishable, we have never understood *Munsingwear* to adopt a mandatory rule. *See Dickens v. Ryan*, 744 F.3d 1147, 1148 (9th Cir. 2014) (en banc).

*Redd v. Guerrero*, 122 F.4th 1203, 1205 (9th Cir. 2024) (Mem.) (Berzon, J., statement respecting the denial of reh'g en banc) (internal quotations and citations omitted).  We consider those three factors here, recognizing that because vacatur is a discretionary, equitable remedy, we have broad latitude in determining whether vacatur serves the public interest.  *See U.S. Bancorp Mortg. Co.*, 513 U.S. at 26–27; *Dickens*, 744 F.3d at 1148; *United States v. Payton*, 593 F.3d 881, 884–86 (9th Cir. 2010).

As to the first factor, it is well established that "[j]udicial precedents are presumptively correct and valuable to the legal community as a whole." *U.S. Bancorp Mortg. Co.*, 513 U.S. at 26 (citation omitted).  Accordingly, "[t]hey are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." *Id.* (citation omitted).  This case will "undoubtedly affect cases now" or in the future "pending before this court," as well as other courts. *Dickens*, 744 F.3d at 1148.  "We see no reason to undo this precedent and force future panels to duplicate our efforts by re-deciding issues we have already resolved within the contours of article III." *Id.*

As to the second factor, the Government would not be prejudiced by the denial of its Motion to Vacate.  The Government suggests that it is prejudiced because it is "bound in ongoing litigation by a precedent that [it] was prevented from challenging through no fault of its own." That is incorrect.  Even where a decision has become moot, a party may "seek an en banc rehearing for the purpose of vacating our decision." *Payton*, 593 F.3d at 886.  The party may also petition for certiorari for the same purpose. *See Munsingwear*, 340 U.S. at 106.  The Government chose not to immediately petition for rehearing en banc in this case.

Thus, to the extent that the lack of an en banc rehearing prejudiced the Government, those circumstances were, at least in part, a creature of the Government's own making.

Moreover, after the parties completed briefing on the Government's motion, we decided *NTPSA III*. We reached substantially the same conclusions in *NTPSA III* as in *NTPSA I* as to the merits of the Government's arguments, though *NTPSA III* arose in a different procedural posture than did *NTPSA I*. This reality further undermines the argument that the Government was prejudiced by its inability to seek en banc rehearing in *NTPSA I*. The Government raised substantially all the same arguments in its petition for rehearing in *NTPSA III* as it would have been able to raise in *NTPSA I*. *See National TPS Alliance v. Noem*, No. 25-5724 (9th Cir. Feb. 3, 2026), Dkt. No. 76.

Lastly, as the Government itself acknowledges, the prejudicial impact of our decision is muted by the fact that the Supreme Court's October 3, 2025, emergency stay order remains in place pending the "disposition of a petition for a writ of certiorari, if such writ is timely sought." *See Noem v. Nat. TPS Alliance*, 606 U.S. ---, 146 S. Ct. 23, 24 (2025) (Mem.). Neither *NTPSA I* nor *NTPSA III* will change any facts on the ground until that petition is adjudicated.

As to the third factor, the parties dispute whether the Government's litigation tactics are to blame for the timing of mootness, or rather if mootness arose by mere "happenstance" due to an unpredictably timed district court order. We need not assign blame for the timing of mootness. Even if mootness was entirely out of the control of each of the parties, vacatur for "[i]nvoluntary mootness . . . is neither mandatory nor commonplace." *Redd*, 122 F.4th at 1206. Even in the most unpredictable and happenstance of

circumstances, such as mootness due to the unexpected death of a party, we have declined to vacate an earlier decision. *See, e.g., Dickens*, 744 F.3d at 1147–48.

Accordingly, the first two factors weigh in favor of Plaintiffs, and the third factor is, at best, neutral. Because the public interest weighs heavily against the vacatur of *NTPSA I*, we decline to vacate our decision.

4.   That the mandate had not yet been issued when the potential mootness arose is not dispositive. As we have explained on several occasions, the operative question is whether mootness arose before or after our decision was issued. *See Armstead*, 806 F.2d at 1355; *Payton*, 593 F.3d at 884. Several of our sister circuits agree. *See Payton*, 593 F.3d at 884 (collecting cases). Vacatur due to post-decisional mootness is the rare exception, not the rule. *Dickens*, 744 F.3d at 1148.

The Government's Motion to Vacate our opinion in *NTPSA I* is **DENIED**.