# EXHIBIT 14

PRE-DECISIONAL/DELIBERATIVE

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
*Office of the Director*
Camp Springs, MD 20588-0009



U.S. Citizenship
and Immigration
Services

**October 29, 2025**

**DECISION**

MEMORANDUM FOR THE SECRETARY

FROM:          Joseph B. Edlow
               Director

SUBJECT:       **Decision Memorandum on the Termination of Temporary Protected
               Status Designation for Haiti**

**Purpose**

U.S. Citizenship and Immigration Services (USCIS) is presenting a new recommendation of
"termination" of the Temporary Protected Status designation for Haiti for your consideration after a
federal district court judge impermissibly blocked your previous termination decision that was
informed by the June 4, 2025 Decision Memo with subject "Temporary Protected Status for Haiti"
(Attachment D). In continuing compliance with statutory requirements, this new recommendation,
is based on a review of current conditions in Haiti and an analysis indicating that permitting Haitian
nationals to remain temporarily in the United States is contrary to the U.S. national interest.

**Background**

Haiti was initially designated for Temporary Protected Status more than fifteen years ago on
January 21, 2010, based on a determination that there were "extraordinary and temporary
conditions" in Haiti that prevented nationals of Haiti from returning in safety and that permitting
such aliens to remain temporarily in the United States would not be "contrary to the national interest
of the United States."[1] Following the initial designation, former Secretary Napolitano extended and
newly designated Haiti for Temporary Protected Status once, from July 23, 2011 through January
22, 2013, based on extraordinary and temporary conditions.[2] Thereafter, Temporary Protected
Status was extended three more times based on extraordinary and temporary conditions: (1) from
January 23, 2013 through July 22, 2014[3]; (2) from July 23, 2014 through January 22, 2016[4]; and (3)

---

[1] Designation of Haiti for Temporary Protected Status, 75 FR 3476 (Jan. 21, 2010).

[2] Extension and Redesignation of Haiti for Temporary Protected Status, 76 FR 29000 (May 19, 2011).

[3] Extension of the Designation of Haiti for Temporary Protected Status, 77 FR 59943 (Oct. 1, 2012).

[4] Extension of the Designation of Haiti for Temporary Protected Status, 79 FR 11808 (Mar. 3, 2014).

PRE-DECISIONAL/DELIBERATIVE

NTPSA2_008514
NTPSA2_008514

PRE-DECISIONAL/DELIBERATIVE

**Decision Memorandum on Termination of Temporary Protected Status Designation for Haiti**
Page 2

from January 23, 2016 through July 22, 2017.[5] Former Secretary Kelly then granted a six-month extension of Temporary Protected Status from July 23, 2017 through January 22, 2018, but made clear that a further extension appeared unwarranted based on then-current country conditions.[6] Subsequently, then-Acting Secretary Duke announced the termination of the Temporary Protected Status designation of Haiti effective July 22, 2019.[7]

In spite of Section 244 of the Immigration and Nationality Act clearly stating that Temporary Protected Status determinations are not subject to judicial review, the termination of Haiti's 2011 designation was challenged in several lawsuits, and court injunctions required DHS to temporarily continue Temporary Protected Status for Haiti pending a final court order.[8] Former Secretary Mayorkas newly designated Haiti on the basis of extraordinary and temporary conditions effective August 3, 2021 through February 3, 2023.[9] Thereafter, Temporary Protected Status for Haiti was extended and newly designated from February 4, 2023 through August 3, 2024.[10] In July 2024, DHS issued a notice stating that Secretary Mayorkas had once again extended and newly designated Haiti for Temporary Protected Status for an 18-month period, set to expire on February 3, 2026.[11]

On February 24, 2025, DHS published a *Federal Register* notice announcing your decision to partially vacate the July 1, 2024 Temporary Protected Status decision by reducing the period of extension and new designation of Temporary Protected Status for Haiti from the statutory maximum of 18 months to 12 months with an amended end date of August 3, 2025.[12] On July 1, 2025, DHS published a *Federal Register* notice announcing your decision to terminate the Temporary Protected Status designation for Haiti, effective September 2, 2025.[13] Again, in spite of the statutory prohibition of judicial review, on July 15, 2025, a judge in the U.S. District Court for the Eastern District of New York issued a final judgment in *Haitian Evangelical Clergy Ass'n v. Trump*, No. 25-cv-1464, that makes the effective date of any termination no earlier than February 3, 2026.[14]

Given this court-ordered change, Haiti's existing designation for Temporary Protected Status will expire on February 3, 2026. At least 60 days before a Temporary Protected Status designation

---

[5] Extension of the Designation of Haiti for Temporary Protected Status, 80 FR 51582 (Aug. 25, 2015).

[6] Extension of the Designation of Haiti for Temporary Protected Status, 82 FR 23830 (May 24, 2017).

[7] Termination of the Designation of Haiti for Temporary Protected Status, 83 FR 2648 (Jan. 18, 2018).

[8] On Dec. 28, 2023, the U.S. District Court for the Northern District of California dismissed *Ramos v. Nielsen*, No. 18-cv-01554 (N.D. Cal. Dec. 28, 2023). *Bhattarai v. Nielsen*, No. 19-cv-731 (N.D. Cal. Mar. 12, 2019) was consolidated with *Ramos* in August 2023. The court agreed with the government position that subsequent Temporary Protected Status designations rendered the pending litigation moot.

[9] Designation of Haiti for Temporary Protected Status, 86 FR 41863 (Aug. 3, 2021).

[10] Extension and Redesignation of Haiti for Temporary Protected Status, 88 FR 5022 (Jan. 26, 2023).

[11] Extension and Redesignation of Haiti for Temporary Protected Status, 89 FR 54484 (July 1, 2024).

[12] Partial Vacatur of 2024 Temporary Protected Status Decision for Haiti, 90 FR 10511 (Feb. 24, 2025).

[13] Termination of the Designation of Haiti for Temporary Protected Status, 90 FR 28760 (July 1, 2025).

[14] On September 5, 2025, a second district court also issued a judgment setting aside the prior partial vacatur determination for Haiti TPS. *Nat'l TPS Alliance v. Noem*, No. 23-cv-1766 (N.D. Cal.).

PRE-DECISIONAL/DELIBERATIVE

PRE-DECISIONAL/DELIBERATIVE

**Decision Memorandum on Termination of Temporary Protected Status Designation for Haiti**
Page 3

expires, you, after consultation with appropriate U.S. Government agencies, are required to review the conditions in a country designated for Temporary Protected Status to determine whether the conditions supporting the designation continue to be met, and, if so, the length of an extension of the designation.[15] A timely determination must be made by December 5, 2025.

**Statutory Considerations**
In compliance with the U.S. District Court for the Eastern District of New York's final judgment, the current Temporary Protected Status designation period for Haiti is extended through February 3, 2026. On June 4, 2025, you signed a Decision Memo from Acting Director Alfonso-Royals with the subject "Temporary Protected Status for Haiti." You concurred with USCIS' recommendation of "termination" of Haiti's designation for Temporary Protected Status.

In that Decision Memo, USCIS reviewed then-current country conditions in Haiti and described its reasoning for why termination of Temporary Protected Status for Haiti was warranted. This review included examining: (a) whether extraordinary and temporary conditions in Haiti that prevent aliens who are Haitian nationals from returning to Haiti in safety continued to exist, and (b) if permitting Haitian nationals to remain temporarily in the United States was contrary to the national interest of the United States. USCIS concluded the situation in Haiti was concerning; however, the United States must prioritize its national interests, which includes assessing foreign policy, public safety, national security, migration factors, immigration policy, and economic considerations. USCIS outlined the national interest concerns in its memo to you. In considering these factors individually and cumulatively, you determined that permitting Haitian nationals to remain temporarily in the United States was contrary to the U.S. national interest.[16]

Since you signed the June 4, 2025 Decision Memo, USCIS has once again examined conditions in Haiti and carefully considered relevant national interest considerations in assessing whether the designation for Haiti should be extended or terminated. Importantly, this memorandum requests a new determination based on updated conditions and considerations.

The country conditions in Haiti since your previous decision remain concerning, but termination is still warranted. As an example of the challenges still facing the country, during his August 28, 2025 address to the United Nations (UN) Security Council, the UN Secretary-General reported that 1.3 million people – approximately 12% of Haiti's population – have been forced to temporarily leave their homes and are internally displaced due to escalating violence and that gang violence has "engulfed" Port-au-Prince "and spreads beyond."[17] While this temporary internal relocation is disruptive, it also indicates that there are areas in Haiti that remain suitable to reside in. At the UN Security Council briefing on Haiti on August 28, 2025, the Acting U.S. Ambassador to the UN,

---

[15] *See* Immigration and Nationality Act (INA) sec. 244(b)(3)(A), 8 U.S.C. § 1254a(b)(3)(A); *see also* Attachment A: Temporary Protected Status Legal Authority.

[16] For further details, please see Attachment D: June 4, 2024 Signed Decision Memo, Temporary Protected Status for Haiti.

[17] United Nations, "Security-General's remarks to the Security Council – on Haiti [trilingual, as delivered; scroll down for all-English and all-French]," Aug. 28, 2025, https://www.un.org/sg/en/content/sg/statement/2025-08-28/secretary-generals-remarks-the-security-council-haiti-trilingual-delivered-scroll-down-for-all-english-and-all-french.

PRE-DECISIONAL/DELIBERATIVE

PRE-DECISIONAL/DELIBERATIVE

**Decision Memorandum on Termination of Temporary Protected Status Designation for Haiti**
Page 4

Dorothy Shea, commented that "the United States remains concerned about escalating levels of violence in Haiti" and "the territorial expansion of the gangs threatens to undermine gains made by both the Haitian National Police and the Multinational Security Support mission."[18] At that time, Acting Ambassador Shea further highlighted humanitarian concerns such as displacement of 1.3 million people, recruitment of children in armed gangs, and food insecurity in the country.[19] USCIS has considered these concerns, and now places them in the context of more recent statements made by Ambassador Mike Waltz, who was officially sworn in as the U.S. Representative to the UN on September 20, 2025. During the most recent UN Security Council briefing on Haiti on October 22, 2025, Ambassador Waltz acknowledged that Haiti "has had a long and difficult history" and "truly stands at a crossroad."[20] Ambassador Waltz also reiterated country conditions and their broader impact for the region: "…we have gangs that are terrorizing communities, extorting families, recruiting children to commit horrors on behalf of the gang leaders. The spillover effects of this violence threaten not only Haiti but the stability of the wider Caribbean and the Western Hemisphere."[21] In those same remarks, Ambassador Waltz applauded the UN Security Council's September 30, 2025 adoption of the resolution transitioning the Kenyan-led Multinational Security Support mission to a new multinational Gang Suppression Force that would be supported by a newly created UN Support Office in Haiti.[22] Per the United Nations, "under an initial 12-month mandate, the GSF [Gang Suppression Force] will work in close coordination with the Haitian National Police (HNP) and the Haitian armed forces to conduct intelligence-led operations to neutrali[z]e gangs, provide security for critical infrastructure and support humanitarian access. The 5,550-strong force will also protect vulnerable groups, support reintegration of former fighters and help strengthen Haitian institutions."[23]

On October 1, 2025, Secretary Rubio issued a press statement stating "[the Gang Suppression] force will address Haiti's immediate security challenges and lay the groundwork for long-term stability... moving forward, the GSF, with support from the UNSOH [UN Support Office in Haiti], will transition to an international burden-sharing model with the sufficient resources needed to fight the gangs."[24] In recent remarks, the Alternate Representative to the UN for Special Political Affairs stated "just a few weeks ago, this Council passed a resolution for a Gang Suppression Force and a

---

[18] U.S. Mission to the UN, "Remarks at a UN Security Council Briefing on Haiti" (Aug. 28, 2025), https://ht.usembassy.gov/remarks-at-a-un-security-council-briefing-on-haiti/.

[19] *Id.*

[20] U.S. Mission to the UN, "Remarks at a UN Security Council Briefing on Haiti" (Oct. 22, 2025), https://usun.usmission.gov/remarks-at-a-un-security-council-briefing-on-haiti-8/.

[21] *Id.*

[22] *Id.*

[23] United Nations, "UN Security Council approves new 'suppression force' for Haiti amid spiraling gang violence" Sept. 30, 2025, https://news.un.org/en/story/2025/09/1166006.

[24] U.S. Dep't of State, "On the Next Steps to Restoring Security in Haiti," Oct. 1, 2025, https://www.state.gov/releases/office-of-the-spokesperson/2025/10/on-the-next-steps-to-restoring-security-in-haiti/.

PRE-DECISIONAL/DELIBERATIVE

PRE-DECISIONAL/DELIBERATIVE

**Decision Memorandum on Termination of Temporary Protected Status Designation for Haiti**
Page 5

UN Support Office. These measures will restore security in Haiti and bring gangs to their knees."[25] There have also been some positive developments in Haiti's economic conditions, further underscoring signs of optimism. According to the World Bank, "modest GDP growth is projected by 2026 as investment increases from a low baseline, assuming improvements on the political and security fronts."[26]

Since your June 4, 2025 determination, USCIS also has continued to assess national interest factors in relation to the designation of Haiti for Temporary Protected Status. A key consideration in the national interest analysis has been the impact of Temporary Protected Status on national security and public safety threats in the United States. In May 2025, the U.S. Department of State (State) designated two Haitian gangs, Viv Ansanm and Gran Grif, as Foreign Terrorist Organizations.[27] According to State, "[t]he groups provide a unified platform for criminal groups to use violence to destabilize Haiti and quash actions aimed at restoring state control."[28] As the influence of these Foreign Terrorist Organizations spreads and they exercise de facto territorial control, it raises concerns that individuals associated with or sympathetic to these groups – whether newly arriving or already residing in the United States – could have affiliations or intentions that run counter to U.S. interests, such as ties to gangs and weapon smuggling.[29] As recently as September 2025, Secretary Rubio and other U.S. officials have repeatedly commented that the designated Haitian gangs have overrun Haiti and have also destabilized the region.[30] Since the U.S. designated Viv Ansanm and Gran Grif as foreign terrorist organizations, the Department of Homeland Security, Department of Justice, and Department of State have already announced arrests and indictments of

---

[25] U.S. Mission to the UN, "Explanation of Vote Following the Adoption of a UN Security Council Resolution on Haiti," (Oct. 17, 2025), https://usun.usmission.gov/explanation-of-vote-following-the-adoption-of-a-un-security-council-resolution-on-haiti/.

[26] World Bank, "The World Bank in Haiti," (last updated Apr. 28, 2025), https://www.worldbank.org/en/country/haiti/overview.

[27] *See* Foreign Terrorist Organization Designations of Viv Ansanm and Gran Grif, 90 FR 19065 (May 5, 2025).

[28] *Id.*

[29] *See, e.g.*, New York Times, "Haiti Doesn't Make Guns. So How Are Gangs Awash in Them?" (Mar. 20, 2025) ("The United Nations imposed an arms embargo on Haiti three years ago, yet most weapons on Haiti's streets are from the United States, where they are purchased by straw buyers and smuggled into the country by sea or sometimes by land through the Dominican Republic, according to the United Nations."), https://www.nytimes.com/2025/03/30/us/haiti-gangs-guns-smuggling.html#:~:text=The%20United%20Nations%20imposed%20an,through%20Haiti's%20gang%2Dinfested%20seaports.

[30] *See, e.g.*, U.S. Dep't of State, "Secretary of State Marco Rubio with Ainsley Erhardt, Brian Kilmeade, and Lawrence Jones of Fox and Friends" (Sept. 23, 2025), https://www.state.gov/releases/office-of-the-spokesperson/2025/09/secretary-of-state-marco-rubio-with-ainsley-erhardt-brian-kilmeade-and-lawrence-jones-of-fox-and-friends/ ("…even close to home in the Western Hemisphere, in a place like Haiti that's been overrun by gangs that control that country and has destabilized the region…"); *see also* U.S. Mission to the UN, "U.S. Representative to the United Nations, Ambassador Mike Waltz's Interview with Martha Maccallum on Fox News" (Oct. 1, 2025), https://usun.usmission.gov/u-s-representative-to-the-united-nations-ambassador-mike-waltzs-interview-with-martha-maccallum-on-fox-news/ ("We in the UN Security Council just took action yesterday on the gangs that have taken over Haiti, right off Florida's shores. These gangs are in coordination with all of these transnational groups. They're shipping drugs, money, weapons. They're destabilizing the entire region.").

PRE-DECISIONAL/DELIBERATIVE

PRE-DECISIONAL/DELIBERATIVE

**Decision Memorandum on Termination of Temporary Protected Status Designation for Haiti**
Page 6

aliens linked to these gangs.[31] On June 10, 2025, President Trump issued an Executive Order which published findings that "Haiti lacks a central authority with sufficient availability and dissemination of law enforcement information necessary to ensure its nationals do not undermine the national security of the United States."[32] These federal actions, including State's designation of two major Haitian gangs as Foreign Terrorist Organizations and the President's Executive Order restricting entry from Haiti and other countries on national security screening grounds, constitute new and material evidence that are relevant to the national interest assessment of the Haitian Temporary Protected Status population in the United States. It is not accurate to assume that aliens who entered years ago can be categorically viewed as low-risk merely because they have resided in the United States for an extended period. Given the outsized influence of gangs in Haiti and the associated gang-related activities that have expanded to the United States, permitting Haitian nationals to remain temporarily in the United States continues to be contrary to the U.S. national interest.

In approving the June 4, 2025 Decision Memo, you determined that an extension of the designation of Temporary Protected Status for Haiti was contrary to the national interest based on an analysis of migration factors, immigration policy, foreign policy, national security, and public safety. USCIS has re-examined country conditions since you signed the June 4, 2025 Decision Memo and found that while there have been some changes, these changes have not impacted the analysis that supported a determination to terminate Temporary Protected Status for Haiti based on the U.S. national interest. As part of the review process, DHS again consulted with State. State confirmed on September 5, 2025 that termination of the Temporary Protected Status designation would not pose negative foreign policy concerns.

**Additional Relevant Considerations**
A determination on Haiti's Temporary Protected Status designation must take into account relevant U.S. national interest considerations. In light of the court's final order which interfered with your June 4th decision, USCIS has again examined the records of Haitian beneficiaries of Temporary Protected Status. DHS records indicate some members of the Haiti Temporary Protected Status population have been under administrative investigation for risk to national security or public safety, or for attempting to obtain immigration benefits through fraud or misrepresentation. As of September 17, 2025, DHS data shows approximately 50% of Haiti Temporary Protected Status

---

[31] *See, e.g.*, U.S. Immigration and Customs Enforcement, "ICE ERO Boston arrests Haitian gang member with numerous convictions" (Jan. 24, 2025), available at: https://www.ice.gov/news/releases/ice-ero-boston-arrests-haitian-gang-member-numerous-convictions. (ICE apprehended Wisteguens Jean Quely Charles, a member of a violent Haitian street gang, who had been arrested, charged, and convicted for 17 crimes between August 2022 and August 2024 including distribution of controlled substances and assault and battery with a dangerous weapon); *see also* ICE, "ICE arrests illegal alien from Haiti connected to criminal terrorist organizations" (Sept. 25, 2025), https://www.ice.gov/news/releases/ice-arrests-illegal-alien-haiti-connected-criminal-terrorist-organizations. (In Sept. 2025, ICE announced the arrest of a Haitian alien who "engaged in a campaign of violence and gang support that contributed to Haiti's destabilization.").

[32] Restricting the Entry of Foreign Nationals to Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats, 90 FR 24497 (June 10, 2025).

PRE-DECISIONAL/DELIBERATIVE

beneficiaries or applicants have at least one TECS[33] hit in their benefit request history which could span over many years and multiple benefit request types.[34] Though a TECS hit does not always lead to derogatory findings or a negative adjudicative outcome, this information should be taken into serious consideration when evaluating whether a Temporary Protected Status decision for Haiti aligns with the national interest of the United States. As of September 9, 2025, Fraud Detection and National Security-Data System NexGen data also shows approximately 2,327 of the Haiti Temporary Protected Status population (including current beneficiaries and applicants with pending applications) had a record where fraud was found, 512 had a record which was investigated but fraud was not found, and 273 had a record which was inconclusive regarding fraud.[35] Moreover, 865 aliens of the Haiti Temporary Protected Status population (including current beneficiaries and applicants with pending applications) had Public Safety records, 369 had Egregious Public Safety (EPS)[36] records, and 51 had National Security Related Information (NSRI) records.[37]

Approximately 67,400 nationals of Haiti have entered the United States since June 3, 2024. Within this population, only approximately 3,000 are nonimmigrants in valid status, approximately 1,000 are nonimmigrants out of status, approximately 63,000 were encountered at a border or port of entry and have no lawful immigration status, and it is estimated that 400 crossed the U.S. border without being apprehended.[38] While migration from Haiti to the U.S. involves several push and pull factors, Temporary Protected Status has been cited by a report as being a pull factor contributing to migration to the United States.[39]

Overstaying the authorized period of admission in nonimmigrant status is a violation of U.S. immigration laws and presents challenges for immigration enforcement and resource allocation. Visa overstaying diverts resources from other critical enforcement priorities, such as addressing

---

[33] TECS is an information-sharing platform which can assist authorized users to access different databases to identify individuals who pose a risk to national security or public safety, and individuals attempting to obtain immigration benefits through fraud or misrepresentation. A TECS hit does not always lead to derogatory findings or adverse adjudicative decisions for a particular person, particularly in long assessment periods and/or in populations that have a high degree of name similarity.

[34] USCIS Internal Data, Office of Policy and Strategy, TECS data, TPS Haiti as of Sept. 17, 2025.

[35] USCIS Internal Data, Fraud Detection and National Security Directorate, FDNS-DS NexGen data, TPS Haiti, as of Sept. 9, 2025.

[36] *Memorandum of Agreement Between USCIS and ICE Regarding National Security, Public Safety and Immigration Benefit Fraud Referrals*, July 23, 2025 (USCIS-ICE MOA) defines an EPS case as one where an unlawful immigrant is under investigation or arrest or was convicted of certain criminal acts. These criminal acts include those defined in INA 101(a)(43) such as murder, rape, or sexual abuse of a minor, illicit trafficking of controlled substances, illicit trafficking in firearms or destructive devices, or crimes of violence with a penalty of at least 1 year.

[37] USCIS Internal Data, Fraud Detection and National Security Directorate, FDNS-DS NexGen data, TPS Haiti, as of Sept. 9, 2025.

[38] OHSS estimate as of September 30, 2025.

[39] *See, e.g.*, Migration Policy Institute, "Haitian Migration through the Americas: A Decade in the Making" (Sept. 30, 2021) ("misinformation about TPS eligibility and about the general availability of legal status in the United States may have been one factor for migrants trying to reach the U.S. border"), https://www.migrationpolicy.org/article/haitian-migration-through-americas.

NTPSA2_008520
NTPSA2_008514

PRE-DECISIONAL/DELIBERATIVE

**Decision Memorandum on Termination of Temporary Protected Status Designation for Haiti**
Page 8

illegal border crossings. President Trump imposed conditional restrictions and limitations on the entry of certain foreign nationals from 19 countries, including Haiti.[40] According to the Fiscal Year 2024 Department of Homeland Security Entry/Exit Overstay Report, Haiti had a Non-Visa Waiver Program Countries Business or Pleasure Visitors (B-1/B-2) visa overstay rate of 24.84% and a Student and Exchange Visitors (F, M, J) visa overstay rate of 22.35%.[41] These figures significantly exceed the global average overstay rates of 2.33% for B-1/B-2 visas and 3.23% for F, M, J visas – over ten times higher for business or pleasure visitors and over six times higher for student and exchange visitors.[42] Haiti's visa overstay rates consistently remain very high compared to other nations, reflecting ongoing challenges in enforcing compliance with U.S. visa regulations. Elevated overstay rates present potential risks to U.S. national security and public safety, as aliens who overstay their visas may be harder to locate and monitor, increasing vulnerabilities within immigration enforcement systems. Moreover, aliens who overstay nonimmigrant visas can place an added strain on local communities by increasing demand for public resources, contributing to housing and healthcare pressures, and taking American jobs despite lacking work authorization and legal status.

Of particular significance when evaluating the conditions in Haiti and the ability of Haitian nationals' ability to safely return to Haiti, a number of Haitian nationals have requested advance parole documents for travel back to Haiti. This bears directly on the question of whether nationals may safely travel there. In the first nine months of 2025, approximately 1,219 Haitian nationals requested advanced parole documents, of which approximately 180 (14.8%) were for intended travel to Haiti.[43]

Additionally, U.S. Immigration and Customs Enforcement (ICE) is currently removing aliens to Haiti. From FY2020 to FY2025 through August 31, 2025, ICE removed approximately 4,140 aliens to Haiti.[44] From October 1, 2024 to August 31, 2025 specifically, covering most of FY2025, approximately 670 aliens were removed to Haiti,[45] indicating that conditions in Haiti have been sufficiently stable for the safe removal of Haitian nationals.

There are also compelling foreign policy reasons for ending the Temporary Protected Status designation for Haiti. In Executive Order 14150, "America First Policy Directive to the Secretary of State," President Trump declared "from this day forward, the foreign policy of the United States

---

[40] *See* Restricting the Entry of Foreign Nationals to Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats, 90 FR 24497 (June 10, 2025).

[41] U.S. Customs and Border Protection, Entry/Exit Overstay Report, Department of Homeland Security (July 16, 2025), https://www.dhs.gov/sites/default/files/2025-08/25_0826_cbp_entry-exit-overstay-report-fiscal-year-2024.pdf.

[42] U.S. Customs and Border Protection, Entry/Exit Overstay Report, Department of Homeland Security (July 16, 2025), https://www.dhs.gov/sites/default/files/2025-08/25_0826_cbp_entry-exit-overstay-report-fiscal-year-2024.pdf.

[43] Estimates as of September 11, 2025. These figures do not necessarily include Temporary Protected Status beneficiaries, who receive a Temporary Protected Status Travel Authorization Document rather than an Advance Parole Document. USCIS does not collect intended destination country from Temporary Protected Status beneficiaries on Form I-131, Application for Travel Documents, Parole Documents, and Arrival/Departure Records.

[44] OHSS analysis of ICE ERO data as of August 31, 2025.

[45] *Id.*

PRE-DECISIONAL/DELIBERATIVE

NTPSA2_008521
NTPSA2_008514

PRE-DECISIONAL/DELIBERATIVE

**Decision Memorandum on Termination of Temporary Protected Status Designation for Haiti**
Page 9

shall champion core American interests and always put America and American citizens first." Moreover, it instructed "as soon as practicable, the Secretary of State shall issue guidance bringing the Department of State's policies, programs, personnel, and operations in line with an America First foreign policy, which puts America and its interests first."[46] On September 11, 2025, the U.S. representative to the Organization of American States stated: "we must come together as a region now to deliver an appropriately resourced force with the scope and scale needed to take the fight to the gangs. The United States has taken decisive steps: designating Viv Ansanm and Gran Grif as Foreign Terrorist Organizations and Specially Designated Global Terrorists; offering a $5 million reward for information leading to the arrest of Jimmy Cherizier (Barbecue); and promoting accountability for criminals and those supporting gangs through indictments, arrests, sanctions, arms seizures, and visa and U.S. residency restrictions. The era of impunity in Haiti is over."[47] Ending Temporary Protected Status for Haiti reflects a necessary and strategic vote of confidence in the new chapter Haiti is turning. The United States cannot call for bold change on the ground while signaling doubt from afar. Our immigration policy must align with our foreign policy vision of a secure, sovereign, and self-reliant Haiti.

**Conclusion**
USCIS has found that country conditions in Haiti have largely remained similar since you signed the June 4, 2025 Decision Memorandum, with some positive developments as recognized in recent remarks by U.S. officials. Even if you find that the extraordinary and temporary conditions that underpin the Temporary Protected Status designation exist, the statute nonetheless compels you to terminate it if you find that it is contrary to the national interest to allow Haitians to remain in the United States. USCIS continues to assess that permitting Haitian nationals to remain temporarily in the United States is contrary to the national interest as explained in the June 4, 2025 Memorandum, and provides refreshed and expanded analysis supporting this recommendation in this memorandum. Accordingly, USCIS concludes that the recommendation of termination of the designation of Haiti for Temporary Protected Status is still warranted.

**Options:** Your options include the following actions:

1) *Terminate Haiti's Designation for Temporary Protected Status* (**USCIS Recommendation**)

   - If you determine again that Haiti no longer meets the statutory requirements for its Temporary Protected Status designation, you must terminate Temporary Protected Status for Haiti. Termination would end Temporary Protected Status benefits for existing Haiti Temporary Protected Status beneficiaries after the termination determination is published in the *Federal Register* and the termination becomes effective. Upon the termination of Temporary Protected Status benefits, former beneficiaries without another immigration status, authorization to remain, or a period of stay authorized would no longer have permission to work or remain in the United States. They may, however,

---

[46] See America First Policy Directive to the Secretary of State, 90 FR 8337 (Jan. 29, 2025).

[47] U.S. Mission to the Organization of American States, "U.S. Remarks: Call for Coordinated UN Action in Support of Haiti" (Sept. 11, 2025), https://usoas.usmission.gov/u-s-remarks-call-for-coordinated-un-action-in-support-of-haiti/.

PRE-DECISIONAL/DELIBERATIVE

PRE-DECISIONAL/DELIBERATIVE

**Decision Memorandum on Termination of Temporary Protected Status Designation for Haiti**
Page 10

> apply for any other immigration benefits for which they may be otherwise eligible (e.g., asylum, lawful permanent residence).
>
> - If you decide again to terminate Haiti's designation, the effective date of termination may not be earlier than 60 days after the date the *Federal Register* notice announcing the termination is published or, if later, the expiration of the most recent previous extension. (or earlier than the February 3, 2026 date set by the court in *Haitian Evangelical Clergy Ass'n v. Trump*. Note that you have the discretionary option to set an effective date longer than 60 days if you deem it appropriate to do so. However, a 60-day transition period aligns with recent determinations made when Temporary Protected Status designations have been terminated, helps to streamline enforcement operations, and avoids creating uncertainty or false hope of a future designation. Additionally, this population has been on notice for nearly four months since your initial termination decision was published.

2) *Extend Haiti's Designation for Temporary Protected Status*

- Under the Temporary Protected Status statute, if you determine that the statutory conditions for designation continue to be met, you must extend the Temporary Protected Status designation for an additional period of 6, 12, or 18 months.[48] Haiti was initially designated for Temporary Protected Status on January 1, 2010 based on a determination that there were extraordinary and temporary conditions in Haiti that prevented nationals of Haiti from returning in safety and a finding that allowing Haitians to remain temporarily in the United States would was not contrary to the national interest.
- Should the decision be made to extend the designation of Temporary Protected Status for Haiti, only existing Temporary Protected Status beneficiaries may re-register for Temporary Protected Status, and any Haitian nationals who may have entered the United States after the current continuous residence date will not be eligible for an initial application for Temporary Protected Status.

3) *No Decision/Automatic Extension*

- After review of the assessment, you could choose not to make a determination about whether Haiti's Temporary Protected Status designation should be extended or terminated at this time. If you do not make a determination at least 60 days prior to its expiration date, by statute, its period of designation will be automatically extended for 6 additional months (or, in your discretion, a period of 12 or 18 months).
- Should you choose not to make a determination about whether the conditions supporting Haiti's designation continue to be met, an announcement of the automatic extension is required via *Federal Register* notice, including information to beneficiaries and employers about continued employment authorization and the period of extension. Note that you would then have to review conditions prior to the expiration of that extension.

---

[48] Along with an extension of the Temporary Protected Status designation, the statute also provides that the Secretary may newly designate the country for Temporary Protected Status. *See* INA sec. 244(b)(1), 8 U.S.C. § 1254a(b)(1).

PRE-DECISIONAL/DELIBERATIVE

NTPSA2_008523
NTPSA2_008514

PRE-DECISIONAL/DELIBERATIVE

**Decision Memorandum on Termination of Temporary Protected Status Designation for Haiti**
Page 11

**Signature Level Justification:** At least 60 days before the expiration of a foreign state's Temporary Protected Status designation or extension, the Secretary, after consultation with appropriate U.S. Government agencies, must review the conditions in the foreign state designated for Temporary Protected Status to determine whether they continue to meet the conditions for the Temporary Protected Status designation.[49]

**Timeliness:** You are required by statute to decide whether to extend or terminate an existing Temporary Protected Status designation at least 60 days before the expiration of the current designation, or the designation is automatically extended for a minimum of 6 months.[50] For Haiti's designation, which is currently extended through February 3, 2026, you must make a decision by December 5, 2025, or the statutory automatic extension will occur.

You are further required to provide timely notice of your decision through publication in the *Federal Register*.[51] Your earliest decision will facilitate publication of the *Federal Register* notice, which communicates policy and appropriate procedures to Temporary Protected Status beneficiaries, their employers, and benefit-granting agencies. **Based on the government's representation to the court in *Miot v. Trump*,[52] USCIS should publish your decision in the *Federal Register* no later than December 5, 2025.** As such, USCIS respectfully requests your decision as soon as possible.

---

[49] INA sec. 244(b)(3)(A), 8 U.S.C. § 1254a(b)(3)(A).

[50] *See* INA sec. 244(b)(3)(A), (C), 8 U.S.C. § 1254a(b)(3)(A), (C).

[51] *See* INA sec. 244(b)(3)(A), 8 U.S.C. § 1254a(b)(3)(A).

[52] *Miot v. Trump*, No. 1:25-CV-02471 (D.D.C.), is a federal lawsuit filed in July 2025 by several Haitian nationals challenging the termination of Temporary Protected Status for Haiti. As of October 2025, the case is pending in the U.S. District Court for the District of Columbia.

PRE-DECISIONAL/DELIBERATIVE

NTPSA2_008524
NTPSA2_008514

**Temporary Protected Status for Haiti**
Page 12

**USCIS Recommendation:** USCIS recommends again that you terminate the Temporary Protected Status designation based on a finding that permitting Haitian nationals to remain temporarily in the United States is contrary to the U.S. national interest. Further, USCIS recommends the statutory minimum of 60 days following publication of the *Federal Register* notice, or February 3, 2026, whichever is later, for the effective date of the termination as appropriate for an orderly period of transition. The statutory minimum period of transition is consistent with the precedent of previous Temporary Protected Status country terminations and makes clear that the United States is committed to clarity and consistency. Moreover, the statutory minimum transition period minimizes additional administrative burden and strikes a balance between providing a reasonable timeframe for aliens to transition and safeguarding the integrity of the immigration system and public resources.

**Secretary's Decision:**

1. *Terminate: Terminate Haiti's designation*

   Specify the Effective Date of the Termination (if other than recommended): _____

   Approve/date_____

2. *Extend: Extend Haiti's existing designation for 6, 12, or 18 months*

   Specify duration of extension (6, 12, or 18 months): _____

   Approve/date_____

3. *No Decision/Automatic Extension: Delay a decision on Haiti's designation, resulting in an extension of 6 months*

   Approve/date_____

**Attachments:**

| | |
|---|---|
| Attachment A: | Temporary Protected Status Legal Authority |
| Attachment B: | USCIS RAIO Country of Origin Information Considerations Report and Addendum, Haiti, Sept. 12, 2025 |
| Attachment C: | USCIS OP&S Policy Considerations Report, Haiti, Oct. 24, 2025 |
| Attachment D: | June 4, 2025, Signed Decision Memo, Temporary Protected Status for Haiti |

NTPSA2_008525
NTPSA2_008514