BRETT A. SHUMATE
Assistant Attorney General
Civil Division
RUTH ANN MUELLER
Senior Litigation Counsel
ERIC SNYDERMAN (Va. 99563)
LAUREN BRYANT
SHELBY WADE
CATHERINE ROSS
DANIEL CAPPELLETTI
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL TPS ALLIANCE, *et al.*, | Case No. 3:25-cv-1766-EMC |
| Plaintiffs, | |
| v. | **DEFENDANTS' MOTION FOR RELIEF FROM Dkt. 430 PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 72(a)** |
| MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, *et al.*,[1] | |
| Defendants. | |

---

[1] The current Secretary of Homeland Security is automatically substituted as a defendant in place of the former Secretary, Kristi Noem. *See* FED. R. CIV. P. 25(d).

***Background.*** This case concerns challenges to the partial *vacatur* and terminations of Temporary Protected Status ("TPS") for Venezuela and Haiti. The discovery at issue addresses the Haiti TPS termination. Dkts. 354, 355 at 1. Pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 72-2, Defendants respectfully object to Magistrate Judge Kim's July 6, 2026 Order: (1) foreclosing the invocation of deliberative process privilege ("DPP") in this case altogether; and (2) directing Defendants to search various categories of hyperlinked material under the applicable ESI Protocol and to produce responsive documents to Plaintiffs by July 31st. Minute Order, July 6, 2026, Dkt. 430 ("Order").

***Legal Standard.*** Rule 72(a) permits Defendants to object to magistrate judge orders on nondispositive matters, like discovery orders. FED. R. CIV. P. 72(a). The district judge "must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.* A magistrate's legal conclusions are reviewed *de novo*[.]" *Perry v. Schwarzenegger*, 268 F.R.D. 344, 348 (N.D. Cal. 2010).

***Deliberative Process Privilege.*** This Court should reverse Judge Kim's blanket assertion that DPP does not apply in this matter. *See* Order ¶ 1. The deliberative process privilege is a qualified privilege under federal law which the government may assert to "withhold documents that reflect advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *FTC v. Warner Comm'n, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (internal citations omitted). In determining whether the asserted privilege may be overcome, the court must conduct a balancing test by weighing: "1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role…; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Warner Comm'n, Inc.*, 742 F.2d at 1116.

The question of applicability of DPP in this case has been raised several times. *See, e.g.*, Dkts. 177, 187, 378, 382, 420. In their most recent round of letter briefs, Plaintiffs requested the court's intervention regarding Defendants' invocation of DPP over four documents. Notwithstanding this Court's need to reverse Judge Kim's order on those four documents, Judge Kim's order that DPP cannot apply in

this case at all is overbroad, clearly erroneous, and contrary to law. *See* FED. R. CIV. P. 72(a).

As Defendants have consistently maintained, *see e.g.*, Dkts. 378 at 4, 382 at 6, 420 at 7, *none* of the Court's prior rulings on DPP may be read as foreclosing Defendants from asserting DPP in this case. To do so defies well established Ninth Circuit case law. *Warner Comm'n, Inc.*, 742 F.2d at 1116. *See e.g.*, Dkt. 184 at 3-6 (conducting an in-camera review of the privileged documents and applying the *Warner* factors in reaching its determination); Dkt. 195 at 3-5 (declining to impose a blanket prohibition on DPP and recognizing that it limited DPP assertions in the first discovery production to a specific tranche of documents); Dkt. 410 at 2 (holding that Judge Kim's decision not to uphold Defendants' latest DPP assertions should not be read as a "'blanket bar' on DPP" in this case). Put simply, at every opportunity to foreclose DPP in this case, this Court has specifically chosen not to and has reinforced the need for a DPP analysis. *See* Dkts. 184, 195, 410. Thus, Judge Kim's assertion that "deliberative process privilege does not apply in this case," writ large, is wholly inconsistent with this Court's approach to Defendants' DPP assertions up to this point. *See, e.g.*, Dkts. 184, 195, 410. Neither this Court's previous orders nor Ninth Circuit case law suggest that any ruling on DPP can be forward-looking nor broadly asserted without the appropriate *Warner* balancing. *See* Dkt. 490, Pls.' Opp. to Defs.' Rule 72(a) Mot. (mischaracterizing cases such as *Karnoski* and *Ramos v. Nielsen*, No. 18-cv-1554 (N.D. Cal.) to suggest the legality of a blanket DPP assertion). Accordingly, this Court should remand the issue for an in-camera review of each individual document and instruct that the court weigh the *Warner* factors in each instance. *See Warner Comm'n, Inc.*, 742 F.2d at 1162.[2]

***Production of Hyperlinked Material.*** Judge Kim's Order also improperly expands the scope of discovery in this case requiring search and production of material hyperlinked to a produced email. Judge

---

[2] Both this Court and Plaintiffs have historically agreed that this is the proper course of action where DPP has been asserted. *See, e.g.*, Dkt. 195 at 2 ("*If* Defendants persuasively argue that a . . . granular analysis [under *Warner*] would be proper, the district court should undertake it."); *see also* Dkt. 177 at 1-4 (undertaking a *Warner* analysis of the asserted privilege); *see also* Dkt. 193 at 5 (echoing the court's prior holding that the Magistrate may conduct a "granular analysis" of the privileged documents if Defendants request one).

Kim ordered Defendants to produce two files hyperlinked to the email, but also to search various hyperlinked SharePoint repositories, Microsoft Teams shared folders, and shared storage drive folders "under the ESI search terms and ESI Protocol." *See* Order ¶1. The Order is "clearly erroneous." *See Perry*, 268 F.R.D. at 348.

*First*, Judge Kim's Order improperly treats the hyperlinked materials as email attachments. But materials simply referenced by hyperlink are distinct from items responsive to production requests, and collection of the hyperlinked materials is far more burdensome. *See UAB "Planner5D" v. Meta*, 746 F. Supp. 3d 806, 808 (N.D. Cal. 2024) (Kim, M.J. Op.) ("[H]yperlinked documents are not the same as attachments to emails. Rather, the effort required to search for them is substantially greater than the effort required to produce attachments to emails.") *Id*. Hyperlinked materials are not part of responsive discovery documents, nor are they family members thereof. *See, e.g.*, *Nichols v. Noom Inc.*, 20-cv-3677, 2021 WL 948646 at *4 (S.D.N.Y. Mar. 11, 2021) (disagreeing with contention "that a hyperlinked document is an attachment."); *In re: Insulin Pricing Lit.*, No. 23-md-3080, 2024 WL 2808083 at *7 (D. N.J. May 28, 2024) (same). Thus, the Order's two references files are not attachments subject to production as family members of email NTPSA2_014864. It may seem trivially easy to produce two files, but requiring such a search for hyperlinked materials at the time of a discovery data pull requires Defendants to engage in burdensome manual processing outside their standard process. Ex. A, Bellack Decl. ¶¶7, 10 (DHS HQ); *see also* Ex. B, Zittenfield Decl. ¶¶12, 15 (USCIS). Producing entire SharePoint repositories and shared-storage folders is even more burdensome. *Id*. This is why parties negotiated an ESI Protocol. *See* Dkt. 125.

*Second*, Judge Kim's order does not attempt, nor did she allow parties at her discovery status conference to attempt, to interpret the ESI Protocol in this case to determine whether it requires Defendants to follow Plaintiffs through the hyperlink looking-glass. *See* Dkt. 125 (ESI Protocol); Tr. of July 6, 2026 Disc. Stat. Conf., 14:23-25, 15:1. Courts have frequently declined to require a party to produce hyperlinked documents, where doing so "would disrupt [the producing party's] standardized

workflow for ESI-related discovery processing across all of its platforms and systems." *In re: Meta Pixel Healthcare Lit.*, No. 22-cv-03580-WHO (VKD), 2023 WL 4361131 at *1 (N.D. Cal. Jun. 22, 2023). When courts do evaluate a party's assertions of burden from producing hyperlinked materials, they assess these claims against that case's ESI Protocol as applied in the information system environment of the producing party. *See, e.g.*, *In re: Insulin Pricing*, 2024 WL 2808083 at *7; *In re: StubHub Refund Lit.*, No. 20-md-02951-HSG (TSH), 2024 WL 2305604 at *1 (N.D. Cal. May 20, 2024) (modifying ESI Order as "a production requirement is impossible to comply with most of the time.")

Under the ESI Protocol, hyperlinked materials are only produced as attachments "if the system containing the email or document is capable of being configured to crossreference and collect emails and documents in its existing configuration." Dkt. 125 at 3. The ESI Protocol further limits production with the clause "[t]o the extent hyperlinks **are collected and available**, …" Dkt. 125 at 3 (emphasis added); *c.f.* Dkt. 125 at 2 (defining the term "Families" by reference to an "attachment and its parent email"). But as a factual matter, the ESI Protocol did not require Defendants to produce the hyperlinked materials at issue here for the following reasons. Defendants' systems 1) did not collect the hyperlinked materials Plaintiffs seek from NTPSA2_014864 as part of the discovery production search, and 2) the existing configuration of systems used to collect and store the discovery materials did not feasibly allow Defendants to collect and make available the data behind the hyperlinks. *See, e.g.*, Bellack Decl. ¶7; Zittenfield Decl. ¶¶8, 15; Ex. C, Taye Decl ¶5.

To explain why the ESI Protocol did not require Defendants to produce hyperlinked materials, the Court must look at the capabilities of the Microsoft Purview data management platform as configured in the system environments of USCIS and DHS Headquarters. *See* Dkt. 125 at 3 (requiring analysis of "existing configuration" of the "system containing" production materials). Defendants recognize that Judge Kim's order relates only to one USCIS email, but interpretation of the ESI Protocol as in this case must consider production from both DHS HQ and USCIS systems, and Judge Kim's ruling addresses Plaintiff's claims about adequacy of Defendants' discovery searches in general. *See* Dkt. 420 at 3, lns.

20-23 ("Inadequate searches"); Dkt. 423 at 5, lns. 3-15 (claiming Defendants withheld "attachments").

Both USCIS and DHS HQ currently use Microsoft Purview to produce discovery materials. Bellack Decl. ¶4; Zittenfield Decl. ¶7. On May 26, 2025, Microsoft Corp. updated Purview software used by both USCIS and DHS HQ to add a feature that could allow retrieval of certain types of hyperlinked documents in emails. Bellack Decl. ¶7; Zittenfield Decl. ¶7. However, system administrators must decide whether to automatically enable this feature. Bellack Decl. ¶7. And Defendants' existing configuration of Purview did not enable the feature, meaning they did not automatically collect the hyperlinked materials because doing so was not feasible in the context of their standard procedures for discovery production. *See* Bellack Decl. ¶¶7-10; 2023 WL 4361131 at *1 (declining to require use of Purview's hyperlink collection tool where it would "disrupt [a party's] standardized workflow"). At DHS HQ, this feature is off by default, and users must request the function in advance of a data pull. Bellack Decl. ¶7. Even if the feature were enabled, the resulting output can be extremely burdensome to manage because neither DHS HQ nor USCIS has enabled "retention labeling." Bellack Decl. ¶¶8-9; Zittenfield Decl. ¶9. Retention labeling logs the date and time at which versions of a document existed, and would allow Defendants to produce hyperlinked materials without data exports incorporating potentially hundreds of duplicates of each file for manual review. Bellack Decl. ¶¶9-11; Zittenfield Decl. ¶¶11, 14-15. Here, the ESI Protocol contemplates production of "one copy" of each "hyperlinked document[,]" preferably the version linked at the time the underlying email was sent. Dkt. 125 at 3. If a file was password-protected in its native state, Microsoft Purview also would not have collected it without manual action in the course of a discovery search, requiring further burden. Bellack Decl. ¶10.

**Conclusion.** For the foregoing reasons, Defendants respectfully request that the Court reconsider Judge Kim's July 6, 2026 discovery order, reinstate the deliberative process privilege, and uphold the adequacy of Defendants' discovery production.

Dated: July 20, 2026

Respectfully submitted

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

CATHERINE RENO
Assistant Director

RUTH ANN MUELLER
Senior Litigation Counsel

SHELBY WADE
LAUREN BRYANT
Trial Attorneys

By: */s/ Eric Snyderman*
ERIC M. SNYDERMAN (Va. 99563)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 925-0636

*Attorneys for the Defendants*

DEFENDANTS' MOTION FOR RELIEF FROM DKT. 430 PURSUANT TO FEDERAL RULE 72(A)
CASE NO. 3:25-cv-1766-EMC

6

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 20, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

Date:  June 20, 2026

*/s/ Eric Snyderman*
ERIC M. SNYDERMAN
Trial Attorney
