Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Amanda Young (SBN 359753)
ayoung@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, MARIELA GONZÁLEZ, FREDDY JOSE ARAPE RIVAS, M.H., CECILIA DANIELA GONZÁLEZ HERRERA, ALBA CECILIA PURICA HERNÁNDEZ, E.R., HENDRINA VIVAS CASTILLO, A.C.A., SHERIKA BLANC, VILES DORSAINVIL, and G.S., | Case No. 3:25-cv-01766-EMC<br><br>Judge: Hon. Edward M. Chen |
| *Plaintiffs,* | |
| v. | **PLAINTIFFS' OPPOSITION TO GOVERNMENT'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF THE MAGISTRATE (DKT. 430)** |
| MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA, | |
| *Defendants.* | |

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Mohammad Tajsar (SBN 280512)
MTajsar@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

Defendants have engaged in a pattern of discovery abuse throughout this litigation. The current dispute is particularly egregious. Defendants failed to produce responsive documents, or even to identify that they had not produced them. They belatedly sought to justify their withholding only *after* Plaintiffs identified them as missing. For some, Defendants seek to invoke the deliberative process privilege ("DPP")—without substantiation and in the face of numerous contrary court orders. The Court should deny relief and order production and a re-review due to these deficiencies.

## BACKGROUND

This Court ordered Defendants to produce communications concerning the TPS periodic review process for Haiti and "'high-level' documents that essentially reflect a TPS agenda." Dkts. 367, 364, 364-1. Upon reviewing Defendants' most recent production, Plaintiffs identified significant unexplained gaps. Two of these are the subject of this dispute.

*First*, Defendants sought to withhold documents as DPP only after Plaintiffs identified omissions in Defendants' privilege log. Plaintiffs identified 20 redacted or withheld documents which Defendants had not logged. In response, Defendants amended their log and invoked DPP for four documents.[1] Plaintiffs contested Defendants' incomplete log and stealth withholding of documents as DPP in the face of repeated orders overruling DPP in TPS cases. Defendants produced neither competent evidence nor analysis in support of their DPP invocations and asked instead for *in camera* review, asserting that the disputed documents are "unrelated to TPS and therefore fall under a different category of documents than those in which DPP has been asserted . . . ." Dkt. 420 at 6–7. The Magistrate overruled this DPP invocation, holding that "[DPP] does not apply." Dkt. 430.

*Second*, Plaintiffs identified on June 1 that Defendants produced an email with hyperlinks to documents and repositories which Defendants had neither produced nor logged. Ex. A. The materials are "onboard[ing]" documents for new staff involved in TPS decision-making. For two weeks, Defendants asserted they were trying to get an answer from DHS about whether they would produce these hyperlinked documents. When Plaintiffs raised the issue with the Magistrate, Defendants provided neither a substantive response nor declarations. Dkt. 423. In a July 9 hearing, Defendants for the first time asserted that because the documents were hyperlinked, Defendants were not obliged

---

[1] Defendants also lifted redactions on seven documents and withheld others on other grounds.

1

to produce them. The Court ordered Defendants to produce the documents and search the identified repositories. Dkt. 430. Defendants did not comply and filed this motion.

This dispute is part of a pattern of willful violations of Defendants' discovery obligations. *See* Dkt. 429 at 5–6 (summarizing Defendants' noncompliance with discovery obligations).

**STANDARD OF REVIEW**

A "magistrate's factual determinations are reviewed for clear error, and the magistrate's legal conclusions are reviewed to determine whether they are contrary to law." *Perry v. Schwarzenegger*, 268 F.R.D. 344, 348 (N.D. Cal. 2010); Fed. R. Civ. P. 72(a).

**ARGUMENT**

**I.      The Magistrate Correctly Overruled Defendants' Belated DPP Invocations.**

This Court and a sister court have repeatedly overruled Defendants' DPP assertions in the TPS context, analyzing the balancing test in *FTC v. Warner Commc'ns, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (per curiam), and finding that "applying [DPP] . . . is not warranted." Dkt. 184 at 3. *See also* Dkts. 195, 410; *Ramos v. Nielsen*, No. 18-cv-1554 (N.D. Cal.), Dkts. 63, 79, 84; *Nat'l TPS All. v. Mullin*, No. 25-cv-5687 (N.D. Cal.) ("*NTPSA II*"), Dkts. 107, 155, 158, 169, 178, 183. The courts have also found that Defendants repeatedly improperly categorized documents as predecisional and deliberative. Dkt. 195 at 2 n.1; *NTPSA II*, Dkts. 107 at 2–3, 155 at 2–3, 178 at 1. Nevertheless, Defendants have again withheld documents as DPP, initially without logging them and later without substantiating this invocation. Dkt. 420-1. Defendants provide neither analysis nor evidentiary support for why these documents should be treated differently from the numerous prior instances in which the courts have considered this issue.

As an initial matter, the log does not support the assertion that all of the documents at issue are deliberative or predecisional.[2] *See* Dkt. 195 at 1 n.1 (citing *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 268 (2021) ("Documents are 'predecisional' if they were generated before the agency's final decision on the matter, and they are 'deliberative' if they were prepared to help the

---

[2] According to the privilege log, the DPP invocations were for two draft DHS responses to legislators withheld in full, and two documents concerning redacted staff meeting notes. Dkt. 420-1.

agency formulate its position."")). Defendants' conclusory assertion that the withheld information is "unrelated to TPS" also does not justify their DPP invocation. Defendants provide no authority in support of a party's unilateral right to withhold otherwise responsive information they deem "irrelevant." *See Laub v. Horbaczewski*, 331 F.R.D. 516, 526 (C.D. Cal. 2019) ("[U]nilateral redactions of otherwise discoverable information is disfavored in this circuit.") (citing *Live Nation Merch., Inc. v. Miller*, No. 13-cv-03936, 2014 WL 1877912, at *3 (N.D. Cal. May 9, 2014)). Moreover, the existing protective order would safeguard any confidentiality interests. Dkt. 261.

Nothing prevents the Court from conducting a "granular analysis" *if* Defendants meet the bar to justify the Court taking a *different* approach than it has taken previously. They did not do that here. The Magistrate did not commit clear error by refusing to reweigh the *Warner* factors for each document where this issue has been considered and reconsidered, and Defendants have not presented any competent evidence or reasoned explanation as to why the Court should reverse course. Their assertion that the documents are unrelated to TPS is unsupported. It is also not new: Defendants have previously argued unsuccessfully that they should be permitted to withhold information as DPP where it is "irrelevant." *See NTPSA II*, Dkts. 169 at 2, 183 at 3–4. Plaintiffs and the Court should not be required to endlessly revisit the propriety of Defendants' DPP invocations. *See NTPSA II,* Dkt. 155 at 5 (finding Defendants' "failure" to analyze the *Warner* factors in invoking DPP "particularly glaring" in light of "the Court's prior determinations"). The Court should deny Defendants' motion for relief and clarify that while there is no "blanket bar" on DPP invocations, the Magistrate need not conduct a document-by-document review in the absence of justification for the Court taking a different approach. At this stage, sanctions and fee shifting are appropriate.[3]

**II.    The Magistrate Correctly Ordered Defendants to Produce Hyperlinks.**

Plaintiffs identified responsive documents which Defendants failed to produce, but which had been hyperlinked to a responsive email. After dragging their feet for weeks and refusing to provide any written response on this issue in the parties' joint letter brief before the Magistrate, Dkt.

---

[3] "Sanctions may be imposed for delaying or disrupting the litigation" or "repeatedly making arguments that have been rejected." *In re Facebook, Inc. Consumer Priv. User Profile Litig*., 655 F. Supp. 3d 899, 925 (N.D. Cal. 2023) (citations and internal quotation marks omitted).

3

423, Defendants now complain that they were not given a meaningful opportunity to respond. Dkt. 440 at 3. They also provide as belated justification a warped reading of the ESI Order in this case, Dkt. 125, and specious claims about burden. Dkt. 440 at 2–5. The ESI Order requires production of the documents the Magistrate ordered produced, and Defendants' claims about burden are meritless.

Caselaw supports the Magistrate's order. The order does not depend on hyperlinks being interchangeable with attachments. Rather, "Plaintiffs should be able to access [a] document" "if an electronic message refers to [it]," whether it is in an attachment or hyperlinked. *Shenwick v. Twitter, Inc.*, No. 16-cv-05314, 2018 WL 5735176, at *1 (N.D. Cal. Sept. 17, 2018) (ordering disclosure of hyperlinked documents). And regardless of caselaw which says that hyperlinks *need not* be treated as attachments, *see* Dkt. 440 at 3 (citing cases), the stipulated ESI Order provides that hyperlinks "*will* be considered attachments" if they can be collected. Dkt. 125 § 5(3)(e) (emphasis added).

The cases upon which Defendants rely do not support the proposition that the Magistrate's order was "clearly erroneous." Dkt. 440 at 3. First, in *Nichols*, the court affirmed that a "targeted pull or production" of hyperlinked documents may be warranted even if a party need not always produce *all* hyperlinked documents as some "may be unimportant to the communication" or duplicative. *Nichols v. Noom Inc.*, No. 20-CV-3677, 2021 WL 948646, at *4 (S.D.N.Y. Mar. 11, 2021). This does not help Defendants. In the instant case, the hyperlinks *are* central to the communication and *not* duplicative. Second, the court in *UAB "Planner5D"* denied a party's request to compel the production of hyperlinks only because compliance would require the district court to review all documents at issue. *UAB "Planner5D" v. Meta Platforms, Inc.*, 746 F. Supp. 3d 806, 808 (N.D. Cal. 2024). No such burden exists for the Court here as the documents are plainly relevant. Finally, *In re: Insulin Pricing Litigation* is inapposite. It concerned a dispute about *whether* an ESI protocol should require that hyperlinks be searched and produced. *In re: Insulin Pricing Litig.*, No. 23-md-3080, 2024 WL 2808083, at *7–8 (D.N.J. May 28, 2024). Here, the parties have already stipulated to an ESI protocol that *does* require the production of hyperlinked documents. Dkt. 125 § 5(3)(e).

Defendants' assertions of undue burden are meritless. Defendants' declarations largely focus on a red herring—the challenges associated with pulling the "exact" document at the time of the

4

email. First, this is a problem of Defendants' own making: their chosen default settings impede automatically pulling "exact" versions from when an email was sent.[4] Regardless, the ESI Protocol in this case does not require the production of those versions if impracticable. Rather, it requires only that Defendants produce "one copy of the hyperlinked document to the extent feasible," allowing for production of "the most current version or other alternative if practicable." Dkt. 125 § 5(3)(e). Defendants fail to establish, or even assert, that producing the latest versions causes any burden.

The fact that hyperlinked documents can evolve does not shield them from discovery. "[T]he difficulty surrounding hyperlinked documents does not justify their complete withholding[.]" *United Ass'n Nat'l Pension Fund v. Carvana Co.*, No. CV-22-02126, 2026 WL 80189, at *6 (D. Ariz. Jan. 12, 2026). Moreover, Defendants' declarations do not support the assertion that pulling the particular hyperlinked documents or repositories is impossible or impracticable. Defendants acknowledge the two hyperlinked documents, as individual documents, can be readily retrieved. Dkt. 440-3 ¶ 12. While Defendants attest that the hyperlinked video "cannot be *automatically* retrieved," *id.* (emphasis added), they do *not* assert it cannot be manually pulled. Similarly, while Defendants assert that the three linked folders and linked SharePoint site, which together include about 9,000 files, cannot be "*automatically* pull[ed]," they nonetheless acknowledge that they *could* be pulled in three hours. Dkt. 440-3 ¶¶ 13–14 (emphasis added). Defendants suggest the size of the production—if *all* or *many* of the versions of the hyperlinks were pulled (which the ESI Protocol does not require)—would consume part of their platform's daily data export capacity, but they say nothing about how that might be burdensome. *See* Dkt. 440-3 ¶ 15. Moreover, the fact that there is a large volume of material, all of which is responsive by definition, is all the more reason it should be produced.

## **CONCLUSION**

This Court should affirm the Magistrate's order, set a prompt compliance deadline, and compel a re-review of the Haiti-related discovery in light of the deficiencies evident here.

---

[4] According to Defendants' declarations, DHS's e-discovery platform can automatically pull files hyperlinked in an email by enabling a feature they leave off by default. Dkt. 440-2 ¶¶ 7–8. Defendants imply finding the exact version is burdensome by speculating about the number of versions which may exist, but they have not claimed any particular document has many versions or that they cannot simply sort the versions by their last modified timestamp. *See id.*

5

Date:  August 3, 2026

Respectfully submitted,

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

*/s/  Emilou MacLean*
Emilou MacLean

Michelle (Minju) Y. Cho
Amanda Young
ACLU FOUNDATION
OF NORTHERN CALIFORNIA

Ahilan T. Arulanantham
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW

Mohammad Tajsar
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA

Jessica Karp Bansal
Lauren Michel Wilfong (*Pro Hac Vice*)
NATIONAL DAY LABORER ORGANIZING
NETWORK

Erik Crew (*Pro Hac Vice*)
HAITIAN BRIDGE ALLIANCE

Attorneys for Plaintiffs

6

**CERTIFICATE OF SERVICE**

I hereby certify that on August 3, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

*/s/  Emilou MacLean*
Emilou MacLean

PLAINTIFFS' OPPOSITION TO GOVERNMENT'S MOTION FOR RELIEF FROM ECF 430
CASE NO. 3:25-CV-01766-EMC