United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NATIONAL TPS ALLIANCE, et al.,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, et al.,

Defendants.

Case No. 25-cv-01766-EMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR RELIEF FROM MAGISTRATE JUDGE ORDER**

Docket No. 425

In March 2026, Magistrate Judge Kim ordered that the government provide, for in camera review, 20 documents over which it had asserted attorney-client and/or work product privilege. *See* Docket No. 390 (order); *see also* Docket No. 382 (privilege logs). After reviewing the documents in camera, Judge Kim held that: (1) 8 of the documents were privileged (either in whole or in part); and (2) the remaining 12 documents were not privileged. *See* Docket No. 419 (order). The government has now moved for relief from Judge Kim's order with respect to 14 of the 20 documents. Having considered the parties' briefs, the oral argument of counsel, and all other evidence of record, the Court hereby **GRANTS** in part and **DENIES** in part the government's motion for relief.

## I. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636, this Court reviews Judge Kim's discovery order for clear error or a ruling contrary to law. *See* 28 U.S.C. § 636(b)(1)(A) (providing that "[a] judge may designate a magistrate to hear and determine any pretrial matter pending before the court [with limited exceptions]" and that a judge "may reconsider any pretrial matter . . . where it has been shows that the magistrate judge's order is clearly erroneous or contrary to law"); *see also* Fed. R. Civ. P.

72(a); *Grimes v. City & Cnty. of S.F.*, 951 F.2d 236, 241 (9th Cir. 1991).

Here, the Court applies the contrary-to-law standard because the government is challenging Judge Kim's rulings as to whether a privilege applies to specific documents. *Cf. In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2022) (noting that "[w]hether the attorney-client privilege applies to specific documents represents 'a mixed question of law and fact which this court reviews independently and without deference to the district court'").

## II. LEGAL STANDARDS FOR PRIVILEGE

### A. Attorney-Client Privilege

The purpose of the attorney-client privilege "is to encourage clients to communicate freely and completely with their attorney." *In re Grand Jury Proceedings*, 867 F.2d 539, 541 (9th Cir. 1989). The privilege thus "protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020). "Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct. It requires a lawyer to rely on legal education and experience to inform judgment." *In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007) (adding, however, that legal advice is "not demarcated by a bright line"); *see also In re Grand Jury*, 475 F.3d 1299, 1304 (D.C. Cir. 2007) (stating that "[t]he attorney-client privilege applies only if, *inter alia*, 'the communication relates to a fact of which the attorney was informed . . . by his client . . . for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding'").

The attorney-client privilege applies where a government attorney provides legal advice to a government client. *See S.C. v. United States*, No. 12-203 (BMK) (JDB) (CKK), 2012 U.S. Dist. LEXIS 188558, at *8 (D.D.C. Aug. 10, 2012). However, if a government attorney provides advice on political, strategic, or policy issues, that advice is not privileged. *See id.*; *see also Sanmina*, 968 F.3d at 1116 ("If the advice sought is not legal advice, . . . then the privilege does not exist."); *cf. Lynch v. City of New York*, No. 16-CV-7355 (LAP), 2021 U.S. Dist. LEXIS 213938, *17-18 (S.D.N.Y. Nov. 4, 2021) ("In the government context, the Court of Appeals for the Second Circuit has likened distinguishing between legal advice and policy advice to the

application of attorney-client privilege in the corporate context: business communications by in-house counsel are not protected under the privilege whereas communications 'generated for the purpose of obtaining or providing legal assistance' are protected."). Where there are attorney-client communications that have a dual purpose – *i.e.*, giving or receiving legal advice and giving or receiving nonlegal advice – a court applies the primary purpose test to determine whether the privilege obtains. *See In re Grand Jury*, 23 F.4th at 1090. "Under the 'primary purpose' test, courts look at whether the primary purpose of the communication is to give or receive legal advice, as opposed to [nonlegal] advice. The natural implication of this inquiry is that a dual-purpose communication can only have a single 'primary' purpose." *Id.* at 1091 (adding that the "because of" test used for the work product privilege is broader because it looks at only a causal connection).

Communications between non-attorneys can, in certain circumstances, be privileged. *See, e.g.*, *United States ex rel. Fry v. Health Alliance of Greater Cincinnati*, No. 1:03-cv-167, 2009 U.S. Dist. LEXIS 122921, at *14-15 (S.D. Ohio Dec. 11, 2009) ("[P]rivileged communications may be conveyed to representatives of a corporation without the communications losing their privileged nature. As this Court previously held, '[t]he fact that communication about legal advice is between or among employees of the client does not deprive it of its privileged status.'").

Finally, draft documents can be, but are not always, privileged. For example, if a client (in confidence) sends a draft document to an attorney and asks the attorney to provide legal advice on the draft document, that specific copy of the draft – because it is part of the communication – is privileged. But that fact, in and of itself, does not immunize other copies of the same draft. *See In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, No. 23-MD-03084-CRB (LJC), 2025 WL 327742, at *9 (N.D. Cal. Jan. 29, 2025) ("[T]he draft of Uber's Safety Report . . . was attached to this email chain and shared with outside counsel for the purpose of seeking legal advice. The Court is satisfied that this draft, in this particular context where it evinces the subject of a request for legal advice, is privileged. That is not to say that other drafts of this report, or even instances of the same draft, would necessarily be privileged. Such documents are not presently before the Court.").

Also, if an attorney, in giving legal advice to a client, provides (in confidence) comments on a draft, or interlineates a draft, that specific legal advice is privileged. *See Livingston v. City of Chicago*, No. 16 CV 10156, 2021 WL 2136834, at *3 (N.D. Ill. May 26, 2021) (stating that "an attorney's 'comments on, and revisions to, drafts of documents that are intended for ultimate disclosure to third parties can be privileged to the extent that the comments and revisions communicate legal advice and have been maintained [as] confidential'"). But once a client adopts an attorney's edits or suggestions, the document that actually incorporates the attorney's work – whether in draft or final version – does not remain privileged. Clearly, it could not lest even the final version of the document would be deemed privileged. *See SodexoMAGIC, LLC v. Drexel Univ.*, 294 F. Supp. 3d 404, 405 (E.D. Pa. 2018) ("find[ing] that Pennsylvania law does not protect as privileged a draft contract (even if it was drafted with attorney input), unless the party seeking the protection of attorney-client privilege meets its burden of establishing that the draft contract was prepared for the purpose of obtaining legal advice and/or contains language [proposed by counsel which] the client considered but decided *not* to include in the final version") (emphasis added); *cf. Piazza v. Cnty. of Luzerne*, No. 3:13-CV-1755, 2015 U.S. Dist. LEXIS 147283, *9 (2015) (taking note that "Plaintiff does not assert that Defendants waived the attorney-client privilege merely because advice of counsel is relevant and might have affected the decision-maker's state of mind").

That being said, a draft "not authored or received by an attorney may qualify for protection if it reveal[s], directly or indirectly, the *substance* of a confidential attorney-client communication." *Livingston*, 2021 WL 2136834, at *3 (emphasis added). Thus, *e.g.*, in *Sheet Metal Workers National Pension Fund v. Bayer Aktiengesellschaft*, No. 20-CV-04737-RS (SK), 2024 WL 74928 (N.D. Cal. Jan. 5, 2024), Judge Kim indicated that, at least in certain situations, "[t]he attorney-client privilege protects a communication including a draft to a lawyer seeking legal advice because . . . 'the plaintiffs could compare [the draft documents] to the final public version and determine the underlying legal advice provided or incorporated.'" *Id.* at *3. In other words, if the specific, substantive legal advice provided by an attorney is discernible, then there is a basis to apply the attorney-client privilege.

B. Work Product Privilege

> The work-product doctrine is a "qualified" privilege that protects "from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case," and protects both "material prepared by agents for the attorney as well as those prepared by the attorney himself." The primary purpose of the work-product rule is to "prevent exploitation of a party's efforts in preparing for litigation."

*Sanmina*, 968 F.3d at 1119.

The Ninth Circuit has not imported the primary purpose test used for the attorney-client privilege into the work-product privilege. As the court explained in *Grand Jury*,

> the "because of" test – which typically applies in the work-product context – "does not consider whether litigation was a primary or secondary motive behind the creation of a document." It instead "considers the totality of the circumstances and affords protection when it can fairly be said that the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation." It is a broader test than the "primary purpose" test because it looks only at causal connection, and not a "primary" reason.

*Grand Jury*, 23 F.4th at 1091-92. A transactional document not drafted for purposes of litigation generally does not constitute privileged work-product.

## III. DISCUSSION

The Court addresses below each of the contested documents. To the extent Plaintiffs ask the Court to order the government to re-review its privacy designations because, *inter alia*, of its improper overbroad approach to privilege, the Court declines to address that issue. That is a concern that should be made, in the first instance, with Judge Kim.

A. NTPSA 013083

The document is an email chain. The government redacted portions of the chain. Judge Kim found some of the redactions appropriate, but not others.

The Court denies the government's motion for relief. The content that Judge Kim ordered be produced is not privileged. The communications between the DHS employees did not disclose the specific substantive content of the attorney communications. There is one sentence that presents a closer call (beginning with the phrase, "I think"). However, that statement is still fairly

United States District Court
Northern District of California

general in nature; no specific matter subject to attorney advice is identified.

B. NTPSA 009099

The document is a draft letter from Secretary Noem to Representative Soto (D., Florida). The privilege log describes the document as a "[d]raft congressional letter reflecting legal advice and edits from USCIS counsel Adam Shirer." Docket No. 382-2 (ECF Page 51) (privilege log). The government redacted one part of the letter as privileged. Judge Kim found some of the redaction appropriate but not the remainder. The part she found privileged consisted of "[t]he comments from counsel Adam Shirer." Docket No. 419 (Order at 1). The government argues that Judge Kim should have found more information privileged: the attorney's actual edits, plus the client's request for legal advice.

Judge Kim's ruling is somewhat vague. Arguably, the language of the order suggests that the client's request for legal advice (*i.e.*, the client comment) is not privileged. If so, that holding was legally erroneous. A client's request for legal advice is privileged, not just the attorney's response, at least so long as the request is not just a general request for legal advice that does not reveal anything about the nature of the legal advice being sought. *See Sanmina*, 968 F.3d at 1116. In addition, the attorney's actual edits were a manifestation of specific legal advice and therefore are privileged too. To the extent Judge Kim suggested that the attorney's "comments" did not include the attorney's edits, that was also error. Thus, the Court grants the government's motion for relief (to the extent Judge Kim ruled otherwise).

The Court's ruling here that specific information is privileged does not mean that other drafts of the letter, or even instances of the same draft, are privileged.

C. NTPSA 006720 and 006620

The documents are draft versions of the decision memo on the termination of Haiti's TPS (from the USCIS Director Edlow to Secretary Noem). The privilege log describes the two drafts as follows:

- "Edits to memorandum . . . by USCIS clients Sam Deshommes and Ofira Honig **made to implement legal advice** from DHS counsel Laura Smith and Megan Schultz in light of ongoing TPS litigation and **reflecting legal advice** from DHS

counsel Lauren Gold, Laura Smith, Megan Schultz, and Brian Kelliher." Docket No. 382-1 (ECF Page 59) (privilege log) (emphasis added).

- "Draft of decision memorandum . . . **reflecting legal advice** from DHS counsel Brian Kelliher, Laura Smith, Megan Schultz, and Lauren Gold, and **responses to legal advice** from USCIS clients Ofira Honig and Sam Deshommes and DHS client Rob Law." Docket No. 382-1 (ECF Page 58) (emphasis added).

It appears the government claimed the entirety of both drafts privileged because of the number of comments made on the draft documents.

For both NTPSA 6720 and NTPSA 6620, Judge Kim found only parts of the draft memo privileged – specifically, the edits from OGC-RLD (LG) [Lauren Gold]." Docket No. 419 (Order at 1). The government argues that Judge Kim erred because (1) if one attorney's comments/edits were privileged, then the other attorneys' comments/edits should also be deemed privileged, and (2) the clients' edits implemented the legal advice or otherwise discussed the attorneys' comments/edits.

As Plaintiffs point out, the fact that one specific attorney's comments are privileged "does not decisively establish that *all* comments from *all* attorneys are privileged." Opp'n at 3 (emphasis in original). That being said, the Court has reviewed the comments at issue and agrees with the government that the other attorneys' comments – and edits – are privileged because they reveal discussion about specific attorney comments and edits and client responses thereto. The same is true of the client comments and edits, with one exception which is discussed below.

The one exception – *i.e.*, where the Court agrees with Judge Kim and does not find privilege – is with respect to the bulk of the comments made by Rob Law in NTPSA 6620. Rob Law is identified as a client, not an attorney. Based on the face of the document, it appears that other DHS employees gave the document to Rob Law for his comments – *i.e.*, this was not a situation where Rob Law was communicating with attorneys and then implementing specific and identifiable advice of counsel. There is only one comment by Rob Law which was responsive to a comment by an attorney (page 8 of NTPSA 6620); only that comment by Rob Law is privileged.

Accordingly, the Court grants in part and denies in part the government's motion for relief.



United States District Court
Northern District of California

D. <u>NTPSA 009174</u>

The document is an email exchange among DHS employees related to the draft termination memo for Haiti TPS. There do not appear to be any attorneys included as authors or recipients. The government redacted portions of the chain. Judge Kim found the redacted information not privileged. The government argues that the information is privileged because it

> discusses the outcome of legal advice from agency attorneys Laura Smith and Megan Schultz, including later edits to a draft Haiti TPS Memorandum. . . . [T]he redacted content embodies the precise communication that ACP protects – advice from attorney to client about edits for the draft Memorandum, and the edits incorporating the attorney's legal advice.

Mot. at 4; *see also* Docket No. 382-2 (ECF Page 173) (privilege log) ("Discussion of edits for memorandum . . . regarding Haiti TPS made to implement legal advice from DHS counsel Laura Smith and Megan Schultz in light of ongoing TPS litigation.").

The Court denies the government's motion for relief. The main redaction at issue is found at the top of the page. The redacted information is an excerpt from the draft memo (specifically, the section of the memo titled "Conclusion"). It appears that a DHS employee made some edits to the draft memo after a call with DHS counsel (OGC = Office of General Counsel), and then another DHS employee made some tweaks to the edits that she wanted the first DHS employee to see before sharing with DHS counsel. The first employee stated (**not** redacted): "I think this looks good. I particularly like what you added in the conclusion [to the draft memo]. I suggest one more small addition that I'll just include here in bold if that's easier." What follows is the Conclusion that **is** redacted (with bolded language reflecting the first DHS employee's edit).

The Court sees no need for redaction. Even though DHS counsel gave input on the draft, there is no indication that the Conclusion specifically was drafted or edited by DHS counsel. And even if the attorney provided input on the Conclusion, nothing about the face of the conclusion indicates what specifically constituted the attorney's input. There is not sufficient specificity to reveal particular advice from counsel. Absent disclosure of specific attorney advice, the draft is effectively owned by the client, reflecting the client's ultimate judgment. That the client expressed an intent to share the draft (including the Conclusion section) later with the attorney

does not convert the Conclusion as stated in the email into privileged information, particularly if no specific legal advice on a particular matter is sought.

E. NTPSA 009169

The document is an email between two DHS employees. In essence, the entire email has been redacted. Judge Kim found the document not privileged. The government argues error because the document "discuss[es] how to implement legal advice from attorney Laura Smith about the substance of the Haiti TPS decision memorandum in order to address ongoing litigation concerns." Mot. at 4; *see also* Docket No. 283-2 (ECF Page 453) (privilege log) ("Internal discussion among USCIS client regarding Haiti TPS memo as it relates to legal advice received from DHS counsel Laura Smith regarding substance of memo.").

The Court denies the government's motion for relief. The government mischaracterizes the document. There is no discussion of legal advice in the email. Even if a DHS attorney shared information with the DHS employees, there is an insufficient showing that the information was shared as part of giving legal advice. Furthermore, the communication does not reveal specific and identifiable legal advice given by counsel. Only the views of the DHS employee are being disclosed in the email.

F. NTPSA 008591

The document is an email written by one DHS employee to other DHS employees, plus some DHS attorneys. *See* Mot. at 4 (identifying the following attorneys as some of the recipients: Christina McDonald, Nader Baroukh, and Joseph Mazzara); Docket No. 382-2 (ECF Page 536) (privilege log) ("[C]omment from Secretary Advisor Jimmy Percival to other DHS employees, including DHS attorney Christina McDonald, about recommendations regarding Haiti TPS in the course of predecisional planning including litigation considerations."). Judge Kim found the document not privileged. The government argues the document is in fact privileged, noting that attorneys were some of the recipients and asserting that litigation strategy was being discussed.

The Court grants the government's motion for relief. Even if it is not clear that the primary purpose of the communication was to obtain legal advice, litigation strategy is at issue; thus, at least the work product privilege obtains.

G. NTPSA 006593

The document is an email involving DHS employees. No attorneys are authors or recipients. The email addresses preparation of a privilege log. Part of the email is redacted. Judge Kim concluded that the document is not privileged, but the government disagrees, seeming to argue that, because the privilege log was prepared in anticipation of litigation, communications about preparation should also be privileged (work product).

The Court denies the government's motion for relief. The statements at issue do not disclose any attorney mental impressions or legal advice and thus neither the attorney-client or work product privilege applies.

H. NTPSA 006535

The document is an email involving DHS employees. No attorneys are authors or recipients. Parts of the email are redacted. The government argues that the redacted portions are privileged, contrary to what Judge Kim held, because they "discuss[] the agency employees' plans to seek legal advice during the Haiti TPS review process." Mot. at 5; *see* Docket No. 382-1 (ECF Page 4) (privilege log) ("Discussion among USCIS OCC counsel regarding legal advice needed from USCIS OCC regarding Haiti TPS.").[1]

The Court grants in part the government's motion for relief. The email is between two DHS employees but reflects an intent to communicate with counsel about specific topics. The Court does not agree with the government's suggestion that *any* expression of intent to communicate with counsel about a specific topic thereby makes that content privileged. *City of Roseville Employees' Retirement System v. Apple Inc.*, No. 19-cv-02033-YGR (JCS), 2022 U.S. Dist. LEXIS 139843 (N.D. Cal. Aug. 3, 2022), did not expressly address that issue. *See id.* at *60 (generally stating that "'[c]ommunications between non-lawyer employees about matters which the parties intend to seek legal advice are . . . cloaked by attorney-client privilege'"). If, *e.g.*, the client never follows through and communicates with counsel about the topic, then no legal advice is ever sought. Thus, there must be some showing by the party asserting the privilege that the

[1] The description in the privilege log seems to have an error – legal advice was needed from USCIS from USCIS OCC (*i.e.*, counsel).

United States District Court
Northern District of California

attorney is indeed consulted with on the matter. Under this standard, the government's first redaction is supported, but not its second.

I. NTPSA 012139

The document is a fairly long email chain. No attorneys appear to be authors or recipients. The government redacted portions of the document on the basis that the non-attorneys were "discussing USCIS's Office of the Chief Counsel (OCC) attorneys' proposed edits to the Haiti TPS package and the client's analysis of that legal advice." Mot. at 5; *see also* Docket No. 382-2 (ECF Page 97) (privilege log) ("ACP/AWP - This email reflects legal edits to the Haiti TPS package posed by USCIS OCC and USCIS Client analysis of suggested edit."). Judge Kim found that none of the information at issue was privileged.

The Court largely grants the government's motion for relief. For the most part, the client was discussing the legal advice given by the attorney. The only sentence that is not privileged is on page 3 (beginning with "I'll follow up . . . .").

J. NTPSA 009165

The document is an email which has mostly been redacted. The email is an exchange between DHS employees. No attorneys are authors or recipients. In the email, the DHS employee provides a paragraph for the Federal Register Notice on the foreign policy component (for termination of Haiti's TPS). The government argues the email is privileged because it contains a "[d]iscussion of edits for memorandum from the USCIS Director to Secretary regarding Haiti TPS made to implement legal advice from DHS counsel Laura Smith and Megan Schultz in light of ongoing TPS." Docket No. 382-2 (ECF Page 587) (privilege log).

The government's motion for relief is denied. As an initial matter, the government's suggestion that the document is related to the draft memo is incorrect. The email reflects that it relates to the Federal Register Notice. In any event, nothing in the email reflects that the paragraph on foreign policy reveals specific and identifiable legal advice from counsel.

K. NTPSA 006587

The document is an email between DHS employees. No attorneys are authors or recipients. The government argues that the email (the bulk of which is redacted) is privileged

United States District Court
Northern District of California

because it "protect[s] a direct quote from OGC counsel Lauren Gold: her question to agency employees, which required follow-up about a specific portion of the decision memo that was also redacted." Mot. at 5; *see also* Docket No. 382-1 (ECF Page 6) (privilege log) ("Discussions among USCIS clients reflecting communications regarding legal advice provided by DHS counsel Lauren Gold regarding Haiti TPS decision memo.").

The government's motion for relief is granted in part and denied in part. The quote from the attorney is privileged; however, that does not mean that the underlying information being discussed by the DHS employees is privileged – *i.e.*, the government's redaction is overbroad. Once the legal advice was given, that does not mean that everything that followed should also be privileged. DHS employees were discussing amongst themselves what to do next. Only those portions of the document which disclose specific and identifiable legal advice from counsel is protected. The government's approach is overbroad.

L. <u>NTPSA 013114</u>

The document is an email involving DHS employees only. No attorneys are authors or recipients. The government argues that the email is privileged, contrary to what Judge Kim found, because it "contains a discussion among agency clients about a specific legal issue raised during the same review process." Mot. at 6; *see also* (ECF Page 540) (privilege log) ("This contains discussion of client analysis of an attorney question in anticipation of litigation. DPP - predecisional email discussing proposed edits and comments reflecting policy options and recommendations regarding termination of TPS for Haiti.").

The government's motion for relief is denied. What DHS was doing and why are not privileged matters. Moreover, OGC asking about what DHS was doing is not privileged because DHS was not seeking legal advice and counsel was not providing specific legal advice. The email does not disclose specific and identifiable legal advice of counsel.

M. <u>NTPSA 014267</u>

The document is titled "Temporary Protected Status (TPS) Policy Considerations: Haiti (October 2025)." It is a draft version. The government asserts that parts of the draft are privileged because they contain attorney edits/client responses. *See* Docket No. 382-2 (ECF Page 435)

United States District Court
Northern District of California

(privilege log) ("Draft of policy considerations memo regarding Haiti TPS termination, reflecting legal advice from DHS counsel Lauren Gold and response to legal advice from USCIS client Ofira Honig in response to ongoing litigation.").

The Court grants in part and denies in part the government's motion to dismiss. The government has narrowed its claim of privilege appropriately, with one exception. The government has not sufficiently explained why a significant portion of the redactions on page 5 is privileged. The comment from counsel Lauren Gold (in the margin) is privileged as is the client response thereto (including both the comment in the margin as well as the edit made by the client, which consists of (1) a very limited edit in the text (the four words preceding "NSRI") and (2) the addition of footnote 47). But the government has redacted more than just these limited matters. The redactions outside of these limited matters do not appear to disclose specific and identifiable legal advice from counsel. The government has not met its burden of demonstrating applicability of the attorney-client privilege. *See United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (noting that "'[a] party asserting the attorney-client privilege has the burden of establishing the relationship and the privileged nature of the communication'").

## IV. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the government's motion seeking relief from Judge Kim's order. Where the Court has upheld Judge Kim's order, the government must produce the information at issue within one week of the date of this order.

This order disposes of Docket No. 425.

**IT IS SO ORDERED**.

Dated: September 17, 2026

EDWARD M. CHEN
United States District Judge