Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
Vanessa Young (SBN 352693)
youngviniegra@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Emily C. Zhu (SBN 366697)
ezhu@aclunc.org
ACLU FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

NATIONAL TPS ALLIANCE, MARIELA GONZÁLEZ, FREDDY JOSE ARAPE RIVAS, M.H., CECILIA DANIELA GONZÁLEZ HERRERA, ALBA CECILIA PURICA HERNÁNDEZ, E.R., HENDRINA VIVAS CASTILLO, A.C.A., SHERIKA BLANC, VILES DORSAINVIL, and G.S.,

Plaintiffs,

vs.

MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,

Defendants.

Case No. 3:25-cv-01766-EMC

**PLAINTIFFS' SUPPLEMENTAL BRIEF PURSUANT TO DKT. 478**

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Mohammad K. Tajsar (SBN 280152)
mtajsar@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

This supplemental brief addresses the Court's query whether Plaintiffs can state a due process claim where an agency fails to comply with statutory mandates directed at an agency's internal processes. *See* Dkt. 478, Tr. 59:17–20. The Court also sought supplemental briefing regarding cases that "have … not drawn th[e internal/external] distinction and said it doesn't matter." Tr. 60:3–4.

The cases discussed below answer both questions. Courts have found due process violations where agencies failed to follow rules established by Congress even where the rules govern only internal agency processes. In addition, courts have repeatedly held an agency's failure to follow statutory mandates can give rise to due process violations without mentioning this distinction—including this Court in *Ramos* and the Supreme Court in *Thuraissigiam*.

*Armstrong v. Reynolds* held a Nevada statutory requirement—that an employment agency investigate wrongdoing and file suit if it found violations—created property interests in the investigation and subsequent action. 22 F.4th 1058, 1072–79 (9th Cir. 2022). It applied standard property-entitlement due process doctrine even though the requirement at issue concerned an internal process—the agency's investigation of retaliation complaints. It held "[w]hether an expectation of entitlement … create[s] a property interest" turns largely on "the extent to which the statute contains mandatory language that restricts the [decisionmaker's] discretion." *Id.* at 1072 (cleaned up). Because the Nevada statute mandated "at least *some* investigation into facially valid complaints," *id.* at 1075, and "sets forth mandatory criteria" for decisionmaking, *id.* at 1077, it created a property interest "sufficient to trigger procedural due process protection." *Id.* at 1077. *Armstrong* thus found property interests even though the internal process did not concern notice or a right to be heard, and even though there was no guarantee that an investigation would vindicate the plaintiff's claim of retaliation. It sufficed that the agency failed to follow statutorily established procedures.

The Ninth Circuit reached a similar legal conclusion in *Wedges/Ledges of California, Inc. v. City of Phoenix*, 24 F.3d 56, 63–64 (9th Cir. 1994), which held that a municipal rule requiring city officials to assess whether an arcade game is a "game of skill" before deciding whether to grant a business license for it created property interests for due process purposes. It held municipal code provisions defining games of skill and requiring that assessment before making the license

determination "create an articulable standard sufficient to give rise to a legitimate claim of entitlement." *Id*. (internal quotation marks omitted). *Wedges/Ledges* then remanded to determine whether the procedural safeguards afforded plaintiffs were sufficient. As in *Armstrong*, the municipal rule in *Wedges/Ledges* regulated an internal decisionmaking process—the rules by which license determinations were to be made. It did not involve a claim seeking notice, and did not guarantee a license would be granted.

While these cases provide clear examples of due process claims based on statutory mandates to comply with internal agency process, they do not directly assess the internal/external distinction this Court raised. Instead, they simply ask whether the statute or regulation constrains agency discretion with sufficient force to give rise to an entitlement, and find that they do. *Cf. Parks v. Watson*, 716 F.2d 646, 656 (9th Cir. 1983) (per curiam) ("Although there is some debate whether state statutes providing for particular procedures amount to 'entitlements' protected by due process, . . . the rule in this circuit is that they do.") (omitting internal citations).[1]

The Fourth Circuit recently took a similar approach in *Doe 1 v. Off. of the Dir. of Nat'l Intel.*, which found a cognizable due process interest where national intelligence agencies failed to adhere to their own internal regulations in terminating employment for a group of intelligence officers following a policy change. 180 F.4th 536 (4th Cir. 2026) ("*ODNI*") (affirming preliminary injunction). At issue were efforts by the CIA and ODNI to implement "reduction[s] in force" "targeting for elimination [certain] positions and offices," without adhering to the agencies' standard termination processes, which require them to endeavor to reassign workers in advance of any termination. *Id.* at 540–41. The Fourth Circuit recognized the employees had no due process interest in continued employment, but found a property interest in the agencies' compliance with their regulatory reassignment procedures. *Id.* at 548 ("Requiring the Agencies to comply with their own termination procedures does not call into question the discretion of the Directors to effectuate terminations"). Like the rules at issue in *Armstrong* and *Wedges/Ledges*, the rules in *ODNI* were

[1] In contrast, the question whether a particular rule is intended to be enforced by plaintiffs is relevant in other contexts, such as in determining whether a statute gives rise to whether an agency may be bound by its own regulations for purposes of the Administrative Procedure Act, *see United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), or whether an enforceable cause of action, *see generally Cort v. Ash*, 422 U.S. 66 (1975); *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002).

internal, did not involve notice, and did not guarantee reassignment. Instead, like the mandatory duties Congress established in the TPS statute, they simply required agency decisionmakers to follow certain procedures in advance of a decision.

Notably, *ODNI* acknowledged that judicial review of APA challenges to the same termination decisions was foreclosed. *Id.* at 544–45 (recognizing that the National Security Act grants "discretion to terminate Agency employees," and "precludes judicial review of [termination] decisions under the [APA]") (internal citations omitted). *ODNI* nonetheless held plaintiffs' constitutional challenges could proceed. *Id.* Similarly, the Supreme Court's recent holding foreclosing certain statutory challenges to TPS terminations, *Mullin v. Dahlia Doe*, 609 U.S. 324, 345 (2026), does not bar constitutional challenges arising from the same facts.

Two final points bear emphasis. *First*, the decisions Plaintiffs challenge here are not themselves quasi-legislative agency rules. No one has asserted that DHS established a rule that the agency need not assess country conditions, need not consult with the State Department (except through two-line emails), or even that the agency in fact has vacatur authority over TPS designations. Thus, while courts have applied diminished notice and hearing requirements to quasi-legislative agency rules, those cases have no bearing here. *See generally Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915). These are the cases upon which Defendants overwhelmingly rely. Dkt. 483. But Plaintiffs do not challenge any legislative change or quasi-legislative agency rule, and do not seek more notice or hearing requirements at all, let alone notice or hearing requirements beyond those afforded by existing statutes.[2]

Instead, they challenge agency action far more akin to *adjudication*, as the Secretary purported to terminate TPS by applying *existing* law. "When an administrative agency applies law in a quasi-judicial capacity, it does so under the constraints of due process." *See Chadha v. Immigration & Naturalization Servs.*, 634 F.2d 408, 431 n.32 (9th Cir. 1980), *aff'd*, 462 U.S. 919 (1983). The termination of a TPS designation—based on already-established mandatory statutory

[2] Even a legislature or an agency engaging in quasi-legislative decisionmaking must conform to those procedures required by law. *See Halverson v. Skagit County*, 42 F.3d 1257, 1261 (9th Cir. 1994) ("the plaintiffs received all the process due . . . when the [County's] elected officials discharged their legislative responsibilities in the manner prescribed by law").

requirements which set defined criteria and processes the agency must apply, but which Plaintiffs allege were not followed—is adjudicative rather than legislative agency action. *See also Goldberg v. Kelly*, 397 U.S. 254, 262 (1970) ("[T]ermination [of benefits] involves state action that *adjudicates* important rights.") (emphasis added); *Bell v. Burson*, 402 U.S. 535, 539 (1971) (same).

*Second*, Plaintiffs respectfully note that this Court previously found TPS holders had stated a due process claim when they challenged the agency's deviation from pre-existing internal procedures governing the consideration of country conditions. It held "to the extent Plaintiffs' challenge is based on a property-entitlement theory, they have at least a plausible [due process] claim co-extensive with their ability to prove that Defendants violated the APA." *Ramos v. Nielsen*, 321 F. Supp. 3d 1083, 1122 (N.D. Cal. 2018). That conclusion comports with the Supreme Court's subsequent determination that even non-citizens seeking entry at the border have "those rights regarding admission that Congress has provided by statute," albeit "nothing more." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 105 (2020).

Other courts have found plaintiffs have cognizable due process interests when an agency "fail[s] to fairly apply the existing procedures" in connection with adjudicatory actions. *Cushman v. Shinseki*, 576 F.3d 1290, 1298–99 (Fed. Cir. 2009) (finding due process violation where agency "considered improperly altered medical records"); *Cinderella Career & Finishing Schs., Inc. v. F.T.C.*, 425 F.2d 583, 586–89 (D.C. Cir. 1970) (FTC Commissioners "violat[ed] their own rules and hence [] due process" where regulation "makes it clear that the [agency] will consider the record," but it did not).

The Supreme Court explained over forty years ago that "[t]he hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause.' . . . Once that characteristic is found, the types of interests protected as 'property' are varied and, as often as not, intangible, relating to the whole domain of social and economic fact." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430–31 (1982) (holding that state fair employment commission rule, established by internal procedures, to convene a factfinding conference within 120 days created property entitlement) (omitting citations). *Logan* cited cases involving horse training licenses, public utility service, disability benefits, and school attendance, among others. The TPS statute creates a

rule that a designation may not be terminated unless certain procedures are followed and criteria are met. In that basic sense it is no different from these and many other examples.

Dated: October 8, 2026

Respectfully submitted,

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

*/s/ Emilou MacLean*
Emilou MacLean
Michelle (Minju) Y. Cho
Emily C. Zhu

Jessica Karp Bansal
Lauren Michel Wilfong (*Pro Hac Vice*)
NATIONAL DAY LABORER
ORGANIZING NETWORK

Ahilan T. Arulanantham
Vanessa Young
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW

Mohammad K. Tajsar
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA

Erik Crew (*Pro Hac Vice*)
HAITIAN BRIDGE ALLIANCE

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on October 8, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

*/s/ Emilou MacLean*
Emilou MacLean