BRETT A. SHUMATE
Assistant Attorney General
Civil Division
RUTH ANN MUELLER
Senior Litigation Counsel
ERIC SNYDERMAN
LAUREN BRYANT
SHELBY WADE
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

NATIONAL TPS ALLIANCE, *et al.*,

Plaintiffs,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, *et al.*,

Defendants.

Case No. 3:25-cv-1766-EMC

**DEFENDANTS' REPLY IN SUPPORT OF Dkt. 472, MOTION FOR RELIEF FROM Dkt. 469 PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 72(a)**

Defendants' invocations of the attorney-client privilege ("ACP") and law enforcement privilege ("LEP") are proper. This Court has upheld similar ACP and LEP assertions in this matter, and Plaintiffs' arguments to the contrary are meritless. This Court should grant Defendants' Rule 72(a) motion.

***Law Enforcement Privilege.*** LEP protects against the disclosure of information whose release "would be contrary to the public interest… because disclosure would undermine the integrity of law enforcement techniques." *Doe1 v. McAleenan*, No. 18-cv-02349-BLF (VKD), 2019 WL 4235344, at *2 (N.D. Cal. Sep. 6, 2019); *See* Defs.' Rule 72(a) Mot. 2. Judge Kim already allowed redaction to the "[t]he number of words indicating a number of known or suspected terrorists." Dkt. 469. Defendants' request here is not controversial; they simply ask this Court to uphold the privilege and redaction of "Known or Suspected Terrorists ("KST") or Non-KST National Security Record" data in a uniform manner across *all* documents with this information. Otherwise, Judge Kim's order is arbitrary and contrary to law.

Initially, Defendants point out that another court recently upheld an assertion of LEP over this same type of information, finding that disclosure, even under a protective order, was unwarranted in "light of the national security interests at stake and the minimal relevance of the information to [p]laintiffs' claims." *Afr. Communities Together v. Mullin*, No. 26-cv-11201-ADB, 2026 WL 2218593, at *2 (D. Mass. Jul. 27, 2026). Further, Defendants have not waived the privilege. Plaintiffs assert Defendants have "already disclosed" the relevant data "in this and another case, without invoking privilege," Dkt. 484 ("Pls' Opp.") 2, and doing so "waive[s] LEP over the information[.]" *Id*. at 2–3 (citing *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126–27 (9th Cir. 2012)). Plaintiffs cite several cases they claim support their LEP waiver argument. *See id*. at 2–3. However, one case cited by Plaintiffs directly addresses the waiver of attorney-client privilege, not the *law enforcement privilege*, which is at issue here. *See id*. (citing *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126–27 (9th Cir. 2012) (specifically discussing the waiver of attorney-client privilege). Another case cited by Plaintiffs found that while the Court "*assume[s]*" the [LEP] can be waived, the Court "cannot find a case on the question." *Id*. at 2 (citing *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1126 (7th Cir. 1997)).

Plaintiffs claim that Defendants disclosed "the exact information at issue" regarding Haitian TPS holders in a previous production. *See* Pls' Opp. at 2 (citing to Dkt. 409-16 at NTPSA2_005774). However,

Plaintiffs filed this information and the document at issue on the *public* docket, not Defendants. *Id*. Although Plaintiffs claimed that the exhibits are no longer confidential, *see id*. at n.1, they still fall under the *stipulated* clawback agreement. The clawback states that "the disclosure of privileged or protected information . . . in this litigation shall not constitute a subject matter waiver of the *privilege or protection* in this or any other federal or state proceeding, regardless of the standard of care or specific steps taken to prevent disclosure." Dkt. 126 at 1 (emphasis added). As such, the inadvertent production of a document without asserting an appropriate privilege was a topic clearly contemplated by the parties' stipulated clawback agreement, which allows the government to claw back this "disclosed" document and reassert privilege over the information. *See id*. In any event, the type of disclosure contemplated by case law on the issue is unlike what has occurred in this matter. For example, in *Peck v. United States* (a case cited by Plaintiffs), the court found that the government waived the official information privilege after it released a summary of an investigation, and that summary revealed a significant portion of a secret report. 522 F. Supp. 245 (S.D.N.Y. 1981). In another example, *In re McKesson Govtl. Entities Average Wholesale Price Litig*., the court found that the government waived its privilege when it provided documents in a different litigation matter "voluntarily." 264 F.R.D. 595, 600 (N.D. Cal. 2009). This is a different scenario than that present here, as Defendants have not "voluntarily disclosed the documents" in a completely different litigation matter "without taking reasonable precautions to avoid disclosure of privileged information." *Id*. at 599–600. As such, Defendants have not waived their privilege.

Further, Defendants note that the document Plaintiffs cite to demonstrates that Defendants' alleged prior disclosure is dated October 1, 2025, and the information that Plaintiffs claim is the "exact information at issue" is based on DHS data dated September 11, 2025. Dkt. 409-16 at NTPSA2_005770, 005774. However, the documents that Defendants assert LEP over for this specific Motion were created *before* the "KST" data was pulled in September 11, 2025. *See* Dkt. 420, Ex. A, at 3–5 (list of privilege descriptions indicating that all documents' file names have dates ranging from April 2025 to June 2025). As such, Plaintiffs cannot demonstrate that Defendants voluntarily waived the privilege by releasing the "exact information at issue[,]" as the information that Defendants now seek to protect—in documents drafted in April to June 2025, could not reflect the same data that was *dated* September 11, 2025. Further,

"even if the redacted information seems innocuous in the context of what is already known by the public, '[m]inor details of intelligence information may reveal more information than their apparent insignificance suggests[.]" *Am. C.L. Union v. Dep't of Just.*, 681 F.3d 61, 71 (2d Cir. 2012).

Moreover, the law enforcement agency whose records, files, data, or techniques that are to be protected by LEP is the Threat Screening Center ("TSC"), which is administered by the Federal Bureau of Investigation ("FBI"). *See* Dkt. 420, Ex. B (declaration by TSC Deputy Director Cheryl Mimura discussing that the KST or non-KST National Security Record data is "sensitive TSC information"); *Kusuma Nio v. United States Dep't of Homeland Sec.*, 314 F. Supp. 3d 238, 243 (D.D.C. Jul. 16, 2018) (LEP "allows *the federal government* to withhold 'information that would be contrary to the public interest in the effective functioning of law enforcement.") The TSC, as owner of the privilege, made the decision to assert LEP *at this point* of the litigation, and nothing precludes the owner of the privilege from asserting the privilege now, over this Court-ordered production of new documents. To the extent that the release of "KST or Non-KST National Security Record" was disclosed in an earlier production, that information itself would not necessarily be identical to the information that the TSC now seeks to protect. That is because the information provided is only a snapshot at a particular moment or a glimpse in time, and is constantly being updated or changing.

This matter is also distinguishable from other cases cited by Plaintiffs in support of their claim. Pls' Opp. 3. For example, Plaintiffs cite to *Wagafe v. Trump*, to assert that a "generalized LEP assertion" will fail if a defendant "had 'already produced a number of documents that provide details about [specific USCIS procedures]" and did not distinguish the information that the agency now sought to protect. No. C17-94 RAJ, 2019 WL 2994639, at *2 (W.D. Wash. Jul. 9, 2019). That case is also distinguishable; the defendants in that matter provided "vague descriptions" of the harm that could result from disclosure. *Id*. Here, Defendants have provided specific and detailed reasonings why the government would be harmed by the disclosure of this specific national security information. Pls' Opp. 3 (asserting that courts have previously rejected assertions of LEP where the "government's proffered rationale was overly generalized and 'insufficiently' tailored' to any actual purported harm."). Defendants previously offered a detailed declaration that describes with specificity the information to be protected and what specific

harm would ensue from disclosure. *See* Dkt. 420, Ex. B. Judge Kim clearly found this reasoning compelling enough to prevent the disclosure of the "KST or Non-KST" data from four pages of information, but provided no reasoning as to why the privileged information could not be redacted from *all* documents. Dkt. 469. This is also different from the *Wagafe* matter, where the Court had *already* ruled that the law enforcement privilege information must be disclosed. *Wagafe*, 2019 WL 2994639 at *2.

Even if prior disclosure *has* occurred, the Court still needs to undertake "the proper balancing to determine" whether LEP applies. *Thomas v. Nassau Cty. Police Dep't*., No. CV-124343-JMA (AYS), 2016 WL 1092623, at *3 (E.D.N.Y. Mar. 21, 2016); see Pls.' Opp. 3. Here, the information that Plaintiffs claim Defendants already produced is distinct from the information that Defendants now seek to protect. Additionally, Judge Kim has already found that the "KST or Non-KST National Security Record" data is significant enough to be protected in *some* circumstances, but has provided no explanation as to why the data would not harm Defendants if it is released in *other* documents. This Court should find that Judge Kim's ruling here is erroneous, and order that LEP be asserted as to *all* "KST or Non-KST National Security Record" data on the additional documents at-issue.

***<u>Attorney-Client Privilege</u>***. "Communications between non-lawyer employees about matters which the parties intend to seek legal advice . . . are cloaked." *City of Roseville Employees' Ret. Sys. v. Apple, Inc.*, 2022 WL 3083000, at *17 (N.D. Cal. Aug. 3, 2022); Defs.' Rule 72(a) Mot. 3. On September 17th, and after Defendants filed the Rule 72(a) motion at issue, this Court found that "[a] client's request for legal advice is privileged, *not just the attorney's response*," if it "is not just a general request for legal advice that does not reveal anything about the nature of the legal advice being sought." *Id*. at 6 (quoting *United States v. Sanmina Corp*., 968 F.3d 1107, 1116 (9th Cir. 2020) (emphasis added)). The Court further found that attorney's edits and comments are privileged if they "reveal discussion about specific attorney comments and edits and client responses thereto." *Id*. at 7. Defendants now ask this Court to extend that ruling to the documents at issue. *See* Defs.' Rule 72(a) Mot. 3–4.

Plaintiffs assert that privileged status is not automatically conferred simply because in-house counsel were included on an email. Pls' Opp. 4. Yet, the disputed documents involve more than just including counsel on an email. Instead, the privilege descriptions demonstrate that government counsel

assisted in drafting and editing several documents, as well as responding to questions for legal advice by non-attorney clients. *See* Dkt. 423-1 (containing the privilege descriptions for the disputed documents). These activities by counsel clearly fall within the definition of privileged communications per the Court's previous order. Dkt. 473. Unlike the situation in *U.S. v. ChevronTexaco Corp.*, non-attorney clients in this matter sent these draft documents to counsel specifically to seek *legal review* of the documents, and to ensure that the drafts were legally sound. 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002); *see* Pls.' Opp. 4. The government is not attempting to conduct their affairs in private "simply by staffing a transaction with attorneys[,]" unlike the situation present in the Plaintiffs' cited cases. Pls' Opp. 4–5.

Plaintiffs next claim that Defendants "improperly withheld" the entirety of ten documents. *Id.* at 5. This Court found in its September 17th order that, after review, Defendants could protect the majority of both attorney's and *client's* edits and comments as privileged as they revealed a discussion of specific attorney comments and the edits and client responses hereto, even if most of the document was produced as redacted. Dkt. 473 at 7. Here, the disputed documents concern a similar interplay of communication between DHS OGC and USCIS OCC, as well as clients, and those communications are privileged.

Lastly, contrary to Plaintiffs' assertions, the Court already determined that ACP can apply to communications between non-attorneys. Pls' Opp. 5 (arguing that Defendants invoked ACP for "communications which include no attorneys[,]" and failed to provide the detail to substantiate that privilege). Here, the privilege descriptions show that there was an interplay of communication between DHS OGC and USCIS OCC, as well as non-attorney clients. *See* Pls' Opp. 4–5. As the Court found, these comments by government attorneys *and* non-attorney clients are privileged as "they reveal discussion about specific attorney comments and edits and client responses thereto." Dkt. 473 at 7. Additionally, Plaintiffs argue that Defendants improperly invoked ACP for drafts "which have no indication that they contain legal advice." Pls' Opp. 5. However, as the Court held, "[e]ven if it is not clear that the primary purpose of the communication was to obtain legal advice, *litigation strategy* is at issue[.]" Dkt. 473 at 9. Thus, even if the privilege logs do not substantiate the privilege invocation, if the *actual* primary purpose of the communications falls within the privilege, it is protected from disclosure. *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2022).

Dated: October 15, 2026

Respectfully submitted

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

RUTH ANN MUELLER
Senior Litigation Counsel

ERIC SNYDERMAN
LAUREN BRYANT
Trial Attorneys

By: */s/ Shelby Wade*
SHELBY WADE
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 285-8379
Shelby.Wade2@usdoj.gov

*Attorneys for the Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

Date: October 15, 2026

*/s/ Shelby Wade*
SHELBY WADE
Trial Attorney