Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Amanda Young (SBN 359753)
ayoung@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

Jonathan D. Guynn
Acting Assistant Attorney General

Civil Division

Ruth Ann Mueller
Senior Litigation Counsel
Lauren Bryant (N.Y. Bar 5321880)
Shelby Wade (N.Y. Bar 5696067)
Eric Snyderman (Va. Bar 99563)
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044

Attorneys for Defendants

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

NATIONAL TPS ALLIANCE, DENIS MOLINA, JHONY SILVA, MARIA ELENA HERNANDEZ, SANDHYA LAMA, TEOFILO MARTINEZ,

Plaintiffs,

vs.

MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security[1], UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,

Defendants.

Case No. 3:25-cv-01766-EMC

**JOINT CASE MANAGEMENT STATEMENT**

Date: November 17, 2026
Time: 2:30 p.m.
Judge: Hon. Edward M. Chen
Place: Videoconference Zoom Webinar

[1] The current Secretary of Homeland Security is automatically substituted as a defendant in place of the former Secretary, Kristi Noem. *See* Fed. R. Civ. P. 25(d).

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

Pursuant to Civil Local Rules 16-9 and 16-10(d), the Standing Order for All Judges of the Northern District of California, and this Court's October 14, 2026 order directing the parties to submit this Joint Case Management Statement, *see* ECF No. 487, the parties submit this Joint Case Management Statement.

## I. Jurisdiction and Service

Plaintiffs' Position: This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States. Venue is proper in the Northern District of California under 28 U.S.C. § 1391(e)(1) because at least one Plaintiff resides in this judicial district and each Defendant is an agency of the United States or an officer of the United States sued in his or her official capacity. Defendants were served with process on February 28, 2025. Dkts. 54–57.

To the extent Defendants contend 8 U.S.C. § 1254a(b)(5)(A) deprives this Court of jurisdiction over Plaintiffs' claims, they are incorrect. As to Plaintiffs' Equal Protection claim, this Court has repeatedly held Section 1254a(b)(5)(A) does not strip jurisdiction over constitutional claims. *See, e.g.*, Dkt. 93 at 27; Dkt. 279 at 30. The Supreme Court's recent decision in *Mullin v. Dahlia Doe* ("*Dahlia Doe*") assumed the same, with the majority of Justices appearing to affirmatively find Section 1254a(b)(5)(A) does not limit jurisdiction over constitutional claims. 609 U.S. 324, 345–46 (2026) (four of six Justices in majority assuming without deciding jurisdiction over constitutional challenge to TPS termination, suggesting remaining two Justices did not rely on assumption, but rather found jurisdiction); *id.* at 359–63 (Kagan, J., dissenting) (three Justices finding jurisdiction over statutory and constitutional claims). *See also Noor Doe v. Mullin*, No. 26-cv-2103-DEH, 2026 WL 3003682, at *4 (S.D.N.Y. Oct. 6, 2026) (finding jurisdiction over equal protection claim after *Dahlia Doe*); *Aung Doe v. Noem*, No. 25-cv-15483, 2026 WL 2279577, at *9–11 (N.D. Ill. Aug. 7, 2026) (finding jurisdiction over due process claim after *Dahlia Doe* and deciding merits as to equal protection claim); *Afr. Cmtys. Together v. Mullin*, 840 F. Supp. 3d 86, 93–95 (D. Mass. 2026) (same). On the merits, while the Court in *Dahlia Doe* did find plaintiffs were not likely to succeed based on the preliminary record before it, it "did not decide that the plaintiffs had failed to state a plausible claim for relief," and does not foreclose Plaintiffs' equal protection claim in this case. *Aung Doe*, 2026 WL 2279577,

at *11; *Noor Doe*, 2026 WL 3003682, at *3–4 ("Plaintiffs may very well be able to succeed on the merits of their claim after the record in this case has been fully developed."); *Afr. Cmtys. Together,* 840 F. Supp. 3d at 94–95 ("The Court is unpersuaded" that Ethiopian TPS holders failed to state a claim that the termination of TPS for Ethiopia "was motivated by racial or national origin animus[.]").

As to Plaintiffs' remaining APA claims, all of which are currently on appeal, there remains judicial review over the Venezuela vacatur and Haiti partial vacatur because *Dahlia Doe* is consistent and not "clearly irreconcilable," *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc), with controlling Ninth Circuit precedent holding that challenges to the agency's authority—here, the Secretary's legal conclusion that the agency has authority to vacate prior TPS decisions—fall outside the scope of Section 1254a(b)(5)(A). *See Nat'l TPS All. v. Noem*, 150 F.4th 1000, 1016–18 (9th Cir. 2025) ("*NTPSA I*"). The Court of Appeals also retains jurisdiction to set aside the Venezuela termination decision because it is predicated on and inextricably intertwined with the vacatur. *See id.* at 1024 ("If the vacatur is postponed, and the prior extension is restored, the termination cannot go into effect."). Following the Supreme Court's order granting certiorari, vacating the Ninth Circuit's previous decision in *Nat'l TPS All. v. Noem*, 166 F.4th 739 (9th Cir. 2026), and remanding the case for the Ninth Circuit to revisit in light of *Dahlia Doe*, the Ninth Circuit requested expedited supplemental briefing, due today, "addressing the effect, if any, of *Mullin v. Doe*, 609 U.S. 324 (2026) on this case." Dkt. 502.

<u>Defendants' Position</u>: This Court lacks authority to decide Plaintiffs' statutory claims because the Supreme Court held "the TPS statute's judicial-review bar applies to all non-constitutional claims," including the process leading to a decision and "matters relating to that subject." *Mullin v. Doe*, 609 U.S. 324, 339 (2026) ("*Dahlia Doe*"). The review bar also forecloses Plaintiffs' constitutional claim. *See Doe*, 609 U.S. at 350-54 (Thomas, J., concurring). Even assuming Plaintiffs' equal protection claim is reviewable, it is unlikely to succeed on the merits for the reasons articulated by the Supreme Court in *Dahlia Doe*. *Id.* at 346-50. The *Doe* and *Trump v. Miot* plaintiffs relied on several of the very same comments made by government officials—including President Donald Trump and former Secretary of Homeland Security Kristi Noem—that Plaintiffs rely on to support their equal protection

claims in this case. *See id*. The Supreme Court's conclusion that "[n]one of the cited statements by either the President or the Secretary [were] overtly racial, and in substance all expressed policy views that could rest on race-neutral justifications" describes all remaining evidence and statements upon which Plaintiffs seek to rely in this case just as well as the evidence and statements in *Doe* and *Miot*. *Id* at 348. And here, just as in *Doe*, the "present administration's general stance on immigration and its obvious antipathy toward past administrations' TPS policies" constitute "a strong, race-neutral explanation of these officials' statements." *Id* at 349. Thus, Plaintiffs' equal protection claim will fail.

Plaintiffs' assertion above that this Court has regained jurisdiction over Claims 1 & 3 (Venezuela *vacatur* and Haiti *partial vacatur*) notwithstanding a pending appeal is meritless. First, Plaintiffs ignore the fact that the Ninth Circuit has demonstrated its intent to retain jurisdiction over the appeal after its decision was vacated by the Supreme Court. *See* ECF No. 503. Second, the "clearly irreconcilable" test Plaintiffs cite requires a showing that "intervening higher authority has so 'undercut the theory or reasoning underlying the prior circuit precedent' as to make the precedent 'clearly irreconcilable' with the intervening authority." *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1073 (9th Cir. 2018).

A subsequent Supreme Court decision interpreting the same statute in the opposite manner as a Ninth Circuit panel analyzing the same conduct by the same Defendant is clearly enough to meet the "clearly irreconcilable" standard. *See Fiedler v. United States*, 165 F.4th 1310, 1319 (9th Cir. 2026) (holding the test was not met when the Supreme Court interpreted a different statute, and the case at bar involved a different federal agency). Here, the *Dahlia Doe* decision is "clearly irreconcilable" with the Ninth Circuit's decision on these claims because the Supreme Court found that 8 U.S.C. § 1254a(b)(5)(A) forecloses jurisdiction over non-constitutional claims regarding the Secretary's TPS determinations where the Ninth Circuit decision earlier found it had jurisdiction. *Dahlia Doe*, 609 U.S. at 338 ("We first consider respondents' non-constitutional claims and conclude that we are barred from reviewing them."); *but see Nat'l TPS All. v. Noem*, 166 F.4th 739, 757 (9th Cir. 2026) ("Section 1254a(b)(5)(A) simply cannot bear the weight of the Government's expansive interpretation."). *Dahlia Doe* explains that the term "determination" in the TPS context has a "very broad" meaning which

incorporates both a decision and "the chain of events leading up to a decision." 609 U.S. at 339. Claims 1 & 3, the Secretary's *vacatur* decisions, were themselves both "decision[s]" and part of "the chain of events leading up to" a subsequent decision to terminate TPS, and covered by the "very broad" reach of § 1254a(b)(5)(A)'s bar to judicial review. *Id.* This jurisdictional issue was the basis for Defendants' Petition for *Certiorari* to the Supreme Court. *See* Pet'rs Cert. Br. at 11, *Mullin v. Nat'l TPS All.*, No. 26-48 (U.S. July 9, 2026). Plaintiffs "d[id] not oppose" Defendants' request that the Supreme Court vacate the Ninth Circuit's ruling on this point. Resp's Reply at 1, No. 26-48 (U.S. Aug. 20, 2026). The Supreme Court then granted, vacated, and remanded the Ninth Circuit's ruling. *Mullin v. Nat'l TPS All.*, No. 26-48, 2026 WL 2976626 (U.S. Oct. 5, 2026).

This Court recognized its lack of jurisdiction over Claims 1 & 3 in its order regarding Plaintiffs' motion for leave to file a second amended complaint, acknowledging the Parties' agreement that they were "on appeal" and then declining to discuss whether they must be dismissed in light of *Dahlia Doe*. *See* ECF No. 487 at 3. The Ninth Circuit retains jurisdiction over Claims 1 & 3, and the Supreme Court clearly remanded the appeal to the Ninth Circuit to rectify its error on this very issue.

## II. Facts

Plaintiffs' Position: This case involves Defendants' unlawful decisions to vacate, partially vacate, and terminate Temporary Protected Status ("TPS") for approximately one million individuals from Haiti and Venezuela during ongoing crises in their countries, as described in this Court's partial summary judgment order. *See* Dkt. 279 at 5–22.

Defendants' Position: This case addresses whether this Court has jurisdiction to review the Secretary of Homeland Security's decisions to vacate, partially vacate, and terminate prior Secretaries' Temporary Protected Status designation for Haiti and 2023 designation for Venezuela[2]. The Secretary, "after consultation with appropriate agencies[,]" may designate a country for TPS only if she finds (in pertinent part) that "there has been and earthquake, flood, drought, epidemic, or other environmental disaster . . . resulting in substantial, but temporary, disruption of living conditions . . .

[2] Defendants dispute Plaintiffs' approximation of the number of affected TPS beneficiaries and contend that the claims in this case do not pertain to the Secretary's actions regarding the 2021 designation of Venezuela for TPS, which might result in a higher number if included.

[such that] the foreign state is unable, temporarily, to handle adequately the return to the state of aliens who are nationals of the state[.]" 8 U.S.C. § 1254a(b)(1). Aliens covered by TPS are eligible for work authorization and may not be removed. *Id.* § 1254a(a). Initial TPS designations are discretionary, and the Secretary must conduct periodic reviews to determine whether the conditions underlying a TPS designation continue to be met. *Id.* § 1254a(b)(2), (b)(3)(A). If the Secretary "does not determine" that the foreign state "no longer meets the conditions for designation," then "the period of designation of the foreign state is extended for an additional period of 6 months (or, in the discretion of the [Secretary], a period of 12 or 18 months)." *Id.* § 1254a(b)(3)(C). But if the foreign state "no longer continues to meet the conditions for designation," the Secretary "shall terminate the designation." *Id.* § 1254a(b)(3)(B). The TPS statute leaves the sensitive judgment calls about the government's national interest in the Secretary's hands. It bars judicial review of the Secretary's TPS determinations, in plain terms: "[t]here is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." *Id.* § 1254a(b)(5)(A).

"[T]he TPS statute's judicial-review bar applies to all non-constitutional claims." *Mullin v. Doe*, 609 U.S. at 345 (2026). The Supreme Court further held that the plaintiffs in the companion case, *Trump v. Miot*, were "unlikely to prove that race was a motivating factor in the decision to terminate Haiti's TPS designation." *Id.* at 350.

**Venezuela.**

Venezuela was initially designated for TPS in 2021 based on extraordinary and temporary conditions that prevented Venezuelans from safely returning.[3] On October 3, 2023, Secretary Mayorkas extended the 2021 Designation through September 10, 2025, and at the same time "redesignated" Venezuela for TPS until April 2, 2025.[4] On January 17, 2025, Secretary Mayorkas published notification that he extended the 2023 Designation for 18 months, effective on April 3, 2025,

---

[3] *Designation of Venez. for [TPS] and Implementation of Emp. Authorization for Venezuelans Covered by Deferred Enforced Departure*, 86 Fed. Reg. 13,574 (Mar. 9, 2021) (citing 8 U.S.C. § 1254a(b)(1)(C)) ("2021 Venez. Designation").

[4] *Extension and Redesignation of Venez. for [TPS]*, 88 Fed. Reg. 68,130 (Oct. 3, 2023 ("2023 Venez. Designation").

and established a consolidated filing process that allowed all Venezuelan TPS beneficiaries to obtain TPS through the expiration of that extension (i.e., until October 2, 2026).[5]

On January 28, 2025, Secretary Noem vacated the 2025 Extension, because both the consolidation of the two tracks and the premature extension failed to "acknowledge the novelty of its approach" or "explain how it is consistent with the TPS statute."[6] The 2025 Vacatur took effect immediately.

On February 5, 2025, after consulting with relevant agencies, Secretary Noem reviewed and terminated Venezuela's 2023 Designation because she determined it was "contrary to the national interest to permit the covered Venezuelan nationals to remain temporarily in the United States."[7] Consistent with the statutory timelines, the 2025 Termination was scheduled to become effective on April 7, 2025. *Id*.

On September 8, 2025, the Secretary published a separate decision to terminate Venezuela's 2021 TPS Designation, effective November 7, 2025.[8]

**Haiti.**

Haiti was initially designated for TPS in 2010 due to the "conditions in Haiti following the [7.0 magnitude] earthquake" that struck Haiti in January 2010.[9] Various Secretaries extended and "redesignated"" TPS for Haiti through 2018.[10] On January 18, 2018, Acting Secretary Elaine Duke found that "the conditions for Haiti's designation for TPS—on the basis of 'extraordinary and temporary conditions' relating to the 2010 earthquake that prevented Haitian nationals from returning

---

[5] *See Extension of the 2023 Designation of Venez. for [TPS]*, 90 Fed. Reg. 5,961 (Jan. 17, 2025) ("2025 Venez. Extension").

[6] *Vacatur of 2025 [TPS] Decision for Venez.*, 90 Fed. Reg. 8,805 (Feb. 3, 2025) ("2025 Venez. Vacatur").

[7] *Termination of the October 3, 2023 Designation of Venez. for [TPS]*, 90 Fed. Reg. 9040, 9041 (Feb. 5, 2025) ("2025 Venez. Termination"); *see* 8 U.S.C. § 1254a(b)(1)(C).

[8] *Termination of the 2021 Designation of Venez. for [TPS]*, 90 Fed. Reg. 43,225, 43,225 (Sept. 8, 2025).

[9] *Designation of Haiti for [TPS]*, 75 Fed. Reg. 3476, 3477 (Jan. 21, 2010).

[10] *Extension and Redesignation of Haiti for [TPS]*, 76 Fed. Reg. 29,000 (May 19, 2011); *Extension of the Designation of Haiti for [TPS]*, 77 Fed. Reg. 59,943 (Oct. 1, 2012); *Extension of the Designation of Haiti for [TPS]*, 79 Fed. Reg. 11,808 (Mar. 3, 2014); *Extension of the Designation of Haiti for [TPS]*, 80 Fed. Reg. 51,582 (Aug. 25, 2015); *Extension of the Designation of Haiti for [TPS]*, 82 Fed. Reg. 23,830 (May 24, 2017).

in safety—are no longer met" and terminated the TPS designation of Haiti.[11] On August 3, 2021, Secretary Alejandro Mayorkas newly designated Haiti on the basis of extraordinary and temporary conditions effective through February 4, 2023.[12] Thereafter, he extended the designation and "redesignated" Haiti for TPS for a period of 18 months, ending on August 3, 2024.[13] On July 1, 2024, Secretary Mayorkas again extended the designation and "redesignated" TPS for Haiti for 18 months, ending on February 3, 2026.[14]

On February 24, 2025, Secretary Noem partially vacated the 2024 Haiti Extension,[15] reducing the existing designation period from 18 months to 12 months. In rolling back Secretary Mayorkas's 18-month extension, Secretary Noem explained that the 2024 Haiti Extension "failed to evaluate" whether permitting Haitian nationals to remain temporarily is not "contrary to the national interest of the United States."[16]

On November 28, 2025, the Secretary published a new decision to terminate TPS for Haiti, effective February 3, 2026.[17][18]

## III. Legal Issues

Plaintiffs' Position: The remaining issues[19] in this case include: (1) whether Defendants' February 3, 2025 vacatur of Venezuela's TPS extension and February 24, 2025 partial vacatur of Haiti's TPS extension violate the Administrative Procedure Act (APA) because Defendants lack authority to vacate prior TPS extensions; (2) whether the termination of Venezuela's 2023 designation

---

[11] *Termination of the Designation of Haiti for [TPS]*, 83 Fed. Reg. 2,648 (Jan. 18, 2018).
[12] *Designation of Haiti for [TPS]*, 86 Fed. Reg. 41,863 (Aug. 3, 2021).
[13] *Extension and Redesignation of Haiti for [TPS]*, 88 Fed. Reg. 5,022 (Jan. 26, 2023).
[14] *See Extension and Redesignation of Haiti for [TPS]*, 89 Fed. Reg. 54,484 (July 1, 2024) ("2024 Haiti Extension").
[15] *See Partial Vacatur of 2024 [TPS] Decision for Haiti*, 90 Fed. Reg. 10,511 (Feb. 24, 2025) (hereinafter "2025 Haiti Partial Vacatur").
[16] *2025 Haiti Partial Vacatur*, 90 Fed. Reg. at 10,512; *see also* 8 U.S.C. § 1254a(b)(1)(C).
[17] *Termination of the Designation of Haiti for Temporary Protected Status*, 90 Fed. Reg. 54733 (Nov. 28, 2025).
[18] The Secretary's July 2025 determination that Haiti no longer met the statutory requirements for a designation for TPS, but that action is not at issue in this case. *See Termination of the Designation of Haiti for Temporary Protected Status*, 90 Fed. Reg. 28,760 (Jul. 1, 2025).
[19] The parties agree this Court no longer has jurisdiction over the APA challenges to the Haiti termination decisions raised in Counts Four and Six in the first amended and supplemental complaint. *See* Dkt. 487 at 2. The currently operative Corrected Second Amended Complaint, Dkt. 498, eliminates those claims.

violates the APA because it is inextricably intertwined with and predicated on the unlawful vacatur; (3) whether Defendants' decisions to vacate, partially vacate, and terminate TPS for Haiti and Venezuela violate the Equal Protection Guarantee of the Due Process Clause of the Fifth Amendment because they were motivated, at least in part, by intentional discrimination based on race, ethnicity, or national origin. Issues (1) and (2) are currently on appeal to the Ninth Circuit. Issue (3) remains pending before this Court.

Defendants' Position: Presently before this Court for resolution is whether the Secretary's TPS determinations, specifically the *vacatur* and termination of Venezuela's 2023 TPS designation, and the *partial vacatur* and November 2025 termination of Haiti's TPS designation violated equal protection principles. That claim is barred by the judicial review bar. Presently before the Ninth Circuit for resolution is whether the Secretary's vacatur of Venezuela's TPS extension, announced February 3, 2025, and partial vacatur of Haiti's TPS extension, announced February 24, 2025, violated the Administrative Procedure Act (APA) and whether the Secretary's decision to terminate Venezuela's 2023 designation violated the APA. Defendants maintain that those claims are barred by the judicial review bar.

## IV. Motions

Plaintiffs' Position: Table A, attached, lists all prior and pending motions and their current statuses. On November 2, 2026, Defendants moved for relief from Dkt. 491 in a Rule 72(a) motion, Dkt. 500, but the Court has not ordered a response. Plaintiffs do not plan to file any specific additional motions at this time but anticipate motions may be required in connection with ongoing discovery and future trial on Plaintiffs' Equal Protection claim.

Defendants' Position: Defendants assume the Court is familiar with the complex factual background regarding this matter and discuss here only motions pending before the Court. At the time of the filing of this Joint Case Management Statement, Defendants have three pending motions before the District Court: 1) Defendants' Rule 72(a) motion filed on November 2, 2026, ECF No. 500, 2) Defendants' Rule 72(a) motion filed on September 16, 2026, ECF No.472, and 3) Defendants' Motion to Quash Plaintiffs' Special Discovery served on November 3, 2026 and Defendants' motion filed on

November 10, 2026, ECF No. 507. Defendants also intend to ask this court to set a dispositive motion deadline of March 1, 2027. Defendants do not dispute Plaintiffs' Table A to the extent that it accurately reports information already provided on this court's docket, but do not concede to any characterization made by Plaintiffs with respect to the scope of this litigation or inaccuracies in Table A (as with the characterization of ECF No. 262, Defendants' Motion to Dismiss, as denied by ECF No. 279) as Defendants received Table A the evening before filing this Joint Case Management Statement and had limited time to examine its contents.

## V. Amendment of Pleadings

Plaintiffs' Position: Plaintiffs filed a Corrected Second Amended Complaint on October 29, 2026. Dkt. 498. Plaintiffs have no current plans to seek further amendment.

Defendants' Position: Defendants believe any further attempts to amend the Complaint after this Court's ruling in ECF No. 487 would be futile in light of *Dahlia Doe*.

## VI. Evidence Preservation

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information. On April 29, 2025, the parties filed a Stipulation Regarding Discovery of Electronically Stored Information. ECF No. 120. On April 30, 2025, the Court entered an Order approving ECF No. 120. ECF No. 125.

## VII. Disclosures

Plaintiffs' Position: Plaintiffs propose that the parties meet and confer to determine the scope and timeline of disclosures that are appropriate for this case.

Defendants' Position: Defendants assert that, as an action for review on the administrative record, this case is exempt from initial disclosures. Fed. R. Civ. P. 26(a)(1).

## VIII. Discovery

Plaintiffs' Position:

### A. Discovery to Date

On April 30, 2025, the parties stipulated to an order regarding discovery of electronically stored information, Dkt. 120, which this Court approved. Dkt. 125. The Court entered a protective

order on July 21, 2025. Dkt. 261.

On May 2, 2025, the Court authorized extra-record discovery concerning Plaintiffs' APA and constitutional claims. Dkts. 129, 135. On January 20, 2026, after Plaintiffs amended the complaint to include a challenge to the Haiti termination, the Magistrate Judge also authorized discovery relevant to Plaintiffs' claims challenging the Haiti termination. Dkt. 367. After the Supreme Court's order in *Dahlia Doe*, the Court "clarified that discovery at this point shall proceed only as to Plaintiffs' remaining constitutional claims." Dkt. 444.

Plaintiffs initially propounded nine Requests for Production (RFPs) related to the Venezuela vacatur and termination, and the Haiti partial vacatur and terminations. Dkts. 123-1, 367, 390. On January 15, 2026, Plaintiffs propounded one additional RFP, seeking documents concerning the Trump administration's general policies and practices with respect to the TPS program and TPS periodic review. Dkt. 364-1.

In response to Plaintiffs' discovery requests to date, Defendants produced approximately 1,150 documents related to the Venezuela TPS decisions and the Haiti partial vacatur; approximately 2,000 documents related to the November Haiti termination; and approximately 400 documents related to the July Haiti termination. *See* Dkt. 420 at 2–3. The entirety of Defendants' production has consisted of documents and email communications. Defendants have produced zero text messages and zero instant messages. It is also not clear what documents, if any, Defendants produced in response to Plaintiffs' RFP seeking documents concerning the Trump administration's general policies and practices. Plaintiffs have not identified any documents responsive to this RFP, and Defendants have refused to identify whether any were produced. Dkt. 382 at 5.

**B. Outstanding Discovery Dispute**

There is one outstanding discovery dispute. On March 27, 2026, the Magistrate Judge ordered Defendants to produce documents from the period between the Haiti partial vacatur and the Haiti termination. Dkt. 390. On April 14, this Court upheld the Magistrate Judge's order and directed these documents be produced by May 14, 2026. Dkt. 410 at 3 (requiring production of responsive documents concerning the Haiti termination within 20 days of decision regarding then-pending stay motion).

On June 1, 2026, Plaintiffs identified clearly responsive documents which had not been produced: "onboard[ing]" documents for new government personnel responsible for TPS decisionmaking, which had been hyperlinked to an email Defendants did produce. See Dkts. 423, 463-1. Under the ESI protocol for this case, hyperlinked documents are defined as "attachments" and are by definition responsive if, as here, they are attached to a document that is itself responsive. Dkt. 125 § 5(3)(e) (providing hyperlinks within an email or document "will be considered attachments" and requiring production "to the extent . . . within the producing party's possession, custody, and control"). *See also* Dkt. 475 at 1–5. Nonetheless, Defendants refused to produce *any* of the hyperlinked documents, asserting burden based on sworn testimony that there were more than 9,000 hyperlinked documents. Dkts. 440 at 2–5, 440-3 ¶¶ 11–14. After another order by the Magistrate Judge, upheld by this Court, specifically required production of the hyperlinked documents, Dkts. 430, 457, Defendants produced only 18 documents—a video, a PowerPoint presentation, and 16 other documents—and claimed no other responsive hyperlinked documents existed. Dkts. 471, 475 at 1.

On October 1, 2026, Plaintiffs challenged the completeness of Defendants' production on the ground that Defendants were improperly excluding hyperlinked documents based on application of search terms and a purported relevance review, which Plaintiffs had protested from the outset. Dkt. 475 at 1–5. On October 7, 2026, Defendants notified the Court that they had "located additional documents" that were responsive, and said they would "provide th[e] Court and Plaintiffs . . . updates on this supplementation." Dkt. 481. Nearly two weeks later, during an October 19, 2026 discovery hearing regarding this dispute, Defendants were unable to provide any information about the quantity of documents at issue. Dkt. 497, Tr. at 5:14–7:3 (THE COURT: "[W]hat is the scope of the documents that are the hyperlinks in question here?" MR. SNYDERMAN: " . . . [W]hile we don't have an accurate number, we know that the number to come out is not derivative in any way of the total number of documents with different versions. That's not a direct relationship to the final outcome." THE COURT: "So, Mr. Snyderman, I asked a pretty simple question, and I got this long answer. So let me see if I can clarify what you said. You don't know. Is that the answer?" MR. SNYDERMAN: "Yeah, that's the answer.").

On October 19, the Magistrate again ordered Defendants to produce all hyperlinked materials, with a deadline of November 9, 2026. Dkt. 491. In response, Defendants sought intervention from this Court for the second time, contending they should not be required to produce hyperlinked "onboarding" documents provided to personnel charged with TPS decisionmaking unless those documents also hit search terms and survived a purported relevance review. Dkt. 500 (Defendants' Motion for Relief from Dkt. 491 Pursuant to Rule 72(a)); see Dkt. 440 (prior motion for relief from production of the same documents). Then yesterday, November 9, Defendants produced more than 110 additional responsive hyperlinked documents. Dkt. 504. Defendants appear to be continuing to refuse to produce the overwhelming majority of the more than 9,000 hyperlinked documents.

**C. Post-*Dahlia Doe* Discovery**

On July 7, 2026, Plaintiffs notified Defendants and the Court of their intent to propound additional discovery in the wake of *Dahlia Doe*. Dkt. 433. Following *Dahlia Doe*, Defendants are asserting for the first time that Plaintiffs cannot prevail on their equal protection claims because the challenged terminations were based on opposition to the TPS program itself. *Id.* at 3. In support of this argument, Defendants rely on the Supreme Court's statement that the decision to terminate TPS for Haiti can be explained by the "present administration's general stance on immigration and its obvious antipathy toward past administrations' TPS policies," *id.* at 3 (quoting *Dahlia Doe*, 609 U.S. at 349)—a position the Court found "*could* rest on race-neutral justifications." *Dahlia Doe*, 609 U.S. at 348 (emphasis added).

Prior to *Dahlia Doe*, Defendants' primary substantive response to Plaintiffs' claims was to assert that the challenged terminations were properly based on objective consultation and country conditions review. Accordingly, Plaintiffs' initial discovery requests largely focused on the decision-making process specific to Haiti and Venezuela rather than Defendants' position on the TPS program generally. While this Court subsequently granted limited discovery into Defendants' high-level TPS policies, the time period for that discovery began on July 15, 2025, after Defendants had already begun to dismantle the program. Dkts. 364-2, 367 at 1. *See also* Dkt. 382 at 5 (unclear what if any documents Defendants produced in response to this RFP). Defendants' new legal position requires Plaintiffs to

disprove that Defendants' opposition to the TPS program is race-neutral. To do so, Plaintiffs need limited additional discovery into the motivation behind Defendants' decision to systematically dismantle the TPS program, stripping over one million people of lawful immigration status, a decision that was necessarily made before the first TPS decision—the February 3, 2025 Venezuela vacatur. 90 Fed. Reg. 8805. The limited discovery Plaintiffs now seek consists of communications regarding TPS policy, the motivations behind it, and meetings to implement it—all beginning in the period *before* the initial TPS decisions—and limited depositions of individuals charged with crafting and implementing that policy. Defendants have opposed any new discovery.

On July 14, 2026, following a status conference in which Defendants protested ongoing discovery, the Court "concluded that Defendants had not demonstrated sufficient burden to justify staying discovery, particularly in view of the limited universe of documents at issue and the ability of the parties to stipulate that documents may be produced under a protective order, and in light of the constitutional claims that remain after the Supreme Court decision," while noting "that Defendants remain free to file a formal motion seeking a stay if it so seeks." Dkt. 444. Defendants have not sought a stay. The Court recognized that anticipated additional discovery "while not insignificant – does not seem to be unduly burdensome." Dkt. 415 at 4.

On November 2, 2026, Plaintiffs served twelve additional RFPs (Set Three) and sixteen special interrogatories (Set One). After reviewing Defendants' responses, Plaintiffs may serve additional limited written discovery requests and intend to seek limited depositions. Plaintiffs intend to move forward as expeditiously as possible on remaining discovery. However, given Defendants' history of repeated production delays, noncompliance with discovery orders, and unwarranted appeals of the Magistrate Judge's orders, Plaintiffs reasonably expect completing this limited discovery may take some time. *See, e.g.*, Dkt. 153 (Defendants conceding noncompliance with discovery obligations); Dkt. 178 (Defendants conceding failure to comply with discovery deadline); Dkt. 179 (finding Defendants failed to comply and ordering compliance); Dkt. 183 (finding Defendants failed to provide a court-ordered declaration regarding discovery obligations); Dkt. 222 at 3 ("deeply disturbed by the fact that Defendants mischaracterized" and withheld a substantial number of documents as ACP); Dkt.

249 at 2 (finding Defendants had improperly miscategorized as nonresponsive 40% of randomly reviewed documents); Dkt. 253 (ordering production of documents improperly withheld); Dkt. 419 (overruling more than half of the disputed sample of Defendants' assertions of ACP/WP and limiting others). Among other things, Defendants have continued to willfully withhold documents based on deliberative process privilege, Dkts. 382, 420, despite this Court consistently, repeatedly, and definitively overruling Defendants' DPP assertions in this and other TPS cases. Dkts. 184, 195, 405; *see also Ramos v. Nielsen*, No. 3:18-cv-1554 (N.D. Cal. filed Mar. 12, 2018) ("*Ramos*"), Dkts. 63, 79, 84.

Accordingly, Plaintiffs propose a May 2027 fact discovery cutoff.

Discovery is currently ongoing in other litigation challenging Defendants' TPS terminations. *See, e.g.*, *Miot v. Trump*, No. 1:25-cv-2471 (D.D.C. Nov. 4, 2026), Min. Order (noting ongoing discovery); *CASA v. Mullin*, No. 25-cv-1484 (D. Md. Oct. 5, 2026), Dkt. 159 (same).

Defendants state that they filed a motion to quash recently-served discovery, but at the time of drafting, no such motion has been filed.

Defendants' Position: It is Defendants' position that the discovery period in this case has concluded, as Plaintiffs had obtained ample information in discovery to present their claims on the merits. The Court should resolve the three pending discovery motions before it (Defendants' Rule 72(a) motion filed on November 2, 2026, ECF No. 500, Defendants' Rule 72(a) motion filed on September 16, 2026, ECF No.472, and Defendants' Motion to Quash[20]) and order the close of fact discovery to be November 17, 2026 – the date of case management conference.

Plaintiffs muse above about the changing nature of the case since *Doe*, about their unsupported and misleading contention that the raw number of files in a set of repositories hyperlinked to an email must mean they are entitled to somewhere approaching that number, and they insist that further discovery requests will be limited in scope. This Court's experience in this case should suggest otherwise.

[20] Defendants assert that their Motion to Quash tolls the deadline to respond to Plaintiffs' challenged Special Interrogatories until a ruling on the Motion issues.

Federal Rule 26(b) governs the scope and limits of discovery. Fed. R. Civ. P. 26(b). Federal Rule 26(b)(2)(C)(ii) requires the court to limit the frequency or extent of discovery where "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(ii).

The Plaintiffs have taken the opening this Court granted for extra-record discovery in May of 2025 (a year-and-a-half ago) (*see* ECF No. 129; *see also* ECF No. 360) and used it to conduct a limitless fishing expedition.[21] But throughout this case, this Court has recognized that extra-record discovery would support **both** APA and constitutional claims, and Plaintiffs so argued at the initial case management conference. *See* ECF No. 127 (minute order of initial case management conference, summarizing Plaintiffs' statements that "for the APA claim, extra-record discovery would be appropriate. Discovery would also be sought for the equal protection claim.") Discovery requests and produced material did not distinguish between APA claims and constitutional claims. *See, e.g.*, ECF No. 365-1 (search terms and dates for discovery regarding Haiti supplemental complaint); ECF No. 123-1.

After *Dahlia Doe*, Plaintiffs informed the Court that the only matters on which they still seek discovery are all related to already existing claims. *See* ECF No. 487 at 4. But Plaintiffs say above that the case has changed, and they "need limited additional discovery" into the motivations of Secretary Noem and other Defendants for their equal protection claims, brought at the outset of this action more than one year ago. *Supra* Sec. VIII(C)[22]; Tr. of Oct. 1, 2026 Hrg, 11:24-12:23.

As Defendants explained to this Court when the relevant declaration was filed, and repeatedly explained to Judge Kim, Plaintiffs claims about the alleged numerical inadequacy of Defendants' production are meritless. *See, e.g.*, ECF No. 440 at 5 (without retention labeling of cloud documents, "potentially hundreds of duplicates of each file" must be manually reviewed, citing Zittenfield Decl.); Tr. of Oct. 19, 2026 Disc. Hrg. At 6:5-11 (discussing duplicates). Now, heeding Plaintiffs' requests to modify her discovery order, Judge Kim has directed Defendants to dispense with the relevance

[21] To the extent Plaintiffs allege above that Defendants have not produced any materials responsive to their January 15, 2026 RFP (Set Two), Defendants assert that this is incorrect.

[22] Plaintiffs have even asserted a need for "discovery on discovery." ECF No. 475 at 5.

requirements the Federal Rules require for any discovery search. *See* ECF No. 500 (Dfts R.72(a) Mot.) Rule 26(b) allows federal courts to further limit the scope of permitted discovery beyond what is normally allowed, but not to waive threshold requirements. *See* Fed. R. Civ. P. 26(b)(1) ("Unless otherwise limited by court order, ...."). Defendants dispute Plaintiffs' characterization of hyperlinked materials as attachments as incorrect under caselaw and under the ESI protocol in this case, as Defendants discuss in their pending Rule 72 motion on the subject. *See* ECF No. 500 *see also* ECF No. 440 at 3; Discovery Hrg. 9 (Oct. 19, 2026). Defendants are in compliance with all court orders, including those regarding discovery production.[23]

But Plaintiffs' repeated pleas for just a bit more "limited" discovery are nothing more than an effort to trawl through literally non-relevant materials in the virtual file cabinets of USCIS after ample opportunity to obtain materials necessary to support their claims. *See* ECF No. 507 (Defendants' Motion to Quash).

After nearly a year and a half of litigation and discovery production, additional discovery beyond that already conducted would be "cumulative" of existing record evidence and unpersuasive as to the likelihood of success of an equal protection claim. *See Dahlia Doe*, 609 U.S. at 350 n.7 ("On June 16, *Miot* respondents filed a motion to dismiss the writ of certiorari as improvidently granted. They claim that newly discovered evidence provides further support for their equal protection claim. This evidence is cumulative of other evidence in the record, and the motion is denied.").

**IX. Class Actions**

This is not a class action.

**X. Related Cases**

<u>Plaintiffs' Position</u>: On February 19, 2025, Plaintiffs filed a motion to relate this case to *Ramos*. *See* Motion to Relate Cases, *Ramos*, Dkt. 249. The Court denied Plaintiffs' motion as moot on February 26, 2025, because this case was assigned to this Court "through the regular assignment 'wheel' and not because of any asserted relation by Plaintiffs." *See* Order, *Ramos*, Dkt. 254.

On July 7, 2025, Plaintiffs filed a motion to relate *National TPS Alliance v. Noem*, Case No.

[23] Defendants assert that their Motion to Quash tolls the deadline to respond to Plaintiffs' challenged Special Interrogatories until a ruling on the Motion issues.

25-cv-05687-TLT (challenging termination of TPS for Honduras, Nicaragua, and Nepal) to both *Ramos* and this case. *See Ramos*, Dkt. 264. This Court denied Plaintiffs' motion on July 11, 2025. *See Ramos*, Dkt. 267.

<u>Defendants' Position</u>: The Supreme Court held that 8 U.S.C. § 1254a(b)(5)(A) bars review of all of Plaintiffs' non-constitutional claims. 609 U.S. at 345 (2026). As such, the Supreme Court found that 8 U.S.C. § 1254a(b)(5)(A) bars review of the Secretary of Homeland Security's determinations with respect to designations, extensions, or terminations of foreign countries for TPS. *Id.* at 338-41, 345.

In *Dahlia Doe* the *exact* question that Plaintiffs bring to this Court in their various motions—whether 8 U.S.C. § 1254a(b)(5)(A) eliminated this Court's jurisdiction and authority to provide relief with respect to the APA or constitutional challenges to the Secretary of Homeland Security's terminations of the TPS designations for Venezuela and Haiti. *See* 609 U.S. at 338-41, 350.[24]

As to Plaintiffs' equal protection claims, the Supreme Court further held that the plaintiffs in *Dahlia Doe* were "unlikely to prove that race was a motivating factor in the decision to terminate Haiti's TPS designation" and therefore unlikely to succeed on their equal protection claim." *Doe*, 609 U.S. at 350. Specifically, the Supreme Court noted that none of the cited statements by either President Trump or former Secretary Noem—some of the very statements on which Plaintiffs in this case rely—were "overtly racial, and in substance all expressed policy views that could rest on race-neutral justifications." *Id.* at 348-49. Instead, the Supreme Court found that the plaintiffs themselves identified a "strong race-neutral explanation of these official's statements: the present administration's general stance on immigration and its obvious antipathy toward past administrations' TPS policies." *Id.* at 349.

Accordingly, the Supreme Court's judgment resolves and significantly narrows the issues in this case—including ongoing discovery—by definitively resolving that the Secretary's TPS determinations may *not* be challenged under the APA.

## XI. Relief

<u>Plaintiffs' Position</u>: On March 31, 2025, this Court granted Plaintiffs' motion to postpone the

[24] Defendants acknowledge that Claims One, Two, and Three are on appeal and thus, this Court currently lacks jurisdiction over them. *See* ECF No. 487 at 3.

Venezuela vacatur and termination, finding Plaintiffs likely to succeed on their APA and Equal Protection claims. Dkt. 93. This Court and the Ninth Circuit denied Defendants' motion for stay pending appeal. Dkts. 102, 113. On May 19, 2025, the Supreme Court granted a stay in an unexplained shadow docket order. Dkt. 140. On August 29, 2025, the Ninth Circuit affirmed this Court's March 31, 2025 order. *NTPSA I*, 150 F.4th at 1029–30.

On May 30, 2025, this Court granted in part and denied in part Plaintiffs' motion to preserve status and rights. Dkt. 162. This Court's order postponed the effective date of the portion of the Secretary's vacatur decision that purported to invalidate TPS-related documents received on or before February 5, 2025. *Id.* at 11. Defendants did not appeal or seek a stay of this Court's May 30 Order.

On September 5, 2025, this Court granted Plaintiffs' motion for partial summary judgment on their APA challenges to the Venezuela vacatur, the Venezuela termination, and the Haiti partial vacatur; entered an order setting aside those three decisions; and directed the clerk to enter final judgment in favor of Plaintiffs on those APA claims. Dkt. 279. Defendants appealed, except with respect to the portion of this Court's order preserving the validity of TPS-related documents issued to Venezuelan TPS holders before February 6, 2025. *See* Appellants-Defendants' Opening Brief at 18 n.5, *Nat'l TPS All. v. Noem*, No. 25-5724 (9th Cir. Oct. 16, 2025), Dkt. 31.1 ("On appeal, the government is not challenging the district court's judgment to the extent that it preserved 'EADs, Forms I-797, Notices of Action, and Forms I-94 issued with October 2, 2026 expiration dates' through February 5, 2025."). Defendants sought a stay pending appeal of the Court's judgment on the Venezuela vacatur and Venezuela termination. Dkt. 281. This Court and the Ninth Circuit denied Defendants' request. Dkts. 296, 306. On October 3, 2025, the Supreme Court granted a stay in another unexplained shadow docket order. *Noem v. Nat'l TPS All.*, 146 S. Ct. 23 (2025) (mem.).

On January 28, 2026, the Ninth Circuit affirmed this Court's partial summary judgment order. Dkt. 369. On October 5, 2026, the Supreme Court granted Defendants' petition for certiorari, vacated the January 28 Ninth Circuit decision, and remanded for the Ninth Circuit to reconsider in light of *Dahlia Doe*. Dkt. 480.

The Supreme Court stay of this Court's September 5, 2025 order expired on November 6, 2026. *See* Order, *Nat'l TPS All. v. Mullin*, Case No. 25-5724 (9th Cir. Nov. 3, 2026), Dkt. 97. On November 3, 2026, the Ninth Circuit granted a 14-day administrative stay, which began on November 6, and ordered the parties to submit supplemental briefing regarding the effect of *Dahlia Doe* by November 10, 2026. *Id.*, Dkts. 97, 98.

On December 10, 2025, this Court granted Plaintiffs' motion for declaratory relief. Dkt. 340. This Court "declare[d] that (1) the vacatur of the January 17, 2025, TPS extension for Venezuela was unlawful as was (2) the termination of Venezuela's 2023 TPS designation on February 5, 2025." *Id.* at 3. This Court stayed its order for two weeks "to give the Ninth Circuit the opportunity to consider any stay." *Id.* at 4. Defendants appealed, but did not seek a stay. Dkt. 362. Defendants' appeal remains pending.

In addition to the relief already granted by this Court, Plaintiffs' Second Amended Complaint seeks further relief on their Equal Protection claim, as well as an award of attorneys' fees and costs, and any other additional relief this Court may deem just and proper. Dkt. 498 ¶¶ 275–284.

<u>Defendants' Position</u>: Defendants assert that no relief is available to Plaintiffs on any of their claims. This Court lacks authority to decide Plaintiffs' non-statutory claims because the Supreme Court held "the TPS statute's judicial-review bar applies to all non-constitutional claims." *See Mullin v. Doe*, 609 U.S. at 345 (2026). The review bar also forecloses Plaintiffs' constitutional claim. *See id.* at 350-54 (Thomas, J., concurring). Even assuming that constitutional claim is reviewable, Plaintiffs' equal protection claim is unlikely to succeed on the merits for the reasons articulated by the Supreme Court in *Doe*. *Id.* at 346-50.

Section 1252(f)(1) of Title 8 "prohibits lower courts from entering injunctions that order federal officials to take or refrain from taking actions to enforce, implement, or otherwise carry out the specified provisions." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). The TPS statute is a covered provision, and the statutory prohibition applies "[r]egardless of the nature of the action or claim" and to any order that "restrain[s]" the Secretary. 8 U.S.C. § 1252(f)(1).

This Court's partial summary judgment on the merits remains on appeal, discussing the issues

of jurisdiction and redressability.

On September 5, 2025, this Court granted Plaintiffs' Motion for Partial Summary Judgment and held unlawful and set aside the partial vacatur of Haiti's TPS designation and the vacatur and termination of Venezuela's 2023 TPS designation. ECF No. 279. Defendants sought a stay from the Ninth Circuit, which was denied on October 2, 2025, ECF No. 314, and then from the Supreme Court, which was granted. *See Order Granting Stay, Noem v. National TPS Alliance*, Case No. 25-5724 (Oct. 3, 2025).

On December 10, 2025, this Court granted Plaintiffs' motion for declaratory relief regarding the partial final judgment in ECF No. 279. ECF No. 340.

On October 5, the Supreme Court granted *certiorari*, vacated the Ninth Circuit's decision in Defendants' appeal of this Court's merits decision to grant partial summary judgment in light of *Dahlia Doe*, and returned the case to the Ninth Circuit for further proceedings. *Mullin v. Nat'l TPS Alliance*, *et al.*, No. 26-48, — S. Ct. —, 2026 WL 2976626.

On October 30, the Ninth Circuit acknowledged the Supreme Court's vacatur of its previous decision upholding this Court's merits judgment on several claims of this case and denied Defendants' pending motion to stay this Court's preliminary injunction upon issuance of the Supreme Court's mandate on November 6, 2026. ECF No. 501.

On November 3, the Ninth Circuit revised its order (ECF No. 501), granting Defendants' motion for an administrative stay for 14 days after the issuance of the Supreme Court's mandate on November 6, 2026, i.e. until November 20, 2026. *Nat'l TPS Alliance v. Mullin*, No. 25-5724, 2026 WL 3368420 (9th Cir. Nov. 3, 2026). On November 5, the Ninth Circuit consolidated two appeals from this case, No. 25-5724, and 26-187, and required supplemental briefing on issues raised in both appeals. ECF No. 503.

**XII. Settlement and ADR**

The parties do not believe that ADR would be fruitful at this point given Plaintiffs' and Defendants' disagreement about threshold legal issues.

**XIII. Other References**

The parties do not believe this case is suitable for reference to binding arbitration or a special master. Nor is this case suitable for the Judicial Panel on Multidistrict Litigation.

**XIV. Narrowing of Issues**

The parties will continue to discuss the possibility of narrowing the issues beyond the motions described above.

**XV. Scheduling**

On October 14, 2026, this Court entered an order setting a joint case management conference for November 17, 2026 at 2:30pm PT. ECF No. 477 at 14.

Plaintiffs' Position: At this time, there are no pending court-ordered deadlines in this matter. Defendants' responses to Plaintiffs' outstanding discovery requests are due on December 2, 2026. After reviewing Defendants' responses, Plaintiffs may seek additional discovery, including potentially depositions of officials involved in the challenged decisions. Based on prior experience in this case—including Defendants' repeated delays in producing discovery and numerous objections to magistrate judge discovery orders, *see, e.g.*, Dkt. 429 at 5–6 (detailing pattern of discovery violations)—Plaintiffs believe discovery can be completed by May 2027.

Plaintiffs are not opposed to Defendants filing a second Motion for Summary Judgment on Plaintiffs' Equal Protection Claim. Plaintiffs propose that the parties submit a joint proposed schedule for briefing that motion within fourteen days of (a) the close of fact discovery or (b) final resolution of Defendants' appeal of this Court's September 5, 2025 order, whichever comes later.

Defendants' Position: Defendants' response to Plaintiffs' pending Special Interrogatories which would otherwise be due on December 3, 2026 is tolled until a decision on their Motion to Quash. Defendants recommend that the Court set a briefing schedule after the case management conference which orders parties to file Motions for Summary Judgment by March 1, 2027 and incorporates a fact discovery cut-off date of November 17, 2026.

The Court should authorize Defendants to file a second Motion for Summary Judgment on Plaintiffs' Equal Protection Claim because doing so would be in the interests of justice after an intervening change in controlling law. *See Dahlia Doe*, 609 U.S. 324.

**XVI. Expedited Trial Procedure**

The parties do not believe that this case should be handled under the Expedited Trial Procedure of General Order No. 64, Attachment A.

**XVII. Trial**

Plaintiffs' Position: Plaintiffs propose that the parties submit a joint proposed schedule for trial on Plaintiffs' Equal Protection claim within fourteen days of (a) the close of fact discovery or (b) final resolution of Defendants' appeal of this Court's September 5, 2025 order, whichever comes later.

Defendants' Position: Defendants maintain that this case should be decided via summary judgment. Fed. R. Civ. P. 56. Even if the Court decides that Plaintiffs' constitutional claims should be decided on the discovery record, Defendants intend to assert that no genuine issue of material fact exists for trial and that the case can be disposed of on summary judgment.

**XVIII. Disclosure of Non-Party Interested Entities or Persons**

Plaintiffs filed Certifications of Interested Entities or Persons, as required by Civil Local Rule 3-15, on February 19, 2025. Dkts. 5, 6. Plaintiffs are unaware of any persons, firms, partnerships, corporations, or other entities that have either (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

**XIX. Professional Conduct**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**XX. Other Matters**

The parties have no other matters to raise at this time.

Date: November 10, 2026

Respectfully submitted,

NATIONAL DAY LABORER ORGANIZING NETWORK

/s/ *Jessica Karp Bansal*
Jessica Karp Bansal

*Attorneys for Plaintiffs*

Date: November 10, 2026

U.S. DEPARTMENT OF JUSTICE

/s/ *Eric Snyderman*
Eric Snyderman
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 742-7079
Eric.M.Snyderman@usdoj.gov

*Attorneys for Defendants*

**SIGNATURE ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the other Signatory has concurred in the filing of this document.

Date: November 10, 2026

NATIONAL DAY LABORER ORGANIZING NETWORK

/s/ *Jessica Karp Bansal*
Jessica Karp Bansal