United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NATIONAL TPS ALLIANCE, et al.,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, et al.,

Defendants.

Case No. 25-cv-01766-EMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR RELIEF FROM MAGISTRATE ORDER**

Docket No. 472

In September 2026, after reviewing documents submitted for in camera review, Magistrate Judge Kim issued an order finding some documents or parts thereof privileged but not others. *See* Docket No. 469 (order). At issue here are Judge Kim's findings on the law enforcement privilege ("LEP") and the attorney-client privilege. Having considered the parties' briefs, the Court hereby **GRANTS** in part and **DENIES** in part the government's motion for relief.

## I. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636, this Court reviews Judge Kim's discovery order for clear error or a ruling contrary to law. *See* 28 U.S.C. § 636(b)(1)(A) (providing that "[a] judge may designate a magistrate to hear and determine any pretrial matter pending before the court [with limited exceptions]" and that a judge "may reconsider any pretrial matter . . . where it has been shows that the magistrate judge's order is clearly erroneous or contrary to law"); *see also* Fed. R. Civ. P. 72(a); *Grimes v. City & Cnty. of S.F.*, 951 F.2d 236, 241 (9th Cir. 1991).

Here, the Court applies the contrary-to-law standard because the government is challenging Judge Kim's rulings as to whether a privilege applies to specific documents. *Cf. In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2022) (noting that "[w]hether the attorney-client privilege applies to

United States District Court
Northern District of California

specific documents represents 'a mixed question of law and fact which this court reviews independently and without deference to the district court'"). Notably, the Court's review of the privileges at issue in the instant motion are not based on factual findings. *See Greer v. Cnty. of San Diego*, 127 F.4th 1216, 1222 (9th Cir. 2025) (acknowledging that, in a decision prior to *Grand Jury*, the Ninth Circuit stated that "'[w]e review for clear error a district court's *factual findings* for attorney-client privilege'") (emphasis added).

## II. <u>LEP</u>

Judge Kim held that *some* information in *some* documents could be withheld based on the LEP. *See* Docket No. 469 (Order at 2). Plaintiffs do not dispute that the LEP is a recognized privilege. *See Doe v. McAleenan*, No.18-cv-02349-BLF (VKD), 2019 U.S. Dist. LEXIS 153423, at *5 (N.D. Cal. Sept. 6, 2019) (DeMarchi, J.) (noting that, although "the Ninth Circuit has not formally recognized a law enforcement privilege in the context of discovery in a civil action," "several other courts of appeal and several district courts within the Ninth Circuit have recognized such a privilege, and plaintiffs do not challenge the existence of such a privilege here").

> [T]he law enforcement privilege protects against disclosures that would reveal confidential sources, law enforcement techniques, and the identities of witnesses and law enforcement personnel. It also safeguards the privacy of those involved in a criminal investigation and otherwise prevents interference with a criminal investigation. The party asserting the privilege bears the burden of showing that the privilege applies. The privilege is qualified, not absolute, and must give way when the needs of a particular litigant for access to the information outweigh the public interest in non-disclosure.

*Id.* at *5-6.

In the instant case, the information that the government seek to protect from disclosure is "the **number** of Known or Suspected Terrorists ('KST') **or** Non-KST National Security Record **numbers** within the relevant population of TPS recipients." Mot. at 2 (emphasis added). In support of its claim that this information is privileged, the government provided to Judge Kim a declaration from Cheryl Mimura, an FBI employee who has "served as Deputy Director of the Threat Screening Center [previously known as the Terrorist Screening Center] since January 25, 2026." Mimura Decl. ¶ 1.

/ / /

As explained in the Mimura Declaration, the Threat Screening Center ("TSC") is a federal multi-agency center administered by the FBI. *See* Mimura Decl. ¶ 4. The TSC maintains the Terrorist Screening Dataset ("TSDS"), which is "the federal government's consolidated terrorist watchlist." Mimura Decl. ¶ 5. Ms. Mimura states:

> I understand the government has asserted the law enforcement privilege over information pertaining to the number of "KST or Non-KST National Security Record" numbers within the relevant population of TPS recipients. I further understand that such numbers relate directly to the number of individuals within this population that are listed in the TSDS, either as known or suspected terrorists (KSTs) or watchlist exceptions.

Mimura Decl. ¶ 9.

> 13. While disclosure of the total number of "KST or Non-KST National Security Records" within the population of TPS recipients might not directly disclose the status of any specific individual, disclosing such information for such an identifiable population would provide valuable information to U.S. adversaries regarding the effectiveness of the U.S. government's TSDS-related screening procedures and/or countermeasures employed by U.S. adversaries.
>
> 14. For example, a terrorist organization with operatives within the subject population could benefit from comparing disclosed "KST" and "Non-KST" numbers to the number of its operatives within the population. If such an organization were to have "X" number of operatives within the relevant population and the disclosed numbers were substantially lower than X, the terrorist organization could infer a large percentage of its operatives have been able to go undetected (thereby minimizing the deterrent effect of the TSDS). Conversely, to the extent the disclosed numbers were revealed to be higher than X, the terrorist organization might perceive a need to become more cautious and develop and employ additional countermeasures to evade detection.

Mimura Decl. ¶¶ 13-14.

Apparently, Judge Kim found the declaration persuasive – at least in part – because she held that the following information was protected by the LEP: "[t]he number or words indicating a number of known or suspected terrorists on NTPSA2_014981, NTPSA2_014983, NTPSA2_015111, and NTPSA2_015112." Docket No. 469 (Order at 2). But "[n]o other portions of the documents *in camera* may be withheld under the [LEP]." Docket No. 469 (Order at 2). At least one other district court has found the law enforcement obtains for the same kind of information based on the same kind of declaration. *See Afr. Comms. Together v. Mullin*, No. 26-

cv-11201-ADB, 2026 U.S. Dist. LEXIS 172616, at *6-7 (D. Mass. Jul. 27, 2026).

In its motion for relief, the government argues, in effect, that Judge Kim's order is inconsistent. That is, if she found information about the number of known or suspected terrorists ("KSTs") privileged, that information was found *not only* on the specific documents she identified *but also* on the other documents over which the government claimed the LEP.

As a facial matter, the government's point is a fair one. That being said, the Court does not hold that all of the documents at issue protected by the LEP. Rather, the Court agrees with the argument that Plaintiffs made to Judge Kim that none of the information is protected by the LEP (or at least most of the information is not protected) because the government *already disclosed* in other documents it produced to Plaintiffs – *without any redactions* – the number of known KSTs for the Haiti TPS population and thus there has been a waiver (of that specific subject matter). *See* Docket Nos. 409-16, 409-20, 409-21. The information disclosed in these documents is the same kind of information that the government is now claiming the LEP over. *See, e.g.*:

1. NTPSA2_014372 (in particular, on NTPSA2_014376).
2. NTPSA2_014506 (in particular, on NTPSA2_014510).
3. NTPSA2_014514 (in particular, on NTPSA2_014519).
4. NTPSA2_014541 (in particular, on NTPSA2_014546).
5. NTPSA2_014569 (in particular, on NTPSA2_014573).
6. NTPSA2_014578 (in particular, on NTPSA2_014583).
7. NTPSA2_014587 (in particular, on NTPSA2_014591[1]).
8. NTPSA2_014939 (in particular, on NTPSA2_014943).
9. NTPSA2_014973 (in particular, on NTPSA2_014977).
10. NTPSA2_014981.
11. NTPSA2_014982 (in particular, on NTPSA2_014983).
12. NTPSA2_015111 (in particular, on NTPSA2_015111-12). For this document, however, there is more information besides the number of known KSTs. The Court

[1] The government seems to have made a redaction error on this page.

shall permit the following information to be redacted as privileged: the numbers associated with National Security cases (whether expressed quantitatively or qualitatively). There has been no waiver with respect to this information.

13. NTPSA2_015193 (in particular, on NTPSA2_015198).
14. NTPSA2_015206 (in particular, on NTPSA2_015211).
15. NTPSA2_015218 (in particular, on NTPSA2_015222).
16. NTPSA2_015226 (in particular, on NTPSA2_015231).
17. NTPSA2_015241 (in particular, on page 6 of the document).
18. NTPSA2_015285 (in particular, on NTPSA2_015289).
19. NTPSA2_015325 (in particular, on NTPSA2_015330).
20. NTPSA2_015376 (in particular, on NTPSA2_015381).[2]

In its reply brief, the government makes several arguments in response to Plaintiffs' position that there has been a waiver of the privilege. The arguments are not persuasive.

First, though not entirely clear, the government somewhat suggests that the law enforcement privilege may not be subject to waiver. *See* Reply at 1. This is a weak argument for three reasons: (a) the fact that the privilege is qualified in nature suggests that a waiver is permissible (*i.e.*, the privilege is not unassailable and can be overcome); (b) the government has not cited any authority where a court held that waiver is never possible for the LEP; and (c) district courts generally have held that the privilege *can* be waived. *See, e.g.*, *Doe v. McAleenan*, No.18-cv-02349-BLF (VKD), 2019 U.S. Dist. LEXIS 175767, at *12 (N.D. Cal. Nov. 8, 2019) (holding that "defendants waived any claim of law enforcement privilege"); *Nio v. United States Dep't of Homeland Sec.*, 314 F. Supp. 3d 238, 247 (D.D.C. 2018) (stating that "[t]he law enforcement privilege can be waived through 'voluntary disclosure of a significant portion of the information claimed to be privileged'"); *Kitevski v. City of New York*, No. 04 Civ. 7402 (RCC) (RLE), 2006

[2] In the parties' submission to Judge Kim, the government claimed the LEP for additional documents. *See* Docket No. 420-1 (documents numbered 21-34). However, those documents were not provided to the Court for in camera review (with the exception of a few documents over which the government claimed attorney-client privilege). The Court therefore does not address those documents but expects that its ruling here should inform any dispute related to those documents.



United States District Court
Northern District of California

U.S. Dist. LEXIS 11017, at *12 (S.D.N.Y. Mar. 16, 2006) (stating that "[p]rinciples of waiver apply to the law enforcement privilege").

Second, the government argues that the Court cannot find waiver given that it was *Plaintiffs* who publicly filed the documents in Docket No. 409 above – not the government – and the parties have a clawback agreement which allows a party to clawback a privileged document that has been inadvertently produced. *See* Docket No. 126 (clawback agreement). As an initial matter, it does not matter that it was Plaintiffs who publicly filed the documents in Docket No. 409; the relevant fact for waiver is that the government produced them to Plaintiffs instead of withholding them or redacting the privileged information contained in the documents. As for the clawback agreement, the government has waived the ability to invoke it. Plaintiffs publicly filed the documents in Docket No. 409 back in April 2026; thus, presumably, the documents were produced on or before that time. However, there is no evidence indicating that, after production of the documents or Plaintiffs' filing of the documents, the government invoked the clawback procedure (*i.e.*, by giving notice to Plaintiffs that the documents were privileged). The government has not even sought to seal the documents in Docket No. 409. In addition, the government did not raise the clawback argument in its portion of the joint discovery letter presented to Judge Kim even though Plaintiffs raised the issue of waiver. *See* Docket No. 420 (joint letter). Nor did the government raise the clawback argument in the motion currently pending before the Court. The *first* time that the government mentioned the clawback argument was in its *reply* brief, filed on October 15, 2026. *See United States v. Liew*, 856 F.3d 585, 599 n.7 (9th Cir. 2017) (noting that "'[l]egal issues raised for the first time in reply briefs are waived'"); *Padilla v. City of Richmond*, 509 F. Supp. 3d 1168, 1180 (N.D. Cal. 2020) (stating that, "[a]s a general rule, courts do not consider arguments raised for the first time on reply"). Given these circumstances, the government cannot try to avoid waiver by relying on the clawback agreement.

Third, the government essentially makes a scope argument – *i.e.*, what was disclosed to Plaintiffs in Docket No. 409 was information about KSTs in the September-October 2025 timeframe, whereas the information at issue now is about KSTs in the April-June 2025 timeframe. *See* Reply at 3 (arguing that "the information provided is only a snapshot at a particular moment or



United States District Court
Northern District of California

a glimpse in time, and is constantly being updated or changing"). But the government has not cited any authority to support its position that the scope of a waiver extends to only "identical" information. Reply at 3. And in any event, the information that was previously disclosed is largely identical to the information that the government seeks to assert privilege over now. Frankly, the fact that the information that was previously disclosed is *more recent in time* (September-October 2025) seems to cut against the government. The older or "staler" information (April-June 2025) would seem to present less of a security concern, precisely because it *is* older.

Finally, the government argues that, regardless of prior disclosure of similar information, the Court must do an analysis to see if the information now at issue should be disclosed. The LEP is, as noted above, a qualified privilege. As indicated above, Judge Burroughs (D. Mass.) concluded in her TPS case that the privilege was not overcome. *See Afr. Communities Together v. Mullin*, 2026 U.S. Dist. LEXIS 172616, at *7 (D. Mass. Jul. 27, 2026) (stating that, "against the real and specific government interest in keeping that information nonpublic, Plaintiffs make no showing of 'authentic ne[ed]' for the information; instead, they question whether the data 'could create any risk of circumvention of the law' or otherwise reveal law enforcement techniques[;] [t]he Court concludes, on balance, that disclosure of this information, even pursuant to a protective order, is unwarranted in light of the national security interests at stake and the minimal relevance of the information to Plaintiffs' claims"). This Court, however, concludes that, if the merits were addressed, the need for Plaintiffs to access the information outweighs the public interest in nondisclosure. When Haiti's TPS was terminated in July 2025, *see* 90 Fed. Reg. 28760 (July 1, 2025), part of the rationale was the United States' national security interests. Here, the information at issue – *i.e.*, the number of KSTs – may support Plaintiffs' position that Haitian TPS holders do not present a national security risk and thus any suggestion otherwise is pretextual (which would support their equal protection claim). And the government has failed to address any *specific* risk to law enforcement from the disclosure regarding the number of KSTs for this group during the period in question.

Accordingly, the government shall produce the information about the number of KSTs, contained in the documents identified above. Redaction is permitted as described above for

United States District Court
Northern District of California

NTPSA2_015111 only.

## III. ATTORNEY-CLIENT PRIVILEGE

The Court previously issued an order on attorney-client privilege at Docket No. 473. The legal standards articulated in that order apply to this order as well. As reflected in that order, the government bears the burden of proving the privilege applies, and often the critical question is whether "specific, substantive legal advice provided by an attorney is discernible." Docket No. 473 (Order at 4).

A. Draft Decision Memos

1. NTPSA2 15453 [Withheld in Full]

The document is a draft memo to the Secretary from the Acting Director of USCIS. The draft memo is titled "Temporary Protected Status for Haiti." It relates to termination of Haiti's TPS. There are two versions of the document: (1) a draft of the memo with track changes shown (the PDF version) and (2) a draft of the memo in "clean" form, *i.e.*, no track changes shown (the Word version). The government asserts that the PDF version (in its entirety) is privileged because it "reflect[s] legal advice from DHS counsel Brian Kelliher and David Graham and responses to legal advice from USCIS clients." Docket No. 423-1 (Ex. A at ECF Page 2).

**Word version.** It appears that the government is claiming privilege over the Word version (no track changes shown). The Word version is not privileged. Specific, substantive legal advice is not discernible from the face of the document. There is no indication that the client did anything but adopt an attorney's edits. *See* Docket No. 473 ("[O]nce a client adopts an attorney's edits or suggestions, the document that actually incorporates the attorney's work – whether in draft or final version – does not remain privileged."). Critically, the clean Word version does not reveal any specific legal advice sought or obtained. For instance, it is not an iteration of a prior draft with which it may be compared to ascertain legal advice.

**PDF version.** As for the PDF version (track changes shown), Judge Kim held that only the comment BDK13 is privileged. BDK is presumably Brian Kelliher.

As an initial matter, the Court notes that there are multiple comments from Brian Kelliher – not only BDK13 but also BDK7 and BDK9. To the extent Judge Kim found that only BDK13,

United States District Court
Northern District of California

and not the other comments are privileged, she erred.

In addition, Judge Kim erred in another way – *i.e.*, to the extent the client provided an immediate response to the comments in BDK13, BDK7, and BDK9, that is privileged.

However, that is the extent of the privileged information. To the extent the government suggests something about legal advice can be gleaned from the fact that the BDK comments also *highlight* certain paragraphs from the draft, the highlighting does not reveal any specific legal advice. At most, it reflects some interest on the part of counsel.

Also, to the extent the government is trying to assert privilege over (in essence) the remainder of the draft, that is not warranted. The government has not met its burden of establishing privilege. For instance, the government has not shown that the redline edits were made only by counsel and not the client. There are also some comments from the client, but the comments do not reveal any specific legal advice or constitute a request for legal advice.

2. NTPSA2 15702 [Withheld in Full]

The document is a draft of the same memo above. The same analysis above applies here.

3. NTPSA2 15714 [Withheld in Full]

The document is a draft of the same memo above. The same analysis above applies here.

4. NTPSA2 14514

The document is a draft of the same memo above. The same analysis above applies here.

B. Communications with External Shareholders

1. NTPSA2 14577 [Withheld in Full]

The document is a draft letter from the Secretary to a constituent – *i.e.*, Michael Popowycz, the Vice Chairman and CEO of Case Farms Chicken (based on North Carolina). The document comes in two versions: (1) a draft of the letter with track changes shown (the PDF version) and (2) a draft of the letter in "clean" form, *i.e.*, no track changes shown (the Word version). According to the government, the track changes reflect redline edits from DHS OGC attorneys (Brian Kelliher, Jason Levy, Hillary Hunnings, and Sohom Datta) and a comment from a DHS attorney (Jason Levy). *See* Docket No. 423-1 (Ex. A at ECF Page 3).

/ / /

Judge Kim held that only the comment from Jason Levy (JL1) is privileged.

**Word version.** To the extent the government is claiming that the Word version (with no track changes shown) is privileged, that argument lacks merit. Similar to above, specific, substantive legal advice is not discernible from the face of the document, and there is no indication that the client did anything but adopt the attorneys' edits. Whatever those edits may have been, they are not ascertainable from this document or from comparison with other disclosed documents.

**PDF version.** To the extent the government is claiming that the PDF version (with track changes) is privileged, Judge Kim did not err. The government has not shown which edits on the document came from the other attorneys. Nor has the government clearly demonstrated that *all* of the edits on the document came from attorneys.

2. NTPSA2 14866 [Withheld in Full]

The document is a draft letter from the Secretary to a constituent – *i.e.*, the governor of Delaware. Similar to above, the document comes in two versions: (1) a draft of the letter with track changes shown (the PDF version) and (2) a draft of the letter in "clean" form, *i.e.*, no track changes shown (the Word version). According to the government, the track changes reflect redline edits from OGC attorneys (Brian Kelliher and Hillary Hunnings) and a comment from an OGC attorney (Hillary Hunnings). *See* Docket No. 423-1 (Ex. A at ECF Page 3).

It appears that Judge Kim found none of the document privileged.

Judge Kim erred with respect to the comment from Hillary Hunnings. Just as the comment from Jason Levy above is privileged, so too is the comment from Hillary Hunnings here. To be sure, the comment from Hillary Hunnings is factual in nature, but that does not mean she was not providing legal advice.

Other than that, however, the Court rules the same as above. That is, to the extent the government is claiming that the Word version (with no track changes shown) is privileged, that argument lacks merit.

To the extent the government is claiming that the PDF version (with track changes) is privileged, Judge Kim did not err (except with respect to the Hillary Hunnings comment).

3. <u>NTPSA2 14904 [Withheld in Full]</u>

The document is another draft of the letter from the Secretary to Mr. Popowycz. As above, it comes in two versions: (1) a draft of the letter with track changes shown (the PDF version) and (2) a draft of the letter in "clean" form, *i.e.*, no track changes shown (the Word version). The government claims privilege on the basis that it "contains OCC attorney advice to the client through tracked changes and comments." Docket No. 423-1 (Ex. A at ECF Page 4).

Judge Kim held that the document is not privileged.

Judge Kim erred in part. For the PDF version, there are comments from OCC attorneys and an immediate client response; those are privileged. However, the remainder of the document is not privileged. There appears to be at least one independent comment, and it does not appear (as a facial matter) to come from an attorney; nor does the comment appear to be seeking legal advice. In addition, it is not clear which edits on the document come from the attorneys. The government has not clearly stated that *all* of the edits on the document came from the attorneys.

The clean version of the letter (*i.e.*, the Word version) shall be produced. Specific, substantive legal advice is not discernible from the face of the document, and there is no indication that the client did anything but adopt any attorneys' edits, the specific contents of which are not ascertainable from this document.

4. <u>NTPSA2 15241 [Withheld in Full]</u>

The parties included this document with the documents related to communications with external shareholders. However, the document appears to be a draft of the memo in Part III.A above. The same analysis above applies here.

5. <u>NTPSA 14907 [Withheld in Full]</u>

The document is another draft of the letter to Mr. Popowycz. As above, it comes in two versions: (1) a draft of the letter with track changes shown (the PDF version) and (2) a draft of the letter in "clean" form, *i.e.*, no track changes shown (the Word version).

Judge Kim held that the document is not privileged.

Judge Kim erred in part. For the track changes version, there are comments from OCC attorneys and an immediate client response; those are privileged. However, the remainder of the



United States District Court
Northern District of California

document is not privileged. There appear to be independent comments from the client, and the client does not appear to be seeking legal advice. Also, it is not clear which edits on the document come from the attorneys. The government has not clearly stated that *all* of the edits on the document came from the attorneys.

The clean version of the letter (*i.e.*, the Word version) shall be produced. Specific, substantive legal advice is not discernible from the face of the document, and there is no indication that the client did anything but adopt an attorneys' edits.

6. NTPSA2 15265 [Withheld in Full]

The document is another draft of the letter to Mr. Popowycz. As above, it comes in two versions: (1) a draft of the letter with track changes shown (the PDF version) and (2) a draft of the letter in "clean" form, *i.e.*, no track changes shown (the Word version). The analysis in Part III.B.5 above applies here.

C. Lack of Attorneys Involved in Communications

1. NTPSA2 14738

The document is an email chain involving only nonattorney employees of USCIS (Office of Policy and Strategy). The email messages do, however, contain some references to attorneys. *See* NTPSA2 14741; NTPSA2 14740. The government asserted privilege over portions of the email on the basis that they are attorney work product: "Conversations between USCIS employees regarding the preparation and contents of Haiti Administrative Record prepared for DHS OGC and USCIS OCC in anticipation of litigation." Docket No. 423-1 (Ex. A at ECF Page 5).

Judge Kim did not find any privilege obtained.

Judge Kim did not err. If the email revealed, *e.g.*, what the attorneys were instructing needed to be in the Administrative Record for Haiti, that might be work product. However, the email does not reveal any concrete attorney mental impressions nor does it reveal specific information to or from the attorneys in the course of rendering legal advice.

2. NTPSA2 15204

The document is an email chain involving only nonattorney employees of USCIS (Office of Policy and Strategy). However, the email messages do refer to some attorneys – *e.g.*, OCC



United States District Court
Northern District of California

leaving comments/edits for consideration.

Judge Kim found that the document is not privileged.

Judge Kim did not err. No specific legal advice is disclosed, even though there is reference to OCC leaving comments/edits for consideration. It appears that a draft decision memo was attached to the email, but any such draft is not at issue here (though it may be one of the drafts discussed above).

3. NTPSA2 14937

The document is an email chain involving only nonattorney employees of USCIS (Office of Policy and Strategy). However, the email messages do refer to some attorneys – *e.g.*, DHS OGC providing comments.

Judge Kim found that the document is not privileged.

Judge Kim's ruling is correct, with one exception discussed below. No specific legal advice is disclosed. Although the email refers to DHS OGC clearing the draft decision memo and providing comments, any such draft or comments are not at issue here.

The one exception in the email is a single sentence on NTPSA2 14938, starting with the phrase "[OGC] IMM recommends." That sentence is privileged since it provides legal advice.

D. Other ACP/WP Withholdings

1. NTPSA2 14569/14574

The document is another draft of the same memo above in Part III.A above. The same analysis above applies here.

2. NTPSA2 15526

The document is the draft notice of termination of Haiti's TPS. The government claims that part of the document is privileged because there are "comments from DHS counsel Brian Kelliher and Hillary Hunnings, corresponding with DHS attorney Sohom Datta, and responses to legal advice from USCIS clients"; also, there are "redline edits and tracked changes from DHS attorneys Hillary Hunnings, Julia Follick, and Brian Kelliher." Docket No. 423-1 (Ex. A at ECF Page 5).

/ / /

United States District Court
Northern District of California

Judge Kim held that only some of the information at issue is privileged: specifically, the "comments on . . . NTPSA2_015531" and the "comment by JF4R2 on NTPSA2_015530." Docket No. 469 (Order at 1).

Judge Kim erred in part. For example, all of the comments on NTPSA 15530 are privileged. Though the comments in HHH2 and SD3R2 are factual in nature, that does not mean that counsel was not being asked to provide legal advice. Also, on NTPSA 15541, the edits proposed in BDK10 plus the associated comment are privileged.

Other than the above, however, there is no privilege. For example, on NTPSA2 15526, the comment in SD1 that "Unless otherwise specified, USCIS accepts all edits made by OGC" is not privileged because it does not disclose any specific legal advice. The edits made to the document are not clearly edits made by attorneys only (and not the client); specific advice from the attorneys is not discernible.

3. NTPSA2 15554

The document is a draft of the same termination notice above.

Judge Kim held that the following was privileged: "[t]he first four comments on NTPSA2_015559." Docket No. 469 (Order at 1).

Judge Kim erred in part. The remaining comments on NTPSA 15559 are privileged as they are the immediate client response. Also, all of the comments on NTPSA 15558 are privileged; Judge Kim did not state that the comments by JF4R2 are privileged even though that is what she held for the document above. Finally, on NTPSA 15569, the comment in BDK12 and the immediate client response, plus the edit by BDK12 are privileged.

4. NTPSA2 15763

The document is a draft of the same termination notice above. The same analysis above applies here.

5. NTPSA 15361

The document is a draft letter to Representative Cherfilus-McCormick. The government claims privilege on the basis that comments and redline edits were made by DHS attorneys Hillary Hunnings and Sohom Datta. *See* Docket No. 423-1 (Ex. A at ECF Page 6).

Judge Kim held that the comments at issue are privileged, so apparently, the government's only bone of contention is that the proposed edits are also privileged. But presumably Judge Kim meant to designate the edits, not just the "side comments."

## IV. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the government's motion for relief from Judge Kim's order. Where the Court has ordered that information be produced, the government shall do so within one week of the date of this order.

Now that the parties have the guidance of two Court orders on attorney-client privilege, the Court expects that the parties will be able to work out any future disputes on the privilege or, if not, that the privilege disputes presented to Judge Kim or this Court will be very narrowly tailored.

This order disposes of Docket No. 472.

**IT IS SO ORDERED.**

Dated: November 24, 2026

EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California